IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 25-30155 |
| ALLIANCE FARM AND RANCH, LLC | § | |
| | § | |
| *Debtor.* | § | CHAPTER 11 |

### THE OSTRANDERS' EMERGENCY MOTION TO DISMISS

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**THIS MOTION SEEKS A HEARING ON THIS MATTER ON WEDNESDAY, APRIL 9, 2025, AT 2:00 PM IN COURTROOM 400, LOCATED AT 515 RUSK STREET, HOUSTON, TEXAS 77002.**

Erik Ostrander and Darla Ostrander (the "Ostranders"), interested parties to this Case, file this Emergency Motion to Dismiss and, in support thereof, respectfully state as follows:

## SUMMARY OF MOTION

1. The facts here *nearly* present the unfortunate but not uncommon scenario whereby, after failing to enjoin a lender from foreclosing in state court, a debtor files bankruptcy at the eleventh hour to stave off the foreclosure of real property. Here, however, the Debtor's bankruptcy petition was filed *after* the Property sold at the foreclosure sale to its lender, the Ostranders. Thus, as made clear by the bankruptcy code and corresponding case law, this bankruptcy proceeding has no legitimate prospect for reorganization, as the purported single asset of this single-asset Debtor is not property of the estate. Under these circumstances, even liquidation under Chapter 7 is untenable. Accordingly, the bankruptcy should be dismissed.

## JURISDICTION AND VENUE

2. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper in the United States Bankruptcy Court for the Southern District of Texas (the "Court") pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is 11 U.S.C. § 1112.

## BASIS FOR EXPEDITED CONSIDERATION

4. The Ostranders respectfully request that this Motion be considered on an emergency and/or expedited basis pursuant to Rule 9013-1(i) of the Bankruptcy Local Rules for the Bankruptcy Court for the Southern District of Texas. As discussed further below, the Ostranders are under contract to sell the Property to a third party, with the closing scheduled to occur April 24, 2025. Absent emergency consideration, this Motion may not be heard until May, which would effectively prevent the Ostranders from consummating the sale and exposing them to contractual liability.

**PROCEDURAL HISTORY**

5. On January 7, 2025 (the "Petition Date"), the Debtor commenced the above-captioned bankruptcy case (the "Case") under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") by filing its voluntary petition (the "Petition") (ECF No. 1).

6. In its Petition, the Debtor declared itself a single asset real estate debtor under 11 U.S.C. § 101(51B)). *Id.*

7. On January 9, 2025, the Court entered an *Initial Order for Prosecution of Chapter 7 Case* (ECF No. 3). Therein, the Court noted several deficiencies in the Petition, including (1) Debtor's failure to pay the chapter 7 filing fee; (2) Debtor's failure to file its list of creditors and schedules of assets and liabilities without an order extending the time to file same. *Id.*

8. On March 14, 2025, the Debtor filed a *Motion for Substitution of Counsel* (ECF No. 8). On March 17, 2025, the Debtor filed an *Amended Petition*, ostensibly to correct the Debtor's EIN number (ECF No. 11). Moreover, after originally declaring no funds would be available to distribute to unsecured creditors, the Debtor also amended its Petition to declare that funds will be available for distribution to unsecured creditors. *Id.*

9. On March 17, 2025, the Debtor filed the *Emergency Motion to Convert Case to Chapter 11* (the "Emergency Motion") (ECF No. 13). On March 19, 2025, following a hearing, the Court entered its Order Granting Debtor's Emergency Motion to Convert the Case to Chapter 11 (ECF No. 24).

10. A hearing on creditor Dustin Etter's *Motion to Dismiss* is set for hearing on April 9, 2025 (ECF No. 12).

11. As of the date of this filing, the Debtor has not filed schedules or statements.

## **RELEVANT FACTS**

12. On or around April 1, 2022, the Ostranders, collectively as Payee, and the Debtor, as Maker, executed a Real Estate Lien Note (the "Note") in the principal amount of $3,800,636.00. The Note provides for monthly interest payments totaling $23,082.70 and a maturity date of April 1, 2024, on which the principal and all remaining sums owed under the Note became due. *See* Note, Exhibit A, at 1. The Note was executed by Jerod Furr, as Managing Member of the Debtor. *Id*. As set forth therein, the Note is secured by a vendor's lien and superior title to the 72.96 acres comprising the Property (the "Property"), as expressly retained in a deed of even date executed by the Ostranders. *Id.* at 1-2.

