# EXHIBIT 6

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 821384E4-04C5-4A48-0809-2FDE96C09199



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)   11-04-2024
# FARM AND RANCH CONTRACT
NOTICE: Designed For Use In Sales Of Existing Farms Or Ranches Of Any Size. Not For Use In Complex Transactions.



**1. PARTIES:** The parties to this contract are _____ Erik C Ostrander & Darla R Ostrander _____
(Seller) and _____ Nathan Milner _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND:  The land situated in the County (or Counties) of Montgomery _____ ,

Texas, described as follows: A0151 A0151 - CARTWRIGHT MATTHEW, TRACT 1-A, SERIAL # SFW013709TXA, TITLE # MH0047 0103, LABEL # NTA1551549, MODEL FC2441 _____

or as described on attached exhibit, also known as 5450 Honea Egypt Rd, Montgomery, TX 77316
(address/zip code), together with all rights, privileges, and appurtenances pertaining thereto.

B. IMPROVEMENTS:
   (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
   (2) RESIDENTIAL IMPROVEMENTS: Any houses, garages, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:
   (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☑ portable buildings ☑ hunting blinds ☑ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☑ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☑ other: As noted in exhibit A _____
   _____
   (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: All personal property not named in Exhibit A to be _____ removed 48 hours prior to final walkthrough/closing. _____ .

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing .................. $2,040,000
   The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.
B. Sum of all financing described in the attached: ☑  Third Party Financing Addendum,
   ☐  Loan Assumption Addendum, ☐  Seller Financing Addendum  .. $4,760,000
C. Sales Price (Sum of A and B) ...................................... $6,800,000.00
D. The Sales Price ☐ will ☑ will not be adjusted based on the survey required by Paragraph 6C.
   If the Sales Price is adjusted, the Sales Price will be adjusted based on the difference between 3 _____ acres and the acreage set forth in the survey required by Paragraph 6C. The difference in acreage (either increased or decreased) shall be multiplied by the sum of $N/A _____ per acre and either added to or subtracted from the Sales Price stated in Paragraph 3C. If the Sales Price is adjusted by more than 10%, either party may terminate this contract  by  providing  written notice  to  the  other  party  within 5 _____ days  after  the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to  the  amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract. *M.M. Initial*

Initialed for identification by Buyer, *MM* and Seller *E.O. D.O.*   TREC NO. 25-16

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316                Page 2 of 11    11-04-2024
(Address of Property)

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, geothermal, water, or other natural resource lease affecting the Property to which Seller is a party.

  ☐ (1)  Seller has delivered to Buyer a copy of all the Natural Resource Leases.

  ☐ (2)  Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

☐ D. SURFACE LEASES: "Surface Lease" means an existing lease for the surface only of the Property (for example, grazing leases, hunting leases, agricultural leases, recreational leases, wind leases, solar leases, timber or forestry leases). (Check all applicable boxes)

  ☐ (1) Seller has delivered to Buyer a copy of all written Surface Leases.

  ☐ (2) Seller provides Buyer with notice of the following oral Surface Lease(s), identifying the type of lease, name of the tenant(s), rental amount, and term:_____

  ☐ (3) Seller has not delivered to Buyer all Surface Leases (whether written or oral). Seller shall provide to Buyer a copy of all the written Surface Leases and notice of all oral Surface Leases, identifying the type of lease, the name of the tenant(s), rental amount, and term, within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Surface Leases and the earnest money shall be refunded to Buyer.

**5. EARNEST MONEY AND TERMINATION OPTION:**

  A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____BRPS Title of Texas LLC_____ (Escrow Agent) at _____ 5353 W Alabama St Ste 310, Houston, TX 77056 _____(address): $ 68,000 _____ as earnest money and $ 1,500 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow  agent and may be paid separately or combined in a single payment.

  (1) Buyer shall deliver additional earnest money of $ 0 _____ to Escrow Agent within n/a _____ days after the Effective Date of this contract.

