Docusign Envelope ID: C3D6AF09-BDCA-42DE-9759-9CEF181BCB7E
Case 25-30155   Document 56-9   Filed in TXSB on 04/24/25   Page 1 of 4

**EXHIBIT 9**

CAUSE NO. 24-07-11639

| | | |
|---|---|---|
| DUSTIN ETTER, ALLIANCE ENERGY PARNERS, LLC, AE PARTNERS HOLDINGS, INC., AE PARTNERS HOLDINGS, LLC AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTORS, LLC | § § § § § § § § | 457ᵗʰ JUDICIAL DISTRICT COURT |
| v. | § | |
| JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC, and INVICTIS DRILLING MOTORS, LLC | § § § § § § § § | MONTGOMERY COUNTY, TEXAS |

## DECLARATION OF JEROD FURR

My name is Jerod Furr, my date of birth is May 18, 1975, my address is 259 Saddle Ridge Place, The Woodlands, Texas, 77380, United States of America. I am over eighteen years of age, I am of sound mind and body, and I am capable of making this declaration. I have personal knowledge of all matters stated herein and I declare under penalty of perjury that the following is true and correct:

> I am the sole director of AE Partners Holdings, Inc. AE Partners Holdings, Inc. is the sole owner and member of Alliance Energy Partners, LLC.

> I am aware that Alliance Energy Partners, LLC is being sued by various creditors. However, payment plans for these debts were set up long before this lawsuit was filed by Dustin Etter. Before he was terminated in September 2024, Dustin Etter had told customers and vendors that he was suing me and that I embezzled money from Alliance Energy Partners, LLC and AE Partners Holdings, Inc., which is not true. When I found out he was making these types of statements, I gave him an opportunity to communicate with me and asked him to explain himself. He refused to answer. So, I terminated him months after I found out.

**EXHIBIT C**

I find these statements particularly dishonest because Mr. Etter had no access to the books or records of Alliance Energy Partners, LLC at the time he said those things. Also, for someone who repeatedly characterizes himself as my business partner throughout this lawsuit, you would think he would have come to me with that type of concern. At no time did Mr. Etter text, e-mail, or have any type of communication with me regarding his allegations or concerns that company funds were being improperly diverted or misappropriated. At the time he made those representations to Christopher Konarek, Alliance Energy Partners, LLC was paying its vendors. The vendors' invoices were not always paid in full upon receipt, but I had made arrangements to have vendors paid **as** Alliance Energy Partners was paid by its customers.

I never had any intention to cease paying vendors and never communicated that to Mr. Etter. And, in fact, I relied on Mr. Etter to communicate with vendors regarding payment timing and amounts. Mr. Etter not only failed to do so, he made the exact *opposite* representation to Alliance Energy Partners' largest vendor - Gordon Technologies. I do not know why Mr. Etter chose to say those types of things to anyone at Gordon Technologies. He had expressed to me before that we needed to "get rid of" Gordon Technologies, so there was no close personal friendship with its employees. In fact, Mr. Etter was in charge of communicating with Gordon Technologies regarding payment arrangements and reassuring them of payment. It continues to perplex me that he would instead choose to tell Alliance Energy Partner's largest creditor that they were likely not going to get paid and that our business was crumbling.

Because of the lawsuits against Alliance Energy Partners, LLC, I have no choice but to place Alliance Energy Partners, LLC into bankruptcy.

It is false that I "took cash out of the entity" to pay for my house. Alliance Energy Partners, LLC loaned Alliance Farm & Ranch, LLC a sum of $1,000,000.00 as a down payment for the house. $100,000.00 of that amount has already been repaid. And, the information Mr. Etter conveniently keeps forgetting to mention is that half the property was used as a workshop and networking conference location for Alliance Energy Partners, LLC. Regardless of Mr. Etter's opinion that this expenditure should not have been made, it is also false that his approval is required for any kind of financial transaction. Alliance Energy Partners, LLC is wholly owned by AE Partners Holding, Inc. Mr. Etter is a minority shareholder of AE Partners Holding, Inc., its vice president, and its chief operating officer. I am the majority shareholder, sole

director, and chief executive officer of AE Partners Holding, Inc.

It is a false statement of fact for Mr. Etter to indicate to anyone that he did not approve of distributions, loans, or company funds to pay for vehicles, property improvements, or personal expenses on the credit card. ==Mr. Etter certainly approved receiving approximately $360,000 from Alliance Energy Partners, LLC to equalize the amount that was spent renovating the property owned by Alliance Farm & Ranch, LLC (as I thought that was only fair)==. Mr. Etter did not think it was wrong for Alliance Energy Partners, LLC to pay for improvements to his own real property, in addition to leasing that property from Mr. Etter so that Mr. Etter would be able to obtain favorable tax treatment on his personal farm and ranch equipment. Mr. Etter certainly was not of the opinion that it was improper for Alliance Energy Partners, LLC to reimburse his subscriptions, family's gas expenses, and non-work related coffee and meal expenses. Mr. Etter never expressed an opinion that my decision to pay him a salary of approximately $2,700,000.00 in two years (a number that greatly exceeded my own salary) was due to compromised business judgment or should not have been taken from the business.

Mr. Etter certainly had no qualms with asking Alliance Energy Partners, LLC to purchase his personal truck from him and then purchase a new truck for him to drive. Mr. Etter seemed to think there was nothing wrong with approving an employee's request that Alliance Energy Partners, LLC pay for a gym membership that cost over $300 per month. So, not only is it false for Mr. Etter to indicate to any third party that his approval for these expenses is needed, it was also false for Mr. Etter to leave anyone with the impression that he did not approve of those types of expenses.

And, more starkly, Counter-Defendant actually encouraged the use of funds from Alliance Energy Partners, LLC to pay for part of the wedding of me and my wife so that the social event could be used as a networking opportunity. It is false that Alliance Energy Partners, LLC paid for the entire wedding; rather, I only used funds from Alliance Energy Partners, LLC to cover the portion of the event that could reasonably be attributed to corporate networking - the pavilion tent and the catering.

It is also false that I used funds from Alliance Energy Partners, LLC to purchase a G-wagon for myself. After the initial tax liability for Alliance Energy Partners, LLC would have left Mr. Etter and myself owing approximately $800,000 each, I took the advice of our certified public accountant and incurred company expenses that would lower taxable

income. *Id.* This led to the purchase of multiple vehicles, one of which was a Mercedes-Benz G-wagon. With a curb weight of over 6,000 pounds, it qualified as a "tax write off." I did not purchase this vehicle for my personal use; it was purchased by AE Partners Holding, Inc. and paid for by Alliance Energy Partners, LLC. While my wife has driven the G-wagon on a handful of occasions, it is my company vehicle and is primarily used by me.

All of the actions I have taken in relation to Alliance Energy Partners, LLC and AE Partners Holdings, Inc. have been within my honest exercise of my business judgment and discretion.

Signed in The Woodlands, Montgomery County, Texas on April 18, 2025.

Signed by:

*Jerod Furr*

Jerod Furr