# EXHIBIT 16

**EXHIBIT 6**

CAUSE NO. 24-07-11639

| | | |
|---|---|---|
| DUSTIN ETTER | § | 457th JUDICIAL DISTRICT COURT |
| v. | § | |
| JEROD P. FURR, et al. | § | MONTGOMERY COUNTY, TEXAS |

**JEROD P. FURR'S, CORINA FURR'S, ALLIANCE FARM & RANCH, LLC'S, AE PARTNERS HOLDINGS, INC.'s, ALLIANCE ENERGY PARTNERS, LLC'S, AEP ASSET HOLDINGS, LLC'S, and INVICTIS DRILLING MOTORS, LLC'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

TO: Dustin Etter, by and through his attorney of record, Noah Meek, IRELAN MCDANIEL, PLLC, 2520 Caroline Street, 2nd Floor, Houston, Texas 77004.

Pursuant to Rule 197.2 of the Texas Rules of Civil Procedure, Defendants, Jerod P. Furr, Corina Furr, Alliance Farm & Ranch, LLC, AE Partners Holdings, Inc., Alliance Energy Partners, LLC, AEP Asset Holdings, LLC, and Invictis Drilling Motors, LLC serve their Objections and Answers to Plaintiff's Second Set of Interrogatories.

Respectfully submitted,

/s/ Alyssa M. Cuellar

J. Randal Bays
State Bar No. 01943900
randy@baysfirm.com
Alyssa M. Cuellar
State Bar No. 24135656
alyssa@baysfirm.com
THE BAYS FIRM
1503 Hailey Street
Conroe, Texas 77301
Tel: (936) 760-7670
Fax: (936) 760-7671
ATTORNEYS FOR JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE

ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC'S, and INVICTIS DRILLING MOTORS, LLC

**PLAINTIFF'S SECOND SET OF INTERROGATORIES**

**INTERROGATORY NO. 9:** Please identify and briefly describe any debt owed by Alliance Farm & Ranch, LLC or any other entity wholly owned by Jerod P. Furr to AE Partners Holdings, Inc. or any subsidiary or affiliate of AE Partners Holdings, Inc. at any time on or after 1/1/2022. Please include in the description of each such debt:

(a) The original principal amount of the debt;
(b) The current amount owed on the debt;
(c) The date the debt was incurred;
(d) The interest rate for the debt;
(e) The maturity date of the debt;
(f) What promissory note or other written instrument, if any, memorializes the debt;
(g) Whether the debt has been modified or forgiven; and
(h) The general purpose of the debt (i.e. to buy real property).

**ANSWER:** None.

**INTERROGATORY NO. 10:** Please identify and briefly describe any lease agreement between Alliance Farm & Ranch, LLC and AE Partners Holdings, Inc. or any subsidiary or affiliate of AE Partners Holdings, Inc.

**ANSWER:** See attached Lease Agreement labeled AEPARTNERS307-AEPARTNERS317.

**CERTIFICATE OF SERVICE**

This is to certify that on January 2, 2025, Jerod P. Furr's, Corina Furr's, Alliance Farm & Ranch, LLC's, AE Partners Holdings, Inc.'s, Alliance Energy Partners, LLC's, AEP Asset Holdings, LLC's, and Invictis Drilling Motors, LLC's Objections and Answers to Plaintiff's Second Set of Interrogatories was served on the following counsel of record via e-service pursuant to Rules 21 and 21a of the Texas Rules of Civil Procedure:

Noah Meek
IRELAN MCDANIEL, PLLC
2520 Caroline Street, 2nd Floor
Houston, Texas 77004.

/s/ Alyssa M. Cuellar
Alyssa M. Cuellar

# COMMERCIAL LEASE AGREEMENT

I. **THE PARTIES**. This Commercial Lease Agreement ("Agreement") made effective January 1, 2024, by and between:

Landlord, Alliance Farm & Ranch, LLC, with a mailing address of 20008 Champion Forest Drive, Suite 1203, Spring, Texas, 77379 ("Landlord") who agrees to lease the Premises to:

Tenant: Alliance Energy Partners, LLC, with a mailing address of 20008 Champion Forest Drive, Suite 1203, Spring, Texas 77379 ("Tenant"), who agrees to rent the Premises under the following terms:

Collectively the Landlord and Tenant shall be known as the "Parties."

