# EXHIBIT 24

## CAUSE NO. 24-07-11639

| | | |
|---|---|---|
| DUSTIN ETTER, | § | IN THE DISTRICT CLERK OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| AE PARTNERS HOLDINGS, INC., AEP | § | |
| ASSETS HOLDINGS, LLC, ALLIANCE | § | |
| ENERGY PARTNERS, LLC, ALLIANCE | § | |
| FARM & RANCH, LLC, CONNECT | § | |
| REALTY.COM, INC., CORINA FURR, | § | |
| JEROD P. FURR, HEAVEN LEE | § | |
| PROPERTIES, LLC D/B/A LUX GROUP | § | |
| TX, JEANA LEA HURLEY, INVICTIS | § | |
| DRILLING MOTORS, LLC, | § | |
| *Defendants.* | § | 457TH JUDICIAL DISTRICT |

### EMERGENCY MOTION TO EXPUNGE NOTICE OF LIS PENDENS

TO THE HONORABLE JUDGE OF SAID COURT:

Now into Court, through undersigned counsel, comes Jerod Furr and Alliance Farm and Ranch, LLC, who files this Motion to Expunge the Notice of Lis Pendens filed by Dustin Etter (for property that is scheduled to be sold May 5, 2025), and would show the Court as follows:

### Background

1.     The dispute between Dustin Etter and Jerod Furr (and the related entities) is a partnership dispute. This case is about money damages, and each party's right to seek same with their respective claims and counterclaims. Movant (Alliance Farm and Ranch, LLC) is the former owner of the real property located at 5450 Honea Egypt Road, Montgomery, Texas. On January 7, 2025, the property was foreclosed upon through a non-judicial foreclosure by Erik and Darla Ostrander. A copy of the foreclosure is attached as **Exhibit 1.**

### Lis Pendens Filing

2.     On or about August 5, 2024, a Notice of Lis Pendens was filed by Dustin Etter, through counsel, in the above referenced cause number and asserting claims related to the above-

described property. In particular, Etter urges that "Notice is given that the Proceeding is pending and that the Party Filing Lis Pendens is affirmatively seeking title to, the establishment of an interest in, or enforcement of an encumbrance against the Property". A copy of the Notice of Lis Pendens is attached as **Exhibit 2**. However, as set forth above, the property subject to the Lis Pendens was foreclosed upon. Moreover, the pleadings in this case do not establish "a real property claim". As such, the Lis Pendens should be expunged from the property records.

### Grounds for Expunction of Notice of Lis Pendens

3.      Section 12.0071(c) of the Property Code provides:

(c) The court shall order the notice of lis pendens expunged if the court determines that:

(1) the pleading on which the notice is based does not contain a real property claim;

(2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or

(3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d). Tex. Prop. Code Ann. § 12.0071(c) (Supp.) In re Chong, 2019 Tex. App. LEXIS 5263, *4

4.      The causes of action listed in the Etter Eighth Amended Petition are breach of fiduciary duty, fraud, statutory fraud, restitution, vicarious and participatory liability, application for receivership, and a request for injunctive relief. In their pleading and prayer, Dustin Etter asks that he be awarded "title to the property". Etter urges that the property in dispute "should have been bought by another entity", namely AE Partners, and in a nutshell, that Jerod Furr, individually and through Alliance Farm and Ranch, LLC, should not have purchased the property and/or taken a loan from Alliance Energy Partners for anything related to the property in dispute.

5.      However, the controlling case law indicates that Plaintiff has not alleged a "real property claim" under section 12.0071(c). *See, In Flores v. Haberman*, 915 S.W.2d 477 (Tex.

1995) (per curiam) (orig. proceeding), wherein the plaintiffs brought a suit for conversion against Flores, alleging that he converted property of the plaintiffs and used the proceeds to buy certain real properties. In their petition, plaintiffs sought the imposition of a constructive trust on the properties and filed notices of lis pendens on the properties. *Id.* at 478. Because the plaintiffs sought a constructive trust in the purchased properties only to satisfy the judgment they sought against Flores, the Texas Supreme Court held the plaintiffs' interest is no more than a collateral interest in the properties and the notices of lis pendens were therefore improper. *Id.* (citing *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding)).2 <u>In re Chong, 2019 Tex. App. LEXIS 5263, *6-7</u>

6.      While the plaintiff may urge differently, these principles apply to conversion claims. Typically, in a conversion suit, the claimant alleges that the proceeds of the converted property were used to purchase real estate and then seeks a constructive trust on that real property. In these cases, the courts have found that imposing a constructive trust on the real estate to satisfy the judgment against the adversary is asserting only a collateral interest in the real property and that a lis pendens is improper. *See Countrywide Home Loans, Inc.*, 240 S.W.3d at 6 (citing *In re Wolf*, 65 S.W.3d at 806).  <u>In re Chong, 2019 Tex. App. LEXIS 5263, *7-8</u>.

7.      In the instant matter, Plaintiff cites no authority in his pleadings that supports more than a collateral interest in the property and fails to state a claim that would show that supports an award of the real property to the Plaintiff.  Moreover, the property is worth approximately $6,800,000.00. A copy of the current sale contract is attached as **Exhibit 3**.  At the most, Dustin Etter can only claim that AEP loaned Alliance Farm and Ranch, LLC, $1,000,000.00, significantly less than the value of the property. Dustin Etter therefore has no basis to ask this court for full title

to the property. What Etter is trying to do is to prevent a third party, not related to this suit at all, from selling the property. This type of action should not be allowed at all.

8.      Texas courts have repeatedly rejected these types of claims, i.e., where one partner claims the other had no authority to loan money and thus Etter is seeking a money damage claim against Furr and the related entities. "However, this court has repeatedly rejected this logic. Like *Moss and Chong*, this case involves "the use of funds obtained from the plaintiff to purchase real property." *Chong*, 2019 Tex. App. LEXIS 5263, 2019 WL 2589968, at *3; *Moss v. Tennant*, 722 S.W.2d 762, 762-63 (Tex. App.— Houston [14th Dist.] 1986, orig. proceeding). In re Jackson, 2024 Tex. App. LEXIS 1842, *8-9. "The suit on which the lis pendens is based must claim a direct interest in real property rather than a collateral interest. In other words, the property against which the lis pendens is filed must **be the subject matter of the underlying lawsuit**. In re Jackson, 2024 Tex. App. LEXIS 1842, *1. This case is nothing more than a partnership dispute and the Honea Egypt property is not "the subject matter of the underlying lawsuit."

### Foreclosure Sale Also Extinguishes Lis Pendens/Renders it Moot

9.      A lis pendens is a litigation tool that is predicated on the pendency of a suit at the time of the sale or transfer with respect to which it is sought to be invoked. Thus, a lis pendens has no existence separate and apart from the litigation of which it gives notice. Aguinaga v. JAT Projects Holdings Tex., LLC, 2022 Tex. App. LEXIS 6766, *1. Now that the foreclosure has occurred, there is no litigation that is attached to the subject property.

10.     While Etter may urge that the Notice of Lis Pendens is valid and can continue to remain in place, the foreclosure renders it void and moot. "[A] resuscitated lis pendens in this case, which warns of appellants' claims against appellees regarding appellees' interest in the Property, can have no effect: those claims are moot because appellees no longer possess an interest in

the Property. <u>Aguinaga v. JAT Projects Holdings Tex., LLC, 2022 Tex. App. LEXIS 6766, *6</u>. Thus, since the property is not owned by Alliance Farm and Ranch, LLC, there is no longer anything in this suit that could be deemed an "interest in the real property". Therefore, this court should issue an order expunging the Notice of Lis Pendens.

