IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| ALLIANCE FARM AND RANCH, LLC § | Bankruptcy Case No. 25-30155 |
| and § | |
| ALLIANCE ENERGY PARTNERS, LLC § | |

### DUSTIN ETTER'S RESPONSE TO
### OKIN ADAMS' APPLICATION FOR APPROVAL

Creditor and Interested Party Dustin Etter files this Response to the Application for Approval of Okin Adams ... (Doc. 130). Mr. Etter is opposed to the Application. In short, Okin Adams should be denied any fees because:

(a) Okin Adams had significant and obvious conflicts of interest in its joint representation of the two adverse debtors from the onset of the representation;

(b) Okin Adams was at best negligent in its duties to the Debtors by assisting their principal Jerod Furr in his efforts to misappropriate funds and property from the Debtors and hide and postpone the discovery of past misappropriation; and

(c) It appears that the retainer payments received by Okin Adams are at least in part derived from funds misappropriated from the Debtors, Mr. Furr, or an entity on whose behalf Mr. Furr has derivative claims.

1. Mr. Etter's Response to Okin Adams' prior application to employ filed on 3/24/2025 (Doc. 28) is incorporated herein by reference. Okin Adams was originally hired by the debtors' majority shareholder/member Jerod Furr in or around December 2024 to consult about putting Debtor Alliance Energy Partners, LLC ("AEP") into bankruptcy. It is undisputed that the principal asset of AEP is claims against Jerod Furr and his wholly-owned entity Debtor Alliance Farm & Ranch, LLC ("Alliance Farm"). For whatever reason, Mr. Furr did not hire Okin Adams at that time and instead hired another firm to file for bankruptcy for Debtor Alliance Farm only, who filed for bankruptcy on January 7, 2025.

2. From the start of their representation of Alliance Farm, Okin Adams had

significant and obvious conflicts of interest. 11 USC § 327; TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06. Okin Adams' original client was AEP, which has significant claims against Alliance Farm for well in excess of the purported $1,000,000 loan at 0% interest not memorialized by so much as a promissory note that Alliance Farm's owner Jerod Furr had AEP make to Alliance Farm. A 0% interest $1,000,000 loan is a sham on its face. Arguably the #1 job of an attorney representing AEP should be to have it sue Alliance Farm and prevent Alliance Farm from spending out of funds that were misappropriated from AEP to pay for anything, including Alliance Farm's lawyers. However, it appears that the AEP bankruptcy was filed in significant part to interfere with, impede, and defeat AEP's right to full recovery from Alliance Farm and others rather than to facilitate the orderly and maximum payment of AEP's creditors.

3. During the time that Okin Adams represented Alliance Farm, and later both Alliance Farm and AEP, until shortly before withdrawing, Okin Adams apparently failed to make even the most trivial inquiries into the debts and other obligations that Alliance Farm owed to AEP or the debts or obligations that the Debtors' controlling principal Jerod Furr owed to the Debtors. For instance, a cursory inquiry of Debtor Alliance Farm's bank statements would have shown that Mr. Furr caused AEP to transfer hundreds of thousands of dollars to Alliance Farm which was used to either support Mr. Furr's lifestyle or to make direct transfers to Mr. Furr's personal bank account ending in 2389. These transfers included a $70,000 transfer from Alliance Farm to Mr. Furr, essentially emptying its bank account, on 1/7/2025, the day that Alliance Farm filed for bankruptcy.

4. Of note, during the course of Okin Adams' representation of the Debtors, the undersigned counsel repeatedly requested that Okin Adams take steps to protect the interests of AEP. Okin Adams not only did not take any such steps, it apparently did not

even think that reading them was worthy of a single 0.1 hour entry on their bills. This is consistent with Okin Adams' pattern of enabling the Debtors' principal Jerod Furr rather than furthering the true interests of the Debtors, and in particular the interests of Okin Adams' original client Debtor AEP. To the extent that Okin Adams provided any benefit to the Debtors, it was largely unintentional or incidental to their apparent primary purpose which was to benefit Jerod Furr at the expense of the Debtors and their creditors.

5.  Finally, as noted, Mr. Etter has information and belief that Okin Adams' fee has at least been paid out of funds which were misappropriated from the Debtors as well as their non-bankrupt affiliates AE Partners Holdings, Inc. ("AEPH") and Invictus Drilling Motors, LLC ("Invictus"). Mr. Etter opposes Okin Adams' fee application to the extent it could be construed as adjudicating substantive claims that Mr. Etter may have against Okin Adams for its receipt and retention of misappropriated funds. *See Caplin & Drysdale v. United States*, 491 U.S. 617, 626 (1989); *see also* Texas Disciplinary Rule of Professional Conduct R. 1.15.

## **PRAYER**

Creditor and Interested Party Dustin Etter requests and prays that Okin Adams' Application be denied and for such other and further relief to which he may be justly entitled.

Respectfully submitted,

IRELAN STEPHENS, PLLC

By: /s/ Noah Meek
_____
Noah E. W. Meek
State Bar No. 24084554
Email: nmeek@irelanlaw.com
2520 Caroline St., 2nd Floor
Houston, Texas 77004
Phone: (713) 222-7666
Fax:    (713) 222-7669

**ATTORNEYS FOR DUSTIN ETTER**

### CERTIFICATE OF SERVICE

This is to certify that on June 23, 2025, a true and correct copy of this instrument was served upon all parties **VIA the Court's CM/ECF System** in compliance with the Federal Rules of Bankruptcy Procedure.

 /s/ Noah Meek
_____
Noah Meek