IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| ALLIANCE FARM AND RANCH, LLC § | Bankruptcy Case No. 25-30155 |
| and § | |
| ALLIANCE ENERGY PARTNERS, LLC § | |

### PLAINTIFF'S MOTION FOR RELIEF FROM AUTOMATIC STAY

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON AUGUST 21, 2025 AT 11 AM IN COURTROOM 400, 515 RUSK, HOUSTON, TEXAS 77002.**

Dustin Etter files this Motion for Relief from Automatic Stay pursuant to FED. R. BANKR. P. 4001 and 11 USC § 362(d). Mr. Etter seeks to lift the automatic stay as it may apply to any claims he has asserted in the adversary proceeding with Case No. 25-03382 (the "Etter v. Furr Lawsuit") so that it can proceed without impediment and so that Mr. Etter may liquidate his claims against Debtor Alliance Farm & Ranch, LLC ("AFR"), any claims he may have against Alliance Energy Partners, LLC ("AEP"), and his claims against related parties such as AFR's owner and AEP's president Jerod Furr. "Courts often grant creditors relief from the automatic stay so they can adjudicate their unliquidated claims against a debtor . . . , particularly when the claims are already the subject of pending litigation." *Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 414 (5th Cir. 2017). Mr. Etter requests that this Court do the same here.

1. On July 28, 2024, Dustin Etter filed a lawsuit against his business partner ("partner" in the colloquial sense) Jerod Furr related to the collapse of their oilfield services business together. The parent company of the business is AE Partners Holdings, Inc. ("AEPH") and the business also consisted of AEPH's wholly-owned subsidiaries Debtor AEP, non-debtor Invictus Drilling Motors, LLC ("Invictus"), and non-debtor AEP Asset Holdings, LLC ("AEP Asset Holdings"). Mr. Etter sued Mr. Furr, Mr. Furr's entity AFR, and others asserting fraud, misappropriation from the business, self-dealing, and gross mismanagement. Mr. Etter asserted both individual claims as well as derivative claims. Some of the derivative claims were asserted on behalf of Debtor AEP and others were asserted on behalf of its non-debtor affiliates. Significant litigation, including some discovery and two depositions, took place in the state court before its removal on May 20, 2025. Mr. Etter's most recent pleading in the Etter v. Furr Lawsuit is Doc. 80-11.

2. <u>Claims Against AFR</u>: Mr. Etter has multiple claims in the Etter v. Furr Lawsuit which assert joint and several liability against Mr. Furr and Debtor AFR. These claims largely fall into two broad buckets of related claims. <u>First</u>, Mr. Etter has claims against Mr. Furr and AFR related to the April 2022 restructure of the business in which AEPH, Invictus, and AEP Asset Holdings were created and AEP was converted from being directly owned by Mr. Etter and Mr. Furr to being a wholly-owned subsidiary of AEPH. Without telling Mr. Etter, a couple of weeks before the restructure, Mr. Furr took approximately $1,000,000 out of the business to buy a 73-acre ranchette in the name of AFR, which Mr. Furr had just created to own the ranchette. Mr. Furr had previously told Mr. Etter that the ranchette was going to be bought in the name of the business and the contract on the property was originally in the name of AEP until shortly before the closing. Due to the undisclosed misappropriation from AEP shortly before the restructure, Mr.

**2** of **6**

Etter was on a capital account basis effectively a majority owner of the business at the time of the April 2022 restructure and he never would have agreed to take a minority ownership interest in the business under such circumstances. Although AEP is a part of the overall business and the restructure as a whole, AEP is not a party to the main restructuring agreement that Mr. Etter was fraudulently induced into signing, which is attached as Doc. 170-1. <u>Second</u>, after the restructure Mr. Furr caused non-debtor AEPH and non-debtor Invictus to make hundreds of thousands of dollars in self-dealing payments to AFR. AFR does not and has never had a legitimate business purpose for existing. Rather, AFR is in essence an tool that Mr. Furr created to defraud Mr. Etter and possibly also to attempt to insulate assets that Mr. Furr was misappropriating from the business from both Mr. Etter and creditors of Debtor AEP. AFR got its money almost exclusively from Mr. Furr's misappropriation from the business and it spent its money almost exclusively on personal expenses for Mr. Furr.

3.  <u>Potential Claims against AEP</u>: Mr. Etter also anticipates potentially bringing claims against AEP in the alternative to fraudulent transfer or breach of fiduciary duty claims that Mr. Etter anticipates that AEP may bring against Mr. Furr. Mr. Etter and Mr. Furr had an agreement that they would both get equal compensation from the business. However, as illustrated by the working and non-exhaustive comparison of what each owner received attached as Doc. 170-2, Mr. Furr got more than double—at least $2,500,000 more—than what Mr. Etter got. To the extent that, as between AEP and Mr. Furr, the part of that excess money that Mr. Furr directly or indirectly (through his entities AFR or J. Parker Construction or through payments to third parties for his benefit) received is proper and not an avoidable transfer, under the terms of the parties agreements, Mr. Etter would be entitled to equal payments. However, to the extent that

the Trustee is able to avoid the excess payments that AEP made to Mr. Furr, Mr. Etter may not then take the position that AEP owes him those amounts.

