

**PERSONAL & CONFIDENTIAL**

July 28, 2025                                                                              Via Email to Counsel: eric@howley-law.com

Thomas A. Howley
Chapter 11 Trustee for Alliance Farm and Ranch, LLC
and Alliance Energy Partners, LLC
700 Louisiana Street, Ste 4545
Houston, Texas 77002

Mr. Howley:

Thank you for selecting **HMP ADVISORY HOLDINGS, LLC, DBA HARNEY PARTNERS ("HP")** to provide forensic accounting services to you solely in your role as **CHAPTER 11 TRUSTEE FOR ALLIANCE FARM AND RANCH, LLC AND ALLIANCE ENERGY PARTNERS, LLC ("CLIENT" OR "YOU")** in connection with the jointly administered chapter 11 bankruptcy proceedings under lead case number 25-30155 in the Southern District of Texas, Houston Division("Bankruptcy Case"). We appreciate your confidence in HP and want to ensure that we exceed your expectations with regard to the services we will provide. This letter agreement ("Agreement") will confirm Client's agreement to engage HP for the purpose of providing advisory services on behalf of Client, as provided below.

**SERVICES AND SCOPE**

As requested by Client and agreed by HP, HP will provide Client with forensic accounting services, as follows (the "Services"):

- Analyze historical cash transactions by and between Alliance Farm Ranch, LLC, Alliance Energy Partners, two non-debtor affiliate entities, and two individual equity holders for a to be specified period of time across also to be identified bank accounts;

- Produce a forensic report detailing the historical cash transactions;

- Provide testimony, as necessary, to support the reported findings; and,

- Other services as may be agreed upon between HP and Client.

The Services to be provided by HP will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations and the scope of our engagement. As you know, the exercise of professional judgment requires an open dialogue. To provide you the best level of service, we will ask you to timely disclose all pertinent material information to us.

**FEES**

The standard hourly rates for HP professionals are:

www.harneypartners.com

| | |
|---|---|
| President / EVP / COO | $700 to $800 / hour |
| Managing Director | $550 to $700 / hour |
| Sr. Manager / Director | $400 to $550 / hour |
| Manager | $350 to $450 / hour |
| Sr. Consultant | $275 to $400 / hour |
| Support Staff | $180 to $300 / hour |

For this matter, the Services are anticipated to be provided by Erik White, Managing Director, at a rate of $600.00 per hour and Kyle Schanzer, Manager, at a rate of $450.00 per hour. Additional resources may be added as needed.

This engagement in all respects is subject to the subsequent approval of HP as a Professional Person in the Bankruptcy Case.

HP determines additional staff rates based upon all relevant factors, which might include, for example, that staff's education, experience or expertise within an industry. Because these factors may evolve over time, HP may modify its hourly rate from time to time, but no more often than every 6 months.

**TERMS**
This Agreement incorporates the Standard Terms and Conditions set forth in the attached *Exhibit "A."*

**APPROVAL**
If this letter accurately represents the agreement between the parties, please sign as indicated below and return a PDF copy to gmilligan@harneypartners.com.

Sincerely,

HARNEY PARTNERS

_____
Gregory S. Milligan
*Executive Vice President*

ACCEPTED AND AGREED AS TO FORM AND CONTENT

Thomas A Howley,
Chapter 11 Trustee for Alliance Farm and Ranch, LLC
and Alliance Energy Partners, LLC

By: _____  Date: 7/29/25
Thomas A Howley

Thomas A. Howley, Chapter 11 Trustee
July 28, 2025
P a g e | 3

---

## EXHIBIT "A"
### STANDARD TERMS AND CONDITIONS

1. **SERVICES**:

HMP Advisory Holdings, LLC, dba Harney Partners ("HP") will use reasonable efforts to perform the agreed-upon Services more fully described in the engagement letter to which these Standard Terms and Conditions are attached as ***Exhibit "A."*** The Client will provide HP with all resources (physical and human) reasonably requested by HP to enable HP to perform the Services.

