IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Bankruptcy No. 25-30155 |
| | § | Chapter 11 |
| ALLIANCE FARM AND RANCH, LLC, and | § | Jointly Administered |
| ALLIANCE ENERGY PARTNERS, LLC, | § | |
| *Debtors*. | § | |

**MOTION FOR ALLOWANCE OF ATTORNEY'S FEES AND COSTS
AS AN ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 503(b)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

COMES NOW E-Merger Law, PLLC ("E-Merger" or the "Firm"), by and through its principal attorney, Deborah Crain, and files this Motion for Allowance of Attorney's Fees and Costs as an Administrative Expense Pursuant 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4), and would respectfully show the Court as follows:

**I.**

**BACKGROUND**

1.     Pre-bankruptcy, Alliance Farm and Ranch, LLC, a debtor in this case ("AFR Debtor"), owned a 72.96-acre ranch located at 5450 Honea Egypt Rd., Montgomery, Texas 77316 (the "Real

Property"). The Real Property was encumbered by a mortgage held by a married couple, Erik and Darla Ostrander (the "Ostranders").

2.     On January 3, 2025, and due to the imminent threat of foreclosure of the Real Property by the Ostranders, AFR Debtor filed a lawsuit styled Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander, Cause No. 25-01-00068 in the District Court of Montgomery County, Texas, 284th Judicial District (the "Lawsuit"). The Lawsuit, which sought to enjoin the Ostranders' foreclosure of the Real Property, was later transferred to the 457th Judicial District. Unfortunately, the pleadings were insufficient for the Court to stop the foreclosure.  The court sought additional information from the attorney at that time, however, the information was not provided.  *See* **Exhibit 1** – Original Petition filed by Thaison Hua.

3.     On January 7, 2025, the Ostranders caused a public foreclosure sale to take place, at which they re-purchased the Real Property. *See* Foreclosure Document filed as **Exhibit 2**. On that same day, AFR Debtor commenced its bankruptcy case under chapter 7 of title 11 of the United States Code. *See* Original Bankruptcy filing by Alliance Farm and Ranch filed as **Exhibit 3**.

4.     After the loss of the Real Property to the Ostranders, Jerod Furr, who is a creditor in this bankruptcy case as well as being the owner of AFR Debtor, retained E-Merger and Deborah Crain to protect AFR Debtor's interest in the Lawsuit against the Ostranders in Montgomery County.

5.     After E-Merger and Deborah Crain took over the prosecution of the Lawsuit, the suit was amended to bring claims of wrongful foreclosure against the Ostranders in connection with the sale of the Real Property; it also included claims related to certain personal property owned by AFR Debtor that was located on the Real Property. *See* E-Merger Fee Agreement filed as **Exhibit 4**  and First Amended Petition filed as **Exhibit 5**.

6.     This court held a hearing on April 9, 2025, to hear testimony on the legitimacy of the claims of AFR against the Ostranders.  On April 21, 2025, this Court issued a ruling, denying Etter's Motion to Dismiss. Deborah Crain and E-Merger, Law filed the amended petition to overturn the wrongful foreclosure also on April 21, 2025.

7.     Due to the efforts of E-Merger's attorneys and paraprofessionals in connection with the Lawsuit, the Ostranders agreed to settle the dispute in early May of 2025. Indeed, on the date of filing the suit, i.e., April 21, 2025, the Ostranders admitted to Jerod Furr that the foreclosure had not been properly handled.  E-Merger's principal attorney, Deborah Crain, negotiated terms with the Ostranders' counsel, whereby the Real Property (and the personal property thereon) would be resold to a 3rd-party buyer, and $1,500,000.00 of the sales proceeds would be remitted back. *See* **Exhibit 7**, Original Settlement Agreement.

8.     Ms. Crain, after going through some physical ailments, attended a hearing on the Creditors' Emergency Motion to Appoint a Chapter 11 Trustee; the first hearing had to be rescheduled because Ms. Crain was too sick (recovering from pneumonia).  The issues regarding the Settlement and the need for a 9019 Motion were presented at that hearing.  On May 27, 2025, this Court entered its Order Approving Appointment of Tom A. Howley as Chapter 11 Trustee. Three days later, on May 30, 2025, the Chapter 11 Trustee substantially incorporated the terms negotiated by E-merger into a settlement agreement between AFR Debtor and the Ostranders, and filed a motion with this Court for approval.  On June 3, 2025, the Court entered its Order Approving (I) Global Settlement Between Debtors and Erik and Darla Ostrander and (II) Granting Related Relief.  *See* **Exhibit 8**.

9.     The Real Property (and the personal property thereon) was sold to a 3rd-party buyer thereafter, and as agreed, $1,500,000.00 was delivered into the estate of the combined bankruptcy cases of AFR Debtor and Alliance Energy Partners, LLC.

10.    In addition to negotiating the settlement agreement, E-Merger, at the request of the Chapter 11 Trustee, continued to provide assistance in the preservation and administration of the bankruptcy case.

