# E-MERGER.LAW

DEBORAH L. CRAIN, Attorney at Law
E-mail: deborah@e-merger.law

Date: 03 / 26 / 2025
_____

**VIA ELECTRONIC SIGNATURE**
Company Name:

Alliance Farm and Ranch LLC
_____


*Re:* Bankruptcy - Alliance Farm and Ranch LLC
_____
*Reason you are requesting legal services*

Dear Client:

     We are pleased that you have requested the legal services of Deborah L. Crain and E-Merger Law, PLLC, a Professional Limited Liability Corporation (the "Firm"), and thank you for the opportunity to be of service.  The purpose of this letter is to set forth the scope of our engagement as legal counsel with you, (the "Client"), to confirm that we are in mutual agreement with respect to that engagement, the terms and conditions are described in this Retention Agreement, this includes financial arrangements, and to verify the approval of the Client of such financial arrangements as set forth below:

1. **Engagement:** The Client hereby retains and employs the Firm as its attorneys to represent the Client in matters related to the Client's interests in providing legal services, the Firm is willing to accept the representation of the Client in the above captioned matter, as well as additional items that may be designed for Client's approval at a later date.  The Firm will represent the Client as an individual and an entity when appropriate for the matter.  The parties agree and understand that there may be many varying and disparate claims in this specific matter, and by signature hereto, they waive any potential conflict in and between them in the prosecution of this matter whether because of separate causes of action, distinct claims, or that one set of attorneys is representing multiple parties in a complex commercial transaction.

2. **No Waiver of the Firm's Privilege and Advanced Waiver of Conflicts of Interest.** The Firm represents many clients and handles a great number of complex matters. As a result, thereof, from time-to-time issues may arise that raise questions under attorneys' professional conduct rules, including possible disputes with a client and conflicts of interest issues. When such issues arise, we generally seek the advice of our Risk Management Counsel, Professional Responsibility Partner, or General Counsel.  We consider such consultations to be protected from disclosure under the attorney-client privilege.  Although some courts have limited this privilege under certain circumstances, we believe that it is in both our clients' and the Firm's interest that we receive expert analysis of our obligations.  Accordingly, as part of our agreement concerning our representation, the JOINT CLIENTS agree that if the Firm determines, in its own discretion, it is either necessary or appropriate to consult with its counsel (either the Firm's Risk Management Counsel, Professional Responsibility Partner or General Counsel or, if it chooses, outside counsel), the Firm has the JOINT CLIENTS' consent to do so and the JOINT CLIENTS further agree that the Firm's on-going representation of the JOINT

*Exhibit 4*

Doc ID: 2716a1306ad2ee49ec0642b7854d1ec785a20da5

CLIENTS shall not result in a waiver of any attorney-client privilege that the Firm has to protect the confidentiality of the Firm's communications with such counsel.

3. **Joint Clients.** As referenced above, our Firm represents many other companies and individuals. Thus, during the time we are representing the JOINT CLIENTS, we may also represent other present or future clients in disputes or transactions adverse to the JOINT CLIENTS that are unrelated to this representation. Based on the foregoing, JOINT CLIENTS agree that our representation of it in this matter will not disqualify our Firm from opposing it in other matters, including litigation, that are unrelated to the subject matter of this representation, and the JOINT CLIENTS consent to any conflict of interest with respect to those representations. We agree, however, not to use any proprietary or other confidential information of a nonpublic nature concerning Client acquired by us as a result of our representation of it to its material disadvantage in connection with any litigation or other matter in which we are opposed to it.

