Received and E-Filed for Record
4/21/2025 4:48 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Beverly Kennedy

CAUSE NO. 25-01-00068

| | | |
|---|---|---|
| ALLIANCE FARM AND RANCH, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| v. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| **Re:** 5450 Honea Egypt Road, Montgomery, TX 77316 | § | |
| ERIK C. OSTRANDER and, | § | |
| DARLA OSTRANDER, | § | |
| *Defendants*. | § | 284TH JUDICIAL DISTRICT COURT |

## PLAINTIFF'S VERIFIED FIRST AMENDED PETITION, APPLICATIONS FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Alliance Farm and Ranch LLC ("Plaintiff"), in the above styled and numbered cause, and files its First Amended Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, against Defendants, Eric Ostrander and Darla Ostrander (the "Defendants"). In support of the forgoing, Plaintiff would respectfully show the Court the following.

## I.
### DISCOVERY AND CONTROL PLAN

1.     Discovery should be conducted under a Level 3 Discovery Control Plan pursuant to Texas Rules of Civil Procedure 190.4.

## II.
### PARTIES

2.     Plaintiff is a Texas limited liability company with its principal place of business located at 5450 Honea Egypt Rd Montgomery, TX 77316-2364. All pleadings can be served through counsel of record.

**Exhibit 5**

*First Amended Original Petition, Applications for Temporary Restraining Order, Temporary Injunction and Permanent Injunction*                    Page **1** of 25

Exhibit 40

3. Defendants are individuals residing in Texas and may be served with process at 20105 Krahn Rd., Spring, TX 77388, or through their attorneys at The Weaver Law Firm, 1800 Bering Dr., Suite 1050, Houston, Texas 77057, or wherever they may be found.

## III.
## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

5. Venue is proper in Montgomery County, Texas because it is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred. Tex. Civ. Prac. & Rem. Code § 15.002(a).

## IV.
## CLAIM FOR RELIEF

6. Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $1,000,000 and non-monetary relief, including but not limited to rescission of a foreclosure sale, quiet title, and injunctive relief.

## IV.
## CONDITIONS PRECEDENT

7. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## V.
## FACTUAL BACKGROUND

8. In April of 2022, Plaintiff purchased certain real property, located at 5450 Honea Egypt Road, Montgomery, Texas 77316 (the "Property"), from Defendants pursuant to a Farm and Ranch Real Estate Contract. A Farm and Ranch contract is a "mixed use" contract, i.e., the property has both a home residence and is used for agricultural purposes. A real estate lien note (the "Note") was made by Plaintiff for the benefit of Defendants, secured by a Deed of Trust.

Exhibit 5

9.     At various times, both before and after the April 1, 2024, the maturity date of the Note, Defendant Erik Ostrander made vague and conflicting statements to Jerod Furr, the managing member of Plaintiff, ("Jerod Furr") regarding payment amounts and deadlines for satisfying the Note.

10.    In March of 2024, the month before the maturity date of the Note, Defendant Erik Ostrander told Jerod Furr that Plaintiff needed to pay $500,000 on April 1, 2024, and that Plaintiff had six months to pay off a balance of $4.5 million.

11.    In early April, after the maturity date of the Note, Defendant Erik Ostrander retracted his March statements regarding payment terms, saying that he had not read the financing documents. Defendant Erik Ostrander told Jerod Furr that the balance was actually $3.7 million, and that Defendants were entitled to 5% of that balance and an 18% interest rate each month until Plaintiff managed to sell the property, at which point Defendants would deduct what they believed they were owed at the closing. Defendant Erik Ostrander told Jerod Furr that no more monthly payments were required from Plaintiff, and that his lawyer had advised him that the Parties should work together to sell the property in order to avoid foreclosure, bankruptcy, and the hefty legal bill that would be incurred.

12.    In May of 2024, Defendant Erik Ostrander told Jerod Furr that Defendants were owed an approximately $170,000 "penalty" plus around $55,000 per month. Defendant Erik Ostrander went on to say that Defendants needed money from Plaintiff in order to "buy and October 1st conclusion", and that they needed "like 280k pretty soon. Or half now and work on accumulating balance later."

Exhibit 5

*First Amended Original Petition, Applications for Temporary Restraining Order,*
*Temporary Injunction and Permanent Injunction*                    **Page 3** of 25

13.    Relying on Ostrander's statements that made it seem that the parties would work things out, Jerod Furr spent hundreds of thousands of dollars on upgrading the property, including flooring in the home, granite installation, painting, electrical and plumbing work.

14.    In October, in response to Plaintiff's attempts to obtain funds to pay off its (now unclear) debt to Defendants by refinancing the Property through a bank, Defendant Erik Ostrander told Jerod Furr that as soon as Plaintiff had the funds, the Parties could "figure out a settlement amount", further obscuring what was actually owed.

15.    On September 26, 2024, Defendants, through their counsel The Weaver Law Firm, delivered a Notice of Default – Demand for Payment – Notice of Intent to Accelerate – Opportunity to Cure, followed by a Notice of Acceleration and Posting on November 6th, 2024.

16.    In late November, Jerod Furr informed Defendant Erik Ostrander that he had a buyer for the Property with a closing date in December and requested the foreclosure sale be put off until January 2025. Defendant Erik Ostrander responded that Plaintiff would have to put up a non-refundable lump sum of $100,000 and agree to a final payoff of $4.5 million at the closing of the potential sale. Plaintiff delivered the $100,000 and the Parties executed a Settlement Agreement and Release (the "Agreement") on November 26th, 2024. The Agreement included the initial $100,000 payment, and final payment of $4.5 million by December 31st, 2024, and a very broad release of claims.

17.    On December 6th, 2024, just a few days after Plaintiff had, in good faith, delivered the $100,000 payment to Defendants, and the Parties had signed the Agreement, Defendants, through their counsel, delivered a Debt Validation Notice - Notice of Acceleration and Posting to Plaintiff which stated, "There are currently no modification, renewal extension, or settlement agreements between Borrower and Lender with regard to the Note and Deed of Trust, except as noted above,

Exhibit 5

and all proposals made by you to the Lender relating to any of the foregoing are rejected." A Notice of Foreclosure Sale was also delivered, which was erroneously dated as of December 6, 2025, a date which at that point was one year into the future.

18.   On January 3, 2025, Plaintiff filed its Verified Original Petition and Request for Temporary Restraining Order in an effort to stop the imminent loss of its Property.   However, as set forth in more detail herein, this suit was nothing more than a "bare bones" suit, and did not lay out the particular reasons why the foreclosure sale should be stopped.  After the filing, the Court requested more information regarding the claims and causes of action.   In response, the prior counsel filed the following evidence:

      a.   Signed Affidavit of Jerod Furr

      b.   First Payment Notice

      c.   Authorization Schedule

      d.   Accepting of Financing Documents

      e.   Title Company Closing Documents

19.   There was no discussion in this response on how the law, facts and evidence substantiated the application for TRO, however.  In fact, no law whatsoever was cited, articulating whether or not the proper notice requirements were not fulfilled, which would have supported the request for a restraining order.  Without the correct supporting evidence and an explanation as to why the law should prevent the foreclosure sale, the TRO was denied.

20.   On January 7, 2025, the substitute trustee conducted a foreclosure sale of the Property, where the Defendants reacquired the property at a stated price of $4.6 million.  Defendants kept the $100,000 they demanded of Plaintiff under the terms of the Agreement that both Parties had signed but that Defendants had repudiated mere days later.

<span style="color:blue">Exhibit 5</span>

21.    By the following month, on February 26th, Defendants had already signed a contract to sell the Property to another buyer for $6.8 million.

22.    Due to the vague and conflicting statements made by Defendants regarding the debt and its terms of repayment, Plaintiff had no clear understanding of what was owed. Plaintiff attempted in good faith to resolve the issue by entering into a settlement agreement with Defendants and delivering $100,000 to them, only for Defendants to refute the very existence of the agreement just days after signing and accepting Plaintiff's money. Plaintiff felt strongarmed and threatened by Erik Ostrander in the months leading up to the foreclosure sale and entered into the Settlement Agreement because Erik Ostrander pushed him to the point of feeling that he had no other choice.

23.    Moreover, despite the conversations between Ostrander and Furr about not foreclosing, they did it anyway.   Defendants foreclosed on the Property in reliance on pre-Agreement (defective) notices of default, opportunity to cure, and intent to accelerate, as well as defective notices of acceleration and foreclosure sale, in violation of Texas law governing the foreclosure process. Now, Defendants are prepared to imminently close on a deal to transfer the Property to another buyer, receiving a further windfall of millions of dollars and causing irreparable harm to Plaintiff.

24.    Additionally, the credit bid at the foreclosure sale, on its face, should have had at least $100,000 in proceeds, which should have been distributed to Alliance Farm and Ranch, which was never done.

25.    Moreover, Ostrander told Furr that when he sold the property that whatever proceeds that he received in excess of the Note owed on the property would belong to Alliance Farm and Ranch (who had spent hundreds of thousands of dollars upgrading the property).   After the foreclosure, Ostrander once again changed his tune and told Jerod he was getting "nothing".

<span style="color:blue">**Exhibit 5**</span>

26.     Plaintiff urges that in addition to the notice provisions being defective and invalid, the property description in the foreclosure sale was incomplete and defective, and did not address the significant personal property on the ranch.  In particular, the foreclosure notice did not address the forklifts, livestock, ATV, mowers, and other personal property.  This was included in the Farm and Ranch Real Estate Contract attached herein as Exhibit 1 – as such it was purchased by Alliance Farm and Ranch. Since these items were not listed on the foreclosure notice, these items still belong to Alliance Farm and Ranch.

27.     Therefore, Plaintiff is compelled to seek judicial intervention and relief.

**VI.**
CAUSES OF ACTION

———

COUNT 1

**Wrongful Foreclosure/Void Foreclosure Sale**

28.     Plaintiff re-alleges and incorporates all prior paragraphs as though fully set forth herein. equity, to which Plaintiff may be justly entitled.

ELEMENTS OF WRONGFUL FORECLOSURE

29.     "Under Texas law, a cause of action for wrongful foreclosure has three elements: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *See Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008,  no  pet.); *see also University Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (a plaintiff seeking damages for wrongful foreclosure must show that (1) there was an irregularity in the foreclosure sale and (2) the irregularity caused the plaintiff damages); Houle v. Casillas, 594 S.W.3d 524, 540

30.     After conflicting statements regarding the amount of the money owed to Defendants by Plaintiff and the terms for paying it off, Defendants initiated foreclosure by providing notices of

Exhibit 3

*First Amended Original Petition, Applications for Temporary Restraining Order,*
*Temporary Injunction and Permanent Injunction*                                    Page **7** of **25**

default, acceleration, and sale under the Note and Deed of Trust. None of these notices actually stated the amount that was owed. More importantly, these notices were defective from the outset.

31.   In particular, Texas requires two types of notices – typically referred to as the 20-day and the 21-day notice.  The property code outlines very specific requirements for each notice, and these notices cannot be given at the same time.

32.   Starting with the September notice set forth herein above, the notice was sent to 9823 Friesian Estate Drive, Spring, Texas, 77379, which was the prior home address for Jerod Furr. After the sale of the ranch property to Alliance Farm and Ranch, Jerod Furr moved into the property with his family and lived there as his own personal residence (in addition to running the ranch and other operations held on the property). This property was and is a multi-use property, and as set forth above, Alliance Farm and Ranch signed a Farm and Ranch Real Estate Contract – not a pure commercial contract (*See* Exhibit 1).  Farm and Ranch contracts are unique insofar as they contemplate living in a residence as well as using the property for agricultural purposes. (*See,* generally, the Real Estate Contact, paragraph 2(B)(1) & (2), which specifically refers to "farm and ranch improvements" and "residential improvements". Accordingly, at the time of the first Notice of Default (the 20-day notice), the Notice should have gone to 5450 Honea Egypt Road, Montgomery County, TX, 77316.  This is specifically mandated in the property code:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien **on real property <u>used as the debtor's residence</u> with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).** The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period. Tex. Prop. Code § 51.002 (Emphasis added).

**Exhibit 5**

*First Amended Original Petition, Applications for Temporary Restraining Order, Temporary Injunction and Permanent Injunction*

33.    Because the 20-day notice was sent to the wrong address, it is defective on its face and there was therefore no 20-day notice as mandated by the Property Code.  Additionally, without any valid 20-day notice, no other action as set forth herein has any effect whatsoever to effectuate a valid foreclosure on the property.

34.    On November 6, 2024, A "Debt Validation Notice – Notice of Acceleration and Posting" was issued to Alliance Farm and Ranch, LLC.  This Notice urges that the Note subject to this dispute had become due and provided the Notice of Foreclosure Sale, purported to take place on December 3, 2024.  Demand was also made for "payment in full", but did not provide for any opportunity to cure.  Indeed, you cannot "combo-meal" the 20-day and the 21-day notice – as set forth above, **"**The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, <u>and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period</u>." Tex. Prop. Code § 51.002 (Emphasis added.) Again, this Notice has no effect at all because there was no proper 20-day notice.

35.    On November 26, 2024, before the noticed foreclosure sale date, the parties entered into a Settlement Agreement and Release (the "Agreement") which, among other things, set forth the amount required to satisfy the debt, and how it was to be paid. Under the Agreement:

a.    Plaintiff agreed to make, and did make, a substantial lump sum payment to Defendants;

b.    The foreclosure sale was postponed;

c.    Plaintiff was provided with a new balance, and a new deadline to pay it off in full satisfaction of the Note; and,

<span style="color:blue">Exhibit 5</span>

    d.   Defendants agreed to cancel the foreclosure altogether upon Plaintiff's performance.

    e.   There was also a very broad release of all claims, which included, but not limited to, a release, acquit, and discharge of all "demands", "actions", "contracts", "obligations", and more, prior to the date of execution of the Agreement.

36.    After accepting Plaintiff's money, and a mere 10 days after signing the Agreement, Defendants, through counsel, delivered a notice to Plaintiff on December 6, 2024, purporting to validate and re-accelerate the original loan amount owed under the Note, and explicitly repudiating the Agreement. Defendants also delivered an improperly dated notice of foreclosure sale.  Like before, there was no 20-day notice to the Debtor at his residence.  As such, without the 20-day notice, this Notice had no legal effect whatsoever.

37.    Moreover, the language of the Property Code is abundantly clear – "Notwithstanding **<u>any agreement to the contrary,</u>** the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien **on real property <u>used as the debtor's residence</u> with written notice by certified mail"…** Tex. Prop. Code § 51.002 (Emphasis added).  Any Settlement Agreement that purports to do away with the requirements of the Property Code constitute an illegal contract and it is void on its face.

38.    Defendants then proceeded with a wrongfully conducted foreclosure sale based on:

    a.   The failure to provide the 20-day notice to the correct address in the September notice;

    b.   The failure to provide the 20-day notice prior to November 6, 2024, 21-day notice (which was not even served by certified mail as required by statute);

<span style="color:blue">Exhibit 5</span>

c.  The Settlement Agreement which basically did away with a notice of default, intent to accelerate, and opportunity to cure regarding a default under the original terms of the Note, purporting to resolve the original debt under the Note as being superseded by the Agreement, and the same agreement released all "demands", "actions", "contracts", "obligations", and more;

d.  The December 6, 2024 defective notice of acceleration as it purported to accelerate the debt under the Note with interest without the prerequisite 20-day notice (another "combo-meal" notice), for a debt that was allegedly superseded by the Settlement Agreement (even though it is an illegal contract) and even repudiating the Settlement Agreement; and,

e.  The December Notice of Foreclosure Sale that contained a defect in its date, rendering the foreclosure process procedurally and substantively defective; and,

f.  The contents of the Notice of Foreclosure Sale describe the land only and does not include the significant personal property located therein.[1]

39.  At the time of the Defendants' defective re-acceleration of the original Note, Plaintiff was **not in default** under the terms of the current Agreement and was actively working to obtain the remaining funds for the final agreed upon payment.  Ironically, had Alliance Farm and Ranch been given the property Notice and Opportunity to Cure, none of what has transpired would have happened as he would have had the funds to cure any alleged issues.

40.  Aside from the defective and improper notices, Defendants repurchased the Property at the foreclosure sale using a bid of $4.6 million – an amount precisely equal to the sum on the initial

---

[1] The sale of the property to Alliance Farm and Ranch had no "exclusions" to it – so the tractors, forklifts and other personal items were included in the sale. Because they were not listed in the foreclosure sale, they were not foreclosed upon.

Exhibit 5

note plus $100,000, or the $4.5 million payments due under the Settlement Agreement. Defendants kept Plaintiff's payment under the Agreement Defendants had repudiated; reacquired the Property using an incorrect credit bid; and obtained the benefit of hundreds of thousands of dollars that Plaintiff had poured into improving the Property.

41.    Moreover, the amount "paid" at the foreclosure sale was grossly inadequate – Defendant knew if he could get ahold of the property and transfer to himself he could sell it and make a fortune as a direct result of Plaintiff's improvements.(*See,* Exhibit 16, some of the construction invoices for the property).   Indeed – the property was purchased for a mere $100,000 more than what was owed pursuant to the Settlement Agreement, and then the Defendants turned right around and are attempting to sell the property for 6.8 million dollars, pocketing a 2.2 million dollar gain.

42.    Defendants' actions as described above constitute wrongful foreclosure and void under Texas law, and as a direct and proximate result of the wrongful foreclosure, Plaintiff has suffered damages including but not limited to:

      a.   Loss of its $100,000 payment under the Settlement Agreement;

      b.   Loss of title to the Property;

      c.   Loss of equity and appreciation in the Property;

      d.   Loss of substantial investment and improvements made to the Property

      e.   Loss of personal property on the property; and

      f.   Other consequential and economic damages related to the business of Alliance Farm and Ranch.

____

## COUNT 2
**Fraudulent Transfer Under Tx. Bus. & Com. Code § 24 (TUFTA)**

43.    Plaintiff brings a claim against Defendants of fraudulent transfer under Texas Business and Commerce Code § 24.005.

Exhibit 5

ELEMENTS OF FRAUDULENT TRANSFER

44.  A transfer is fraudulent under that section if the debtor made the transfer with the actual intent to hinder, delay, or defraud any of the debtor's creditors. Tex. Bus. & Com. Code Ann. § 24.005(a)(1). To establish their actual-intent claim, a creditor has to prove that (1) it is a creditor of the debtor; (2) the debtor transferred assets shortly before or after the creditor's claim arose; and (3) the debtor made the transfer with the actual intent to hinder, delay, or defraud the creditor. The Texas Uniform Fraudulent Transfers Act identifies eleven factors, sometimes called "badges of fraud," that are circumstantial evidence for determining whether the debtor made the transfer with the requisite actual intent. § 24.005(b)(1)-(11). Evidence of a single badge of fraud does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud.  In re 7677 Real St., LLC, 2017 Tex. App. LEXIS 9299, *1

45.  At the time Defendants foreclosed on the property and later transferred or attempted to transfer it to a third party, Plaintiff had valid and existing claims against Defendants arising from the wrongful foreclosure, breach of contract, and related conduct.

46.  Defendants were aware of Plaintiff's claims. In fact, Plaintiff had already filed suit on January 3, 2025, to assert their rights prior to the foreclosure sale.  Defendants knew exactly what they were doing – baiting the Plaintiff for months – telling him not to pay on the property and then turning around and making conflicting statements, promising to make things right after the sale of the property "on the side", and then strongarming Plaintiff into paying $100,000 to not foreclose, only to foreclose.  Defendant then immediately listed the property for sale and told Plaintiff "you are not getting anything".

47.  After conducting the foreclosure through an incorrect credit bid, Defendant quickly entered into a private contract to sell the Property to a third-party buyer for substantially more than the amount at which they reacquired it at foreclosure.

**Exhibit 5**

48. Defendants' conduct satisfies multiple badges of fraud under § 24.005(b), including but not limited to:

    a.  Transferring the Property at auction to an insider (the Defendants themselves);

    b.  Retaining control over the property post-foreclosure;

    c.  The pendency of litigation prior to the transfer; and

    d.  A transfer for less than reasonably equivalent value of the Property.

49. As a result of the fraudulent transfer, Plaintiff has suffered substantial damages, including but not limited to the loss of the property and equity therein.

50. Defendants' actual intent was to hinder, delay, or defraud Plaintiff with regards to its claims.

51. As a result of the fraudulent transfer, Plaintiff has suffered substantial damages, including but not limited to the loss of the property and equity therein.

_____

## COUNT 3
### Fraud in a Real Estate Transaction

52. Plaintiff re-alleges and incorporates all prior paragraphs as though fully set forth herein.

### ELEMENTS OF FRAUD IN REAL ESTATE TRANSACTION

53. "To establish fraud in a real estate transaction under Tex. Bus. & Com. Code Ann. Ch. 27, a plaintiff must prove these essential elements: (1) a transaction involving real estate; (2) the defendant made a false representation of fact, a false promise, or benefited by not disclosing that some other person's representation or promise was false; (3) the false representation or promise was made to induce the plaintiff to enter into a contract; (4) the plaintiff relied on the false representation or promise and entered into the transaction; and (5) the reliance caused the plaintiff's

<span style="color:blue">Exhibit 5</span>

injury. Tex. Bus. & Com. Code Ann. § 27.01(a) (2017). Kyle v. Strasburger, 2019 Tex. App. LEXIS 2725, *1

54.    Plaintiff asserts a claim of fraud in a real estate transaction against Defendants pursuant to Texas Business & Commerce Code § 27.01.

55.    Defendants entered into a Settlement Agreement and Release (the "Agreement") with Plaintiff concerning the underlying real estate transaction at issue. The Agreement changed the terms of the original loan and foreclosure process, and was entered into after notices of default, acceleration, and sale, had already been issued under the Deed of Trust.

56.    In connection with negotiating and executing the Agreement, Defendants represented to Plaintiff that the foreclosure sale would be postponed, and that if Plaintiff made an initial lump sum payment and then paid the remaining balance by a specified date, the foreclosure would be canceled, and Plaintiff could retain the property.

57.    Plaintiff reasonably relied on Defendants' representations and performed under the Agreement by delivering the first lump sum payment.

58.    These representations were false when made, and Defendants never intended to honor the Agreement, as evidenced by the fact that Defendants' counsel issued a notice mere days later, repudiating the settlement agreement, and purporting to re-accelerate under the original terms of the Note.

59.    These false representations were made for the purpose of inducing Plaintiff to forgo legal action, make a substantial payment, and refrain from seeking alternative remedies, all to Defendants' substantial benefit.

60.    Plaintiff relied on these material misrepresentations to its detriment, suffering significant harm, including:

Exhibit 5

    a. Loss of its $100,000 payment under the Agreement;

    b. Loss of title to the Property;

    c. Loss of equity and appreciation in the Property;

    d. Loss of its substantial investment and improvements to the Property; and

    e. Other consequential and economic damages.

_____

## COUNT 4
### Common Law Fraud (in the inducement) and Misrepresentation

61. Plaintiff re-alleges and incorporates all prior paragraphs as though fully set forth herein.

ELEMENTS OF FRAUDULENT INDUCEMENT AND MISREPRESENTATION

62. Fraud in the inducement is a species of fraud that arises only in the context of a contract. The elements of fraud in the inducement are: (1) one made a material misrepresentation that was false, (2) one knew the representation was false when made or made it recklessly as a positive assertion without any knowledge of its truth, (3) one intended to induce another to act upon the representation, and (4) that person actually and justifiably relied upon the representation, and thereby, suffered injury. While certain case law was a traditional fraud case, these elements have been cited as the elements for fraud in the inducement. *Taft v. Sherman*, 301 S.W.3d 452, 453

63. Moreover, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations". *Haase v. Glazner*, 62 S.W.3d 795, 796

64. Plaintiff asserts that Defendants committed fraud by making material misrepresentations to Plaintiff, which Defendants knew were false or made recklessly without any knowledge of their truth, with the intent that Plaintiff rely on those misrepresentations, and Plaintiff did in fact rely on them to its detriment.

Exhibit 5

65.     Specifically, Defendants entered into the Agreement with Plaintiff, agreeing to a change in terms of repayment of the original loan; Plaintiff performed under the Agreement; and Defendants then promptly repudiated the Agreement while keeping the money.   Moreover, on the "side", Erik Ostrander made representations to Plaintiff that he would always be paid what he was owed out of the proceeds of any sale, if they didn't work things out and one would occur.  That representation was patently false – as soon as the foreclosure happened, Erik Ostrander let Plaintiff know that he would be getting "nothing".

66.     At the time these representations were made, Defendants never intended to comply with the Agreement, as evidenced by:

    a.   Accepting Plaintiff's money, then, within days, sending a letter repudiating the Agreement;

    b.   Proceeding to foreclose based on prior loan terms, not under the terms of the Agreement; and

    c.   Purchasing the Property at foreclosure through an incorrect credit bid and then quickly entering into a resale contract at a significantly higher price.

67.     Plaintiff justifiably relied on Defendants' representations by:

    a.   Tendering a significant lump sum payment; and

    b.   Withholding legal action in reliance on the Settlement Agreement;

68.     As a result of Defendants' fraudulent conduct, Plaintiff suffered damages including, but not limited to:

    a.   Loss of its $100,000 payment under the Agreement;

    b.   Loss of title to the Property;

Exhibit 5

    c.   Loss of equity and appreciation in the Property; Loss of substantial investment and improvements made to the Property; and

    d.   Other consequential and economic damages.

69.   In the alternative to fraud, and without waiving the foregoing, Defendants are liable for negligent misrepresentation.

70.   Defendants, in the course of business and in a transaction in which Defendants had a pecuniary interest, supplied false information regarding a material term of the Parties' financial and contractual dealings — namely, that Defendants would postpone and ultimately cancel the foreclosure sale if Plaintiff made the required payments under the Agreement.

71.   Defendants' representations were made without exercising reasonable care or competence in communicating accurate information, and without regard to whether the promises made would actually be honored.

72.   Plaintiff justifiably relied on the representations and acted to its detriment by:

    a.   Delivering the lump sum payment;

    b.   Foregoing other legal or financial options to cure the default;

    c.   Proceeding in good faith toward full performance of the agreement.

73.   Plaintiff's reliance resulted in foreseeable harm, including: Loss of its $100,000 payment under the Agreement; loss of title to the Property; loss of equity and appreciation in the Property; loss of substantial investment and improvements made to the Property; and other consequential and economic damages.

———

COUNT 5
**Promissory Estoppel**

74.   Plaintiff re-alleges and incorporates all prior paragraphs as though fully set forth herein.

ELEMENTS OF PROMISSORY ESTOPPEL      Exhibit 5

75.    The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. Under the doctrine of promissory estoppel, the detrimental reliance must be by the promisee. A plaintiff asserting promissory estoppel must show an actual promise that is sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action. *Gano v. Diaz*, 2018 Tex. App. LEXIS 4795, *1

76.    As set forth above, Alliance relied on Erik Ostrander's representations – that either Alliance would sell the property and Erik would get paid or if they did eventually foreclose, Erik would make things right and pay Alliance what it was owed – the substantial improvements made to the property.  However, the second the foreclosure happened Erik Lorded it over Jerod that "he would get nothing".  Clearly, Plaintiff relied on the promises of the defendant, all to the Plaintiff's detriment.

77.    After accepting Plaintiff's money, Defendants disregarded the settlement agreement by explicitly repudiating its existence and enforceability and issuing a notice regarding the debt and foreclosure that were inconsistent with the terms of the Agreement.

78.    As a direct and proximate result of Defendants' false promises, Plaintiff suffered substantial damages, including but not limited to: loss of its $100,000 payment under the Agreement; loss of title to the Property; loss of equity and appreciation in the Property; loss of substantial investment and improvements made to the Property; and other consequential and economic damages.

_____

### COUNT 6
### Declaratory Judgment Act

79.    Plaintiff incorporates all allegations herein by reference.

Exhibit 5

80.   Under the Uniform Declaratory Judgments Act, a person whose rights, status, or other legal relations are affected by a contract may have a court determine any question of construction or validity arising under the contract and may obtain a declaration of his rights under that instrument. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). The purpose of a declaratory judgment claim is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). *Cosmopolitan Condo. Owners Ass'n v. Class A Investors Post OAK, LP*, 2017 Tex. App. LEXIS 3834, *1

81.   Plaintiff, based on the above, is entitled to a declaratory judgment to determine their rights and status as to the subject property.

———

### COUNT 6
### Application for Temporary Restraining Order,
### Temporary Injunction and Permanent Injunction

82.   Plaintiff seeks temporary and permanent injunctive relief pursuant to Texas Rule of Civil Procedure 680 et seq. Specifically, Plaintiff requests that this Court issue a Temporary Restraining Order ("TRO") without notice, followed by a Temporary Injunction and Permanent Injunction, to preserve the status quo, prevent the further transfer of real property that is the subject of this dispute, and protect Plaintiff's legal and equitable rights.

83.   To obtain a temporary restraining order, the applicant must plead a cause of action, show a probable right to recover the relief sought, a probable injury in the interim, and demonstrate that he lacks an adequate remedy at law. *Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 532 (Tex. App.—Houston [1st Dist.] 1992, no writ); *see also* Tex. R. Civ. P. 680. A temporary restraining order shall not exceed fourteen days in duration, Tex. R. Civ. P. 680. In addition, the request for a temporary restraining order must he supported by either an affidavit or a verified pleading. *Id.* Here, Plaintiff filed a verified application [*3] for this

temporary restraining order. *Fairlane Fixed Income Fund, LLC v. Feigl*, 2019 Tex. Dist. LEXIS 81899, *2-3

84.   The Plaintiff has plead several causes of action that indeed show a probable right of recovery.

_____

### Imminent and Irreparable Harm

85.   Defendants have entered into a contract to sell the subject Property to a third-party buyer, and that the closing of this sale is scheduled to occur imminently on April 25, 2025.[2] Unless Defendants are restrained, the sale will close, and title to the property will be transferred to a third party not currently a party to this lawsuit. This would place the property further out of reach, irreparably harm Plaintiff's ability to recover or quiet title, and likely introduce a bona fide purchaser for value, complicating or defeating Plaintiff's claims.

86.   Defendants previously sold the property to Plaintiff, and Plaintiff asserts that the subsequent foreclosure was unlawful, improper, and void. Plaintiff now seeks to undo that wrongful foreclosure and recover legal title. The imminent closing threatens to severely prejudice Plaintiff's rights by placing the property beyond the reach of the Court and rendering Plaintiff's requested relief — including restoration of title, and quiet title — unavailable or impracticable.

_____

### No Adequate Remedy at Law

87.   There is no adequate remedy at law because the Property is unique, and monetary damages cannot substitute for the loss of legal title and the attendant property rights. Once title is transferred to a third party, Plaintiff's ability to recover the property may be permanently lost, and

---

[2] *See* Farm and Ranch contract attached as Exhibit 1

Exhibit 5

the cloud on title will become more entangled, requiring further legal proceedings and risking denial of equitable relief.

_____

### Probable Right to Recovery

88.   Plaintiff has a probable right of recovery on the merits. As detailed throughout this petition, Plaintiff alleges that Defendants wrongfully foreclosed on the Property, including by delivering a notice of sale with a defective date,[3] failing to provide proper notices required by Texas law in order to conduct a foreclosure, violating the terms of the Parties' Agreement, and engaging in fraudulent or deceptive conduct. Plaintiff has asserted claims including wrongful foreclosure, breach of contract, and various claims of fraud. These claims support the issuance of injunctive relief under Texas law.

_____

### Relief Requested

89.   Accordingly, Plaintiff respectfully requests that the Court:

(a)   Issue a Temporary Restraining Order, without notice to Defendants, enjoining and restraining Defendants, their agents, assigns, and anyone acting in concert with them, from:

1)   Closing the pending sale of the subject property to any third-party buyer;

2)   Transferring, assigning, conveying, or encumbering any interest in the subject property;

3)   Recording or filing any deed or document purporting to transfer title to the property;

---

[3] *See* December notice attached as Exhibit 8

Exhibit 5

*First Amended Original Petition, Applications for Temporary Restraining Order,*
*Temporary Injunction and Permanent Injunction*

    4)    Taking any steps to deliver possession to any third party;

    5)    Selling the personal property that still belongs to Plaintiff;

    6)    Otherwise disposing of or impairing Plaintiff's interest in the subject property.

  (b)    Set a hearing on Plaintiff's request for a Temporary Injunction at the earliest possible time, as required by Rule 680.

  (c)    After notice and hearing, issue a Temporary Injunction extending the above restraints until final judgment in this matter.

  (d)    Upon final judgment, issue a Permanent Injunction permanently enjoining the above-described conduct

## VII.
### TRIAL BY JURY

90.    Plaintiff demands a jury trial on all applicable claims and has tendered the appropriate fee to the clerk of the Court.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that, in addition to the Temporary Restraining Order and other relief sought under the Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, the Court grant in Plaintiff's favor:

A.    A declaratory judgment that:

  1)   The foreclosure sale is void;

  2)   Plaintiff holds superior legal or equitable title;

  3)   Any substitute trustee's deed or post-foreclosure conveyances are invalid and should be set aside;

Exhibit 5

*First Amended Original Petition, Applications for Temporary Restraining Order,*
*Temporary Injunction and Permanent Injunction*          Page **23** of 25

B. An order quieting title in Plaintiff's favor and removing any cloud created by the foreclosure sale or subsequent transfers;

C. Judgment in Plaintiff's favor on all asserted causes of action, including:

1) Wrongful Foreclosure;

2) Fraudulent Transfer ;

3) Fraud in a Real Estate Transaction ;

4) Common Law Fraud and Misrepresentation;

5) Breach of Contract;

6) Promissory Estoppel; and,

7) Quantum Meruit;

D. Actual and consequential damages, as allowed by law and proven at trial;

E. Disgorgement or restitution of funds wrongfully retained by Defendant;

F. Attorneys' fees and costs under applicable law, including Chapters 37 and 38 of the Texas Civil Practice and Remedies Code;

G. Pre-judgment and post-judgment interest; and

H. All other and further relief, in law or equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

E-MERGER.LAW PLLC

By: /s/ Deborah L. Crain

Deborah L. Crain
Texas Bar Number 24067319
1334 Brittmoore Road, #2314
Houston, Texas 77043
dcrain@e-merger.law
(346) 535-0818
**ATTORNEY FOR PLAINTIFF**
**ALLIANCE FARM AND RANCH, LLC**

Exhibit 5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the foregoing instrument was served on April 21, 2025, in accordance with the Texas Rules of Civil Procedure upon the following:

***Via E-file***
Len Walker
The Weaver Law Firm
1800 Bering Drive, Suite 1050
Houston, Texas 77507

/s/ *Deborah L. Crain*
Deborah L. Crain

Exhibit 5

*First Amended Original Petition, Applications for Temporary Restraining Order,*
*Temporary Injunction and Permanent Injunction*                    Page **25** of **25**

**CAUSE NO. 25-01-00068**

| | | |
|---|---|---|
| **ALLIANCE FARM AND RANCH, LLC,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **ERIK C. OSTRANDER and, DARLA** | § | |
| **OSTRANDER** | § | |
| *Defendants* | § | |
| | § | |
| **RE: 5450 Honea Egypt Road** | § | **284th Judicial District Court** |
| **Montgomery, TX 77316** | § | |

---

**AFFIDAVIT OF JEROD FURR,**
**INDIVIDUALLY AND ON BEHALF OF ALLIANCE FARM AND RANCH**

---

BEFORE ME, the undersigned authority, personally appeared **Jerod Furr**, who, being duly sworn, stated as follows:

1. "My name is Jerod Furr. I am over 18 years of age, of sound mind, and fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are true and correct.

