# EXHIBIT 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Agreement**") is entered into as of this ____ day of May, 2025, between Erik and Darla Ostrander (the "**Ostranders**") and Alliance Farm and Ranch, LLC ("**AFR**") (each a "**Party**" and collectively, the "**Parties**"). This Agreement shall be effective and binding to the extent set forth herein and inure to the benefit of the Parties and their permitted assigns and successors as of the Effective Date (as defined below).

### Recitals

**WHEREAS**, in April of 2022, AFR purchased certain real property located at 5450 Honea Egypt Road, Montgomery, Texas 77316 (the "**Real Property**"), from the Ostranders.

**WHEREAS**, a real estate lien note (the "**Note**") was made by AFR for the benefit of the Ostranders, secured by a deed of trust (the "**Deed of Trust**").

**WHEREAS**, the Ostranders delivered a Notice of Foreclosure Sale to AFR on or around December 6, 2024.

**WHEREAS**, on January 3, 2025, AFR filed a lawsuit styled *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Cause No. 25-01-00068 in the District Court of Montgomery County, Texas, 284th Judicial District (the "**Lawsuit**"). The Lawsuit was later transferred to the 457th Judicial District. The Lawsuit sought to enjoin the Ostrander's foreclosure of the Real Property.

**WHEREAS**, on January 7, 2025, a substitute trustee conducted a foreclosure sale of the Real Property, where the Ostranders reacquired the Real Property at the stated price of $4.6 million. After the foreclosure, AFR amended the Lawsuit to bring claims related to wrongful foreclosure (the "**Wrongful Foreclosure Claims**"). The Wrongful Foreclosure Claims include claims related to certain personal property owned by AFR that remains *in situ* at the Property (such personal property, the "**Personal Property**").

**WHEREAS**, on January 7, 2025, AFR filed a petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). On March 19, 2025, the Bankruptcy Court entered its order converting AFR's bankruptcy case to one under chapter 11 (the "**AFR Case**").

**WHEREAS**, On April 7, 2025, AFR's affiliated entity Alliance Energy Partners, LLC ("**AEP**" and together with AFR, the "**Debtors**") filed a petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "**AEP Case**" and together with the AFR Case, the "**Bankruptcy Cases**"). The Bankruptcy Cases are jointly administered under the case number assigned to AFR, Case No. 25-30155.

**WHEREAS**, the Ostranders have identified a purchaser (the "**Proposed Purchaser**") for the Real and Personal Property and have entered into a contract to sell the Real and Personal Property to the Proposed Purchaser (the "**Real and Personal Property Sale**").

Exhibit 8

**WHEREAS**, the Parties wish to facilitate the Real and Personal Property Sale, to avoid the cost of further litigation, and to resolve any and all claims with one another pending in the Lawsuit.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Bankruptcy Court Approval Required**. This Agreement is subject to approval by the Bankruptcy Court. Debtors, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, will file a motion with the Bankruptcy Court requesting an order approving this Agreement. The Agreement will become effective one (1) calendar day after execution by the Parties and approval of the Bankruptcy Court (the "**Effective Date**").

2. **Payment**. In exchange for the releases described below, the Ostranders will direct the settlement agent or closing attorney to include Tom A. Howley in his capacity as the chapter 11 trustee of AFR to receive one million five hundred thousand dollars ($1,500,000.00) (the "**AFR Settlement Payment Amount**") from the proceeds of the Real and Personal Property Sale at the closing of the Real and Personal Property Sale (such a disbursement, a "**Closing Settlement Disbursement**"). In the event that it is not feasible or allowable for the AFR Settlement Payment Amount to be a Closing Settlement Disbursement, the Ostranders shall receive payment of the AFR Settlement Payment Amount at closing, and then deliver the AFR Settlement Payment Amount to AFR within three (3) business days following the Ostranders' receipt of such funds (such a disbursement, a "**Post-Closing Settlement Disbursement**" and the date on which the Closing Settlement Disbursement or Post-Closing Settlement Disbursement occurs, the "**Settlement Disbursement Date**").

3. **Mutual Release**.

