## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30155 |
| | § | |
| ALLIANCE FARM AND RANCH, LLC, | § | |
| | § | |
| DEBTOR | § | (CHAPTER 11) |

### DEBORAH CRAIN'S AFFIDAVIT OF ATTORNEY'S FEES

BEFORE ME, the undersigned notary, on this day personally appeared Deborah L. Crain ("Affiant"), whose identity is known to me. After I administered an oath, Affiant testified as follows:

1. "My name is Deborah L. Crain. I am over the age of 18 years, of sound mind, and fully competent and capable to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

2. I am the President and Senior Counsel of the law firm E-Merger Law PLLC ("E-Merger"). I have been licensed to practice law in Texas by the Supreme Court since 2009. My license to practice law in Texas has never been suspended nor revoked, and I am currently a member in good standing with the State Bar of Texas. I have also been an attorney since 2002 and hold my law license in the State of Louisiana as well.

3. I have represented individual and corporate clients in hundreds of civil lawsuits in the state and/or federal courts located in Texas and Louisiana, including those involving complex commercial issues, which has included trials. I have also been appointed as special litigation counsel in Bankruptcy Court.

4. I and my firm E-Merger Law PLLC were hired by Jerod Fur, the owner of Alliance Farm and Ranch, LLC ("AFR Debtor"), to fight the wrongful foreclosure of AFR Debtor's main asset -

<span style="color:blue">Exhibit 13</span>

*Affidavit of Deborah L. Crain*                                                    P a g e  1 | 6

a 72.96-acre ranch located at 5450 Honea Egypt Rd., Montgomery, Texas 77316 (the "Real Property"). The goal being to either reclaim the Real Property as an asset of AFR Debtor or obtain substantial compensation from its sale.

5.   I assumed charge of the state court case that had already been filed on behalf of AFR Debtor against the Erik and Darla Ostrander (the "Ostranders"), the married couple who foreclosed on the Real Property. This case was originally in the 284th Judicial District Court in Fort Bend County, Texas, before being transferred to the 457th, identifiable as *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Cause No. 25-01-00068.

6.   Due to our extensive efforts, a settlement was achieved with the Ostranders in May of 2025, whereby the Real Property (and personal property located upon it) was resold and $1,500,000.00 from the sale was preserved for the bankruptcy estate in this case. After achieving the settlement, I and my firm went on to provide substantial aid to the bankruptcy trustee, at his request.

7.   I am familiar with both the state court case and this bankruptcy case, and all of the work performed by my firm and its personnel. I have worked continuously on these matters since approximately March of 2025.

8.   I have also reviewed the redacted billing records of E-Merger, created in connection with the legal services expended in reaching a resolution to the foreclosure issues, and in aiding the bankruptcy trustee in this case, true and correct copies of which are attached as Exhibit 11. Such documents are pages of records from E-Merger Law PLLC. They are the original records or exact duplicates of the original records, with the exception that redactions have been made to protect against the disclosure of privileged attorney-client communications and work product. These records (and/or the accompanying spreadsheet) also were highlighted to show entries that we are not asking for reimbursement for.  I personally went through each entry, line by line, to identify

Exhibit 13

what items we believed were related to the work for the settlement, helping the trustee, and those items that were general practice on the case.

9.   It is the regular practice of E-Merger to make these types of record at or near the time of each act, event, condition, or opinion set forth in the record. It is the regular practice of E-Merger for these types of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in the record. It is the regular practice of E-Merger to keep these types of records in the course of regularly conducted business activity. It is the regular practice of the business activities to make these records. It is the firm policy of E-Merger to record time in 1/10 hour increments contemporaneous with the work being performed. As the President and Senior Counsel of E-Merger, I am a custodian of client billing records.

## A. Summary of Fees and Costs:

10. The following is a list of the attorneys who have worked on the above detailed matters and the paralegals who have performed substantive legal work under attorney direction and supervision, along with their hours worked and hourly rates. It is my opinion that these fees and costs were reasonable and necessary as to the tasks, and in reaching that opinion, I considered numerous factors, including but not limited to: (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) The preclusion of other employment by the attorneys involved due to the acceptance of this case; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved; (5) The time limitations imposed; and (6) the fixed nature of the fee.