13. Also on April 1, 2022, the Debtors, as Grantor, and the Ostranders, as Beneficiary, executed a Deed of the Trust (the "Deed of Trust") covering the Property, which incorporates the Note. *See* Deed of Trust, Exhibit B, at 1. The original trustee was Brent Lane, subject to Beneficiary's right to appoint a successor or substitute trustee. *Id*. at 1-2.

14. On April 6, 2022, the Deed of Trust was recorded with the Montgomery County Clerk. *See* Deed of Trust, Exhibit B, at 1 ("GF# 2200122TW").

15. The Note provides that, on default in the payment of or in the performance of any obligation in any instrument securing or collateral to the Note, the unpaid principal balance and earned interest shall become immediately due at the election of Payee. *See* Note, Exhibit A, at 2.

16. The Debtor did not pay the sums due under the Note on April 1, 2024 or at any time thereafter. Accordingly, after not receiving payment as the Note required, on December 6, 2024, pursuant to the Deed of Trust and Texas law, the Ostranders posted the Property for foreclosure at the January 7, 2025 public foreclosure sale in Montgomery County. *See* Notice of Foreclosure Sale, Exhibit C. Therein, the Ostranders appointed Richard D. Weaver and/or Len E. Walker as

Substitute Trustee (the "Substitute Trustee"), who scheduled the Property to be sold on Tuesday, January 7, 2025, at 10:00 a.m. (the "Foreclosure Sale") *Id*. The Ostranders purchased the Property at the Foreclosure Sale on January 7, 2025.

17. On January 7, 2025, the Substitute Trustee executed a Substitute Trustee's Deed (the "Substitute Trustee's Deed"), which transferred the Property to the Ostranders, collectively as Grantee. *See* Substitute Trustee's Deed, Exhibit D. The Substitute Trustee's Deed declares that default occurred in the payment of the Note and the performance obligations under the Deed of Trust, that proper notice of default and the foreclosure sale were made and given in accordance with the Deed of Trust and Texas law, and the Ostranders, as Beneficiary under the Deed of Trust and holders of the Note, were conveyed the Property for purposes of securing and enforcing payment of the Note. *Id.* at 2.

18. Notably, the Substitute Trustee's Deed sets forth that the Property was sold to the Ostranders at **10:15 a.m. on the morning of Tuesday, January 7, 2025**.

19. The Lawsuit referenced in the Debtor's Emergency Motion to Convert is time-stamped 9:48 a.m. on January 3, 2025. However, the 284th Judicial District Court of Montgomery County, Texas never entered a restraining order or other injunctive relief.

20. After failing to obtain relief from state court, the Debtor next filed its Petition on January 7, 2025. The Notice of Bankruptcy Filing generated by the Court indicates the Petiton was received at 10:40 a.m. on January 7, 2025.

21. The Ostranders currently have the Property under contract to be sold to a third party (the "Contract"), with closing scheduled for April 24, 2025. *See* Contract, Exhibit E.

## REQUEST THAT COURT TAKE JUDICIAL NOTICE

22. Pursuant to Rule 201 of the Federal Rule of Evidence ("FRE"), the Court may take judicial notice of adjudicative facts upon its own discretion, and when supplied with the necessary information shall take notice of such facts on the request of a party. Adjudicative facts, pursuant to FRE 201(b), are those that are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

23. A bankruptcy court may take judicial notice of: 1) orders entered in the bankruptcy case; 2) materials in court's own files from prior proceedings; and 3) related proceedings and records in cases before the court. *Lycoming Engines v. Superior Air Parts, Inc. (In re Superior Air Parts, Inc.)*, 486 B.R. 728, fn. 1 (Bankr. N.D. Tex. 2012); . *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 (5th Cir. 1978); *Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 703 (5th Cir. 1975) (emphasis added).