  (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

  (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

  (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

  B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ____15____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified.  If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

  C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

  D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

  E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**

  A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ☐  Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____BRPS Title of Texas LLC_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

  (1) The standard printed exception for standby fees, taxes and assessments.

  (2) Liens created as part of the financing described in Paragraph 3.

  (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

dotloop signature verification: dtlo.us/ROFZ-uvP0-Z7WH
Docusign Envelope ID: 8A1384E4-0ACE-4A48-0800-2FDE96C09199

Contract Concerning  5450 Honea Egypt Rd, Montgomery, TX 77316                    Page 3 of 11    11-04-2024
(Address of Property)

(4) The standard printed exception as to marital rights.
(5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☑ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☑ Seller.
(7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land survey or acceptable to the Title Company and Buyer's lender(s). (Check one box only):
☑ (1) Within ____10____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit or Declaration promulgated by the Texas Department of Insurance (T-47 Affidavit or T-47.1 Declaration). Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date if Seller fails to furnish within the time prescribed both the: (i) existing survey; and (ii) affidavit or declaration. If the Title Company or Buyer's lender does not accept the existing survey, or the affidavit or declaration, Buyer shall obtain a new survey at ☐ Seller's ☑ Buyer's expense no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer may obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier. If Buyer fails to obtain the survey, Buyer may not terminate the contract under Paragraph 2B of the Third Party Financing Addendum because the survey was not obtained.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
☐ (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: Commercial Use _____
_____ .
Buyer must object the earlier of (i) the Closing Date or (ii) ___10___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| N/A | | |
| N/A | | |
| N/A | | |

F. SURFACE LEASES: The following Surface Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: N/A _____
_____ .

G. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection or Buyer should be furnished with or

Initialed for identification by Buyer ☐ MM ☐ and Seller ☐ [signature] ☐          TREC NO. 25-16

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye          TXR 1701

dotloop signature verification: dtlp.us/ROFZ-uvP0-Z7WH
Docusign Envelope ID: 821384E4-04C5-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316     Page 4 of 11    11-04-2024
(Address of Property)

obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service.  There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing or purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

(11) CERTIFICATE OF MOLD REMEDIATION:  If the Property has been remediated for mold, Seller must provide to Buyer each certificate of mold damage remediation issued under §1958.154, Occupations Code, during the 5 years preceding the sale of the Property.

(12) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, utility, water, drainage, and public improvement districts): N/A _____
_____ .
Seller's failure to provide applicable statutory notices may provide Buyer with remedies or rights to terminate the contract.

## 7. PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect . **NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☑ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer.  If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

Initialed for identification by Buyer ___ _MH_ __ and Seller __ _JL_ __ TB __    TREC NO. 25-16

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 8213B4E4-9AC5-4A48-9800-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316                    Page 5 of 11    11-04-2024
(Address of Property)

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)

☐ (1) Buyer accepts the Property As Is.

☒ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: <u>Removal of all scrap metal throughout property</u>
.
(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs to Buyer at closing. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURE:

(1) Seller ☐ is ☒ is not aware of any flooding of the Property which has had a material adverse effect on the use of the Property.

(2) Seller ☒ is ☐ is not aware of any pending or threatened litigation, condemnation, or special assessment affecting the Property.

(3) Seller ☐ is ☒ is not aware of any environmental hazards that materially and adversely affect the Property.

(4) Seller ☐ is ☒ is not aware of any dumpsite, landfill, or underground tanks or containers now or previously located on the Property.

(5) Seller ☐ is ☒ is not aware of any wetlands, as defined by federal or state law or regulation, affecting the Property.

(6) Seller ☐ is ☒ is not aware of any threatened or endangered species or their habitat affecting the Property.

(7) Seller ☒ is ☐ is not aware that the Property is located ☐ wholly ☒ partly in a floodplain.

(8) Seller ☐ is ☒ is not aware that a tree or trees located on the Property has oak wilt.