II. **DESCRIPTION OF LEASED PREMISES**. The Landlord agrees to lease to the Tenant the following described space:

Street Address: 5450 Honea Egypt Road, Montgomery, Texas 77316
Square Feet: [18,000] SF shop space
Type of Space: industrial shop and associated outdoor facilities

Hereinafter known as the "Premises."

III. **USE OF LEASED PREMISES**. The Tenant agrees to use the Premises for: (check one)

☒ - All purposes legal under law.

☐ - Only the following purposes: Drilling Motor Assembly. Any change in the above-mentioned purposes of the Premises shall only be permitted upon the Landlord's prior written consent.

IV. **TERM OF LEASE**. The term of this Agreement shall be for a period of Three years commencing on January 1, 2024, and expiring at midnight on December 31, 2026 ("Initial Term").

V. **SECURITY DEPOSIT**. The Tenant is: (check one)

☒ - **Not Required to Pay a Deposit**. There shall be no deposit required for the successful performance of this Agreement by the Tenant ("Security Deposit").

☐ - **Required to Pay a Deposit**. The Tenant is required to pay $[AMOUNT] and shall be due and payable in advance of the Term or at the signing of this Agreement ("Security Deposit"). The Security Deposit

shall be held in escrow by the Landlord in a separate bank account as security for the successful performance of the terms and conditions of this Agreement. The Security Deposit may not be used to pay the last month's Rent unless written permission is granted by the Landlord.

VI. **RENT**. The Tenant shall be obligated to pay $30,000.00 each month with the first payment due upon the commencement of this Agreement and each monthly installment payable thereafter on the 5th day of each month ("Due Date") after the Initial Term ("Rent"). The Base Rent shall also be applied to any pro-rata period when the Tenant occupies the Premises for less than a one (1) month period.

VII. **LATE FEE**. If Rent has not been paid on the Due Date, there shall be: (check one)

☐ - **No Late Fee**. The Tenant shall not be liable to pay a penalty for any late payment due under this Agreement.

☒ - **A Late Fee**. If the Rent is not paid within 15 days of the Due Date, the Landlord will charge a penalty in the following manner: (check one)

☒ - Flat Fee. The late fee shall be equal to $200.00 and applied each ☐ occurrence ☒ day until the Rent is paid in full.

☐ - Based on Interest. The late fee shall be equal to the Rent Due with interest accumulating at a rate of [#]% per annum and applied each ☐ occurrence ☐ day until the Rent is paid in full.

All late payments made related to Rent shall be first applied to the late fee and all remaining amounts toward the outstanding Rent amounts.

VIII. **EXPENSES**. (check one)

☐ - **GROSS LEASE**.

It is recognized by both Parties that the Rent is the entirety of the payments to the Landlord. Therefore, the Tenant is not obligated to pay any additional expenses, which include utilities, real estate taxes, insurance (other than on the Tenant's personal property), charges, or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. The Landlord shall be obligated to maintain the general exterior structure of the Premises, in addition, shall maintain all major systems such as the heating, plumbing, and electrical. The parking area shall be maintained by the Landlord, including the removal of any snow or

environmental hazards as well as the grounds and lands surrounding the Premises.

The Landlord shall maintain at their expense casualty insurance for the Premises against loss by fire which may or may not include any extended coverage. The Tenant will provide and maintain personal liability and property damage insurance as a lessee, at least to the limits of One Million Dollars ($1,000,000.00), that will designate the Landlord as an "also named insured" and shall provide the Landlord with a copy of such insurance certification or policy prior to the effective date of this Agreement.

☐ - **MODIFIED-GROSS LEASE**.