### Attorney's fees and Costs for the Expungement

11.     "The court in its discretion may require that the party prevailing in the expunction hearing submit an undertaking to the court in an amount determined by the court." <u>Tex. Prop. Code § 12.0071</u>. Furr asks this Court to look at the underlying motive of Etter and to the extent that Etter does not voluntarily cancel the Notice of Lis Pendens, Furr asks that reasonable attorney's fees and costs be awarded for having to bring this motion. Furr also asks the court to take notice of the intentional interference with the sale of the subject property.

### Request for Relief

WHEREFORE, PREMISES CONSIDERED, Movant respectfully requests the Court:

- Grant this Motion to Expunge the Notice of Lis Pendens filed on August 13,2024 in connection with 5450 Honea Egypt Road, Montgomery, Texas 77356;

- Order the County Clerk to remove and expunge the notice from the public records;

- Grant such other and further relief as the Court deems just and proper.

*{signature on next page}*

Respectfully submitted,

E-MERGER LAW, PLLC

*/s/ Deborah L. Crain*

Deborah L. Crain
SBN: 24067319
dcrain@e-merger.law
1334 Brittmoore, Suite 2314
Houston, Texas 77043
Telephone: (346) 535-0818
*Counsel for Jerod Furr and Alliance Farm
and Ranch, LLC*

## CERTIFICATE OF CONFERENCE

On April 28, 2025, the undersigned reached out to Plaintiff's counsel regarding the Motion. Plaintiff's counsel is opposed to the filing of this Motion.

*/s/ Deborah L. Crain*

Deborah L. Crain

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2025, a true and correct copy of the foregoing instrument was served to the listed parties of record pursuant to the Texas Rules of Civil Procedure upon the following:

*/s/ Deborah L. Crain*

Deborah L. Crain

DOC# 0038
POSTED
12/06/2024 04:07PM
Rosio Munoz
L. BRANDON STEINHANN, COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

**After recording, return to:**
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF MONTGOMERY** | § |

### NOTICE OF FORECLOSURE SALE

| | |
|---|---|
| Date: | December 6, 2025 |
| Secured Obligations: | Promissory Note ("Note"), dated April 1, 2022, executed by Alliance Farm and Ranch LLC ("Borrower"), as maker, and payable to the order of Erik C. Ostrander and Darla Ostrander ("Beneficiary"), as lender, in the original principal amount of $3,800,636.00, and all extensions, renewals, replacements, and amendments thereof. |
| Deed of Trust: | Deed of Trust, dated April 1, 2022, executed by Borrower, as grantor, to Brent A. Lane, as trustee, for the benefit of Beneficiary, as lender, recorded as Clerk's File No. 2022043837 in the Official Public Records of Real Property of Montgomery County, Texas. |
| Substitute Trustees: | Richard D. Weaver and/or Len E. Walker |
| Substitute Trustees' Address: | 1800 Bering Drive, Suite 1050 Houston, Texas 77057 |

**Foreclosure Sale:**

| | |
|---|---|
| Date: | Tuesday, January 7, 2025 |
| Time: | The sale of the Property (as defined in the Deed of Trust) (such sale is the "Foreclosure Sale") will take place between the hours of 10:00 a.m. and 1:00 p.m. local time, the earliest time at which the Foreclosure Sale will be is 10:00 a.m. |
| Place: | Montgomery County Courthouse, at the following location: Old 1936 Courthouse at 301 N. Main St., Conroe, Texas 77301, or if the preceding area is no longer the designated area, the area as designated by the Montgomery County Commissioners Court. |
| Terms of Sale: | The Foreclosure Sale will be conducted as a public auction, and the real property, more particularly described in Exhibit "A", will be sold to the |

**EXHIBIT 1**

Page 1 of 7

highest bidder for cash, except that Lender's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust. Because of that default, Beneficiary, the current owner and holder of the Note, has requested Substitute Trustee to sell the Property.

Therefore, notice is given that on and at the Date, Time, and Place of Sale described above, Substitute Trustee will sell the Property by public sale to the highest bidder for cash in accordance with the Deed of Trust

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**SUBSTITUTE TRUSTEE:**

Richard D. Weaver

**SUBSTITUTE TRUSTEE:**

Len E. Walker

STATE OF TEXAS §
§
COUNTY OF HARRIS §

This instrument was acknowledged before me on this 6th day of December 2024, by Richard D. Weaver, as Substitute Trustee, and Len E. Walker, as Substitute Trustee.

Notary Public in and for the State of Texas

GUADALUPE PRICILLA LEON
Notary Public, State of Texas
Comm. Expires 08-14-2027
Notary ID 134506202

**EXHIBIT 1**

## EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE
MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD
HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING
OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT
DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE
DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE
TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED
FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO.
2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND
BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW
CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY
SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE
POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723)
FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID
WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT
AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3,
SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY
TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD
FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET
TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT
ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE
SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY
FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT
ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT;
THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF
HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE
BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06
FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE
CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT,
HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

## EXHIBIT 1

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

**EXHIBIT 1**

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN
AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST
CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN
TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE
LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF
3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID
WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE
HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID
WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT
OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

MORE COMMONLY KNOWN AS:  5450 HONEA EGYPT ROAD, MONTGOMERY,
TEXAS 77316.

**EXHIBIT 1**

**Doc #: 2025001866**
**Pages 10**

**E-FILED FOR RECORD**
01/07/2025    04:09PM

County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/07/2025**

County Clerk,
Montgomery County, Texas

**EXHIBIT 1**

**Doc #: 2025002370**
**Pages 16**

**E-FILED FOR RECORD**
01/08/2025    04:41PM

County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/08/2025**

County Clerk,
Montgomery County, Texas

**EXHIBIT 1**

4


**DOC #2024079612**

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:   YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Lis Pendens**

| | |
|---|---|
| Date: | August 5, 2024 |
| Party Filing Lis Pendens: | DUSTIN ETTER, ALLIANCE ENERGY PARTNERS, LLC, AE PARTNERS HOLDINGS, INC., AE PARTNERS HOLDINGS, LLC, AEP ASSET HOLDINGS, LLC and INVICTIS DRILLING MOTORS, LLC |
| Party's Attorney's Address: | 309 East Pecan Street Gainesville, TX  76240 |
| Other Party to Proceeding | JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTORS, LLC |
| Other Party's Address: | 5450 HONEA EGYPT RD., MONTGOMERY, TX 77356 |

Proceeding:

Court: IN THE DISTRICT COURT MONTGOMERY COUNTY - 457TH JUDICIAL DISTRICT COURT OF MONTGOMERY COUNTY, TEXAS

Cause Number:       24-07-11639

Style of Case: DUSTIN ETTER, ALLIANCE ENERGY PARTNERS, LLC, AE PARTNERS HOLDINGS, INC., AE PARTNERS HOLDINGS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTORS, LLC, PLAINTIFFS V. JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTOTS, LLC.

Type of Proceeding: ORIGINAL    PETITION    AND    APPLICATION    FOR TEMPORARY RESTRAINING ORDER & TEMPORARY INJUNCTION

Property:      ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT

**EXHIBIT 2**

Page 1 of 5

OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCP) NO. 2004-038796 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES..

Notice is given that the Proceeding is pending and that the Party Filing Lis Pendens is affirmatively seeking title to, the establishment of an interest in, or enforcement of an encumbrance against the Property.

JONATHAN W. HENLEY
Attorney for DUSTIN ETTER
State Bar No.: 24057896
309 E. Pecan
Gainesville, TX 76240
Telephone: (940) 668-2600
Facsimile: (940) 668-6880
E-mail: j.henley@bennetthenleylaw.com

ACKNOWLEDGMENT

STATE OF TEXAS            )

COUNTY OF COOKE          )

BEFORE ME, the undersigned Notary Public, on this day personally appeared JONATHAN W. HENLEY, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same has been executed for the purposes and consideration therein expressed.