4. It is in the interests of fairness and judicial economy that Mr. Etter and all other parties be permitted to proceed on any claims they may have in or related to the Etter v. Furr Lawsuit. "The decision to lift the stay may be upheld on judicial economy grounds alone" *In re Young*, No. 06-80397-G3-7, 2006 Bankr. LEXIS 2934, at *7 (Bankr. S.D. Tex. 2006); see also *Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir. 1985). It would be unfair and inefficient to liquidate the claims in the Etter v. Furr Lawsuit on a piecemeal basis either by taking joint and several liability claims and adjudicating the claims against debtors and non-debtors separately. Additionally, a substantial amount of litigation and discovery was already undertaken in the Etter v. Furr Lawsuit prior to removal, including two oral depositions. Also, adjudicating an interconnected multi-lateral dispute in a series of broken-up 1-on-1 claims proceedings or related proceedings will almost certainly result in enormous amount of unnecessary and unfair gamesmanship. Allowing the Etter v. Furr Lawsuit to continue its course unimpeded by the bankruptcy stay is the fairest and most efficient way to liquidate the various claims in that case. See *In re Touchstone Home Health LLC*, 572 B.R. 255, 275 (Bankr. D. Colo. 2017); see also *Jim's Maint. & Sons Inc. v. Target Corp. (In re Jim's Maint. & Sons Inc.)*, 418 F. App'x 726, 728 (10th Cir. 2011).

5. Jerod Furr's main nominal objection to lifting the stay seems to be that he wants everything in the Etter v. Furr Lawsuit instead handled through the claims allowance process. Doing so would be massively inefficient as explained above. Additionally, "liquidation is *not* the same as allowance of a claim." *In re Touchstone Home Health LLC*, 572 B.R. 255, 275 (Bankr. D. Colo. 2017) (emphasis in the original). Also, as

Mr. Etter has also repeatedly pointed out, Mr. Furr has a massive incentive to delay any progress on the Etter v. Furr Lawsuit as long as possible so that he can continue to spend funds that he misappropriated from the Debtors and their affiliates shortly before and in at least one instance after the bankruptcy filings, including a $70,000 transfer from AFR on 1/7/2025 after it filed for bankruptcy, a $300,000 transfer from Debtor AEP on 2/3/2025 less than 90 days before it filed for bankruptcy (Doc. 170-3), and a $130,000 in transfers ($30,000 on 11/20/2024 and $100,000 on 11/22/2024) from non-debtor AEPH (which is the parent company of Debtor AEP) in November 2024 (Doc. 170-4).

6.     The Trustee's main objection to lifting the stay seems to be that the Trustee wants more time to evaluate the case. Mr. Etter appreciates the Trustee's concerns and has repeatedly offered to give different deadlines to the Trustee and to refrain from seeking discovery from the Trustee. But more than 2 months have passed since the Trustee's appointment and "the house is on fire" in the sense that Mr. Furr in all likelihood living out of and actively spending from money he recently misappropriated from the Debtors and the non-debtor affiliates. Mr. Furr has misappropriated more than $500,000 from the Debtors and non-debtor affiliates since the Etter v. Furr Lawsuit was filed in July 2024. The recent agreed temporary injunction slows the bleeding by stopping continued transfers out of the Debtors and non-debtor affiliates but it does not stop the bleeding the continues from Mr. Furr's continued spending out of money that he has already transferred to himself. The Trustee's concerns should not be a basis for continuing to jam up Mr. Etter's ability to develop and prosecute his claims against non-debtors.

## **PRAYER**

Plaintiff requests and prays that this Motion be granted and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

IRELAN STEPHENS, PLLC

By: /s/ Noah Meek
_____
Noah E. W. Meek
State Bar No. 24084554
Email: nmeek@irelanlaw.com
2520 Caroline St., 2nd Floor
Houston, Texas 77004
Phone:  (713) 222-7666
Fax:      (713) 222-7669

**ATTORNEYS FOR PLAINTIFF
DUSTIN ETTER**

## CERTIFICATE OF SERVICE

This is to certify that on July 30, 2025, a true and correct copy of this instrument was served ***via ECF*** upon all parties entitled to notice under FED. R. BANKR. P. 4001 in compliance with the Federal Rules of Bankruptcy Procedure and the local rules.

 /s/ Noah Meek
_____
Noah Meek

## CERTIFICATE OF CONFERENCE

I have conferred with counsel for the Trustee and counsel for Mr. Furr. Counsel for Mr. Furr has said that he is opposed to this Motion and counsel for the Trustee has said that he is opposed at this time.

 /s/ Noah Meek
_____
Noah Meek