2. **ACCESS TO CLIENT PERSONNEL AND INFORMATION AND CLIENT REPRESENTATION CONCERNING INFORMATION PROVIDED TO HP**:

   A. The Client recognizes and confirms that, in acting pursuant to this engagement, HP will be using information in reports and other information provided by others, including, without limitation, information provided by or on behalf of the Company and other third parties. HP does not assume responsibility for and may rely, without independent verification, on the accuracy and completeness of any such reports and information. The Client will provide HP with full access to all Client personnel, books and records, including those of the Client's attorneys (subject to such safeguards as may be necessary to preserve applicable attorney-client privileged communications) and other agents and third-party representatives. The Client also represents and warrants to HP that except as disclosed to HP in writing, all information provided or made available to HP by the Client, its' directors, officers, employees, representatives, attorneys and agents at any time shall (to the best of the Client's knowledge: i) be complete and correct in all material respects, and ii) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify HP if it learns subsequently that any information provided or made available to HP in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

   B. The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by HP. The Client acknowledges that in rendering its services under this Agreement, HP will be using and relying upon the information provided by Client, its directors, officers, employees, representatives and agents. Under any of the foregoing circumstances, the Client agrees that HP shall have no duty to verify independently the reliability, accuracy or completeness of such information. The Client also agrees that HP shall incur no liability to the Client or any individual or other

*GSM*
*[initials]*

Thomas A. Howley, Chapter 11 Trustee
July 28, 2025
P a g e | 4

---

entity that may arise if any such information proves to be unreliable, inaccurate or incomplete.

3. **FEES AND EXPENSES**:

   A. For all post-petition work, HP will send monthly invoices to Client for all fees and expenses, and Client will pay to HP the amounts charged therein – *via wire transfer or ACH* – upon approval by the Bankruptcy Court. Payment of HP's invoices shall be subject to the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Professional Fee Guidelines, and any fee procedures orders entered in the Bankruptcy Case. Expenses incurred by HP on behalf of the Client will be invoiced at the actual amount incurred and not marked up. We generally charge for travel time during normal business hours at our applicable hourly rates. Outside normal business hours we charge one-half our applicable hourly rates unless the member of HP is able to work while traveling. If the member of HP works on your behalf while traveling, you will be charged our applicable hourly rates regardless of the time of travel. If the member of HP works on other clients' matters while traveling, you will not be charged for time during which the member of HP worked for other clients.

   B. In the event HP is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce HP's documents or HP's members, employees, agents, contractors, or representatives as witnesses with respect to HP's services for the Company, the Company will reimburse HP for its professional time and expenses at the current rates in effect at such time.

4. **NO THIRD-PARTY BENEFICIARIES:**

The Client acknowledges that all information, whether written or oral, created, prepared, or compiled by HP in connection with this Agreement is intended solely for the benefit and use of the Client, provided however, HP acknowledges and agrees that Client shall utilize HP's work in negotiations with Client's creditors. No other individual or entity shall be entitled to rely on such information for any purpose. Client agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Client's board of directors/trustees, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon HP's prior written consent. Without limiting the foregoing, the Client shall not (and shall not authorize any other individual or entity to) use HP's name or make available to third parties any information created, prepared, or compiled by HP under this Agreement for any reason, including obtaining or extending credit, offering or setting securities or other assets, or in any representations to third parties without HP's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Client's dissemination and use of information and work product, HP shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Client concerning any information created, prepared, or compiled, in whole or in part, by HP pursuant to this Agreement, which may be disclosed only after prior written approval by HP or as required by applicable laws, or regulatory or administrative process, including stock

exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to HP's engagement under this Agreement in required public filings or court documents.

5. **TERMINATION:**

Unless otherwise specified in this Agreement, the engagement can be terminated by either party effective upon one-week written notice to the other party, provided that upon any such termination by the Client, the Client pays to HP all amounts due and owing hereunder prior to the effective date of termination. Either party shall have the right to terminate this engagement immediately if the other party materially breaches this agreement. The terms of this Exhibit "A" shall survive any termination or expiration of this Agreement or the engagement.

6. **INDEPENDENT CONTRACTOR:**

   A.  HP is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any HP Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Client, unless expressly agreed to in a writing signed by both Client and HP. As an independent contractor, HP will have exclusive control over the management and operation of HP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in this Agreement, HP personnel that provide services to the Client under this Agreement may also provide services to other HP clients (past, present or future) in connection with unrelated matters. In addition, HP may utilize the services of qualified project employers, to assist HP with its performance of its services pursuant to this Agreement.

   B.  In rendering its services to Client hereunder, HP is not assuming any responsibility for the Client's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction. HP shall not make decisions on behalf of or instead of the Client. The management and decision making of the Client shall, at all times, remain with the board of directors or managers of the Client and its equity owners in accordance with their independent business judgment. HP and Client confirm that each will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

7. **NO FIDUCIARY RELATIONSHIP:**

Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Client, including without limitation, the Client's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand: and (b) HP, HP's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or



assigns of HP or HP affiliates (all of the foregoing in this subpart (b) collectively, the "HP Parties," and each a "HP Party") on the other hand.