11.    By this motion, E-Merger seeks allowance of administrative expenses to recover its attorney's fees and costs pursuant to 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4). This motion was suggested to Ms. Crain by the US Trustee for consideration by the Court.

## II.
## STATUTORY AUTHORITY

12.    11 U.S.C. § 503(b) provides for the allowance of administrative expenses, including, in relevant part:

a)   § 503(b)(3)(D): The actual, necessary expenses incurred by a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; and

b)   § 503(b)(4): Reasonable compensation for professional services rendered by an attorney of an entity whose expense is allowable under § 503(b)(3)(D) based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney.

## II.
## SUBSTANTIAL CONTRIBUTION / PROFESSIONAL SERVICES RENDERED

### A.  With Respect to the Settlement

13.    "When considering whether the requirements of section 503(b)(4) have been met, the Court considers the fee and expense information that has been provided by the Movants. [Docket Nos. 2246; 2349]. The Court [**20] also takes notice of CLG's participation in the bankruptcy case, both by its numerous filings and its participation in various hearings before the Court. *In re M & G USA Corp.*, 599 B.R. 256, 265.

14.    Prior to the Firm's engagement, AFR Debtor, through former counsel, had filed a state court lawsuit seeking to enjoin the foreclosure. Despite those efforts, the Ostranders proceeded with the foreclosure sale and re-acquired title to the property.

15.    Following the January 7, 2025, loss of the Real Property to the Ostranders at foreclosure sale, and AFR Debtor's filing of its initial bankruptcy petition—initiated on the same day, Jerod Furr began to seek new counsel to unravel the mess left behind and to actively seek overturning the foreclosure.  E-Merger was retained in March, 2025, to evaluate and pursue potential claims related to the foreclosure and disposition of the Real Property.

16.    Upon retention, E-Merger undertook a comprehensive review of AFR Debtor's bankruptcy filings, the existing state court pleadings, and all relevant documentation associated with the foreclosure. The Firm conducted extensive legal research into applicable state foreclosure laws and potential causes of action, including but not limited to wrongful foreclosure, fraudulent transfer, and promissory estoppel. As the Court can see in Exhibit 5 compared to the Petition filed by bare bones suit brought by Hua, the suit filed by Ms. Crain was a substantive suit, i.e., 25 pages of suit and 161 pages of Exhibits, urging and proving that the foreclosure was invalid.  This has been the greatest asset for this bankruptcy.  It is also important to note that Jerod Furr made substantial improvements to the property, raising the value from $4,850,000.00 to $6,800,000.00,

which likewise directly contributed to the bankruptcy estate.  A summary of the work needed for the settlement is below.

17.    Between March and May 2025, our legal team undertook extensive efforts to prepare the Jerod Furr matter for filing an amended suit in state court. The work included:

a)  Conducting initial client consultations and ongoing communications to clarify objectives and strategy.

b)  Reviewing and analyzing a wide array of client documents, and legal background of the case.

c)  Performing legal research on foreclosure, promissory estoppel, and related claims, and drafting timelines and memoranda to support the amended pleadings.

d)  Attending court hearings regarding the appropriateness of the foreclosure and the path forward to overturn the foreclosure.

e)  Systematically organizing, indexing, and categorizing all documents and evidence, creating detailed charts and directories for efficient reference and production.

f)  Utilizing technology to download, process, and analyze text messages and metadata, ensuring all potential claims and causes of action were identified.

g)  Drafting and revising pleadings, answers, and motions, and preparing for and attending hearings and court proceedings.

h)  Collaborating among attorneys and legal professionals to ensure no issue was left unaddressed, with each professional contributing specialized expertise in investigation, research, document management, and litigation strategy.

All services rendered were billed according to the hours worked and the professional's rate, with no entries included from tasks not part of the project (i.e., yellow-highlighted entries were

excluded).  A copy of the bills are attached as **Exhibit 11**, and attached as **Exhibit 12** is a spreadsheet showing the billing entries, and highlights entries that were specifically reviewed and not considered part of the settlement.  On the back of the spreadsheet (and part of Exhibit 12) is also our breakdown by professional as it relates to the work performed for each category (settlement and assisting the trustee).

18.   Based on the Firm's findings, the Lawsuit against the Ostranders was amended to assert additional and refined claims, thereby strengthening AFR Debtor's legal position. In parallel, the Ostranders initiated eviction proceedings with regard to the Real Property. The Firm promptly took the appropriate action regarding the eviction and continued to work on the state court pleadings to apply additional legal and procedural pressure on the Ostranders.

19.   These efforts directly contributed to a shift in posture by the Ostranders, who subsequently engaged in settlement negotiations in May of 2025. As a result of the Firm's advocacy, the Ostranders agreed to resell the foreclosed property and remit back $1,500,000.00 in proceeds from the resale of the Real Property.

20.   This negotiated resolution was later substantially incorporated into a settlement approved by the Chapter 11 Trustee and the Bankruptcy Court. The proceeds remitted to the estate materially increased its value, thereby benefiting creditors and advancing the administration of the case.