4. **Retainer Deposit:** The Client agrees to transfer a retainer ("Retainer") of  $15,000.00  to the Firm, in advance, to be held in trust. Once received, the Retainer will be applied to fees and expenses due to the Firm when it renders its monthly statements. Client's consent to our representation constitutes authorization for an instruction to the Firm to draw against the Retainer funds and deposit any amount necessary to: 1) compensate the Firm for the services actually performed; and 2) reimburse the Firm for expenses actually incurred on Client's behalf as shown on the statements. After the services are concluded, and if there are funds left in the Firm's trust account, they will be refunded to Client. The Client shall be billed the normal hourly rates as set forth on the Fee Schedule ("Fee Schedule") attached hereto, depending upon the experience level of the attorney performing the work. **Deborah Crain will be the lead attorney and point of contact on the Client's matters. Mrs. Crain currently bills at $600.00 per hour in 1/10th of an hour increments.** Other attorneys, of counsel, and contract attorneys shall be billed according to the Fee Schedule and utilized at the discretion of the Firm. The initial retainer, flat fees, or budgets quoted, if any, are an estimate of labor and expenses for any given matter. Certain matters may involve subsequent labor and expenses due to necessary correspondence and filings with courts, regulatory agencies, or opposing parties. The Firm will keep the Client informed of the possibility of same, and the Client shall be responsible for such costs as they occur. **The Client understands that once the initial retainer deposit is depleted, if it is not replenished then the attorney and the Firm have the right to terminate the legal representation.** We will ask you to maintain a card on file that can be charged for any additional amounts. You will always, however, have a right to inspect the bill and ask any questions as you deem appropriate.

5. **Other Legal Staff.** The Client understands that the Firm may use paralegals, legal assistants, and law clerks to perform services on its behalf which will be billed to the Client at hourly rates in accordance with industry standards. The Client also understands that these rates may be adjusted from time to time, but not more often than once each calendar year. We will provide you with notice of fee increases on this matter, although it is standard for the firm not to increase the rates on a particular matter, but to make those increases in the new year for any new matters that you bring to us. The Client agrees that in addition to the above attorney fees, all reasonable travel expenses and other reasonable out-of-pocket expenses directly incurred in

the representation defined above shall be paid by the Client. The other rates currently implemented by the Firm:

   a. Senior Attorney: $535.00 per hour
   b. Associate (at or more than 5 years experience): $500 per hour
   c. Junior Associate (1-5 years) $300-$450 per hour
   d. Paralegals (junior paralegals to experienced): $135-$175 per hour

6. **Settlement:** Any settlement or recovery of funds related to the Client's matters shall be paid to the Firm's IOLTA account. Client gives the attorney and the Firm "Power of Attorney" over any settlement checks. The Firm may advance any or all of the expenses necessary in the investigation, preparation, and prosecution of this matter and those expenses reimbursed during the matter or withdrawn from the Settlement Funds. The expenses contemplated hereunder include, but are not limited to, court costs, consultant costs, bonds, costs of records, transcripts or depositions, long distance telephone calls, reproduction charges, demonstrative aids, facsimile charges, photographs, expert witness fees, witness fees, investigation fees, express mail fees, travel expenses and bank interest charges on monies advanced on behalf of Client.

7. **Billing:** The Client agrees to be, from time to time at the discretion of the Firm, billed for such fees, expenses, and costs described in itemized invoices timely prepared by the Firm and delivered to the Client. Client shall pay such billings upon receipt. If the Client provides credit card details for retainer deposits or invoice payments, the Client authorizes the firm to pay invoices in the amounts due as they become due using said credit card unless alternative payment methods are approved by the Firm. If any bill is not paid when due, the Client agrees to pay compound interest at the rate of 3% per month. The bill is deemed "late" for this paragraph if not paid within ten days of receipt. Additionally, while the Firm typically implements monthly billing, due the to nature and demands of your matter, we may, in our discretion, ask for an additional deposit towards your matter. If we see the matter balance in trust is low and we know there is work to be done that will not be covered by the trust balance, the Firm will ask for an additional amount consistent with the then additional work that is to be done. Litigation is very uncertain, and there is no way to project the exact amount of costs that will be incurred by the Client. If the Firm is forced to take action to collect such fees, the Client agrees to bear the cost of collection, including costs of collection proceedings and reasonable attorney fees. In the event of a settlement or recovery in favor of the Client, any remaining or outstanding fees, costs, and expenses will be satisfied out of Client's share of any settlement or recovery prior to distribution of remaining settlement or recovery to Client. The Client is solely responsible and shall notify our office of any change in physical and electronic addresses or contact information. Failure to do so may result in missed invoices and notices from our office, as well as possible delay or denial in the adjudication of your case, application, filing, or dispute.