2. I am the managing member of Alliance Farm and Ranch LLC, the Plaintiff in the above-styled lawsuit. I have reviewed the foregoing Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, including all facts stated therein and all attached exhibits as follows:

   a) **Exhibit 01.** Warranty Deed Dated Apr. 01, 2022 and Farm and Ranch Real Estate Contract
   b) **Exhibit 02.** Real Estate Lien Note Dated Apr. 01, 2022
   c) **Exhibit 03.** Deed of Trust  Dated Apr. 01, 2022
   d) **Exhibit 04.** Apr. 2nd text  Dated Apr. 02, 2024
   e) **Exhibit 05.** NOTICE of default- demand for payment- opportunity to cure Dated Sep. 26, 2024
   f) **Exhibit 06.** NOTICE of acceleration and posting Re Dec. 3rd sale Dated Nov. 06, 2024
   g) **Exhibit 07.** Settlement Agreement  Dated Nov. 28, 2024
   h) **Exhibit 08.** NOTICE of acceleration and posting Re Jan. 7th sale  Dated Dec. 06, 2024
   i) **Exhibit 09.** NOTICE of foreclosure sale Re Jan. 7th sale  Dated Dec. 06, 2025
   j) **Exhibit 10.** Substitute Trustee Deed Dated Jan. 07, 2025
   k) **Exhibit 11.** Milner Sales Contract with Furr Disclosure (Nov. 11, 2024) Dated Feb. 27, 2025

**Exhibit 5**

l)  **Exhibit 12.** Text stating "moving in by the end of the month" Dated Aug. 31, 2022

m)  **Exhibit 13.** Text Re $170k "penalty" plus $55k a month  May 22, 2024

n)  **Exhibit 14.** Text Re refinance and "figure out a settlement amount"    Aug. 26, 2024

o)  **Exhibit 15.** 4.5 M Owed. Pay 500k Apr. 1 and pay the rest over 6 months    Mar. 22, 2024

p)  **Exhibit 16.** Remodeling invoices    Apr – Dec 2022

3.  The factual statements contained in the petition are true and correct based on my personal knowledge. The exhibits attached to the Petition are true and correct copies of the original documents that I have kept in my file as part of the records that I keep regarding the property located at 5450 Honea Egypt Road, Montgomery, Texas, 77316. The factual matters that the Petition and Application for Temporary Restraining Order state are true and correct and based on my personal knowledge.

4.  In particular, Alliance Farm and Ranch, LLC was formed to purchase the property located at 5450 Honea Egypt Road, Montgomery, Texas, 77316. I signed a Farm and Ranch Real Estate Contract (Exhibit 1), to both live there as my personal residence (which I did) as well as operate the farm and ranch, mainly raising and selling cattle.

5.  I purchased the property in April of 2022, and was fully moved in by August of 2022.

6.  Erik Ostrander and I had several discussions about the property, and namely, the note that was owed. It was my understanding based on those conversations that when the property was sold, he would keep what was owed on the note, and I would take any proceeds over and above that.

7.  I did not receive the September 26, 2024 Notice described in Exhibit 5. It was sent to the wrong address.

8.  I did not receive the November 6, 2024 Notice by certified mail.

9.  I entered into the Settlement Agreement on or about November 28, 2024 (Exhibit 7) under duress from Erik Ostrander. I never would have paid $100,000.00 towards a Settlement Agreement if I did not believe that the parties were going to work together to sell the property such that Erik would be paid on the Note and I would receive the excess proceeds.

10. It was not until after the foreclosure sale that Erik told me that I was not getting an "f'ing" thing out of the property.

11. If the sale of the property that is scheduled for April 25, 2025, is not temporarily enjoined, both myself and Alliance Farm and Ranch, LLC will suffer immediate and irreparable injury, loss and damage. The property that I put so much money into will be gone to a third party purchaser.

Exhibit 5

JEROD FURR'S AFFIDAVIT OF VERIFICATION
Page 2 of 3

12. I make this affidavit in support of the petition and application for temporary and permanent injunctive relief and I make it in my individual capacity as well as in my capacity as the Managing Member of Alliance Farm and Ranch, LLC.

FURTHER AFFIANT SAYETH NOT."

Jerod Furr, individually, and as Managing
Member of Alliance Farm and Ranch, LLC

SWORN TO and SUBSCRIBED before me by Jerod Furr on this April 21, 2025.

Notary Public, State of Texas
My Commission Expires: 04 23 2025

LAUREN JADE SAENZ
Notary Public, State of Texas
My Comm. Exp. 04-23-2025
ID No. 13306170-0

Exhibit 5

JEROD FURR'S AFFIDAVIT OF VERIFICATION
Page 3 of 3

Recorded at the request of
UNIVERSITY TITLE COMPANY
GF# 2200122TW

**WARRANTY DEED WITH VENDOR'S LIEN**

GF No.:

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:** April 1st, 2022, but to be effective as of April 4th, 2022

**Grantor:** ERIK C. OSTRANDER who acquired title as ERIC C. OSTRANDER and DARLA OSTRANDER, husband and wife

**Grantor's Mailing Address:** 801 Ivy Ln., Terrell Hills, TX 78209 (Bexar County)

**Grantee:** ALLIANCE FARM AND RANCH LLC, a Texas limited liability company

**Grantee's Mailing Address:** 9803 Mission Estates Dr, Spring, TX 77379 (Harris County)

**Consideration:**
The sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned in hand paid by Grantee herein named, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantee of his/her/their one certain Promissory Note of even date herewith in the principal sum of THREE MILLION EIGHT HUNDRED THOUSAND SIX HUNDRED THIRTY-SIX AND NO/100 DOLLARS ($3,800,636.00) payable to the order of ERIC C. OSTRANDER and DARLA OSTRANDER, as therein provided and bearing interest at the rates therein specified, and providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the Vendor's Lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to BRENT A. LANE, Trustee

**Property (including any improvements):**
ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN **EXHIBIT "A"** ATTACHED HERETO AND MADE A PART HEREOF

**Reservations from and Exceptions to Conveyance and Warranty:**
This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: any and all restrictions, covenants, conditions and easements, if any, relating to the herein above described property, but only to the extent they are still in effect, shown of record in the herein above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.
Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in

Exhibit 5
Exhibit 1

forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described Note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, at which time this Deed shall become absolute.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED on the date first above written.

ERIC C. OSTRANDER
ERIK to

DARLA OSTRANDER

STATE OF _Texas_

COUNTY OF _Bexar_

This instrument was acknowledged before me on the _1st_ day of _April_, 2022, by ERIC C. OSTRANDER. Erik sw

SHAREFAH WEAVER
Notary Public, State of Texas
Comm. Expires 07-23-2023
Notary ID 12982122-8

Notary Public in and for the
State of _Texas_

STATE OF _Texas_

COUNTY OF _Bexar_

This instrument was acknowledged before me on the _1st_ day of _April_, 2022, by DARLA OSTRANDER.

SHAREFAH WEAVER
Notary Public, State of Texas
Comm. Expires 07-23-2023
Notary ID 12982122-8

Notary Public in and for the
State of _Texas_

PREPARED IN THE OFFICE OF:
Law Office of Beard & Lane, P.C.
10611 Grant Road
Houston, Texas 77070
Telephone: (281) 897-8848
Email: brent@beardlane.com

AFTER RECORDING RETURN TO:

1BW8085 WDVL

Exhibit 5
Exhibit 1

*Warranty Deed with Vendor's Lien*
Page 2 of 2

Escrow File No.: 2200122TW

# EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE
MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD
HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING
OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT
DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE
DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE
TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED
FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO.
2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND
BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW
CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY
SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE
POINT IN THE WOODFOREST PARTNERS, L.P. TRACT (MCCF NO. 2006-103723)
FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID
WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT
AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3,
SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY
TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD
FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY
TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET
TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT
ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE
SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY
FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT
ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT;
THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF
HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE
BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06
FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE
CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT,
HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 5
Exhibit 1

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

NOTE:  The Company is prohibited from insuring the area or quantity of land described herein.  Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Exhibit 5
Exhibit 1

**Doc #: 2022043836**
**Pages 5**

**E-FILED FOR RECORD**
04/06/2022   08:00AM

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**04/06/2022**

County Clerk
Montgomery County, Texas

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89
C-03AB73BBC0DA



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)   11-08-2021
**FARM AND RANCH CONTRACT**



**1. PARTIES:** The parties to this contract are _Eric C. Ostrander and Darla R. Ostrander_
(Seller) and _Alliance Energy Partners LLC_ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND: The land situated in the County of _Montgomery_ , Texas, described as follows: _A0151 CARTWRIGHT MATTHEW, TRACT 1-A (SPLIT FOR AG), ACRES 73_

or as described on attached exhibit, also known as _5450 Honea Egypt Rd Montgomery, TX 77316-2364_ (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

B. IMPROVEMENTS:
(1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
(2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:
(1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☒ portable buildings ☒ hunting blinds ☒ game feeders ☒ livestock feeders and troughs ☒ irrigation equipment ☒ fuel tanks ☒ submersible pumps ☒ pressure tanks ☒ corrals ☒ gates ☒ chutes ☒ other: _ALL EQUIPMENT THAT IS LISTED ON LISTING BROCHURES, BARN FURNITURE, GENERATOR AND WHITE ENCLOSED TRAILER._
(2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: _N/A_ .

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing .................. $_1,000,000_
B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☒ Seller Financing Addendum .. $_3,850,000_
C. Sales Price (Sum of A and B) ...................................................... $_4,850,000_
D. The Sales Price ☒ will ☐ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $ _27,000_ per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _7_ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☒ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.

Initialed for identification by Buyer _JK_ _____ and Seller _EO_ _DO_   TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB6DB4DD-6EB3-4389-8EC3-4083631D7E89

C-03AB73BBC0DA

☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

☒ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within 5_____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

**5. EARNEST MONEY AND TERMINATION OPTION:**
A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____ Danell Osborn / University Title _____ , as escrow agent, at _____ 2001 Timberloch Place, ste 500 The Woodlands, TX 77380 ____ (address): $ 30,000.00 _____ as earnest money and $ 5,000.00 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow  agent and may be paid separately or combined in a single payment.
(1) Buyer shall deliver additional earnest money of $ n/a _____ to escrow agent within n/a_____ days after the Effective Date of this contract.
(2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.
(4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.
B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate  this  contract by giving notice of termination to Seller within 20_____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified.  If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.
C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.
D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.
E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's  ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: University Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
(1) The standard printed exception for standby fees, taxes and assessments.
(2) Liens created as part of the financing described in Paragraph 3.
(3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(4) The standard printed exception as to marital rights.
(5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☒ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☒ Seller.
(7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.
B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions.  Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21.  If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer ___  _____  and Seller ___  ___                TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89   C-03AB73BBC0DA

Contract Concerning  5450 Honea Egypt Rd Montgomery, TX 77316-2364     Page 3 of 11     11-08-2021
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):
☒ (1) Within  3  days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey ☒ will ☐ will not be recertified to a date subsequent to the Effective Date of this contract at the expense of ☐ Buyer ☒ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☐ Buyer ☒ Seller no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
☐ (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity:_____
Unrestricted land use and cattle with Agriculture exemption
_____

Buyer must object the earlier of (i) the Closing Date or (ii)  5  days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | | |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: N/A
_____.

G. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
(3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in

Initialed for identification by Buyer _JF_ _____ and Seller _ZO_ _DO_ _____     TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-9E3-4083631D7E89

C-03AB73BBC0DA

the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☒ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .

**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

☒ (1) Buyer has received the Notice.

☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)

☒ (1) Buyer accepts the Property As Is.

☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense.

Initialed for identification by Buyer __IF__ _____ and Seller _____ __DD__      TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-8EC3-4083631D7E89

C-03AB73BBC0DA

If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **SELLER'S DISCLOSURES:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards that materially and adversely affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

I. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ 500.00 . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. **GOVERNMENT PROGRAMS:** The Property is subject to the government programs listed below or on the attached exhibit: N/A

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

**8. BROKERS AND SALES AGENTS:**

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: N/A

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before April 1st , 2022 , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, and an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

**10. POSSESSION:**

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

Initialed for identification by Buyer JF _____ and Seller _____ DO          TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89   C-03AB73BBC0DA

Contract Concerning  5450 Honea Egypt Rd Montgomery, TX 77316-2364               Page 6 of 11      11-08-2021
                                         (Address of Property)

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote
use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty
Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers
possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and
applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from
any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to
the sale. TREC rules prohibit license holders from adding factual statements or business details for
which a contract addendum or other form has been promulgated by TREC for mandatory use.)

Buyer and seller acknowledge and understand that paragraph C-promissory note of the seller financing addendum is for a
loan of $3,850,000 with a two year term and amortized over 30 years. A final balloon payment on the amount of the
remaining balance will be due on May 1st, 2024. See attachment Exhibit A.  Buyer reserves the right to pay balance of sales
price at anytime during the two year note without paying any early payoff penalties.

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
(1) Expenses payable by Seller (Seller's Expenses):
(a) Releases of existing liens, including prepayment penalties and recording fees; release of
Seller's loan liability; tax statements or certificates; preparation of deed; one-half of
escrow fee; and other expenses payable by Seller under this contract.
(b) Seller shall also pay an amount not to exceed $ N/A           to be applied in the
following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA,
Texas Veterans Land Board or other governmental loan programs, and then to other
Buyer's Expenses as allowed by the lender.
(2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees;
origination charges; credit reports; preparation of loan documents; interest on the notes
from date of disbursement to one month prior to dates of first monthly payments; recording
fees; copies of easements and restrictions; loan title policy with endorsements required by
lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee;
all prepaid items, including required premiums for flood and hazard insurance, reserve
deposits for insurance, ad valorem taxes and special governmental assessments; final
compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee;
expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding
Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other
expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid
by a party, that party may terminate this contract unless the other party agrees to pay such
excess.  Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans
Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS:  Taxes for the current year, interest, maintenance fees, assessments, dues and
rents will be prorated through the Closing Date. The tax proration may be calculated taking into
consideration any change in exemptions that will affect the current year's taxes. If taxes for the
current year vary from the amount prorated at closing, the parties shall adjust the prorations
when tax statements for the current year are available. If taxes are not paid at or prior to
closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing
will be prorated between Buyer and Seller when they become known.
B. ROLLBACK TAXES:  If this sale or Buyer's use of the Property after closing results in the
assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing,
the Assessments will be the obligation of Buyer.  If Assessments are imposed because of Seller's
use or change in use of the Property prior to closing, the Assessments will be the obligation of
Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other
casualty after the Effective Date of this contract, Seller shall restore the Property to its previous
condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do
so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest
money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the
Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with
an assignment of insurance proceeds, if permitted by Seller's insurance carrier,  and receive credit
from Seller at closing in the amount of the deductible under the insurance policy. Seller's
obligations under this paragraph are independent of any other obligations of Seller under this
contract.

Initialed for identification by Buyer  JF  _____  and Seller  EO   DO          TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89  C-03AB73BBC0DA

Contract Concerning  5450 Honea Egypt Rd Montgomery, TX 77316-2364                    Page 7 of 11    11-08-2021
                                    (Address of Property)

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract.  If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money,  thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing.  If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.  Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Initialed for identification by Buyer  _JF_  _____  and Seller  _EO_  _DO_                    TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BBSDB4DD-6EB3-4389-9EC3-4083631D7E89   C-03AB73BBC0DA

Contract Concerning 5450 Honea Egypt Rd Montgomery, TX 77316-2364                          Page 8 of 11      11-08-2021
(Address of Property)

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:** 20008 Champion Forest Dr. Ste 1203          **To Seller at:** _____

Spring, TX 77379                                            _____

Phone:         ( 281 ) 222-8366                   Phone:        ( )

E-mail/Fax:    jerod.furr@alliance-energy.org     E-mail/Fax:

E-mail/Fax:    _____                   E-mail/Fax:

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☐ Third Party Financing Addendum
- ☒ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Loan Assumption Addendum
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum for Coastal Area Property
- ☐ Addendum for Authorizing Hydrostatic Testing
- ☒ Addendum Concerning Right to Terminate Due to Lender's Appraisal
- ☐ Addendum for Reservation of Oil, Gas and Other Minerals
- ☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

- ☒ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Seller's Temporary Residential Lease
- ☐ Short Sale Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☒ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead -based Paint Hazards as Required by Federal Law
- ☐ Addendum for Property in a Propane Gas System Service Area
- ☐ Addendum Regarding Residential Leases
- ☐ Addendum Regarding Fixture Leases
- ☒ Other (list): Non-Realty Items Addendum
  Amoritization Schedule Exhibit A
  Legal Addendum 1
  On Site Septic Addendum

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                            Seller's
Attorney is: TBD                                   Attorney is: TBD

Phone:      ( )                       Phone:      ( )

Fax:        ( )                       Fax:        ( )

E-mail:     _____          E-mail:     _____

Initialed for identification by Buyer JF _____ and Seller EO  DO          TREC NO. 25-14

**Exhibit 5**
**Exhibit 1**

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89   C-03AB73BBC0DA

Contract Concerning   5450 Honea Egypt Rd Montgomery, TX 77316-2364 _____   Page 9 of 11   11-08-2021
(Address of Property)

---

**EXECUTED the _____ day of _____, 20_____ (Effective Date).**
01/20/2022
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

---

DocuSigned by:

_Jerod Furr_

Buyer

_E O St_   01/20/2022
1/20/2022 8:56:38 PM GMT

Seller

---

_Darla Ostrander_   01/20/2022
1/20/2022 7:49:54 PM GMT

Buyer

Seller

---

The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-14. This form replaces TREC NO. 25-13.

**TREC**
TEXAS REAL ESTATE COMMISSION

TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-8EC3-4083631D7E89 ...C-03AB73BBC0DA

Contract Concerning 5450 Honea Egypt Rd Montgomery, TX 77316-2364     Page 10 of 11    11-08-2021
(Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker 3% _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                       Listing Broker:

By: Connect Realty _____      By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| Connect Realty.com, Inc | 573369 | RE/MAX Integrity | 0208532 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Jeana Hurley | 528410 | Holly Rosser | 0629296 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| Lux Group | | | |
| Team Name | | Team Name | |
| jeana@luxgrouptx.com | 713-540-6413 | hollyrosser1@gmail.com | |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| Mary Goudreault | 538377 | Ruben Villarreal | 0415433 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 2170 Buckthorne Place, Ste 100 | 281-292-3499 | 19510 Kuykendahl Rd. Ste B | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| The Woodlands | TX   77380 | Spring | TX   77379 |
| City    State    Zip | | City    State    Zip | |

represents   ☒ Buyer only as Buyer's agent
             ☐ Seller as Listing Broker's subagent

Selling Associate               License No.

Team Name

Selling Associate's Email Address       Phone

Licensed Supervisor of Selling Associate     License No.

Selling Associate's Office Address

City        State        Zip

represents   ☒ Seller only
             ☐ Buyer only
             ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $ _____ or ☐ _____ % of the total Sales Price; and (b) ☐ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $ _____ or _____ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

| _signature_ 01/20/2022 | _Jered Furr_ |
|---|---|
| Seller   1/20/2022 8:56:39 PM GMT | Buyer |
| _Darla Ostrander_ 01/20/2022 | |
| Seller   1/20/2022 7:49:56 PM GMT | Buyer |

Do not sign if there is a separate written agreement for payment of Brokers' fees.

TREC NO. 25-14

**Exhibit 5**
**Exhibit 1**

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89   C-03AB73BBC0DA

Contract Concerning _____5450 Honea Egypt Rd Montgomery, TX 77316-2364_____   Page 11 of 11   11-08-2021
                                    (Address of Property)

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____                                          _____
Escrow Agent                                                                                    Date

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

_____        _____    _____        _____
Escrow Agent                              Received by    Email Address                   Date/Time

_____        _____
Address                                                                           Phone

_____        _____
City                          State                     Zip                                      Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____        _____    _____        _____
Escrow Agent                              Received by    Email Address                   Date

_____        _____
Address                                                                           Phone

_____        _____
City                          State                     Zip                                      Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $_____ additional Earnest Money in the form of _____
is acknowledged.

_____        _____    _____        _____
Escrow Agent                              Received by    Email Address                   Date/Time

_____        _____
Address                                                                           Phone

_____        _____
City                          State                     Zip                                      Fax

TREC NO. 25-14

Exhibit 5
Exhibit 1

Authentisign ID: BB5DB4DD-6EB3-4389-8EC3-4083631D7E89
>B40571E7AD5D

# ADDENDUM

PROPERTY: **5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

**TAX ID - 0151-00-00106**
**Legal Description    A0151 CARTWRIGHT MATTHEW, TRACT 1-A (SPLIT FOR AG), ACRES 1.000**

**TAX ID - 0151-00-00107**
**Legal Description   A0151 - Cartwright Matthew, TRACT 1-A, (A0018 1.490 AC), ACRES 21.92**

**TAX ID - 0151-00-00105**
**Legal Description   A0151 - Cartwright Matthew, TRACT 1-A, (A0018 1.490 AC), ACRES 50**

**TAX ID - 0151-00-00108**
**Legal Description: Manufactured home: A0151 A0151 - Cartwright Matthew, TRACT 1-A, SERIAL #**
**SFW013709TXA, TITLE # MH00470103, LABEL # NTA1551549, MODEL FC2441**

Date: _10/07/2021_                              Date: _1/14/2022_

_____                      _____
Signature                                      Signature

Date: _10/07/2021_                              Date: _____

_____                      _____
Signature                                      Signature

Addendum

RE/MAX Integrity, 19510 Kuykendahl Spring TX 77379                Phone: 8326310651        Fax: 8324823978        Erik and Darla
Holly Rosser                        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Exhibit 5
Exhibit 1

uthentisign ID: 46663FBA-C5B6-446D-B336-E80FF101E8A4

Residential Listing concerning _____ **5450 Honea Egypt Rd**
**Montgomery, TX 77316-2364**

E. <u>Owners' Association</u>: The Property ☐ is [X] is not subject to mandatory membership in a property owners' association.

3. **LISTING PRICE:** Seller instructs Broker to market the Property at the following price: $ **4,995,000.00** (Listing Price). Seller agrees to sell the Property for the Listing Price or any other price acceptable to Seller. Seller will pay all typical closing costs charged to sellers of residential real estate in Texas (seller's typical closing costs are those set forth in the residential contract forms promulgated by the Texas Real Estate Commission).

4. **TERM:**

A. This Listing begins on _____ **October 1, 2021** _____ and ends at 11:59 p.m. on _____ **October 31, 2022** _____ .

B. If Seller enters into a binding written contract to sell the Property before the date this Listing begins and the contract is binding on the date this Listing begins, this Listing will not commence and will be void.

5. **BROKER COMPENSATION:**

A. When earned and payable, Seller will pay Broker:

[X] (1) _**6.000**_ % of the sales price.

[X] (2) **50,000 bonus if sold within one year.** _____ .

B. <u>Earned</u>: Broker's compensation is earned when any one of the following occurs during this Listing:
   (1) Seller sells, exchanges, options, agrees to sell, agrees to exchange, or agrees to option the Property to anyone at any price on any terms;
   (2) Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller; or
   (3) Seller breaches this Listing.

C. <u>Payable</u>: Once earned, Broker's compensation is payable either during this Listing or after it ends at the earlier of:
   (1) the closing and funding of any sale or exchange of all or part of the Property;
   (2) Seller's refusal to sell the Property after Broker's compensation has been earned;
   (3) Seller's breach of this Listing; or
   (4) at such time as otherwise set forth in this Listing.

   Broker's compensation is <u>not</u> payable if a sale of the Property does not close or fund as a result of: (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or a title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding; or (iii) Seller's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the sale of the Property.

D. <u>Other Compensation</u>:

   (1) <u>Breach by Buyer Under a Contract</u>: If Seller collects earnest money, the sales price, or damages by suit, compromise, settlement, or otherwise from a buyer who breaches a contract for the sale of the Property entered into during this Listing, Seller will pay Broker, after deducting attorney's fees and collection expenses, an amount equal to the lesser of one-half of the amount collected after deductions or the amount of the Broker's Compensation stated in Paragraph 5A. Any amount paid under this Paragraph 5D(1) is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

   (2) <u>Service Providers</u>: If Broker refers Seller or a prospective buyer to a service provider (for example, mover, cable company, telecommunications provider, utility, or contractor) Broker may receive a fee from the service provider for the referral. Any referral fee Broker receives under this Paragraph 5D(2) is in addition to any other compensation Broker may receive under this Listing.

(TXR-1101) 03-01-2021   Initialed for Identification by Broker/Associate [ 𝒶𝒸𝒶 ] and Seller [ 𝓔𝒪 ] , [ 𝒟𝒪 ]      Page 2 of 10

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com      Erik and Darla

Exhibit 5
Exhibit 1

Scanned with CamScanner

uthentiSign ID: 46663FBA-C5B6-448D-B336-E80FF101E8A4

Residential Listing concerning _____

**5450 Honea Egypt Rd**
**Montgomery, TX 77316-2364**

B. <u>Scheduling Companies</u>: Broker may engage the following companies to schedule appointments and to authorize others to access the Property: <u>Centralized Showing Service</u> _____ .

C. <u>Keybox</u>: **A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device so that authorized persons may enter the Property, even in Seller's absence. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Broker ☐ is ☒ is not authorized to place a keybox on the Property.

(2) If a tenant occupies the Property at any time during this Listing, Seller will furnish Broker a written statement (for example, TXR No. 1411), signed by all tenants, authorizing the use of a keybox or Broker may remove the keybox from the Property.

D. <u>Liability and Indemnification</u>: When authorizing access to the Property, Broker, other brokers, their associates, any keybox provider, or any scheduling company are not responsible for personal injury or property loss to Seller or any other person. Seller assumes all risk of any loss, damage, or injury. **Except for a loss caused by Broker, Seller will indemnify and hold Broker harmless from any claim for personal injury, property damage, or other loss.**

8. **COOPERATION WITH OTHER BROKERS:** Broker will allow other brokers to show the Property to prospective buyers. Broker will offer to pay the other broker a fee as described below if the other broker procures a buyer that purchases the Property.

A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which this Listing is filed, <u>Broker will offer to pay the other broker:</u>
(1) if the other broker represents the buyer: __3.000__ % of the sales price or $ _____ ; and
(2) if the other broker is a subagent: _____ % of the sales price or $ _____ .

B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the buyer: __2.000__ % of the sales price or $ _____ ; and
(2) if the other broker is a subagent: _____ % of the sales price or $ _____ .

9. **INTERMEDIARY:** *(Check A or B only.)*

☒ A. <u>Intermediary Status</u>: Broker may show the Property to interested prospective buyers who Broker represents. If a prospective buyer who Broker represents offers to buy the Property, Seller authorizes Broker to act as an intermediary and Broker will notify Seller that Broker will service the parties in accordance with one of the following alternatives.

(1) If a prospective buyer who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of, and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospective buyer to the prospective buyer for the same purpose.

(2) If a prospective buyer who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospective buyer; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

(TXR-1101) 03-01-2021    Initialed for Identification by Broker/Associate [__] and Seller [__] , [__]    Page 5 of 10

Scanned with CamScanner

Exhibit 5
Exhibit 1

DocuSign Envelope ID: 071DD40E-22A6-4E22-899E-DFE587C7BB44



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          10-10-11
FOR VOLUNTARY USE

## NON-REALTY ITEMS ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

(Address of Property)

**A.** For an additional sum of $ __N/A__ and other and good valuable consideration, Seller shall convey to Buyer at closing the following personal property (specify each item carefully, include description, model numbers, serial numbers, location, and other information):

**1 - CASE JX95 Tractor with Shredder: Serial # 33678**

**1 - CASE 586 Forklift: Serial # 76250-2**

**1 - CAT 420 D Front Loader & Backhoe:  Serial # CRS27574**

**2 - Kubota - Diesel Powered Zero Turn Mowers: Serial # 53851 & partial: 1229**

**1 - Kubota Utility Tractor w/Front end loader: Serial # 3028994216**

**1 - John Deere Tractor w/Front end loader: Serial # LVO790G592002**

**1 - Honda ATV and 1 Kawasaki Mule**

**1 - 500 Gallon Diesel Fuel Tank on wheels**

**1 - White Trailer: VIN: 575200JZOGT32322**

**1 - Manure Spreader**

**Continued... See Addendum Personal Property Info. 1**

**B.** Seller represents and warrants that Seller owns the personal property described in Paragraph A free and clear of all encumbrances.

**C.** Seller does not warrant or guarantee the condition or future performance of the personal property conveyed by this document.

Buyer _____          Seller _____ 01/20/2022 8:56:47 PM GMT
**Alliance Energy Partners LLC**                 **Erik Ostrander**

Buyer _____          Seller _____ 01/20/2022 7:50:07 PM GMT
                                                **Darla Ostrander**

This form has been approved by the Texas Real Estate Commission for voluntary use by its licensees. Copies of TREC rules governing real estate brokers, salesperson and real estate inspectors are available at nominal cost from TREC. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov)

(TXR-1924) 10-10-11                                          TREC NO. OP-M

RE/MAX Integrity, 19510 Kuykendahl Spring TX 77379                    Phone: 8326310651      Fax: 8324823978      Erik and Darla
Holly Rosser               Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

**Exhibit 5**
**Exhibit 1**

DocuSign Envelope ID: 071DD40E-22A6-4E22-899E-DFE587C7BB44

# ADDENDUM

PROPERTY: **5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

**1) Personal Property Info.**
**1 - 60KW Generator Serial # 8800152**
**2 - 5 Ton Cranes in Workshop**
**All Moduline Aluminum Cabinets in Garage and Workshop**
**Paint Booth in Workshop**
**1 - Challenger lift**
**All Appliances and workstations in party barn, guest homes, garage, and main house**
**1 - Amerikooler Walk-in cooler**
**All tools and lawn equipment in 2nd Workshop**
**All Cattle (except 3 tagged)**
**All furniture in Guest apartment**
**All TV's on property**
**Gas Grill (Guest apartment)**

Date:  1/20/2022                     Date:  01/20/2022

Signature  *Jarod Furr*              Signature  *E. Ostrander*
─ 2E5D4370D025442...                ─ 1/20/2022 8:56:49 PM GMT

Date:                                Date:  01/20/2022

Signature                            Signature  *Darla Ostrander*
                                     ─ 1/20/2022 7:50:08 PM GMT

Addendum

RE/MAX Integrity, 19510 Kuykendahl Spring TX 77379                              Phone: 8326310651              Fax: 8324823978              Erik and Darla
Holly Rosser                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 5
Exhibit 1

DocuSign Envelope ID: 071DD40E-22A6-4E22-899E-DFE587C7BB44



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          10-10-11
FOR VOLUNTARY USE

## NON-REALTY ITEMS ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

(Address of Property)

**A.**  For an additional sum of $ __N/A__ and other and good valuable consideration, Seller shall convey to Buyer at closing the following personal property (specify each item carefully, include description, model numbers, serial numbers, location, and other information):

**1 - CASE JX95 Tractor with Shredder: Serial # 33678**

**1 - CASE 586 Forklift: Serial # 76250-2**

**1 - CAT 420 D Front Loader & Backhoe:  Serial # CRS27574**

**2 - Kubota - Diesel Powered Zero Turn Mowers: Serial # 53851 & partial: 1229**

**1 - Kubota Utility Tractor w/Front end loader: Serial # 3028994216**

**1 - John Deere Tractor w/Front end loader: Serial # LVO790G592002**

**1 - Honda ATV and 1 Kawasaki Mule**

**1 - 500 Gallon Diesel Fuel Tank on wheels**

**1 - White Trailer: VIN: 575200JZOGT32322**

**1 - Manure Spreader**

**Continued... See Addendum Personal Property Info. 1**

**B.**  Seller represents and warrants that Seller owns the personal property described in Paragraph A free and clear of all encumbrances.

**C.**  Seller does not warrant or guarantee the condition or future performance of the personal property conveyed by this document.

Buyer _____          Seller _____   01/20/2022
**Alliance Energy Partners LLC**                         **Erik Ostrander**
                                                         01/20/2022 8:56:47 PM GMT

Buyer _____          Seller _____   01/20/2022
                                                         **Darla Ostrander**
                                                         01/20/2022 7:50:07 PM GMT

This form has been approved by the Texas Real Estate Commission for voluntary use by its licensees. Copies of TREC rules governing real estate brokers, salesperson and real estate inspectors are available at nominal cost from TREC. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov)

(TXR-1924) 10-10-11                                          TREC NO. OP-M

**Exhibit 5**
**Exhibit 1**

DocuSign Envelope ID: 071DD40E-22A6-4E22-899E-DFE587C7BB44

# ADDENDUM

PROPERTY: **5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

**1) Personal Property Info.**
**1 - 60KW Generator Serial # 8800152**
**2 - 5 Ton Cranes in Workshop**
**All Moduline Aluminum Cabinets in Garage and Workshop**
**Paint Booth in Workshop**
**1 - Challenger lift**
**All Appliances and workstations in party barn, guest homes, garage, and main house**
**1 - Amerikooler Walk-in cooler**
**All tools and lawn equipment in 2nd Workshop**
**All Cattle (except 3 tagged)**
**All furniture in Guest apartment**
**All TV's on property**
**Gas Grill (Guest apartment)**

Date: _____1/20/2022_____

Signature _____*Jerod Furr*_____
2E5D4370D025442...