(a) AFR, on behalf of itself, its current and former officers, directors, employees, members, sales representatives, agents, attorneys, successors, assigns, and any entity in which AFR individually or collectively hold any interest (collectively referred to as "**Releasors**"), hereby releases, acquits and forever discharges the Ostranders, together with any of its successors, including specifically, but not limited to, the Proposed Purchaser (collectively referred to as "**Releasee**") from any and all claims, demands, counterclaims, rights, setoffs, defenses, contracts, accounts, suits, debts, causes of action, controversies, disputes, and obligations, whether known or unknown, in law or in equity, and any past, present, or future duties, responsibilities, or obligations, of whatever kind or nature, asserted or unasserted, suspected, or claimed, and whether based in tort, contract, common law, statute or other theory of recovery, arising from or related in any way to the Lawsuit.

(b) Releasee, on behalf of itself and its successors, hereby releases, acquits and forever discharges Releasors from any and all claims, demands, counterclaims, rights, setoffs, defenses, contracts, accounts, suits, debts, causes of action, controversies, disputes, and obligations, whether known or unknown, in law or in equity, and any past, present, or future duties, responsibilities, or obligations, of whatever kind or nature, asserted or unasserted, suspected, or claimed, and whether

Exhibit 8

based in tort, contract, common law, statute or other theory of recovery, arising from or related in any way to the Lawsuit.

4. **No Admission**. This Agreement is for the sole purpose of settling the Lawsuit and is not an admission of any liability or fault whatsoever and shall not be treated as or deemed an admission of liability by any Party for any purpose at any time.

5. **Dismissal and No Further Action**.

(a) Within two (2) business days after the Settlement Disbursement Date, the Parties shall file an Agreed Motion to Dismiss All Claims with Prejudice (the "**Dismissal Papers**") in the Lawsuit to the extent necessary to dismiss the lawsuits and all claims, counterclaims and defenses that were or could have been asserted therein with prejudice.

(b) The Ostranders shall not file any objection to any chapter 11 plan proposed by the Debtors.

6. **Failure to Close.** In the event that the Real and Personal Property Sale does not occur within 30 days of the Effective Date, the obligations of the Parties under the terms of this Agreement, specifically including the payment and release obligations, shall be deemed terminated and unenforceable.

7. **Governing Law**. This Agreement shall be interpreted and construed under the laws of the State of Texas without regard to its choice of law or conflict of law principles.

8. **Entire Agreement**. This Agreement contains the entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes any prior or contemporaneous discussions or agreements thereon. The Parties acknowledge that no Party or any agent, representative, attorney or client of any Party, has made any promise representation, or warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce the other Party to execute this Agreement. The Parties acknowledge that they have not executed this Agreement in reliance of any promise, representation, or warranty not contained herein.

9. **Modification**. No change, modification or waiver of any provision of this Agreement shall be valid or binding unless such is in writing and signed by each of the Parties to this Agreement.

10. **Cooperation**. Each Party shall cooperate, shall take such further actions, and shall execute and deliver such further documents as may be reasonably requested by the other Party in order to carry out the provisions, purposes and intent of this Agreement.

11. **Non-Disparagement**. The Parties shall refrain from disparaging other Parties related to the subject matter of the Lawsuit.

Exhibit 8

12. **Acknowledgment of Understanding**. The Parties acknowledge that they have read this entire Agreement; that they are legally competent and authorized to enter into this Agreement on their own behalf, and on behalf of the persons and entities described herein; that they fully understand its provisions, are satisfied with them, and have signed their names of their own free will and without distress or undue influence. Each Party understands that all terms of this Agreement are material to the other's consent to this Agreement, and that the breach of any term of this Agreement constitutes a material breach of the entire Agreement. The Parties further acknowledge that each has had an opportunity to consult with counsel concerning the terms of this Agreement.

13. **Counterparts**. The Parties agree that this Agreement may be executed in one or more counterparts, each of which shall be executed by one or more of the Parties, and such executed counterparts, taken collectively, will constitute one agreement. Faxed or scanned copies shall be treated the same as originals.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement in a manner appropriate to each, effective on the date first written above, and each person signing on behalf of each Party warrants and represents that he has full authority to act on its or his behalf.

**Alliance Farm and Ranch, LLC**

By: _____

Its: _____

Date: _____

**Erik C. Ostrander**

By: _____

Date: _____

**Darla Ostrander**

By: _____

Date: _____

Exhibit 8