**Deborah Crain (Senior Attorney)**

Hours Worked (78.40) Hourly Rate ($600.00) = Total ($47,040.00)

**Stephen Coselli (Associate Attorney)**

Exhibit 13

Hours Worked (88.70) Hourly Rate ($300.00) = Total ($26,610.00)

**Summer Riehle (Paralegal)**

Hours Worked (5.9) Hourly Rate ($150.00) = Total ($885.00)

**Shannon Frizzell (Paralegal)**

Hours Worked (98.14) Hourly Rate ($165.00) = Total ($16,193.10)

11. **The total amount of fees and costs is $90,728.10.** For a more detailed breakdown, please see E-Merger's Billing Records attached as Exhibit 11 and Exhibit 12, with the spreadsheet and summary of work by professional. Additionally, the amount set forth herein is less than the total billed on this matter, showing that we excluded any general work on this case that did not directly relate to assisting the trustee or regarding the settlement.

## B. Fees and Costs Incurred as to the Settlement Money Obtained:

12. Specifically, regarding the efforts to obtain the $1,500,000.00 in substantial contribution to the bankruptcy estate, my firm and I expended **168.90 hours, totaling $54,162.00**.

## C. Fees and Costs Incurred in Aiding the Bankruptcy Trustee:

13. Specifically, regarding the substantial aid provided to the bankruptcy trustee, my firm and I expended **102.24 hours, totaling $36,566.10**.

## D. Time, Nature, Extent, and Value of Services Provided:

14. My firm and I have spent a significant amount of time and effort that could have been spent working on other projects, working for the benefit of the bankrupt estate.

15. **In Obtaining the settlement money (March 2025 – May 2025):** Consulting and communicating with Jerod Fur; reviewing and analyzing a wide array of documents; performing legal research; drafting timelines and memoranda; preparing for and attending court hearings;

**Exhibit 13**

organizing, indexing, and categorizing documents and evidence, creating detailed charts and directories; and drafting and revising pleadings.

16. A copy of the bills is attached as Exhibit 11, and attached as Exhibit 12 is a spreadsheet showing the billing entries, and highlighted entries that were specifically reviewed and not considered part of the settlement or trustee work.

17. Based on the Firm's findings, the Lawsuit against the Ostranders was amended to assert additional and refined claims, thereby strengthening AFR Debtor's legal position. In parallel, the Ostranders initiated eviction proceedings with regard to the Real Property. The Firm promptly took the appropriate action regarding the eviction and continued to work on the state court pleadings to apply additional legal and procedural pressure on the Ostranders.

18. These efforts directly contributed to a shift in posture by the Ostranders, who subsequently engaged in settlement negotiations in May of 2025. As a result of the Firm's advocacy, the Ostranders agreed to resell the foreclosed property and remit back $1,500,000.00 in proceeds from the resale of the Real Property.

19. This negotiated resolution was later substantially incorporated into a settlement approved by the Chapter 11 Trustee and the Bankruptcy Court. The proceeds remitted to the estate materially increased its value, thereby benefiting creditors and advancing the administration of the case. E-Merger's services was non-duplicative, and provided a direct, significant, and demonstrable benefit to the estate; without its intervention the estate would not have achieved the settlement or received the funds.

20. **In Aiding the bankruptcy trustee:** E-Merger provided relevant documentation, factual summaries, and legal analysis concerning the status of the case, the pending state court litigation, and the potential recovery for the estate, including: holding regular meetings with the trustee and

Exhibit 13

counsel; providing access to QuickBooks files, including searchable ledgers and financial summaries; delivering organized document inventories and exhibit logs to facilitate review and analysis; producing bank statements and financial records for debtor entities and affiliated entities such as J. Parker Construction; identifying and disclosing additional assets, including investment interests and the drilling equipment; preparing and sharing information to support estate recovery efforts; responding promptly to requests for information and participated in strategic planning calls; and utilizing the Clio platform to securely share documents and maintain transparency with the Trustee, the Trustee being given access to documents instantly through the secure system, creating efficiency for the Trustee and thereby utilizing resources effectively.

21. E-Merger's support of the Trustee was non-duplicative, and provided a direct, and significant benefit to the estate and the administration of the case."

FURTHER AFFIANT SAYETH NOT.

**E-Merger Law PLLC**

**Deborah L. Crain**
State Bar No.: 24067319
1334 Brittmoore Road #2314
Houston, Texas 77043
dcrain@e-merger.law
(346) 535-0820

SUBSCRIBED AND SWORN TO BEFORE ME on this the 17th day of October 2025.

SUMMER RIEHLE
Notary Public, State of Texas
Comm. Expires 07-17-2028
Notary ID 124830629

Notary Public, State of Texas
My Commission Expires: 7/17/2028

Exhibit 13

*Affidavit of Deborah L. Crain*