24. The Ostranders request that the Court take judicial notice of facts and information from within documents previously filed in this case, those recorded in the real property records and those filed in the Montgomery County District Court case under FRE 201(b).

## BASIS FOR DISMISSAL

25. "If a valid foreclosure sale in accordance with state law takes place before a bankruptcy petition is filed, the debtor no longer has any legal or equitable interest in the property. ***As a result, the foreclosed property does not become property of the bankruptcy estate under § 541(a)(1).***" *In re Munoz*, No. 10-31627-HCM, 2011 WL 710501, at *15 (Bankr. W.D. Tex. Feb. 22, 2011) (emphasis added) (citing *United States v. Bishop*, 262 B.R. 401, 405 (W.D. Tex. 2000)). "Under Texas law, a foreclosure sale under a deed of trust is complete when the foreclosure was

conducted in accordance with the deed of trust and the lender has accepted the purchaser's bid." *Id.* at *14 (citing *Peterson v. Black*, 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no writ)). Thus, even if the deed evidencing the sale is recorded post-bankruptcy, the debtor no longer has a legal or equitable interest in the property after the purchaser's *bid is accepted*. *Id.* at *15 (emphasis added) (citing *In re Baumgardner*, No. 05–48969–DML, 2007 WL 655308 (Bankr. N.D. Tex. Feb. 27, 2007).

26. The application of these rules to the instant case is straight forward. As noted above, Debtor defaulted on the Note by failing to make payments. As a result of Debtor's default, the Ostrander's did, and were authorized by the Deed of Trust to, request that the Trustee foreclose on the Property. The Deed of Trust, further, authorized the Ostranders to purchase the Property at the foreclosure by offering the highest bid. The Property was held for sale at public auction on January 7, 2025, at 10:00 a.m. Shortly thereafter, as evidenced by the Substitute Trustee's Deed, the highest bid for the purchase of the Property was accepted at 10:15 a.m. Thus, at this moment in time, Debtor no longer had any legal or equitable interest in the Property, and the estate has no property to administer.

27. Later that day, Debtor's initiated this Case. However, and of the utmost importance, Debtor filed its Petition following the completed foreclosure sale of the Property. Indeed, as evidenced by the Court's Notice of Bankruptcy Case Filing, the Petition was not filed until 10:40 AM—a time after the Debtor no longer had any legal or equitable interest in the Property. *See* Notice of Bankruptcy Case Filing, Exhibit F.

**I.   This Bankruptcy Proceeding should be dismissed under Section 1112(b) for "cause."**

28. On request from a party in interest, section 1112(b) of the Bankruptcy Code authorizes the Court to dismiss a chapter 11 petition "for cause." Section 1112(b)(4) includes a

non-exhaustive list of examples of what constitutes "cause," meriting dismissal under the statute. *In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017) (quoting *In re TMT Procurement Corp.*, 534 B.R. 912 (Bankr. S.D. Tex. 2015)). Additionally, section 1112(b) affords flexibility for bankruptcy courts by allowing findings of "cause" outside of the examples enumerated under the statute. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

    A.  <u>There is no legitimate prospect of reorganization because there is no estate property.</u>

29.    "A case filed without any legitimate prospect of reorganization 'serves as grounds to dismiss the filing.'" *In re McMahan*, 481 B.R. 901, 920 (Bankr. S.D. Tex. 2012) (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)).[1] This is in line with the principles of chapter 11, which requires a plan to be (1) proposed with a legitimate and honest purpose to reorganize and (2) have a reasonable hope of success. *See In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir. 1997).

30.    The Supreme Court and the Fifth Circuit have been explicitly clear that if a Chapter 11 case is unable to achieve a reorganization within the statutory requirements of the Code, then there is no point in continued accrual of costs, expenses, or delay in allowing creditors to exercise their non-bankruptcy rights. *Tenn. Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22 (1936) ("However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988) ("[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"

---

[1] Although no longer enumerated under section 1112 following the 2005 revisions, impossibility and/or non-feasibility of a proposed plan still amounts to "cause" under the statute and serves as grounds for dismissal. *See, e.g.*, *In re 3 Ram, Inc.*, 343 B.R. 113, 117-18 (Bankr. E.D. Pa. 2006) ("While no longer an enumerated ground under amended § 1112, conversion or dismissal of a Chapter 11 bankruptcy case is appropriate where the court finds that the proposed plan is not feasible and that a feasible plan is not possible." (citations omitted)).