If Seller is aware of any of the items above, explain (attach additional sheets if necessary): <u>Have a lis pendency that will be removed when current occupant vacates property</u>
.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ <u>850</u>    . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: <u>N/A</u>

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

## 8. BROKERS AND SALES AGENTS:

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: <u>N/A</u>

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

Initialed for identification by Buyer ___ and Seller ___    TREC NO. 25-16

dotloop signature verification: dtlp.us/ROFZ-uvP0-Z7WH
Docusign Envelope ID: 841384E4-04C5-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316      Page 6 of 11    11-04-2024
(Address of Property)

## 9. CLOSING:
A. The closing of the sale will be on or before _____ 04/24/2025 _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

## 10. POSSESSION:
A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

## 11. SPECIAL PROVISIONS: (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.)_____
_____
_____.

## 12. SETTLEMENT AND OTHER EXPENSES:
A. The following expenses must be paid at or prior to closing:
(1) Seller shall pay the following expenses (Seller's Expenses):
   (a) releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; brokerage fees that Seller has agreed to pay; and other expenses payable by Seller under this contract;
   (b) the following amount to be applied to brokerage fees that Buyer has agreed to pay: ☐$_____ or ☐_____% of the Sales Price (check one box only); and
   (c) an amount not to exceed $ _____ to be applied to other Buyer's Expenses.
(2) Buyer shall pay the following expenses (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; brokerage fees that Buyer has agreed to pay; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS AND ROLLBACK TAXES:
A. PRORATIONS: Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

Initialed for identification by Buyer ___ _MM_ ___ and Seller ___ ___ ___

TREC NO. 25-16

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 8A1384E4-04C5-4A48-9800-2FDE96C09199

B. ROLLBACK TAXES:  If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer.  If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier,  and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract.  If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means  expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party.  If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making  demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing.  If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.  Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

Initialed for identification by Buyer ___ and Seller ___    TREC NO. 25-16

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 8241384E4-04C5-4A48-9809-2FDE96C09199
Case 23-30155   Document 37-6   Filed in TXSB on 04/07/25   Page 9 of 15

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316          Page 8 of 11    11-04-2024
(Address of Property)

**20. FEDERAL REQUIREMENTS:**

A. If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

B. The Agriculture Foreign Investment Disclosure Act (AFIDA) of 1978 requires that a foreign person who acquires, disposes of, or holds an interest in United States agricultural land must disclose such transactions and holdings to the Secretary of Agriculture. Foreign persons must file an FSA-153 in the Farm Service Agency (FSA) Service Center where the land is physically located within 90 days of the date of the transaction. Failure to report is subject to civil penalty up to 25 percent of the fair market value of the land on the date the penalty is assessed. Consult an attorney or tax professional.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer at: | To Seller at: |
|---|---|
| | |
| Phone: | Phone: |
| E-mail/Fax: nathan@milnerproperties.com | E-mail/Fax: eostrander@appmach.com |
| E-mail/Fax: | E-mail/Fax: |
| With a copy to Buyer's agent at: | With a copy to Seller's agent at: |
| Jasmin@JasminLye.com | Tilah@luxgrouptx.com |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☑ Third Party Financing Addendum

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum for Section 1031 Exchange

☑ Other (list): Exhibit A

Initialed for identification by Buyer [MI] and Seller [initials]          TREC NO. 25-16
                                                                          TXR 1701

dotloop signature verification: dtlo.us/ROEZ-uvP0-Z7WH

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316          Page 9 of 11   11-04-2024
(Address of Property)

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                              Seller's
Attorney is: fly.law@comcast.net                     Attorney is: _____

Phone: _____               Phone: _____

Fax: _____               Fax: _____

E-mail: _____               E-mail: _____

EXECUTED the _____ day of ___2/27/2025_____, 20____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_Nathan Milner_                dotloop verified
                               02/27/25 3:54 PM CST          E.O.A.          2/27/2025
Buyer                          DHHG-T8SQ-JOBG-SMPC   Seller
                                                     95F5E0A46B13428...