**Tenant** shall be responsible for the following expenses: [TENANT'S RESPONSIBILITIES]

**Landlord** shall be responsible for the following expenses: [LANDLORD'S RESPONSIBILITIES]

The Landlord and Tenant agree to the following **shared** expenses: [SHARED RESPONSIBILITIES]

☒ - **TRIPLE NET (NNN) LEASE**.

a.) Operating Expenses. The Landlord shall have no obligation to provide any services, perform any acts, or pay expenses, charges, obligations, or costs of any kind whatsoever with respect to the Premises. The Tenant hereby agrees to pay one hundred percent (100%) of all Operating Expenses as hereafter defined for the Term of this Agreement and any extensions thereof in accordance with specific provisions hereinafter set forth. The term "Operating Expenses" shall include all costs to the Landlord of operating and maintaining the Premises and shall include, without limitation, real estate and personal property taxes and assessments, management fee(s), heating, air conditioning, HVAC, electricity, water, waste disposal, sewage, operating materials and supplies, service agreements and charges, lawn care, snow removal, restriping, repairs, repaving, cleaning and custodial, security, insurance, the cost of contesting the validity or applicability of any governmental acts which may affect operating expenses, and all other direct operating costs of operating and maintaining the Premises and related parking areas, unless expressly excluded from operating expenses.

Landlord's Initials______ Tenant's Initials______

b.) Taxes. Tenant shall pay, during the Term of this Agreement, the real estate taxes, including any special taxes or assessments (collectively, the "taxes") attributable to the Premises and accruing during the Term. Tenant, at Landlord's option, shall pay to Landlord said taxes on a monthly basis, based on one-twelfth (1/12) of the estimated annual amount for taxes. Taxes for any fractional calendar year during the Term hereof shall be prorated. In the event the Tenant does not make any tax payment required hereunder, Tenant shall be in default of this Agreement.

c.) Insurance. Tenant shall maintain, at all times during the Initial Term of this Agreement, comprehensive general liability insurance in an insurance company licensed to do business in the State in which the Premises are located and that is satisfactory to Landlord, properly protecting and indemnifying Landlord with single limit coverage of not less than: (check all that apply)

☒ - $1,000,000 for injury or death.
☒ - $1,000,000 for property damage.
☒ - $1,000,000 for casualty insurance.

During the Term of this Agreement, Tenant shall furnish the Landlord with certificate(s) of insurance, in a form acceptable to Landlord, covering such insurance so maintained by Tenant and naming Landlord and Landlord's mortgagees, if any, as additional insured.

**IX. OPTION TO RENEW**. The Tenant may: (check one)

☐ - **Not Renew this Agreement**.

☒ - **Renew this Agreement**. The Tenant may have the option to renew this Agreement with a total of one renewal period(s) with each term being three years, which may be exercised by giving written notice to the Landlord no less than 60 days prior to the expiration of this Agreement or renewal period thereafter ("Renewal Periods").

Rent for each Renewal Period shall: (check one)

☒ - Not increase.

☐ - Increase as calculated by multiplying the Rent by the annual change in the Consumer Price Index (CPI) published by the Bureau

of Labor Statistics by the most recent publication to the option period start date.

☐ - Increase by [#]%

☐ - Increase by $[AMOUNT]

The Initial Term and any renewal periods mentioned shall be collectively referred to as the "Term."

**X. LEASEHOLD IMPROVEMENTS**. The Tenant agrees that no leasehold improvements, alterations, or changes of any nature (except for those listed on any attached addenda) shall be made to the leasehold premises or the exterior of the building without first obtaining the consent of the Landlord in writing, which consent shall not be unreasonably withheld, and thereafter, any and all leasehold improvements made to the Premises which become affixed or attached to the leasehold Premises shall remain the property of the Landlord at the expiration or termination of this Agreement. Furthermore, any leasehold improvements shall be made only in accordance with applicable federal, state, or local codes, ordinances, or regulations, having due regard for the type of construction of the building housing the subject leasehold Premises.

If the Tenant makes any improvements to the Premises, the Tenant shall be responsible for any costs associated, except as otherwise agreed in writing by the Landlord.

Nothing in this Agreement shall be construed to authorize the Tenant or any other person acting for the Tenant to encumber the rents of the Premises or the interest of the Tenant in the Premises or any person under and through whom the Tenant has acquired its interest in the Premises with a mechanic's lien or any other type of encumbrance. Under no circumstance shall the Tenant be construed to be the agent, employee, or representative of Landlord. In the event a lien is placed against the Premises, through actions of the Tenant, Tenant will promptly pay the same or bond against the same and take steps immediately to have such lien removed. If the Tenant fails to have the lien removed, the Landlord shall take steps to remove the lien, and the Tenant shall pay Landlord for all expenses related to the lien and removal thereof and shall be in default of this Agreement.