GIVEN under my hand and seal of office this *August*, 2024.

Notary Public, State of Texas

LINDA LOGUE MATAS
Notary ID #128769457
My Commission Expires
November 6, 2027

**EXHIBIT 2**

EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE
MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD
HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING
OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT
DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE
DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE
TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED
FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO.
2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND
BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW
CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY
SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE
POINT IN THE WOODFOREST PARTNERS, L.P. TRACT (MCCF NO. 2006-103723)
FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID
WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT
AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3,
SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY
TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD
FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET
TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT
ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE
SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY
FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT
ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT;
THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF
HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE
BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06
FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE
CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT,
HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

**EXHIBIT 2**

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

NOTE:  The Company is prohibited from insuring the area or quantity of land described herein.  Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

**EXHIBIT 2**

**Doc #: 2024079612**
**Pages 5**

**FILED FOR RECORD**
08/13/2024   10:09AM

County Clerk
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number
sequence on the date and time stamped herein
by me and was duly  RECORDED in the Official Public
Records of Montgomery County, Texas.

**08/13/2024**

County Clerk
Montgomery County, Texas

**EXHIBIT 2**



## PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## FARM AND RANCH CONTRACT
NOTICE: Designed For Use In Sales Of Existing Farms Or Ranches Of Any Size. Not For Use In Complex Transactions.

11-04-2024



**1. PARTIES:** The parties to this contract are _____ Erik C Ostrander & Darla R Ostrander _____
(Seller) and _____ Nathan Milner _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND: The land situated in the County (or Counties) of <u>Montgomery</u>

Texas, described as follows: <u>A0151 A0151 - CARTWRIGHT MATTHEW, TRACT 1-A, SERIAL # SFW013709TXA,</u>
<u>TITLE # MH0047 0103, LABEL # NTA1551549, MODEL FC2441</u>

or as described on attached exhibit, also known as <u>5450 Honea Egypt Rd, Montgomery, TX 77316</u>
(address/zip code), together with all rights, privileges, and appurtenances pertaining thereto.

B. IMPROVEMENTS:
   (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
   (2) RESIDENTIAL IMPROVEMENTS: Any houses, garages, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:
   (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☑ portable buildings ☑ hunting blinds ☑ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☑ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☑ other: <u>As noted in exhibit A</u>

   (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: <u>All personal property not named in Exhibit A to be</u>
<u>removed 48 hours prior to final walkthrough/closing.</u>

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing .................. $2,040,000
   The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.

B. Sum of all financing described in the attached: ☑  Third Party Financing Addendum,
   ☐  Loan Assumption Addendum, ☐  Seller Financing Addendum .. $4,760,000

C. Sales Price (Sum of A and B) ....................................... $6,800,000.00

D. The Sales Price ☐ will ☑ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be adjusted based on the difference between ___3___ acres and the acreage set forth in the survey required by Paragraph 6C. The difference in acreage (either increased or decreased) shall be multiplied by the sum of $N/A ___ per acre and either added to or subtracted from the Sales Price stated in Paragraph 3C. If the Sales Price is adjusted by more than 10%, either party may terminate this contract  by  providing  written notice  to  the  other  party  within 5 ___ days  after  the  terminating  party  receives  the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to  the  amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 2 of 11    11-04-2024 |
|---|---|

(Address of Property)

☐ B. **FIXTURE LEASES:** Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. **NATURAL RESOURCE LEASES:** "Natural Resource Lease" means an existing oil and gas, mineral, geothermal, water, or other natural resource lease affecting the Property to which Seller is a party.

   ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

   ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

☐ D. **SURFACE LEASES:** "Surface Lease" means an existing lease for the surface only of the Property (for example, grazing leases, hunting leases, agricultural leases, recreational leases, wind leases, solar leases, timber or forestry leases). (Check all applicable boxes)

   ☐ (1) Seller has delivered to Buyer a copy of all written Surface Leases.

   ☐ (2) Seller provides Buyer with notice of the following oral Surface Lease(s), identifying the type of lease, name of the tenant(s), rental amount, and term: _____

   ☐ (3) Seller has not delivered to Buyer all Surface Leases (whether written or oral). Seller shall provide to Buyer a copy of all the written Surface Leases and notice of all oral Surface Leases, identifying the type of lease, the name of the tenant(s), rental amount, and term, within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Surface Leases and the earnest money shall be refunded to Buyer.

**5. EARNEST MONEY AND TERMINATION OPTION:**

  A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____ BRPS Title of Texas LLC _____ (Escrow Agent) at _____ 5353 W Alabama St Ste 310, Houston, TX 77056 _____ (address): $68,000 _____ as earnest money and $1,500 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow  agent and may be paid separately or combined in a single payment.

    (1) Buyer shall deliver additional earnest money of $0 _____ to Escrow Agent within _n/a_ days after the Effective Date of this contract.

    (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

    (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

    (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

  B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __15__ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

  C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

  D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

  E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**

  A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____ BRPS Title of Texas LLC _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

    (1) The standard printed exception for standby fees, taxes and assessments.

    (2) Liens created as part of the financing described in Paragraph 3.

    (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

Initial _____   Initial _____

**EXHIBIT 3**

| Initialed for identification by Buyer _AM_ and Seller _____ | Page 2 of 27 |
|---|---|

| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 3 of 11 | 11-04-2024 |
| --- | --- | --- |

(Address of Property)

(4) The standard printed exception as to marital rights.
(5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☑ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☑ Seller.
(7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land survey or acceptable to the Title Company and Buyer's lender(s). (Check one box only):
☑ (1) Within ___10___ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit or Declaration promulgated by the Texas Department of Insurance (T-47 Affidavit or T-47.1 Declaration). Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date if Seller fails to furnish within the time prescribed both the: (i) existing survey; and (ii) affidavit or declaration. If the Title Company or Buyer's lender does not accept the existing survey, or the affidavit or declaration, Buyer shall obtain a new survey at ☐ Seller's ☑ Buyer's expense no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer may obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier. If Buyer fails to obtain the survey, Buyer may not terminate the contract under Paragraph 2B of the Third Party Financing Addendum because the survey was not obtained.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
☐ (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: Commercial Use _____
_____.
Buyer must object the earlier of (i) the Closing Date or (ii) ___10___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
| --- | --- | --- |
| N/A | | |
| N/A | | |
| N/A | | |

F. SURFACE LEASES: The following Surface Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title:N/A
_____.

G. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or

EXHIBIT 1
Page 3 of 11

Initialed for identification by Buyer ___MM___ and Seller _____ TREC NO. 25-16

JLA Realty    5332 FM 1960 E STE C HUMBLE, TX 77346    281442611    Jasmin Lye    TXR 1701

| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 4 of 11   11-04-2024 |
|---|---|
| (Address of Property) | |

obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions.

(11) CERTIFICATE OF MOLD REMEDIATION: If the Property has been remediated for mold, Seller must provide to Buyer each certificate of mold damage remediation issued under §1958.154, Occupations Code, during the 5 years preceding the sale of the Property.

(12) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, utility, water, drainage, and public improvement districts): N/A _____

_____.

Seller's failure to provide applicable statutory notices may provide Buyer with remedies or rights to terminate the contract.

## 7. PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .

NOTICE: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

☑ (1) Buyer has received the Notice

☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316     Page 5 of 11   11-04-2024
_____(Address of Property)_____

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)

☐ (1) Buyer accepts the Property As Is.

☒ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: Removal of all scrap metal throughout property _____

_____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs to Buyer at closing. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURE:

(1) Seller ☐ is ☒ is not aware of any flooding of the Property which has had a material adverse effect on the use of the Property.