8. **LIMITATION OF LIABILITY:**

Even if the remedies provided for in this agreement fail of their essential purpose and even if HP has been advised of the possibility of the following damages, in no event shall any HP Party be liable to Client or to any other person or entity, under any equitable, common law, contractual, statutory, or other theory, for (i) any incidental, special, consequential, indirect, or punitive damages, (ii) any damages measured by lost profits, opportunities or goodwill, or (iii) any damages in excess of the fees paid by Client to HP during the six-month period immediately preceding HP's actual receipt of Client's first express, written assertion of such claim.

9. **INDEMNIFICATION:**

As part of the consideration for the agreement of HP to furnish its services pursuant to this Agreement, Client agrees to indemnify and hold harmless the HP Parties to the fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement, including, without limitation. any and all of such HP Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all of such HP Parties' reasonable legal fees and expenses: provided, however, that Client shall not be responsible for any losses, claims, damages, liabilities or expenses of any HP Party to the extent, and only to the extent, that it is finally judicially determined that they are due primarily to such HP Party's gross negligence or willful misconduct. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability Client may have to HP at common law or otherwise, (ii) shall survive the expiration of HP's engagement hereunder, (iii) shall apply to any modification of HP's engagement hereunder and shall remain in full force and effect following the completion or termination of the engagement as amended or modified, and (iv) shall be binding on any successor or assign of Client and its successors or assigns.

10. **NON-SOLICITATION:**

Unless otherwise set forth in this Agreement, during the term of this engagement and for 12 months thereafter, Client and any of its affiliated companies agree not to solicit any HP Party without HP's prior written consent, and HP agrees not to solicit Client's employees without Client's prior written consent. If an employee (or in the case of HP, any HP Party) of one party (the "First Employer") becomes employed or contracted by the other party (the "Second Employer"), and 180 days have not elapsed since such employee (or Affiliate) was last employed by or provided services as a contractor to the First Employer, then the Second Employer shall be conclusively deemed to have breached its obligations under this section. As liquidated damages for such a breach, the Second Employer shall pay the First Employer an amount equal to forty percent (40%) of the total cash compensation reasonably anticipated to be paid by the Second Employer to such employee or contractor during the first year of such employment or contract relationship with the Second Employer. For purposes of this calculation, the parties agree that such payment shall be

due within 30 days after such employment or contract relationship commences, and to conclusively assume that all base salary, discretionary bonuses (in the targeted amount), contract payments (based on reasonable estimates of hours worked or jobs performed), commissions (based on reasonable performance), and other amounts are earned and paid for one entire year, without regard to whether any component of such compensation is discretionary or whether such employment or contract relationship is at will or for a definite term less than one year.

11. **TRADEMARK LICENSE**:

HP shall have the right, during the term of this agreement and thereafter, to disclose Client's relationship as a Client or former Client of HP and to use Client's trade names, trademarks, service marks and logos (collectively, "Client's Marks") for that purpose in any medium. HP shall use Client's Marks in accordance with any commercially reasonable written trademark usage policies provided by Client to HP from time to time. Nothing herein shall affect Client's ownership of Client's Marks.

12. **GOVERNING LAW; VENUE; ARBITRATION; ATTORNEY'S FEES**:

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCEPT ITS CONFLICTS OF LAWS PRINCIPLES) AND APPLICABLE FEDERAL BANKRUTPCY LAW. THE EXCLUSIVE VENUE TO RESOLVE ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT OR THE SERVICES PROVIDED OR TO BE PROVIDED BY HP TO CLIENT SHALL LIE IN THE SOUTHERN DISTRICT OF TEXAS. SUBJECT TO APPLICABLE FEDERAL LAW, THE PREVAILING PARTY IN ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT SHALL BE ENTITLED TO RECOVER HIS, HER OR ITS REASONABLE ATTORNEY'S FEES AND REASONABLE OUT-OF-POCKET EXPENSES INCURRED IN THE PROSECUTION OR DEFENSE OF CLAIMS IN SUCH DISPUTE. HP AND CLIENT HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF THE ENGAGEMENT PROVIDED FOR IN THIS AGREEMENT.

13. **MISCELLANEOUS**:
If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction to be void, invalid, or otherwise unenforceable, in whole or part, the remaining terms, provisions, covenants and restrictions contained in this Agreement shall remain in effect. Amounts past due under this Agreement shall accrue interest at the rate of 18% per year, or the maximum rate allowed by law, whichever is less. Client shall pay (or if HP pays, reimburse HP for) any applicable sales, use or similar tax imposed in connection with any sale of goods or services by HP to Client. This Agreement supersedes any prior agreement, understanding, or representation between HP and Client, and can only be modified by a written document signed by both HP and Client.