21.   The services rendered by E-Merger Law were instrumental in achieving this outcome and constitute a substantial contribution to the estate under 11 U.S.C. § 503(b). The Firm's efforts not only preserved and enhanced estate assets but also facilitated a resolution that would not have occurred absent the Firm's intervention.

### B.  With Respect to Aiding the Bankruptcy Estate

22. In addition to the Firm's litigation efforts in state court, E-Merger Law provided meaningful and sustained assistance in connection with the joint debtors' bankruptcy proceedings. Although the Firm filed a motion seeking appointment as special counsel to the estate, that motion was not formally approved. Nevertheless, the Firm continued to support the administration of the bankruptcy, responding to numerous requests for information and documentation by the Chapter 11 Trustee.

23. The firm provided relevant documentation, factual summaries, and legal analysis concerning the status of the case, the pending state court litigation, and the potential recovery for the estate. A summary of the work supporting the Trustee is as follows:

    a) Held regular meetings with the Trustee and counsel to coordinate strategy and case updates.

    b) Provided full access to QuickBooks files, including searchable ledgers and financial summaries.

    c) Delivered organized document inventories and exhibit logs to facilitate review and analysis.

    d) Produced bank statements and financial records for debtors and affiliated entities such as J. Parker Construction.

    e) Identified and disclosed additional assets, including investment interests and drilling equipment.

    f) Prepared and shared draft summaries of claims to support estate recovery efforts.

    g) Responded promptly to requests for information and participated in strategic planning calls.

h) Utilized Clio platform to securely share documents and maintain transparency with the Trustee.  The Trustee was given access to documents instantly through the secure system, creating efficiency for the Trustee and thereby utilizing resources effectively.

24.   Although not formally appointed, the Firm's contributions were non-duplicative, necessary, and substantially advanced the interests of the estate. Accordingly, the undersigned principal of E-Merger Law respectfully submits that these efforts qualify as a substantial contribution under 11 U.S.C. § 503(b), and that the fees and costs incurred in connection with this work should be allowed as an administrative expense. Likewise, Exhibit 12 shows all of the time entries, yellow items omitted, and then a summary of work performed by the Firm by professional and for the type of work performed, i.e., work for the settlement vs. trustee.

### III.
### FEES AND COSTS REQUESTED

25. Pursuant to 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4), E-Merger respectfully requests allowance of attorney's fees and reimbursement of costs incurred in making a substantial contribution to the bankruptcy estate. The amounts detailed below, and totaling **$90,728.10**, are supported by Deborah Crain's attached declaration of Attorney's Fees.

<u>Substantial Contribution Related to the Settlement Agreement</u>

26.   As detailed above, E-Merger and its attorney's and paraprofessionals played a central role in achieving a settlement with the Ostranders following the foreclosure of AFR Debtor's Real Property (and the personal property thereon). These efforts included legal research, amendment of the state court complaint, defense against eviction proceedings, and direct negotiation with the Ostranders. The resulting settlement led to the resale of the property and the remittance of a

significant portion of the proceeds to the bankruptcy estate. Indeed – as of the filing of this motion, it is the only recovered asset of the bankruptcy estate.

27.    Total Fees Requested for Settlement-Related Services: **$54,162.00**.

Assistance to the Bankruptcy Estate

28.    Although not formally appointed as special counsel, E-Merger provided valuable assistance to the Chapter 11 Trustee and Trustee's counsel. This included supplying documentation, legal analysis, and strategic input that informed the Trustee's decision to adopt the negotiated settlement into the bankruptcy case. These efforts materially benefited the estate and were non-duplicative of the Trustee's duties.

29.    It was Ms. Crain (at the request of Jerod Furr) that suggested that additional assets might be available for the estate.  Ms. Crain provided detailed information regarding the drilling equipment that likewise has the potential to increase the value of the estate.  The additional work provided at the request of the trustee is outlined in detail above.

30.    Total Fees Requested for Bankruptcy Assistance Services: **$36,566.10**.

**III.**

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, E-Merger Law PLLC, through its undersigned principal, respectfully requests that the Court enter an order, pursuant to 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4), granting this motion, and awarding E-Merger Law PLLC the following:

        a)    Attorney's fees and costs, in the amount of **$54,162.00**, in connection with its role in obtaining the settlement agreement with the Ostranders that resulted in $1,500,000.00 in value added to the bankruptcy estate;

b)  Attorney's fees and costs in the amount of **$36,566.10**, in connection with its

substantial contribution of effort in assistance to the administration and

preservation of the bankruptcy estate;

c)  For the total amount of **$90,728.10**; and

d)  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

E-MERGER LAW, PLLC

/s/ Deborah L. Crain

Deborah L. Crain
SBN: 24067319
dcrain@e-merger.law
1334 Brittmoore, Suite 2314
Houston, Texas 77043
(832) 535-0818

CERTIFICATE OF SERVICE

This is to certify that on October 20, 2025, a true and correct copy of the foregoing Motion was served via the Court's CM/ECF notification system.

*/s/ Deborah L. Crain*
Deborah L. Crain