8. **Partnership with Client:** The Firm views our representation of the Client in the nature of an interactive "partnership" which will be most beneficial if both Client and Firm communicate effectively and strive to work synergistically. By agreeing to our representation, the Client agrees to cooperate and assist the Firm in carrying out the Client's projects. In turn, the Firm agrees to represent the Client zealously, give the Client and its projects the attention, time, and resources required to complete the Client's projects in a timely manner. The Client understands

Representation Agreement
Initials _JPF_

Exhibit 4

Doc ID: 2716a1306ad2ee49ec0642b7854d1ec785a20da5

Case 25-30155 Document 184-5 Filed in TXSB on 05/26/25 Page 4 of 9

the Firm makes no guarantees regarding success or completion dates of the Client projects, as there are numerous factors that affect said process. However, the Firm will perform the best legal services with knowledgeable and experienced professionals and will advise the Client of the possible positive and negative consequences and risks of various legal strategies available to the Client.

  a. **The Client is advised that State Bar and related regulatory organizations in the jurisdictions are licensed to investigate and prosecute professional misconduct committed by attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, these agencies may provide you with information. Contact details per jurisdiction (where Ms. Crain is licensed):**
      i. **Texas: 800-932-1900**
      ii. **Louisiana: Disciplinary Counsel, 4000 South Sherwood Forest Blvd., Suite 607, Baton Rouge, Louisiana 70816-4388, www.ladb.org**

9. **We will not Advance False or Fictitious Narratives for the Client:** Pursuant to Section 9.001 et seq. of the Texas Civil Practice & Remedies Code and the Texas Rules of Civil Procedure, Rule 13, the signature of an attorney on any pleading or pleadings, motion or other paper means that, to the best of the attorney's knowledge, information and belief formed after reasonable inquiry, the instrument is not groundless or brought in bad faith or brought for the purpose of harassment. The rule further provides that, should an attorney or a party bring a fictitious suit as an experiment to get an opinion of the court or file any fictitious pleading in a cause for such a purpose or make statements in pleadings which are known to be groundless and false for the purpose of securing a delay of the trial of the cause, the attorney shall be guilty of a contempt of the court. "Groundless" for the purpose of Rule 13 means that there is no basis in law or fact and is not warranted by good faith argument for the extension, modification or reversal of existing law. The Federal Rules of Civil Procedure have similar provisions in Rule 11.

10. **Implications of the Texas Rules:** In light of Section 9.001, Civ. Prac. & Rem. Code, Rule 13 of the Texas Rules of Civil Procedure and Rule 11 of the Federal Rules of Civil Procedure, the Client agrees that the Firm will not advance any spurious claims of fact or law in the advancement of the claim covered by this engagement agreement. In the event of a conflict between the Firm and the Client as to whether a proposed course of action violated or purports to violate these three (3) rules, or any of them, resolution of that conflict shall be solely vested in the Firm. Upon any violation by the Client of these rules, the Firm may treat this contract as breached, may withdraw from engagement, may withdraw from the litigation and shall be entitled to whatever rights the Firm would otherwise have for breach of contract. Ms. Crain deems these as a "minimum" and holds herself and those who work for her to the highest ethical standards.

11. **Termination of Firm**: If the Client should, at any time, become displeased or dissatisfied with any aspect whatsoever of the legal representation of the Firm, or if the Client should at any time have any serious question concerning that representation, the Firm requests that the Client immediately notify the undersigned of relevant facts giving rise to such dissatisfaction or question so that the Firm may promptly address any issues that may arise.

Page **4** of **7**

Representation Agreement
Initials 

Exhibit 4

Doc ID: 2716a1306ad2ee49ec0642b7854d1ec785a20da5

12. **No Guarantee: IT IS AGREED THE FIRM HAS NOT MADE ANY REPRESENTATIONS GUARANTEEING THE FAVORABLE OUTCOME OF ANY LEGAL ACTION OR CLAIM THAT MAY BE FILED OR WHICH MAY ARISE.**

13. **What happens when the representation ends:** The Client understands that it has the right to discharge the Firm for any reason at any time. The Client understands that the Firm may withdraw from representing the Client for any reason at any time, such reasons including, but not limited to the following:
    a. if the Client fails to make timely payment, or
    b. if the Client misrepresents or fails to disclose material facts.
    c. The Client agrees that if the Client discharges the Firm, or if the Firm withdraws from representing the Client for any reason, including the non-payment of fees and costs as they are due under this Agreement, the Client will remain liable for all fees, costs, and expenses incurred under this Agreement. In such an event, Client's currently outstanding fees shall be finalized and invoiced to the Client, payable upon receipt. All previous or current invoices shall become immediately due.