Date: _____01/20/2022_____

Signature _____*E O St*_____
01/20/22 8:56:49 PM GMT

Date: _____

Signature _____

Date: _____01/20/2022_____

Signature _____*Darla Ostrander*_____
1/20/2022 7:50:08 PM GMT

Addendum

RE/MAX Integrity, 19510 Kuykendahl Spring TX 77379                  Phone: 8326310651          Fax: 8324823978          Erik and Darla
Holly Rosser                  Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX. 75201    www.lwolf.com

**Exhibit 5**
**Exhibit 1**

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89

1-F1B1ADD6D636



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)        12-05-2011

## ENVIRONMENTAL ASSESSMENT, THREATENED OR ENDANGERED SPECIES, AND WETLANDS ADDENDUM

### TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd, Montgomery, TX  77316-2364**
(Address of Property)

[X]  A.  ENVIRONMENTAL ASSESSMENT: Buyer, at Buyer's expense, may obtain an environmental assessment report prepared by an environmental specialist.

[X]  B.  THREATENED OR ENDANGERED SPECIES: Buyer, at Buyer's expense, may obtain a report from a natural resources professional to determine if there are any threatened or endangered species or their habitats as defined by the Texas Parks and Wildlife Department or the U.S. Fish and Wildlife Service.

[X]  C.  WETLANDS: Buyer, at Buyer's expense, may obtain a report from an environmental specialist to determine if there are wetlands, as defined by federal or state law or regulation.

Within _____**15**_____ days after the effective date of the contract, Buyer may terminate the contract by furnishing Seller a copy of any report noted above that adversely affects the use of the Property and a notice of termination of the contract. Upon termination, the earnest money will be refunded to Buyer.

Buyer
**Alliance Energy Partners LLC**

Seller        01/20/2022
1/20/2022 8:56:45 PM GMT
**Eric C. Ostrander**

Buyer

Seller        01/20/2022
1/20/2022 7:50:05 PM GMT
**Darla R. Ostrander**

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 28-2. This form replaces TREC No. 28-1.

TREC No. 28-2

**Exhibit 5**
**Exhibit 1**

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4083631D7E89   \-EF448BB61ACF



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)       11-2-2015

EQUAL HOUSING
OPPORTUNITY

# SELLER FINANCING ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd, Montgomery, TX  77316-2364**
(Address of Property)

**A.  CREDIT DOCUMENTATION.** To establish Buyer's creditworthiness, Buyer shall deliver to Seller within ____7____ days after the effective date of this contract, ☒ credit report ☐ verification of employment, including salary ☐ verification of funds on deposit in financial institutions ☒ current financial statement and ☒ **Personal financial statement** _____ _____ . Buyer hereby authorizes any credit reporting agency to furnish copies of Buyer's credit reports to Seller at Buyer's sole expense.

**B.  BUYER'S CREDIT APPROVAL.** If the credit documentation described in Paragraph A is not delivered within the specified time, Seller may terminate this contract by notice to Buyer within 7 days after expiration of the time for delivery, and the earnest money will be paid to Seller. If the credit documentation is timely delivered, and Seller determines in Seller's sole discretion that Buyer's credit is unacceptable, Seller may terminate this contract by notice to Buyer within 7 days after expiration of the time for delivery and the earnest money will be refunded to Buyer. If Seller does not terminate this contract, Seller will be deemed to have approved Buyer's creditworthiness.

**C.  PROMISSORY NOTE.** The promissory note in the amount of $ **3,850,000.00** (Note), included in Paragraph 3B of the contract payable by Buyer to the order of Seller will bear interest at the rate of ____6.000____ % per annum and be payable at the place designated by Seller. Buyer may prepay the Note in whole or in part at any time without penalty. Any prepayments are to be applied to the payment of the installments of principal last maturing and interest will immediately cease on the prepaid principal. The Note will contain a provision for payment of a late fee of 5% of any installment not paid within 10 days of the due date. Matured unpaid amounts will bear interest at the rate of 1½% per month or at the highest lawful rate, whichever is less. The Note will be payable as follows:

☐ (1)  In one payment due _____ after the date of the Note with interest payable ☐ at maturity ☐ monthly ☐ quarterly. (check one box only)

☒ (2)  In monthly installments of $ **23,082.70** ☒ including interest ☐ plus interest (check one box only) beginning **April 1st** after the date of the Note and continuing monthly thereafter for ____24____ months when the balance of the Note will be due and payable.

☐ (3)  Interest only in monthly installments for the first _____ month(s) and thereafter in installments of $ _____ ☐ including interest ☐ plus interest (check one box only) beginning _____ after the date of the Note and continuing monthly thereafter for _____ months when the balance of the Note will be due and payable.

**D.  DEED OF TRUST.** The deed of trust securing the Note will provide for the following:

(1) PROPERTY TRANSFERS: (check one box only)

☐ (a)  Consent Not Required: The Property may be sold, conveyed or leased without the consent of Seller, provided any subsequent buyer assumes the Note.

☒ (b)  Consent Required: If all or any part of the Property is sold, conveyed, leased for a period longer than 3 years, leased with an option to purchase, or otherwise sold (including any contract for deed), without Seller's prior written consent, which consent may be withheld in Seller's sole discretion, Seller may declare the balance of the Note

Initialed for identification by Buyer ____JF____ and Seller ____EO__ DO____          TREC NO. 26-7

Connect Realty, 2170 Buckthorne Place, Ste 100 The Woodlands TX 77380          Phone: (713)540-6413          Fax:          5450 Honea Egypt Rd
Jeana Hurley          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

**Exhibit 5**
**Exhibit 1**

Authentisign ID: BB5DB4DD-6EB3-4389-9EC3-4063631D7E89

⅃EF448BB61ACF

Seller Financing Addendum Concerning                     Page 2 of 2      11-2-2015

**5450 Honea Egypt Rd, Montgomery, TX  77316-2364**
(Address of Property)

to be immediately due and payable. The creation of a subordinate lien, any conveyance under threat or order of condemnation, any deed solely between buyers, or the passage of title by reason of the death of a buyer or by operation of law will not entitle Seller to exercise the remedies provided in this paragraph.

NOTE: *Under (a) or (b), Buyer's liability to pay the Note will continue unless Buyer obtains a release of liability from Seller.*

(2)  TAX AND INSURANCE ESCROW: (check one box only)

[X] (a)  Escrow Not Required: Buyer shall furnish Seller, before each year's ad valorem taxes become delinquent, evidence that all ad valorem taxes on the Property have been paid. Buyer shall annually furnish Seller evidence of paid-up casualty insurance naming Seller as a mortgagee loss payee.

[ ] (b)  Escrow Required: With each installment Buyer shall deposit in escrow with Seller a pro rata part of the  estimated annual ad valorem taxes and casualty insurance premiums for the Property. Buyer shall pay any deficiency within 30 days after notice from Seller. Buyer's failure to pay the deficiency will be a default under the deed of trust. Buyer is not required to deposit any escrow payments for taxes and insurance that are deposited with a superior lienholder. The casualty insurance must name Seller as a mortgagee loss payee.

(3)  PRIOR LIENS: Any default under any lien superior to the lien securing the Note will be a default under the deed of trust securing the Note.

Buyer _____          Seller _____ 01/20/2022
**Alliance Energy Partners LLC**         **Eric C. Ostrander**

Buyer _____          Seller _____ 01/20/2022
                                        **Darla R. Ostrander**

The form of this contract has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 26-7. This form replaces TREC No. 26-6.

TREC NO. 26-7

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com      5450 Honea Egypt

Exhibit 5
Exhibit 1

Authentisign ID: BB6DB4DD-6EB3-4389-8EC3-4083631D7E89    >-B40571E7AD5D

## ADDENDUM

PROPERTY: **5450 Honea Egypt Rd, Montgomery, TX  77316-2364**

**TAX ID - 0151-00-00106**
**Legal Description    A0151 CARTWRIGHT MATTHEW, TRACT 1-A (SPLIT FOR AG), ACRES 1.000**

**TAX ID - 0151-00-00107**
**Legal Description    A0151 - Cartwright Matthew, TRACT 1-A, (A0018 1.490 AC), ACRES 21.92**

**TAX ID - 0151-00-00105**
**Legal Description    A0151 - Cartwright Matthew, TRACT 1-A, (A0018 1.490 AC), ACRES 50**

**TAX ID - 0151-00-00108**
**Legal Description: Manufactured home: A0151 A0151 - Cartwright Matthew, TRACT 1-A, SERIAL # SFW013709TXA, TITLE # MH00470103, LABEL # NTA1551549, MODEL FC2441**

Date: 10/07/2021

_____
Signature

Date: 10/07/2021

_Darla Ostrander_
Signature

Date: 1/14/2022

_Jerod Furr_
Signature

Date: _____

_____
Signature

Addendum

Exhibit 5
Exhibit 1

DocuSign Envelope ID: 071DD40E-22A6-4E22-899E-DFE587C7BB44



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

11-18-14

## ADDENDUM FOR RESERVATION OF OIL, GAS, AND OTHER MINERALS

### ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd**                                 **Montgomery**
_____
(Street Address and City)

*NOTICE: For use ONLY if Seller reserves all or a portion of the Mineral Estate.*

A. "Mineral Estate" means all oil, gas, and other minerals in and under and that may be produced from the Property, any royalty under any existing or future mineral lease covering any part of the Property, executive rights (including the right to sign a mineral lease covering any part of the Property), implied rights of ingress and egress, exploration and development rights, production and drilling rights, mineral lease payments, and all related rights and benefits. The Mineral Estate does NOT include water, sand, gravel, limestone, building stone, caliche, surface shale, near-surface lignite, and iron, but DOES include the reasonable use of these surface materials for mining, drilling, exploring, operating, developing, or removing the oil, gas, and other minerals from the Property.

B. *Subject to Section C below*, the Mineral Estate owned by Seller, if any, will be conveyed unless reserved as follows (check one box only):

☐ (1) Seller reserves all of the Mineral Estate owned by Seller.

☐ (2) Seller reserves an undivided _____ interest in the Mineral Estate owned by Seller. *NOTE: If Seller does not own all of the Mineral Estate, Seller reserves only this percentage or fraction of Seller's interest.*

C. Seller ☐ *does* ☒ *does not* reserve and retain implied rights of ingress and egress and of reasonable use of the Property (including surface materials) for mining, drilling, exploring, operating, developing, or removing the oil, gas, and other minerals. *NOTE: Surface rights that may be held by other owners of the Mineral Estate who are not parties to this transaction (including existing mineral lessees) will NOT be affected by Seller's election. Seller's failure to complete Section C will be deemed an election to convey all surface rights described herein.*

D. If Seller does not reserve all of Seller's interest in the Mineral Estate, Seller shall, within 7 days after the Effective Date, provide Buyer with the contact information of any existing mineral lessee known to Seller.

**IMPORTANT NOTICE: The Mineral Estate affects important rights, the full extent of which may be unknown to Seller. A full examination of the title to the Property completed by an attorney with expertise in this area is the only proper means for determining title to the Mineral Estate with certainty. In addition, attempts to convey or reserve certain interest out of the Mineral Estate separately from other rights and benefits owned by Seller may have unintended consequences. Precise contract language is essential to preventing disagreements between present and future owners of the Mineral Estate. If Seller or Buyer has any questions about their respective rights and interests in the Mineral Estate and how such rights and interests may be affected by this contract, they are strongly encouraged to consult an attorney with expertise in this area.**

**CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advice. READ THIS FORM CAREFULLY.

*Jerod Furr*                                             *E. Ostrander*   01/20/2022
_____                        _____
Buyer **Alliance Energy Partners LLC**                   Seller **Erik Ostrander**   1/20/2022 8:56:04 PM CST

                                                         *Darla Ostrander*   01/20/2022
_____                        _____
Buyer                                                    Seller **Darla Ostrander**

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 44-2. This form replaces TREC No. 44-1.

TREC NO. 44-2

**Exhibit 5**
**Exhibit 1**

# Amortization Schedule Calculator

Amortization is paying off a debt over time in equal installments. Part of each payment goes toward the loan principal, and part goes toward interest. With mortgage loan amortization, the amount going toward principal starts out small, and gradually grows larger month by month. Meanwhile, the amount going toward interest declines month by month for fixed-rate loans.

Your amortization schedule shows how much money you pay in principal and interest over time. Use this calculator to see how those payments break down over your loan term.



Mortgage amount   3,850,000
Mortgage term in years   30
Or
Term in months   360
Interest rate per year   6
CALCULATE
Start Date   4/1/2022

Monthly Payments  **$** 23,082.70

**Amortization Schedule**

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| May 2022 | $23,082.70 | $3,832.70 | $19,250.00 | $19,250.00 | $3,846,167.30 |
| Jun 2022 | $23,082.70 | $3,851.86 | $19,230.84 | $38,480.84 | $3,842,315.45 |
| Jul 2022 | $23,082.70 | $3,871.12 | $19,211.58 | $57,692.41 | $3,838,444.33 |
| Aug 2022 | $23,082.70 | $3,890.47 | $19,192.22 | $76,884.64 | $3,834,553.85 |
| Sep 2022 | $23,082.70 | $3,909.93 | $19,172.77 | $96,057.40 | $3,830,643.93 |
| Oct 2022 | $23,082.70 | $3,929.48 | $19,153.22 | $115,210.62 | $3,826,714.45 |
| Nov 2022 | $23,082.70 | $3,949.12 | $19,133.57 | $134,344.20 | $3,822,765.33 |
| Dec 2022 | $23,082.70 | $3,968.87 | $19,113.83 | $153,458.02 | $3,818,796.46 |
| Jan 2023 | $23,082.70 | $3,988.71 | $19,093.98 | $172,552.01 | $3,814,807.75 |
| Feb 2023 | $23,082.70 | $4,008.66 | $19,074.04 | $191,626.04 | $3,810,799.09 |
| Mar 2023 | $23,082.70 | $4,028.70 | $19,054.00 | $210,680.04 | $3,806,770.39 |
| Apr 2023 | $23,082.70 | $4,048.84 | $19,033.85 | $229,713.89 | $3,802,721.55 |
| May 2023 | $23,082.70 | $4,069.09 | $19,013.61 | $248,727.50 | $3,798,652.46 |
| Jun 2023 | $23,082.70 | $4,089.43 | $18,993.26 | $267,720.76 | $3,794,563.03 |
| Jul 2023 | $23,082.70 | $4,109.88 | $18,972.82 | $286,693.58 | $3,790,453.15 |