(citation omitted)); *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991) ("Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." (citing *Timbers*, 808 F.2d at 371)).

31.     In our case, the Debtor's proposed plan will not be feasible, let alone possible. As noted above, Debtor declared itself a single asset real estate debtor. The Debtor's entire basis for moving to covert its case to chapter 11 was that the "Debtor presently ha[d] a contract to sell the Property that is set to close on April 24, 2025." (ECF No. 13, at ¶ 7). However, this statement is entirely devoid of actual facts and straddles the line of a misrepresentation to the Court. It is the Ostranders—not Debtor—who has a contract to sell the Property that is set to close on April 24, 2025. *See* Contract, Exhibit E, at 1 ("The parties to this contract are Erik C Ostrander & Darla R Ostrander (Seller) and Nathan Milner (Buyer).").

32.     Nevertheless, even if Debtor did somehow have a contract to sell the Property, this would merely be a document with no legal force or effect because the foreclosure sale has already been completed, and legal and equitable title to the Property passed to the Ostranders. In other words, there is nothing to liquidate or reorganize under this bankruptcy proceeding and, therefore, no legitimate prospect of reorganization. *See supra* ¶¶ 25-27; *see also In re BMG Investments, Inc.*, No. 03-2019, 2003 WL 24197743, at *4 (Bankr. N.D. Tex. June 27, 2003) (noting that dismissal is warranted where debtor has no meaningful assets to administer); *SWJ Mgmt., LLC v. Coan*, 551 B.R. 93, 100 (D. Conn. 2015) ("Lack of estate assets can be a proper cause under Section 1112(b) for a bankruptcy court to dismiss a chapter 11 bankruptcy case." (citations omitted)).

33.     Accordingly, because the estate's primary purported asset to finance a liquidation is not actually an estate asset, a feasible plan is impossible. Accordingly, this Court should dismiss the Case under section 1112(b) of the Bankruptcy Code.

B.  This Bankruptcy lacks good faith in its prosecution.

34. The Fifth Circuit has repeatedly held that "cause" for dismissal of a chapter 11 case exists where there was "lack of good faith" in its filing. *In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991); *see also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071-72 (5th Cir. 1986) ("Numerous cases have found a lack of good faith to constitute 'cause' for lifting the stay to permit foreclosure or for dismissing the case." (footnote omitted)).

35. In *Little Creek*, the Fifth Circuit characterized a usual case dismissed on the basis of "lack of good faith" as one in which "[s]everal, but not all, of the following conditions usually exists":

- "The debtor has one asset, such as a tract of undeveloped or developed real property," and "[t]he secured creditors' liens encumber this tract";

- "The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court";[2]

- "[T]here are only a few, if any, unsecured creditors whose claims are relatively small";

- "There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization"; and

- "There are sometimes allegations of wrongdoing by the debtor or its principals."

*Little Creek*, 779 F.2d at 1072-73. Indeed, under these circumstances, "[r]esort to protection of the bankruptcy laws is not proper . . . because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria' . . . . Neither the bankruptcy courts nor the creditors should be subjected to the

---

[2] Although the Ostranders concede that, generally speaking, instituting bankruptcy proceedings to stop foreclosure, *standing alone*, is not evidence of bad faith, there are courts that have made holdings to the contrary. *In re McGittigan*, No. Civ. A. 95-355, 1996 WL 191648, at *2 (E.D. La. Apr. 19, 1996) ("Filing bankruptcy for the sole purpose of postponing foreclosure is an example of bad faith conduct." (citing *In re Cooper*, 153 B.R. 898 (Bankr. D. Colo. 1993), *aff'd*, 13 F.3d 404 (10th Cir. 1993))).

10

costs and delays of a bankruptcy proceeding under such conditions." *Id.* at 1073.