                                                     Signed by:
Buyer                                                (signature)          2/27/2025
                                                     Seller
                                                     276F0E204FEB431...

The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-16. This form replaces TREC NO. 25-15.


TREC
TEXAS REAL ESTATE COMMISSION

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye          TREC NO. 25-16
                                                                                                          TXR 1701

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09189

| | | |
|---|---|---|
| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 10 of 11 | 11-04-2024 |
| (Address of Property) | | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____2.5%_____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| Other Broker: | | Listing Broker: | |
|---|---|---|---|
| By: *Jasmin Lye* | dotloop verified 02/27/25 2:47 PM CST HC7M-8LNU-GQAY-HH0F | By: *Tilah Spruel* | 2/27/2025 |

### BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| JLA Realty | 9000562 | Connect Realty.com | 0573369 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Jasmin Lye | 660507 | Tilah Lee Spruel | 726680 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| | | Lux Group | |
| Team Name | | Team Name | |
| jasmin@jasminlye.com | 832-857-9394 | tilah@luxgrouptx.com | 702-408-4464 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| John Altic | | Mary Goudreault | 0538377 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 5332 FM 1960 E, STE C | | 2170 Buckthorne Place, Ste 200 | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| HUMBLE, TX 77346 | | The Woodlands, TX 77380 | |
| City          State          Zip | | City          State          Zip | |

represents  ☑ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

| | |
|---|---|
| | Selling Associate          License No. |
| | |
| | Team Name |
| | |
| | Selling Associate's Email Address          Phone |
| | |
| | Licensed Supervisor of Selling Associate          License No. |
| | |
| | Selling Associate's Office Address |
| | |
| | City          State          Zip |

represents  ☑ Seller only
☐ Buyer only
☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☑ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $ _____ or ☑ 2.5 % of the total Sales Price; and (b) ☑ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $ _____ or ☑ 2.5 % of the total Sales Price.  Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**DO NOT SIGN IF THERE IS A SEPARATE AGREEMENT FOR PAYMENT OF BROKERS' FEES. Brokers' fees are negotiable.  Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

| Signed by: | | |
|---|---|---|
| [signature] | 2/27/2025 | *Nathan Milner* |
| Seller ...5F5E0A46B13428... | | Buyer |
| Signed by: | | |
| [signature] | 2/27/2025 | |
| Seller ...6F0E204FEB431... | | Buyer |

Contract Concerning _5450 Honea Egypt Rd, Montgomery, TX 77316_____age 11 of 11   11-04-2024
                                          (Address of Property)

## OPTION FEE RECEIPT

Receipt of $1,500.00_____ (Option Fee) in the form of _____

is acknowledged.

Escrow Agent                                                                                    Date

## EARNEST MONEY RECEIPT

Receipt of $68,000.00_____ Earnest Money in the form of _____

is acknowledged.

Escrow Agent                              Received by        Email Address                      Date/Time

Address                                                                                         Phone

City                                      State              Zip                                Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent                              Received by        Email Address                      Date

Address                                                                                         Phone

City                                      State              Zip                                Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $.00_____ additional Earnest Money in the form of _____

is acknowledged.

Escrow Agent                              Received by        Email Address                      Date/Time

Address                                                                                         Phone

City                                      State              Zip                                Fax

# Exhibit A

Concerning property located at:

5450
~~5850~~ Honea Egypt Road, Montgomery, TX 77316

- All furnishings in bar
- Case JX95 Tractor with Brush Hog SN#33678
- Case 586 Forklift SD#76250-2
- 2/ea Kubota Zero Turn Diesel Mowers SN#53851 & 1229
- 1/ea Honda ATV (Green side by side)
- 500 Glon Diesel Fuel Tank on wheels
- Fertilizer Spreader
- One 60KW Diesel Generator SN #8800152
- 2/ea 5 Ton overhead cranes in Shop
- Challenger Car Lift
- Paint Booth
- 4/ea Cattle as present during showing
- 2/ea Donkeys as present during showing
- TVs in Bar
- Walk-in Cooler and Freezer in Barn
- Ice Maker in Barn