**XI. DEFAULT AND POSSESSION**. In the event that the Tenant shall fail to pay said Rent, and expenses as set forth herein, or any part thereof, when the same is due and payable, or shall otherwise be in default of any other terms of said Agreement for a period of more than 15 days, after receiving notice of said default, then the parties hereto expressly agree and covenant that the Landlord may declare this Agreement terminated and may immediately re-enter said Premises and take possession of the same together with any of Tenant's

personal property, equipment or fixtures left on the Premises which items may be held by the Landlord as security for the Tenant's eventual payment and/or satisfaction of rental defaults or other defaults of Tenant under this Agreement. It is further agreed that if the Tenant is in default, that the Landlord shall be entitled to take any and all action to protect its interest in the personal property and equipment, to prevent the unauthorized removal of said property or equipment which threatened action would be deemed to constitute irreparable harm and injury to the Landlord in violation of its security interest in said items of personal property. Furthermore, in the event of default, the Landlord may expressly undertake all reasonable preparations and efforts to release the Premises including, but not limited to, the removal of all inventory, equipment or leasehold improvements of the Tenant's, at the Tenant's expense, without the need to first procure an order of any court to do so, although obligated in the interim to undertake reasonable steps and procedures to safeguard the value of Tenant's property, including the storage of the same, under reasonable terms and conditions at Tenant's expense, and, in addition, it is understood that the Landlord may sue the Tenant for any damages or past Rents due and owing and may undertake all and additional legal remedies then available.

In the event any legal action must be instituted to enforce any terms or provisions under this Agreement, then the prevailing party in said action shall be entitled to recover a reasonable attorney's fee in addition to all costs of said action.

**XII.** **LICENSES AND PERMITS**. A copy of all local, state, or federal permits acquired by the Tenant which are required for the use of the Premises shall always be kept on-site and shall be readily accessible and produced to the Landlord and/or their agents or any local, state, or federal officials upon demand.

**XIII.** **OBLIGATIONS OF TENANT**. The Tenant shall be primarily responsible whenever needed for the maintenance and general pickup of the entranceway leading into the Premises so that this is kept in a neat, safe, and presentable condition. The Tenant shall also be responsible for all minor repairs and maintenance of the leasehold Premises, particularly those items which need immediate attention and which the Tenants, or their employees, can do and perform on their own, including but not limited to, the replacement of light bulbs, as well as the normal repair and cleaning of windows, cleaning, and clearing of toilets, etc., and the Tenant shall properly maintain the Premises in a good, safe, and clean condition. The Tenant shall properly and promptly remove all rubbish and hazardous wastes and see that the same are properly disposed of according to all local, state, or federal laws, rules, regulations, or ordinances.

In the event the structure of the Premises is damaged as a result of any neglect or negligence of Tenant, their employees, agents, business invitees, or any independent contractors serving the Tenant or in any way as a result of Tenant's use and occupancy of the Premises, then the Tenant shall be primarily responsible for seeing that the proper claims are placed with the Tenant's

insurance company, or the damaging party's insurance company, and shall furthermore be responsible for seeing that the building is safeguarded with respect to said damage and that all proper notices with respect to said damage, are made in a timely fashion, including notice to the Landlord, and the party or parties causing said damage. Any damage that is not covered by an insurance company will be the liability of the Tenant.

The Tenant shall, during the Term of this Agreement, and in the renewal thereof, at its sole expense, keep the interior of the Premises in as good a condition and repair as it is at the date of this Agreement, reasonable wear and use excepted. This obligation would include the obligation to replace any plate glass damaged as a result of the neglect or acts of Tenant or her guests or invitees. Furthermore, the Tenant shall not knowingly commit nor permit to be committed any act or thing contrary to the rules and regulations prescribed from time to time by any federal, state, or local authorities and shall expressly not be allowed to keep or maintain any hazardous waste materials or contaminates on the Premises. Tenant shall also be responsible for the cost, if any, which would be incurred to bring her contemplated operation and business activity into compliance with any law or regulation of a federal, state, or local authority.