(2) Seller ☒ is ☐ is not aware of any pending or threatened litigation, condemnation, or special assessment affecting the Property.

(3) Seller ☐ is ☒ is not aware of any environmental hazards that materially and adversely affect the Property.

(4) Seller ☐ is ☒ is not aware of any dumpsite, landfill, or underground tanks or containers now or previously located on the Property.

(5) Seller ☐ is ☒ is not aware of any wetlands, as defined by federal or state law or regulation, affecting the Property.

(6) Seller ☐ is ☒ is not aware of any threatened or endangered species or their habitat affecting the Property.

(7) Seller ☒ is ☐ is not aware that the Property is located ☐ wholly ☒ partly in a floodplain.

(8) Seller ☐ is ☒ is not aware that a tree or trees located on the Property has oak wilt.

If Seller is aware of any of the items above, explain (attach additional sheets if necessary): Have a lis pendency that will be removed when current occupant vacates property _____.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $850 _____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: N/A _____

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

**8. BROKERS AND SALES AGENTS:**

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: N/A _____

_____

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.     **Page 5 of 11**

Initialed for identification by Buyer ___ || ___ and Seller ___ ___    TREC NO. 25-16
JLA Realty    5332 FM 1960 E STE C HUMBLE, TX 77346    2814442611    Jasmin Lye    TXR 1701

EXHIBIT 3

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316    Page 6 of 11    11-04-2024
(Address of Property)

## 9. CLOSING:

A. The closing of the sale will be on or before _____ 04/24/2025 _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

## 10. POSSESSION:

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

## 11. SPECIAL PROVISIONS: (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.) _____
_____.

## 12. SETTLEMENT AND OTHER EXPENSES:

A. The following expenses must be paid at or prior to closing:
(1) Seller shall pay the following expenses (Seller's Expenses):
(a) releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; brokerage fees that Seller has agreed to pay; and other expenses payable by Seller under this contract;
(b) the following amount to be applied to brokerage fees that Buyer has agreed to pay: ☐$_____ or ☐ _____% of the Sales Price (check one box only); and
(c) an amount not to exceed $ _____ to be applied to other Buyer's Expenses.
(2) Buyer shall pay the following expenses (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; brokerage fees that Buyer has agreed to pay; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS AND ROLLBACK TAXES:

A. PRORATIONS: Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

EXHIBIT 3    Initial _____  Initial _____    Page 6 of 11

Initialed for identification by Buyer ___ and Seller _____    TREC NO. 25-16
JLA Realty    5332 FM 1960 E STE C HUMBLE, TX 77346    281-242-2611    Jasmin Lye    TXR 1701

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316     Page 7 of 11   11-04-2024
(Address of Property)

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**

A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

EXHIBIT 3

Initialed for identification by Buyer _____ and Seller _____

JLA Realty    5332 FM 1960 E STE C HUMBLE, TX 77346    281442011    jasmin Lye

Page 7 of 27
TREC NO. 25-16
TXR 1701

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316          Page 8 of 11   11-04-2024
                                    (Address of Property)

## 20. FEDERAL REQUIREMENTS:

A. If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

B. The Agriculture Foreign Investment Disclosure Act (AFIDA) of 1978 requires that a foreign person who acquires, disposes of, or holds an interest in United States agricultural land must disclose such transactions and holdings to the Secretary of Agriculture. Foreign persons must file an FSA-153 in the Farm Service Agency (FSA) Service Center where the land is physically located within 90 days of the date of the transaction. Failure to report is subject to civil penalty up to 25 percent of the fair market value of the land on the date the penalty is assessed. Consult an attorney or tax professional.

## 21. NOTICES:
All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:**

Phone: _____

E-mail/Fax: nathan@milnerproperties.com

E-mail/Fax: _____

With a copy to Buyer's agent at:

Jasmin@JasminLye.com

**To Seller at:**

Phone: _____

E-mail/Fax: eostrander@appmach.com

E-mail/Fax: _____

With a copy to Seller's agent at:

Tilah@luxgrouptx.com

## 22. AGREEMENT OF PARTIES:
This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☑ Third Party Financing Addendum

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum for Section 1031 Exchange

☑ Other (list): Exhibit A

Initialed for identification by Buyer __AM__ and Seller _____

**EXHIBIT 3**

Page 8 of 27
TREC NO. 25-16
TXR 1701

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 _____ Page 9 of 11  11-04-2024
(Address of Property)

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

| Buyer's | Seller's |
|---|---|
| Attorney is: fly.law@comcast.net | Attorney is: |
| Phone: | Phone: |
| Fax: | Fax: |
| E-mail: | E-mail: |

**EXECUTED the _____ day of** 2/27/2025 **_____, 20___ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

*Nathan Milner*
Buyer

dotloop verified
02/27/25 3:54 PM CST
DHHG-T8SQ-JOBG-SMPC

Signed by:
Seller
U5F3E0A46B13428...

2/27/2025

Buyer

Signed by:
Seller
31BP0E204FEB431...

2/27/2025

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-16. This form replaces TREC NO. 25-15.

**EXHIBIT 3**

| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye | TREC NO. 25-16 |
|---|---|---|---|---|

TXR 1701

| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 10 of 11 | 11-04-2024 |
|---|---|---|
| (Address of Property) | | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ 2.5% _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:          Listing Broker:

By: *Jasmin Lye*     dotloop verified 02/27/25 2:47 PM CST HCTM-6LNU-GQAY-4YH0F      By: *Tilah Spruel*    2/27/2025

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| JLA Realty | 9000562 | Connect Realty.com | 0573369 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Jasmin Lye | 660507 | Tilah Lee Spruel | 726680 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| | | Lux Group | |
| Team Name | | Team Name | |
| jasmin@jasminlye.com | 832-857-9394 | tilah@luxgrouptx.com | 702-408-4464 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| John Altic | | Mary Goudreault | 0538377 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 5332 FM 1960 E, STE C | | 2170 Buckthorne Place, Ste 200 | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| HUMBLE, TX 77346 | | The Woodlands, TX 77380 | |
| City | State | Zip | City | State | Zip |

represents   ☑ Buyer only as Buyer's agent
                 ☐ Seller as Listing Broker's subagent

| | | | Selling Associate | License No. |
|---|---|---|---|---|

Team Name

Selling Associate's Email Address     Phone

Licensed Supervisor of Selling Associate     License No.

Selling Associate's Office Address

City     State     Zip

represents   ☑ Seller only
              ☐ Buyer only
              ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☑ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $_____ or ☑ 2.5 ___% of the total Sales Price; and (b) ☑ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $_____ or ☑ 2.5 ___% of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**DO NOT SIGN IF THERE IS A SEPARATE AGREEMENT FOR PAYMENT OF BROKERS' FEES. Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

| *signed* | 2/27/2025 | *Nathan Milner* | dotloop verified 02/27/25 3:54 PM CST FY5Y-N7DL-62L7-0HVJ |
|---|---|---|---|
| Seller   5F5E0A46B13428... | | Buyer | |

| *Signed by:* | 2/27/2025 | | |
|---|---|---|---|
| Seller   F0F0E204FEB431... | | Buyer | |

## EXHIBIT 3         Page 10 of 27

| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye | TREC NO. 25-16 |
|---|---|---|---|---|
| | | | | TXR 1701 |

Contract Concerning _5450 Honea Egypt Rd, Montgomery, TX 77316_ _age 11 of 11_ 11-04-2024
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $1,500.00 _____ (Option Fee) in the form of _____
is acknowledged.