14. **Full Authority to Act:** The Client hereby authorizes the Firm to perform all services the Firm deems necessary to this representation and the Client acknowledges that the Firm has made no promises or guarantees to the Client, other than those represented in this Engagement Letter.

15. **Other Attorneys or Other Professionals (like Experts):** From time to time, the Firm may need to hire other attorneys to assist in your matter (especially if the matter has implications in another jurisdiction). Client gives complete Power of Attorney to the Firm and Ms. Crain to hire any other professionals as needed to properly assist on your matter. The Client shall bear the full responsibility of the cost of those professionals (including experts).

16. **Tax Advice:** The Client is advised to obtain independent and competent tax advice regarding its legal matters since legal transactions can give rise to tax consequences. The Client should have its public accountant or tax attorney determine if the legal work that is to be performed under this agreement, has or may have tax implications or consequences to the Client or any of the Client's interest. This engagement does not involve tax or securities advice. The undersigned Firm and its attorneys have not agreed to render any tax advice and are not responsible for any advice regarding tax matters or preparation of tax returns or other filings, including, but not limited to, state and federal inheritance tax and income tax returns. Furthermore, the Client should obtain professional services regarding the valuation and location of all assets which may be the subject of a legal matter including but not limited to acquisition, employment benefit, and profit-sharing rights that may be controlled by any other party to the legal matter. This engagement does not involve tax or securities advice.

17. **Software and Artificial Intelligence:** Unless otherwise advised by the Client in writing, Client agrees and consents to the Firm using LLM systems, a form of Artificial Intelligence, for various legal and administrative functions, including but not limited to, drafting and editing, research assistance, and administrative support. However, the Firm does not use any "open source" AI, and uses verification methods (like pulling case law cited to make sure that the case says what the AI said). We "trust and verify".

18. **Governing Law:** This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, with the exception of its conflict-of-laws provisions.

19. **Mediation:** Any controversy, claim, demand, complaint, or action (hereinafter "Claim") whether based on contract, tort, statute or other legal or equitable theory arising out of or related to this Agreement (including any amendments, annexations, and extensions) or the breach thereof shall be settled by consultation and/or mediation between the parties. If initial consultations are unsuccessful, the Parties shall attend mediation. Either Party may request mediation. The Parties shall attend mediation upon the selection of a mutually agreeable mediator and attempt in good faith to resolve the dispute through confidential, nonbinding mediation. If the parties cannot reach an agreement as to a mediator, the parties may file suit for the purpose of the court appointing a mediator. Any Party who does not attempt mediation to resolve a dispute arising from this Agreement is not entitled to be awarded attorney's fees, even if he or she is the prevailing Party.

20. **Texas Rules to Apply:** In the event of failure of such consultations/mediation within sixty (60) days (unless otherwise extended by mutual agreement of the parties) after receipt of the written notice of such Claim, then any such Claim shall be settled in accordance with Section 151.001 et seq. of the Texas Civil Practices and Remedies Code. The complaining party shall file a petition in Fort Bend County District Court, and that petition shall be abated pending the decision of the judge. The proceeding shall be conducted in compliance with the Texas Rules of Civil Procedure and the Texas Rules of Evidence. The proceeding shall be held in Fort Bend County, Texas. Both parties agree to waive the disallowance of an associate judge. The proceeding shall determine the Claim of the parties and render a final award in accordance with the substantive law of the State of Texas. The judge shall set forth the reasons for the judgment in writing, and shall, at the request of either party, prepare findings of fact and conclusions of law to be provided to each party. An award or ruling by the judge shall be entered as a judgment of record in the abated judicial proceeding and shall be fully subject to appeal as if it was tried in the court in which the petition was initially filed.