Exhibit 5
Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Aug 2023 | $23,082.70 | $4,130.43 | $18,952.27 | $305,645.84 | $3,786,322.72 |
| Sep 2023 | $23,082.70 | $4,151.08 | $18,931.61 | $324,577.46 | $3,782,171.64 |
| Oct 2023 | $23,082.70 | $4,171.84 | $18,910.86 | $343,488.31 | $3,777,999.80 |
| Nov 2023 | $23,082.70 | $4,192.70 | $18,890.00 | $362,378.31 | $3,773,807.10 |
| Dec 2023 | $23,082.70 | $4,213.66 | $18,869.04 | $381,247.35 | $3,769,593.44 |
| Jan 2024 | $23,082.70 | $4,234.73 | $18,847.97 | $400,095.32 | $3,765,358.72 |
| Feb 2024 | $23,082.70 | $4,255.90 | $18,826.79 | $418,922.11 | $3,761,102.81 |
| Mar 2024 | $23,082.70 | $4,277.18 | $18,805.51 | $437,727.62 | $3,756,825.63 |
| Apr 2024 | $23,082.70 | $4,298.57 | $18,784.13 | $456,511.75 | $3,752,527.07 |
| May 2024 | $23,082.70 | $4,320.06 | $18,762.64 | $475,274.39 | $3,748,207.01 |
| Jun 2024 | $23,082.70 | $4,341.66 | $18,741.04 | $494,015.42 | $3,743,865.35 |
| Jul 2024 | $23,082.70 | $4,363.37 | $18,719.33 | $512,734.75 | $3,739,501.98 |
| Aug 2024 | $23,082.70 | $4,385.19 | $18,697.51 | $531,432.26 | $3,735,116.79 |
| Sep 2024 | $23,082.70 | $4,407.11 | $18,675.58 | $550,107.84 | $3,730,709.68 |
| Oct 2024 | $23,082.70 | $4,429.15 | $18,653.55 | $568,761.39 | $3,726,280.53 |
| Nov 2024 | $23,082.70 | $4,451.29 | $18,631.40 | $587,392.79 | $3,721,829.24 |
| Dec 2024 | $23,082.70 | $4,473.55 | $18,609.15 | $606,001.94 | $3,717,355.69 |
| Jan 2025 | $23,082.70 | $4,495.92 | $18,586.78 | $624,588.72 | $3,712,859.78 |
| Feb 2025 | $23,082.70 | $4,518.40 | $18,564.30 | $643,153.02 | $3,708,341.38 |
| Mar 2025 | $23,082.70 | $4,540.99 | $18,541.71 | $661,694.72 | $3,703,800.39 |
| Apr 2025 | $23,082.70 | $4,563.69 | $18,519.00 | $680,213.73 | $3,699,236.70 |
| May 2025 | $23,082.70 | $4,586.51 | $18,496.18 | $698,709.91 | $3,694,650.19 |
| Jun 2025 | $23,082.70 | $4,609.44 | $18,473.25 | $717,183.16 | $3,690,040.74 |
| Jul 2025 | $23,082.70 | $4,632.49 | $18,450.20 | $735,633.36 | $3,685,408.25 |
| Aug 2025 | $23,082.70 | $4,655.65 | $18,427.04 | $754,060.41 | $3,680,752.60 |
| Sep 2025 | $23,082.70 | $4,678.93 | $18,403.76 | $772,464.17 | $3,676,073.66 |
| Oct 2025 | $23,082.70 | $4,702.33 | $18,380.37 | $790,844.54 | $3,671,371.34 |
| Nov 2025 | $23,082.70 | $4,725.84 | $18,356.86 | $809,201.39 | $3,666,645.50 |
| Dec 2025 | $23,082.70 | $4,749.47 | $18,333.23 | $827,534.62 | $3,661,896.03 |
| Jan 2026 | $23,082.70 | $4,773.22 | $18,309.48 | $845,844.10 | $3,657,122.82 |
| Feb 2026 | $23,082.70 | $4,797.08 | $18,285.61 | $864,129.72 | $3,652,325.74 |
| Mar 2026 | $23,082.70 | $4,821.07 | $18,261.63 | $882,391.34 | $3,647,504.67 |
| Apr 2026 | $23,082.70 | $4,845.17 | $18,237.52 | $900,628.87 | $3,642,659.50 |
| May 2026 | $23,082.70 | $4,869.40 | $18,213.30 | $918,842.17 | $3,637,790.10 |
| Jun 2026 | $23,082.70 | $4,893.74 | $18,188.95 | $937,031.12 | $3,632,896.35 |
| Jul 2026 | $23,082.70 | $4,918.21 | $18,164.48 | $955,195.60 | $3,627,978.14 |
| Aug 2026 | $23,082.70 | $4,942.80 | $18,139.89 | $973,335.49 | $3,623,035.34 |
| Sep 2026 | $23,082.70 | $4,967.52 | $18,115.18 | $991,450.66 | $3,618,067.82 |
| Oct 2026 | $23,082.70 | $4,992.36 | $18,090.34 | $1,009,541.00 | $3,613,075.45 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Nov 2026 | $23,082.70 | $5,017.32 | $18,065.38 | $1,027,606.38 | $3,608,058.14 |
| Dec 2026 | $23,082.70 | $5,042.40 | $18,040.29 | $1,045,646.67 | $3,603,015.74 |
| Jan 2027 | $23,082.70 | $5,067.62 | $18,015.08 | $1,063,661.75 | $3,597,948.12 |
| Feb 2027 | $23,082.70 | $5,092.95 | $17,989.74 | $1,081,651.49 | $3,592,855.17 |
| Mar 2027 | $23,082.70 | $5,118.42 | $17,964.28 | $1,099,615.77 | $3,587,736.75 |
| Apr 2027 | $23,082.70 | $5,144.01 | $17,938.68 | $1,117,554.45 | $3,582,592.74 |
| May 2027 | $23,082.70 | $5,169.73 | $17,912.96 | $1,135,467.41 | $3,577,423.01 |
| Jun 2027 | $23,082.70 | $5,195.58 | $17,887.12 | $1,153,354.53 | $3,572,227.43 |
| Jul 2027 | $23,082.70 | $5,221.56 | $17,861.14 | $1,171,215.67 | $3,567,005.87 |
| Aug 2027 | $23,082.70 | $5,247.67 | $17,835.03 | $1,189,050.70 | $3,561,758.20 |
| Sep 2027 | $23,082.70 | $5,273.90 | $17,808.79 | $1,206,859.49 | $3,556,484.30 |
| Oct 2027 | $23,082.70 | $5,300.27 | $17,782.42 | $1,224,641.91 | $3,551,184.02 |
| Nov 2027 | $23,082.70 | $5,326.78 | $17,755.92 | $1,242,397.83 | $3,545,857.25 |
| Dec 2027 | $23,082.70 | $5,353.41 | $17,729.29 | $1,260,127.11 | $3,540,503.84 |
| Jan 2028 | $23,082.70 | $5,380.18 | $17,702.52 | $1,277,829.63 | $3,535,123.66 |
| Feb 2028 | $23,082.70 | $5,407.08 | $17,675.62 | $1,295,505.25 | $3,529,716.59 |
| Mar 2028 | $23,082.70 | $5,434.11 | $17,648.58 | $1,313,153.84 | $3,524,282.47 |
| Apr 2028 | $23,082.70 | $5,461.28 | $17,621.41 | $1,330,775.25 | $3,518,821.19 |
| May 2028 | $23,082.70 | $5,488.59 | $17,594.11 | $1,348,369.35 | $3,513,332.60 |
| Jun 2028 | $23,082.70 | $5,516.03 | $17,566.66 | $1,365,936.02 | $3,507,816.57 |
| Jul 2028 | $23,082.70 | $5,543.61 | $17,539.08 | $1,383,475.10 | $3,502,272.96 |
| Aug 2028 | $23,082.70 | $5,571.33 | $17,511.36 | $1,400,986.46 | $3,496,701.63 |
| Sep 2028 | $23,082.70 | $5,599.19 | $17,483.51 | $1,418,469.97 | $3,491,102.44 |
| Oct 2028 | $23,082.70 | $5,627.18 | $17,455.51 | $1,435,925.48 | $3,485,475.26 |
| Nov 2028 | $23,082.70 | $5,655.32 | $17,427.38 | $1,453,352.86 | $3,479,819.94 |
| Dec 2028 | $23,082.70 | $5,683.60 | $17,399.10 | $1,470,751.96 | $3,474,136.34 |
| Jan 2029 | $23,082.70 | $5,712.01 | $17,370.68 | $1,488,122.64 | $3,468,424.33 |
| Feb 2029 | $23,082.70 | $5,740.57 | $17,342.12 | $1,505,464.76 | $3,462,683.76 |
| Mar 2029 | $23,082.70 | $5,769.28 | $17,313.42 | $1,522,778.18 | $3,456,914.48 |
| Apr 2029 | $23,082.70 | $5,798.12 | $17,284.57 | $1,540,062.76 | $3,451,116.36 |
| May 2029 | $23,082.70 | $5,827.11 | $17,255.58 | $1,557,318.34 | $3,445,289.24 |
| Jun 2029 | $23,082.70 | $5,856.25 | $17,226.45 | $1,574,544.78 | $3,439,432.99 |
| Jul 2029 | $23,082.70 | $5,885.53 | $17,197.16 | $1,591,741.95 | $3,433,547.46 |
| Aug 2029 | $23,082.70 | $5,914.96 | $17,167.74 | $1,608,909.69 | $3,427,632.51 |
| Sep 2029 | $23,082.70 | $5,944.53 | $17,138.16 | $1,626,047.85 | $3,421,687.97 |
| Oct 2029 | $23,082.70 | $5,974.26 | $17,108.44 | $1,643,156.29 | $3,415,713.72 |
| Nov 2029 | $23,082.70 | $6,004.13 | $17,078.57 | $1,660,234.86 | $3,409,709.59 |
| Dec 2029 | $23,082.70 | $6,034.15 | $17,048.55 | $1,677,283.40 | $3,403,675.44 |
| Jan 2030 | $23,082.70 | $6,064.32 | $17,018.38 | $1,694,301.78 | $3,397,611.13 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Feb 2030 | $23,082.70 | $6,094.64 | $16,988.06 | $1,711,289.84 | $3,391,516.49 |
| Mar 2030 | $23,082.70 | $6,125.11 | $16,957.58 | $1,728,247.42 | $3,385,391.37 |
| Apr 2030 | $23,082.70 | $6,155.74 | $16,926.96 | $1,745,174.38 | $3,379,235.64 |
| May 2030 | $23,082.70 | $6,186.52 | $16,896.18 | $1,762,070.55 | $3,373,049.12 |
| Jun 2030 | $23,082.70 | $6,217.45 | $16,865.25 | $1,778,935.80 | $3,366,831.67 |
| Jul 2030 | $23,082.70 | $6,248.54 | $16,834.16 | $1,795,769.96 | $3,360,583.13 |
| Aug 2030 | $23,082.70 | $6,279.78 | $16,802.92 | $1,812,572.87 | $3,354,303.35 |
| Sep 2030 | $23,082.70 | $6,311.18 | $16,771.52 | $1,829,344.39 | $3,347,992.17 |
| Oct 2030 | $23,082.70 | $6,342.73 | $16,739.96 | $1,846,084.35 | $3,341,649.44 |
| Nov 2030 | $23,082.70 | $6,374.45 | $16,708.25 | $1,862,792.60 | $3,335,274.99 |
| Dec 2030 | $23,082.70 | $6,406.32 | $16,676.37 | $1,879,468.97 | $3,328,868.67 |
| Jan 2031 | $23,082.70 | $6,438.35 | $16,644.34 | $1,896,113.32 | $3,322,430.32 |
| Feb 2031 | $23,082.70 | $6,470.54 | $16,612.15 | $1,912,725.47 | $3,315,959.78 |
| Mar 2031 | $23,082.70 | $6,502.90 | $16,579.80 | $1,929,305.27 | $3,309,456.88 |
| Apr 2031 | $23,082.70 | $6,535.41 | $16,547.28 | $1,945,852.55 | $3,302,921.47 |
| May 2031 | $23,082.70 | $6,568.09 | $16,514.61 | $1,962,367.16 | $3,296,353.38 |
| Jun 2031 | $23,082.70 | $6,600.93 | $16,481.77 | $1,978,848.93 | $3,289,752.45 |
| Jul 2031 | $23,082.70 | $6,633.93 | $16,448.76 | $1,995,297.69 | $3,283,118.52 |
| Aug 2031 | $23,082.70 | $6,667.10 | $16,415.59 | $2,011,713.28 | $3,276,451.42 |
| Sep 2031 | $23,082.70 | $6,700.44 | $16,382.26 | $2,028,095.54 | $3,269,750.98 |
| Oct 2031 | $23,082.70 | $6,733.94 | $16,348.75 | $2,044,444.29 | $3,263,017.04 |
| Nov 2031 | $23,082.70 | $6,767.61 | $16,315.09 | $2,060,759.38 | $3,256,249.43 |
| Dec 2031 | $23,082.70 | $6,801.45 | $16,281.25 | $2,077,040.63 | $3,249,447.98 |
| Jan 2032 | $23,082.70 | $6,835.46 | $16,247.24 | $2,093,287.87 | $3,242,612.53 |
| Feb 2032 | $23,082.70 | $6,869.63 | $16,213.06 | $2,109,500.93 | $3,235,742.89 |
| Mar 2032 | $23,082.70 | $6,903.98 | $16,178.71 | $2,125,679.64 | $3,228,838.91 |
| Apr 2032 | $23,082.70 | $6,938.50 | $16,144.19 | $2,141,823.84 | $3,221,900.41 |
| May 2032 | $23,082.70 | $6,973.19 | $16,109.50 | $2,157,933.34 | $3,214,927.22 |
| Jun 2032 | $23,082.70 | $7,008.06 | $16,074.64 | $2,174,007.98 | $3,207,919.16 |
| Jul 2032 | $23,082.70 | $7,043.10 | $16,039.60 | $2,190,047.57 | $3,200,876.06 |
| Aug 2032 | $23,082.70 | $7,078.31 | $16,004.38 | $2,206,051.95 | $3,193,797.74 |
| Sep 2032 | $23,082.70 | $7,113.71 | $15,968.99 | $2,222,020.94 | $3,186,684.04 |
| Oct 2032 | $23,082.70 | $7,149.28 | $15,933.42 | $2,237,954.36 | $3,179,534.76 |
| Nov 2032 | $23,082.70 | $7,185.02 | $15,897.67 | $2,253,852.03 | $3,172,349.74 |
| Dec 2032 | $23,082.70 | $7,220.95 | $15,861.75 | $2,269,713.78 | $3,165,128.80 |
| Jan 2033 | $23,082.70 | $7,257.05 | $15,825.64 | $2,285,539.43 | $3,157,871.74 |
| Feb 2033 | $23,082.70 | $7,293.34 | $15,789.36 | $2,301,328.79 | $3,150,578.41 |
| Mar 2033 | $23,082.70 | $7,329.80 | $15,752.89 | $2,317,081.68 | $3,143,248.60 |
| Apr 2033 | $23,082.70 | $7,366.45 | $15,716.24 | $2,332,797.92 | $3,135,882.15 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| May 2033 | $23,082.70 | $7,403.28 | $15,679.41 | $2,348,477.33 | $3,128,478.87 |
| Jun 2033 | $23,082.70 | $7,440.30 | $15,642.39 | $2,364,119.73 | $3,121,038.57 |
| Jul 2033 | $23,082.70 | $7,477.50 | $15,605.19 | $2,379,724.92 | $3,113,561.06 |
| Aug 2033 | $23,082.70 | $7,514.89 | $15,567.81 | $2,395,292.72 | $3,106,046.17 |
| Sep 2033 | $23,082.70 | $7,552.46 | $15,530.23 | $2,410,822.95 | $3,098,493.71 |
| Oct 2033 | $23,082.70 | $7,590.23 | $15,492.47 | $2,426,315.42 | $3,090,903.48 |
| Nov 2033 | $23,082.70 | $7,628.18 | $15,454.52 | $2,441,769.94 | $3,083,275.31 |
| Dec 2033 | $23,082.70 | $7,666.32 | $15,416.38 | $2,457,186.32 | $3,075,608.99 |
| Jan 2034 | $23,082.70 | $7,704.65 | $15,378.04 | $2,472,564.36 | $3,067,904.34 |
| Feb 2034 | $23,082.70 | $7,743.17 | $15,339.52 | $2,487,903.88 | $3,060,161.16 |
| Mar 2034 | $23,082.70 | $7,781.89 | $15,300.81 | $2,503,204.69 | $3,052,379.27 |
| Apr 2034 | $23,082.70 | $7,820.80 | $15,261.90 | $2,518,466.59 | $3,044,558.47 |
| May 2034 | $23,082.70 | $7,859.90 | $15,222.79 | $2,533,689.38 | $3,036,698.57 |
| Jun 2034 | $23,082.70 | $7,899.20 | $15,183.49 | $2,548,872.87 | $3,028,799.37 |
| Jul 2034 | $23,082.70 | $7,938.70 | $15,144.00 | $2,564,016.87 | $3,020,860.67 |
| Aug 2034 | $23,082.70 | $7,978.39 | $15,104.30 | $2,579,121.17 | $3,012,882.28 |
| Sep 2034 | $23,082.70 | $8,018.28 | $15,064.41 | $2,594,185.58 | $3,004,864.00 |
| Oct 2034 | $23,082.70 | $8,058.38 | $15,024.32 | $2,609,209.90 | $2,996,805.62 |
| Nov 2034 | $23,082.70 | $8,098.67 | $14,984.03 | $2,624,193.93 | $2,988,706.95 |
| Dec 2034 | $23,082.70 | $8,139.16 | $14,943.53 | $2,639,137.47 | $2,980,567.79 |
| Jan 2035 | $23,082.70 | $8,179.86 | $14,902.84 | $2,654,040.30 | $2,972,387.94 |
| Feb 2035 | $23,082.70 | $8,220.76 | $14,861.94 | $2,668,902.24 | $2,964,167.18 |
| Mar 2035 | $23,082.70 | $8,261.86 | $14,820.84 | $2,683,723.08 | $2,955,905.32 |
| Apr 2035 | $23,082.70 | $8,303.17 | $14,779.53 | $2,698,502.61 | $2,947,602.15 |
| May 2035 | $23,082.70 | $8,344.68 | $14,738.01 | $2,713,240.62 | $2,939,257.47 |
| Jun 2035 | $23,082.70 | $8,386.41 | $14,696.29 | $2,727,936.91 | $2,930,871.06 |
| Jul 2035 | $23,082.70 | $8,428.34 | $14,654.36 | $2,742,591.26 | $2,922,442.72 |
| Aug 2035 | $23,082.70 | $8,470.48 | $14,612.21 | $2,757,203.47 | $2,913,972.24 |
| Sep 2035 | $23,082.70 | $8,512.83 | $14,569.86 | $2,771,773.34 | $2,905,459.41 |
| Oct 2035 | $23,082.70 | $8,555.40 | $14,527.30 | $2,786,300.63 | $2,896,904.01 |
| Nov 2035 | $23,082.70 | $8,598.18 | $14,484.52 | $2,800,785.15 | $2,888,305.83 |
| Dec 2035 | $23,082.70 | $8,641.17 | $14,441.53 | $2,815,226.68 | $2,879,664.67 |
| Jan 2036 | $23,082.70 | $8,684.37 | $14,398.32 | $2,829,625.00 | $2,870,980.29 |
| Feb 2036 | $23,082.70 | $8,727.79 | $14,354.90 | $2,843,979.91 | $2,862,252.50 |
| Mar 2036 | $23,082.70 | $8,771.43 | $14,311.26 | $2,858,291.17 | $2,853,481.07 |
| Apr 2036 | $23,082.70 | $8,815.29 | $14,267.41 | $2,872,558.57 | $2,844,665.78 |
| May 2036 | $23,082.70 | $8,859.37 | $14,223.33 | $2,886,781.90 | $2,835,806.41 |
| Jun 2036 | $23,082.70 | $8,903.66 | $14,179.03 | $2,900,960.93 | $2,826,902.75 |
| Jul 2036 | $23,082.70 | $8,948.18 | $14,134.51 | $2,915,095.45 | $2,817,954.57 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Aug 2036 | $23,082.70 | $8,992.92 | $14,089.77 | $2,929,185.22 | $2,808,961.64 |
| Sep 2036 | $23,082.70 | $9,037.89 | $14,044.81 | $2,943,230.03 | $2,799,923.76 |
| Oct 2036 | $23,082.70 | $9,083.08 | $13,999.62 | $2,957,229.65 | $2,790,840.68 |
| Nov 2036 | $23,082.70 | $9,128.49 | $13,954.20 | $2,971,183.85 | $2,781,712.19 |
| Dec 2036 | $23,082.70 | $9,174.13 | $13,908.56 | $2,985,092.41 | $2,772,538.05 |
| Jan 2037 | $23,082.70 | $9,220.00 | $13,862.69 | $2,998,955.10 | $2,763,318.05 |
| Feb 2037 | $23,082.70 | $9,266.10 | $13,816.59 | $3,012,771.69 | $2,754,051.94 |
| Mar 2037 | $23,082.70 | $9,312.44 | $13,770.26 | $3,026,541.95 | $2,744,739.51 |
| Apr 2037 | $23,082.70 | $9,359.00 | $13,723.70 | $3,040,265.65 | $2,735,380.51 |
| May 2037 | $23,082.70 | $9,405.79 | $13,676.90 | $3,053,942.55 | $2,725,974.72 |
| Jun 2037 | $23,082.70 | $9,452.82 | $13,629.87 | $3,067,572.43 | $2,716,521.90 |
| Jul 2037 | $23,082.70 | $9,500.09 | $13,582.61 | $3,081,155.04 | $2,707,021.81 |
| Aug 2037 | $23,082.70 | $9,547.59 | $13,535.11 | $3,094,690.15 | $2,697,474.23 |
| Sep 2037 | $23,082.70 | $9,595.32 | $13,487.37 | $3,108,177.52 | $2,687,878.90 |
| Oct 2037 | $23,082.70 | $9,643.30 | $13,439.39 | $3,121,616.91 | $2,678,235.60 |
| Nov 2037 | $23,082.70 | $9,691.52 | $13,391.18 | $3,135,008.09 | $2,668,544.08 |
| Dec 2037 | $23,082.70 | $9,739.97 | $13,342.72 | $3,148,350.81 | $2,658,804.11 |
| Jan 2038 | $23,082.70 | $9,788.67 | $13,294.02 | $3,161,644.83 | $2,649,015.43 |
| Feb 2038 | $23,082.70 | $9,837.62 | $13,245.08 | $3,174,889.91 | $2,639,177.82 |
| Mar 2038 | $23,082.70 | $9,886.81 | $13,195.89 | $3,188,085.80 | $2,629,291.01 |
| Apr 2038 | $23,082.70 | $9,936.24 | $13,146.46 | $3,201,232.25 | $2,619,354.77 |
| May 2038 | $23,082.70 | $9,985.92 | $13,096.77 | $3,214,329.03 | $2,609,368.85 |
| Jun 2038 | $23,082.70 | $10,035.85 | $13,046.84 | $3,227,375.87 | $2,599,333.00 |
| Jul 2038 | $23,082.70 | $10,086.03 | $12,996.66 | $3,240,372.53 | $2,589,246.97 |
| Aug 2038 | $23,082.70 | $10,136.46 | $12,946.23 | $3,253,318.77 | $2,579,110.51 |
| Sep 2038 | $23,082.70 | $10,187.14 | $12,895.55 | $3,266,214.32 | $2,568,923.36 |
| Oct 2038 | $23,082.70 | $10,238.08 | $12,844.62 | $3,279,058.94 | $2,558,685.29 |
| Nov 2038 | $23,082.70 | $10,289.27 | $12,793.43 | $3,291,852.36 | $2,548,396.02 |
| Dec 2038 | $23,082.70 | $10,340.72 | $12,741.98 | $3,304,594.35 | $2,538,055.30 |
| Jan 2039 | $23,082.70 | $10,392.42 | $12,690.28 | $3,317,284.62 | $2,527,662.88 |
| Feb 2039 | $23,082.70 | $10,444.38 | $12,638.31 | $3,329,922.94 | $2,517,218.50 |
| Mar 2039 | $23,082.70 | $10,496.60 | $12,586.09 | $3,342,509.03 | $2,506,721.90 |
| Apr 2039 | $23,082.70 | $10,549.09 | $12,533.61 | $3,355,042.64 | $2,496,172.81 |
| May 2039 | $23,082.70 | $10,601.83 | $12,480.86 | $3,367,523.50 | $2,485,570.98 |
| Jun 2039 | $23,082.70 | $10,654.84 | $12,427.85 | $3,379,951.36 | $2,474,916.14 |
| Jul 2039 | $23,082.70 | $10,708.11 | $12,374.58 | $3,392,325.94 | $2,464,208.03 |
| Aug 2039 | $23,082.70 | $10,761.66 | $12,321.04 | $3,404,646.98 | $2,453,446.37 |
| Sep 2039 | $23,082.70 | $10,815.46 | $12,267.23 | $3,416,914.21 | $2,442,630.91 |
| Oct 2039 | $23,082.70 | $10,869.54 | $12,213.15 | $3,429,127.36 | $2,431,761.37 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Nov 2039 | $23,082.70 | $10,923.89 | $12,158.81 | $3,441,286.17 | $2,420,837.48 |
| Dec 2039 | $23,082.70 | $10,978.51 | $12,104.19 | $3,453,390.36 | $2,409,858.97 |
| Jan 2040 | $23,082.70 | $11,033.40 | $12,049.29 | $3,465,439.65 | $2,398,825.57 |
| Feb 2040 | $23,082.70 | $11,088.57 | $11,994.13 | $3,477,433.78 | $2,387,737.00 |
| Mar 2040 | $23,082.70 | $11,144.01 | $11,938.69 | $3,489,372.47 | $2,376,592.99 |
| Apr 2040 | $23,082.70 | $11,199.73 | $11,882.96 | $3,501,255.43 | $2,365,393.26 |
| May 2040 | $23,082.70 | $11,255.73 | $11,826.97 | $3,513,082.40 | $2,354,137.54 |
| Jun 2040 | $23,082.70 | $11,312.01 | $11,770.69 | $3,524,853.09 | $2,342,825.53 |
| Jul 2040 | $23,082.70 | $11,368.57 | $11,714.13 | $3,536,567.21 | $2,331,456.96 |
| Aug 2040 | $23,082.70 | $11,425.41 | $11,657.28 | $3,548,224.50 | $2,320,031.55 |
| Sep 2040 | $23,082.70 | $11,482.54 | $11,600.16 | $3,559,824.66 | $2,308,549.01 |
| Oct 2040 | $23,082.70 | $11,539.95 | $11,542.75 | $3,571,367.40 | $2,297,009.06 |
| Nov 2040 | $23,082.70 | $11,597.65 | $11,485.05 | $3,582,852.45 | $2,285,411.41 |
| Dec 2040 | $23,082.70 | $11,655.64 | $11,427.06 | $3,594,279.50 | $2,273,755.77 |
| Jan 2041 | $23,082.70 | $11,713.92 | $11,368.78 | $3,605,648.28 | $2,262,041.86 |
| Feb 2041 | $23,082.70 | $11,772.49 | $11,310.21 | $3,616,958.49 | $2,250,269.37 |
| Mar 2041 | $23,082.70 | $11,831.35 | $11,251.35 | $3,628,209.84 | $2,238,438.02 |
| Apr 2041 | $23,082.70 | $11,890.51 | $11,192.19 | $3,639,402.03 | $2,226,547.52 |
| May 2041 | $23,082.70 | $11,949.96 | $11,132.74 | $3,650,534.77 | $2,214,597.56 |
| Jun 2041 | $23,082.70 | $12,009.71 | $11,072.99 | $3,661,607.75 | $2,202,587.85 |
| Jul 2041 | $23,082.70 | $12,069.76 | $11,012.94 | $3,672,620.69 | $2,190,518.10 |
| Aug 2041 | $23,082.70 | $12,130.10 | $10,952.59 | $3,683,573.28 | $2,178,387.99 |
| Sep 2041 | $23,082.70 | $12,190.76 | $10,891.94 | $3,694,465.22 | $2,166,197.24 |
| Oct 2041 | $23,082.70 | $12,251.71 | $10,830.99 | $3,705,296.21 | $2,153,945.53 |
| Nov 2041 | $23,082.70 | $12,312.97 | $10,769.73 | $3,716,065.94 | $2,141,632.56 |
| Dec 2041 | $23,082.70 | $12,374.53 | $10,708.16 | $3,726,774.10 | $2,129,258.03 |
| Jan 2042 | $23,082.70 | $12,436.41 | $10,646.29 | $3,737,420.39 | $2,116,821.62 |
| Feb 2042 | $23,082.70 | $12,498.59 | $10,584.11 | $3,748,004.50 | $2,104,323.04 |
| Mar 2042 | $23,082.70 | $12,561.08 | $10,521.62 | $3,758,526.11 | $2,091,761.96 |
| Apr 2042 | $23,082.70 | $12,623.89 | $10,458.81 | $3,768,984.92 | $2,079,138.07 |
| May 2042 | $23,082.70 | $12,687.00 | $10,395.69 | $3,779,380.61 | $2,066,451.07 |
| Jun 2042 | $23,082.70 | $12,750.44 | $10,332.26 | $3,789,712.87 | $2,053,700.63 |
| Jul 2042 | $23,082.70 | $12,814.19 | $10,268.50 | $3,799,981.37 | $2,040,886.43 |
| Aug 2042 | $23,082.70 | $12,878.26 | $10,204.43 | $3,810,185.80 | $2,028,008.17 |
| Sep 2042 | $23,082.70 | $12,942.65 | $10,140.04 | $3,820,325.84 | $2,015,065.52 |
| Oct 2042 | $23,082.70 | $13,007.37 | $10,075.33 | $3,830,401.17 | $2,002,058.15 |
| Nov 2042 | $23,082.70 | $13,072.40 | $10,010.29 | $3,840,411.46 | $1,988,985.74 |
| Dec 2042 | $23,082.70 | $13,137.77 | $9,944.93 | $3,850,356.39 | $1,975,847.98 |
| Jan 2043 | $23,082.70 | $13,203.46 | $9,879.24 | $3,860,235.63 | $1,962,644.52 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Feb 2043 | $23,082.70 | $13,269.47 | $9,813.22 | $3,870,048.85 | $1,949,375.05 |
| Mar 2043 | $23,082.70 | $13,335.82 | $9,746.88 | $3,879,795.73 | $1,936,039.23 |
| Apr 2043 | $23,082.70 | $13,402.50 | $9,680.20 | $3,889,475.93 | $1,922,636.73 |
| May 2043 | $23,082.70 | $13,469.51 | $9,613.18 | $3,899,089.11 | $1,909,167.22 |
| Jun 2043 | $23,082.70 | $13,536.86 | $9,545.84 | $3,908,634.95 | $1,895,630.36 |
| Jul 2043 | $23,082.70 | $13,604.54 | $9,478.15 | $3,918,113.10 | $1,882,025.82 |
| Aug 2043 | $23,082.70 | $13,672.57 | $9,410.13 | $3,927,523.23 | $1,868,353.25 |
| Sep 2043 | $23,082.70 | $13,740.93 | $9,341.77 | $3,936,864.99 | $1,854,612.32 |
| Oct 2043 | $23,082.70 | $13,809.63 | $9,273.06 | $3,946,138.05 | $1,840,802.69 |
| Nov 2043 | $23,082.70 | $13,878.68 | $9,204.01 | $3,955,342.07 | $1,826,924.01 |
| Dec 2043 | $23,082.70 | $13,948.08 | $9,134.62 | $3,964,476.69 | $1,812,975.93 |
| Jan 2044 | $23,082.70 | $14,017.82 | $9,064.88 | $3,973,541.57 | $1,798,958.12 |
| Feb 2044 | $23,082.70 | $14,087.90 | $8,994.79 | $3,982,536.36 | $1,784,870.21 |
| Mar 2044 | $23,082.70 | $14,158.34 | $8,924.35 | $3,991,460.71 | $1,770,711.87 |
| Apr 2044 | $23,082.70 | $14,229.14 | $8,853.56 | $4,000,314.27 | $1,756,482.73 |
| May 2044 | $23,082.70 | $14,300.28 | $8,782.41 | $4,009,096.68 | $1,742,182.45 |
| Jun 2044 | $23,082.70 | $14,371.78 | $8,710.91 | $4,017,807.59 | $1,727,810.67 |
| Jul 2044 | $23,082.70 | $14,443.64 | $8,639.05 | $4,026,446.65 | $1,713,367.02 |
| Aug 2044 | $23,082.70 | $14,515.86 | $8,566.84 | $4,035,013.48 | $1,698,851.16 |
| Sep 2044 | $23,082.70 | $14,588.44 | $8,494.26 | $4,043,507.74 | $1,684,262.72 |
| Oct 2044 | $23,082.70 | $14,661.38 | $8,421.31 | $4,051,929.05 | $1,669,601.34 |
| Nov 2044 | $23,082.70 | $14,734.69 | $8,348.01 | $4,060,277.06 | $1,654,866.65 |
| Dec 2044 | $23,082.70 | $14,808.36 | $8,274.33 | $4,068,551.39 | $1,640,058.29 |
| Jan 2045 | $23,082.70 | $14,882.40 | $8,200.29 | $4,076,751.68 | $1,625,175.89 |
| Feb 2045 | $23,082.70 | $14,956.82 | $8,125.88 | $4,084,877.56 | $1,610,219.07 |
| Mar 2045 | $23,082.70 | $15,031.60 | $8,051.10 | $4,092,928.66 | $1,595,187.47 |
| Apr 2045 | $23,082.70 | $15,106.76 | $7,975.94 | $4,100,904.60 | $1,580,080.72 |
| May 2045 | $23,082.70 | $15,182.29 | $7,900.40 | $4,108,805.00 | $1,564,898.42 |
| Jun 2045 | $23,082.70 | $15,258.20 | $7,824.49 | $4,116,629.49 | $1,549,640.22 |
| Jul 2045 | $23,082.70 | $15,334.49 | $7,748.20 | $4,124,377.69 | $1,534,305.73 |
| Aug 2045 | $23,082.70 | $15,411.17 | $7,671.53 | $4,132,049.22 | $1,518,894.56 |
| Sep 2045 | $23,082.70 | $15,488.22 | $7,594.47 | $4,139,643.69 | $1,503,406.34 |
| Oct 2045 | $23,082.70 | $15,565.66 | $7,517.03 | $4,147,160.73 | $1,487,840.67 |
| Nov 2045 | $23,082.70 | $15,643.49 | $7,439.20 | $4,154,599.93 | $1,472,197.18 |
| Dec 2045 | $23,082.70 | $15,721.71 | $7,360.99 | $4,161,960.91 | $1,456,475.47 |
| Jan 2046 | $23,082.70 | $15,800.32 | $7,282.38 | $4,169,243.29 | $1,440,675.15 |
| Feb 2046 | $23,082.70 | $15,879.32 | $7,203.38 | $4,176,446.67 | $1,424,795.84 |
| Mar 2046 | $23,082.70 | $15,958.72 | $7,123.98 | $4,183,570.65 | $1,408,837.12 |
| Apr 2046 | $23,082.70 | $16,038.51 | $7,044.19 | $4,190,614.83 | $1,392,798.61 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| May 2046 | $23,082.70 | $16,118.70 | $6,963.99 | $4,197,578.83 | $1,376,679.91 |
| Jun 2046 | $23,082.70 | $16,199.30 | $6,883.40 | $4,204,462.23 | $1,360,480.61 |
| Jul 2046 | $23,082.70 | $16,280.29 | $6,802.40 | $4,211,264.63 | $1,344,200.32 |
| Aug 2046 | $23,082.70 | $16,361.69 | $6,721.00 | $4,217,985.63 | $1,327,838.63 |
| Sep 2046 | $23,082.70 | $16,443.50 | $6,639.19 | $4,224,624.82 | $1,311,395.12 |
| Oct 2046 | $23,082.70 | $16,525.72 | $6,556.98 | $4,231,181.80 | $1,294,869.40 |
| Nov 2046 | $23,082.70 | $16,608.35 | $6,474.35 | $4,237,656.15 | $1,278,261.06 |
| Dec 2046 | $23,082.70 | $16,691.39 | $6,391.31 | $4,244,047.45 | $1,261,569.67 |
| Jan 2047 | $23,082.70 | $16,774.85 | $6,307.85 | $4,250,355.30 | $1,244,794.82 |
| Feb 2047 | $23,082.70 | $16,858.72 | $6,223.97 | $4,256,579.27 | $1,227,936.10 |
| Mar 2047 | $23,082.70 | $16,943.01 | $6,139.68 | $4,262,718.95 | $1,210,993.08 |
| Apr 2047 | $23,082.70 | $17,027.73 | $6,054.97 | $4,268,773.92 | $1,193,965.35 |
| May 2047 | $23,082.70 | $17,112.87 | $5,969.83 | $4,274,743.75 | $1,176,852.49 |
| Jun 2047 | $23,082.70 | $17,198.43 | $5,884.26 | $4,280,628.01 | $1,159,654.05 |
| Jul 2047 | $23,082.70 | $17,284.42 | $5,798.27 | $4,286,426.28 | $1,142,369.63 |
| Aug 2047 | $23,082.70 | $17,370.85 | $5,711.85 | $4,292,138.13 | $1,124,998.78 |
| Sep 2047 | $23,082.70 | $17,457.70 | $5,624.99 | $4,297,763.12 | $1,107,541.08 |
| Oct 2047 | $23,082.70 | $17,544.99 | $5,537.71 | $4,303,300.83 | $1,089,996.09 |
| Nov 2047 | $23,082.70 | $17,632.71 | $5,449.98 | $4,308,750.81 | $1,072,363.37 |
| Dec 2047 | $23,082.70 | $17,720.88 | $5,361.82 | $4,314,112.62 | $1,054,642.50 |
| Jan 2048 | $23,082.70 | $17,809.48 | $5,273.21 | $4,319,385.84 | $1,036,833.01 |
| Feb 2048 | $23,082.70 | $17,898.53 | $5,184.17 | $4,324,570.00 | $1,018,934.48 |
| Mar 2048 | $23,082.70 | $17,988.02 | $5,094.67 | $4,329,664.67 | $1,000,946.46 |
| Apr 2048 | $23,082.70 | $18,077.96 | $5,004.73 | $4,334,669.41 | $982,868.50 |
| May 2048 | $23,082.70 | $18,168.35 | $4,914.34 | $4,339,583.75 | $964,700.14 |
| Jun 2048 | $23,082.70 | $18,259.19 | $4,823.50 | $4,344,407.25 | $946,440.95 |
| Jul 2048 | $23,082.70 | $18,350.49 | $4,732.20 | $4,349,139.45 | $928,090.46 |
| Aug 2048 | $23,082.70 | $18,442.24 | $4,640.45 | $4,353,779.91 | $909,648.22 |
| Sep 2048 | $23,082.70 | $18,534.45 | $4,548.24 | $4,358,328.15 | $891,113.76 |
| Oct 2048 | $23,082.70 | $18,627.13 | $4,455.57 | $4,362,783.72 | $872,486.64 |
| Nov 2048 | $23,082.70 | $18,720.26 | $4,362.43 | $4,367,146.15 | $853,766.37 |
| Dec 2048 | $23,082.70 | $18,813.86 | $4,268.83 | $4,371,414.98 | $834,952.51 |
| Jan 2049 | $23,082.70 | $18,907.93 | $4,174.76 | $4,375,589.74 | $816,044.58 |
| Feb 2049 | $23,082.70 | $19,002.47 | $4,080.22 | $4,379,669.97 | $797,042.11 |
| Mar 2049 | $23,082.70 | $19,097.48 | $3,985.21 | $4,383,655.18 | $777,944.62 |
| Apr 2049 | $23,082.70 | $19,192.97 | $3,889.72 | $4,387,544.90 | $758,751.65 |
| May 2049 | $23,082.70 | $19,288.94 | $3,793.76 | $4,391,338.66 | $739,462.71 |
| Jun 2049 | $23,082.70 | $19,385.38 | $3,697.31 | $4,395,035.97 | $720,077.33 |
| Jul 2049 | $23,082.70 | $19,482.31 | $3,600.39 | $4,398,636.36 | $700,595.02 |

Exhibit 1

| Payment Date | Payment | Principal | Interest | Total Interest | Balance |
|---|---|---|---|---|---|
| Aug 2049 | $23,082.70 | $19,579.72 | $3,502.98 | $4,402,139.33 | $681,015.30 |
| Sep 2049 | $23,082.70 | $19,677.62 | $3,405.08 | $4,405,544.41 | $661,337.68 |
| Oct 2049 | $23,082.70 | $19,776.01 | $3,306.69 | $4,408,851.10 | $641,561.68 |
| Nov 2049 | $23,082.70 | $19,874.89 | $3,207.81 | $4,412,058.91 | $621,686.79 |
| Dec 2049 | $23,082.70 | $19,974.26 | $3,108.43 | $4,415,167.34 | $601,712.53 |
| Jan 2050 | $23,082.70 | $20,074.13 | $3,008.56 | $4,418,175.90 | $581,638.40 |
| Feb 2050 | $23,082.70 | $20,174.50 | $2,908.19 | $4,421,084.10 | $561,463.89 |
| Mar 2050 | $23,082.70 | $20,275.38 | $2,807.32 | $4,423,891.42 | $541,188.52 |
| Apr 2050 | $23,082.70 | $20,376.75 | $2,705.94 | $4,426,597.36 | $520,811.76 |
| May 2050 | $23,082.70 | $20,478.64 | $2,604.06 | $4,429,201.42 | $500,333.13 |
| Jun 2050 | $23,082.70 | $20,581.03 | $2,501.67 | $4,431,703.08 | $479,752.10 |
| Jul 2050 | $23,082.70 | $20,683.93 | $2,398.76 | $4,434,101.84 | $459,068.16 |
| Aug 2050 | $23,082.70 | $20,787.35 | $2,295.34 | $4,436,397.18 | $438,280.81 |
| Sep 2050 | $23,082.70 | $20,891.29 | $2,191.40 | $4,438,588.59 | $417,389.52 |
| Oct 2050 | $23,082.70 | $20,995.75 | $2,086.95 | $4,440,675.54 | $396,393.77 |
| Nov 2050 | $23,082.70 | $21,100.73 | $1,981.97 | $4,442,657.50 | $375,293.04 |
| Dec 2050 | $23,082.70 | $21,206.23 | $1,876.47 | $4,444,533.97 | $354,086.81 |
| Jan 2051 | $23,082.70 | $21,312.26 | $1,770.43 | $4,446,304.40 | $332,774.55 |
| Feb 2051 | $23,082.70 | $21,418.82 | $1,663.87 | $4,447,968.28 | $311,355.73 |
| Mar 2051 | $23,082.70 | $21,525.92 | $1,556.78 | $4,449,525.05 | $289,829.81 |
| Apr 2051 | $23,082.70 | $21,633.55 | $1,449.15 | $4,450,974.20 | $268,196.27 |
| May 2051 | $23,082.70 | $21,741.71 | $1,340.98 | $4,452,315.18 | $246,454.55 |
| Jun 2051 | $23,082.70 | $21,850.42 | $1,232.27 | $4,453,547.46 | $224,604.13 |
| Jul 2051 | $23,082.70 | $21,959.67 | $1,123.02 | $4,454,670.48 | $202,644.46 |
| Aug 2051 | $23,082.70 | $22,069.47 | $1,013.22 | $4,455,683.70 | $180,574.98 |
| Sep 2051 | $23,082.70 | $22,179.82 | $902.87 | $4,456,586.58 | $158,395.16 |
| Oct 2051 | $23,082.70 | $22,290.72 | $791.98 | $4,457,378.55 | $136,104.44 |
| Nov 2051 | $23,082.70 | $22,402.17 | $680.52 | $4,458,059.07 | $113,702.27 |
| Dec 2051 | $23,082.70 | $22,514.18 | $568.51 | $4,458,627.59 | $91,188.09 |
| Jan 2052 | $23,082.70 | $22,626.75 | $455.94 | $4,459,083.53 | $68,561.33 |
| Feb 2052 | $23,082.70 | $22,739.89 | $342.81 | $4,459,426.33 | $45,821.44 |
| Mar 2052 | $23,082.70 | $22,853.59 | $229.11 | $4,459,655.44 | $22,967.86 |
| Apr 2052 | $23,082.70 | $22,967.86 | $114.84 | $4,459,770.28 | $0.00 |

Exhibit 5
Exhibit 1

AuthentiSign ID: 2D8C466E-B9F2-435F-8850-690935A872C4    0-3B5ACCAB2644

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-2-2015

**AMENDMENT**

TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd**                    **Montgomery**

(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

[X]  (1)  The Sales Price in Paragraph 3 of the contract is:
   A.  Cash portion of Sales Price payable by Buyer at closing ................... $   **1,000,000.00**
   B.  Sum of financing described in the contract......................................... $   **3,800,636.00**
   C.  Sales Price (Sum of A and B)............................................................ $   **4,800,636.00**

[ ]  (2)  In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

[ ]  (3)  The date in Paragraph 9 of the contract is changed to _____ , _____ .

[ ]  (4)  The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____ .

[ ]  (5)  The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

[ ]  (6)  Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____ , _____ . This additional Option Fee [ ] will [ ] will not be credited to the Sales Price.

[ ]  (7)  Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

[ ]  (8)  The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____ , _____ .

[X]  (9)  **Other Modifications:** (Insert only factual statements and business details applicable to this sale.)

   **AS-IS no repairs**

EXECUTED the _____ day of  02/08/2022 _____ , _____ . (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer **Alliance Energy Partners LLC**          Seller **Eric C. Ostrander**
*Jared Furr*                                     *Eric C. Ostrander*

Buyer _____                       Seller **Darla R. Ostrander**
                                                 *Darla R. Ostrander*

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov ) TREC No. 39-8. This form replaces TREC No. 39-7.

TREC NO. 39-8

Connect Realty, 2170 Buckthorne Place, Ste 100 The Woodlands TX 77380                Phone: (713)540-6413        Fax:                5450 Honea Egypt
Jeana Hurley                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

**Exhibit 5**
**Exhibit 1**

DocuSign Envelope ID: A7DA9CE4-7ED8-430B-B5ED-2A2C76F9B5D8

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)        11-2-2015

EQUAL HOUSING OPPORTUNITY

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd**                          **Montgomery**
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐  (1)  The Sales Price in Paragraph 3 of the contract is:
   A.  Cash portion of Sales Price payable by Buyer at closing ................... $ _____
   B.  Sum of financing described in the contract......................................... $ _____
   C.  Sales Price (Sum of A and B)............................................................ $ _____

☐  (2)  In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

☐  (3)  The date in Paragraph 9 of the contract is changed to _____ , _____ .
☐  (4)  The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____ .
☐  (5)  The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.
☐  (6)  Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____ , _____ . This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.
☐  (7)  Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.
☐  (8)  The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____ , _____ .
☒  (9)  **Other Modifications:** (Insert only factual statements and business details applicable to this sale.)
        **AS-IS no repairs**

        **Buyers name has changed to Alliance Farm and Ranch LLC.**

        **Brokers bonus per listing agreement has changed and is to be disbursed as follows:**
        **10,000 to selling agent / Jeana Hurley, and 40,000 to listing agent / Holly Rosser**

EXECUTED the _____ day of _____ , _____ . (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)                    03/29/2022

DocuSigned by:
_Jerod Furr_                                         _EO_A_
Buyer **Alliance Farm and Ranch LLC**        3/29/2022 12:01:13 AM GMT        03/29/2022
                                             Seller **Erik Ostrander**

                                             _Darla Ostrander_                03/28/2022
Buyer _____              3/28/2022 11:58:45 PM GMT
                                             Seller **Darla Ostrander**

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov ) TREC No. 39-8. This form replaces TREC No. 39-7.

(TXR-1903)                                                              TREC NO. 39-8

**Exhibit 5**
**Exhibit 1**

Authentisign ID: 47F827B4-E9AF-4456-BAEE-DB6B2197323E

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)     11-2-2015

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

**5450 Honea Egypt Rd**                              **Montgomery**
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)
- ☐ (1) The Sales Price in Paragraph 3 of the contract is:
  - A. Cash portion of Sales Price payable by Buyer at closing .................. $ _____
  - B. Sum of financing described in the contract......................................... $ _____
  - C. Sales Price (Sum of A and B)............................................................ $ _____
- ☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:



- ☐ (3) The date in Paragraph 9 of the contract is changed to _____ , _____ .
- ☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____ .
- ☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.
- ☐ (6) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____ , _____ . This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.
- ☐ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.
- ☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____ , _____ .
- ☒ (9) **Other Modifications:** (Insert only factual statements and business details applicable to this sale.)
  **AS-IS no repairs**

  **Buyers name has changed to Alliance Farm and Ranch LLC.**

  **Brokers bonus per listing agreement has changed and is to be disbursed as follows:**
  **10,000 to selling agent / Jeana Hurley, and 40,000 to listing agent / Holly Rosser**

> EXECUTED the _____ day of _____ 03/29/2022 , _____ . (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer **Alliance Farm and Ranch LLC** _____     Seller **Erik Ostrander**     03/29/2022
03/29/2022 17:01:13 AM GMT

Buyer _____     Seller **Darla Ostrander**     03/28/2022

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov ) TREC No. 39-8. This form replaces TREC No. 39-7.

(TXR-1903)                                                                         TREC NO. 39-8

RE/MAX Integrity, 19510 Kuykendahl Spring TX 77379          Phone: 8326310651          Fax: 8324823978          Erik and Darla
Holly Rosser                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Exhibit 5
Exhibit 1

# REAL ESTATE LIEN NOTE

GF# 2200122TW

**Date:** _April 1st_ , 2022

**Maker:**  ALLIANCE FARM AND RANCH LLC

**Maker's Mailing Address:** _9823 Frisia Estates Dr, Spring, TX 77379_
_(Harris_ County)

**Payee:**  ERIC C. OSTRANDER and DARLA OSTRANDER

**Place for Payment:** _801 Ivy Ln., Terrell Hills, TX 78209_
_(_ County)

**Principal Amount:**  THREE MILLION EIGHT HUNDRED THOUSAND SIX HUNDRED THIRTY-SIX AND NO/100 DOLLARS ($3,800,636.00)

**Annual Interest Rate on Unpaid Principal from Date:**  Six percent (6%) per annum. Interest will begin accruing 30 days prior to the first payment date as shown below.

**Maturity Date:**  April 1, 2024

**Annual Interest Rate on Matured, Unpaid Amounts:**  One and one-half percent (1.5%) per month or the highest lawful rate, whichever is less

**Terms of Payment (principal and interest):**

Principal and interest shall be due and payable in monthly installments of TWENTY-THREE THOUSAND EIGHTY-TWO AND 70/100 DOLLARS ($23,082.70) or more each, payable on the first day of each and every calendar month, beginning May 1, 2022 and continuing regularly thereafter until April 1, 2024, when the entire balance hereof, principal and interest then remaining unpaid, if any, shall be then due and payable. Interest will be calculated on the unpaid principal to the date of each installment paid. Payments will be credited first to the accrued interest and then to reduction of the principal.

THIS NOTE WILL BE DUE IN FULL ON APRIL 1, 2024.  THE PAYEE HEREIN DOES NOT REPRESENT THAT IT WILL REFINANCE THIS LOAN AT MATURITY. MAKER MAY BE REQUIRED TO PAY OFF THIS NOTE FROM PERSONAL FUNDS, OTHER ASSETS, OR SEEK REFINANCING FROM ANOTHER LENDER.

**Security for Payment:**

A vendor's lien and superior title expressly retained in deed of even date herewith executed by ERIC C. OSTRANDER and DARLA OSTRANDER to the Maker(s) hereof upon the hereinafter described real property and is additionally secured by a Deed of Trust to BRENT A. LANE, Trustee, to-wit:

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO.

INITIALED FOR IDENTIFICATION

**Exhibit 3**

2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN SAID DEED OF TRUST.

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date. If any amount is not paid either when due under the Terms of Payment or on acceleration of maturity, Maker promises to pay any unpaid amount plus interest from the date the payment was due to the date of payment at the Annual Interest Rate on Matured, Unpaid Amounts.

Maker may prepay this note in whole or in part at any time without penalty. Any prepayments are to be applied to the payment of the installments of principal last maturing, and interest will immediately cease on the prepaid principal.

Maker shall pay a late fee of five percent (5%) of any installment not paid within 10 days of the due date.

On default in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, the unpaid principal balance and earned interest on this note shall become immediately due at the election of Payee. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest. A default will also exist under this note if: (a) Maker, or an entity of which Maker is a Principal or any Guarantor is terminated, begins to wind up its affairs, or is authorized to terminate or wind up its affairs by its government body or person, or any event occurs or condition exists that permits the termination or winding up of the affairs of Maker, a partnership of which Maker is General Partner, or an Other Obligated Party; or (b) any Collateral Security is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition.

If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorney's fees and court costs, in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

When the context requires, singular nouns and pronouns include the plural.

ALLIANCE FARM AND RANCH LLC

By: _____
(name) _____
(title) _____

EIN: _____

**PREPARED IN THE OFFICE OF:**
Law Office of Beard & Lane, P.C.
10611 Grant Road
Houston, Texas 77070
Telephone: (281) 897-8848

Exhibit 3

Email: brent@beardlane.com

1BW8086 NOTE

Exhibit 3

PAGE 3 OF 3 - $3,800,636.00 REAL ESTATE LIEN NOTE

Recorded at the request of
UNIVERSITY TITLE COMPANY

GF# 2200122TW

**DEED OF TRUST**

GF No.: _____

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:** _April 1st_, 2022

**Grantor:** ALLIANCE FARM AND RANCH LLC, a Texas limited liability company

**Grantor's Mailing Address:** _9823 Friesian Colts Dr., Spring, TX 77379_
( _Harris_ County)

**Trustee:** BRENT A. LANE

**Trustee's Mailing Address:** 10611 Grant Road, Houston, Texas 77070 (Harris County)
Telephone: (281) 897-8848  Email: brent@beardlane.com

**Beneficiary:** ERIK C. OSTRANDER and DARLA OSTRANDER

**Beneficiary's Mailing Address:** _801 Ivy Ln., Terrell Hills, TX 78209_
( _____ County)

**Note(s)**
**Date:** _April 1st_, 2022
**Amount:** $3,800,636.00
**Maker:** Alliance Farm and Ranch LLC
**Payee:** Eric K. Ostrander and Darla Ostrander
**Final Maturity Date:** April 1, 2024
**Terms of Payment (optional):** As described in the Note.