36. The instant Case exemplifies the circumstances described in *Little Creek* that indicate a lack of good faith and warrant dismissal. *See id.* at 1073 ("The 'new debtor syndrome,' in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.").

37. First, although it is clear the Debtor has no estate property, *see supra* ¶¶ 25-27, the Debtor nevertheless declares that it has only one asset, i.e., the Property, which is a tract of developed real property. In the event the foreclosure sale had never been completed, the interested parties' liens and interests would encumber the Property.

38. Second, the Property was posted for foreclosure due to the Debtor's default under the Note, and the Debtor was unsuccessful in its attempt to obtain injunctive relief in state court.[3] The Debtor's Petition was not prompted by an operational issue or liquidity event. In contrast, the sole impetus for Debtor's Petition—which, again, was filed *after* the foreclosure sale was completed—was that Debtor's single asset was posted for foreclosure and "[b]ankruptcy offer[ed] the only possibility of forestalling loss of the property." *Little Creek*, 779 F.2d at 1073.

39. Other courts have dismissed chapter 11 cases as bad faith filings based on similar facts. For example, in *In re Triumph Christian Ctr., Inc.*, the court dismissed a debtor's second chapter 11 case under the *Little Creek* factors when the case was "essentially a two-party dispute between Debtor and [an interested party], which h[eld] ninety-seven percent of the Debtor's total debt, as well as a dispute that was already in litigation in state court when the Debtor initiated the Second Case." 493 B.R. 479, 495 (Bankr. S.D. Tex. 2013). Chief Judge Bohm found that "[t]he

---

[3] *See Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, No. 25-01-00068, (284th Dist., Montgomery Cnty. Tex., 2025).

Debtor thus chose its forum to stop the foreclosure, and there [was] no good reason why the Debtor should now be allowed to further forum shop by filing the Second Case and looking to this Court for protection." *Id.*

40. Similarly, in *In re Walter*, the court dismissed a chapter 11 petition when the debtors' only secured creditor was attempting to foreclose on their sole asset, which was a parcel of real property. 108 B.R. 244 (Bankr. C.D. Cal. 1989). In finding that the case should be dismissed for bad faith, the court noted that "Debtors' attempt to use . . . the 'automatic stay' of Title 11 as a replacement for the unavailable state court 'preliminary injunction', after opting to litigat[e] their dispute with [the secured creditor] in a state court forum (and failing to obtain relief in that forum), is an impermissible use of the bankruptcy process." *Id.* at 248.

41. Lastly, the additional *Little Creek* factors also support dismissal here. Upon information and belief, there are few, if any, unsecured creditors. Debtor has estimated between 1-49 creditors in its Petition. Further, upon information and belief, Debtor has little or no cash flow—hence Debtor's default under the Note by failing to make payments for over six months.

42. Accordingly, the Debtor's lack of good faith in instituting this Bankruptcy proceeding provides additional grounds for dismissal.

## **CONCLUSION**

43. In sum, **(1)** there is "cause" to dismiss this bankruptcy case under section 1112(b) because there is no legitimate prospect of reorganization due to the fact that there is no "property of the estate" and **(2)** either independently or in addition to the fact that there is no legitimate prospect of reorganization, "cause" exists to dismiss this bankruptcy case under section 1112(b) because there is a lack of good faith in its filing—as Debtor is a one-asset entity, created *after* the

foreclosure for the purpose of isolating the insolvent property, after it already opted to litigate its dispute in a state court forum.

44. For these reasons, the Ostranders respectfully request that this Court enter an order dismissing this Case, and for such other and further relief to which they may be justly entitled.

    Respectfully submitted,

    **COKINOS | YOUNG**

    By: */s/ Reagan H. "Tres" Gibbs, III*
        Reagan H. "Tres" Gibbs, III
        State Bar No. 24083068
        tgibbs@cokinoslaw.com
        1221 Lamar Street, 16th Floor
        Houston, Texas 77010-3039
        Tel.: (713) 535-5500
        Fax: (713) 535-5533

    *Counsel for Erik and Darla Ostrander*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Code for the Southern District of Texas.

    */s/ Reagan H. "Tres" Gibbs, III*
    Reagan H. "Tres" Gibbs, III