*Final bill of sale to be provided at closing and funding for all items noted above*

Buyer:

*Nathan Milner*

dotloop verified
02/27/25 3:54 PM CST
N5U3-WZVP-QBEK-TR9U

Seller:

Signed by:
95F5E0A46B13428...                2/27/2025

Signed by:
276F0E204FEB431...                2/27/2025

11-04-2024



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT



5450 Honea Egypt Rd, Montgomery, TX 77316

(Street Address and City)

**1. TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

☑ A. CONVENTIONAL FINANCING:

☑ (1)  A first mortgage loan in the principal amount of $4,760,000 (excluding any financed PMI premium), due in full in __30__ year(s), with interest not to exceed ____7% per annum for the first ____30____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____1% of the loan.

☐ (2)  A second mortgage loan in the principal amount of $_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $_____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ C. FHA INSURED FINANCING:  A Section _____ FHA insured loan of not less than $_____(excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ D. VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ E. USDA GUARANTEED FINANCING: A USDA-guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ F. REVERSE MORTGAGE FINANCING: A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan. The reverse mortgage loan ☐will ☐ will not be an FHA insured loan.

☐ G. OTHER FINANCING: A loan not of a type described above from _____ (name of lender) in the principal amount of $_____ due in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges not to exceed _____ % of the loan.  Buyer ☐ does ☐ does not waive all rights to terminate the contract under Paragraph 2B of this addendum for the loan described in this paragraph.

**2. APPROVAL OF FINANCING**:  Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

---

Initialed for identification by Buyer| ___ | ___ | and Seller 

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye

TREC NO. 40-11
TXR 1901

dotloop signature verification: dtlp.us/fSYt-2f2e-hEOs
Docusign Envelope ID: 931384E4-840F-4A48-9809-2FDE96C09189

Third Party Financing Addendum Concerning

5450 Honea Egypt Rd, Montgomery, TX 77316
(Address of Property)

A. **BUYER APPROVAL** *(Check one box only)*:

☑ This contract is subject to Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may terminate this contract within __30__ days after the Effective Date of the contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates the contract under this provision, this contract will terminate and the earnest money will be refunded to Buyer.  If Buyer does not terminate the contract under Paragraph 2A, the contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.

☐ This contract is not subject to Buyer obtaining Buyer Approval.

B. PROPERTY APPROVAL: If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer may terminate this contract on or before the 3rd day before the Closing Date by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer.  If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

3. **SECURITY**:  If required by Buyer's lender, each note for the financing described above must be secured by vendor's and deed of trust liens.

4. **FHA/VA REQUIRED PROVISION**: If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirement in Paragraph 2B does not apply to this Paragraph 4.

A. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

B. If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure.  HUD does not warrant the value or the condition of the Property.  The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

C. If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA.  If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

5. **AUTHORIZATION TO RELEASE INFORMATION**:

A. Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.

B. Seller and Buyer authorize Buyer's lender, title company, and Escrow Agent to disclose and furnish a copy of the closing disclosures and settlement statements to the parties' respective brokers and sales agents provided under Broker Information.

*Nathan Milner*

dotloop verified
02/27/25 3:54 PM CST
4YHU-HQZK-1OX5-5TCD

Buyer

Signed by:
[signature]
5E-5E0A46B13428...
Seller                                                      2/27/2025

Buyer

Signed by:
[signature]
F0E204FEB431...
Seller                                                      2/27/2025



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms.  Such approval relates to this form only.  TREC forms are intended for use only by trained real estate license holders.  No representation is made as to the legal validity or adequacy of any provision in any specific transactions.  It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-11.  This form replaces TREC No. 40-10.