XIV. **INSURANCE**. In the event the Tenant shall fail to obtain the insurance required hereunder and fails to maintain the same in force continuously during the Term, Landlord may, but shall not be required to, obtain the same and charge the Tenant for same as additional Rent. Furthermore, Tenant agrees not to keep upon the Premises any articles or goods which may be prohibited by the standard form of fire insurance policy, and in the event, the insurance rates applicable to fire and extended coverage covering the Premises shall be increased by reason of any use of the Premises made by Tenant, then Tenant shall pay to Landlord, upon demand, such increase in insurance premium as shall be caused by said use or Tenant's proportionate share of any such increase.

XV. **SUBLET/ASSIGNMENT**. The Tenant may not transfer or assign this Agreement or any right or interest hereunder or sublet said leased Premises or any part thereof without first obtaining the prior written consent and approval of the Landlord.

XVI. **DAMAGE TO LEASED PREMISES**. In the event the building housing the Premises shall be destroyed or damaged as a result of any fire or other casualty which is not the result of the intentional acts or neglect of Tenant and which precludes or adversely affects the Tenant's occupancy of the Premises, then in every such cause, the Rent herein set forth shall be abated or adjusted according to the extent to which the leased Premises have been rendered unfit for use and occupation by the Tenant and until the demised Premises have been put in a condition at the expense of the Landlord, at least to the extent of the value and as nearly as possible to the condition of the Premises existing immediately prior

to such damage. It is understood, however, in the event of total or substantial destruction to the Premises that in no event shall the Landlord's obligation to restore, replace or rebuild exceed an amount equal to the sum of the insurance proceeds available for reconstruction with respect to said damage.

**XVII. INDEMNIFICATION**. The Tenant hereby covenants and agrees to indemnify, defend, and hold the Landlord harmless from any and all claims or liabilities which may arise from any cause whatsoever as a result of Tenant's use and occupancy of the Premises, and further shall indemnify the Landlord for any losses which the Landlord may suffer in connection with the Tenant's use and occupancy or care, custody, and control of the Premises. The Tenant also hereby covenants and agrees to indemnify and hold harmless the Landlord from any and all claims or liabilities which may arise from any latent defects in the subject Premises that the Landlord is not aware of at the signing of the lease or at any time during the Term.

**XVIII. BANKRUPTCY - INSOLVENCY**. The Tenant agrees that in the event all or a substantial portion of the Tenant's assets are placed in the hands of a receiver or a Trustee, and such status continues for a period of 30 days, or should the Tenant make an assignment for the benefit of creditors or be adjudicated bankrupt; or should the Tenant institute any proceedings under the bankruptcy act or any amendment thereto, then such Agreement or interest in and to the leased Premises shall not become an asset in any such proceedings and, in such event, and in addition to any and all other remedies of the Landlord hereunder or by law provided, it shall be lawful for the Landlord to declare the Term hereof ended and to re-enter the leased land and take possession thereof and all improvements thereon and to remove all persons therefrom, and the Tenant shall have no further claim thereon.

**XIX. SUBORDINATION AND ATTORNMENT**. Upon request of the Landlord, Tenant will subordinate its rights hereunder to the lien of any mortgage now or hereafter in force against the property or any portion thereof, and to all advances made or hereafter to be made upon the security thereof, and to any ground or underlying lease of the property provided, however, that in such case the holder of such mortgage or the Landlord under such Agreement shall agree that this Agreement shall not be divested or in any way affected by foreclosure, or other default proceedings under the said mortgage, obligation secured thereby, or agreement, so long as the Tenant shall not be in default under the terms of this Agreement. Tenant agrees that this Agreement shall remain in full force and effect notwithstanding any such default proceedings under said mortgage or obligation secured thereby.

Tenant shall, in the event of the sale or assignment of Landlord's interest in the building of which the Premises form a part, or in the event of any proceedings brought for the foreclosure of, or in the event of exercise of the power of sale

under any mortgage made by Landlord covering the Premises, attorn to the purchaser and recognize such purchaser as Landlord under this Agreement.