Escrow Agent _____ Date

## EARNEST MONEY RECEIPT

Receipt of $68,000.00 _____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent _____ Received by _____ Email Address _____ Date/Time

Address _____ Phone

City _____ State _____ Zip _____ Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent _____ Received by _____ Email Address _____ Date

Address _____ Phone

City _____ State _____ Zip _____ Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $.00 _____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent _____ Received by _____ Email Address _____ Date/Time

Address _____ Phone

City _____ State _____ Zip _____ Fax

# Exhibit A

Concerning property located at:

5450
~~5850~~ Honea Egypt Road, Montgomery, TX 77316

- All furnishings in bar
- Case JX95 Tractor with Brush Hog SN#33678
- Case 586 Forklift SD#76250-2
- 2/ea Kubota Zero Turn Diesel Mowers SN#53851 & 1229
- 1/ea Honda ATV (Green side by side)
- 500 Glon Diesel Fuel Tank on wheels
- Fertilizer Spreader
- One 60KW Diesel Generator SN #8800152
- 2/ea 5 Ton overhead cranes in Shop
- Challenger Car Lift
- Paint Booth
- 4/ea Cattle as present during showing
- 2/ea Donkeys as present during showing
- TVs in Bar
- Walk-in Cooler and Freezer in Barn
- Ice Maker in Barn

*Final bill of sale to be provided at closing and funding for all items noted above*

Buyer:

*Nathan Milner*

dotloop verified
02/27/25 3:54 PM CST
N5U3-WZVP-QBEK-TR9U

Seller:

Signed by:

95F5E0A46B13428...

2/27/2025

Signed by:

276F0E204FEB431...

2/27/2025

EXHIBIT 3

Page 12 of 27

11-04-2024



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM

## TO CONTRACT CONCERNING THE PROPERTY AT



5450 Honea Egypt Rd, Montgomery, TX 77316
*(Street Address and City)*

1. **TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

☑ A. CONVENTIONAL FINANCING:

　☑ (1) A first mortgage loan in the principal amount of $4,760,000_____ (excluding any financed PMI premium), due in full in __30__ year(s), with interest not to exceed ____7% per annum for the first __30__ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____1% of the loan.

　☐ (2) A second mortgage loan in the principal amount of $_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $_____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ C. FHA INSURED FINANCING: A Section _____ FHA insured loan of not less than $_____(excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ D. VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ E. USDA GUARANTEED FINANCING: A USDA-guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ F. REVERSE MORTGAGE FINANCING: A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan. The reverse mortgage loan ☐will

　☐ will not be an FHA insured loan.

☐ G. OTHER FINANCING: A loan not of a type described above from _____ (name of lender) in the principal amount of $_____ due in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges not to exceed _____% of the loan. Buyer ☐ does ☐ does not waive all rights to terminate the contract under Paragraph 2B of this addendum for the loan described in this paragraph.

2. **APPROVAL OF FINANCING:** Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**



Initialed for identification by Buyer [M] and Seller [JS]

JLA Realty　5332 FM 1960 E STE C HUMBLE, TX 77346　2817442611　Jasmin Lye

Page 32 of 37
TREC NO. 40-11
TXR 1901

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

| | 11-04-2024 |
|---|---|
| Third Party Financing Addendum Concerning | Page 2 of 2 |

5450 Honea Egypt Rd, Montgomery, TX 77316
(Address of Property)

A. BUYER APPROVAL (*Check one box only*):

☑ This contract is subject to Buyer obtaining Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may terminate this contract within __30__ days after the Effective Date of the contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates the contract under this provision, this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not terminate the contract under Paragraph 2A, the contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.

☐ This contract is not subject to Buyer obtaining Buyer Approval.

B. PROPERTY APPROVAL: If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer may terminate this contract on or before the 3rd day before the Closing Date by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer. If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

3. **SECURITY:** If required by Buyer's lender, each note for the financing described above must be secured by vendor's and deed of trust liens.

4. **FHA/VA REQUIRED PROVISION:** If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirement in Paragraph 2B does not apply to this Paragraph 4.

A. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

B. If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

C. If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

5. **AUTHORIZATION TO RELEASE INFORMATION:**

A. Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.

B. Seller and Buyer authorize Buyer's lender, title company, and Escrow Agent to disclose and furnish a copy of the closing disclosures and settlement statements to the parties' respective brokers and sales agents provided under Broker Information.

| | | | |
|---|---|---|---|
| *Nathan Milner* | dotloop verified 02/27/25 3:54 PM CST 4YHU-JQZK-1OX5-STCD | [signature] Signed by: | 2/27/2025 |
| Buyer | | Seller 5E0A46B13428... | |
| | | [signature] Signed by: | 2/27/2025 |
| Buyer | | Seller F0E204FEB431... | |



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-11. This form replaces TREC No. 40-10.



# TEXAS REALTORS

## SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2022

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT  **5450 Honea Egypt Road
Montgomery, Texas  77316**

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller  x  is  __  is not  occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property?  __ _____ (approximate date) or  __ never  occupied the Property

**Section 1.  The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)**
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U | Item | Y | N | U | Item | Y | N | U |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cable TV Wiring | x | | | Natural Gas Lines | | x | | Pump: x sump   grinder | x | | |
| Carbon Monoxide Det. | x | | | Fuel Gas Piping: | | x | | Rain Gutters | x | | |
| Ceiling Fans | x | | | -Black Iron Pipe | | x | | Range/Stove | x | | |
| Cooktop | x | | | -Copper | | x | | Roof/Attic Vents | x | | |
| Dishwasher | x | | | -Corrugated Stainless Steel Tubing | | x | | Sauna | | x | |
| Disposal | x | | | Hot Tub | | x | | Smoke Detector | x | | |
| Emergency Escape Ladder(s) | | x | | Intercom System | | x | | Smoke Detector - Hearing Impaired | | x | |
| Exhaust Fans | x | | | Microwave | x | | | Spa | x | | |
| Fences | x | | | Outdoor Grill | | x | | Trash Compactor | | x | |
| Fire Detection Equip. | x | | | Patio/Decking | x | | | TV Antenna | x | | |
| French Drain | x | | | Plumbing System | x | | | Washer/Dryer Hookup | x | | |
| Gas Fixtures | | x | | Pool | x | | | Window Screens | x | | |
| Liquid Propane Gas: | x | | | Pool Equipment | x | | | Public Sewer System | | x | |
| -LP Community (Captive) | | x | | Pool Maint. Accessories | x | | | | | | |
| -LP on Property | x | | | Pool Heater | x | | | | | | |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | x | | | electric ___ gas  number of units: |
| Evaporative Coolers | | x | | number of units: |
| Wall/Window AC Units | x | | | number of units: 4 |
| Attic Fan(s) | x | | | if yes, describe:  temperature controled exaust fans in attic |
| Central Heat | x | | | electric x gas  number of units: 7 |
| Other Heat | x | | | if yes, describe:  4 Gree Mini Split AC/Heat Units |
| Oven | x | | | number of ovens:  5 ___ electric x gas x other: |
| Fireplace & Chimney | x | | | wood x gas logs ___ mock ___ other: |
| Carport | x | | | attached ___ not attached |
| Garage | x | | | x attached ___ not attached |
| Garage Door Openers | x | | | number of units:  2 ___ number of remotes:  4 |
| Satellite Dish & Controls | | x | | owned ___ leased from: |
| Security System | x | | | x owned ___ leased from: |

(TXR-1406) 07-10-23          Initialed by: Buyer: _____ , _____ and Seller: _____ , _____          Page 1 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                     Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **Page 15 of 27**

**EXHIBIT 3**

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

**5450 Honea Egypt Road**
**Montgomery, Texas  77316**

Concerning the Property at _____

| Item | | | |
|---|---|---|---|
| Solar Panels | | x | owned ___ leased from: |
| Water Heater | x | | x electric x gas ___ other: ___ number of units: 5 |
| Water Softener | x | | x owned ___ leased from: |
| Other Leased Items(s) | | x | if yes, describe: |
| Underground Lawn Sprinkler | x | | ___ automatic ___ manual  areas covered _____ |
| Septic / On-Site Sewer Facility | x | | if yes, attach Information About On-Site Sewer Facility (TXR-1407) |