21. **Prevailing Party**: In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to receive from the losing party an amount equal to the prevailing party's costs incurred in such litigation, including, without limitation, the prevailing party's attorney's fees, costs and disbursements.

22. **Force Majeure:** If the performance of either Party under this Agreement is prevented, hindered, delayed or otherwise made impracticable by reason of strike, pandemic, flood, riot, fire, explosion, war or any other casualty or cause beyond the control of General Contractor (hereafter called "Event"), and which cannot be overcome by reasonable diligence and without unusual expense, that Party is excused from the performance to the extent that it is necessarily prevented, hindered or delayed by the Event and for so long as the Event continues to prevent,

Page **6** of **7**

Representation Agreement
Initials 

Exhibit 4

Doc ID: 2716a1306ad2ee49ec0642b7854d1ec785a20da5

hinder or delay the performance. In such circumstance, this Agreement is suspended so long as and to the extent that the Event prevents, hinders or delays the performance that Party of its obligations. (b) If an Event occurs, either Party impacted by the Event shall, as soon as reasonably practicable thereafter, notify the other Party in writing via email and advise the other Party of the nature and extent of the force majeure condition, i.e., the Event, referred to in subparagraph (a) of this paragraph.

23. **Severability:** If any provision of this Agreement is held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability will not affect any other provision hereof. Such provision shall, in such circumstances, be deemed modified only to the extent necessary to render the problematic provision and all remaining provisions enforceable.

24. **Signed in Counterparts:** This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This agreement shall be effective upon the deposit of retainer funds, if any, and the signatures of all parties.

We greatly appreciate the opportunity to be of service to you and your interests. We are confident our attorneys, staff, and business practices will provide a quality and efficiency of service that will exceed your expectations. We look forward to getting to work.

Sincerely,

E-MERGER LAW, PLLC

SIGNATURE: _Deborah Crain_   DATE: 03 / 24 / 2025
DEBORAH CRAIN
ATTORNEY MEMBER ON BEHALF OF THE FIRM

BY:
SIGNATURE: _Jerod Furr_   DATE: 03 / 26 / 2025



Audit trail

| | |
|---|---|
| Title | 2025 Hourly fee agreement for new clients.pdf |
| File name | 2025_Hourly_fee_a...r_new_clients.pdf |
| Document ID | 2716a1306ad2ee49ec0642b7854d1ec785a20da5 |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

This document was requested from app.clio.com

## Document History

**SENT**
**03 / 24 / 2025**
18:18:41 UTC
Sent for signature to Alliance Farm and Ranch LLC - Bankruptcy (jerod.furr@alliance-energy.org) and E-Merger Law (deborah@e-merger.law) from summer@e-merger.law
IP: 73.6.173.158

**VIEWED**
**03 / 24 / 2025**
18:28:43 UTC
Viewed by E-Merger Law (deborah@e-merger.law)
IP: 98.200.144.218

**SIGNED**
**03 / 24 / 2025**
18:28:54 UTC
Signed by E-Merger Law (deborah@e-merger.law)
IP: 98.200.144.218

**VIEWED**
**03 / 26 / 2025**
18:41:47 UTC
Viewed by Alliance Farm and Ranch LLC - Bankruptcy (jerod.furr@alliance-energy.org)
IP: 73.32.247.106

Powered by  Dropbox Sign

Exhibit 4

# Dropbox Sign

Audit trail

| | |
|---|---|
| Title | 2025 Hourly fee agreement for new clients.pdf |
| File name | 2025_Hourly_fee_a...r_new_clients.pdf |
| Document ID | 2716a1306ad2ee49ec0642b7854d1ec785a20da5 |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

This document was requested from app.clio.com

## Document History

**SIGNED**  03 / 26 / 2025  18:44:01 UTC   Signed by Alliance Farm and Ranch LLC - Bankruptcy (jerod.furr@alliance-energy.org)
IP: 73.32.247.106

**COMPLETED**  03 / 26 / 2025  18:44:01 UTC   The document has been completed.

Powered by Dropbox Sign

Exhibit 4