**Property (including any improvements):**

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN **EXHIBIT "A"** ATTACHED HERETO AND MADE A PART HEREOF

**Prior Lien(s) (including recording information):**  None.

**Other Exceptions to Conveyance and Warranty:**  All matters of record.

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

Exhibit 5
Exhibit 3

*Deed of Trust*
Page 1 of 5

**Grantor's Obligations:**

**Grantor agrees to:**

1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
    a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
    b. contains an 80% coinsurance clause;
    c. provides fire and extended coverage, including windstorm coverage;
    d. protects Beneficiary with a standard mortgage clause;
    e. provides flood insurance at any time the property is in a flood hazard area; and
    f. contains such other coverage as Beneficiary may reasonably require;
5. comply at all times with the requirements of the 80% coinsurance clause;
6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. obey all laws, ordinances, and restrictive covenants applicable to the Property;
8. keep any buildings occupied as required by the insurance policy;
9. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments; and
10. notify Lender of any change of address.

**Beneficiary's Rights:**

1. Beneficiary or Beneficiary's mortgage servicer may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.
4. Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Beneficiary from Grantor with respect to the Obligation or this deed of trust may, at Beneficiary's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Beneficiary with respect to the Obligation, to be applied to late charges, principal, or interest in the order Beneficiary in its discretion determines.
5. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.
6. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:
    a. declare the unpaid principal balance and earned interest on the note immediately due;
    b. exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;
    c. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and
    d. purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.
7. Beneficiary may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**Trustee's Duties:**

Exhibit 5
Exhibit 3

If requested by Beneficiary to foreclose this lien, Trustee shall:

    1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

    2.    sell and convey all or part of the property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty and without representation or warranty, express or implied, by Trustee;

    3.    from the proceeds of the sale, pay, in this order:

        a.    expenses of foreclosure, including a commission to Trustee of 5 % of the bid;

        b.    to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

        c.    any amounts required by law to be paid before payment to Grantor; and

        d.    to Grantor, any balance.

    4.    be indemnified, held harmless, and defended by Beneficiary against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**General Provisions:**

    1.    If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

    2.    Recitals in any Trustee's deed conveying the property will be presumed to be true.

    3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

    4.    This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

    5.    If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

    6.    Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums. Grantor will immediately give Beneficiary notice of any actual or threatened proceedings for condemnation of all or part of the Property.

    7.    Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

    8.    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

    9.    Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that

*Exhibit 3*

maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

10.     When the context requires, singular nouns and pronouns include the plural.

11.     The term *note* includes all extensions, modifications, and renewals of the Note and all sums secured by this deed of trust.

12.     This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

13.     Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Beneficiary's rights under this deed of trust if an attorney who is not an employee of Beneficiary is retained for its enforcement.

14.     If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

15.     The term *Beneficiary* includes any mortgage servicer for Beneficiary.

16.     Grantor hereby grants Beneficiary a right of first refusal with respect to Grantor's power to authorize any third party (other than Beneficiary pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Beneficiary) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Beneficiary, within ten days after receiving written notice from Grantor, fails to pay the ad valorem taxes pursuant to Beneficiary's rights as set forth in this instrument.

17.     If Grantor and Maker are not the same person, the term *Grantor* shall include Maker.

**Special Provisions:**

1. <u>PURCHASE MONEY MORTGAGE WITH VENDOR'S LIEN</u>: The indebtedness, the payment of which is hereby secured, is in part payment of the purchase price of the real property herein described, and is also secured by a vendor's lien thereon retained in deed of even date herewith to the undersigned, and this Deed of Trust is given as additional security for the payment of said indebtedness.

2. <u>CONSENT REQUIRED</u>: If all or any part of the Property is sold, conveyed, leased for a period longer than three (3) years, leased with an option to purchase, or otherwise sold (including any contract for deed), without Beneficiary's prior written consent, which consent may be withheld in Beneficiary's sole discretion, Beneficiary may declare the balance of the Note to be immediately due and payable. The creation of a subordinate lien, any conveyance under threat or order of condemnation, any deed solely between Grantors, or the passage of title by reason of the death of a Grantor or by operation of law will not entitle Beneficiary to exercise the remedies provided in this paragraph.

3. <u>ESCROW NOT REQUIRED</u>: Grantor shall furnish Beneficiary annually, before the taxes become delinquent, evidence that all taxes on the property have been paid. Grantor shall furnish Beneficiary annually evidence of paid-up casualty insurance naming Beneficiary as an additional loss payee. Grantor shall furnish Beneficiary annually, evidence that all homeowners association fees on the property have been paid in full. If Grantor does not pay obligations on time and/or does not furnish Beneficiary evidence that taxes, casualty insurance and/or homeowners association fees have been paid in full, Beneficiary may require Grantor to deposit with Beneficiary in escrow a pro rata part of the estimated annual ad valorem taxes and casualty insurance premiums and/or homeowners association fees for the property, at Beneficiary's discretion. If Beneficiary requires Grantor to deposit any escrow payments, Grantor shall pay any deficiency within 30 days after notice from Beneficiary and Grantor's failure to pay the deficiency constitutes a default under this deed of trust. Grantor is not required to deposit any escrow payments for taxes and insurance and/or homeowners association fees that are deposited with a superior lienholder.

Executed on the date first above written.

ALLIANCE FARM AND RANCH LLC

By: _____
(name) Jerad Fuvr
Managing member

*Exhibit 5*
*Exhibit 3*

*Deed of Trust*
Page 4 of 5

(title)

STATE OF _Texas_ )

COUNTY OF _Montgomery_ )

This instrument was acknowledged before me on the __1__ day of __April__ , 2022, by _Jerod Furr_ , _Managing Member_ of ALLIANCE FARM AND RANCH LLC, a Texas limited liability company, on behalf of said company.

DANELL OSBORN
Notary Public
State of Texas
ID # 12634138-7
My Comm. Expires 12-13-2023

Notary Public in and for the
State of _____

**PREPARED IN THE OFFICE OF:**
Law Office of Beard & Lane, P.C.
10611 Grant Road
Houston, Texas 77070
Telephone: (281) 897-8848
Email: brent@beardlane.com

**AFTER RECORDING RETURN TO:**

1BW8087 DT

Exhibit 5
Exhibit 3

Escrow File No.:  2200122TW

EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 5
Exhibit 3

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

NOTE:  The Company is prohibited from insuring the area or quantity of land described herein.  Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Exhibit 5
Exhibit 3

Messages - Erik Ostrander

iMessage
4/2/2024 9:03:32 PM

No worries.  I'll call u tomorrow.

4/2/2024 9:02:07 PM

Sounds good, we just need to make everbody right. I was not sure either I just didn't read the paperwork first.

4/2/2024 8:59:02 PM

Eric. I appreciate you sending me this message. I wasnt avoiding you but I was not clear on what you wanted to do. Let's talk tomorrow and come to a mutually beneficial deal.

4/2/2024 8:54:01 PM

I thought you would have called me. Here's the deal, my atty advised that we get together and help each other work it out and get it sold as opposed to forclosure, bankruptcy and all that will do is put a huge lawyer bill on the deal, what he did say after reading the language of the finance docs that being in default we are entitled to 5% of the 3.7 balance and 18% per month until sold and we will deduct at closing so no more payments required at this time. He explained this was a real estate deal and not a business loan deal so my previous offer was outside the finance docs that we agreed to.

**Exhibit 5**

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.08, 09:27 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

# THE WEAVER LAW FIRM

Len E. Walker
Associate

1800 BERING DR.
SUITE 1050
HOUSTON, TEXAS 77057
**(713) 572-4900**
FAX (713) 513-5566
WeaverLawyers.com

Richard D. Weaver
Board Certified by the Texas
Board of Legal Specialization
Commercial Real Estate Law
Residential Real Estate Law

September 26, 2024

Alliance Farm and Ranch LLC
Attn: Jerod Furr, Managing Member
9823 Friesian Estate Drive
Spring, Texas 77379

*Via CM/RRR: 7022 3330 0001 2136 2223*
*Via First Class U.S. Mail*

Re: **NOTICE OF DEFAULT – DEMAND FOR PAYMENT –**
**NOTICE OF INTENT TO ACCELERATE – OPPORTUNITY TO CURE**

Subject Property: 5450 Honea Egypt Road, Montgomery County, TX 77316
Promissory Note: Dated April 1, 2022, in the Original Principal Amount of
$3,800,636.00
Name of Creditors: Erik C. Ostrander and Darla Ostrander
Name of Borrowers: Alliance Farm and Ranch LLC

Dear Jerod Furr,

Please accept this letter as formal notice that Erik Ostrander and Darla Ostrander (the "Lender") engaged THE WEAVER LAW FIRM to represent his interests with regard to the above-referenced matter. Please direct all further communication to this office.

On or about April 1, 2022, Alliance Farm and Ranch LLC (collectively, the "Maker") executed a Promissory Note (the "Note") payable to Lender in the original principal amount of $3,800,636.00. You are hereby provided notice that the Note is in default for failure to make payment of the amounts owing under the Note. You are hereby provided notice that your failure to pay constitutes a monetary default under the terms of the Note and the Deed of Trust.

Demand is hereby made for payment in full of the past due amounts, together with all lawful accrued and unpaid interest due until the date of payment, **within twenty (20) days of the date of this letter**, by cashier's check or money order at the office of THE WEAVER LAW FIRM, 1800 Bering Drive, Suite 1050, Houston, Texas 77057. To determine the amounts currently due and owing on the Note, please contact THE WEAVER LAW FIRM at (713) 572-4900.

If payment of all amounts that are currently due and owing under the Note is not received within twenty (20) days of the date of this letter, Lender shall: (1) accelerate the maturity of the indebtedness evidenced by the Note and secured by the Deed of Trust and declare the entire unpaid principal balance of the Note, plus all lawful accrued and unpaid interest thereon, to be

**Exhibit 5**

# THE WEAVER LAW FIRM

*Len E. Walker*
*Associate*

1800 BERING DR.
SUITE 1050
HOUSTON, TEXAS 77057
**(713) 572-4900**
FAX (713) 513-5566
WeaverLawyers.com

*Richard D. Weaver*
*Board Certified by the Texas*
*Board of Legal Specialization*
*Commercial Real Estate Law*
*Residential Real Estate Law*

November 6, 2024

Alliance Farm and Ranch LLC
Attn: Jerod Furr, Managing Member
9823 Friesian Estate Drive
Spring, Texas 77379

*Via CM/RRR: 7022 3330 0001 2136 0120*
*Via First Class U.S. Mail*

Alliance Farm and Ranch LLC
Attn: Jerod Furr, Managing Member
5450 Honea Egypt Road
Montgomery County, TX 77316

*Via CM/RRR: 7022 3330 0001 2136 0113*
*Via First Class U.S. Mail*

Re: **DEBT VALIDATION NOTICE - NOTICE OF ACCELERATION AND POSTING**
Subject Property:   5450 Honea Egypt Road, Montgomery County, TX 77316
Promissory Note:   Dated April 1, 2022, in the Original Principal Amount of
$3,800,636.00
Name of Creditor:   Erik C. Ostrander and Darla Ostrander
Name of Borrowers:   Alliance Farm and Ranch LLC

Dear Alliance Farm and Ranch LLC,

Please accept this letter as formal notice that Erik Ostrander and Darla Ostrander ("Lender") engaged THE WEAVER LAW FIRM to represent their interests regarding the above-referenced matter. Please direct all further communication to this office.

On or about April 1, 2022, Alliance Farm and Ranch LLC (collectively, the "Maker") executed a Promissory Note (the "Note") payable to Lender in the original principal amount of $3,800,636.00.

You are hereby provided notice that the Note is in default for failure to make payment of the amounts owing under the Note. You are hereby notified that because you have not cured the defaults, your obligations under the Note and Deed of Trust (collectively, "Loan Documents") have matured and the entire principal indebtedness evidenced by the Note, together with interest thereon as provided by the terms of the Note, has been accelerated. Further, you are hereby provided with Lender's notice of acceleration.

Please accept this letter as the Lender's formal notice that the Note matured and became immediately payable in full on April 1, 2024. Please find the attached **Notice of Foreclosure Sale**, scheduled for **December 3, 2024**.

**Exhibit 6**

Demand is hereby made for payment in full of the past due amounts and the remaining principal balance, together with all lawful accrued and unpaid interest due until the date of payment, on or before the Foreclosure Sale, by cashier's check or money order at the office of THE WEAVER LAW FIRM, 1800 Bering Drive, Suite 1050, Houston, Texas 77057. To determine the amounts currently due and owing on the Note, please contact THE WEAVER LAW FIRM at (713) 572-4900.

If all amounts due and owing have not been paid by the date of the Foreclosure Sale, the Substitute Trustee(s) will conduct the Foreclosure Sale on the date and at the time and place specified in the attached Notice of Foreclosure Sale.

If any party who receives this letter is a debtor in a bankruptcy proceeding subject to the provisions of the UNITED STATES BANKRUPTCY CODE (TITLE 11 of the UNITED STATE CODE), this letter is merely intended to be written notice of the defaults under the Note in compliance with the Loan Documents and applicable law. This letter is not an act to collect, assess, or recover a claim against that party, nor is this letter intended to violate any provisions of the Code. Any and all claims that Lender asserts against that party will be properly asserted in compliance with the Code in the bankruptcy proceeding. In addition, all of Lender's claims, demands, and accruals regarding the Loan Documents, whenever made, and whether for principal interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

Nothing contained in this letter is intended to waive any default, event of default, any rights, remedies, or recourses available to Lender, or to be an election of remedies resulting from any default that may exist with respect to the Loan Documents.

Please understand that no communication, written or oral, that Borrower has had or may have with Lender concerning any modification, renewal, extension, or restructure of the Loan Documents, including any deed in lieu of foreclosure, waiver of deficiency or agreed foreclosure, in any way modifies this letter or constitutes consent to the non-payment of the Note or a waiver by Lender of any of the remedies described herein. There are currently no modification, renewal extension, or settlement agreements between Borrower and Lender with regard to the Note and Deed of Trust, except as noted above, and all proposals made by you to the Lender relating to any of the foregoing are rejected.

You may contact THE WEAVER LAW FIRM at 1800 Bering Drive, Suite 1050, Houston, Texas 77057 or by telephone at (713) 572-4900 regarding any questions you may have, including the outstanding balance of the past due amounts on the Note as of any particular date. If you have any questions that you believe we can answer, you or your attorney (if you are represented by counsel with regard to this matter) may contact me at the number or address provided above.

**YOU ARE PUT ON NOTICE THAT THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibit 6

THE WEAVER LAW FIRM
November 6, 2024
Page **3** of **3**

     **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active-duty military service to the sender of this notice immediately.**

     Your prompt attention to this matter is required.  Should you have any questions or comments regarding the contents of this letter, please do not hesitate to contact my office.

          Sincerely,

          **THE WEAVER LAW FIRM**

          */s/ Len E. Walker*

          Len E. Walker
          lwalker@weaverlawyers.com

**YOU ARE PUT ON NOTICE THAT THIS FIRM IS A DEBT COLLECTOR.  WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibit 5

ALERT: SEVERE WEATHER IN THE SOUTHEAST AND CENTRAL U.S AND WINTER STORMS IN ...

# USPS Tracking®

FAQs >

**Remove ✕**

**Tracking Number:**

## 70223330000121360120

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was returned to the sender at 1:32 pm on December 4, 2024 in HOUSTON, TX 77057 because the forwarding order for this address is no longer valid.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

**Alert**
**Forward Expired**
HOUSTON, TX 77057
December 4, 2024, 1:32 pm

**Arrived at USPS Regional Facility**
SOUTH HOUSTON PROCESSING CENTER
December 3, 2024, 11:50 pm

**See All Tracking History**

Feedback

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

**Text & Email Updates**                                              ⌄

**USPS Tracking Plus®**                            *Exhibit 6*      ⌄

## Product Information   ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

*Exhibit 6*

ALERT: SEVERE WEATHER IN THE SOUTHEAST AND CENTRAL U.S AND WINTER STORMS IN …

# USPS Tracking®

FAQs ›

Remove ✕

**Tracking Number:**

# 70223330000121360113

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your package is moving within the USPS network and is on track to be delivered to its final destination. It is currently in transit to the next facility.

---

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

• Delivered

• Out for Delivery

• Preparing for Delivery

● **Moving Through Network**
  **In Transit to Next Facility**
  November 12, 2024

● **Arrived at USPS Regional Facility**
  NORTH HOUSTON TX DISTRIBUTION CENTER
  November 7, 2024, 10:33 pm

Feedback

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

---

**Text & Email Updates**                    ⌄

Exhibit 6

## USPS Tracking Plus®    ⌄

## Product Information    ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

*Exhibit 6*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of November 26, 2024 ("Effective Date") by and between **Erik Ostrander & Darla Ostrander** individuals and residents of Texas with an address at 103 Geneseo, San Antonio, Texas 78209 (the "Ostranders"), and **Alliance Farm & Ranch LLC**, a Texas Limited Liability Company with an address at 9823 Friesian Estate Drive, Spring, Texas 77379 ("Alliance"). The Ostranders and Alliance are collectively referred to herein as the **"Parties"**, and each individually as a **"Party**."

### RECITALS

WHEREAS, on April 1, 2022 the Ostranders and Alliance entered into a purchase and sale contract (the "Contract") for real property located at 5450 Honea Egypt Road, Montgomery, Texas 77316 (the "Property");

WHEREAS, the Contract included owner financing by the Ostranders with a promissory note for $3,800,636 (the "Note") including principal and interest payable and due within a twenty-four month period;

WHEREAS, Alliance defaulted on the Note by failing to make monthly payments and final payment on April 1, 2024;

WHEREAS, the Ostranders foreclosed on the Property per the terms of the associated Deed of Trust, and noticed the Property for foreclosure sale on December 3, 2024;

WHEREAS, the Parties have reached an agreement to delay the foreclosure sale of the Property until January 7, 2025 in order to settle and completely resolve any outstanding disputes related to the purchase and sale of the Property as more fully set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which each of the Parties acknowledge, the Parties hereby agree as follows:

### AGREEMENT

1. **Initial Payment.** Alliance will remit the initial sum of One Hundred Thousand Dollars **($100,000)** to the Ostranders. The Initial Payment shall be completed by Alliance **on or before** the execution of this Agreement. This is a nonrefundable, non-reimbursable payment.

2. **Final Payment.** Alliance will remit the lump sum payment of Four Million Five Hundred Thousand Dollars **($4,500,000)** to the Ostranders. This Final Payment shall be received by the Ostranders no later than **December 31, 2024.** Receipt of this Final Payment by the Ostranders will satisfy all amounts owed on the original Contract.

3. **Foreclosure Sale.** Upon receipt of the Initial Payment and execution of this Agreement, the foreclosure sale will be rescheduled and noticed for January 7, 2025. If the Final

Exhibit 5

Exhibit 7

Payment is received by December 31, 2024, then the foreclosure sale will be cancelled.  If the Final Payment is not received by December 31, 2024 the Property will be sold at the foreclosure sale rescheduled and noticed for January 7, 2025, and Alliance shall have no recourse except to bid on the Property at the foreclosure sale.

4.   **Attorneys Fees.**
   a.   Each Party shall be responsible for paying its own attorneys' fees and costs associated with preparing, negotiating, executing, and complying with this Agreement, except as otherwise stated herein; and

   b.   Alliance shall pay the Ostranders' attorneys' fees related to closing the purchase and sale transaction of the Property.  Legal fee invoices from the Ostranders' attorneys shall be submitted to the title company, amounts listed on the settlement statement, and amounts disbursed at closing to the attorneys.

5.   **Release of Claims.** The Parties fully and finally release, acquit, and discharge all claims against the other and their predecessors, successors, assigns, agents, and attorneys, that the Parties asserted or could have asserted prior to this Agreement, and all claims, rights, demands, setoffs, rights of offset, defenses, actions, causes of action, including those in contract and tort, damages, costs and expenses, contracts, promises, and obligations of any character whatsoever, whether known or unknown, that each party ever had, or now has against the other prior to the date of execution of this Agreement, whether or not ever asserted. This release is intended to be interpreted broadly and includes any claims of any kind for relief or damages. This includes any claims that are known or unknown. Expressly excluded from this release; however, is any claim arising under the Agreement.

6.   **No Outstanding or Known Future Claims.** The Parties warrant that they have not filed with any governmental agency, court, or other tribunal any type of action or report against the other, and currently know of no existing act or omission by the other Party that may constitute a claim or liability excluded from the released claims as detailed herein.

7.   **Authority to Settle.** The Parties warrant that they have the right and authority to enter into this Agreement, releasing, relinquishing, settling, and discharging all claims arising out of the matters indicated herein, and that they have not transferred such right or authority to any individual or entity who is not a party to this Agreement.

8.   **Acknowledgement of Settlement.** The Parties acknowledge that the consideration set forth in this Agreement is a full settlement of all claims or losses of whatsoever kind or character that they have relating to any dispute related to the Property or the transaction at issue involving the sale of the Property. The Parties further acknowledge that by entering into this Agreement, signing it, and accepting the consideration provided herein and the benefit thereof, they are giving up any right to seek further relief for any dispute related to the Property or the transaction at issue involving the sale of the Property.

Exhibit 5

Exhibit 7

9.    **Agreement to Cooperate.** The Parties agree to take all actions and to make, deliver, and sign any other documents and instruments necessary to carry out the terms, provisions, purpose, and intent of this Agreement.

10.    **Entire Agreement.** This Agreement, including background recitals, constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and proposed agreements between the Parties, whether written or oral. The Parties expressly acknowledge, warrant, and represent that in executing this Agreement they are not relying on any statement, representation, promise, agreement, or warranty not contained in this Agreement. In deciding to enter into this Agreement, the Parties are relying solely on their own judgment and have been represented by legal counsel of their choosing in this matter.

11.    **Interpretation; Severability.** The descriptive headings included herein are purely for convenience and are not to be used as an aid in interpretation. The Parties agree that this Agreement shall not be construed against either Party as the author or drafter of the Agreement. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining portions of this Agreement shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

12.    **Choice of Law and Forum.** This Agreement and all related documents and exhibits attached hereto, if any, and all matters arising out of or relating to this Agreement are governed by and construed in accordance with the laws of the State of Texas without giving effect to the conflict of laws provisions thereof. The Parties irrevocably and unconditionally agree that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other Party relating to this Agreement in any forum other than the state courts of Texas in Montgomery County.

13.    **Counterparts.** This Agreement consists of four (4) pages including the signature page below. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, and intending to be legally bound, each of the undersigned Parties hereto has caused this Agreement to be executed as of the Effective Date written above.

**Jerod Furr**
**Managing Member**
**Alliance Farm & Ranch LLC**

11/26/2024
**Date**

**Eric Ostrander**

11-28-2024
**Date**

**Darla Ostrander**

11-28-2024
**Date**

Exhibit 5

Exhibit 7

# THE WEAVER LAW FIRM

*Len E. Walker*
*Associate*

1800 BERING DR.
SUITE 1050
HOUSTON, TEXAS 77057
**(713) 572-4900**
FAX (713) 513-5566
WeaverLawyers.com

*Richard D. Weaver*
*Board Certified by the Texas*
*Board of Legal Specialization*
*Commercial Real Estate Law*
*Residential Real Estate Law*

December 6, 2024

Alliance Farm and Ranch LLC
Attn: Jerod Furr, Managing Member
9823 Friesian Estate Drive
Spring, Texas 77379

*Via CM/RRR: 7022 3330 0001 2136 0762*
*Via First Class U.S. Mail*

Alliance Farm and Ranch LLC
Attn: Jerod Furr, Managing Member
5450 Honea Egypt Road
Montgomery County, TX 77316

*Via CM/RRR: 7022 3330 0001 2136 0724*
*Via First Class U.S. Mail*

Re:   **DEBT VALIDATION NOTICE - NOTICE OF ACCELERATION AND POSTING**
      Subject Property:   5450 Honea Egypt Road, Montgomery County, TX 77316
      Promissory Note:    Dated April 1, 2022, in the Original Principal Amount of
                          $3,800,636.00
      Name of Creditor:   Erik C. Ostrander and Darla Ostrander
      Name of Borrowers:  Alliance Farm and Ranch LLC

Dear Alliance Farm and Ranch LLC,

Please accept this letter as formal notice that Erik Ostrander and Darla Ostrander ("Lender") engaged THE WEAVER LAW FIRM to represent their interests regarding the above-referenced matter. Please direct all further communication to this office.

On or about April 1, 2022, Alliance Farm and Ranch LLC (collectively, the "Maker") executed a Promissory Note (the "Note") payable to Lender in the original principal amount of $3,800,636.00.

You are hereby provided notice that the Note is in default for failure to make payment of the amounts owing under the Note. You are hereby notified that because you have not cured the defaults, your obligations under the Note and Deed of Trust (collectively, "Loan Documents") have matured and the entire principal indebtedness evidenced by the Note, together with interest thereon as provided by the terms of the Note, has been accelerated. Further, you are hereby provided with Lender's notice of acceleration.

Please accept this letter as the Lender's formal notice that the Note matured and became immediately payable in full on April 1, 2024. Please find the attached **Notice of Foreclosure Sale**, scheduled for **January 7, 2025**.

Exhibit 8

Demand is hereby made for payment in full of the past due amounts and the remaining principal balance, together with all lawful accrued and unpaid interest due until the date of payment, on or before the Foreclosure Sale, by cashier's check or money order at the office of THE WEAVER LAW FIRM, 1800 Bering Drive, Suite 1050, Houston, Texas 77057. To determine the amounts currently due and owing on the Note, please contact THE WEAVER LAW FIRM at (713) 572-4900.

If all amounts due and owing have not been paid by the date of the Foreclosure Sale, the Substitute Trustee(s) will conduct the Foreclosure Sale on the date and at the time and place specified in the attached Notice of Foreclosure Sale.

If any party who receives this letter is a debtor in a bankruptcy proceeding subject to the provisions of the UNITED STATES BANKRUPTCY CODE (TITLE 11 of the UNITED STATE CODE), this letter is merely intended to be written notice of the defaults under the Note in compliance with the Loan Documents and applicable law. This letter is not an act to collect, assess, or recover a claim against that party, nor is this letter intended to violate any provisions of the Code. Any and all claims that Lender asserts against that party will be properly asserted in compliance with the Code in the bankruptcy proceeding. In addition, all of Lender's claims, demands, and accruals regarding the Loan Documents, whenever made, and whether for principal interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

Nothing contained in this letter is intended to waive any default, event of default, any rights, remedies, or recourses available to Lender, or to be an election of remedies resulting from any default that may exist with respect to the Loan Documents.

Please understand that no communication, written or oral, that Borrower has had or may have with Lender concerning any modification, renewal, extension, or restructure of the Loan Documents, including any deed in lieu of foreclosure, waiver of deficiency or agreed foreclosure, in any way modifies this letter or constitutes consent to the non-payment of the Note or a waiver by Lender of any of the remedies described herein. There are currently no modification, renewal extension, or settlement agreements between Borrower and Lender with regard to the Note and Deed of Trust, except as noted above, and all proposals made by you to the Lender relating to any of the foregoing are rejected.

You may contact THE WEAVER LAW FIRM at 1800 Bering Drive, Suite 1050, Houston, Texas 77057 or by telephone at (713) 572-4900 regarding any questions you may have, including the outstanding balance of the past due amounts on the Note as of any particular date. If you have any questions that you believe we can answer, you or your attorney (if you are represented by counsel with regard to this matter) may contact me at the number or address provided above.

**YOU ARE PUT ON NOTICE THAT THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

THE WEAVER LAW FIRM
December 6, 2024
Page **3** of **3**

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active-duty military service to the sender of this notice immediately.**

Your prompt attention to this matter is required. Should you have any questions or comments regarding the contents of this letter, please do not hesitate to contact my office.

Sincerely,

**THE WEAVER LAW FIRM**

*/s/ Len E. Walker*

Len E. Walker
lwalker@weaverlawyers.com

**YOU ARE PUT ON NOTICE THAT THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**After recording, return to:**
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **COUNTY OF MONTGOMERY** | § | |

## NOTICE OF FORECLOSURE SALE

Date:   December 6, 2025

Secured Obligations:   Promissory Note ("Note"), dated April 1, 2022, executed by Alliance Farm and Ranch LLC ("Borrower"), as maker, and payable to the order of Erik C. Ostrander and Darla Ostrander ("Beneficiary"), as lender, in the original principal amount of $3,800,636.00, and all extensions, renewals, replacements, and amendments thereof.

Deed of Trust:   Deed of Trust, dated April 1, 2022, executed by Borrower, as grantor, to Brent A. Lane, as trustee, for the benefit of Beneficiary, as lender, recorded as Clerk's File No. 2022043837 in the Official Public Records of Real Property of Montgomery County, Texas.

Substitute Trustees:   Richard D. Weaver and/or Len E. Walker

Substitute Trustees' Address:   1800 Bering Drive, Suite 1050
Houston, Texas 77057

**Foreclosure Sale:**

Date:   Tuesday, January 7, 2025

Time:   The sale of the Property (as defined in the Deed of Trust) (such sale is the "Foreclosure Sale") will take place between the hours of 10:00 a.m. and 1:00 p.m. local time, the earliest time at which the Foreclosure Sale will be is 10:00 a.m.

Place:   Montgomery County Courthouse, at the following location: Old 1936 Courthouse at 301 N. Main St., Conroe, Texas 77301, or if the preceding area is no longer the designated area, the area as designated by the Montgomery County Commissioners Court.

Terms of Sale:   The Foreclosure Sale will be conducted as a public auction, and the real property, more particularly described in Exhibit "A", will be sold to the

**Exhibit 9**

highest bidder for cash, except that Lender's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust. Because of that default, Beneficiary, the current owner and holder of the Note, has requested Substitute Trustee to sell the Property.

Therefore, notice is given that on and at the Date, Time, and Place of Sale described above, Substitute Trustee will sell the Property by public sale to the highest bidder for cash in accordance with the Deed of Trust

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**SUBSTITUTE TRUSTEE:**

Richard D. Weaver

**SUBSTITUTE TRUSTEE:**

Len E. Walker

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

This instrument was acknowledged before me on this 6th day of December 2024, by Richard D. Weaver, as Substitute Trustee, and Len E. Walker, as Substitute Trustee.

Notary Public in and for the State of Texas

GUADALUPE PRICILLA LEON
Notary Public, State of Texas
Comm. Expires 08-14-2027
Notary ID 134506202

Exhibit 9

After recording, return to:

THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

**STATE OF TEXAS** §
§
**COUNTY OF MONTGOMERY** §

## SUBSTITUTE TRUSTEE'S DEED

Date:   January 7, 2024

WHEREAS, by that certain Deed of Trust dated April 1, 2022, and filed for record on April 6, 2022, as Instrument No. 2022043837, in Official Public Records of Montgomery County, Texas (hereinafter referred to as the "Deed of Trust"),

| | |
|---|---|
| Secured Obligations: | Promissory Note ("Note"), dated April 1, 2022, executed by Alliance Farm and Ranch LLC ("Borrower"), as maker, and payable to the order of Erik C. Ostrander and Darla Ostrander ("Beneficiary"), as lender, in the original principal amount of $3,800,636.00, and all extensions, renewals, replacements, and amendments thereof. |
| Deed of Trust: | Deed of Trust, dated April 1, 2022, executed by Borrower, as Grantor, to Brent A. Lane, as trustee, recorded April 6, 2022, as Instrument No. 2022043837 in the Official Public Records of Montgomery County, Texas. |
| Substitute Trustees: | Richard D. Weaver and/or Len E. Walker |
| Substitute Trustees' Address: | THE WEAVER LAW FIRM<br>1800 Bering Drive, Suite 1050<br>Houston, Texas 77057 |

**Foreclosure Sale:**

| | |
|---|---|
| Date: | Tuesday, January 7, 2025 |
| Time: | The sale of the Property (as defined in the Deed of Trust) (such sale is the "Foreclosure Sale") occurred at 10:15am. |
| Place: | Montgomery County Courthouse located at 301 N. Main St., Conroe, Texas 77301. |

Exhibit 16

| Terms of Sale: | The Foreclosure Sale was conducted as a public auction, and the real property, more particularly described in Exhibit "A", was sold to the highest bidder for cash, except that Beneficiary's bid was by credit against the indebtedness secured by the lien of the Deed of Trust. |
| --- | --- |
| Grantee: | Erik C. Ostrander and Darla Ostrander |
| Grantee's Address: | 103 Geneseo, San Antonio, Texas 78209 |
| Purchase Price: | $4,600,000.00 |

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust. Because of that default, Beneficiary, the current owner and holder of the Note, conveyed to Trustee the Property for the purposes of securing and enforcing payment of, among other things, the Note.

As evidenced by the Affidavit of Posting, Filing, and Mailing Notice of Foreclosure Sale attached hereto and incorporated herein as Exhibit "B" (the "Foreclosure Affidavit"), herein at the request of Beneficiary, Substitute Trustee: (i) filed written notice ("Notice") of the earliest time, place and terms of the Foreclosure Sale with the County Clerk of Montgomery County, Texas and (ii) posted the Notice in the county in which the Property is situated. At the request of Beneficiary, Substitute Trustee or an agent or agents of the Substitute Trustee, served the Notice by certified mail, return receipt requested, on each debtor obligated to pay the Note according to the records of the Beneficiary and as required by law.

The Foreclosure Sale was held by Len E. Walker, as the Substitute Trustee, pursuant to the terms of the Deed of Trust and in accordance with the laws of the State of Texas on and at the Date, Time, and Place of Foreclosure Sale.

Grantee, being the highest bidder at the Foreclosure Sale, did purchase the Property for the Purchase Price.