**XX. MISCELLANEOUS TERMS.**

a.) Usage by Tenant. Tenant shall comply with all rules, regulations, and laws of any governmental authority with respect to use and occupancy. Tenant shall not conduct or permit to be conducted upon the Premises any business or permit any act which is contrary to or in violation of any law, rules or regulations and requirements that may be imposed by any authority or any insurance company with which the Premises is insured, nor will the Tenant allow the Premises to be used in any way which will invalidate or be in conflict with any insurance policies applicable to the building. In no event shall explosives or extra hazardous materials be taken onto or retained on the Premises. Furthermore, Tenant shall not install or use any equipment that will cause undue interference with the peaceable and quiet enjoyment of the Premises by other tenants of the building.

b.) Signs. Tenant shall not place on any exterior door, wall, or window of the Premises any sign or advertising matter without Landlord's prior written consent and the approval of the local municipality. Thereafter, Tenant agrees to maintain such sign or advertising matter as first approved by Landlord in good condition and repair. Furthermore, Tenant shall conform to any uniform, reasonable sign plan or policy that the Landlord may introduce with respect to the building. Upon vacating the Premises, Tenant agrees to remove all signs and to repair all damages caused or resulting from such removal.

c.) Pets. Unless otherwise stated in this Agreement, the only pets that shall be allowed on the Premises are those needed legally due to a disability or handicap.

d.) Condition of Premises/Inspection by Tenant. The Tenant has had the opportunity to inspect the Premises and acknowledges with its signature on this Agreement that the Premises are in good condition and comply in all respects with the requirements of this Agreement. Furthermore, the Landlord makes no representation or warranty with respect to the condition of the Premises or its fitness or availability for any particular use, and the Landlord shall not be liable for any latent or patent defect therein. Furthermore, the Tenant represents that Tenant has inspected the Premises and is leasing and will take possession of the Premises with all current fixtures present in their "as is" condition as of the date hereof.

e.) Right of Entry. It is agreed and understood that the Landlord and its agents shall have the complete and unencumbered right of entry to the

Premises at any time or times for purposes of inspecting or showing the Premises and for the purpose of making any necessary repairs to the building or equipment as may be required of the Landlord under the terms of this Agreement or as may be deemed necessary with respect to the inspection, maintenance or repair of the building.

**XXI. ESTOPPEL CERTIFICATE**. Tenant at any time and from time to time, upon at least ten (10) days prior notice by Landlord, shall execute, acknowledge and deliver to Landlord, and/or to any other person, firm, or corporation specified by Landlord, a statement certifying that this Agreement is unmodified and in full force and effect, or if this Agreement has been modified, then that the same is in full force and effect except as modified and stating the modifications, stating the dates to which the Rent have been paid, and stating whether or not there exists any default by Landlord under this Agreement and, if so, specifying each such default.

**XXII. HOLDOVER**. Should Tenant remain in possession of the Premises after the cancellation, expiration, or sooner termination of this Agreement, or any renewal thereof, without the execution of a new agreement or addendum, such holding over in the absence of a written agreement to the contrary shall be deemed, if Landlord so elects, to have created and be construed to be a tenancy from month to month, terminable upon thirty (30) days' notice by either party.

**XXIII. WAIVER**. Waiver by Landlord of a default under this Agreement shall not constitute a waiver of a subsequent default of any nature.

**XXIV. GOVERNING LAW**. This Agreement shall be governed by the laws in the state of Texas.

**XXV. NOTICES**. Payments and notices shall be addressed to the following:

Landlord
Name: Alliance Farm & Ranch, LLC
Address: 20008 Champion Forest Drive, Suite 1203, Spring, Texas 77379
Phone: 281-222-8366
E-Mail: jerod.furr@alliance-energy.org

Tenant
Name: Alliance Energy Partners, LLC
Address: 20008 Champion Forest Drive, Suite 1203, Spring, Texas 77379
Phone: 281-222-8366
E-Mail: jerod.furr@alliance-energy.org

**XXVI. AMENDMENT**. No amendment of this Agreement shall be effective unless reduced to writing and subscribed by the parties with all the formality of the original.

**XXVII. BINDING EFFECT**. This Agreement and any amendments thereto shall be binding upon the Landlord and the Tenants and/or their respective successors, heirs, assigns, executors, and administrators.

IN WITNESS WHEREOF, the Parties have indicated their acceptance of the terms and conditions of this Agreement by their signatures below on the dates indicated.

**Landlord's Signature**: ____________________ Date: January 1, 2024
Print Name: Jerod P. Furr

**Tenant's Signature**: ____________________ Date: January 1, 2024
Print Name: Jerod P. Furr

AEPARTNERS000317