Water supply provided by: ___ city x well ___ MUD ___ co-op ___ unknown ___ other: _____
Was the Property built before 1978? ___ yes x no ___ unknown
   (If yes, complete, sign, and attach TXR-1906 concerning lead-based paint hazards).
Roof Type: Composite _____ Age: 20yrs _____ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)? ___ yes x no ___ unknown
Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? ___ yes x no If yes, describe (attach additional sheets if necessary): _____
_____
_____
_____

**Section 2. Are you (Seller) aware of any defects or malfunctions in any of the following? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Item | Y | N | Item | Y | N | Item | Y | N |
|---|---|---|---|---|---|---|---|---|
| Basement | | x | Floors | | x | Sidewalks | | x |
| Ceilings | | x | Foundation / Slab(s) | | x | Walls / Fences | | x |
| Doors | | x | Interior Walls | | x | Windows | | x |
| Driveways | | x | Lighting Fixtures | | x | Other Structural Components | | x |
| Electrical Systems | | x | Plumbing Systems | | x | | | |
| Exterior Walls | | x | Roof | | x | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____

**Section 3. Are you (Seller) aware of any of the following conditions? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Condition | Y | N | Condition | Y | N |
|---|---|---|---|---|---|
| Aluminum Wiring | | x | Radon Gas | | x |
| Asbestos Components | | x | Settling | | x |
| Diseased Trees:  oak wilt | | x | Soil Movement | | x |
| Endangered Species/Habitat on Property | | x | Subsurface Structure or Pits | | x |
| Fault Lines | | x | Underground Storage Tanks | | x |
| Hazardous or Toxic Waste | | x | Unplatted Easements | | x |
| Improper Drainage | | x | Unrecorded Easements | | x |
| Intermittent or Weather Springs | | x | Urea-formaldehyde Insulation | | x |
| Landfill | | x | Water Damage Not Due to a Flood Event | | x |
| Lead-Based Paint or Lead-Based Pt. Hazards | | x | Wetlands on Property | | x |
| Encroachments onto the Property | | x | Wood Rot | | x |
| Improvements encroaching on others' property | | x | Active infestation of termites or other wood destroying insects (WDI) | | x |
| Located in Historic District | | x | Previous treatment for termites or WDI | | x |
| Historic Property Designation | | x | Previous termite or WDI damage repaired | | x |
| Previous Foundation Repairs | | x | Previous Fires | x | |

| | | | | |
|---|---|---|---|---|
| (TXR-1406) 07-10-23 | Initialed by: Buyer: _NN_ , _____ | and Seller: _SL_ , _____ | | Page 2 of 7 |

Tracee Spruel, 2170 Buckthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **Page 16 of 27**

**EXHIBIT 3**

**5450 Honea Egypt Road**
**Montgomery, Texas  77316**

Concerning the Property at _____

| | | | | | |
|---|---|---|---|---|---|
| Previous Roof Repairs | | | Termite or WDI damage needing repair | | x |
| Previous Other Structural Repairs | x | | Single Blockable Main Drain in Pool/Hot Tub/Spa* | | x |
| Previous Use of Premises for Manufacture of Methamphetamine | x | | | | |

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____

Fire damaged water well tank, softer/filtration system and window.  Water well tank, piping,

electrical, softener/filter replaced Jan 2024

_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.  Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice?** __ yes  x no  If yes, explain (attach additional sheets if necessary): _____

_____

_____

**Section 5.  Are you (Seller) aware of any of the following conditions?\* (Mark Yes (Y) if you are aware and check wholly or partly as applicable. Mark No (N) if you are not aware.)**

Y  N

__  x    Present flood insurance coverage.

__  x    Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir.

__  x    Previous flooding due to a natural flood event.

__  x    Previous water penetration into a structure on the Property due to a natural flood.

x  __    Located __ wholly  x partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE, AO, AH, VE, or AR).

__  x    Located __ wholly __ partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded)).

__  x    Located __ wholly __ partly in a floodway.

__  x    Located __ wholly __ partly in a flood pool.

__  x    Located __ wholly __ partly in a reservoir.

If the answer to any of the above is yes, explain (attach additional sheets as necessary): _____

_____

_____

***If Buyer is concerned about these matters, Buyer may consult Information About Flood Hazards (TXR 1414).***

*For purposes of this notice:*

*"100-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a special flood hazard area, which is designated as Zone A, V, A99, AE, AO, AH, VE, or AR on the map; (B) has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and (C) may include a regulatory floodway, flood pool, or reservoir.*

*"500-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a moderate flood hazard area, which is designated on the map as Zone X (shaded); and (B) has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate risk of flooding.*

*"Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers.*

(TXR-1406) 07-10-23          Initialed by Buyer: _____ , _____ and Seller: _____ , _____          Page 3 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Page 17 of 27
02/05/25
11:28 AM CST

**EXHIBIT 3**

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

**5450 Honea Egypt Road**

Concerning the Property at _____ **Montgomery, Texas  77316** _____

*"Flood insurance rate map" means the most recent flood hazard map published by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).*

*"Floodway" means an area that is identified on the flood insurance rate map as a regulatory floodway, which includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation more than a designated height.*

*"Reservoir" means a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land.*

**Section 6. Have you (Seller) ever filed a claim for flood damage to the Property with any insurance provider, including the National Flood Insurance Program (NFIP)?\*** __ yes _x_ no  If yes, explain (attach additional sheets as necessary): _____

_____

_____

*\*Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s).*

**Section 7. Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the Property?** __ yes _x_ no  If yes, explain (attach additional sheets as necessary): _____

_____

_____

**Section 8. Are you (Seller) aware of any of the following? (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)**

| Y | N | |
|---|---|---|
| __ | _x_ | Room additions, structural modifications, or other alterations or repairs made without necessary permits, with unresolved permits, or not in compliance with building codes in effect at the time. |
| __ | _x_ | Homeowners' associations or maintenance fees or assessments. If yes, complete the following: |

Name of association: _____

Manager's name: _____  Phone: _____

Fees or assessments are: $ _____ per _____ and are: __ mandatory __ voluntary

Any unpaid fees or assessment for the Property? __ yes ($ _____ ) __ no

If the Property is in more than one association, provide information about the other associations below or attach information to this notice.

| | | |
|---|---|---|
| __ | _x_ | Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following: |

Any optional user fees for common facilities charged? __ yes __ no If yes, describe: _____

_____

| | | |
|---|---|---|
| __ | _x_ | Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property. |
| __ | _x_ | Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.) |
| __ | _x_ | Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property. |
| __ | _x_ | Any condition on the Property which materially affects the health or safety of an individual. |
| __ | _x_ | Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold. |

If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation).

| | | |
|---|---|---|
| __ | _x_ | Any rainwater harvesting system located on the Property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source. |

(TXR-1406) 07-10-23          Initialed by Buyer: _____ _____ , _____ and Seller: _____ , _____          Page 4 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                    Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **Page 18 of 27**
11:28 AM CST
02/25/25

**EXHIBIT 3**

Concerning the Property at _____  **5450 Honea Egypt Road**
**Montgomery, Texas 77316** _____

__ x__ The Property is located in a propane gas system service area owned by a propane distribution system retailer.

__ x__ Any portion of the Property that is located in a groundwater conservation district or a subsidence district.

If the answer to any of the items in Section 8 is yes, explain (attach additional sheets if necessary): _____