Substitute Trustee, in consideration of the foregoing and of the payment to Substitute Trustee of the Purchase price, by the authority conferred on the Substitute Trustee by the Deed of Trust, GRANTS, SELLS and CONVEYS to Grantee, its legal representatives, successors, and assigns, the Property, together with, all and singular, the rights, privileges, and appurtenances thereto, subject subordinate, and inferior to all matters of record as of the date of recordation of the Deed of Trust (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with the rights, privileges, and appurtenances thereto, subject, subordinate, and inferior to the Permitted Exceptions, to Grantee, its legal representatives, successors, and assigns to warrant and forever defend all and singular the Property to Grantee, its legal representatives, successors, and assigns, against every person whomsoever lawfully claim or to claim the same or any part thereof, subject to the Permitted Exceptions.

Exhibit 16

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

SUBSTITUTE TRUSTEE:

_____
Len E. Walker

STATE OF TEXAS                §
                             §
COUNTY OF MONTGOMERY          §

    This instrument was acknowledged before me on this 7th day of January 2025, by Len E. Walker, as Substitute Trustee.

> GUADALUPE PRICILLA LEON
> Notary Public, State of Texas
> Comm. Expires 08-14-2027
> Notary ID 134506202

_____
Notary Public in and for the State of Texas

Attachments:  Exhibits "A" & "B"

Exhibit 16

Substitute Trustee's Deed - Page 3

# Exhibit A

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 16

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

MORE COMMONLY KNOWN AS:  5450 HONEA EGYPT ROAD, MONTGOMERY, TEXAS 77316.

Exhibit 16

# Exhibit B

### AFFIDAVIT OF POSTING, FILING, AND MAILING
### NOTICE OF FORECLOSURE SALE

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF MONTGOMERY** | § |

**DATE:**          December 6, 2024

**DEED OF TRUST:**

     **DATE:**          April 1, 2022

     **GRANTOR:**          Alliance Farm and Ranch LLC

     **TRUSTEE:**          Brent A. Lane

     **BENEFICIARY:**          Erik C. Ostrander and Darla Ostrander

     **RECORDING INFORMATION:**      Recorded in Clerk's File No. 2022043837 in the Official Public Records of Montgomery County, Texas.

     **PROPERTY:**          See Exhibit "A" attached hereto.

**SUBSTITUTE TRUSTEE(S):**      Richard D. Weaver and/or Len E. Walker

**SUBSTITUTE TRUSTEE'S ADDRESS:**      THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

**NOTICE OF FORECLOSURE SALE:**      The Notice of Substitute Trustee's Sale was filed with the county clerk's office of Montgomery County, Texas, in compliance with SECTION 51.002 of the TEXAS PROPERTY CODE and the Deed of Trust. A true and correct copy of the Notice of Foreclosure Sale is attached hereto as Exhibit "B".

     BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Affiant, a person well known to me, who upon oath stated:

     "I am over the age of 18 years. I have never been convicted of a felony or a crime of moral turpitude and have personal knowledge of the facts set forth herein. I have been duly appointed as a Substitute Trustee with respect to the matters set forth herein. I performed the following actions at the request of Grantor.

     On December 6, 2024, I served or caused to be served a true and correct copy of the Notice of Foreclosure Sale on the following persons at the following addresses at approximately 5:00 p.m., by causing the Notice of Foreclosure Sale ("Notice"), a true and correct copy of which is attached hereto,

to be deposited in a wrapper, postage pre-paid, certified mail, return receipt requested, in a post office or official depository under the care and custody of the U.S. Postal Service as follows:

Alliance Farm & Ranch LLC          ***Via CMRRR:  7022 3330 0001 2136 0762***
Attn:  Jerod Furr, managing member    ***& First Class U.S. Mail***
9823 Friesian Estate Dr.
Spring, Texas 77379

Furthermore, the Notice was posted at the following place, on the following date:

Date:                    December 6, 2024

Place of Posting:        Montgomery County Courthouse
                         301 N. Main Street
                         Conroe, Texas 77301

A duplicate copy of the Notice was filed with the county clerk's office of Montgomery County, Texas on December 6, 2024.


Affiant's Signature:


Affiant's Address:    THE WEAVER LAW FIRM
                      1800 Bering Drive, Suite 1050
                      Houston, Texas 77057


SUBSCRIBED AND SWORN TO before me on the 7th day of January 2025, by Len E. Walker, as Substitute Trustee.

GUADALUPE PRICILLA LEON
Notary Public, State of Texas
Comm. Expires 08-14-2027
Notary ID 134506202

Notary Public in and for the State of Texas


After recording, return to:
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

Exhibit 16

## Exhibit A

The Land referred to herein below is situated in the County of Montgomery, State of Texas, with an address at **5450 Honea Egypt Road, Montgomery County, Texas 77316** and is described as follows:

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 16

Page 3 of 4

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

Exhibit 16

Page 4 of 4

5

# Exhibit B

DOC# 0038
POSTED
12/06/2024 04:07PM
Rosio Munoz
L. BRANDON STEINMANN, COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

**After recording, return to:**
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF MONTGOMERY** | § |

## NOTICE OF FORECLOSURE SALE

Date: December 6, 2025

Secured Obligations: Promissory Note ("Note"), dated April 1, 2022, executed by Alliance Farm and Ranch LLC ("Borrower"), as maker, and payable to the order of Erik C. Ostrander and Darla Ostrander ("Beneficiary"), as lender, in the original principal amount of $3,800,636.00, and all extensions, renewals, replacements, and amendments thereof.

Deed of Trust: Deed of Trust, dated April 1, 2022, executed by Borrower, as grantor, to Brent A. Lane, as trustee, for the benefit of Beneficiary, as lender, recorded as Clerk's File No. 2022043837 in the Official Public Records of Real Property of Montgomery County, Texas.

Substitute Trustees: Richard D. Weaver and/or Len E. Walker

Substitute Trustees' Address: 1800 Bering Drive, Suite 1050
Houston, Texas 77057

**Foreclosure Sale:**

Date: Tuesday, January 7, 2025

Time: The sale of the Property (as defined in the Deed of Trust) (such sale is the "Foreclosure Sale") will take place between the hours of 10:00 a.m. and 1:00 p.m. local time, the earliest time at which the Foreclosure Sale will be is 10:00 a.m.

Place: Montgomery County Courthouse, at the following location: Old 1936 Courthouse at 301 N. Main St., Conroe, Texas 77301, or if the preceding area is no longer the designated area, the area as designated by the Montgomery County Commissioners Court.

Terms of Sale: The Foreclosure Sale will be conducted as a public auction, and the real property, more particularly described in Exhibit "A", will be sold to the

Exhibit 16

highest bidder for cash, except that Lender's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust. Because of that default, Beneficiary, the current owner and holder of the Note, has requested Substitute Trustee to sell the Property.

Therefore, notice is given that on and at the Date, Time, and Place of Sale described above, Substitute Trustee will sell the Property by public sale to the highest bidder for cash in accordance with the Deed of Trust

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**SUBSTITUTE TRUSTEE:**

Richard D. Weaver

**SUBSTITUTE TRUSTEE:**

Len E. Walker

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

This instrument was acknowledged before me on this 6th day of December 2024, by Richard D. Weaver, as Substitute Trustee, and Len E. Walker, as Substitute Trustee.

Notary Public in and for the State of Texas

GUADALUPE PRICILLA LEON
Notary Public, State of Texas
Comm. Expires 08-14-2027
Notary ID 134506202

Exhibit 16

## EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 6

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 16

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

MORE COMMONLY KNOWN AS:  5450 HONEA EGYPT ROAD, MONTGOMERY, TEXAS 77316.

Exhibit 16

**Doc #: 2025001866**

**Pages 10**

**E-FILED FOR RECORD**
01/07/2025    04:09PM



L. Brandon Steinmann
County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/07/2025**

L. Brandon Steinmann
County Clerk,
Montgomery County, Texas

Exhibit 16

**E-FILED FOR RECORD**
01/08/2025    04:41PM



County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/08/2025**

County Clerk,
Montgomery County, Texas

Exhibit 16

dotloop signature verification: dtlp.us/9QEZ-yqR0-ZWvk
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)     11-04-2024

# FARM AND RANCH CONTRACT

**TREC**
TEXAS REAL ESTATE COMMISSION

NOTICE: Designed For Use In Sales Of Existing Farms Or Ranches Of Any Size. Not For Use In Complex Transactions.

1. **PARTIES:** The parties to this contract are _____ Erik C Ostrander & Darla R Ostrander _____ (Seller) and _____ Nathan Milner _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

   A. LAND: The land situated in the County (or Counties) of Montgomery

   _____
   Texas, described as follows: A0151 A0151 - CARTWRIGHT MATTHEW, TRACT 1-A, SERIAL # SFW013709TXA, TITLE # MH0047 0103, LABEL # NTA1551549, MODEL FC2441

   or as described on attached exhibit, also known as 5450 Honea Egypt Rd, Montgomery, TX 77316 (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto.

   B. IMPROVEMENTS:
   (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
   (2) RESIDENTIAL IMPROVEMENTS: Any houses, garages, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

   C. ACCESSORIES:
   (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☑ portable buildings ☑ hunting blinds ☑ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☑ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☑ other: As noted in exhibit A

   _____
   (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

   D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

   E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: All personal property not named in Exhibit A to be removed 48 hours prior to final walkthrough/closing.

   F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ................. $2,040,000
   The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.
   B. Sum of all financing described in the attached: ☑   Third Party Financing Addendum,
   ☐   Loan Assumption Addendum, ☐   Seller Financing Addendum .. $4,760,000
   C. Sales Price (Sum of A and B) ................................................... $6,800,000.00
   D. The Sales Price ☐ will ☑ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be adjusted based on the difference between ____3____ acres and the acreage set forth in the survey required by Paragraph 6C. The difference in acreage (either increased or decreased) shall be multiplied by the sum of $N/A_____ per acre and either added to or subtracted from the Sales Price stated in Paragraph 3C. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within ____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

4. **LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
   ☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

Initialed for identification by Buyer ___ and Seller ___

JLA Realty     5332 FM 1960 E STE C HUMBLE, TX 77346     281 ___     Jasmin Lye

TREC NO. 25-16
TXR 1701

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

☐ B. **FIXTURE LEASES:** Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. **NATURAL RESOURCE LEASES:** "Natural Resource Lease" means an existing oil and gas, mineral, geothermal, water, or other natural resource lease affecting the Property to which Seller is a party.

 ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

 ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

☐ D. **SURFACE LEASES:** "Surface Lease" means an existing lease for the surface only of the Property (for example, grazing leases, hunting leases, agricultural leases, recreational leases, wind leases, solar leases, timber or forestry leases). (Check all applicable boxes)

 ☐ (1) Seller has delivered to Buyer a copy of all written Surface Leases.

 ☐ (2) Seller provides Buyer with notice of the following oral Surface Lease(s), identifying the type of lease, name of the tenant(s), rental amount, and term:_____

 ☐ (3) Seller has not delivered to Buyer all Surface Leases (whether written or oral). Seller shall provide to Buyer a copy of all the written Surface Leases and notice of all oral Surface Leases, identifying the type of lease, the name of the tenant(s), rental amount, and term, within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Surface Leases and the earnest money shall be refunded to Buyer.

**5. EARNEST MONEY AND TERMINATION OPTION:**

 A. **DELIVERY OF EARNEST MONEY AND OPTION FEE:** Within 3 days after the Effective Date, Buyer must deliver to _____BRPS Title of Texas LLC_____ (Escrow Agent) at _____ 5353 W Alabama St Ste 310, Houston, TX 77056 _____ (address: $ 68,000 _____ as earnest money and $ 1,500 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

  (1) Buyer shall deliver additional earnest money of $ 0 _____ to Escrow Agent within n/a _____ days after the Effective Date of this contract.

  (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

  (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

  (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

 B. **TERMINATION OPTION:** For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _15_ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

 C. **FAILURE TO TIMELY DELIVER EARNEST MONEY:** If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

 D. **FAILURE TO TIMELY DELIVER OPTION FEE:** If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

 E. **TIME: Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**

 A. **TITLE POLICY:** Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____BRPS Title of Texas LLC_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

  (1) The standard printed exception for standby fees, taxes and assessments.

  (2) Liens created as part of the financing described in Paragraph 3.

  (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

---

Initialed for identification by Buyer ___MM___ and Seller _____ _____

  Initial              Initial

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316                Page 3 of 11   11-04-2024
(Address of Property)

    (4) The standard printed exception as to marital rights.
    (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
    (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
    ☐ (i) will not be amended or deleted from the title policy; or
    ☑ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☑ Seller.
    (7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. **SURVEY:** The survey must be made by a registered professional land survey or acceptable to the Title Company and Buyer's lender(s). (Check one box only):
    ☑ (1) Within _____10_____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit or Declaration promulgated by the Texas Department of Insurance (T-47 Affidavit or T-47.1 Declaration). Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date if Seller fails to furnish within the time prescribed both the: (i) existing survey; and (ii) affidavit or declaration. If the Title Company or Buyer's lender does not accept the existing survey, or the affidavit or declaration, Buyer shall obtain a new survey at ☐ Seller's ☑ Buyer's expense no later than 3 days prior to Closing Date.
    ☐ (2) Within _____ days after the Effective Date of this contract, Buyer may obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier. If Buyer fails to obtain the survey, Buyer may not terminate the contract under Paragraph 2B of the Third Party Financing Addendum because the survey was not obtained.
    ☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
    ☐ (4) No survey is required.

D. **OBJECTIONS:** Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: Commercial Use _____
_____.
    Buyer must object the earlier of (i) the Closing Date or (ii) ____10____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E. **EXCEPTION DOCUMENTS:** Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| N/A | | |
| N/A | | |
| N/A | | |

F. **SURFACE LEASES:** The following Surface Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: N/A _____.

G. **TITLE NOTICES:**
    (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or

Initialed for identification by Buyer _____ and Seller _____                TREC NO. 25-16

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uvP9-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

(11) CERTIFICATE OF MOLD REMEDIATION: If the Property has been remediated for mold, Seller must provide to Buyer each certificate of mold damage remediation issued under §1958.154, Occupations Code, during the 5 years preceding the sale of the Property.

(12) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, utility, water, drainage, and public improvement districts): N/A

_____

_____

Seller's failure to provide applicable statutory notices may provide Buyer with remedies or rights to terminate the contract.

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only):

☑ (1) Buyer has received the Notice

☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

Exhibit 15

dotloop signature verification: dtlp.us/RQE2-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☐ (1) Buyer accepts the Property As Is.
☒ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: Removal of all scrap metal throughout property

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs to Buyer at closing. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURE:
(1) Seller ☐ is ☒ is not aware of any flooding of the Property which has had a material adverse effect on the use of the Property.
(2) Seller ☒ is ☐ is not aware of any pending or threatened litigation, condemnation, or special assessment affecting the Property.
(3) Seller ☐ is ☒ is not aware of any environmental hazards that materially and adversely affect the Property.
(4) Seller ☐ is ☒ is not aware of any dumpsite, landfill, or underground tanks or containers now or previously located on the Property.
(5) Seller ☐ is ☒ is not aware of any wetlands, as defined by federal or state law or regulation, affecting the Property.
(6) Seller ☐ is ☒ is not aware of any threatened or endangered species or their habitat affecting the Property.
(7) Seller ☒ is ☐ is not aware that the Property is located ☐ wholly ☒ partly in a floodplain.
(8) Seller ☐ is ☒ is not aware that a tree or trees located on the Property has oak wilt.
If Seller is aware of any of the items above, explain (attach additional sheets if necessary): Have a lis pendency that will be removed when current occupant vacates property        .

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ 850      . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: N/A

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

## 8. BROKERS AND SALES AGENTS:

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: N/A

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316          Page 6 of 11   11-04-2024
(Address of Property)

**9. CLOSING:**
  A. The closing of the sale will be on or before _____04/24/2025_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
  B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
   (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
   (5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

**10. POSSESSION:**
  A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
  B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
   (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
   (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.) _____
_____
_____.

**12. SETTLEMENT AND OTHER EXPENSES:**
  A. The following expenses must be paid at or prior to closing:
   (1) Seller shall pay the following expenses (Seller's Expenses):
     (a) releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; brokerage fees that Seller has agreed to pay; and other expenses payable by Seller under this contract;
     (b) the following amount to be applied to brokerage fees that Buyer has agreed to pay:
       ☐$_____ or ☐_____% of the Sales Price (check one box only); and
     (c) an amount not to exceed $_____ to be applied to other Buyer's Expenses.
   (2) Buyer shall pay the following expenses (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; brokerage fees that Buyer has agreed to pay; and other expenses payable by Buyer under this contract.
  B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
  A. PRORATIONS: Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

Initialed for identification by Buyer _____ and Seller _____          TREC NO. 25-16

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2832427611          Jasmin Lye          TXR 1701

Exhibit 15

dotloop signature verification: dtlp.us/RQE2-uvP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

B. ROLLBACK TAXES:  If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer.  If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract.  If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means  expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party.  If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making  demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing.  If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.  Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

---

Initialed for identification by Buyer  _MM_  and Seller  _____  _____        TREC NO. 25-16

Exhibit 15

dotloop signature verification: dtlp.us/RQE2-uvP9-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316     Page 8 of 11    11-04-2024

(Address of Property)

**20. FEDERAL REQUIREMENTS:**

A. If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

B. The Agriculture Foreign Investment Disclosure Act (AFIDA) of 1978 requires that a foreign person who acquires, disposes of, or holds an interest in United States agricultural land must disclose such transactions and holdings to the Secretary of Agriculture. Foreign persons must file an FSA-153 in the Farm Service Agency (FSA) Service Center where the land is physically located within 90 days of the date of the transaction. Failure to report is subject to civil penalty up to 25 percent of the fair market value of the land on the date the penalty is assessed. Consult an attorney or tax professional.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:**                **To Seller at:**

Phone: _____      Phone: _____

E-mail/Fax: nathan@milnerproperties.com     E-mail/Fax: eostrander@appmach.com

E-mail/Fax: _____     E-mail/Fax: _____

With a copy to Buyer's agent at:     With a copy to Seller's agent at:

Jasmin@JasminLye.com        Tilah@luxgrouptx.com

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☑ Third Party Financing Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Loan Assumption Addendum
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum for Coastal Area Property
- ☐ Addendum for Authorizing Hydrostatic Testing
- ☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
- ☐ Addendum for Reservation of Oil, Gas and Other Minerals
- ☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Seller's Temporary Residential Lease
- ☐ Short Sale Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- ☐ Addendum for Property in a Propane Gas System Service Area
- ☐ Addendum Regarding Residential Leases
- ☐ Addendum Regarding Fixture Leases
- ☐ Addendum for Section 1031 Exchange
- ☑ Other (list): Exhibit A

Initialed for identification by Buyer _MN_ and Seller _____     TREC NO. 25-16

JLA Realty    5332 FM 1960 E STE C HUMBLE, TX 77346    281-447-3811    Jasmin Lye     TXR 1701

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uvP9-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 _____ Page 9 of 11   11-04-2024
(Address of Property)

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                                     Seller's
Attorney is: fly.law@comcast.net                           Attorney is: _____

Phone: _____                             Phone: _____

Fax: _____                               Fax: _____

E-mail: _____                            E-mail: _____

EXECUTED the _____ day of  2/27/2025 _____, 20_____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

*Nathan Milner*                  dotloop verified
                                 02/27/25 3:54 PM CST
                                 DHHG-T8SQ-JOBG-5MPC
Buyer                                         Seller                            2/27/2025

Buyer                                         Seller                            2/27/2025

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-16. This form replaces TREC NO. 25-15.

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346        2817442611        Jasmin Lye        TREC NO. 25-16
                                                                                                     TXR 1701

Exhibit 15

dotloop signature verification: dtlp.us/RQEZ-uyP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

| Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316 | Page 10 of 11   11-04-2024 |
|---|---|
| (Address of Property) | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker ___2.5%___ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| Other Broker: | Listing Broker: |
|---|---|
| By: *Jasmin Lye* | By: *Tilah Spruel*   2/27/2025 |

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| JLA Realty | 9000562 | Connect Realty.com | 0573369 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Jasmin Lye | 660507 | Tilah Lee Spruel | 726680 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| | | Lux Group | |
| Team Name | | Team Name | |
| jasmin@jasminlye.com | 832-857-9394 | tilah@luxgrouptx.com | 702-408-4464 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| John Altic | | Mary Goudreault | 0538377 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 5332 FM 1960 E, STE C | | 2170 Buckthorne Place, Ste 200 | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| HUMBLE, TX 77346 | | The Woodlands, TX 77380 | |
| City | State   Zip | City | State   Zip |

represents  ☒ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

| | Selling Associate | License No. |
|---|---|---|
| | Team Name | |
| | Selling Associate's Email Address | Phone |
| | Licensed Supervisor of Selling Associate | License No. |
| | Selling Associate's Office Address | |
| | City   State   Zip | |

represents  ☒ Seller only
☐ Buyer only
☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☒ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $_____ or ☒ _2.5_ % of the total Sales Price; and (b) ☒ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $_____ or ☒ _2.5_ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**DO NOT SIGN IF THERE IS A SEPARATE AGREEMENT FOR PAYMENT OF BROKERS' FEES.** Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.

| *Seller signature* | 2/27/2025 | *Nathan Milner* |
|---|---|---|
| Seller | | Buyer |
| *Seller signature* | 2/27/2025 | |
| Seller | | Buyer |

| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye | TREC NO. 25-16 |
|---|---|---|---|---|
| | | | | TXR 1701 |

Exhibit 15

dotloop signature verification: dtlp.us/rR0JZ-uxP0-Z7WH
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Contract Concerning _5450 Honea Egypt Rd, Montgomery, TX 77316_____ age 11 of 11    11-04-2024
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $1,500.00 _____ (Option Fee) in the form of _____
is acknowledged.

| | |
|---|---|
| Escrow Agent | Date |

## EARNEST MONEY RECEIPT

Receipt of $68,000.00 _____ Earnest Money in the form of _____
is acknowledged.

| Escrow Agent | Received by | Email Address | Date/Time |
|---|---|---|---|
| Address | | | Phone |
| City | State | Zip | Fax |

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

| Escrow Agent | Received by | Email Address | Date |
|---|---|---|---|
| Address | | | Phone |
| City | State | Zip | Fax |

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $.00 _____ additional Earnest Money in the form of _____
is acknowledged.

| Escrow Agent | Received by | Email Address | Date/Time |
|---|---|---|---|
| Address | | | Phone |
| City | State | Zip | Fax |

Exhibit 15

dotloop signature verification: dtlp.us/5vZw-Rmfc-SzA9
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

# Exhibit A

Concerning property located at:

5450

~~5850~~ Honea Egypt Road, Montgomery, TX 77316

- All furnishings in bar
- Case JX95 Tractor with Brush Hog SN#33678
- Case 586 Forklift SD#76250-2
- 2/ea Kubota Zero Turn Diesel Mowers SN#53851 & 1229
- 1/ea Honda ATV (Green side by side)
- 500 Glon Diesel Fuel Tank on wheels
- Fertilizer Spreader
- One 60KW Diesel Generator SN #8800152
- 2/ea 5 Ton overhead cranes in Shop
- Challenger Car Lift
- Paint Booth
- 4/ea Cattle as present during showing
- 2/ea Donkeys as present during showing
- TVs in Bar
- Walk-in Cooler and Freezer in Barn
- Ice Maker in Barn

*Final bill of sale to be provided at closing and funding for all items noted above*

Buyer:

*Nathan Milner*

dotloop verified
02/27/25 3:54 PM CST
NSU3-WZVP-QBEK-TR9U

Seller:

Signed by:

95F5E0A46B13428...

2/27/2025

Signed by:

276F0E204FEB431...

2/27/2025

Exhibit 15

dotloop signature verification: dtlo.us/fSXt-2fJg-hEQs
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

11-04-2024



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT



5450 Honea Egypt Rd, Montgomery, TX 77316

(Street Address and City)

**1. TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

☒ A. CONVENTIONAL FINANCING:

    ☒ (1) A first mortgage loan in the principal amount of $4,760,000 (excluding any financed PMI premium), due in full in 30 year(s), with interest not to exceed 7% per annum for the first 30 year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed 1% of the loan.

    ☐ (2) A second mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $ _____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ C. FHA INSURED FINANCING: A Section _____ FHA insured loan of not less than $ _____(excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ D. VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed_____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ E. USDA GUARANTEED FINANCING: A USDA-guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ F. REVERSE MORTGAGE FINANCING: A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan. The reverse mortgage loan ☐ will ☐ will not be an FHA insured loan.

☐ G. OTHER FINANCING: A loan not of a type described above from _____ (name of lender) in the principal amount of $_____ due in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges not to exceed _____ % of the loan. Buyer ☐ does ☐ does not waive all rights to terminate the contract under Paragraph 2B of this addendum for the loan described in this paragraph.

**2. APPROVAL OF FINANCING**: Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

Initialed for identification by Buyer _____ and Seller _____

Initial   Initial

JLA Realty   5332 FM 1960 E STE C HUMBLE, TX 77346   2817442611   Jasmin Lye

TREC NO. 40-11
TXR 1901

Exhibit 15

dotloop signature verification: dtlp.us/f5Xt-2Fzp-hKOs
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

5450 Honea Egypt Rd, Montgomery, TX 77316
(Address of Property)

A. **BUYER APPROVAL** *(Check one box only)*:

☑ This contract is subject to Buyer obtaining Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may terminate this contract within ___30___ days after the Effective Date of the contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates the contract under this provision, this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not terminate the contract under Paragraph 2A, the contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.

☐ This contract is not subject to Buyer obtaining Buyer Approval.

B. PROPERTY APPROVAL: If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer may terminate this contract on or before the 3rd day before the Closing Date by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer. If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

3. **SECURITY**: If required by Buyer's lender, each note for the financing described above must be secured by vendor's and deed of trust liens.

4. **FHA/VA REQUIRED PROVISION**: If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirement in Paragraph 2B does not apply to this Paragraph 4.

A. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

B. If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

C. If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

5. **AUTHORIZATION TO RELEASE INFORMATION**:

A. Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.

B. Seller and Buyer authorize Buyer's lender, title company, and Escrow Agent to disclose and furnish a copy of the closing disclosures and settlement statements to the parties' respective brokers and sales agents provided under Broker Information.

| | | |
|---|---|---|
| *Nathan Milner* dotloop verified 02/27/25 3:54 PM CST 4YHU-JQZK-1OX5-5TCD | Signed by: ____ E0A46B13428... | 2/27/2025 |
| Buyer | Seller | |
| Buyer | Signed by: ____ 0E204FEB431... | 2/27/2025 |
| | Seller | |

**TREC**
TEXAS REAL ESTATE COMMISSION

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-11. This form replaces TREC No. 40-10.

| | | | | |
|---|---|---|---|---|
| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye | TREC NO. 40-11 TXR 1901 |

dotloop signature verification: dtlp.us/rU8S-nFAz-Itrt
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199



## TEXAS REALTORS

### SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2022

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT       **5450 Honea Egypt Road**
**Montgomery, Texas  77316**

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller __x__ is ___ is not  occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property? __ _____ (approximate date) or __ never occupied the Property

**Section 1.   The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)**
This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.

| Item | Y | N | U | Item | Y | N | U | Item | Y | N | U |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cable TV Wiring | x | | | Natural Gas Lines | | x | | Pump:  x  sump ___ grinder | x | | |
| Carbon Monoxide Det. | x | | | Fuel Gas Piping: | | x | | Rain Gutters | x | | |
| Ceiling Fans | x | | | -Black Iron Pipe | | x | | Range/Stove | x | | |
| Cooktop | x | | | -Copper | | x | | Roof/Attic Vents | x | | |
| Dishwasher | x | | | -Corrugated Stainless Steel Tubing | | x | | Sauna | | | x |
| Disposal | x | | | Hot Tub | | x | | Smoke Detector | x | | |
| Emergency Escape Ladder(s) | | | x | Intercom System | | x | | Smoke Detector - Hearing Impaired | | x | |
| Exhaust Fans | x | | | Microwave | x | | | Spa | x | | |
| Fences | x | | | Outdoor Grill | | x | | Trash Compactor | | x | |
| Fire Detection Equip. | x | | | Patio/Decking | x | | | TV Antenna | x | | |
| French Drain | x | | | Plumbing System | x | | | Washer/Dryer Hookup | x | | |
| Gas Fixtures | | | x | Pool | x | | | Window Screens | x | | |
| Liquid Propane Gas: | x | | | Pool Equipment | x | | | Public Sewer System | | x | |
| -LP Community (Captive) | | | x | Pool Maint. Accessories | x | | | | | | |
| -LP on Property | x | | | Pool Heater | x | | | | | | |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | x | | | ___ electric ___ gas  number of units: |
| Evaporative Coolers | | x | | number of units: |
| Wall/Window AC Units | x | | | number of units: 4 |
| Attic Fan(s) | x | | | if yes, describe: temperature controled exaust fans in attic |
| Central Heat | x | | | ___ electric x gas  number of units: 7 |
| Other Heat | x | | | if yes, describe: 4 Gree Mini Split AC/Heat Units |
| Oven | x | | | number of ovens: 5   ___ electric x gas x other: |
| Fireplace & Chimney | x | | | ___ wood x gas logs ___ mock ___ other: |
| Carport | x | | | ___ attached ___ not attached |
| Garage | x | | | x attached ___ not attached |
| Garage Door Openers | x | | | number of units: 2   number of remotes: 4 |
| Satellite Dish & Controls | | x | | ___ owned ___ leased from: |
| Security System | x | | | x owned ___ leased from: |

(TXR-1406) 07-10-23             Initialed by: Buyer: __NM__ , __ and Seller: __SL__ , _____                Page 1 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380
Tilah Lee Spruel
02/25/25
11:28 AM CST
Phone: 2813063020          Fax:                    5450 Honea Egypt
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com

Exhibit 15

dotloop signature verification: dtlp.us/rUBS-nFAz-forj
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

**5450 Honea Egypt Road**
Concerning the Property at _____ **Montgomery, Texas  77316**

| | | | | | |
|---|---|---|---|---|---|
| Solar Panels | | x | | ___ owned ___ leased from: | |
| Water Heater | x | | | x electric x gas  other: _____ number of units: 5 | |
| Water Softener | x | | | x owned ___ leased from: | |
| Other Leased Items(s) | | x | | if yes, describe: | |
| Underground Lawn Sprinkler | x | | | ___ automatic ___ manual  areas covered _____ | |
| Septic / On-Site Sewer Facility | x | | | if yes, attach Information About On-Site Sewer Facility (TXR-1407) | |

Water supply provided by: ___ city  x well ___ MUD ___ co-op ___ unknown ___ other: _____
Was the Property built before 1978? ___ yes  x no ___ unknown
  (If yes, complete, sign, and attach TXR-1906 concerning lead-based paint hazards).
Roof Type: ___Composite___ Age: _20yrs_ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering? ___ yes  x no ___ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? ___ yes  x no If yes, describe (attach additional sheets if necessary): _____
_____
_____

**Section 2.  Are you (Seller) aware of any defects or malfunctions in any of the following? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Item | Y | N | Item | Y | N | Item | Y | N |
|---|---|---|---|---|---|---|---|---|
| Basement | | x | Floors | | x | Sidewalks | | x |
| Ceilings | | x | Foundation / Slab(s) | | x | Walls / Fences | | x |
| Doors | | x | Interior Walls | | x | Windows | | x |
| Driveways | | x | Lighting Fixtures | | x | Other Structural Components | | x |
| Electrical Systems | | x | Plumbing Systems | | x | | | |
| Exterior Walls | | x | Roof | | x | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____
_____
_____

**Section 3.  Are you (Seller) aware of any of the following conditions? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Condition | Y | N | Condition | Y | N |
|---|---|---|---|---|---|
| Aluminum Wiring | | x | Radon Gas | | x |
| Asbestos Components | | x | Settling | | x |
| Diseased Trees: ___ oak wilt ___ | | x | Soil Movement | | x |
| Endangered Species/Habitat on Property | | x | Subsurface Structure or Pits | | x |
| Fault Lines | | x | Underground Storage Tanks | | x |
| Hazardous or Toxic Waste | | x | Unplatted Easements | | x |
| Improper Drainage | | x | Unrecorded Easements | | x |
| Intermittent or Weather Springs | | x | Urea-formaldehyde Insulation | | x |
| Landfill | | x | Water Damage Not Due to a Flood Event | | x |
| Lead-Based Paint or Lead-Based Pt. Hazards | | x | Wetlands on Property | | x |
| Encroachments onto the Property | | x | Wood Rot | | x |
| Improvements encroaching on others' property | | x | Active infestation of termites or other wood destroying insects (WDI) | | x |
| Located in Historic District | | x | Previous treatment for termites or WDI | | x |
| Historic Property Designation | | x | Previous termite or WDI damage repaired | | x |
| Previous Foundation Repairs | | x | Previous Fires | | x |

(TXR-1406) 07-10-23      Initialed by: Buyer: _NM_ , _____ and Seller: _SH_ , _____      Page 2 of 7

Exhibit 15

dotloop signature verification: dtlp.us/rUBS-nFAz-Ibri
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Concerning the Property at _____  **5450 Honea Egypt Road**
**Montgomery, Texas  77316**

| Previous Roof Repairs | | | Termite or WDI damage needing repair | x |
|---|---|---|---|---|
| Previous Other Structural Repairs | | x | Single Blockable Main Drain in Pool/Hot Tub/Spa* | x |
| Previous Use of Premises for Manufacture of Methamphetamine | | x | | |

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____

Fire damaged water well tank, softer/filtration system and window.  Water well tank, piping, electrical, softener/filter replaced Jan 2024

_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.  Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice?** ___ yes  x no  If yes, explain (attach additional sheets if necessary): _____

_____

**Section 5.  Are you (Seller) aware of any of the following conditions?*** (Mark Yes (Y) if you are aware and check wholly or partly as applicable. Mark No (N) if you are not aware.)

**Y   N**

___ x   Present flood insurance coverage.

___ x   Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir.

___ x   Previous flooding due to a natural flood event.

___ x   Previous water penetration into a structure on the Property due to a natural flood.

x ___   Located ___ wholly  x partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE, AO, AH, VE, or AR).