_____
_____
_____
_____
_____

**Section 9. Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections?** _x_ yes __ no If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*Note: A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 10. Check any tax exemption(s) which you (Seller) currently claim for the Property:**
__ Homestead                    __ Senior Citizen                    __ Disabled
__ Wildlife Management      _x_ Agricultural                    __ Disabled Veteran
__ Other: _____                                      __ Unknown

**Section 11. Have you (Seller) ever filed a claim for damage, other than flood damage, to the Property with any insurance provider?** _x_ yes __ no

**Section 12. Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made?** __ yes _x_ no If yes, explain: _____

_____
_____
_____

**Section 13. Does the Property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?\*** __ unknown __ no _x_ yes. If no or unknown, explain. (Attach additional sheets if necessary):  _____

_____
_____

*\*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

(TXR-1406) 07-10-23          Initialed by: Buyer: _NM_ | _____ and Seller: _JH_ , _____          Page 5 of 7

**EXHIBIT 3**

<table>
<tr><td></td><td>**5450 Honea Egypt Road**</td></tr>
<tr><td>Concerning the Property at</td><td>**Montgomery, Texas 77316**</td></tr>
</table>

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

| | 2/1/2024 | | |
|---|---|---|---|
| Signature of Seller | Date | Signature of Seller | Date |

Printed Name: _____     Printed Name: _____

### ADDITIONAL NOTICES TO BUYER:

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit https://publicsite.dps.texas.gov. For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the Property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the Property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If the Property is located in a seacoast territory of this state designated as a catastrophe area by the Commissioner of the Texas Department of Insurance, the Property may be subject to additional requirements to obtain or continue windstorm and hail insurance. A certificate of compliance may be required for repairs or improvements to the Property. For more information, please review *Information Regarding Windstorm and Hail Insurance for Certain Properties* (TXR 2518) and contact the Texas Department of Insurance or the Texas Windstorm Insurance Association.

(4) This Property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations. Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

(5) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(6) The following providers currently provide service to the Property:

| | | |
|---|---|---|
| Electric: Champion Energy | phone #: _____ |
| Sewer: N/A | phone #: _____ |
| Water: N/A | phone #: _____ |
| Cable: N/A | phone #: _____ |
| Trash: Republic | phone #: _____ |
| Natural Gas: N/A | phone #: _____ |
| Phone Company: N/A | phone #: _____ |
| Propane: Amerigas _Bulk Delivery | phone #: _____ |
| Internet: TMobile 5G | phone #: _____ |

(TXR-1406) 07-10-23     Initialed by: Buyer: _____ _____ and Seller: _____ , _____     Page 6 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380     Phone: 2813063020     Fax:     5450 Honea Egypt
Tilah Lee Spruel     Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Page 20 of 27

EXHIBIT "3"

**5450 Honea Egypt Road**

Concerning the Property at _____ **Montgomery, Texas 77316**

(7) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

*Nathan Milner*

dotloop verified
02/25/25 11:28 AM CST
DFZ3-DUJJ-QYUM-WASU

_____         _____
Signature of Buyer                    Date   Signature of Buyer              Date

Printed Name: Escaped Chicken LLC              Printed Name: _____

(TXR-1406) 07-10-23          Initialed by: Buyer: *NM* _____ and Seller: *SP* , _____          Page 7 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearwood St. Suite 2200, Dallas, TX 75201 www.lwolf.com Page 21 of 27

EXHIBIT 3

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199



## INFORMATION ABOUT SPECIAL FLOOD HAZARD AREAS

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2021

**CONCERNING THE PROPERTY AT** 5450 Honea Egypt Rd, Montgomery, TX 77316

**A. FLOOD AREAS:**

(1) The Federal Emergency Management Agency (FEMA) designates areas that have a high risk of flooding as special flood hazard areas.

(2) A property that is in a special flood hazard area is designated on flood insurance rate maps with a zone beginning in a "V" or "A". Both V-Zone and A-Zone areas indicate a high risk of flooding.

(3) Some properties may also lie in the "floodway" which is the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge a flood under FEMA rules. Communities must regulate development in these floodways.

**B. AVAILABILITY OF FLOOD INSURANCE:**

(1) Generally, flood insurance is available regardless of whether the property is located in or out of a special flood hazard area. Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested.

(2) FEMA encourages every property owner to purchase flood insurance regardless of whether the property is in a high, moderate, or low risk flood area.

(3) A homeowner may obtain flood insurance coverage (up to certain limits) through the National Flood Insurance Program. Supplemental coverage is available through private insurance carriers.

(4) A mortgage lender making a federally related mortgage will require the borrower to maintain flood insurance if the property is in a special flood hazard area.

**C. GROUND FLOOR REQUIREMENTS:**

(1) Many homes in special flood hazard areas are built-up or are elevated. In elevated homes the ground floor typically lies below the base flood elevation and the first floor is elevated on piers, columns, posts, or piles. The base flood elevation is the highest level at which a flood is likely to occur as shown on flood insurance rate maps.

(2) Federal, state, county, and city regulations:

(a) restrict the use and construction of any ground floor enclosures in elevated homes that are in special flood hazard areas.

(b) may prohibit or restrict the remodeling, rebuilding, and redevelopment of property and improvements in the floodway.

(3) The first floor of all homes must now be built above the base flood elevation.

(a) Older homes may have been built in compliance with applicable regulations at the time of construction and may have first floors that lie below the base flood elevation, but flood insurance rates for such homes may be significant.

JLA Realty                    5332 FM 1960 E STE C HUMBLE, TX 77346               2817442611          Page 22 of 27
                                        **EXHIBIT 3**                                                            Jasmin Lye

Case 25-30155   Document 80-24   Filed in TXSB on 05/14/25   Page 42 of 46
dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Information about Special Flood Hazard Areas concerning <u>5450 Honea Egypt Rd, Montgomery, TX 77316</u>

(b) It is possible that modifications were made to a ground floor enclosure after a home was first built. The modifications may or may not comply with applicable regulations and may or may not affect flood insurance rates.

(c) It is important for a buyer to determine if the first floor of a home is elevated at or above the base flood elevation. It is also important for a buyer to determine if the property lies in a floodway.

(4) Ground floor enclosures that lie below the base flood elevation may be used only for: (i) parking; (ii) storage; and (iii) building access. Plumbing, mechanical, or electrical items in ground floor enclosures that lie below the base flood elevation may be prohibited or restricted and may not be eligible for flood insurance coverage. Additionally:

(a) in A-Zones, the ground floor enclosures below the base flood elevation must have flow-through vents or openings that permit the automatic entry and exit of floodwaters;

(b) in V-Zones, the ground floor enclosures must have break-away walls, screening, or lattice walls; and

(c) in floodways, the remodeling or reconstruction of any improvements may be prohibited or otherwise restricted.

## D. COMPLIANCE:

(1) The above-referenced property may or may not comply with regulations affecting ground floor enclosures below the base flood elevation.

(2) A property owner's eligibility to purchase or maintain flood insurance, as well as the cost of the flood insurance, is dependent on whether the property complies with the regulations affecting ground floor enclosures.

(3) A purchaser or property owner may be required to remove or modify a ground floor enclosure that is not in compliance with city or county building requirements or is not entitled to an exemption from such requirements.

(4) A flood insurance policy maintained by the current property owner does not mean that the property is in compliance with the regulations affecting ground floor enclosures or that the buyer will be able to continue to maintain flood insurance at the same rate.

(5) Insurance carriers calculate the cost of flood insurance using a rate that is based on the elevation of the lowest floor.

(a) If the ground floor lies below the base flood elevation and does not meet federal, state, county, and city requirements, the ground floor will be the lowest floor for the purpose of computing the rate.

(b) If the property is in compliance, the first elevated floor will be the lowest floor and the insurance rate will be significantly less than the rate for a property that is not in compliance.