___ x   Located ___ wholly  ___ partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded)).

___ x   Located ___ wholly  ___ partly in a floodway.

___ x   Located ___ wholly  ___ partly in a flood pool.

___ x   Located ___ wholly  ___ partly in a reservoir.

If the answer to any of the above is yes, explain (attach additional sheets as necessary): _____

_____

***If Buyer is concerned about these matters, Buyer may consult Information About Flood Hazards (TXR 1414).**

*For purposes of this notice:*

*"100-year floodplain" means any area of land that: (A)  is identified on the flood insurance rate map as a special flood hazard area, which is designated as Zone A, V, A99, AE, AO, AH, VE, or AR on the map; (B)  has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and (C)  may include a regulatory floodway, flood pool, or reservoir.*

*"500-year floodplain" means any area of land that: (A)  is identified on the flood insurance rate map as a moderate flood hazard area, which is designated on the map as Zone X (shaded); and (B)  has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate risk of flooding.*

*"Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers.*

(TXR-1406) 07-10-23          Initialed by: Buyer: [signature]  and Seller: [signature] , _____          Page 3 of 7

Exhibit 15

dotloop signature verification: dtlp.us/rUBS-nFAz-lbtj
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Concerning the Property at **5450 Honea Egypt Road**
_____ **Montgomery, Texas  77316**

*"Flood insurance rate map"* means the most recent flood hazard map published by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).

*"Floodway"* means an area that is identified on the flood insurance rate map as a regulatory floodway, which includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation more than a designated height.

*"Reservoir"* means a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land.

**Section 6. Have you (Seller) ever filed a claim for flood damage to the Property with any insurance provider, including the National Flood Insurance Program (NFIP)?*** __ yes  x  no  If yes, explain (attach additional sheets as necessary): _____

_____

*Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s).

**Section 7. Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the Property?** __ yes  x  no  If yes, explain (attach additional sheets as necessary): _____

_____

**Section 8. Are you (Seller) aware of any of the following? (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)**

**Y   N**

__ _x_   Room additions, structural modifications, or other alterations or repairs made without necessary permits, with unresolved permits, or not in compliance with building codes in effect at the time.

__ _x_   Homeowners' associations or maintenance fees or assessments. If yes, complete the following:
Name of association: _____
Manager's name: _____ Phone: _____
Fees or assessments are: $ _____ per _____ and are: __ mandatory __ voluntary
Any unpaid fees or assessment for the Property? __ yes ($ _____ ) __ no
If the Property is in more than one association, provide information about the other associations below or attach information to this notice.

__ _x_   Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following:
Any optional user fees for common facilities charged? __ yes __ No If yes, describe: _____

_____

__ _x_   Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

__ _x_   Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.)

__ _x_   Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property.

__ _x_   Any condition on the Property which materially affects the health or safety of an individual.

__ _x_   Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold.
If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation).

__ _x_   Any rainwater harvesting system located on the Property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source.

(TXR-1406) 07-10-23   Initialed by: Buyer: _____ _____ and Seller: _____ , _____   Page 4 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                                    Phone: 281306.3020   Fax:            5450 Honea Egypt
Tilah Lee Spruel                           Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 15

dotloop signature verification: dtlp.us/rU8S-nFAz-Idr1
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

**5450 Honea Egypt Road**

Concerning the Property at _____ **Montgomery, Texas  77316**

__ x __ The Property is located in a propane gas system service area owned by a propane distribution system retailer.

__ x __ Any portion of the Property that is located in a groundwater conservation district or a subsidence district.

If the answer to any of the items in Section 8 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____
_____
_____

**Section 9. Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections?** _x_ yes __ no  If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*Note:  A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 10. Check any tax exemption(s) which you (Seller) currently claim for the Property:**
__ Homestead                 __ Senior Citizen                 __ Disabled
__ Wildlife Management    _x_ Agricultural                  __ Disabled Veteran
__ Other: _____              __ Unknown

**Section 11. Have you (Seller) ever filed a claim for damage, other than flood damage, to the Property with any insurance provider?** _x_ yes __ no

**Section 12. Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made?** __ yes _x_ no If yes, explain: _____
_____
_____

**Section 13. Does the Property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?*** __ unknown __ no _x_ yes. If no or unknown, explain. (Attach additional sheets if necessary): _____
_____

*\*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

(TXR-1406) 07-10-23      Initialed by Buyer: _____, _____ and Seller: _____, _____      Page 5 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                                           Phone: 2813063020          Fax:                    5450 Honea Egypt
Tilah Lee Spruel                                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com

Exhibit 15

dotloop signature verification: dtlp.us/rUBS-nFAz-fbY
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

**5450 Honea Egypt Road**
Concerning the Property at _____ **Montgomery, Texas  77316**

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

_____   2/1/2024   _____
Signature of Seller                                  Date   Signature of Seller                                  Date

Printed Name: _____   Printed Name: _____

**ADDITIONAL NOTICES TO BUYER:**

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit https://publicsite.dps.texas.gov. For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the Property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the Property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If the Property is located in a seacoast territory of this state designated as a catastrophe area by the Commissioner of the Texas Department of Insurance, the Property may be subject to additional requirements to obtain or continue windstorm and hail insurance. A certificate of compliance may be required for repairs or improvements to the Property. For more information, please review *Information Regarding Windstorm and Hail Insurance for Certain Properties* (TXR 2518) and contact the Texas Department of Insurance or the Texas Windstorm Insurance Association.

(4) This Property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations. Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

(5) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(6) The following providers currently provide service to the Property:

Electric: Champion Energy _____   phone #: _____
Sewer: N/A _____   phone #: _____
Water: N/A _____   phone #: _____
Cable: N/A _____   phone #: _____
Trash: Republic _____   phone #: _____
Natural Gas: N/A _____   phone #: _____
Phone Company: N/A _____   phone #: _____
Propane: Amerigas _Bulk Delivery _____   phone #: _____
Internet: TMobile 5G _____   phone #: _____

(TXR-1406) 07-10-23      Initialed by: Buyer: _____ and Seller: _____ , _____      Page 6 of 7

Exhibit 15

dotloop signature verification: dtlp.us/rUBS-nFAz-Ibtj
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Concerning the Property at _____ **5450 Honea Egypt Road**
**Montgomery, Texas 77316**

(7) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

*Nathan Milner*

dotloop verified
03/25/25 11:28 AM CST
DFZ3-DUJj-QYUM-WASU

_____ _____     _____ _____
Signature of Buyer          Date      Signature of Buyer          Date

Printed Name: Escaped Chicken LLC     Printed Name: _____

(TXR-1406) 07-10-23     Initialed by: Buyer: [NM] _____ and Seller: [SF] , _____     Page 7 of 7

03/25/25
11:28 AM CST
dotloop verified

**Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380**     Phone: 281.306.3020     Fax:     5450 Honea Egypt
**Tilah Lee Spruel**     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com

Exhibit 15

dotloop signature verification: dtlp.us/rPWG-k31X-o5ze
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199



# TEXAS REALTORS

## INFORMATION ABOUT SPECIAL FLOOD HAZARD AREAS

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2021

CONCERNING THE PROPERTY AT 5450 Honea Egypt Rd, Montgomery, TX 77316

**A. FLOOD AREAS:**

(1) The Federal Emergency Management Agency (FEMA) designates areas that have a high risk of flooding as special flood hazard areas.

(2) A property that is in a special flood hazard area is designated on flood insurance rate maps with a zone beginning in a "V" or "A". Both V-Zone and A-Zone areas indicate a high risk of flooding.

(3) Some properties may also lie in the "floodway" which is the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge a flood under FEMA rules. Communities must regulate development in these floodways.

**B. AVAILABILITY OF FLOOD INSURANCE:**

(1) Generally, flood insurance is available regardless of whether the property is located in or out of a special flood hazard area. Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested.

(2) FEMA encourages every property owner to purchase flood insurance regardless of whether the property is in a high, moderate, or low risk flood area.

(3) A homeowner may obtain flood insurance coverage (up to certain limits) through the National Flood Insurance Program. Supplemental coverage is available through private insurance carriers.

(4) A mortgage lender making a federally related mortgage will require the borrower to maintain flood insurance if the property is in a special flood hazard area.

**C. GROUND FLOOR REQUIREMENTS:**

(1) Many homes in special flood hazard areas are built-up or are elevated. In elevated homes the ground floor typically lies below the base flood elevation and the first floor is elevated on piers, columns, posts, or piles. The base flood elevation is the highest level at which a flood is likely to occur as shown on flood insurance rate maps.

(2) Federal, state, county, and city regulations:

(a) restrict the use and construction of any ground floor enclosures in elevated homes that are in special flood hazard areas.

(b) may prohibit or restrict the remodeling, rebuilding, and redevelopment of property and improvements in the floodway.

(3) The first floor of all homes must now be built above the base flood elevation.

(a) Older homes may have been built in compliance with applicable regulations at the time of construction and may have first floors that lie below the base flood elevation, but flood insurance rates for such homes may be significant.

---

(TXR 1414) 10-19-2021 | Page 1 of 3

| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye |



dotloop signature verification: dtlp.us/r9MG-k3tX-o6ze
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Information about Special Flood Hazard Areas concerning 5450 Honea Egypt Rd, Montgomery, TX 77316

    (b) It is possible that modifications were made to a ground floor enclosure after a home was first built. The modifications may or may not comply with applicable regulations and may or may not affect flood insurance rates.

    (c) It is important for a buyer to determine if the first floor of a home is elevated at or above the base flood elevation.  It is also important for a buyer to determine if the property lies in a floodway.

(4) Ground floor enclosures that lie below the base flood elevation may be used only for: (i) parking; (ii) storage; and (iii) building access.  Plumbing, mechanical, or electrical items in ground floor enclosures that lie below the base flood elevation may be prohibited or restricted and may not be eligible for flood insurance coverage.  Additionally:

    (a) in A-Zones, the ground floor enclosures below the base flood elevation must have flow-through vents or openings that permit the automatic entry and exit of floodwaters;

    (b) in V-Zones, the ground floor enclosures must have break-away walls, screening, or lattice walls; and

    (c) in floodways, the remodeling or reconstruction of any improvements may be prohibited or otherwise restricted.

**D. COMPLIANCE:**

(1) The above-referenced property may or may not comply with regulations affecting ground floor enclosures below the base flood elevation.

(2) A property owner's eligibility to purchase or maintain flood insurance, as well as the cost of the flood insurance, is dependent on whether the property complies with the regulations affecting ground floor enclosures.

(3) A purchaser or property owner may be required to remove or modify a ground floor enclosure that is not in compliance with city or county building requirements or is not entitled to an exemption from such requirements.

(4) A flood insurance policy maintained by the current property owner does not mean that the property is in compliance with the regulations affecting ground floor enclosures or that the buyer will be able to continue to maintain flood insurance at the same rate.

(5) Insurance carriers calculate the cost of flood insurance using a rate that is based on the elevation of the lowest floor.

    (a) If the ground floor lies below the base flood elevation and does not meet federal, state, county, and city requirements, the ground floor will be the lowest floor for the purpose of computing the rate.

    (b) If the property is in compliance, the first elevated floor will be the lowest floor and the insurance rate will be significantly less than the rate for a property that is not in compliance.

    (c) If the property lies in a V-Zone the flood insurance rate will be impacted if a ground floor enclosure below the base flood elevation exceeds 299 square feet (even if constructed with break-away walls).

JLA Realty           5332 FM 1960 E STE C HUMBLE, TX 77346           2817442611           Jasmin Lye


Exhibit 15

dotloop signature verification: dtlp.us/rPWG-k31X-o5ze
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Information about Special Flood Hazard Areas concerning 5450 Honea Egypt Rd, Montgomery, TX 77316

### E. ELEVATION CERTIFICATE:

The elevation certificate is an important tool in determining flood insurance rates. It is used to provide elevation information that is necessary to ensure compliance with floodplain management laws. To determine the proper insurance premium rate, insurers rely on an elevation certificate to certify building elevations at an acceptable level above flood map levels. If available in your area, it is recommended that you obtain an elevation certificate for the property as soon as possible to accurately determine future flood insurance rates.

**You are encouraged to: (1) inspect the property for all purposes, including compliance with any ground floor enclosure requirement; (2) review the flood insurance policy (costs and coverage) with your insurance agent; and (3) contact the building permitting authority if you have any questions about building requirements or compliance issues.**

Receipt acknowledged by:

| | |
|---|---|
| *Nathan Milner* | dotloop verified<br>02/25/25 11:49 AM CST<br>KOWR-GHXM-RN7B-UGOM |

| Signature | Date | Signature | Date |
|---|---|---|---|

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye

Exhibit 15

dotloop signature verification: dtlp.us/Hzvq-uBQ1-JkOR
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199



**TEXAS REALTORS**

## INFORMATION ABOUT ON-SITE SEWER FACILITY
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2004

CONCERNING THE PROPERTY AT     **5450 Honea Egypt Road**
**Montgomery, Texas  77316**

**A.  DESCRIPTION OF ON-SITE SEWER FACILITY ON PROPERTY:**

(1)  Type of Treatment System: ☒ Septic Tank  ☒ Aerobic Treatment       ☐ Unknown

(2)  Type of Distribution System: **Sprinklers, Leach Lines (2 Systems)**       ☐ Unknown

(3)  Approximate Location of Drain Field or Distribution System: _____  ☐ Unknown
**Southside of Main House : Aerobic System**
**Northside of Barndominium : Leach Line System**
_____

(4)  Installer: _____       ☒ Unknown

(5)  Approximate Age: **15 Years** _____       ☐ Unknown

**B.  MAINTENANCE INFORMATION:**

(1)  Is Seller aware of any maintenance contract in effect for the on-site sewer facility?  ☒ Yes  ☐ No
If yes, name of maintenance contractor: **Coast to Coast** _____
Phone: **(936)894-0752** _____  contract expiration date: _____
*Maintenance contracts must be in effect to operate aerobic treatment and certain non-standard" on-site
sewer facilities.)*

(2)  Approximate date any tanks were last pumped? _____  **April 30, 2021**

(3)  Is Seller aware of any defect or malfunction in the on-site sewer facility?    ☐ Yes  ☒ No
If yes, explain: _____
_____
_____
_____

(4)  Does Seller have manufacturer or warranty information available for review?    ☐ Yes  ☐ No

**C.  PLANNING MATERIALS, PERMITS, AND CONTRACTS:**

(1)  The following items concerning the on-site sewer facility are attached:
☐ planning materials ☐ permit for original installation ☐ final inspection when OSSF was installed
☐ maintenance contract ☐ manufacturer information ☐ warranty information ☐
_____

(2)  "Planning materials" are the supporting materials that describe the on-site sewer facility that are
submitted to the permitting authority in order to obtain a permit to install the on-site sewer facility.

(3)  **It may be necessary for a buyer to have the permit to operate an on-site sewer facility
transferred to the buyer.**

(TXR-1407) 1-7-04       Initialed for Identification by Buyer _____ and Seller _____ , _____       Page 1 of 2

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                    Phone: 2813063020          Fax:                 5450 Honea Egypt
Tilah Lee Spruel                         Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

**Exhibit 15**

dotloop signature verification: dtlp.us/HZvq-uBQ1-iKOR
Docusign Envelope ID: 831384E4-94CF-4A48-9809-2FDE96C09199

Information about On-Site Sewer Facility concerning   **5450 Honea Egypt Road**
**Montgomery, Texas  77316**

**D. INFORMATION FROM GOVERNMENTAL AGENCIES:** Pamphlets describing on-site sewer facilities are available from the Texas Agricultural Extension Service. Information in the following table was obtained from Texas Commission on Environmental Quality (TCEQ) on 10/24/2002. The table estimates daily wastewater usage rates. Actual water usage data or other methods for calculating may be used if accurate and acceptable to TCEQ.

| Facility | Usage (gal/day) without water-saving devices | Usage (gal/day) with water-saving devices |
|---|---|---|
| Single family dwelling (1-2 bedrooms; less than 1,500 sf) | 225 | 180 |
| Single family dwelling (3 bedrooms; less than 2,500 sf) | 300 | 240 |
| Single family dwelling (4 bedrooms; less than 3,500 sf) | 375 | 300 |
| Single family dwelling (5 bedrooms; less than 4,500 sf) | 450 | 360 |
| Single family dwelling (6 bedrooms; less than 5,500 sf) | 525 | 420 |
| Mobile home, condo, or townhouse (1-2 bedroom) | 225 | 180 |
| Mobile home, condo, or townhouse (each add'l bedroom) | 75 | 60 |

**This document is not a substitute for any inspections or warranties. This document was completed to the best of Seller's knowledge and belief on the date signed. Seller and real estate agents are not experts about on-site sewer facilities. Buyer is encouraged to have the on-site sewer facility inspected by an inspector of Buyer's choice.**

2/6/2024
_____          _____
Signature of Seller                        Date          Signature of Seller                        Date
**Alliance Farm & Ranch Llc**

Receipt acknowledged by:

_____
Nathan Milner
dotloop verified
02/27/25 3:54 PM CST
UWHU-8QWR-5NLM-ZD4H

_____          _____
Signature of Buyer                        Date          Signature of Buyer                        Date

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                    Phone: 2813063020          Fax:                    5450 Honea Egypt
Tilah Lee Spruel                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 15

Messages - Erik Ostrander

iMessage
8/31/2022 3:41:09 PM

I had to pick and choose items that weren't back ordered a year

8/31/2022 3:40:40 PM

Furniture ordered… should be moved by end of the month

8/31/2022 3:37:44 PM

I hope you ordered furniture, we're having to wait 6-8 months for some of my wife's new bullshit

8/31/2022 3:35:12 PM

You get moved in that house yet?

Exhibit 13

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.08, 15:28 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Messages - Erik Ostrander

iMessage
5/22/2024 9:26:12 PM

Ok

5/22/2024 9:08:04 PM

We know where we're at, talk to me before you sell your soul to a devil.

5/22/2024 7:38:04 PM

Working on it for the last 30 days.. he says we can have it closed in 3-5 weeks

5/22/2024 7:36:38 PM

I get you dude. I'm in process of a refi to get you squared up.

5/22/2024 7:19:20 PM

So here's the deal, iv'e been getting some heat at home over the deal, we both say you got the price too high to sell, in the meantime we got in round numbers a 170k penalty plus something like 55k a month from our financing documents that you signed when we closed. We need some cash now to buy an October 1 conclusion . So like 280k pretty soon. Or half now and work on accumulating balance later. Let me know. I'm pretty sure October 1 is deadline. Sorry man I'm a lot softer than her.

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.08, 14:07 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Exhibit 13

Messages - Erik Ostrander

iMessage
10/14/2024 5:57:16 PM

Are you going to be around tomorrow? We're open to trying to work out a solution somewhere in the middle. I have a noon lunch meeting and when it's over I have time.

10/14/2024 6:19:11 PM

Yup

10/14/2024 6:19:33 PM

I'll make time

10/14/2024 6:40:09 PM

I'm guess sometime after 2 tomorrow, barn bar?

10/14/2024 8:38:29 PM



10/15/2024 1:47:04 PM

I'm leaving my spring office now.  Be back in 40 min

10/15/2024 1:54:54 PM

Be there at 3

10/15/2024 1:58:25 PM

Ok

**Exhibit 5**

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 14:19 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Messages - Erik Ostrander

10/15/2024 4:00:14 PM



10/16/2024 11:20:47 AM

I'd need a few weeks to see what comes in on payables. Sent payments out yesterday to vendors and contractors

10/16/2024 11:45:13 AM

Start packing

10/16/2024 12:06:23 PM

Loan is going through

11/21/2024 12:15:30 PM

I have a closing date of dec 19th. Pay you balance on note  plus back interest since April. Need to ask to push Back forclosure to Jan.

11/21/2024 12:37:25 PM

I don't believe you anymore

11/21/2024 12:37:56 PM

Dude I swear to god

11/21/2024 1:15:30 PM



**Exhibit 5**



Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 14:19 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Messages - Erik Ostrander

11/21/2024 1:16:37 PM

Sent

11/21/2024 1:16:58 PM

Only email I had was you work email

11/21/2024 1:43:14 PM

Lost u

11/21/2024 5:22:05 PM

Can we come to an agreement?

11/21/2024 5:48:26 PM

Best deal I can do, put up 100k with my attorney non refundable by Wed next week, agree to a 4.5 payoff at closing.

11/21/2024 5:48:45 PM

Ok

11/21/2024 5:49:12 PM

Can you have you're lawyer draw that up

11/21/2024 5:49:41 PM

I'll send u the money tomorrow

11/21/2024 5:59:08 PM

Will do.

11/21/2024 5:59:38 PM

Thank you

11/21/2024 6:31:10 PM

I'm glad we could work it out, you got a solid buyer.

11/21/2024 6:54:24 PM

Your generosity won't go unnoticed... I think you man

**Exhibit 5**


Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 14:19 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Page 3 of 4

Messages - Erik Ostrander

11/21/2024 6:54:30 PM

Thank

11/22/2024 4:01:49 PM

Wire sent

11/27/2024 9:08:59 PM

I signed the agreement and sent to my lawyer. Just fyi.

Exhibit 5

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 14:19 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Messages - Erik Ostrander

iMessage
8/26/2024 10:46:29 AM

How's your finance deal coming along?

8/26/2024 11:34:13 AM

Broker told me Friday it should be all done this week

8/26/2024 11:58:04 AM

Good news. Let me know when you got the money, we can figure the settlement amount and I'll get the attorney to prepare the release of lien.

8/26/2024 11:58:32 AM

10-4

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 14:37 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

Exhibit 14

Messages - Erik Ostrander

iMessage
3/22/2024 1:17:21 AM

Darla and I got to talking
earlier, here's the deal so you understand it and you don't have to call
and bullshit me anymore. On April 1 we need 500k, your new balance
will be 4.5 mil at 15% and you got 6 months to pay the 4.5. Monthly
payment is 56,250. Try to find the money owed April 1. If not make sure
all my equipment is still there.

3/22/2024 1:18:23 AM

Wow

3/22/2024 1:20:15 AM

Wasn't bullshitting you.
But no worries

3/22/2024 1:21:14 AM



3/22/2024 1:38:40 AM

You awake? Or did you just sent that so I'd see it in the morning ?  I'm
up if you wanna talk

3/22/2024 1:59:56 AM

I'll call you on my way to El Paso in the morning, the deal was pay April
1, I think we're not being greedy and not trying to take it all.

3/22/2024 9:42:28 AM

Called you back. Goes to VM

Exhibit 5

Exported from: Jerods iPhone 13 Pro Max (K2GG2DGTH9) on 2025.04.18, 16:53 with iMazing 3.1.2 by DigiDNA
Database date when extracted: 2025.04.03, 12:41
Backup checksum: 24E80617589C0174778D39DA3A314C0BDACC024A3DB5B947BA78FF0250428694

**GLADIATOR HOME SECURITY**

20102 Gunters Ridge Dr.
Spring, TX 77379
info@gladiatorhomesecurity.com
(832) 559-3489

BILLED TO:

Jerod Furr
5450 Honea Egypt Rd
Montgomery, TX, 77316
jerod.furr@alliance-energy.org

| Date | Invoice | Amount | Description |
|------|---------|--------|-------------|
| 04/03/22 | | $8,246.47 | Main House |
| 04/03/22 | | $2,904.38 | Back Barn |
| 04/03/22 | | $606.19 | Apartment |
| 04/03/22 | | $7,026.50 | Shop |
| 04/03/22 | | $1,700.61 | Gate |
| | | **$20,484.15** | **Total** |

Quotes signed by owner Michael Ezzelle

Exhibit 16
Exhibit 5

| | QUOTE | | |
|---|---|---|---|



| FROM: | | | TO: | | |
|---|---|---|---|---|---|
| **GLADIATOR HOME SECURITY**<br>20102 Gunters Ridge Dr.<br>Spring, TX 77379<br>832-559-3489<br>info@gladiatorhomesecurity.com | | | **Jerod Furr**<br>5450 Honea Egypt Road<br>Montgomery, Texas 77316<br>281-222-8366<br>jerod.furr@alliance-energy.org | | |

| Item Descripton | Price | Quantity | Total |
|---|---|---|---|
| **MAIN HOUSE** | | | |
| **ALARM** | | | |
| 2 GIG Edge Touchscreen Alarm Keypad | $199.00 | 1 | $199.00 |
| 2 GIG Edge Touchscreen Secondary Alarm Keypad | $125.00 | 1 | $125.00 |
| 2 GIG  345mhz Takeover Module | $65.00 | 1 | $65.00 |
| Verizon LTE Cellular Module | $119.00 | 1 | $119.00 |
| One-  time Cellular Activaton | | | $149.00 |
| **CAMERAS** | | | |
| 6MP IP Dome/Turret Camera | $255.00 | 12 | $3,060.00 |
| 64 Channel NVR | $965.00 | 1 | $965.00 |
| 10TB Western Digital Purple Survelliance HDD | $649.00 | 1 | $649.00 |
| Wireless Bridge (get signal from remote stations, ie shop) | $179.00 | 2 | $358.00 |
| 24 Port POE Switch | $245.00 | 1 | $245.00 |
| Router (keeps Camera system separate from home network ) | $129.00 | 1 | $129.00 |
| Installation, New Wiring, Set-up and Configuration | | | $1,500.00 |
| | | | |
| | | | |
| First Month of Alarm Monitoring | | | $54.99 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Subtotal | | | $7,617.99 |
| Tax | | | $628.48 |
| | QUOTE TOTAL | | $8,246.47 |

| NOTES: | | | |
|---|---|---|---|
| | | | |

Micheal Ezzelle
Owner

04/03/2022
Date

Exhibit 16
Exhibit 5

| QUOTE | | | |
|---|---|---|---|
| **FROM:** | | **TO:** | |



**GLADIATOR HOME SECURITY**
20102 Gunters Ridge Dr.
Spring, TX 77379
832-559-3489
info@gladiatorhomesecurity.com

**Jerod Furr**
5450 Honea Egypt Road
Montgomery, Texas 77316
281-222-8366
jerod.furr@alliance-energy.org

| Item Descripton | Price | Quantity | Total |
|---|---|---|---|
| **BACK BARN** | | | |
| 6MP IP Dome/Turret Camera | $255.00 | 6 | $1,530.00 |
| 8 Port POE Switch | $95.00 | 1 | $95.00 |
| 16" X 16" Plastic NEMA Enclosure Box | $79.00 | 1 | $79.00 |
| Wireless Nanostation (sends signal to Main House) | $179.00 | 1 | $179.00 |
| Installation, Set-up and Configuration | | | $800.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Subtotal | | | $2,683.00 |
| Tax | | | $221.38 |
| | | QUOTE TOTAL | $2,904.38 |

| NOTES: |
|---|
| |

_Micheal Ezzelle signature_
Micheal Ezzelle
Owner

04/03/2022
Date

Exhibit 16
Exhibit 5

| QUOTE | | | |
|---|---|---|---|
| **FROM:** | | **TO:** | |

**GLADIATOR HOME SECURITY**
20102 Gunters Ridge Dr.
Spring, TX 77379
832-559-3489
info@gladiatorhomesecurity.com



**Jerod Furr**
5450 Honea Egypt Road
Montgomery, Texas 77316
281-222-8366
jerod.furr@alliance-energy.org

| Item Descripton | Price | Quantity | Total |
|---|---|---|---|
| **APARTMENT** | | | |
| 2 GIG Edge Touchscreen Alarm Keypad | $199.00 | 1 | $199.00 |
| 2 GIG Wireless Door Contact | $39.00 | 2 | $78.00 |
| 2 GIG Wireless Motion Detector | $79.00 | 1 | $79.00 |
| One-Time Cellular Activation Fee | | | $149.00 |
| First Month Monitoring | | | $54.99 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal | $559.99 |
| | | Tax | $46.20 |
| | | QUOTE TOTAL | $606.19 |

| NOTES: |
|---|
| |

_Micheal Ezzelle_
Micheal Ezzelle
Owner

_04 / 03 / 2022_
Date

Exhibit 16
Exhibit 5



| QUOTE | | | |
|---|---|---|---|
| **FROM:** | | **TO:** | |
| **GLADIATOR HOME SECURITY** | | **Jerod Furr** | |
| 20102 Gunters Ridge Dr. | | 5450 Honea Egypt Road | |
| Spring, TX 77379 | | Montgomery, Texas 77316 | |
| 832-559-3489 | | 281-222-8366 | |
| info@gladiatorhomesecurity.com | | jerod.furr@alliance-energy.org | |

| Item Descripton | Price | Quantity | Total |
|---|---|---|---|
| **SHOP** | | | |
| 2 GIG Edge Touchscreen Alarm Keypad | $199.00 | 1 | $199.00 |
| 2 GIG Wireless Door Contact | $39.00 | 3 | $117.00 |
| Overhead Roll-up Door Contacts | $139.00 | 3 | $417.00 |
| One-Time Cellular Activation Fee | | | $149.00 |
| First Month Monitoring | | | $54.99 |
| **CAMERAS** | | | |
| 6MP IP Dome/Turret Camera | $255.00 | 16 | $4,080.00 |
| 24 Port POE Switch | $245.00 | 1 | $245.00 |
| Wireless Nanostation (sends signal to Main House) | $179.00 | 1 | $179.00 |
| Installation, Set-up and Configuration | | | $1,500.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Subtotal | | | $6,490.99 |
| Tax | | | $535.51 |
| | | QUOTE TOTAL | $7,026.50 |

| NOTES: |
|---|
| |

_Micheal Ezzelle_
Micheal Ezzelle
Owner

_04/03/2022_
Date

Exhibit 16
Exhibit 5

## QUOTE

| FROM: | | TO: |
|---|---|---|
| **GLADIATOR HOME SECURITY**<br>20102 Gunters Ridge Dr.<br>Spring, TX 77379<br>832-559-3489<br>info@gladiatorhomesecurity.com |  | **Jerod Furr**<br>5450 Honea Egypt Road<br>Montgomery, Texas 77316<br>281-222-8366<br>jerod.furr@alliance-energy.org |

| Item Descripton | Price | Quantity | Total |
|---|---|---|---|
| **GATE** | | | |
| 6MP IP Dome Turret Camera | $255.00 | 1 | $255.00 |
| IP LPR Licence Plate Camera with Motorized Zoom | $459.00 | 1 | $459.00 |
| 5 Port POE Switch | $79.00 | 1 | $79.00 |
| 12" X 12" Plastic NEMA Enclosure | $99.00 | 1 | $99.00 |
| Wireless Nanostation | $179.00 | 1 | $179.00 |
| Installation, Set-up and Configuration | | | $500.00 |
| | | | |
| Subtotal | | | $1,571.00 |
| Tax | | | $129.61 |
| | QUOTE TOTAL | | $1,700.61 |

## NOTES:

_Micheal Ezzelle_
Micheal Ezzelle
Owner

04/23/2022
Date

Exhibit 16
Exhibit 5

**ARROYO'S REMODELING**

6910 Skyline Park Dr
Katy, TX, 77449
arroyos-remodeling.com
(281) 620-2340

BILLED TO:

Jerod Furr
5450 Honea Egypt Rd
Montgomery, TX, 77316
jerod.furr@alliance-energy.org

| Date | Invoice | Amount | Description |
|------|---------|--------|-------------|
| **06/19/22** | **62** | $24,575.00 | Plumbing, sheetrock, electrical |
| | | $4,375.00 | Install five SCHLAGE door locks with padlock |
| | | $805.00 | 48' x 66' picture window |
| **06/23/22** | **63** | $38,500.00 | Wood floor, MAPEI ECO 995 glue, red oak shoe mold, float bags |
| | | $15,750.00 | Wood floor preparation and install |
| **07/26/22** | **66** | $11,350.00 | Guest shower |
| **07/26/22** | **67** | $28,350.00 | Paint french doors, framing, electrical, AC vents, window 24" x 36" |
| **08/21/22** | **68** | $43,150.00 | Carpentry, stain, paint |
| **09/13/22** | **69** | $9,900.00 | Floor tile installation Re Master bathroom, master closets, guest bathroom, hallway bathroom, laundry |
| **09/13/22** | **70** | $26,165.00 | Granite installation |
| **09/13/22** | **71** | $24,860.00 | Paint, electrical, plumbing |
| **11/14/22** | **76** | $1,550.00 | Old house repairs and new house items |
| | | **$229,330.00** | **Total** |

Exhibit 16
Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 62 | 6910 Skyline Park Dr |
| Date: | 06/19/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 06/26/2022 | 281-620-2340 |

Bill To:   ALLIANCE ENERGY JAROD
jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| PLUMBING, SHEETROCK, ELECTRICAL | 1 | $24,575.00 | $24,575.00 |
| INSTALL FIVE SCHLAGE DOOR LOCKS WITH PADLOCK | 1 | $4,375.00 | $4,375.00 |
| 48'X66' PICTURE WINDOW | 1 | $805.00 | $805.00 |

Install 25 sheets of drywall on master bathroom ,tape,float and light texture

Install 4 sheets of drywall on entry hall way, tape, float and light texture

Install 1 sheet of drywall on bedroom #2 , tape float and light texture

install 3 sheets of drywall on office ,tape, float and light texture

install 6 sheets of drywall on living room walls ,tape,float and light texture

Install 8 sheets of drywall on living room ceiling ,tape,float and texture

install six sheets of drywall on kitchen ceiling ,tape,float and texture

install 15 sheets of drywall on laundry,tape,float and texture

install 4 sheets of drywall on hallway bathroom,tape,float and light texture

install 5 sheets of drywall on guest bathroom,tape,float and texture

install 16 sheets of drywall on pantry,tape,float and texture

install 4 sheets of greenrock on kitchen backsplash

Exhibit 16
Exhibit 5

1 / 3

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| install 3 sheets of drywall on wall on guest bathroom,tape,float and texture | | | |
| install 4 sheets of drywall on garage furr down ,tape,float and texture | | | |
| repair 4 holes on garage from mini split installation and install new insulation | | | |
| relocate water supply on master bathroom for toilet on left side and install new angle stop valve | | | |
| bust up of concrete to move toilet location and install new toilet flange with 4" pvc pipe | | | |
| relocate water supply on master bathroom for toilet on right side and install new angle stop valve | | | |
| bust up 4 ft of concrete to move toilet location and install new flange with 4" pvc pipe | | | |
| bust up 3ft of concrete to relocate drain on new free standing tub | | | |
| bust up concrete to cap 1-1/2 pipe from bidet on left side bathroom | | | |
| run 25lf of 1/2 pex for new pot filler on kitchen | | | |
| install two new washing machine outlet box on laundry | | | |
| install two new gas outlet box for dryer | | | |
| install 4 new receptacles in master bathroom closet | | | |
| frame 14'X40' opening for niche on both closets | | | |
| relocate shower valve from left side wall to right side wall on guest shower | | | |
| bust up 15lf of concrete to run hot and cold water and electrical to island | | | |
| install new exhaust fan on hallway bathroom | | | |
| install two new 6" led lights on hallway bathroom | | | |
| install new 4" dryer vent both sides | | | |
| reroute 3/4 pipe and 1" pipe on laundry room | | | |
| run new drain line and water supply from guest bathroom to pantry | | | |
| demo office cabinets and sheetrock | | | |
| repair wall on master bedroom,skim coat and texture | | | |