(c) If the property lies in a V-Zone the flood insurance rate will be impacted if a ground floor enclosure below the base flood elevation exceeds 299 square feet (even if constructed with break-away walls).

**EXHIBIT 3**

dotloop signature verification
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Information about Special Flood Hazard Areas concerning 5450 Honea Egypt Rd, Montgomery, TX 77316

## E.  ELEVATION CERTIFICATE:

The elevation certificate is an important tool in determining flood insurance rates. It is used to provide elevation information that is necessary to ensure compliance with floodplain management laws. To determine the proper insurance premium rate, insurers rely on an elevation certificate to certify building elevations at an acceptable level above flood map levels. If available in your area, it is recommended that you obtain an elevation certificate for the property as soon as possible to accurately determine future flood insurance rates.

**You are encouraged to: (1) inspect the property for all purposes, including compliance with any ground floor enclosure requirement; (2) review the flood insurance policy (costs and coverage) with your insurance agent; and (3) contact the building permitting authority if you have any questions about building requirements or compliance issues.**

Receipt acknowledged by:

| | |
|---|---|
| *Nathan Milner*     dotloop verified<br>02/25/25 11:49 AM CST<br>KOWR-GH9N-RN7B-UGON | |
| Signature     Date | Signature     Date |

## ⚡ TEXAS REALTORS®

# INFORMATION ABOUT ON-SITE SEWER FACILITY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of Realtors®, Inc., 2004

**CONCERNING THE PROPERTY AT**          **5450 Honea Egypt Road**
                                        **Montgomery, Texas 77316**

## A. DESCRIPTION OF ON-SITE SEWER FACILITY ON PROPERTY:

(1) Type of Treatment System:  [X] Septic Tank    [X] Aerobic Treatment          [ ] Unknown
_____

(2) Type of Distribution System: **Sprinklers, Leach Lines (2 Systems)**          [ ] Unknown

(3) Approximate Location of Drain Field or Distribution System: _____          [ ] Unknown
**Southside of Main House : Aerobic System**
**Northside of Barndominium : Leach Line System**
_____

(4) Installer: _____          [X] Unknown

(5) Approximate Age: **15 Years**          [ ] Unknown

## B. MAINTENANCE INFORMATION:

(1) Is Seller aware of any maintenance contract in effect for the on-site sewer facility?          [X] Yes   [ ] No
If yes, name of maintenance contractor: **Coast to Coast**
Phone: **(936)894-0752**          contract expiration date: _____
*Maintenance contracts must be in effect to operate aerobic treatment and certain non-standard" on-site sewer facilities.)*

(2) Approximate date any tanks were last pumped? _____ **April 30, 2021**

(3) Is Seller aware of any defect or malfunction in the on-site sewer facility?          [ ] Yes   [X] No
If yes, explain: _____
_____
_____

(4) Does Seller have manufacturer or warranty information available for review?          [ ] Yes   [ ] No

## C. PLANNING MATERIALS, PERMITS, AND CONTRACTS:

(1) The following items concerning the on-site sewer facility are attached:
[ ] planning materials [ ] permit for original installation [ ] final inspection when OSSF was installed
[ ] maintenance contract [ ] manufacturer information [ ] warranty information [ ] _____

(2) "Planning materials" are the supporting materials that describe the on-site sewer facility that are submitted to the permitting authority in order to obtain a permit to install the on-site sewer facility.

(3) **It may be necessary for a buyer to have the permit to operate an on-site sewer facility transferred to the buyer.**

(TXR-1407) 1-7-04          Initialed for Identification by Buyer _____ and Seller _____, _____          Page 1 of 2

Tracee Spruel, 2170 Buekhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Titah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Page 25 of 27

**EXHIBIT 3**

Information about On-Site Sewer Facility concerning _____ **5450 Honea Egypt Road**
**Montgomery, Texas 77316** _____

**D. INFORMATION FROM GOVERNMENTAL AGENCIES:** Pamphlets describing on-site sewer facilities are available from the Texas Agricultural Extension Service. Information in the following table was obtained from Texas Commission on Environmental Quality (TCEQ) on 10/24/2002. The table estimates daily wastewater usage rates. Actual water usage data or other methods for calculating may be used if accurate and acceptable to TCEQ.

| Facility | Usage (gal/day) without water-saving devices | Usage (gal/day) with water-saving devices |
|---|---|---|
| Single family dwelling (1-2 bedrooms; less than 1,500 sf) | 225 | 180 |
| Single family dwelling (3 bedrooms; less than 2,500 sf) | 300 | 240 |
| Single family dwelling (4 bedrooms; less than 3,500 sf) | 375 | 300 |
| Single family dwelling (5 bedrooms; less than 4,500 sf) | 450 | 360 |
| Single family dwelling (6 bedrooms; less than 5,500 sf) | 525 | 420 |
| Mobile home, condo, or townhouse (1-2 bedroom) | 225 | 180 |
| Mobile home, condo, or townhouse (each add'l bedroom) | 75 | 60 |

**This document is not a substitute for any inspections or warranties. This document was completed to the best of Seller's knowledge and belief on the date signed. Seller and real estate agents are not experts about on-site sewer facilities. Buyer is encouraged to have the on-site sewer facility inspected by an inspector of Buyer's choice.**

DocuSigned by:
_[signature]_                    2/6/2024
_____        _____        _____        _____
Signature of Seller              Date              Signature of Seller              Date
**Alliance Farm & Ranch Llc**

Receipt acknowledged by:

_Nathan Milner_    dotloop verified
                   02/27/25 3:54 PM CST
                   UWHJ-8QWR-5NLM-ZO4H
_____        _____        _____        _____
Signature of Buyer               Date              Signature of Buyer               Date

Tracee Spruel, 2170 Buckthorne The Woodlands TX 77380                     Phone: 2813063020        Fax:        5450 Honea Egypt
Tilah Lee Spruel              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

**EXHIBIT 3**                                                        Page 26 of 27

dotloop signature verification: ...
Docusign Envelope ID: 19C3EF00-FF88-4819-8C10-4A6DFAB2CB1A



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)       11-04-2024

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT



**5450 Honea Egypt Road**                                    **Montgomery**
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐ (1) The Sales Price in Paragraph 3 of the contract is:
    A. Cash portion of Sales Price payable by Buyer at closing .................... $ _____
    B. Sum of financing described in the contract......................................... $ _____
    C. Sales Price (Sum of A and B)............................................................. $ _____

☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments: (Notice: Paragraph 7 of the contract governs the completion, delivery of documentation, and transfer of warranties of repairs and treatments.) _____

☒ (3) The date in Paragraph 9 of the contract is changed to _____**May 5**_____ , **2025** .

☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to ☐ $ _____ or ☐ _____ % of the Sales Price (check one box only).

☐ (5) The amount in Paragraph 12A(1)(c) of the contract is changed to $ _____ .

☐ (6) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐ (7) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____ , _____ . This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☐ (8) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐ (9) The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____ , ____ .

☐ (10) **Other Modifications:** (Real estate brokers and sales agents are prohibited from practicing law.) _____

**CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS FORM CAREFULLY.

| **EXECUTED the** _____ **day of** ___04/23/2025___ , _____ . **(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)** |
|---|

_Nathan Milner_ (dotloop verified 04/23/25 3:52 PM CDT FM13-VDYC-EKDU-7HWM)
Buyer

_Signed by:_ _____                                   4/23/2025
Seller **Erik C. Ostrander**

Buyer

_Signed by:_ _____                                   4/23/2025
Seller **Darla R. Ostrander**

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov ) TREC No. 39-10. This form replaces TREC No. 39-9.

TREC NO. 39-10
TXR 1903

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   Page 27 of 27

EXHIBIT 3