Exhibit 16

Exhibit 5

2 / 3

**Payment Details**

An advance payment of $11,021.25 is due by 06/02/2022.

| | |
|---|---|
| Subtotal | $29,755.00 |
| TAX 0% | $0.00 |
| Total | $29,755.00 |
| PAID | $0.00 |

## Balance Due          $29,755.00

Deposit due 06/02/2022                      $11,021.25

Exhibit 16

Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 63 | 6910 Skyline Park Dr |
| Date: | 06/23/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 06/30/2022 | 281-620-2340 |

Bill To:     ALLIANCE ENERGY JAROD
             jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| WOOD FLOOR , MAPEI ECO 995 GLUE ,RED OAK SHOE MOLD,FLOAT BAGS | 1 | $38,500.00 | $38,500.00 |
| WOOD FLOOR PREPARATION AND INSTALL | 1 | $15,750.00 | $15,750.00 |

**Payment Details**

An advance payment of $20,094.20 is due by 06/10/2022.

| | |
|---|---|
| Subtotal | $54,250.00 |
| TAX 0% | $0.00 |
| Total | $54,250.00 |
| PAID | $0.00 |

| **Balance Due** | **$54,250.00** |
|---|---|

| Deposit due 06/10/2022 | $20,094.20 |
|---|---|

Exhibit 16
Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 66 | 6910 Skyline Park Dr |
| Date: | 07/26/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 08/02/2022 | 281-620-2340 |

Bill To: ALLIANCE ENERGY JAROD
jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| GUEST SHOWER | 1 | $11,350.00 | $11,350.00 |
| install 2X8 around shower wall for shower pan | 1 | $0.00 | $0.00 |
| bust up concrete to install new p trap and new fha drain | 1 | $0.00 | $0.00 |
| make slope prior to install shower pan | 1 | $0.00 | $0.00 |
| install shower pan | 1 | $0.00 | $0.00 |
| make slope after shower pan | 1 | $0.00 | $0.00 |
| install 18 sheets of hardie becker | 1 | $0.00 | $0.00 |
| water proof walls with redguard | 1 | $0.00 | $0.00 |
| install 320sqft of tile on walls,ceiling,and floor | 1 | $0.00 | $0.00 |
| install frameless glass door | 1 | $0.00 | $0.00 |
| install 100sqft of tile on walls toilete area | 1 | $0.00 | $0.00 |
| install 33lf of bullnose | 1 | $0.00 | $0.00 |

Exhibit 16
Exhibit 5

Case 25-30155   Document 98-4   Filed in TXSB on 05/22/2025   Page 159 of 182

ARROYO'S REMODELING   Invoice 66   07/26/2022

**Payment Details**

An advance payment of $4,204.04 is due by 06/22/2022.

| | |
|---|---|
| Subtotal | $11,350.00 |
| TAX 0% | $0.00 |
| Total | $11,350.00 |
| PAID | $0.00 |

## Balance Due          $11,350.00

Deposit due 06/22/2022                    $4,204.04

Exhibit 16
Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | | |
|---|---|---|---|
| Invoice No: | 67 | | 6910 Skyline Park Dr |
| Date: | 07/26/2022 | | Katy, TX, 77449 |
| Terms: | NET 7 | | arroyos-remodeling.com |
| Due Date: | 08/02/2022 | | 281-620-2340 |
| | | | |
| Bill To: | ALLIANCE ENERGY JAROD | | |
| | jerod.furr@alliance-energy.org | | |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| PAINT,FRENCH DOORS,FRAMING, ELECTRICAL,AC VENTS | 1 | $28,350.00 | $28,350.00 |
| WINDOW 24"X46" | 0 | $550.00 | $0.00 |
| install 7 exterior french doors and paint both sides | 1 | $0.00 | $0.00 |
| Install 36" exterior door on laundry and paint both sides | 1 | $0.00 | $0.00 |
| frame 12ft long by 3ft opening from master bedroom to closet room and install sheetrock where needed | 1 | $0.00 | $0.00 |
| Reroute electrical on closet for opening | 1 | $0.00 | $0.00 |
| Install new receptacle on bedroom #2 for tv | 1 | $0.00 | $0.00 |
| remove ceiling fan and install new 6" led light on jarod's closet | 1 | $0.00 | $0.00 |
| paint bedroom #3 closet walls | 1 | $0.00 | $0.00 |
| paint one door with trim | 1 | $0.00 | $0.00 |
| paint 48lf of shelving | 1 | $0.00 | $0.00 |
| paint walls two coats bedroom #3 | 1 | $0.00 | $0.00 |
| paint two doors with trim | 1 | $0.00 | $0.00 |
| paint 56lf of baseboard | 1 | $0.00 | $0.00 |

Exhibit 16
Exhibit 5

1 / 3

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| paint 3ftX8ft cabinet including 5 doors | 1 | $0.00 | $0.00 |
| paint 2 sets of shutters | 1 | $0.00 | $0.00 |
| paint 2 doors on guest bathroom,10lf of baseboard and 2 shutters | 1 | $0.00 | $0.00 |
| paint walls two coats on bedroom #2 | 1 | $0.00 | $0.00 |
| paint two doors with trim | 1 | $0.00 | $0.00 |
| paint 3ftX8ft including 5 doors | 1 | $0.00 | $0.00 |
| paint two sets of shutters | 1 | $0.00 | $0.00 |
| paint 45lf of baseboard | 1 | $0.00 | $0.00 |
| paint closet walls on bedroom #2 | 1 | $0.00 | $0.00 |
| paint one door with trim | 1 | $0.00 | $0.00 |
| paint 56lf of shelving | 1 | $0.00 | $0.00 |
| paint 32lf of baseboard | 1 | $0.00 | $0.00 |
| paint two coats bedroom hallway walls | 1 | $0.00 | $0.00 |
| paint one case opening | 1 | $0.00 | $0.00 |
| paint 22 lf of baseboard | 1 | $0.00 | $0.00 |
| paint closet walls by kitchen,shelf,door with trim,baseboard | 1 | $0.00 | $0.00 |
| paint walls two coats on entry way | 1 | $0.00 | $0.00 |
| paint one case opening | 1 | $0.00 | $0.00 |
| paint 23lf of baseboard | 1 | $0.00 | $0.00 |
| paint walls two coats on foyer | 1 | $0.00 | $0.00 |
| paint 24lf of baseboard | 1 | $0.00 | $0.00 |
| paint one case opening | 1 | $0.00 | $0.00 |
| paint walls two coats on dining room | 1 | $0.00 | $0.00 |
| paint one case opening | 1 | $0.00 | $0.00 |
| paint 30lf of baseboard | 1 | $0.00 | $0.00 |

Exhibit 16
Exhibit 5

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| paint walls two coats on laundry hallway | 1 | $0.00 | $0.00 |
| paint one case opening | 1 | $0.00 | $0.00 |
| paint one door with trim | 1 | $0.00 | $0.00 |
| install two doors on master bath toilete area | 1 | $0.00 | $0.00 |
| install one door on bedroom #2 | 1 | $0.00 | $0.00 |
| paint two sets of shutters on office | 1 | $0.00 | $0.00 |
| paint jarod's closet walls two coats | 1 | $0.00 | $0.00 |
| paint two sets of shutters for master bedroom doors | 1 | $0.00 | $0.00 |
| install 22 ac vents throughout entire house | 1 | $0.00 | $0.00 |
| install new exhaust vent on laundry room | 1 | $0.00 | $0.00 |
| frame new window 24"X46" on master closet | 1 | $0.00 | $0.00 |
| run electrical on master bathroom to add two new scounces | 1 | $0.00 | $0.00 |
| close up old opening where window was and install sheetrock,tape,float and texture | 1 | $0.00 | $0.00 |

**Payment Details**

An advance payment of $10,500.84 is due by 07/16/2022.

| | |
|---|---|
| Subtotal | $28,350.00 |
| TAX 0% | $0.00 |
| Total | $28,350.00 |
| PAID | $0.00 |

## Balance Due    $28,350.00

| Deposit due 07/16/2022 | $10,500.84 |
|---|---|

Exhibit 16

Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 68 | 6910 Skyline Park Dr |
| Date: | 08/21/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 08/28/2022 | 281-620-2340 |

Bill To:   ALLIANCE ENERGY JAROD
jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| CARPENTRY , STAIN ,PAINT | 1 | $43,150.00 | $43,150.00 |
| paint old house kitchen,breakfast,dining,livingroom,toilete area and upstairs theater | 1 | $0.00 | $0.00 |
| install and paint 250lf of baseboard throughout the house | 1 | $0.00 | $0.00 |
| install and paint 350lf of crown molding | 1 | $0.00 | $0.00 |
| install 4" flexible pipe to all exhaust fans and venting them to the soffit | 1 | $0.00 | $0.00 |
| install two 4" led recessed light on venthood box | 1 | $0.00 | $0.00 |
| install master bathroom window and trim around | 1 | $0.00 | $0.00 |
| install three double doors in office and trim around | 1 | $0.00 | $0.00 |
| install ten pair of hinges on bedroom #2 and bedroom #3 | 1 | $0.00 | $0.00 |
| install powder room door and trim | 1 | $0.00 | $0.00 |
| install 7 exterior door locks | 1 | $0.00 | $0.00 |
| run 4" hard pipe to vent dryer | 1 | $0.00 | $0.00 |
| install venthood and connect 12" pipe | 1 | $0.00 | $0.00 |
| make opening on pantry for cabinets to fit | 1 | $0.00 | $0.00 |
| install double doors from hallway to master bedroom | 1 | $0.00 | $0.00 |

Exhibit 16
Exhibit 5

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| prime and paint master cabinets including drawers,doors and shelfs | 1 | $0.00 | $0.00 |
| prime and paint master closet cabinets including drawers,doors and shelfs | 1 | $0.00 | $0.00 |
| prime and paint jarod's closet cabinets including drawers,doors and shelfs | 1 | $0.00 | $0.00 |
| prime and paint office cabinets inside closet including double doors,trim and shelfs | 1 | $0.00 | $0.00 |
| prime and paint office cabinet and island including drawers,doors and shelfs | 1 | $0.00 | $0.00 |
| prime and paint guest bathroom cabinet including drawers and doors | 1 | $0.00 | $0.00 |
| prime and paint laundry cabinets including beadboard, drawers and doors | 1 | $0.00 | $0.00 |
| stain and varnish master bedroom paneling | 1 | $0.00 | $0.00 |
| stain and varnish powder room cabinet including drawers and doors | 1 | $0.00 | $0.00 |
| stain and varnish kitchen island including drawers,doors and shelfs | 1 | $0.00 | $0.00 |
| stain and varnish vent hood box | 1 | $0.00 | $0.00 |
| stain and varnish living room beams | 1 | $0.00 | $0.00 |

**Payment Details**

An advance payment of $15,982.76 is due by 08/11/2022.

| | |
|---|---|
| Subtotal | $43,150.00 |
| TAX 0% | $0.00 |
| Total | $43,150.00 |
| PAID | $0.00 |

## Balance Due   $43,150.00

Deposit due 08/11/2022   $15,982.76

Exhibit 16
Exhibit 5

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 69 | 6910 Skyline Park Dr |
| Date: | 09/13/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 09/20/2022 | 281-620-2340 |
| Bill To: | JAROD | |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| FLOOR TILE INSTALLATION | 1 | $9,900.00 | $9,900.00 |
| MASTER BATHROOM | | | |
| MASTER CLOSETS | | | |
| GUEST BATHROOM | | | |
| HALLWAY BATHROOM | | | |
| LAUNDRY | | | |

**Payment Details**

An advance payment of $3,666.96 is due by 05/20/2022.

| | |
|---|---|
| Subtotal | $9,900.00 |
| TAX 0% | $0.00 |
| Total | $9,900.00 |
| PAID | $0.00 |

| Balance Due | $9,900.00 |
|---|---|

| Deposit due 05/20/2022 | $3,666.96 |
|---|---|

Exhibit 16
Exhibit 5

1 / 1

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 70 | 6910 Skyline Park Dr |
| Date: | 09/13/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 09/20/2022 | 281-620-2340 |
| | | |
| Bill To: | ALLIANCE ENERGY JAROD | |
| | jerod.furr@alliance-energy.org | |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| GRANITE INSTALLATION | 1 | $26,165.00 | $26,165.00 |
| 8 slabs | | | |
| fabrication and install | | | |

**Payment Details**

An advance payment of $9,691.52 is due by 08/24/2022.

| | |
|---|---|
| Subtotal | $26,165.00 |
| TAX 0% | $0.00 |
| Total | $26,165.00 |
| PAID | $0.00 |

| | |
|---|---|
| **Balance Due** | **$26,165.00** |

| | |
|---|---|
| Deposit due 08/24/2022 | $9,691.52 |

Exhibit 16
Exhibit 5

1 / 1

# ARROYO'S REMODELING

## Invoice

| | | |
|---|---|---|
| Invoice No: | 71 | 6910 Skyline Park Dr |
| Date: | 09/13/2022 | Katy, TX, 77449 |
| Terms: | NET 7 | arroyos-remodeling.com |
| Due Date: | 09/20/2022 | 281-620-2340 |

Bill To:  ALLIANCE ENERGY JAROD
jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| PAINT,ELECTRICAL,PLUMBING | 1 | $24,860.00 | $24,860.00 |
| paint kitchen cabinets | 1 | $0.00 | $0.00 |
| paint pantry cabinets | 1 | $0.00 | $0.00 |
| paint one set of shutters on master bedroom | 1 | $0.00 | $0.00 |
| paint chiminey two coats on living room | 1 | $0.00 | $0.00 |
| paint chiminey two coats on master bedroom | 1 | $0.00 | $0.00 |
| paint pantry walls two coats | 1 | $0.00 | $0.00 |
| paint two exterior doors on master bedroom | 1 | $0.00 | $0.00 |
| paint Jarod's closet door two coats | 1 | $0.00 | $0.00 |
| relocate ceiling fan on master bedroom repair two holes,patch and texture | 1 | $0.00 | $0.00 |
| relocate three 6" lights on kitchen, repair three holes,patch and texture | 1 | $0.00 | $0.00 |
| install laundry doors and trim, paint two coats both sides | 1 | $0.00 | $0.00 |
| install pantry double doors and trim,paint two coats both sides | 1 | $0.00 | $0.00 |
| paint office walls two coats | 1 | $0.00 | $0.00 |
| paint office closet walls two coats | 1 | $0.00 | $0.00 |

Exhibit 16

Exhibit 5

1 / 2

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| paint master bedroom walls two coats | 1 | $0.00 | $0.00 |
| paint master bathroom walls two coats | 1 | $0.00 | $0.00 |
| paint master closet walls two coats | 1 | $0.00 | $0.00 |
| install double doors on master bedroom and paint trim | 1 | $0.00 | $0.00 |
| frame and install sheetrock on master closet to match door height | 1 | $0.00 | $0.00 |
| install door jam and trim on two openings master closet | 1 | $0.00 | $0.00 |
| install wallpaper on office ceiling | 1 | $0.00 | $0.00 |
| install wallpaper on laundry walls | 1 | $0.00 | $0.00 |
| install jacuzzi tub and tub filler on master bathroom | 1 | $0.00 | $0.00 |
| install guest bathroom toilet | 1 | $0.00 | $0.00 |
| install 201f of led lights on pantry with switch | 1 | $0.00 | $0.00 |
| install two master bathroom toilets | 1 | $0.00 | $0.00 |
| Install powder room toilet | 1 | $0.00 | $0.00 |
| install wallpaper on powder room | 1 | $0.00 | $0.00 |
| install backsplash on laundry room | 1 | $0.00 | $0.00 |
| install backsplash on pantry | 1 | $0.00 | $0.00 |

**Payment Details**

An advance payment of $9,208.14 is due by 09/07/2022.

| | |
|---|---|
| Subtotal | $24,860.00 |
| TAX 0% | $0.00 |
| Total | $24,860.00 |
| PAID | $0.00 |

## Balance Due          $24,860.00

| | |
|---|---|
| Deposit due 09/07/2022 | $9,208.14 |

Exhibit 16
Exhibit 5

2 / 2

# ARROYO'S REMODELING

## Invoice

| | | | |
|---|---|---|---|
| Invoice No: | 76 | | 6910 Skyline Park Dr |
| Date: | 11/14/2022 | | Katy, TX, 77449 |
| Terms: | NET 7 | | arroyos-remodeling.com |
| Due Date: | 11/21/2022 | | 281-620-2340 |

Bill To: ALLIANCE ENERGY JAROD
jerod.furr@alliance-energy.org

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| OLD HOUSE REPAIRS AND NEW HOUSE ITEMS | 1 | $1,550.00 | $1,550.00 |
| remove garage fan and repair hole and paint | 1 | $0.00 | $0.00 |
| fix hole on bedroom door and paint door | 1 | $0.00 | $0.00 |
| fix drainage on bathroom tub | 1 | $0.00 | $0.00 |
| install 1/2 galvanized cap on gas supply | 1 | $0.00 | $0.00 |
| install 3 toilet paper holders | 1 | $0.00 | $0.00 |
| install dish washer on apt. | 1 | $0.00 | $0.00 |
| remove and install powder bath faucet | 1 | $0.00 | $0.00 |
| remove satellite dishes and haul away | 1 | $0.00 | $0.00 |
| install 35lf of french drain on outside bathroom | 1 | $0.00 | $0.00 |

Exhibit 16
Exhibit 5

**Payment Details**

An advance payment of $574.12 is due by 11/14/2022.

| | |
|---|---|
| Subtotal | $1,550.00 |
| TAX 0% | $0.00 |
| Total | $1,550.00 |
| PAID | $0.00 |

## Balance Due          $1,550.00

Deposit due 11/14/2022          $574.12

Exhibit 16
Exhibit 5

**LUIS MARTINEZ, INC...REMODELING & CUSTOM CABINETRY**

28 Yewleaf Rd
The Woodlands, TX, 77381
luismartinezinc@yahoo.com
(713) 240-5511

BILLED TO:

Jerod Furr
5450 Honea Egypt Rd
Montgomery, TX, 77316
jerod.furr@alliance-energy.org

| Date | Invoice | Amount | Description |
|------|---------|--------|-------------|
| 07/13/22 | **2603** | $5,000.00 | 1st draw to cover guys labor & materials |
| 07/30/22 | **2608** | $8,000.00 | 2nd draw to cover guys labor please |
| 08/01/22 | **2613** | $11,500.00 | 3rd draw to cover guys labor and part of materials |
| 08/07/22 | **2617** | $4,300.00 | 4th draw to cover guys labor please. |
| 08/13/22 | **2626** | $14,000.00 | 5th draw to cover guys labor/materials |
| 08/29/22 | **2636** | $16,000.00 | 6th draw to cover guys labor/materials |
| 09/20/22 | **2655** | $33,371.00 | Scope of Work [i] |
| | | **$92,171.00** | **Total** |

Exhibit 16
Exhibit 5

# End Notes

SCOPE OF WORK...INCLUDES MATERIALS & LABOR MASTER BATHROOM:

**Her side**

- o  Made 3'6 wide x 9' tall linen cabinet with flush inset doors & drawers with bead molding…
- o  Made vanity 5'6 wide x 3' tall with flush inset doors & drawers with bead molding and valance feet…
- o  Made 34 s/f of block paneling above vanity for mirror inserts…
- o  Made make up vanity 5' wide x 31" tall, with flush inset drawers on the sides, drawer above, Made upper left & right-angled cabinets at 6'6 tall, made 21 S/F of block paneling above vanity for mirror inserts, and crown molding over top. (Paint grade) $7,590

**His side**

- o  Made 3'6 wide x 9' tall linen cabinet with flush inset doors and drawers
- o  Made vanity 5'6 wide x 3' tall with flush inset doors & drawers, and valance feet
- o  Made 34 s/f of block paneling above vanity, for mirror inserts. (Paint grade) $4,438

**Bench seat below window**

- o  Made 5' wide x 16" tall x 18" deep, bench seat below window. (Paint grade) $378

**Master water closet**

- o  Made insert wall cabinets, 16" wide x 42" tall x 7" deep with overlay flat panel doors. (Paint grade) $397

**Master bedroom**

- o  Block paneled wall section 15' wide x 8'6" tall, (21 blocks)
- o  made door on lower right corner to cover beverage fridge and ran crown molding around top. (Maple wood) $3,900

Exhibit 16
Exhibit 5



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

|  |  |
|---|---|
| Invoice No: | 2603 |
| Date: | 07/12/2022 |
| Terms: | NET 7 |
| Due Date: | 07/19/2022 |
| Bill To: | Jerod Furr |
|  | jerod.furr@alliance-energy.org |
|  | 5450 Honea Egypt Rd |
|  | Montgomery, TX, 77316 |

## Invoice

28 Yewleaf Rd
The Woodlands, TX, 77381
713-240-5511
luismartinezinc@yahoo.com

| Description | Amount |
|---|---|
| * 1st draw to cover guys labor & materials. | $5,000.00 |
| | |
| Subtotal | $5,000.00 |
| Total | $5,000.00 |
| PAID | $0.00 |
| **Balance Due** | **$5,000.00** |

## Notes

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16
Exhibit 5

1 / 1



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| | |
|---|---|
| Invoice No: | 2608 |
| Date: | 07/23/2022 |
| Terms: | NET 7 |
| Due Date: | 07/30/2022 |
| Bill To: | Jerod Furr |
| | jerod.furr@alliance-energy.org |
| | 5450 Honea Egypt Rd |
| | Montgomery, TX, 77316 |

## Invoice

28 Yewleaf Rd
The Woodlands, TX, 77381
713-240-5511
luismartinezinc@yahoo.com

| Description | Amount |
|---|---|
| * 2nd draw to cover guys labor please. | $8,000.00 |
| | |
| Subtotal | $8,000.00 |
| Total | $8,000.00 |
| PAID | $0.00 |

| Balance Due | $8,000.00 |
|---|---|

**Notes**

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16
Exhibit 5

1 / 1



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| | | |
|---|---|---|
| Invoice No: | 2613 | |
| Date: | 08/01/2022 | |
| Terms: | NET 7 | |
| Due Date: | 08/08/2022 | |
| Bill To: | Jerod Furr | |
| | jerod.furr@alliance-energy.org | |
| | 5450 Honea Egypt Rd | |
| | Montgomery, TX, 77316 | |

## Invoice

28 Yewleaf Rd
The Woodlands, TX, 77381
713-240-5511
luismartinezinc@yahoo.com

| Description | Amount |
|---|---|
| * 3rd draw to cover guys labor and part of materials. | $11,500.00 |
| | |
| Subtotal | $11,500.00 |
| Total | $11,500.00 |
| PAID | $0.00 |

| Balance Due | $11,500.00 |
|---|---|

## Notes

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16
Exhibit 5

1 / 1



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| | |
|---|---|
| Invoice No: | 2617 |
| Date: | 08/07/2022 |
| Terms: | NET 7 |
| Due Date: | 08/14/2022 |
| Bill To: | Jerod Furr |
| | jerod.furr@alliance-energy.org |
| | 5450 Honea Egypt Rd |
| | Montgomery, TX, 77316 |

## Invoice

28 Yewleaf Rd
The Woodlands, TX, 77381
713-240-5511
luismartinezinc@yahoo.com

| Description | Amount |
|---|---|
| * 4th draw to cover guys labor please. | $4,300.00 |
| | |
| Subtotal | $4,300.00 |
| Total | $4,300.00 |
| PAID | $0.00 |

| **Balance Due** | **$4,300.00** |
|---|---|

### Notes

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16

Exhibit 5



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| Invoice No: | 2626 | | **Invoice** |
|---|---|---|---|
| Date: | 08/13/2022 | | |
| Terms: | NET 7 | | 28 Yewleaf Rd |
| Due Date: | 08/20/2022 | | The Woodlands, TX, 77381 |
| Bill To: | Jerod Furr | | 713-240-5511 |
| | jerod.furr@alliance-energy.org | | luismartinezinc@yahoo.com |
| | 5450 Honea Egypt Rd | | |
| | Montgomery, TX, 77316 | | |

| Description | Amount |
|---|---|
| * 5th draw to cover guys labor/materials | $14,000.00 |
| | |
| Subtotal | $14,000.00 |
| Total | $14,000.00 |
| PAID | $0.00 |

| **Balance Due** | **$14,000.00** |
|---|---|

## Notes

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16

Exhibit 5

1 / 1



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| Invoice No: | 2636 | | **Invoice** |
|---|---|---|---|
| Date: | 08/22/2022 | | |
| Terms: | NET 7 | | 28 Yewleaf Rd |
| Due Date: | 08/29/2022 | | The Woodlands, TX, 77381 |
| Bill To: | Jerod Furr | | 713-240-5511 |
| | jerod.furr@alliance-energy.org | | luismartinezinc@yahoo.com |
| | 5450 Honea Egypt Rd | | |
| | Montgomery, TX, 77316 | | |

| Description | Amount |
|---|---|
| * 6th draw to cover guys labor/materials. | $16,000.00 |
| | |
| Subtotal | $16,000.00 |
| Total | $16,000.00 |
| PAID | $0.00 |

| **Balance Due** | **$16,000.00** |
|---|---|

**Notes**

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16

Exhibit 5

1 / 1



# Luis Martinez,Inc....Remodeling & Custom Cabinetry

| Invoice No: | 2655 |
| Date: | 09/13/2022 |
| Terms: | NET 7 |
| Due Date: | 09/20/2022 |
| Bill To: | Jerod Furr |
| | jerod.furr@alliance-energy.org |
| | 5450 Honea Egypt Rd |
| | Montgomery, TX, 77316 |

# Invoice

28 Yewleaf Rd
The Woodlands, TX, 77381
713-240-5511
luismartinezinc@yahoo.com

| Description | Amount |
| --- | --- |
| SCOPE OF WORK...INCLUDES MATERIALS & LABOR | |
| | |
| MASTER BATHROOM: | $16,703.00 |
| * Her side: Made 3'6 wide x 9' tall linen cabinet with flush inset doors & drawers with bead molding...Made vanity 5'6 wide x 3' tall with flush inset doors & drawers with bead molding and valance feet...Made 34 s/f of block paneling above vanity for mirror inserts... Made make up vanity 5' wide x 31" tall, with flush inset drawers on the sides, drawer above, Made upper left & right angled cabinets at 6'6 tall, made 21 S/F of block paneling above vanity for mirror inserts, and crown molding over top. (Paint grade) $7,590 | |
| * His side...Made 3'6 wide x 9' tall linen cabinet with flush inset doors and drawers...Made vanity 5'6 wide x 3' tall with flush inset doors & drawers, and valance feet...Made 34 s/f of block paneling above vanity, for mirror inserts. (Paint grade) $4,438 | |
| * Made 5' wide x 16" tall x 18" deep, bench seat below window. (Paint grade) $378 | |
| * Master water closet: Made insert wall cabinets, 16" wide x 42" tall x 7" deep with overlay flat panel doors. (Paint grade) $397 | |
| | |
| * Master bedroom: Block paneled wall section 15' wide x 8'6 tall, (21 blocks), made door on lower right corner to cover beverage fridge and ran crown molding around top. (Maple wood) $3,900 | |

Exhibit 16
Exhibit 5

| Description | Amount |
|---|---|
| **CLOSETS:** | $24,835.00 |

* Her closet window side: Made cabinet 9 l/f of cabinets (uppers & lowers) at 8' tall, with flush inset doors & drawers with bead molding, upper section cabinet with flush inset glass doors, adjustable shelfs and crown molding at top…Made 12 l/f of wardrobe (close hanging) at 9'6 tall x 24" deep, with tall overlay detailed glass doors below, smaller doors above, and crown molding at top. (Paint grade) $8,895

* Her other side closet: Made 12 l/f of wardrobe (close hanging cabinets) at 9'6 tall x 24" deep, with tall overlay detailed glass doors, smaller doors above and crown molding at top…Made 12 l/f of cabinets (for shoes & hand bags) at x 9'6 tall x 14" deep with tall overlay detailed glass doors on right side and smaller doors on the bottom on left side, with open sections on the top with bead molding and adjustable shelfs. (Paint grade) $7,842

* His closet: Made (2) 4' wide x 18" deep wardrobe built ins at 11'6" tall open for close hanging…Made middle section wardrobe cabinet 4' wide x 11'6" tall x 24" deep, with tall
overlay glass doors with wood panel below, doors above, and crown molding at top.
(Paint grade) $2,820

* His closet: Made 11'6 wide x 8'6 tall built in cabinet, with all drawers below with flat panel drawer fronts, Open at top with adjustable shelfs, bead molding around openings, and crown molding over top. (Paint grade) $5,278

| **HOBBY ROOM:** | $10,701.00 |

* Made furniture type cabinet 6' wide x 8' tall…Lower middle section cabinet with flush inset drawers below with bead molding, Upper section made detailed flush inset cabinet glass doors above with adjustable shelfs, ran decorative crown molding around top… Includes seven flush inset detailed drawers on each side of lower end cabinets and detailed glass doors above…NOTE: Cabinet was labor intense. (Paint grade) $4,698

* Made free standing island 8' x 3'6 with post/legs on corners, made a total of 15 flush inset stacked drawers in openings all around island, open lower shelf for baskets, includes bunn feet on the bottom of each post. (Paint grade) $2,675

* Closet: Made 4' wide x 8' tall shelf built in unit, open with bead molding around and adjustable shelfs, ran crown molding around top. $1,833

* Closet: Made lower cabinet with open cubbies for (gift wrapping rolls)…Made upper cabinet 2' wide x 2' deep open with shelfs, peg board above and ran crown molding. (Paint grade) $1,495

| **KITCHEN:** | $22,342.00 |

* Oven side: Made built in cabinet for oven/microwave 3'2 wide x 9'6 tall x 26" deep with flush inset doors & drawers…Made cabinet to the right, 5'4 wide x 9'6 tall, lower cabinet with flush inset doors & drawers, top cabinet with flush detailed doors, adjustable shelfs and decorative crown molding at top. (Paint grade) $5,742

* Range side: Made (2) 2' wide x 3' tall lower cabinets left & right of range with flush inset doors & drawers. (Paint grade) $1,200

* Made upper vent-hood cabinet (above range) 9'5 wide x 6'2 tall x 26" deep, with block paneled ship lap wood. (Maple wood) $2,850

* Fridge side: Made built in cabinet for fridge 4'6 wide x 9'6 tall x 26" deep with flush inset doors above….Made 5.6 l/f of upper & lower cabinets to the right of fridge, with flush inset doors & drawers, adjustable shelfs. (Paint grade) $4,565

* Made island 12'6 x 6'9 x 3' tall, with flush inset doors & drawers, farm sink, pull out trash drawer, pull out below sink, stack of drawers on the sides, doors on back side for storage access and sitting area. (Maple wood) $7,985

| **LAUNDRY ROOM:** | $10,340.00 |

* Made (2) 3' wide x 7' tall cabinets for washer & dryer, with crown molding at top and added crown molding header at top for tile to stop to…Made wood frame and two large doors to cover electrical panel boxes and water shut off valves. (Paint grade) $1,810

* Made 9' wide x 10' tall upper & lower cabinets, with flush inset doors & drawers with bead molding (lower cabinet all drawers) and ran crown molding around top. (Paint grade) $6,570

* Installed 130 s/f of 1x6 ship lap all around room, and ran 1x2 wood band around top of
ship lap to break up. (Paint grade) $1,960

Exhibit 16

Exhibit 5

| Description | Amount |
|---|---|
| POWDER BATH:<br>* Made furniture piece vanity 4' wide x 3' tall, with flush inset drawers, decorative front and tapered legs. (Maple wood) $2,100<br><br>JACK & JILL BATH:<br>* Made vanity 8' wide x 3' tall with flush inset doors & drawers with bead molding and valance feet below. (Paint grade) $2,400 | $4,500.00 |
| BEAMS:<br>* Made crossed beams on pop up ceiling…Made two large beams being 24' long x 10" tall x 8" wide….Made two bemas 16' long x 9 1/2" tall x 8" wide. (Maple wood) | $2,750.00 |
| NOTE:<br>* All cabinets include soft close full extension drawer glides and soft close Euro hidden hinges.<br>* Price does NOT include Installment of finished cabinet hardware, knobs, pulls, chrome rods & flanges, close rod pull downs, etc | |
| * Draws for labor paid up to date.... | - |
| | $58,800.00 |

| | |
|---|---|
| Subtotal | $33,371.00 |
| Total | $33,371.00 |
| PAID | $0.00 |

| **Balance Due** | **$33,371.00** |
|---|---|

**Notes**

WE APPRECIATE YOUR BUSINESS!
THANK YOU!

Exhibit 16
Exhibit 5

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Shannon Frizzell on behalf of Deborah  Crain
Bar No. 24067319
sfrizzell@e-merger.law
Envelope ID: 99903961
Filing Code Description: Amended Petition
Filing Description: Plaintiff's Verified First Amended Petition, Applications
for Temporary Restraining Order, Temporary Injuction and Permanent
Injuction
Status as of 4/22/2025 8:38 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thaison Hua | | thaison@rhhlawgroup.com | 4/21/2025 4:48:23 PM | SENT |
| Thaison Hua | | eservice@rhhlawgroup.com | 4/21/2025 4:48:23 PM | SENT |
| Karla Ayala-Piesko | | karla@rhhlawgroup.com | 4/21/2025 4:48:23 PM | SENT |
| Deborah Crain | | deborah@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Shannon Frizzel | | shannon@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Summer Riehle | | sriehle@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Summer Riehle | | summer@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Shannon Frizzell | | sfrizzell@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Deborah L. Crain | | dcrain@e-merger.law | 4/21/2025 4:48:23 PM | SENT |
| Len  Walker | | lwalker@weaverlawyers.com | 4/21/2025 4:48:23 PM | SENT |

Exhibit 5