| **From:** | Len Walker |
| **To:** | Deborah Crain; Tres Gibbs |
| **Subject:** | Title company language - 5450 Honea Egypt Rd. |
| **Date:** | Tuesday, April 22, 2025 4:00:23 PM |
| **Attachments:** | image001.png |

Deborah and Tres,

Here is the title commitment Schedule C language of concern:

5.   Vendor's Lien retained in Deed filed 04/06/2022, recorded in/under Clerk's File No. 2022043836, Official Public Records, Montgomery County, Texas, from Erik C. Ostrander and Darla Ostrander, husband and wife to Alliance Farm and Ranch LLC, securing the payment of one note in the principal amount of $3,800,636,00, bearing interest and payable to the order of  Erik C, Ostrander and Darla Ostrander, additionally secured by Deed of Trust , executed by Alliance Farm and Ranch LLC; recorded in/under Clerk's File No. 2022043837, Official Public Records, Montgomery County, Texas.

Appointment of Substitute Trustees recorded in/under Clerk's File No. 2024095964, Official Public Records, Montgomery County, Texas.

6.   Company finds of record a Substitute Trustee's Deed dated 01/07/2025 filed under County Clerk's File No. 2025002370 of the Real Property Records of Montgomery County, Texas, purporting to foreclose the note recorded under County Clerk's File No. 2022043837 of the Real Property Records of Montgomery County, Texas. However, we find Chapter 7 Banruptcy proceedings filed 01/07/2025, pending under Case No. 25-30155 in the United States Bankruptcy Court for the Southern District of Texas, with Alliance Farm and Ranch, LLC, as debtor. We require dismissal of said case and a discharge of debtor prior to closing.

7.   There is pending under Cause No. 24-07-11639, in the 457th Judicial District Court of Montgomery County, Texas, a civil suit, styled Dustin Etter, et al vs. Alliance Farm and Ranch, LLC, et al. Company is to be furnished with a dismissal with prejudice of said suit prior to closing.

**Len Walker**
Attorney At Law

The Weaver Law Firm
1800 Bering Drive; Suite 1050
Houston, Texas 77057
Phone: 713-572-4900

WeaverLawyers.com

```
*********************************************************************
NOTICE BY THE WEAVER LAW FIRM
This message, as well as any attached document, contains information from The Weaver
Law Firm that is confidential and/or privileged, or may contain attorney work
product.  The information is intended only for the use of the addressee named above.
If you are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution or the taking of any action in reliance on the contents of this
message or its attachments is strictly prohibited, and may be unlawful.  If you have
received this message in error, please delete all electronic copies of this message
and its attachments, if any, destroy any hard copies you may have created, without
disclosing the contents, and notify the sender immediately. Unintended transmission
does not constitute waiver of the attorney-client privilege or any other privilege.
Unless expressly stated otherwise, nothing contained in this message should be
construed as a digital or electronic signature, nor is it intended to reflect an
intention to make an agreement by electronic means.
```

Exhibit 14

**From:** Tres Gibbs <tgibbs@CokinosLaw.com>
**Sent:** Wednesday, April 23, 2025 10:01 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Len Walker <lwalker@weaverlawyers.com>; Summer Riehle <sriehle@E-merger.law>;
Shannon Frizzell <sfrizzell@E-merger.law>
**Subject:** Re: **Rule 408 - Settlement Info - Confidential**


Thanks, Deborah. How are we doing with the remaining issues in the larger settlement, eg, where are we putting the excess funds? With the bankruptcy court's confirmation that the automatic stay did not apply to the foreclosure, neither AFP nor Noah's client have a claim to the property itself. I really think Jerrod needs to understand that the only thing holding the sale up from the title company's standpoint is the lis pendens, which as you correctly noted was terminated by the foreclosure and subject to expungement.


I just think everyone needs to be reasonable here so we can get this done.


Thanks,

Tres


RHG3

Exhibit 15

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Noah Meek |
| **Cc:** | Summer Riehle; Shannon Frizzell; Stephen Coselli |
| **Subject:** | RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316 |
| **Date:** | Monday, April 28, 2025 3:16:25 PM |
| **Attachments:** | image001.png |

Well settled Texas law.  Any alleged right regarding the property is a collateral right and therefore the Notice of Lis Pendens should not have been filed.  We will send you the service copy.  Thanks.

Deborah L. Crain

President, E-Merger.Law

Licensed in Texas and Louisiana

Certified Business Coach

Physical Address:

1334 Brittmoore Road, #2314

Houston, Texas 77043

Office: 346-535-0818

Cell: 832-449-0222

**From:** Noah Meek <nmeek@imtexaslaw.com>
**Sent:** Monday, April 28, 2025 3:12 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Deborah,

What would the basis of the motion to expunge be?

Thanks,

**Noah Meek**
Senior Counsel
**Irelan McDaniel, PLLC**
www.IMTexasLaw.com



NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute, or use the

Exhibit 16

message in any manner; and (iii) notify the sender immediately.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, April 28, 2025 3:07 PM
**To:** Noah Meek <nmeek@imtexaslaw.com>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Noah – we will be filing a Notice of Co-Counsel in the above case today.  Additionally, we will be filing a Motion to Expunge the Notice of Lis Pendens and requesting an emergency hearing on same. As soon as I have that hearing information, I will reach out to you accordingly.

I am writing to you for certificate of conference purposes.  I know you are opposed but wanted to confer anyway.  Thank you.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

Exhibit 16

Received and E-Filed for Record
4/28/2025 4:01 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Beverly Kennedy

**CAUSE NO. 24-07-11639**

| | | |
|---|---|---|
| DUSTIN ETTER, | § | IN THE DISTRICT CLERK OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| AE PARTNERS HOLDINGS, INC., AEP | § | |
| ASSETS HOLDINGS, LLC, ALLIANCE | § | |
| ENERGY PARTNERS, LLC, ALLIANCE | § | |
| FARM & RANCH, LLC, CONNECT | § | |
| REALTY.COM, INC., CORINA FURR, | § | |
| JEROD P. FURR, HEAVEN LEE | § | |
| PROPERTIES, LLC D/B/A LUX GROUP | § | |
| TX, JEANA LEA HURLEY, INVICTIS | § | |
| DRILLING MOTORS, LLC, | § | |
| *Defendants.* | § | 457TH JUDICIAL DISTRICT |

## EMERGENCY MOTION TO EXPUNGE NOTICE OF LIS PENDENS

TO THE HONORABLE JUDGE OF SAID COURT:

Now into Court, through undersigned counsel, comes Jerod Furr and Alliance Farm and Ranch, LLC, who files this Motion to Expunge the Notice of Lis Pendens filed by Dustin Etter (for property that is scheduled to be sold May 5, 2025), and would show the Court as follows:

### Background

1.     The dispute between Dustin Etter and Jerod Furr (and the related entities) is a partnership dispute.  This case is about money damages, and each party's right to seek same with their respective claims and counterclaims.  Movant (Alliance Farm and Ranch, LLC) is the former owner of the real property located at 5450 Honea Egypt Road, Montgomery, Texas.  On January 7, 2025, the property was foreclosed upon through a non-judicial foreclosure by Erik and Darla Ostrander.  A copy of the foreclosure is attached as **Exhibit 1.**

### Lis Pendens Filing

2.     On or about August 5, 2024, a Notice of Lis Pendens was filed by Dustin Etter, through counsel, in the above referenced cause number and asserting claims related to the above-

Exhibit 17

described property. In particular, Etter urges that "Notice is given that the Proceeding is pending and that the Party Filing Lis Pendens is affirmatively seeking title to, the establishment of an interest in, or enforcement of an encumbrance against the Property". A copy of the Notice of Lis Pendens is attached as **Exhibit 2**. However, as set forth above, the property subject to the Lis Pendens was foreclosed upon. Moreover, the pleadings in this case do not establish "a real property claim". As such, the Lis Pendens should be expunged from the property records.

**<u>Grounds for Expunction of Notice of Lis Pendens</u>**

3.      Section 12.0071(c) of the Property Code provides:

> (c) The court shall order the notice of lis pendens expunged if the court determines that:
>
> (1) the pleading on which the notice is based does not contain a real property claim;
>
> (2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or
>
> (3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d). Tex. Prop. Code Ann. § 12.0071(c) (Supp.) <u>In re Chong, 2019 Tex. App. LEXIS 5263, *4</u>

4.      The causes of action listed in the Etter Eighth Amended Petition are breach of fiduciary duty, fraud, statutory fraud, restitution, vicarious and participatory liability, application for receivership, and a request for injunctive relief. In their pleading and prayer, Dustin Etter asks that he be awarded "title to the property". Etter urges that the property in dispute "should have been bought by another entity", namely AE Partners, and in a nutshell, that Jerod Furr, individually and through Alliance Farm and Ranch, LLC, should not have purchased the property and/or taken a loan from Alliance Energy Partners for anything related to the property in dispute.

5.      However, the controlling case law indicates that Plaintiff has not alleged a "real property claim" under section 12.0071(c). *See, In Flores v. Haberman*, 915 S.W.2d 477 (Tex.

1995) (per curiam) (orig. proceeding), wherein the plaintiffs brought a suit for conversion against Flores, alleging that he converted property of the plaintiffs and used the proceeds to buy certain real properties. In their petition, plaintiffs sought the imposition of a constructive trust on the properties and filed notices of lis pendens on the properties. *Id.* at 478. Because the plaintiffs sought a constructive trust in the purchased properties only to satisfy the judgment they sought against Flores, the Texas Supreme Court held the plaintiffs' interest is no more than a collateral interest in the properties and the notices of lis pendens were therefore improper. *Id.* (citing *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding)).2 <u>In re Chong, 2019 Tex. App. LEXIS 5263, *6-7</u>

6. While the plaintiff may urge differently, these principles apply to conversion claims. Typically, in a conversion suit, the claimant alleges that the proceeds of the converted property were used to purchase real estate and then seeks a constructive trust on that real property. In these cases, the courts have found that imposing a constructive trust on the real estate to satisfy the judgment against the adversary is asserting only a collateral interest in the real property and that a lis pendens is improper. *See Countrywide Home Loans, Inc.*, 240 S.W.3d at 6 (citing *In re Wolf*, 65 S.W.3d at 806).  <u>In re Chong, 2019 Tex. App. LEXIS 5263, *7-8</u>.

7. In the instant matter, Plaintiff cites no authority in his pleadings that supports more than a collateral interest in the property and fails to state a claim that would show that supports an award of the real property to the Plaintiff.  Moreover, the property is worth approximately $6,800,000.00. A copy of the current sale contract is attached as **Exhibit 3**.  At the most, Dustin Etter can only claim that AEP loaned Alliance Farm and Ranch, LLC, $1,000,000.00, significantly less than the value of the property.  Dustin Etter therefore has no basis to ask this court for full title

to the property.  What Etter is trying to do is to prevent a third party, not related to this suit at all, from selling the property.  This type of action should not be allowed at all.

8.      Texas courts have repeatedly rejected these types of claims, i.e., where one partner claims the other had no authority to loan money and thus Etter is seeking a money damage claim against Furr and the related entities.   "However, this court has repeatedly rejected this logic. Like *Moss and Chong*, this case involves "the use of funds obtained from the plaintiff to purchase real property." *Chong*, 2019 Tex. App. LEXIS 5263, 2019 WL 2589968, at *3; *Moss v. Tennant*, 722 S.W.2d 762, 762-63 (Tex. App.— Houston [14th Dist.] 1986, orig. proceeding). In re Jackson, 2024 Tex. App. LEXIS 1842, *8-9. "The suit on which the lis pendens is based must claim a direct interest in real property rather than a collateral interest. In other words, the property against which the lis pendens is filed must **be the subject matter of the underlying lawsuit**. In re Jackson, 2024 Tex. App. LEXIS 1842, *1.  This case is nothing more than a partnership dispute and the Honea Egypt property is not "the subject matter of the underlying lawsuit."

**Foreclosure Sale Also Extinguishes Lis Pendens/Renders it Moot**

9.      A lis pendens is a litigation tool that is predicated on the pendency of a suit at the time of the sale or transfer with respect to which it is sought to be invoked. Thus, a lis pendens has no existence separate and apart from the litigation of which it gives notice. Aguinaga v. JAT Projects Holdings Tex., LLC, 2022 Tex. App. LEXIS 6766, *1.  Now that the foreclosure has occurred, there is no litigation that is attached to the subject property.

10.     While Etter may urge that the Notice of Lis Pendens is valid and can continue to remain in place, the foreclosure renders it void and moot. "[A] resuscitated lis pendens in this case, which warns of appellants' claims against appellees regarding appellees' interest in the Property, can have no effect: those claims are moot because appellees no longer possess an interest in

the Property. <u>Aguinaga v. JAT Projects Holdings Tex., LLC, 2022 Tex. App. LEXIS 6766, *6</u>. Thus, since the property is not owned by Alliance Farm and Ranch, LLC, there is no longer anything in this suit that could be deemed an "interest in the real property". Therefore, this court should issue an order expunging the Notice of Lis Pendens.

### **Attorney's fees and Costs for the Expungement**

11.     "The court in its discretion may require that the party prevailing in the expunction hearing submit an undertaking to the court in an amount determined by the court." <u>Tex. Prop. Code § 12.0071</u>.  Furr asks this Court to look at the underlying motive of Etter and to the extent that Etter does not voluntarily cancel the Notice of Lis Pendens, Furr asks that reasonable attorney's fees and costs be awarded for having to bring this motion. Furr also asks the court to take notice of the intentional interference with the sale of the subject property.

### **Request for Relief**

WHEREFORE, PREMISES CONSIDERED, Movant respectfully requests the Court:

- Grant this Motion to Expunge the Notice of Lis Pendens filed on August 13,2024 in connection with 5450 Honea Egypt Road, Montgomery, Texas 77356;

- Order the County Clerk to remove and expunge the notice from the public records;

- Grant such other and further relief as the Court deems just and proper.

*{signature on next page}*

Respectfully submitted,

E-MERGER LAW, PLLC

*/s/ Deborah L. Crain*

Deborah L. Crain
SBN: 24067319
dcrain@e-merger.law
1334 Brittmoore, Suite 2314
Houston, Texas 77043
Telephone: (346) 535-0818
*Counsel for Jerod Furr and Alliance Farm
and Ranch, LLC*

## CERTIFICATE OF CONFERENCE

On April 28, 2025, the undersigned reached out to Plaintiff's counsel regarding the Motion. Plaintiff's counsel is opposed to the filing of this Motion.

*/s/ Deborah L. Crain*

Deborah L. Crain

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2025, a true and correct copy of the foregoing instrument was served to the listed parties of record pursuant to the Texas Rules of Civil Procedure upon the following:

*/s/ Deborah L. Crain*

Deborah L. Crain

5

DOC# 0038
POSTED
12/06/2024 04:07PM
Rosio Munoz
L. BRANDON STEINMANN, COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

**After recording, return to:**
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 1050
Houston, Texas 77057

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF MONTGOMERY** | § |

## NOTICE OF FORECLOSURE SALE

Date:                          December 6, 2025

Secured Obligations:     Promissory Note ("Note"), dated April 1, 2022, executed by Alliance Farm and Ranch LLC ("Borrower"), as maker, and payable to the order of Erik C. Ostrander and Darla Ostrander ("Beneficiary"), as lender, in the original principal amount of $3,800,636.00, and all extensions, renewals, replacements, and amendments thereof.

Deed of Trust:            Deed of Trust, dated April 1, 2022, executed by Borrower, as grantor, to Brent A. Lane, as trustee, for the benefit of Beneficiary, as lender, recorded as Clerk's File No. 2022043837 in the Official Public Records of Real Property of Montgomery County, Texas.

Substitute Trustees:      Richard D. Weaver and/or Len E. Walker

Substitute Trustees' Address:  1800 Bering Drive, Suite 1050
                                Houston, Texas 77057

**Foreclosure Sale:**

Date:              Tuesday, January 7, 2025

Time:              The sale of the Property (as defined in the Deed of Trust) (such sale is the "Foreclosure Sale") will take place between the hours of 10:00 a.m. and 1:00 p.m. local time, the earliest time at which the Foreclosure Sale will be is 10:00 a.m.

Place:             Montgomery County Courthouse, at the following location: Old 1936 Courthouse at 301 N. Main St., Conroe, Texas 77301, or if the preceding area is no longer the designated area, the area as designated by the Montgomery County Commissioners Court.

Terms of Sale:     The Foreclosure Sale will be conducted as a public auction, and the real property, more particularly described in Exhibit "A", will be sold to the

**EXHIBIT 1**

Exhibit 17
Page 1 of 7

highest bidder for cash, except that Lender's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust.  Because of that default, Beneficiary, the current owner and holder of the Note, has requested Substitute Trustee to sell the Property.

Therefore, notice is given that on and at the Date, Time, and Place of Sale described above, Substitute Trustee will sell the Property by public sale to the highest bidder for cash in accordance with the Deed of Trust

**<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**SUBSTITUTE TRUSTEE:**

Richard D. Weaver

**SUBSTITUTE TRUSTEE:**

Len E. Walker

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

This instrument was acknowledged before me on this 6th day of December 2024, by Richard D. Weaver, as Substitute Trustee, and Len E. Walker, as Substitute Trustee.

GUADALUPE PRICILLA LEON
Notary Public, State of Texas
Comm. Expires 08-14-2027
Notary ID 134506202

Notary Public in and for the State of Texas

Exhibit 17
Page 2 of 7

**EXHIBIT 1**

## EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 17
Page 3 of 7

**EXHIBIT 1**

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, LP. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 17
Page 4 of 7

**EXHIBIT 1**

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

MORE COMMONLY KNOWN AS:  5450 HONEA EGYPT ROAD, MONTGOMERY, TEXAS 77316.

Exhibit 17
Page 5 of 7

EXHIBIT 1

**Doc #: 2025001866**
**Pages 10**

**E-FILED FOR RECORD**
01/07/2025    04:09PM

*L. Brandon Steinmann*
County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/07/2025**

*L. Brandon Steinmann*
County Clerk,
Montgomery County, Texas

*Exhibit 17*

**EXHIBIT 1**

**Doc #: 2025002370**
**Pages 16**

**E-FILED FOR RECORD**
01/08/2025    04:41PM

County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/08/2025**

County Clerk,
Montgomery County, Texas

Exhibit 17
Page 7 of 7

**EXHIBIT 1**



**DOC #2024079612**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**Lis Pendens**

</div>

| | |
|---|---|
| Date: | August 5, 2024 |
| Party Filing Lis Pendens: | DUSTIN ETTER, ALLIANCE ENERGY PARTNERS, LLC, AE PARTNERS HOLDINGS, INC., AE PARTNERS HOLDINGS, LLC, AEP ASSET HOLDINGS, LLC and INVICTIS DRILLING MOTORS, LLC |
| Party's Attorney's Address: | 309 East Pecan Street<br>Gainesville, TX  76240 |
| Other Party to Proceeding | JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTORS, LLC |
| Other Party's Address: | 5450 HONEA EGYPT RD., MONTGOMERY, TX 77356 |

Proceeding:

Court: IN THE DISTRICT COURT MONTGOMERY COUNTY - 457TH JUDICIAL DISTRICT COURT OF MONTGOMERY COUNTY, TEXAS

Cause Number:    24-07-11639

Style of Case: DUSTIN ETTER, ALLIANCE ENERGY PARTNERS, LLC, AE PARTNERS HOLDINGS, INC., AE PARTNERS HOLDINGS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTORS, LLC, PLAINTIFFS V. JEROD P. FURR, CORINA FURR, ALLIANCE FARM & RANCH, LLC, AE PARTNERS HOLDINGS, LLC, AE PARTNERS HOLDINGS, INC., ALLIANCE ENERGY PARTNERS, LLC, AEP ASSET HOLDINGS, LLC, AND INVICTIS DRILLING MOTOTS, LLC.

Type of Proceeding: ORIGINAL   PETITION   AND   APPLICATION   FOR TEMPORARY RESTRAINING ORDER & TEMPORARY INJUNCTION

Property:    ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT

Exhibit 17<br>Page 1 of 5

<div align="center">

**EXHIBIT 2**

</div>

OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCP) NO. 2004-038796 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES..

Notice is given that the Proceeding is pending and that the Party Filing Lis Pendens is affirmatively seeking title to, the establishment of an interest in, or enforcement of an encumbrance against the Property.

JONATHAN W. HENLEY
Attorney for DUSTIN ETTER
State Bar No.: 24057896
309 E. Pecan
Gainesville, TX 76240
Telephone: (940) 668-2600
Facsimile: (940) 668-6880
E-mail: j.henley@bennetthenleylaw.com

ACKNOWLEDGMENT

STATE OF TEXAS                )

COUNTY OF COOKE          )

BEFORE ME, the undersigned Notary Public, on this day personally appeared JONATHAN W. HENLEY, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same has been executed for the purposes and consideration therein expressed.

GIVEN under my hand and seal of office this *August 5*, 2024.

Notary Public, State of Texas



LINDA LOGUE MATAS
Notary ID #128769457
My Commission Expires
November 6, 2027

Exhibit 17
Page 2 of 5

**EXHIBIT 2**

EXHIBIT "A"

ALL THAT CERTAIN 72.9553 ACRE TRACT OF LAND SITUATED IN THE MATTHEW CARTWRIGHT SURVEY, ABSTRACT NO. 151 AND THE ARCHIBALD HODGE SURVEY, ABSTRACT NO. 18, MONTGOMERY COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALL 363.560 ACRE TRACT DESCRIBED IN DEED FILED FOR RECORD IN VOLUME 720, PAGE 857 OF THE DEED RECORDS OF MONTGOMERY COUNTY, TEXAS; SAID 72.9553 ACRE TRACT BEING THE SAME PROPERTY DESCRIBED IN WARRANTY DEED FILED FOR RECORD UNDER MONTGOMERY COUNTY CLERK'S FILE (MCCF) NO. 2004-038793 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON ROD FOUND IN THE SOUTH LINE OF SAID MATTHEW CARTWRIGHT SURVEY AND THE NORTH LINE OF THE THOMAS CURRY SURVEY, ABSTRACT NO. 1136, MONTGOMERY COUNTY, TEXAS, AT AN ANGLE POINT IN THE WOODFOREST PARTNERS, L.P. TRACT (MCCF NO. 2006-103723) FOR THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 89°45'07" WEST ALONG A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 1348.18 FEET TO A POINT AT THE NORTHWEST CORNER OF LOT 30, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET 3, SHEET 132 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS;

THENCE NORTH 89°49'39" WEST ALONG THE NORTH LINE OF MONTGOMERY TRACE, SECTION 4, AT A DISTANCE OF 2448.64 FEET PASS AN IRON ROD FOUND AT THE NORTHWEST CORNER OF LOT 1, BLOCK 1, OF MONTGOMERY TRACE, SECTION 4, AND CONTINUE FOR A TOTAL DISTANCE OF 2478.64 FEET TO A P.K. NAIL SET IN THE CENTERLINE OF HONEA EGYPT ROAD (A 60-FOOT ROADWAY EASEMENT) AND IN THE EAST LINE OF SAID ARCHIBALD HODGE SURVEY AND THE WEST LINE OF SAID MATTHEW CARTWRIGHT SURVEY FOR THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 03°40'36" WEST ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 119.01 FEET TO A P.K. NAIL SET AT AN ANGLE POINT; THENCE NORTH 05°23'38" WEST CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD, A DISTANCE OF 470.21 FEET TO A P.K. NAIL SET AT THE BEGINNING POINT OF A CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET;

THENCE IN A NORTHWESTERLY DIRECTION CONTINUING ALONG THE CENTERLINE OF HONEA EGYPT ROAD WITH SAID CURVE TO THE LEFT, HAVING A RADIUS OF 231.06 FEET, AN ARC LENGTH OF 86.50 FEET TO A P.K.

Exhibit 17
Page 3 of 5

EXHIBIT 2

NAIL SET AT THE SOUTHWEST CORNER OF THE DONALD ALLAN STEFAN AND LINDA C. STEFAN TRACT (MCCF NO. 2000-017069) FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 85°42'15" EAST ALONG THE SOUTH LINE OF SAID STEFAN TRACT, AT A DISTANCE OF 32.17 FEET PASS AN IRON ROD FOUND IN THE LINE OF HONEA EGYPT ROAD, AND CONTINUE FOR A TOTAL DISTANCE OF 3915.91 FEET TO AN IRON ROD FOUND IN A COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT FOR THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00°8'28" WEST ALONG SAID COMMON LINE WITH SAID WOODFOREST PARTNERS TRACT, A DISTANCE OF 976.15 FEET TO THE POINT OF BEGINNING AND CONTAINING 72.9553 ACRES OF LAND.

NOTE:  The Company is prohibited from insuring the area or quantity of land described herein.  Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Exhibit 17
Page 4 of 5

**EXHIBIT 2**

**Doc #: 2024079612**
**Pages 5**

**FILED FOR RECORD**
08/13/2024    10:09AM

County Clerk
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number
sequence on the date and time stamped herein
by me and was duly  RECORDED in the Official Public
Records of Montgomery County, Texas.

**08/13/2024**

County Clerk
Montgomery County, Texas

Exhibit 17
Page 5 of 5

**EXHIBIT 2**



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-04-2024
# FARM AND RANCH CONTRACT
NOTICE: Designed For Use In Sales Of Existing Farms Or Ranches Of Any Size. Not For Use In Complex Transactions.

**1. PARTIES:** The parties to this contract are _____ Erik C Ostrander & Darla R Ostrander
(Seller) and _____ Nathan Milner _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND: The land situated in the County (or Counties) of Montgomery _____
_____,
Texas, described as follows: A0151 A0151 - CARTWRIGHT MATTHEW, TRACT 1-A, SERIAL # SFW013709TXA,
TITLE # MH0047 0103, LABEL # NTA1551549, MODEL FC2441

or as described on attached exhibit, also known as 5450 Honea Egypt Rd, Montgomery, TX 77316
(address/zip code), together with all rights, privileges, and appurtenances pertaining thereto.

B. IMPROVEMENTS:
  (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
  (2) RESIDENTIAL IMPROVEMENTS: Any houses, garages, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:
  (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☑ portable buildings ☑ hunting blinds ☑ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☑ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☑ other: As noted in exhibit A
_____

  (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: All personal property not named in Exhibit A to be
removed 48 hours prior to final walkthrough/closing.                                           .

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing ................... $ 2,040,000
   The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.

B. Sum of all financing described in the attached: ☑ Third Party Financing Addendum,
   ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum .. $ 4,760,000

C. Sales Price (Sum of A and B) ....................................... $ 6,800,000.00

D. The Sales Price ☐ will ☑ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be adjusted based on the difference between 3 _____ acres and the acreage set forth in the survey required by Paragraph 6C. The difference in acreage (either increased or decreased) shall be multiplied by the sum of $ N/A _____ per acre and either added to or subtracted from the Sales Price stated in Paragraph 3C. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within 5 _____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

Initialed for identification by Buyer ____ and Seller ____        TREC NO. 25-16
JLA Realty        5332 FM 1960 E STE C HUMBLE, TX 77346        2817442611        Jasmin Lye        TXR 1701

Exhibit 17
EXHIBIT 3
Page 1 of 27

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316         Page 2 of 11   11-04-2024
(Address of Property)

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, geothermal, water, or other natural resource lease affecting the Property to which Seller is a party.

  ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

  ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

☐ D. SURFACE LEASES: "Surface Lease" means an existing lease for the surface only of the Property (for example, grazing leases, hunting leases, agricultural leases, recreational leases, wind leases, solar leases, timber or forestry leases). (Check all applicable boxes)

  ☐ (1) Seller has delivered to Buyer a copy of all written Surface Leases.

  ☐ (2) Seller provides Buyer with notice of the following oral Surface Lease(s), identifying the type of lease, name of the tenant(s), rental amount, and term: _____

  ☐ (3) Seller has not delivered to Buyer all Surface Leases (whether written or oral). Seller shall provide to Buyer a copy of all the written Surface Leases and notice of all oral Surface Leases, identifying the type of lease, the name of the tenant(s), rental amount, and term, within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Surface Leases and the earnest money shall be refunded to Buyer.

**5. EARNEST MONEY AND TERMINATION OPTION:**

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____ BRPS Title of Texas LLC _____ (Escrow Agent) at _____ 5353 W Alabama St Ste 310, Houston, TX 77056 _____ (address): $ 68,000 _____ as earnest money and $ 1,500 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

  (1) Buyer shall deliver additional earnest money of $ 0 _____ to Escrow Agent within _n/a_____ days after the Effective Date of this contract.

  (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

  (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

  (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___15___ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____ BRPS Title of Texas LLC _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

  (1) The standard printed exception for standby fees, taxes and assessments.

  (2) Liens created as part of the financing described in Paragraph 3.

  (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

Initial _____    Initial _____     Buyer approved

EXHIBIT 3                                          Page 2 of 27

Contract Concerning **5450 Honea Egypt Rd, Montgomery, TX 77316**      Page 3 of 11   11-04-2024
(Address of Property)

(4) The standard printed exception as to marital rights.
(5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☑ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☑ Seller.
(7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. **SURVEY:** The survey must be made by a registered professional land survey or acceptable to the Title Company and Buyer's lender(s). (Check one box only):
☑ (1) Within _____10_____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit or Declaration promulgated by the Texas Department of Insurance (T-47 Affidavit or T-47.1 Declaration). Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date if Seller fails to furnish within the time prescribed both the: (i) existing survey; and (ii) affidavit or declaration. If the Title Company or Buyer's lender does not accept the existing survey, or the affidavit or declaration, Buyer shall obtain a new survey at ☐ Seller's ☑ Buyer's expense no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer may obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier. If Buyer fails to obtain the survey, Buyer may not terminate the contract under Paragraph 2B of the Third Party Financing Addendum because the survey was not obtained.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
☐ (4) No survey is required.

D. **OBJECTIONS:** Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: Commercial Use
_____.
Buyer must object the earlier of (i) the Closing Date or (ii) __10__ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E. **EXCEPTION DOCUMENTS:** Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| N/A | | |
| N/A | | |
| N/A | | |

F. **SURFACE LEASES:** The following Surface Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: N/A
_____.

G. **TITLE NOTICES:**
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or

Initialed for identification by Buyer [ MM ] and Seller [ JL ]      TREC NO. 25-16

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH

Docusign Envelope ID: 83138454-94CF-4A48-9809-2FDE96C09189

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316                    Page 4 of 11    11-04-2024
(Address of Property)

obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer:  The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions.

(11) CERTIFICATE OF MOLD REMEDIATION:  If the Property has been remediated for mold, Seller must provide to Buyer each certificate of mold damage remediation issued under §1958.154, Occupations Code, during the 5 years preceding the sale of the Property.

(12) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, utility, water, drainage, and public improvement districts): N/A

_____.

Seller's failure to provide applicable statutory notices may provide Buyer with remedies or rights to terminate the contract.

**7. PROPERTY CONDITION:**
A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .
**NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.
B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☑ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer.  If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

Initial _____   Initial _____

**Exhibit 17**

Initialed for identification by Buyer [signature]         and Seller [signature]          TREC NO. 25-16

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye          TXR 1701

Page 4 of 11

Contract Concerning **5450 Honea Egypt Rd, Montgomery, TX 77316**     Page 5 of 11   11-04-2024
(Address of Property)

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☐ (1) Buyer accepts the Property As Is.
☑ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: Removal of all scrap metal throughout property
                                                                                                .
(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs to Buyer at closing. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURE:
(1) Seller ☐ is ☑ is not aware of any flooding of the Property which has had a material adverse effect on the use of the Property.
(2) Seller ☑ is ☐ is not aware of any pending or threatened litigation, condemnation, or special assessment affecting the Property.
(3) Seller ☐ is ☑ is not aware of any environmental hazards that materially and adversely affect the Property.
(4) Seller ☐ is ☑ is not aware of any dumpsite, landfill, or underground tanks or containers now or previously located on the Property.
(5) Seller ☐ is ☑ is not aware of any wetlands, as defined by federal or state law or regulation, affecting the Property.
(6) Seller ☐ is ☑ is not aware of any threatened or endangered species or their habitat affecting the Property.
(7) Seller ☑ is ☐ is not aware that the Property is located ☐ wholly ☑ partly in a floodplain.
(8) Seller ☐ is ☑ is not aware that a tree or trees located on the Property has oak wilt.
If Seller is aware of any of the items above, explain (attach additional sheets if necessary):
Have a 'lis pendency that will be removed when current occupant vacates property
                                                                                                .

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_850_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: N/A
                                                                                                
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

## 8. BROKERS AND SALES AGENTS:

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: N/A
                                                                                                

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH

Docusign Envelope ID: 83138454-94CF-4A48-9809-2FDE96C00189

Contract Concerning  5450 Honea Egypt Rd, Montgomery, TX 77316                Page 6 of 11   11-04-2024
(Address of Property)

## 9. CLOSING:

A. The closing of the sale will be on or before _____04/24/2025_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

## 10. POSSESSION:

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

## 11. SPECIAL PROVISIONS: (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.)_____

_____.

## 12. SETTLEMENT AND OTHER EXPENSES:

A. The following expenses must be paid at or prior to closing:
(1) Seller shall pay the following expenses (Seller's Expenses):
(a) releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; brokerage fees that Seller has agreed to pay; and other expenses payable by Seller under this contract;
(b) the following amount to be applied to brokerage fees that Buyer has agreed to pay: ☐ $_____ or ☐ _____% of the Sales Price (check one box only); and
(c) an amount not to exceed $ _____ to be applied to other Buyer's Expenses.
(2) Buyer shall pay the following expenses (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; brokerage fees that Buyer has agreed to pay; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS AND ROLLBACK TAXES:

A. PRORATIONS: Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

Initialed for identification by Buyer [initials] and Seller [initials]            TREC NO. 25-16

EXHIBIT 3                Exhibit F
Page 6 of 27

JLA Realty        5332 FM 1960 E STE C HUMBLE, TX 77346        2817442611        Jasmin Lye        TXR 1701

(Address of Property)

    B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

    A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

    B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

    C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

    D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

    E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

*Exhibit 17*

Initialed for identification by Buyer _____ and Seller _____    **TREC NO. 25-16**

**EXHIBIT 3**

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 83138454-94CF-4A48-9B09-2FDE96CD9189
Case 25-30153  Document 254-1  Filed in TXSB on 03/04/26  Page 30 of 308

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316          Page 8 of 11   11-04-2024
(Address of Property)

## 20. FEDERAL REQUIREMENTS:

A. If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

B. The Agriculture Foreign Investment Disclosure Act (AFIDA) of 1978 requires that a foreign person who acquires, disposes of, or holds an interest in United States agricultural land must disclose such transactions and holdings to the Secretary of Agriculture. Foreign persons must file an FSA-153 in the Farm Service Agency (FSA) Service Center where the land is physically located within 90 days of the date of the transaction. Failure to report is subject to civil penalty up to 25 percent of the fair market value of the land on the date the penalty is assessed. Consult an attorney or tax professional.

## 21. NOTICES:
All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:**

Phone:

E-mail/Fax: nathan@milnerproperties.com

E-mail/Fax:

With a copy to Buyer's agent at:
Jasmin@JasminLye.com

**To Seller at:**

Phone:

E-mail/Fax: eostrander@appmach.com

E-mail/Fax:

With a copy to Seller's agent at:
Tilah@luxgrouptx.com

## 22. AGREEMENT OF PARTIES:
This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☑ Third Party Financing Addendum
☐ Seller Financing Addendum
☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
☐ Buyer's Temporary Residential Lease
☐ Loan Assumption Addendum
☐ Addendum for Sale of Other Property by Buyer
☐ Addendum for "Back-Up" Contract
☐ Addendum for Coastal Area Property
☐ Addendum for Authorizing Hydrostatic Testing
☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
☐ Addendum for Reservation of Oil, Gas and Other Minerals
☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
☐ Seller's Temporary Residential Lease
☐ Short Sale Addendum
☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
☐ Addendum for Property in a Propane Gas System Service Area
☐ Addendum Regarding Residential Leases
☐ Addendum Regarding Fixture Leases
☐ Addendum for Section 1031 Exchange
☑ Other (list): Exhibit A

Exhibit 17

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 83138454-94CE-4A48-9B09-2EDE96CD9189

Contract Concerning <u>5450 Honea Egypt Rd, Montgomery, TX 77316</u> Page 9 of 11 11-04-2024
(Address of Property)

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: fly.law@comcast.net

Seller's
Attorney is:

Phone: 

Phone: 

Fax: 

Fax: 

E-mail: 

E-mail: 

**EXECUTED the _____ day of** 2/27/2025 **, 20____ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

*Nathan Milner*

dotloop verified
02/27/25 3:54 PM CST
DHHG-T8SQ-JOBG-SMPC

Buyer

Signed by:

Seller
95F5E0A46B13428...

2/27/2025

Buyer

Signed by:

Seller
2161DE204FEB431...

2/27/2025



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-16. This form replaces TREC NO. 25-15.

Exhibit 17

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 83138454-94CF-4A48-9B09-2EDE96C09189
Case 25-30155  Document 254-1  Filed in TXSB on 03/04/26  Page 32 of 308

Contract Concerning 5450 Honea Egypt Rd, Montgomery, TX 77316        Page 10 of 11   11-04-2024
                                    (Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ 2.5% _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                                    Listing Broker:

By: *Jasmin Lye*                                 By: *Tilah Spruel*        2/27/2025
dotloop verified                                 DocuSigned by:
02/27/25 2:47 PM CST
HC7M-8LNU-GQAY-HHOF

### BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| JLA Realty | 9000562 | Connect Realty.com | 0573369 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| | | | |
| Jasmin Lye | 660507 | Tilah Lee Spruel | 726680 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| | | Lux Group | |
| Team Name | | Team Name | |
| | | | |
| jasmin@jasminlye.com | 832-857-9394 | tilah@luxgrouptx.com | 702-408-4464 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| | | | |
| John Altic | | Mary Goudreault | 0538377 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| | | | |
| 5332 FM 1960 E, STE C | | 2170 Buckthorne Place, Ste 200 | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| | | | |
| HUMBLE, TX 77346 | | The Woodlands, TX 77380 | |
| City | State | Zip | City | State | Zip |

represents  ☑ Buyer only as Buyer's agent
            ☐ Seller as Listing Broker's subagent

Selling Associate                                License No.

Team Name

Selling Associate's Email Address                Phone

Licensed Supervisor of Selling Associate         License No.

Selling Associate's Office Address

City                  State                  Zip

represents  ☑ Seller only
            ☐ Buyer only
            ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☑ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $_____ or ☑ 2.5 % of the total Sales Price; and (b) ☑ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $_____ or ☑ 2.5 % of the total Sales Price.  Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**DO NOT SIGN IF THERE IS A SEPARATE AGREEMENT FOR PAYMENT OF BROKERS' FEES. Brokers' fees are negotiable.  Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

Signed by:
_____  2/27/2025         *Nathan Milner*            dotloop verified
Seller                                       Buyer                       02/27/25 3:54 PM CST
F5E0A46B13428...                                                         FY5Y-N7DL-62L7-0HNJ

Signed by:
_____  2/27/2025         _____    Exhibit 17
Seller                                       Buyer
F6F0E204FEB431...

| JLA Realty | 5332 FM 1960 E STE C HUMBLE, TX 77346 | 2817442611 | Jasmin Lye | TREC NO. 25-16 |

TXR 1701

dotloop signature verification: dtlp.us/ROEZ-uvP0-Z7WH
Docusign Envelope ID: 82138454-942E-4A48-9B09-2FDE96C09189

Contract Concerning _5450 Honea Egypt Rd, Montgomery, TX 77316_____ age 11 of 11   11-04-2024
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $1,500.00_____ (Option Fee) in the form of _____
is acknowledged.

Escrow Agent                                                                                                      Date

## EARNEST MONEY RECEIPT

Receipt of $68,000.00_____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent                         Received by         Email Address                         Date/Time

Address                                                                                              Phone

City                                  State                        Zip                             Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent                         Received by         Email Address                         Date

Address                                                                                              Phone

City                                  State                        Zip                             Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $.00_____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent                         Received by         Email Address                         Date/Time

Address                                                                                              Phone

City                                  State                        Zip                             Fax

Exhibit 17

**EXHIBIT 3**

TREC NO. 25-16
TXR 1701

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye

dotloop signature verification: dtlp.us/XvZw-Rmfc-SzA9
Docusign Envelope ID: 8313845E-94CF-4A48-9B09-2FDE96C09189
Case 25-30155   Document 254-1   Filed in TXSB on 03/04/26   Page 34 of 308

# Exhibit A

 **5450**

Concerning property located at:

~~5850~~ Honea Egypt Road, Montgomery, TX 77316

- All furnishings in bar
- Case JX95 Tractor with Brush Hog SN#33678
- Case 586 Forklift SD#76250-2
- 2/ea Kubota Zero Turn Diesel Mowers SN#53851 & 1229
- 1/ea Honda ATV (Green side by side)
- 500 Glon Diesel Fuel Tank on wheels
- Fertilizer Spreader
- One 60KW Diesel Generator SN #8800152
- 2/ea 5 Ton overhead cranes in Shop
- Challenger Car Lift
- Paint Booth
- 4/ea Cattle as present during showing
- 2/ea Donkeys as present during showing
- TVs in Bar
- Walk-in Cooler and Freezer in Barn
- Ice Maker in Barn

*Final bill of sale to be provided at closing and funding for all items noted above*

Buyer:

Nathan Milner

dotloop verified
02/27/25 3:54 PM CST
NSU3-WZVP-QBEK-TR9U

Seller:

2/27/2025

95F5E0A46B13428...

2/27/2025

276F0E204FEB431...

Exhibit 17
Page 12 of 27

EXHIBIT 3

dotloop signature verification: dtlp.us/fSYt-2f2s-hEQs
Docusign Envelope ID: 83138454-94CF-4A48-9809-2FDE96C09189

11-04-2024



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM

## TO CONTRACT CONCERNING THE PROPERTY AT



5450 Honea Egypt Rd, Montgomery, TX 77316

(Street Address and City)

1. **TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

☑ A. CONVENTIONAL FINANCING:

☑ (1)  A first mortgage loan in the principal amount of $4,760,000_____(excluding any financed PMI premium), due in full in __30__ year(s), with interest not to exceed ___7%__ per annum for the first ___30___ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____1% of the loan.

☐ (2)  A second mortgage loan in the principal amount of $_____(excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $_____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ C. FHA INSURED FINANCING:  A Section _____ FHA insured loan of not less than $_____(excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

☐ D. VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ E. USDA GUARANTEED FINANCING: A USDA-guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ F. REVERSE MORTGAGE FINANCING: A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan. The reverse mortgage loan ☐will

☐ will not be an FHA insured loan.

☐ G. OTHER FINANCING: A loan not of a type described above from _____ (name of lender) in the principal amount of $_____ due in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges not to exceed _____% of the loan.  Buyer ☐ does ☐ does not waive all rights to terminate the contract under Paragraph 2B of this addendum for the loan described in this paragraph.

2. **APPROVAL OF FINANCING**:  Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

*Exhibit 17*

Initialed for identification by Buyer ____ ____ and Seller ____ ____

JLA Realty     5332 FM 1960 E STE C HUMBLE, TX 77346     2817442611     Jasmin Lye

**EXHIBIT B**

TREC NO. 40-11
TXR 1901

11-04-2024

Third Party Financing Addendum Concerning

Page 2 of 2

**5450 Honea Egypt Rd, Montgomery, TX 77316**
(Address of Property)

A. BUYER APPROVAL *(Check one box only)*:

☑ This contract is subject to Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may terminate this contract within __30__ days after the Effective Date of the contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates the contract under this provision, this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not terminate the contract under Paragraph 2A, the contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.

☐ This contract is not subject to Buyer obtaining Buyer Approval.

B. PROPERTY APPROVAL: If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer may terminate this contract on or before the 3rd day before the Closing Date by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer. If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

3. **SECURITY**: If required by Buyer's lender, each note for the financing described above must be secured by vendor's and deed of trust liens.

4. **FHA/VA REQUIRED PROVISION**: If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirement in Paragraph 2B does not apply to this Paragraph 4.

A. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

B. If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

C. If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

5. **AUTHORIZATION TO RELEASE INFORMATION**:

A. Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.

B. Seller and Buyer authorize Buyer's lender, title company, and Escrow Agent to disclose and furnish a copy of the closing disclosures and settlement statements to the parties' respective brokers and sales agents provided under Broker Information.

| *Nathan Milner* | dotloop verified 02/27/25 3:54 PM CST 4YHU-IQZK-1OX5-STCD | Signed by: [signature] 5E0A46B13428... | 2/27/2025 |
| Buyer | | Seller | |

| | | Signed by: [signature] 0E204FEB431... | 2/27/2025 |
| Buyer | | Seller | |



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-11. This form replaces TREC No. 40-10.

**Exhibit 17**

dotloop signature verification: dtlp.us/rUBS-nFAz-ltrj
Docusign Envelope ID: 83138454-94CF-4A48-9809-2FDE96C09189
Case 25-30155 Document 254-1 Filed in TXSB on 03/04/26 Page 37 of 308

## TEXAS REALTORS

# SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2022

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT     **5450 Honea Egypt Road**
**Montgomery, Texas 77316**

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller  x  is    is not   occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property? __ _____ (approximate date) or __ never occupied the Property

**Section 1. The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)**
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U |
|---|---|---|---|
| Cable TV Wiring | x | | |
| Carbon Monoxide Det. | x | | |
| Ceiling Fans | x | | |
| Cooktop | x | | |
| Dishwasher | x | | |
| Disposal | x | | |
| Emergency Escape Ladder(s) | | x | |
| Exhaust Fans | x | | |
| Fences | x | | |
| Fire Detection Equip. | x | | |
| French Drain | x | | |
| Gas Fixtures | | x | |
| Liquid Propane Gas: | x | | |
| -LP Community (Captive) | | x | |
| -LP on Property | x | | |

| Item | Y | N | U |
|---|---|---|---|
| Natural Gas Lines | | x | |
| Fuel Gas Piping: | | x | |
| -Black Iron Pipe | | x | |
| -Copper | | x | |
| -Corrugated Stainless Steel Tubing | | x | |
| Hot Tub | | x | |
| Intercom System | | x | |
| Microwave | x | | |
| Outdoor Grill | | x | |
| Patio/Decking | x | | |
| Plumbing System | x | | |
| Pool | x | | |
| Pool Equipment | x | | |
| Pool Maint. Accessories | x | | |
| Pool Heater | x | | |

| Item | Y | N | U |
|---|---|---|---|
| Pump: x sump ___ grinder | x | | |
| Rain Gutters | x | | |
| Range/Stove | x | | |
| Roof/Attic Vents | x | | |
| Sauna | | x | |
| Smoke Detector | x | | |
| Smoke Detector - Hearing Impaired | | x | |
| Spa | x | | |
| Trash Compactor | | x | |
| TV Antenna | x | | |
| Washer/Dryer Hookup | x | | |
| Window Screens | x | | |
| Public Sewer System | | x | |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | x | | | ___ electric ___ gas number of units: _____ |
| Evaporative Coolers | | x | | number of units: _____ |
| Wall/Window AC Units | x | | | number of units: 4 |
| Attic Fan(s) | x | | | if yes, describe: temperature controled exaust fans in attic |
| Central Heat | x | | | ___ electric x gas number of units: 7 |
| Other Heat | x | | | if yes, describe: 4 Gree Mini Split AC/Heat Units |
| Oven | x | | | number of ovens: 5 ___ electric x gas x other: |
| Fireplace & Chimney | x | | | ___ wood x gas logs ___ mock ___ other: |
| Carport | | x | | ___ attached ___ not attached |
| Garage | x | | | x attached ___ not attached |
| Garage Door Openers | x | | | number of units: 2 number of remotes: 4 |
| Satellite Dish & Controls | | x | | ___ owned ___ leased from: |
| Security System | x | | | x owned ___ leased from: |

(TXR-1406) 07-10-23     Initialed by: Buyer: _____, _____, and Seller: _____, _____     Page 1 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380     Phone: 2813063020     Fax:     Exhibit 17
Tilah Lee Spruel     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com     5450 Honea Egypt
02/25/25 11:28 AM CST     Page 15 of 27
EXHIBIT 3

**5450 Honea Egypt Road**
**Montgomery, Texas 77316**

Concerning the Property at _____

| | | | |
|---|---|---|---|
| Solar Panels | | x | __ owned __ leased from: |
| Water Heater | x | | x_ electric x_ gas __ other: _____ number of units: 5 |
| Water Softener | x | | x_ owned __ leased from: |
| Other Leased Items(s) | | x | if yes, describe: _____ |
| Underground Lawn Sprinkler | x | | __ automatic __ manual  areas covered |
| Septic / On-Site Sewer Facility | x | | if yes, attach Information About On-Site Sewer Facility (TXR-1407) |

Water supply provided by: __ city x_ well __ MUD __ co-op __ unknown __ other: _____
Was the Property built before 1978? __ yes x_ no __ unknown
   (If yes, complete, sign, and attach TXR-1906 concerning lead-based paint hazards).
Roof Type: _Composite_____ Age: _20yrs_____ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)? __ yes x_ no __ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? __ yes x_ no If yes, describe (attach additional sheets if necessary): _____
_____
_____
_____

**Section 2. Are you (Seller) aware of any defects or malfunctions in any of the following? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Item | Y | N | Item | Y | N | Item | Y | N |
|---|---|---|---|---|---|---|---|---|
| Basement | | x | Floors | | x | Sidewalks | | x |
| Ceilings | | x | Foundation / Slab(s) | | x | Walls / Fences | | x |
| Doors | | x | Interior Walls | | x | Windows | | x |
| Driveways | | x | Lighting Fixtures | | x | Other Structural Components | | x |
| Electrical Systems | | x | Plumbing Systems | | x | | | |
| Exterior Walls | | x | Roof | | x | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____
_____
_____

**Section 3. Are you (Seller) aware of any of the following conditions? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Condition | Y | N | Condition | Y | N |
|---|---|---|---|---|---|
| Aluminum Wiring | | x | Radon Gas | | x |
| Asbestos Components | | x | Settling | | x |
| Diseased Trees: __ oak wilt _____ | | x | Soil Movement | | x |
| Endangered Species/Habitat on Property | | x | Subsurface Structure or Pits | | x |
| Fault Lines | | x | Underground Storage Tanks | | x |
| Hazardous or Toxic Waste | | x | Unplatted Easements | | x |
| Improper Drainage | | x | Unrecorded Easements | | x |
| Intermittent or Weather Springs | | x | Urea-formaldehyde Insulation | | x |
| Landfill | | x | Water Damage Not Due to a Flood Event | | x |
| Lead-Based Paint or Lead-Based Pt. Hazards | | x | Wetlands on Property | | x |
| Encroachments onto the Property | | x | Wood Rot | | x |
| Improvements encroaching on others' property | | x | Active infestation of termites or other wood destroying insects (WDI) | | x |
| Located in Historic District | | x | Previous treatment for termites or WDI | | x |
| Historic Property Designation | | x | Previous termite or WDI damage repaired | | x |
| Previous Foundation Repairs | | x | Previous Fires | x | |

(TXR-1406) 07-10-23    Initialed by: Buyer: _____ , _____ and Seller: _____ , _____    Page 2 of 7
Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380    Phone: 2813063020    Fax:    5450 Honea Egypt
Tilah Lee Spruel    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Page 16 of 27

Exhibit 17
EXHIBIT 3

**5450 Honea Egypt Road**
**Montgomery, Texas  77316**

Concerning the Property at _____

| | | |
|---|---|---|
| Previous Roof Repairs | | |
| Previous Other Structural Repairs | x | |
| Previous Use of Premises for Manufacture of Methamphetamine | x | |

| | | |
|---|---|---|
| Termite or WDI damage needing repair | | x |
| Single Blockable Main Drain in Pool/Hot Tub/Spa* | | x |

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____
Fire damaged water well tank, softer/filtration system and window.  Water well tank, piping,
electrical, softener/filter replaced Jan 2024
_____
_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.  Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice?** __ yes  x no  If yes, explain (attach additional sheets if necessary): _____
_____
_____
_____
_____

**Section 5.  Are you (Seller) aware of any of the following conditions?* (Mark Yes (Y) if you are aware and check wholly or partly as applicable. Mark No (N) if you are not aware.)**

| Y | N | |
|---|---|---|
| __ | x | Present flood insurance coverage. |
| __ | x | Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir. |
| __ | x | Previous flooding due to a natural flood event. |
| __ | x | Previous water penetration into a structure on the Property due to a natural flood. |
| x | __ | Located __ wholly  x partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE, AO, AH, VE, or AR). |
| __ | x | Located __ wholly __ partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded)). |
| __ | x | Located __ wholly __ partly in a floodway. |
| __ | x | Located __ wholly __ partly in a flood pool. |
| __ | x | Located __ wholly __ partly in a reservoir. |

If the answer to any of the above is yes, explain (attach additional sheets as necessary): _____
_____
_____
_____

***If Buyer is concerned about these matters, Buyer may consult Information About Flood Hazards (TXR 1414).**

*For purposes of this notice:*

*"100-year floodplain" means any area of land that: (A)  is identified on the flood insurance rate map as a special flood hazard area, which is designated as Zone A, V, A99, AE, AO, AH, VE, or AR on the map; (B)  has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and (C)  may include a regulatory floodway, flood pool, or reservoir.*

*"500-year floodplain" means any area of land that: (A)  is identified on the flood insurance rate map as a moderate flood hazard area, which is designated on the map as Zone X (shaded); and (B)  has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate risk of flooding.*

*"Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers.*

(TXR-1406) 07-10-23          Initialed by: Buyer:  _____, _____ and Seller: _____ , _____          Page 3 of 7

02/25/25
11:28 AM CST

EXHIBIT 3

dotloop signature verification: dtlp.us/rUBS-nFAz-Itrj
Docusign Envelope ID: 83138454-94CF-4A48-9809-2FDE96C09189
Case 25-30155 Document 254-1 Filed in TXSB on 03/04/26 Page 40 of 308

**5450 Honea Egypt Road**
Concerning the Property at _____
**Montgomery, Texas  77316**

*"Flood insurance rate map" means the most recent flood hazard map published by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).*

*"Floodway" means an area that is identified on the flood insurance rate map as a regulatory floodway, which includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation more than a designated height.*

*"Reservoir" means a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land.*

**Section 6. Have you (Seller) ever filed a claim for flood damage to the Property with any insurance provider, including the National Flood Insurance Program (NFIP)?*** __ yes _x_ no  If yes, explain (attach additional sheets as necessary): _____

_____

_____

*Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s).

**Section 7. Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the Property?** __ yes _x_ no  If yes, explain (attach additional sheets as necessary): _____

_____

_____

**Section 8. Are you (Seller) aware of any of the following? (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)**

| Y | N | |
|---|---|---|
| __ | x | Room additions, structural modifications, or other alterations or repairs made without necessary permits, with unresolved permits, or not in compliance with building codes in effect at the time. |
| __ | x | Homeowners' associations or maintenance fees or assessments. If yes, complete the following:<br>Name of association: _____<br>Manager's name: _____ Phone: _____<br>Fees or assessments are: $ _____ per _____ and are: __ mandatory __ voluntary<br>Any unpaid fees or assessment for the Property? __ yes ($ _____ ) __ no<br>If the Property is in more than one association, provide information about the other associations below or attach information to this notice. |
| __ | x | Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following:<br>Any optional user fees for common facilities charged? __ yes __ no If yes, describe: _____ |
| __ | x | Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property. |
| __ | x | Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.) |
| __ | x | Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property. |
| __ | x | Any condition on the Property which materially affects the health or safety of an individual. |
| __ | x | Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold.<br>If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation). |
| __ | x | Any rainwater harvesting system located on the Property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source. |

(TXR-1406) 07-10-23          Initialed by: Buyer: _____ , _____ and Seller: _____ , _____          Page 4 of 7

02/25/25
11:28 AM CST

dotloop signature verification: dtlp.us/rUBS-nFAz-ltrj

Concerning the Property at _____ **5450 Honea Egypt Road**
**Montgomery, Texas  77316**

__ x__   The Property is located in a propane gas system service area owned by a propane distribution system retailer.

__ x__   Any portion of the Property that is located in a groundwater conservation district or a subsidence district.

If the answer to any of the items in Section 8 is yes, explain (attach additional sheets if necessary): _____

_____
_____
_____
_____
_____

**Section 9.  Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections?** _x_ yes __ no  If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*Note:  A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property.*
*A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 10.  Check any tax exemption(s) which you (Seller) currently claim for the Property:**
__ Homestead          __ Senior Citizen          __ Disabled
__ Wildlife Management          _x_ Agricultural          __ Disabled Veteran
__ Other: _____          __ Unknown

**Section 11. Have you (Seller) ever filed a claim for damage, other than flood damage, to the Property with any insurance provider?** _x_ yes __ no

**Section 12. Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made?** __ yes _x_ no If yes, explain: _____

_____
_____

**Section 13. Does the Property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?*** __ unknown __ no _x_ yes. If no or unknown, explain. (Attach additional sheets if necessary): _____

_____
_____

*\*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

(TXR-1406) 07-10-23          Initialed by: Buyer: [signature] _____ and Seller: [signature] _____          Page 5 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

02/25/25
11:28 AM CST

Exhibit 17
Page 19 of 27
EXHIBIT 5

Concerning the Property at _____ **5450 Honea Egypt Road**
**Montgomery, Texas 77316**

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

_____   2/1/2024          _____
Signature of Seller                    Date          Signature of Seller                    Date

Printed Name: _____          Printed Name: _____

**ADDITIONAL NOTICES TO BUYER:**

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit https://publicsite.dps.texas.gov. For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the Property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the Property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If the Property is located in a seacoast territory of this state designated as a catastrophe area by the Commissioner of the Texas Department of Insurance, the Property may be subject to additional requirements to obtain or continue windstorm and hail insurance. A certificate of compliance may be required for repairs or improvements to the Property. For more information, please review *Information Regarding Windstorm and Hail Insurance for Certain Properties* (TXR 2518) and contact the Texas Department of Insurance or the Texas Windstorm Insurance Association.

(4) This Property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations. Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

(5) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(6) The following providers currently provide service to the Property:

Electric: Champion Energy _____          phone #: _____
Sewer: N/A _____          phone #: _____
Water: N/A _____          phone #: _____
Cable: N/A _____          phone #: _____
Trash: Republic _____          phone #: _____
Natural Gas: N/A _____          phone #: _____
Phone Company: N/A _____          phone #: _____
Propane: Amerigas _Bulk Delivery _____          phone #: _____
Internet: TMobile 5G _____          phone #: _____

(TXR-1406) 07-10-23          Initialed by: Buyer: _____ _____ and Seller: _____ , _____          Page 6 of 7

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380          Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel          Produced with Lone Wolf Transactions (zipForm Edition) 231 ShEarwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Page 20 of 27

02/25/25
11:28 AM CST

Exhibit 17

EXHIBIT 5

**5450 Honea Egypt Road**
**Montgomery, Texas  77316**

Concerning the Property at _____

(7) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

*Nathan Milner*

dotloop verified
02/25/25 11:28 AM CST
DFZ3-DUJJ-QYUM-WASU

Signature of Buyer _____ Date     Signature of Buyer _____ Date

Printed Name: Escaped Chicken LLC _____     Printed Name: _____

(TXR-1406) 07-10-23     Initialed by: Buyer: [NM] _____ and Seller: [signature] , _____     Page 7 of 7

02/25/25
11:28 AM CST
dotloop verified

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                    Phone: 2813063020          Fax:          Exhibit 17  5450 Honea Egypt
Tilah Lee Spruel                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com   Page 21 of 27

EXHIBIT 3

dotloop signature verification: dtlp.us/rPWG-k31X-oSze
Docusign Envelope ID: 83138454-94CF-4A48-9B09-2FDE96C09189



# INFORMATION ABOUT SPECIAL FLOOD HAZARD AREAS

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©**Texas Association of REALTORS®, Inc., 2021**

**CONCERNING THE PROPERTY AT** 5450 Honea Egypt Rd, Montgomery, TX 77316

## A. FLOOD AREAS:

(1) The Federal Emergency Management Agency (FEMA) designates areas that have a high risk of flooding as special flood hazard areas.

(2) A property that is in a special flood hazard area is designated on flood insurance rate maps with a zone beginning in a "V" or "A". Both V-Zone and A-Zone areas indicate a high risk of flooding.

(3) Some properties may also lie in the "floodway" which is the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge a flood under FEMA rules. Communities must regulate development in these floodways.

## B. AVAILABILITY OF FLOOD INSURANCE:

(1) Generally, flood insurance is available regardless of whether the property is located in or out of a special flood hazard area. Contact your insurance agent to determine if any limitations or restrictions apply to the property in which you are interested.

(2) FEMA encourages every property owner to purchase flood insurance regardless of whether the property is in a high, moderate, or low risk flood area.

(3) A homeowner may obtain flood insurance coverage (up to certain limits) through the National Flood Insurance Program. Supplemental coverage is available through private insurance carriers.

(4) A mortgage lender making a federally related mortgage will require the borrower to maintain flood insurance if the property is in a special flood hazard area.

## C. GROUND FLOOR REQUIREMENTS:

(1) Many homes in special flood hazard areas are built-up or are elevated. In elevated homes the ground floor typically lies below the base flood elevation and the first floor is elevated on piers, columns, posts, or piles. The base flood elevation is the highest level at which a flood is likely to occur as shown on flood insurance rate maps.

(2) Federal, state, county, and city regulations:

(a) restrict the use and construction of any ground floor enclosures in elevated homes that are in special flood hazard areas.

(b) may prohibit or restrict the remodeling, rebuilding, and redevelopment of property and improvements in the floodway.

(3) The first floor of all homes must now be built above the base flood elevation.

(a) Older homes may have been built in compliance with applicable regulations at the time of construction and may have first floors that lie below the base flood elevation, but flood insurance rates for such homes may be significant.

(TXR 1414) 10-19-2021

*Exhibit 17*

**EXHIBIT 3**
**Page 22 of 27**

JLA Realty                   5332 FM 1960 E STE C HUMBLE, TX 77346                   2817442611                   Jasmin Lye

dotloop signature verification: dtlp.us/rPWG-k31X-oSze
Docusign Envelope ID: 83138454-94CF-4A48-9B09-2FDE96C09189

Information about Special Flood Hazard Areas concerning 5450 Honea Egypt Rd, Montgomery, TX 77316

(b) It is possible that modifications were made to a ground floor enclosure after a home was first built. The modifications may or may not comply with applicable regulations and may or may not affect flood insurance rates.

(c) It is important for a buyer to determine if the first floor of a home is elevated at or above the base flood elevation.  It is also important for a buyer to determine if the property lies in a floodway.

(4) Ground floor enclosures that lie below the base flood elevation may be used only for: (i) parking; (ii) storage; and (iii) building access.  Plumbing, mechanical, or electrical items in ground floor enclosures that lie below the base flood elevation may be prohibited or restricted and may not be eligible for flood insurance coverage.  Additionally:

(a) in A-Zones, the ground floor enclosures below the base flood elevation must have flow-through vents or openings that permit the automatic entry and exit of floodwaters:

(b) in V-Zones, the ground floor enclosures must have break-away walls, screening, or lattice walls; and

(c) in floodways, the remodeling or reconstruction of any improvements may be prohibited or otherwise restricted.

## D.  COMPLIANCE:

(1) The above-referenced property may or may not comply with regulations affecting ground floor enclosures below the base flood elevation.

(2) A property owner's eligibility to purchase or maintain flood insurance, as well as the cost of the flood insurance, is dependent on whether the property complies with the regulations affecting ground floor enclosures.

(3) A purchaser or property owner may be required to remove or modify a ground floor enclosure that is not in compliance with city or county building requirements or is not entitled to an exemption from such requirements.

(4) A flood insurance policy maintained by the current property owner does not mean that the property is in compliance with the regulations affecting ground floor enclosures or that the buyer will be able to continue to maintain flood insurance at the same rate.

(5) Insurance carriers calculate the cost of flood insurance using a rate that is based on the elevation of the lowest floor.

(a) If the ground floor lies below the base flood elevation and does not meet federal, state, county, and city requirements, the ground floor will be the lowest floor for the purpose of computing the rate.

(b) If the property is in compliance, the first elevated floor will be the lowest floor and the insurance rate will be significantly less than the rate for a property that is not in compliance.

(c) If the property lies in a V-Zone the flood insurance rate will be impacted if a ground floor enclosure below the base flood elevation exceeds 299 square feet (even if constructed with break-away walls).

(TXR 1414) 10-19-21

Exhibit 17

**EXHIBIT 3**

JLA Realty          5332 FM 1960 E STE C HUMBLE, TX 77346          2817442611          Jasmin Lye

Information about Special Flood Hazard Areas concerning 5450 Honea Egypt Rd, Montgomery, TX 77316

## E.  ELEVATION CERTIFICATE:

The elevation certificate is an important tool in determining flood insurance rates. It is used to provide elevation information that is necessary to ensure compliance with floodplain management laws. To determine the proper insurance premium rate, insurers rely on an elevation certificate to certify building elevations at an acceptable level above flood map levels. If available in your area, it is recommended that you obtain an elevation certificate for the property as soon as possible to accurately determine future flood insurance rates.

**You are encouraged to: (1) inspect the property for all purposes, including compliance with any ground floor enclosure requirement; (2) review the flood insurance policy (costs and coverage) with your insurance agent; and (3) contact the building permitting authority if you have any questions about building requirements or compliance issues.**

Receipt acknowledged by:

| *Nathan Milner* | dotloop verified<br>02/25/25 11:49 AM CST<br>KOWR-GH9N-RN7B-UGON | |
|---|---|---|
| Signature | Date | Signature                    Date |

Exhibit 17
**EXHIBIT 3**
**Page 24 of 27**

JLA Realty                    5332 FM 1960 E STE C HUMBLE, TX 77346                    2817442611                    Jasmin Lye

dotloop signature verification: dtlp.us/HZvq-uBQ1-ikOR
Docusign Envelope ID: 83138454-94CF-4A48-9B09-2FDE96C09189
Case 25-30155 Document 254-1 Filed in TXSB on 03/04/26 Page 47 of 308



## TEXAS REALTORS

# INFORMATION ABOUT ON-SITE SEWER FACILITY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2004

**CONCERNING THE PROPERTY AT**　　　　**5450 Honea Egypt Road
Montgomery, Texas 77316**

## A. DESCRIPTION OF ON-SITE SEWER FACILITY ON PROPERTY:

(1) Type of Treatment System: [X] Septic Tank　[X] Aerobic Treatment　　[ ] Unknown

(2) Type of Distribution System: **Sprinklers, Leach Lines (2 Systems)**　　[ ] Unknown

(3) Approximate Location of Drain Field or Distribution System: _____　[ ] Unknown
**Southside of Main House : Aerobic System**
**Northside of Barndominium : Leach Line System**

(4) Installer: _____　[X] Unknown

(5) Approximate Age: **15 Years**　　　　　　　　　　　　　　　　　[ ] Unknown

## B. MAINTENANCE INFORMATION:

(1) Is Seller aware of any maintenance contract in effect for the on-site sewer facility?　[X] Yes　[ ] No
If yes, name of maintenance contractor: **Coast to Coast**
Phone: **(936)894-0752**　　　contract expiration date: _____
*Maintenance contracts must be in effect to operate aerobic treatment and certain non-standard" on-site sewer facilities.)*

(2) Approximate date any tanks were last pumped?　　　　**April 30, 2021**

(3) Is Seller aware of any defect or malfunction in the on-site sewer facility?　[ ] Yes　[X] No
If yes, explain: _____
_____
_____

(4) Does Seller have manufacturer or warranty information available for review?　[ ] Yes　[ ] No

## C. PLANNING MATERIALS, PERMITS, AND CONTRACTS:

(1) The following items concerning the on-site sewer facility are attached:
[ ] planning materials　[ ] permit for original installation　[ ] final inspection when OSSF was installed
[ ] maintenance contract　[ ] manufacturer information　[ ] warranty information　[ ] _____

(2) "Planning materials" are the supporting materials that describe the on-site sewer facility that are submitted to the permitting authority in order to obtain a permit to install the on-site sewer facility.

(3) **It may be necessary for a buyer to have the permit to operate an on-site sewer facility transferred to the buyer.**

(TXR-1407) 1-7-04　　Initialed for Identification by Buyer  and Seller _____, _____　Page 1 of 2

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380　　　　　　　Phone: 2813063020　　Fax:　　　5450 Honea Egypt
Tilah Lee Spruel　　Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201　www.lwolf.com
**EXHIBIT 3**

Exhibit 17
Page 25 of 27

dotloop signature verification: dtlp.us/HZvq-uBQ1-ikOR
Docusign Envelope ID: 83138454-940F-4A48-9B09-2FDE96C09189

Information about On-Site Sewer Facility concerning
**5450 Honea Egypt Road**
**Montgomery, Texas  77316**

**D. INFORMATION FROM GOVERNMENTAL AGENCIES:** Pamphlets describing on-site sewer facilities are available from the Texas Agricultural Extension Service. Information in the following table was obtained from Texas Commission on Environmental Quality (TCEQ) on 10/24/2002. The table estimates daily wastewater usage rates. Actual water usage data or other methods for calculating may be used if accurate and acceptable to TCEQ.

| Facility | Usage (gal/day) without water-saving devices | Usage (gal/day) with water-saving devices |
|---|---|---|
| Single family dwelling (1-2 bedrooms; less than 1,500 sf) | 225 | 180 |
| Single family dwelling (3 bedrooms; less than 2,500 sf) | 300 | 240 |
| Single family dwelling (4 bedrooms; less than 3,500 sf) | 375 | 300 |
| Single family dwelling (5 bedrooms; less than 4,500 sf) | 450 | 360 |
| Single family dwelling (6 bedrooms; less than 5,500 sf) | 525 | 420 |
| Mobile home, condo, or townhouse (1-2 bedroom) | 225 | 180 |
| Mobile home, condo, or townhouse (each add'l bedroom) | 75 | 60 |

**This document is not a substitute for any inspections or warranties. This document was completed to the best of Seller's knowledge and belief on the date signed. Seller and real estate agents are not experts about on-site sewer facilities. Buyer is encouraged to have the on-site sewer facility inspected by an inspector of Buyer's choice.**

DocuSigned by:

2/6/2024

Signature of Seller                         Date          Signature of Seller                         Date

**Alliance Farm & Ranch Llc**

Receipt acknowledged by:

Nathan Milner
dotloop verified
02/27/25 3:54 PM CST
UWHU-BQWR-SNLM-ZO4H

Signature of Buyer                         Date          Signature of Buyer                         Date

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380                                           Phone: 2813063020          Fax:          5450 Honea Egypt
Tilah Lee Spruel                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 17
Page 26 of 27

EXHIBIT 3

dotloop signature verification: dtlp.us/LwID-kLOg-Ohbb
Docusign Envelope ID: 19C3EF08-F588-4849-8C10-4A6DEAB2GB1A



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)        11-04-2024

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT



**5450 Honea Egypt Road**                                    **Montgomery**
_____
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

- ☐ (1) The Sales Price in Paragraph 3 of the contract is:
  - A. Cash portion of Sales Price payable by Buyer at closing ................... $ _____
  - B. Sum of financing described in the contract........................................ $ _____
  - C. Sales Price (Sum of A and B)............................................................ $ _____

- ☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments: (Notice: Paragraph 7 of the contract governs the completion, delivery of documentation, and transfer of warranties of repairs and treatments.) _____
_____
_____

- ☒ (3) The date in Paragraph 9 of the contract is changed to _____**May 5**_____ , **2025** .
- ☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to ☐ $ _____ or ☐ _____% of the Sales Price (check one box only).
- ☐ (5) The amount in Paragraph 12A(1)(c) of the contract is changed to $ _____
- ☐ (6) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.
- ☐ (7) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____ , _____ . This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.
- ☐ (8) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.
- ☐ (9) The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____ , _____ .
- ☐ (10) **Other Modifications:** (Real estate brokers and sales agents are prohibited from practicing law.) _____
_____
_____
_____.

**CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS FORM CAREFULLY.

**EXECUTED the** _____ **day of** __04/23/2025__ , _____ . **(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

*Nathan Milner*
dotloop verified
04/23/25 3:52 PM CDT
FM13-VOYC-ERDU-7HWM
Buyer _____

Signed by:
Seller **Erik C. Ostrander**                        4/23/2025

Buyer _____

Signed by:
Seller **Darla R. Ostrander**                       4/23/2025

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov ) TREC No. 39-10. This form replaces TREC No. 39-9.

TREC NO. 39-10
TXR 1903

*Exhibit 17*

Tracee Spruel, 2170 Buckhthorne The Woodlands TX 77380        Phone: 2813063020        Fax:        5450 Honea Egypt
Tilah Lee Spruel        Produced with Lone Wolf Transactions (zipForm Edition) 231 Elmwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **Page 27 of 27**

**EXHIBIT 3**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Summer Riehle on behalf of Deborah Crain
Bar No. 24067319
summer@e-merger.law
Envelope ID: 100178511
Filing Code Description: Motion (No Fee)
Filing Description: Emergency Motion to Expunge Notice of Lis Pendens
Status as of 4/28/2025 4:13 PM CST

Associated Case Party: Dustin Etter

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nucharee Perez | | nperez@imtexaslaw.com | 4/28/2025 4:01:44 PM | SENT |
| Noah E.Meek | | nmeek@imtexaslaw.com | 4/28/2025 4:01:44 PM | SENT |
| Sarah Cartwright | | scartwright@imtexaslaw.com | 4/28/2025 4:01:44 PM | SENT |
| Noah Meek | | noah.meek@gkbklaw.com | 4/28/2025 4:01:44 PM | SENT |

Associated Case Party: JerodP.Furr

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Branch Sheppard | | bsheppard@mcglinchey.com | 4/28/2025 4:01:44 PM | SENT |
| Haley Sheppard | | hsheppard@mcglinchey.com | 4/28/2025 4:01:44 PM | SENT |
| Sara Morton | | smorton@mcglinchey.com | 4/28/2025 4:01:44 PM | SENT |

Associated Case Party: Alliance Energy Partners, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Matthew Okin | | mokin@okinadams.com | 4/28/2025 4:01:44 PM | SENT |
| Sally Gonzales | | sgonzales@okinadams.com | 4/28/2025 4:01:44 PM | SENT |
| Timothy Wentworth | | twentworth@okinadams.com | 4/28/2025 4:01:44 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alyssa Cuellar | | alyssa@baysfirm.com | 4/28/2025 4:01:44 PM | SENT |
| J RandalBays | | randy@baysfirm.com | 4/28/2025 4:01:44 PM | SENT |

Exhibit 17

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Summer Riehle on behalf of Deborah Crain
Bar No. 24067319
summer@e-merger.law
Envelope ID: 100178511
Filing Code Description: Motion (No Fee)
Filing Description: Emergency Motion to Expunge Notice of Lis Pendens
Status as of 4/28/2025 4:13 PM CST

Case Contacts

| J RandalBays | | randy@baysfirm.com | 4/28/2025 4:01:44 PM | SENT |
|---|---|---|---|---|
| Branch Sheppard | | bsheppard@gallowaylawfirm.com | 4/28/2025 4:01:44 PM | ERROR |
| Branch Sheppard | | bsheppard@mcglinchey.com | 4/28/2025 4:01:44 PM | SENT |

**Exhibit 17**

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Noah Meek |
| **Cc:** | Summer Riehle; Shannon Frizzell; Stephen Coselli |
| **Subject:** | RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316 |
| **Date:** | Monday, April 28, 2025 4:33:00 PM |
| **Attachments:** | image001.png |

I rarely see an attorney so full of anger towards someone else's client.  It's way too personal and it's not helpful in seeing this case objectively.

I could work this entire case out with you, but not with the person who attacked me via email before he even met me (which you have never apologized for).

But hey, here's me saying – anytime you want to have a civil and respectful conversation about this case and moving forward, feel free to call me on my cell.

We will set the hearing the week of the 19th.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Noah Meek <nmeek@imtexaslaw.com>
**Sent:** Monday, April 28, 2025 4:27 AM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Come on. Y'all are trying to sandbag my client by trying to get a hearing on the motion to expunge before you know you'll have to reveal evidence which would be useful in opposing it. Y'all ask for a continuance on a hearing in bankruptcy court which would have produced testimony useful to opposing the motion and then a day later you file the motion. It's the Defendants who are afraid of all of getting all of the facts out there.

Thanks,

**Noah Meek**
SENIOR COUNSEL
IRELAN MCDANIEL, PLLC

Exhibit 18

www.IMTexasLaw.com



NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute, or use the message in any manner; and (iii) notify the sender immediately.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, April 28, 2025 4:21 PM
**To:** Noah Meek <nmeek@imtexaslaw.com>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

I understand that there is a 20-day notice requirement.  Why wait unless you are concerned about the motion?

Summer – see when the clerk/court has availability on May 19th or that week.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Noah Meek <nmeek@imtexaslaw.com>
**Sent:** Monday, April 28, 2025 4:10 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Deborah,

I'm not sure I understand what you mean by a "collateral right." The live pleading seeks title to the property.

*Exhibit 18*

Also, there's no such thing as an "emergency" motion to expunge. The statute says that at least 20 days notice has to be given. Tex. Prop. Code § 12.0071(d). There's nothing that allows the Court to shorten the time for a motion to expunge. It would be reversible error for the Court to grant the motion without the respondent having gotten at least 20 days notice. *In re Estate of Sanchez*, No. 04-11-00332-CV, 2012 Tex. App. LEXIS 2991, at *19 (Tex. App.—San Antonio Apr. 18, 2012, pet. denied).

**Noah Meek**
Senior Counsel
Irelan McDaniel, PLLC
www.IMTexasLaw.com



NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute, or use the message in any manner; and (iii) notify the sender immediately.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, April 28, 2025 3:16 PM
**To:** Noah Meek <nmeek@imtexaslaw.com>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Well settled Texas law.  Any alleged right regarding the property is a collateral right and therefore the Notice of Lis Pendens should not have been filed.  We will send you the service copy.  Thanks.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Noah Meek <nmeek@imtexaslaw.com>
**Sent:** Monday, April 28, 2025 3:12 PM

*Exhibit 18*

**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** RE: Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Deborah,

What would the basis of the motion to expunge be?

Thanks,

**Noah Meek**
SENIOR COUNSEL
IRELAN MCDANIEL, PLLC
www.IMTexasLaw.com



NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute, or use the message in any manner; and (iii) notify the sender immediately.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, April 28, 2025 3:07 PM
**To:** Noah Meek <nmeek@imtexaslaw.com>
**Cc:** Summer Riehle <sriehle@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Stephen Coselli <scoselli@E-merger.law>
**Subject:** Dustin Etter v. Jerod Furr, et al. & 5450 Honea Egypt Rd., Montgomery, Texas 77316

Noah – we will be filing a Notice of Co-Counsel in the above case today.  Additionally, we will be filing a Motion to Expunge the Notice of Lis Pendens and requesting an emergency hearing on same. As soon as I have that hearing information, I will reach out to you accordingly.

I am writing to you for certificate of conference purposes.  I know you are opposed but wanted to confer anyway.  Thank you.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:

Exhibit 18

1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

---

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

Exhibit 18

**Deborah Crain**

| | |
|---|---|
| **From:** | Deborah Crain |
| **Sent:** | Tuesday, April 29, 2025 3:24 PM |
| **To:** | Kathy Heenan; Len Walker |
| **Subject:** | RE: Honea Egypt - UW requirements |
| **Attachments:** | 2025.04.28 Motion to Expunge Notice of Lis Pendens (Exhibits) - FS.pdf |

Good afternoon, Kathy.  We filed a Motion to Expunge the Notice of Lis Pendens and we wanted to get it heard prior to the 20-day notice requirement pursuant to Texas law, but counsel for Dustin Etter will not waive the notice.  We have it set on the submission docket for May 23rd pursuant to the Judge's request, and we feel confident that it will be granted.

As it pertains to our suit against the Ostranders, the parties are working diligently towards a resolution and we will update you once that happens.

Let me know if you need anything else.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Kathy Heenan <kathleen.heenan@brpstitle.com>
**Sent:** Tuesday, April 29, 2025 2:48 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Len Walker <lwalker@weaverlawyers.com>
**Subject:** RE: Honea Egypt - UW requirements

Good Afternoon,

Just checking in.  Can you update me on the status from your end?

Thanks,
Kathy

**PLEASE COPY TEAMHEENAN@BRPSTITLE.COM FOR FASTEST RESPONSE.**

**Kathy Heenan**
**Mobile: (281) 793-8125**
**Office: (281) 810-3363 ask for Team Heenan**

*Exhibit 19*

1

**Fax:  (281) 624-4711**

**BRPS Title of Texas, LLC**
**5353 W Alabama St, Suite 310**
**Houston, TX 77056**

<u>Location:</u>  Located on W. Alabama, between S. Rice and Yorktown.
<u>Preferred Parking:</u>  There is parking on level 2 that can be accessed from S. Rice, using the ramp.
<u>Additional Parking:</u>  There is also limited parking in front of the building. You'll need to use the intercom for security to let you in.

BE CAUTIOUS IF YOU CHOOSE TO WIRE FUNDS
Wiring funds creates a risk of loss by fraud.  If you elect to wire funds, please call your BRPS Title of Texas team to obtain wiring instructions, using a phone number from our website.

**BRPS** Title

This email is for discussion purposes only and cannot be used to create a binding contract.  This email is not an acceptable offer and does not evidence any intention by the sender to enter into a contract.

The information contained in this message is the property of an entity operating as  BRPS Title LLC and is intended only for the confidential use of the persons or entities to whom it is addressed.  This message, together with any attachments, is proprietary and confidential, may contain inside information, and may be subject to the attorney-client privilege and/or the attorney work product doctrine.  If the reader of this message is not one of the addressees set forth above:  (a) the reader has received this message in error and is directed to destroy this message, together with any attachments, and notify the sender, and (b) any review, dissemination, use or distribution of this message or any attachments is prohibited.  Thank you.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, April 23, 2025 3:35 PM
**To:** Kathy Heenan <kathleen.heenan@brpstitle.com>; Len Walker <lwalker@weaverlawyers.com>
**Subject:** RE: Honea Egypt - UW requirements

Thanks, Kathy. We will work on it.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Kathy Heenan <kathleen.heenan@brpstitle.com>
**Sent:** Wednesday, April 23, 2025 2:56 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Len Walker <lwalker@weaverlawyers.com>
**Subject:** Honea Egypt - UW requirements

Good Afternoon,

<span style="color:blue">*Exhibit 19*</span>

Below are the requirements from the underwriting attorney for issuance of a title policy.   Please advise once you review.

Thanks,
Kathy

- Westcor will not insure under this Order until the appellate time frame has expired.  Under Bankruptcy Rule 8002, this is 14-days.  Westcor will therefore not insure under this order until April 7, 2025, and then only if no appeal or ancillary motion is filed that might prevent the order from becoming final.

- In the alternative, within the 14-day appeal period, Westcor will accept a stipulation between the Ostranders and the Debtor, filed in Court, stipulating that the property was validly foreclosed prior to the bankruptcy, and Debtor does not contest the property is no longer part of the Bankruptcy estate.

- We also want resolution of the State Court litigation.  Since they've requested a TRO to prohibit sale of the Land, filed several lis pendens, and pled that their money has been converted into this land, I think they have standing to contest the foreclosure, and are well within the limitations period to assert those claims in state or federal court.  To resolve that potential, Westcor requires a Rule 11 Letter entered in the State Court litigation, signed by all parties and their counsel, stipulating they are aware the Land has been foreclosed and they do not contest that foreclosure. We will also want releases of the lis pendens.  We recognize there's no incentive whatsoever for those parties to cooperate, but we see no alternative.

**PLEASE COPY [TEAMHEENAN@BRPSTITLE.COM](mailto:TEAMHEENAN@BRPSTITLE.COM) FOR FASTEST RESPONSE.**

**Kathy Heenan**
**Mobile: (281) 793-8125**
**Office: (281) 810-3363 ask for Team Heenan**
**Fax:  (281) 624-4711**

**BRPS Title of Texas, LLC**
**5353 W Alabama St, Suite 310**
**Houston, TX 77056**

*Location:*  Located on W. Alabama, between S. Rice and Yorktown.
*Preferred Parking:*  There is parking on level 2 that can be accessed from S. Rice, using the ramp.
*Additional Parking:*  There is also limited parking in front of the building. You'll need to use the intercom for security to let you in.

BE CAUTIOUS IF YOU CHOOSE TO WIRE FUNDS
Wiring funds creates a risk of loss by fraud.  If you elect to wire funds, please call your BRPS Title of Texas team to obtain wiring instructions, using a phone number from our website.

**BRPS** Title

This email is for discussion purposes only and cannot be used to create a binding contract.  This email is not an acceptable offer and does not evidence any intention by the sender to enter into a contract.

Exhibit 19

The information contained in this message is the property of an entity operating as  BRPS Title LLC and is intended only for the confidential use of the persons or entities to whom it is addressed.  This message, together with any attachments, is proprietary and confidential, may contain inside information, and may be subject to the attorney-client privilege and/or the attorney work product doctrine.  If the reader of this message is not one of the addressees set forth above:  (a) the reader has received this message in error and is directed to destroy this message, together with any attachments, and notify the sender, and (b) any review, dissemination, use or distribution of this message or any attachments is prohibited.  Thank you.

Exhibit 19

📁 **Ch. 11 Trustee Docs**   `Shared`

| | | |
|---|---|---|
| 📁 Alliance Energy Partners | 5/29/2025 9:33 AM | File folder |
| 📁 Alliance Farm and Ranch | 5/29/2025 9:50 AM | File folder |
| 📁 Banking | 5/29/2025 11:04 AM | File folder |
| 📁 Bankruptcy Filings | 10/21/2025 5:04 PM | File folder |
| 📁 Corporate | 8/7/2025 6:08 PM | File folder |
| 📁 DLC Notes of additional work to be done | 8/18/2025 1:12 PM | File folder |
| 📁 Drilling Equipment Proposal | 7/25/2025 12:15 PM | File folder |
| 📁 Etter v. Furr, et al | 5/29/2025 9:33 AM | File folder |
| 📁 Executive Summary | 7/14/2025 10:34 AM | File folder |
| 📁 Honea Egypt | 6/28/2025 12:16 PM | File folder |
| 📁 J Parker Banking records | 7/22/2025 12:19 PM | File folder |
| 📁 J Parker Construction | 8/13/2025 1:17 PM | File folder |
| 📁 Personal Banking Records JF | 7/14/2025 2:49 PM | File folder |
| 📁 Quickbooks | 7/17/2025 1:49 PM | File folder |
| 📁 Vehicle Titles | 8/13/2025 1:17 PM | File folder |



| | |
|---|---|
| 📁 | Ch. 11 Trustee Docs |
| Type: | File folder |
| Location: | A:\F\Furr, Jerod\Furr-326-00001-25 |
| Size: | 584 MB (612,752,695 bytes) |
| Size on disk: | 584 MB (612,750,490 bytes) |
| Contains: | 323 Files, 19 Folders |
| Created: | Thursday, May 29, 2025, 9:12:34 AM |

**Exhibit 20**

Desktop access ▾

Documents   Microsoft OneDrive for Business

New ▾   ◆ Actions ▾   Filters ▾   Columns ▾   Sort ▾   Filter by keyword

All files and folders in Furr-326-00001-25  >  ■ Ch. 11 Trustee Docs  `Shared`

| | Action | | Name | Recorded time | Category | Size | Last edit at | Received at |
|---|---|---|---|---|---|---|---|---|
| ☐ | Edit | ▸ | ■ Alliance Energy Partners | — | — | — | 05/29/2025 9:33 AM | — |
| ☐ | Edit | ▸ | ■ Etter v. Furr, et al | — | — | — | 05/29/2025 9:33 AM | — |
| ☐ | Edit | ▸ | ■ Alliance Farm and Ranch | — | — | — | 05/29/2025 9:50 AM | — |
| ☐ | Edit | ▸ | ■ Banking | — | — | — | 05/29/2025 11:04 AM | — |
| ☐ | Edit | ▸ | ■ Honea Egypt | — | — | — | 05/29/2025 11:13 AM | — |
| ☐ | Edit | ▸ | ■ Quickbooks | — | — | — | 06/20/2025 10:00 AM | — |
| ☐ | Edit | ▸ | ■ Executive Summary  `Shared` | — | — | — | 06/30/2025 2:17 PM | — |
| ☐ | Edit | ▸ | ■ Vehicle Titles | — | — | — | 07/14/2025 12:21 PM | — |
| ☐ | Edit | ▸ | ■ J Parker Construction | — | — | — | 07/14/2025 1:03 PM | — |
| ☐ | Edit | ▸ | ■ Personal Banking Records JF  `Shared` | — | — | — | 07/14/2025 2:49 PM | — |
| ☐ | Edit | ▸ | ■ J Parker Banking records | — | — | — | 07/22/2025 12:19 PM | — |

Exhibit 20

| | | |
|---|---|---|
| J Parker Banking records | 07/22/2025 12:19 PM | Edit ▸ |
| Drilling Equipment Proposal | 07/25/2025 12:15 PM | Edit ▸ |
| Corporate  Shared | 08/07/2025 6:08 PM | Edit ▸ |
| DLC Notes of additional work to be done | 08/18/2025 1:12 PM | Edit ▸ |
| Bankruptcy Filings | 10/21/2025 5:04 PM | Edit ▸ |
| Register of Actions Re AF&R v. Orstranders.pdf | 05/29/2025 9:21 AM    235 KB | Download ▸ |

Add time

*Exhibit 20*

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Summer Riehle; Tom Howley |
| **Cc:** | Shannon Frizzell; Roland Rodriguez |
| **Subject:** | RE: New Accounts at Veritex for Alliance Farms and AEP |
| **Date:** | Monday, June 2, 2025 2:55:00 PM |

We have no objection and happy to be able to facilitate this with you for the benefit of the creditors and rectify the error on my part.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Monday, June 2, 2025 2:50 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Summer Riehle <sriehle@E-merger.law>; Tom Howley <tom@howley-law.com>
**Cc:** Shannon Frizzell <sfrizzell@E-merger.law>; Roland Rodriguez <roland@howley-law.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

He doesn't need to be at the hearing.  can you represent to me so I can represent to the court that neither you nor Mr. Furr have any objection to the settlement that is being heard tomorrow morning?

Thank you, et

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

**Exhibit 21**

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, June 2, 2025 2:46 PM
**To:** Summer Riehle <sriehle@E-merger.law>; Tom Howley <tom@howley-law.com>
**Cc:** Shannon Frizzell <sfrizzell@E-merger.law>; Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Yes, I spoke to him this morning and he sounds like I did a couple of weeks ago.

Do you need him to be at the hearing tomorrow?  Otherwise, let me know if you need anything else and when we can schedule our next zoom meeting – later this week is fine.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Summer Riehle <sriehle@E-merger.law>
**Sent:** Monday, June 2, 2025 12:24 PM
**To:** tom@howley-law.com
**Cc:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; eric@howley-law.com; roland@howley-law.com
**Subject:** New Accounts at Veritex for Alliance Farms and AEP

Mr. Howley,

Ms. Crain has asked that I please email you and let you know that Ms. Casas has received all the necessary information this morning.  Our apologies as Mr. Furr has been under the weather with either bronchitis and/or pneumonia.

Please feel free to reach out if you have any questions.

Thank you,

Summer Riehle
E-MERGER.LAW
Intake Specialist/ Legal Assistant
sriehle@e-merger.law

*Exhibit 21*

Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0822

Exhibit 21

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Tom Howley; Shannon Frizzell |
| **Cc:** | Eric Terry; Roland Rodriguez; Jerod Furr; Summer Riehle |
| **Subject:** | RE: New Accounts at Veritex for Alliance Farms and AEP |
| **Date:** | Wednesday, June 4, 2025 11:14:00 AM |
| **Attachments:** | image001.png |
| | image002.png |

I can do a 2:30 meeting.  Let me check with Jerod.  Summer is my scheduling paralegal.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, June 4, 2025 11:04 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:   We wanted to follow up.  The settlement got approved yesterday and we are hoping the sale of the farm will occur today and the 1.5 will arrive in the new Veritex account.

Can we have call tomorrow to discuss next steps and some of the items you have raised?   Does 2, 2:30 or 3 pm work?

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:24 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

*Exhibit 22*

I will pull the information on the entity (do not recall at the moment), but I sent you a spreadsheet on that earlier this week that lists all of those assets.  These are drilling assets that can be sold.  I also have connections that might facilitate that.  Let's schedule a meeting to discuss after you get through the bankruptcy hearing and I can present the information for you to review.  I am also going to outline the documents that I have so that you can have specific information that should facilitate what you need to process for the state court claims.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 5:19 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Sorry, just at a high level, what assets owned by what entity are you referring to?

And of course we would like to confer about any avenues to maximize value for the estates.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:17 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Ok, thank you.  I spoke to Jerod and he is working the form and also looks forward to our next meeting where we can discuss these other assets owned by this other entity.  We estimate that it could be between 300k-500k once sold.  Obviously, no guarantees – but it's more money for the creditors of AEP.  Have a great weekend.

Deborah L. Crain

*Exhibit 22*

President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <[tom@howley-law.com](mailto:tom@howley-law.com)>
**Sent:** Friday, May 30, 2025 4:40 PM
**To:** Deborah Crain <[dcrain@E-merger.law](mailto:dcrain@E-merger.law)>; Shannon Frizzell <[sfrizzell@E-merger.law](mailto:sfrizzell@E-merger.law)>
**Cc:** Eric Terry <[eric@howley-law.com](mailto:eric@howley-law.com)>; Roland Rodriguez <[roland@howley-law.com](mailto:roland@howley-law.com)>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

You do not need to appear at the hearing in my view

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  [tom@howley-law.com](mailto:tom@howley-law.com)



**From:** Deborah Crain <[dcrain@E-merger.law](mailto:dcrain@E-merger.law)>
**Sent:** Friday, May 30, 2025 4:38 PM
**To:** Tom Howley <[tom@howley-law.com](mailto:tom@howley-law.com)>; Shannon Frizzell <[sfrizzell@E-merger.law](mailto:sfrizzell@E-merger.law)>
**Cc:** Eric Terry <[eric@howley-law.com](mailto:eric@howley-law.com)>; Roland Rodriguez <[roland@howley-law.com](mailto:roland@howley-law.com)>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

That is fantastic news! I was worried about it getting delayed again but so happy things worked out. Do I need to appear at the hearing?

I have also created some notes for you on WIP that is obviously paused for now.  Once you have that hearing let me know if we can schedule some time so I can go over my list and you can let me know what you want me to do/not do.

Shannon knows all of these documents like the back of her hand and like I mentioned before, we have intricate timelines and summaries available upon request.

I sent the BO form to Jerod but I will call him and light a fire to make sure we get it submitted asap.

Deborah L. Crain
President, E-Merger.Law

_Exhibit 22_

Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 4:27 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Thanks, Deborah.

As an update, we are proceeding with filing a motion this afternoon to seek court approval to consummate the settlement with Ostranders.  It looks like the court has agreed to hear this matter at 9 am on Tuesday, June 3rd.  So hopefully we will have court approval on the third and the sale of the farm can close on the 4th.  And......hopefully I will have a bank account at Veritex set up to receive the funds on behalf of the estate by then!

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 2:48 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I'm on it.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach

*Exhibit 22*

Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 2:46 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** FW: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:  We are still working with Veritex to open up the accounts and they have now asked for some additional information directly from Mr. Furr.  See note below and attached.

Can you coordinate with Mr. Furr and provide directly to Esme at the contact information below?  I don't want or need to be in the middle given the sensitive nature of the information.

Thanks for providing the SS-4 documents.     We appreciate your cooperation thus far.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



---

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 2:28 PM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

See attached – Blank BO Template.

**Page 3 of 5 – I.** (as shown below) is the only portion that is required to be completed with Mr. Furr's information.

We will need a copy of the Government issued ID for our records and verification. The SS# can be provided, but do not need a copy of the card.

Exhibit 22

**I.**   **Beneficial owner 1 information:** IS THIS AN EXISTING CUSTOMER?   ☐ YES   ☐ NO   |

| Full Name | | | | |
|---|---|---|---|---|
| Date of Birth | | Social Security Number /Tax ID* | | |
| Address (physical) | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Identification** | Primary ID Type | | Primary ID Number | |
| | Issued by (State/Country/ Province) | | | |
| % of ownership | | | | |



**Esme Casas | AVP, Business Banking Relationship Manager**

4660 Sweetwater Blvd | Sugar Land, TX 77479

713-400-7129 Direct

ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:

The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:

Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein [including any attachments] is not intended or written to be used, and cannot be used, for the purpose of [i] avoiding penalties under the Internal Revenue Code or [ii] promoting, marketing or recommending to another party any transaction or tax-related matter[s].

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 11:12 AM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

I apologize for the inconvenience once again.

Our compliance quality control officer is requesting the SS# and ID# for Mr. Furr. Due to our compliance with federal regulations, the Beneficial Ownership form is still required for these accounts.

Is there any way that you can ask his attorney for this information? <u>For reference this is what was communicated to me:</u>

*Exhibit 22*

*The owner's information will always be requested due to the government form that is required on all business accounts.*

*The Beneficial Ownership form is government driven and attorneys are aware of this.*

*I thought he was working on it, but I did realize he was having trouble getting it, which I have experienced before on DIP accounts.*

*That is all we need to continue.*



**Esme Casas | AVP, Business Banking Relationship Manager**
4660 Sweetwater Blvd | Sugar Land, TX 77479
713-400-7129 Direct
ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:
The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:
Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s).

**Exhibit 22**

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Leonard Simon; Eric Terry |
| **Cc:** | Tom Howley; Shannon Frizzell; Roland Rodriguez; Jerod Furr; Summer Riehle; Eric Terry |
| **Subject:** | RE: New Accounts at Veritex for Alliance Farms and AEP |
| **Date:** | Thursday, June 12, 2025 1:29:00 PM |

I am in a hearing that starts at 1:30 and will last the entire afternoon.  I am making good progress on the summary and highlighting important information in the general ledger, but I will not have all of this ready today.  However, I have my calendar blocked out to be on the call, so just let me know.

Deborah L. Crain

President, E-Merger.Law

Licensed in Texas and Louisiana

Certified Business Coach

Physical Address:

1334 Brittmoore Road, #2314

Houston, Texas 77043

Office: 346-535-0818

Cell: 832-449-0222

**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Thursday, June 12, 2025 1:27 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Deborah Crain <dcrain@E-merger.law>; Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** Re: New Accounts at Veritex for Alliance Farms and AEP

Can we move the 2 o'clock conference call today to Tuesday of next week at 2 PM?

Sent from The iPhone of Leonard H Simon

2777 Allen Parkway, Suite 800

Houston, TX 77019

713-253-2810 (M)

713-528-8555 (O)

Fax: 832-202-2810

On Jun 5, 2025, at 8:32 AM, Eric Terry <eric@howley-law.com> wrote:

Will send invite

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 4, 2025 4:33 PM

*Exhibit 23*

**To:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>; lsimon@pendergraftsimon.com
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I apologize.  Busy day.  We are good to go for tomorrow.  Leonard Simon will be Mr. Furr's new bankruptcy attorney and would like to be on the call.  Thank you.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Wednesday, June 4, 2025 3:47 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Debrorah

Have you been able to check on tomorrow at 230?  If this time works, I will circulate a zoom invite.  Thanks, et

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 4, 2025 11:14 AM

*Exhibit 23*

**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>;
Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I can do a 2:30 meeting.  Let me check with Jerod.  Summer is my scheduling
paralegal.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, June 4, 2025 11:04 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:   We wanted to follow up.  The settlement got approved yesterday and we
are hoping the sale of the farm will occur today and the 1.5 will arrive in the new
Veritex account.

Can we have call tomorrow to discuss next steps and some of the items you have
raised?   Does 2, 2:30 or 3 pm work?

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:24 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>

*Exhibit 23*

**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I will pull the information on the entity (do not recall at the moment), but I sent you a spreadsheet on that earlier this week that lists all of those assets.  These are drilling assets that can be sold.  I also have connections that might facilitate that.  Let's schedule a meeting to discuss after you get through the bankruptcy hearing and I can present the information for you to review.  I am also going to outline the documents that I have so that you can have specific information that should facilitate what you need to process for the state court claims.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 5:19 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Sorry, just at a high level, what assets owned by what entity are you referring to?

And of course we would like to confer about any avenues to maximize value for the estates.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:17 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>

*Exhibit 23*

**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Ok, thank you.  I spoke to Jerod and he is working the form and also looks forward to our next meeting where we can discuss these other assets owned by this other entity. We estimate that it could be between 300k-500k once sold.  Obviously, no guarantees – but it's more money for the creditors of AEP.  Have a great weekend.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 4:40 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

You do not need to appear at the hearing in my view

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 4:38 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

That is fantastic news! I was worried about it getting delayed again but so happy things worked out. Do I need to appear at the hearing?

Exhibit 23

I have also created some notes for you on WIP that is obviously paused for now.
Once you have that hearing let me know if we can schedule some time so I can go
over my list and you can let me know what you want me to do/not do.

Shannon knows all of these documents like the back of her hand and like I mentioned
before, we have intricate timelines and summaries available upon request.

I sent the BO form to Jerod but I will call him and light a fire to make sure we get it
submitted asap.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 4:27 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Thanks, Deborah.

As an update, we are proceeding with filing a motion this afternoon to seek court
approval to consummate the settlement with Ostranders.  It looks like the court has
agreed to hear this matter at 9 am on Tuesday, June 3rd.  So hopefully we will have
court approval on the third and the sale of the farm can close on the 4th.  And......
hopefully I will have a bank account at Veritex set up to receive the funds on behalf of
the estate by then!

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

Exhibit 23

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 2:48 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I'm on it.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 2:46 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** FW: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:  We are still working with Veritex to open up the accounts and they have now asked for some additional information directly from Mr. Furr.  See note below and attached.

Can you coordinate with Mr. Furr and provide directly to Esme at the contact information below?  I don't want or need to be in the middle given the sensitive nature of the information.

Thanks for providing the SS-4 documents.     We appreciate your cooperation thus far.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

*Exhibit 23*

---

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 2:28 PM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

See attached – Blank BO Template.

**Page 3 of 5 – I.** (as shown below) is the only portion that is required to be completed with Mr. Furr's information.

<mark>We will need a copy of the Government issued ID for our records and verification. The SS# can be provided, but do not need a copy of the card.</mark>

<image002.png>



**Esme Casas** | **AVP, Business Banking Relationship Manager**
4660 Sweetwater Blvd | Sugar Land, TX 77479
713-400-7129 Direct
ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:
The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:
Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter[s].

Exhibit 23

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 11:12 AM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

I apologize for the inconvenience once again.

Our compliance quality control officer is requesting the SS# and ID# for Mr. Furr. Due to our compliance with federal regulations, the Beneficial Ownership form is still required for these accounts.

Is there any way that you can ask his attorney for this information? <u>For reference this is what was communicated to me</u>:

*The owner's information will always be requested due to the government form that is required on all business accounts.*
*The Beneficial Ownership form is government driven and attorneys are aware of this.*
*I thought he was working on it, but I did realize he was having trouble getting it, which I have experienced before on DIP accounts.*
*That is all we need to continue.*



**Esme Casas** | **AVP, Business Banking Relationship Manager**
4660 Sweetwater Blvd | Sugar Land, TX 77479
713-400-7129 Direct
ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:

*Exhibit 23*

The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:
Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s).

Exhibit 23

| From: | Deborah Crain |
|---|---|
| To: | Tom Howley; Leonard Simon; Eric Terry |
| Cc: | Shannon Frizzell; Roland Rodriguez; Jerod Furr; Summer Riehle; Eric Terry |
| Subject: | RE: New Accounts at Veritex for Alliance Farms and AEP |
| Date: | Thursday, June 12, 2025 1:33:00 PM |
| Attachments: | image001.png |

Ok, we will continue to work on what we have and this extensive year by year general ledger with highlights should be ready by tomorrow or Monday.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Thursday, June 12, 2025 1:30 PM
**To:** Leonard Simon <LSimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>
**Cc:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>; Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

If you need more time, we will reluctantly move it back. But I would like to just talk with you, Leonard, at 2:30 pm? I think that is when our original call was set? Does that work for you? I can call you.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com

*Exhibit 24*



**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Thursday, June 12, 2025 1:27 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Deborah Crain <dcrain@e-merger.law>; Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@e-merger.law>; Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@e-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** Re: New Accounts at Veritex for Alliance Farms and AEP


Can we move the 2 o'clock conference call today to Tuesday of next week at 2 PM?
Sent from The iPhone of Leonard H Simon
2777 Allen Parkway, Suite 800
Houston, TX 77019
713-253-2810 (M)
713-528-8555 (O)
Fax: 832-202-2810



On Jun 5, 2025, at 8:32 AM, Eric Terry <eric@howley-law.com> wrote:


Will send invite

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 4, 2025 4:33 PM
**To:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>; lsimon@pendergraftsimon.com
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I apologize.  Busy day.  We are good to go for tomorrow.  Leonard Simon will be Mr. Furr's new bankruptcy attorney and would like to be on the call.  Thank you.

Deborah L. Crain
President, E-Merger.Law

Exhibit 24

Licensed in Texas and Louisiana

Certified Business Coach

Physical Address:

1334 Brittmoore Road, #2314

Houston, Texas 77043

Office: 346-535-0818

Cell: 832-449-0222

---

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Wednesday, June 4, 2025 3:47 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Tom Howley <tom@howley-law.com>;
Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Jerod Furr <jpfurr@me.com>; Summer
Riehle <sriehle@E-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Debrorah

Have you been able to check on tomorrow at 230?  If this time works, I will circulate a
zoom invite.  Thanks, et

Eric Terry

HOWLEY LAW PLLC

700 Louisiana Street Suite 4545

Houston, Texas 77002

Phone: 713-333-9125

Cell: 210-862-2060

Email:  eric@howley-law.com

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 4, 2025 11:14 AM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>;
Jerod Furr <jpfurr@me.com>; Summer Riehle <sriehle@E-merger.law>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I can do a 2:30 meeting.  Let me check with Jerod.  Summer is my scheduling
paralegal.

Deborah L. Crain

President, E-Merger.Law

Licensed in Texas and Louisiana

*Exhibit 24*

Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, June 4, 2025 11:04 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:   We wanted to follow up.  The settlement got approved yesterday and we are hoping the sale of the farm will occur today and the 1.5 will arrive in the new Veritex account.

Can we have call tomorrow to discuss next steps and some of the items you have raised?   Does 2, 2:30 or 3 pm work?


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com


<image001.png>

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:24 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I will pull the information on the entity (do not recall at the moment), but I sent you a spreadsheet on that earlier this week that lists all of those assets.  These are drilling assets that can be sold.  I also have connections that might facilitate that.  Let's schedule a meeting to discuss after you get through the bankruptcy hearing and I can present the information for you to review.  I am also going to outline the documents that I have so that you can have specific information that should facilitate what you need to process for the state court claims.

Deborah L. Crain

*Exhibit 24*

President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 5:19 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Sorry, just at a high level, what assets owned by what entity are you referring to?

And of course we would like to confer about any avenues to maximize value for the estates.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 5:17 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Ok, thank you.  I spoke to Jerod and he is working the form and also looks forward to our next meeting where we can discuss these other assets owned by this other entity. We estimate that it could be between 300k-500k once sold.  Obviously, no guarantees – but it's more money for the creditors of AEP.  Have a great weekend.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana

*Exhibit 24*

Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 4:40 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

You do not need to appear at the hearing in my view

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 4:38 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

That is fantastic news! I was worried about it getting delayed again but so happy things worked out. Do I need to appear at the hearing?

I have also created some notes for you on WIP that is obviously paused for now. Once you have that hearing let me know if we can schedule some time so I can go over my list and you can let me know what you want me to do/not do.

Shannon knows all of these documents like the back of her hand and like I mentioned before, we have intricate timelines and summaries available upon request.

I sent the BO form to Jerod but I will call him and light a fire to make sure we get it submitted asap.

Deborah L. Crain
President, E-Merger.Law

*Exhibit 24*

Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 4:27 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

Thanks, Deborah.

As an update, we are proceeding with filing a motion this afternoon to seek court approval to consummate the settlement with Ostranders.  It looks like the court has agreed to hear this matter at 9 am on Tuesday, June 3rd.  So hopefully we will have court approval on the third and the sale of the farm can close on the 4th.  And......
hopefully I will have a bank account at Veritex set up to receive the funds on behalf of the estate by then!


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, May 30, 2025 2:48 PM
**To:** Tom Howley <tom@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: New Accounts at Veritex for Alliance Farms and AEP

I'm on it.

Deborah L. Crain

*Exhibit 24*

President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, May 30, 2025 2:46 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Shannon Frizzell <sfrizzell@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** FW: New Accounts at Veritex for Alliance Farms and AEP

Hi Deborah:  We are still working with Veritex to open up the accounts and they have now asked for some additional information directly from Mr. Furr.  See note below and attached.

Can you coordinate with Mr. Furr and provide directly to Esme at the contact information below?  I don't want or need to be in the middle given the sensitive nature of the information.

Thanks for providing the SS-4 documents.     We appreciate your cooperation thus far.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

---

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 2:28 PM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

Exhibit 24

See attached – Blank BO Template.

**Page 3 of 5 – I.** (as shown below) is the only portion that is required to be completed with Mr. Furr's information.

<mark>We will need a copy of the Government issued ID for our records and verification. The SS# can be provided, but do not need a copy of the card.</mark>

<image002.png>



**Esme Casas** | **AVP, Business Banking Relationship Manager**
4660 Sweetwater Blvd | Sugar Land, TX 77479
713-400-7129 Direct
ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:
The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:
Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter[s].

**From:** Esme Casas <ecasas@veritexbank.com>
**Sent:** Friday, May 30, 2025 11:12 AM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** RE: New Accounts / Ready to Proceed

Hi Tom,

I apologize for the inconvenience once again.

*Exhibit 24*

Our compliance quality control officer is requesting the SS# and ID# for Mr. Furr. Due to our compliance with federal regulations, the Beneficial Ownership form is still required for these accounts.

Is there any way that you can ask his attorney for this information? <u>For reference this is what was communicated to me</u>:

*The owner's information will always be requested due to the government form that is required on all business accounts.*
*The Beneficial Ownership form is government driven and attorneys are aware of this.*
*I thought he was working on it, but I did realize he was having trouble getting it, which I have experienced before on DIP accounts.*
*That is all we need to continue.*



**Esme Casas** | **AVP, Business Banking Relationship Manager**
4660 Sweetwater Blvd | Sugar Land, TX 77479
713-400-7129 Direct
ecasas@veritexbank.com | www.veritexbank.com



CONFIDENTIALITY NOTICE:
The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, please inform us. Any unauthorized, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited. As we cannot guarantee the genuineness or completeness of the information contained in this message, the content set forth herein are not legally binding.

IRS Circular 230 Disclosure:
Veritex Community Bank and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. federal tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter[s].

*Exhibit 24*

**From:** **Deborah Crain**
**To:** **tom@howley-law.com**
**Subject:** Shared file from Deborah Crain.
**Date:** Monday, June 16, 2025 11:12:05 AM
**Attachments:** **gem_black.png**



Dear Thomas A. Howley,

Deborah Crain sent you a file named **2021 - 2024 AEP Books reviewed by dcrain.pdf.**

We compiled QB reports for you by year.  I tried to highlight anything that you might want to look at.  I know there was a question last week about a Mercedes - both parties had nice vehicles.  See AEP 111 - Etter received almost 100k for purchasing a truck that is in his name.  Both parties took distributions.  Etter took his as R&D Energy Partners and a company called "Thomas Wayne, LLC".  I have also highlighted all the payments I could find.  The holdings company had to give AEP 1.6m in 2023 for operating expenses, and I also highlighted that.  Jerod has the summary I made for you and I am waiting to see if he has any changes.  I will send totals on the payments once we finish that analysis, but for now, it looks like they received about the same.  Please feel free to call me if you need me.

It will be available for you to download until **Jun 23, 2025 11:12 AM**, unless Deborah revokes access.

[ **See the file** ]

Copyright © 2025. Themis Solutions Inc.

*Exhibit 25*

**From:** **Deborah Crain**
**To:** **Roland@howley-law.com**
**Subject:** Shared file from Deborah Crain.
**Date:** Monday, June 16, 2025 4:30:49 PM
**Attachments:** **gem_black.png**



Dear Roland Rodriguez,

Deborah Crain sent you a file named **Messages - Dustin Etter.pdf.**

Here are the downloaded text messages with Dustin Etter.

It will be available for you to download until **Jun 23, 2025 04:30 PM**, unless Deborah revokes access.

**See the file**

Copyright © 2025. Themis Solutions Inc.

*Exhibit 26*

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | vera.gonzales@frostbank.com |
| **Cc:** | Jerod Furr; Tom Howley; Eric Terry; Roland Rodriguez |
| **Subject:** | Introductions |
| **Date:** | Wednesday, June 18, 2025 3:00:00 PM |

Ms. Gonzales – I am Deborah Crain, Attorney for Jerod Furr.  He has two entities, i.e., Alliance Farm and Ranch and Alliance Energy Partners, that are in bankruptcy.  Mr. Howley is the US Chapter 11 Trustee and Mr. Terry is his lawyer.  They will need to obtain bank records and have been asked to facilitate that process.  I also have a secure system that is end to end encrypted to safely exchange documents.

Jerod can respond and confirm that you have permission to talk to them once you have the forms you require.  Thank you for your assistance in advance.

Deborah L. Crain

President, E-Merger.Law

Licensed in Texas and Louisiana

Certified Business Coach

Physical Address:

1334 Brittmoore Road, #2314

Houston, Texas 77043

Office: 346-535-0818

Cell: 832-449-0222

*Exhibit 27*

**From:** **Deborah Crain**
**To:** **tom@howley-law.com**
**Subject:** Shared file from Deborah Crain.
**Date:** Wednesday, June 18, 2025 3:46:05 PM
**Attachments:** **gem_black.png**



Dear Thomas A. Howley,

Deborah Crain sent you a file named **Proposed Structure.3.24.2022 (004).pptx.**

I think you had this slide yesterday but it was hard to see on my phone.

It will be available for you to download until **Jun 25, 2025 03:46 PM**, unless Deborah revokes access.

**See the file**

Copyright © 2025. Themis Solutions Inc.

Exhibit 28

| | |
|---|---|
| **From:** | **Deborah Crain** |
| **To:** | **Roland Rodriguez** |
| **Cc:** | **Shannon Frizzell** |
| **Subject:** | RE: Shared file from Deborah Crain. |
| **Date:** | Thursday, June 19, 2025 10:22:00 AM |
| **Attachments:** | **image001.png** |

We built a folder for you in Clio and I have a bunch of stuff obviously in there for you.  And, as I am navigating the file, I might see – oh, I need to send them this.  And – I can click and share a single document that is saved in another place.

The system is pretty amazing how I can share information and documents so quickly and easily.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Roland Rodriguez <roland@howley-law.com>
**Sent:** Thursday, June 19, 2025 10:20 AM
**To:** Deborah Crain <dcrain@E-merger.law>
**Subject:** RE: Shared file from Deborah Crain.

Hi, we have this doc.  Also wondering why this comes as a one off and we also have documents in Clio?  Just want to make sure I capture it all.

Thanks

Roland G. Rodriguez
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Email: **roland@howley-law.com**

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 18, 2025 1:46 PM
**To:** Roland Rodriguez <roland@howley-law.com>

*Exhibit 29*

**Subject:** Shared file from Deborah Crain.



Dear Roland Rodriguez,

Deborah Crain sent you a file named **Proposed Structure.3.24.2022 (004).pptx.**

I think you had this slide yesterday but it was hard to see on my phone.

It will be available for you to download until **Jun 25, 2025 03:46 PM**, unless Deborah revokes access.

**See the file**

---

Copyright © 2025. Themis Solutions Inc.

*Exhibit 29*

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Tom Howley; Leonard Simon; Shannon Frizzell; Jerod Furr |
| **Cc:** | Roland Rodriguez; Jim Crain |
| **Subject:** | RE: aep/afr |
| **Date:** | Thursday, June 19, 2025 4:01:00 PM |
| **Attachments:** | image001.png |
| | image005.png |

I did not know that as I handed it over to my accounting person. I have called them three times to get it.  I am about to leave the office but either he will respond to this email or I will send it as soon as I get it.

I am so sorry about that.  I would have included it when I gave you the thumb drive.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Thursday, June 19, 2025 3:49 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Tom Howley <tom@howley-law.com>; Leonard Simon <LSimon@pendergraftsimon.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: aep/afr

Deborah

We can't access the quickbooks that you sent us.  We need the passwords to access and take control of the quickbooks as soon as possible.

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 18, 2025 1:24 PM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon <LSimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Subject:** RE: aep/afr

I know he was traveling yesterday but let me text him.

Deborah L. Crain

*Exhibit 30*

President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, June 18, 2025 1:11 PM
**To:** Leonard Simon <LSimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>; Shannon
Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@E-
merger.law>
**Subject:** RE: aep/afr

Hi Jerod:  Just a follow up.  Pls introduce me to the point person at Frost Bank to start the
transition process for the Debtor bank accounts and hopefully we can locate someone at Truist
to do the same.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Monday, June 16, 2025 1:16 PM
**To:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Shannon Frizzell
<sfrizzell@e-merger.law>; Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@e-merger.law>
**Subject:** RE: aep/afr

*Exhibit 30*

**Eric: Mr. Furr will have to hook up by phone. I can be on zoom, but if Deborah Crain cannot attend, I am wondering if a conference  call would be better.**

Very truly yours,

Leonard H. Simon



PENDERGRAFT SIMON LLP

Leonard H. Simon

Partner

Pendergraft & Simon, L.L.P.

2777 Allen Parkway, Suite 800

Houston, TX 77019

Main Phone:(713) 528-8555

Direct Line (713) 737-8207

Cell Phone:  (713) 253-2810

Direct Fax:  (832) 202-2810

E-mail: lsimon@pendergraftsimon.com

Web site: www.pendergraftsimon.com





THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.

-----Original Appointment-----

**From:** Eric Terry <eric@howley-law.com>

**Sent:** Monday, June 16, 2025 12:50 PM

**To:** Tom Howley; Leonard Simon; Shannon Frizzell; Jerod Furr; Deborah Crain

**Subject:** aep/afr

**When:** Tuesday, June 17, 2025 2:00 PM-2:30 PM (UTC-06:00) Central Time (US & Canada).

**Where:** https://us02web.zoom.us/j/81665229613?pwd=IZbmFwTEKykiPbq4232pb8N36RauQX.1

Exhibit 30

Eric Terry is inviting you to a scheduled Zoom meeting.
Join Zoom Meeting
https://us02web.zoom.us/j/81665229613?pwd=IZbmFwTEKykiPbq4232pb8N36RauQX.1

Meeting ID: 816 6522 9613
Passcode: 795248

---

One tap mobile
+13462487799,,81665229613#,,,,*795248# US (Houston)
+16694449171,,81665229613#,,,,*795248# US

---

Dial by your location
• +1 346 248 7799 US (Houston)
• +1 669 444 9171 US
• +1 669 900 9128 US (San Jose)
• +1 719 359 4580 US
• +1 253 205 0468 US
• +1 253 215 8782 US (Tacoma)
• +1 301 715 8592 US (Washington DC)
• +1 305 224 1968 US
• +1 309 205 3325 US
• +1 312 626 6799 US (Chicago)
• +1 360 209 5623 US
• +1 386 347 5053 US
• +1 507 473 4847 US
• +1 564 217 2000 US
• +1 646 558 8656 US (New York)
• +1 646 931 3860 US
• +1 689 278 1000 US

Meeting ID: 816 6522 9613
Passcode: 795248

Find your local number: https://us02web.zoom.us/u/kmdFeg6m6

Exhibit 30

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Roland Rodriguez |
| **Cc:** | Jim Crain; Eric Terry; Tom Howley; Leonard Simon; Shannon Frizzell; Jerod Furr |
| **Subject:** | Re: aep/afr |
| **Date:** | Thursday, June 19, 2025 5:32:47 PM |

I asked Jim to run whatever reports you need in whatever format you need.

Deborah Crain
President, E-Merger.Law
Business Coach
1334 Brittmoore Road #2314
Houston, Texas 77043


On Jun 19, 2025, at 5:06 PM, Roland Rodriguez <roland@howley-law.com> wrote:


Sure just give me a call.

Thanks

Roland G. Rodriguez
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Email: roland@howley-law.com


**From:** Jim Crain <jcrain@E-merger.law>
**Sent:** Thursday, June 19, 2025 5:05 PM
**To:** Roland Rodriguez <roland@howley-law.com>
**Cc:** Deborah Crain <dcrain@E-merger.law>; Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Leonard Simon <LSimon@pendergraftsimon.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Subject:** Re: aep/afr

Still available?  Just seeing this email.
Sent from my iPhone

*Exhibit 31*

On Jun 19, 2025, at 4:22 PM, Roland Rodriguez <roland@howley-law.com> wrote:

Hi Jim, I may need to speak with you directly to get access.  I am available anytime now or tomorrow.  I can be reached at 713-366-6087.

Thanks

Roland G. Rodriguez
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Email: roland@howley-law.com

---

**From:** Jim Crain <jcrain@E-merger.law>
**Sent:** Thursday, June 19, 2025 4:06 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Leonard Simon <LSimon@pendergraftsimon.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** Re: aep/afr

Hi Eric,

My fault for not including it.

User: CPA
Pw: AL104cpa1

Regards,

Jim Crain

*Exhibit 31*

On Jun 19, 2025, at 4:01 PM, Deborah Crain
<dcrain@e-merger.law> wrote:

I did not know that as I handed it over to my accounting
person. I have called them three times to get it.  I am
about to leave the office but either he will respond to this
email or I will send it as soon as I get it.

I am so sorry about that.  I would have included it when I
gave you the thumb drive.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Thursday, June 19, 2025 3:49 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Tom Howley
<tom@howley-law.com>; Leonard Simon
<LSimon@pendergraftsimon.com>; Shannon Frizzell
<sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Roland Rodriguez <roland@howley-law.com>; Eric Terry
<eric@howley-law.com>
**Subject:** RE: aep/afr

Deborah

We can't access the quickbooks that you sent us.  We
need the passwords to access and take control of the
quickbooks as soon as possible.

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, June 18, 2025 1:24 PM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon
<LSimon@pendergraftsimon.com>; Eric Terry

*Exhibit 31*

<eric@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Subject:** RE: aep/afr

I know he was traveling yesterday but let me text him.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, June 18, 2025 1:11 PM
**To:** Leonard Simon <LSimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>; Shannon Frizzell <sfrizzell@E-merger.law>; Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@E-merger.law>
**Subject:** RE: aep/afr

Hi Jerod:  Just a follow up.  Pls introduce me to the point person at Frost Bank to start the transition process for the Debtor bank accounts and hopefully we can locate someone at Truist to do the same.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

<image001.png>

**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Monday, June 16, 2025 1:16 PM
**To:** Eric Terry <eric@howley-law.com>; Tom Howley

*Exhibit 31*

<[tom@howley-law.com](mailto:tom@howley-law.com)>; Shannon Frizzell <[sfrizzell@e-merger.law](mailto:sfrizzell@e-merger.law)>; Jerod Furr <[jpfurr@me.com](mailto:jpfurr@me.com)>; Deborah Crain <[dcrain@e-merger.law](mailto:dcrain@e-merger.law)>
**Subject:** RE: aep/afr

### Eric: Mr. Furr will have to hook up by phone. I can be on zoom, but if Deborah Crain cannot attend, I am wondering if a conference  call would be better.

Very truly yours,

Leonard H. Simon

<image002.jpg>


Leonard H. Simon
Partner
Pendergraft & Simon, L.L.P.
2777 Allen Parkway, Suite 800
Houston, TX 77019

Main Phone:(713) 528-8555
Direct Line (713) 737-8207
Cell Phone:  (713) 253-2810
Direct Fax:  (832) 202-2810
E-mail: [lsimon@pendergraftsimon.com](mailto:lsimon@pendergraftsimon.com)
Web site: [www.pendergraftsimon.com](http://www.pendergraftsimon.com)


<image003.jpg>                    <image005.png>
<image004.jpg>


THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.


-----Original Appointment-----
**From:** Eric Terry <[eric@howley-law.com](mailto:eric@howley-law.com)>
**Sent:** Monday, June 16, 2025 12:50 PM

*Exhibit 31*

**To:** Tom Howley; Leonard Simon; Shannon Frizzell; Jerod Furr; Deborah Crain

**Subject:** aep/afr

**When:** Tuesday, June 17, 2025 2:00 PM-2:30 PM (UTC-06:00) Central Time (US & Canada).

**Where:** https://us02web.zoom.us/j/81665229613?pwd=IZbmFwTEKykiPbq4232pb8N36RauQX.1


Eric Terry is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

https://us02web.zoom.us/j/81665229613?pwd=IZbmFwTEKykiPbq4232pb8N36RauQX.1

Meeting ID: 816 6522 9613
Passcode: 795248

---

One tap mobile
+13462487799,,81665229613#,,,,*795248# US (Houston)
+16694449171,,81665229613#,,,,*795248# US

---

Dial by your location
• +1 346 248 7799 US (Houston)
• +1 669 444 9171 US
• +1 669 900 9128 US (San Jose)
• +1 719 359 4580 US
• +1 253 205 0468 US
• +1 253 215 8782 US (Tacoma)
• +1 301 715 8592 US (Washington DC)
• +1 305 224 1968 US
• +1 309 205 3325 US
• +1 312 626 6799 US (Chicago)
• +1 360 209 5623 US
• +1 386 347 5053 US
• +1 507 473 4847 US
• +1 564 217 2000 US
• +1 646 558 8656 US (New York)
• +1 646 931 3860 US
• +1 689 278 1000 US

Meeting ID: 816 6522 9613
Passcode: 795248

Find your local number:
https://us02web.zoom.us/u/kmdFeg6m6

*Exhibit 31*

Exhibit 31

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Tom Howley; Jerod Furr |
| **Cc:** | Eric Terry; Roland Rodriguez; Leonard Simon |
| **Subject:** | RE: [EXTERNAL] Re: Introductions |
| **Date:** | Tuesday, June 24, 2025 3:49:00 PM |
| **Attachments:** | image001.png |

I am happy to assist in any way possible.  I just finished mediation for today and I go out of town on Thursday.  I think Jerod might have to go over to Truist and talk to someone there.  I also got a call from someone at Frost but I could not take the call.

In terms of the personal property, I sent Leonard an email with my thought process on that.  I know Jerod has been traveling back and forth and was going to circle back with Leonard.  I will call Jerod and we will continue to work on the plan.

I also got a call from Randy Bays office and they wanted an update so that they know what they need to do or not do with the BR matter.

I do not plan on being at the meeting tomorrow unless I am supposed to be there.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Tuesday, June 24, 2025 2:31 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Eric Terry <eric@howley-law.com>; Roland Rodriguez <roland@howley-law.com>
**Subject:** RE: [EXTERNAL] Re: Introductions

Hi: I removed the Frost Bank person.  I got a call from someone else at Frost who is going to assist with turning over the reins on this account.  So I am hopeful this will get done asap.

This still leaves Truist Bank.  On the phone call, Jerod explained that Vera was the previous point at Truist but she is now at Frost.   Frost will not give me a name at Truist, so I need Jerod and team to review the paperwork or provide some other name please?

Also, we had discussed the coordination on monitoring the personal property equipment and hiring a broker to monetize it.   What is the next step there?  I am on stand by to assist and be in the loop.

*Exhibit 32*

Tom Howley

HOWLEY LAW PLLC

700 Louisiana Street Suite 4545

Houston, Texas 77002

Phone: 713-333-9120

Email: tom@howley-law.com



---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, June 23, 2025 5:15 PM
**To:** Gonzales, Vera <Vera.Gonzales@frostbank.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Tom Howley <tom@howley-law.com>; Eric Terry <eric@howley-law.com>; Roland Rodriguez
<roland@howley-law.com>
**Subject:** RE: [EXTERNAL] Re: Introductions

We already have the account set up – the trustee will need to be able to requests documents
and information.  Thank you.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

---

**From:** Gonzales, Vera <Vera.Gonzales@frostbank.com>
**Sent:** Monday, June 23, 2025 5:08 PM
**To:** Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@E-merger.law>
**Cc:** Tom Howley <tom@howley-law.com>; Eric Terry <eric@howley-law.com>; Roland Rodriguez
<roland@howley-law.com>

Exhibit 32

**Subject:** RE: [EXTERNAL] Re: Introductions

Good afternoon, Jerod.

I checked with our compliance department and Frost bank does not facilitate this type of account requested. Your attorney should be able to refer to a list of banks that provide <u>Debtor in Possession Chapter 11 accounts.</u>

**Vera Gonzales**
Vice President | Commercial Banking
Frost – Banking, Investments, Insurance
20002 Northwest Freeway
Jersey Village, Texas 77065
Office: (713) 388-7507 | Cell:  832-247-0503| Fax: (713) 388-1489
<u>Vera.Gonzales@frostbank.com</u> |  <u>www.frostbank.com</u>

**From:** Jerod Furr <<u>jpfurr@me.com</u>>
**Sent:** Wednesday, June 18, 2025 3:03 PM
**To:** Deborah Crain <<u>dcrain@e-merger.law</u>>
**Cc:** Gonzales, Vera <<u>Vera.Gonzales@frostbank.com</u>>; Tom Howley <<u>tom@howley-law.com</u>>; Eric Terry <<u>eric@howley-law.com</u>>; Roland Rodriguez <<u>roland@howley-law.com</u>>
**Subject:** [EXTERNAL] Re: Introductions

Yes for Alliance Farm and Ranch LLC

AEP (Alliance Energy Partners) is with Truist Bank

> On Jun 18, 2025, at 3:00 PM, Deborah Crain <<u>dcrain@e-merger.law</u>> wrote:
>
> Ms. Gonzales – I am Deborah Crain, Attorney for Jerod Furr.  He has two entities, i.e., Alliance Farm and Ranch and Alliance Energy Partners, that are in bankruptcy.  Mr. Howley is the US Chapter 11 Trustee and Mr. Terry is his lawyer.  They will need to obtain bank records and have been asked to facilitate that process.  I also have a secure system that is end to end encrypted to safely exchange documents.
>
> Jerod can respond and confirm that you have permission to talk to them once you have the forms you require.  Thank you for your assistance in advance.
>
> Deborah L. Crain
> President, E-Merger.Law
> Licensed in Texas and Louisiana
> Certified Business Coach

*Exhibit 32*

Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 32

**From:** Deborah Crain
**To:** Tom Howley; Jerod Furr; Leonard Simon
**Cc:** Eric Terry
**Subject:** RE: Acquiring Alliance Energy Partners Assets
**Date:** Friday, June 27, 2025 10:53:00 AM
**Attachments:** image002.png
image003.png

FYI – I had to go out of town to emergency move my daughter from her apartment in Austin (UT student) – I anticipate being back on Monday.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Friday, June 27, 2025 10:16 AM
**To:** Jerod Furr <jpfurr@me.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Deborah Crain <dcrain@E-merger.law>; Eric Terry <eric@howley-law.com>
**Subject:** FW: Acquiring Alliance Energy Partners Assets

Hi Jerod and Leonard:  The entity below reached out and expressed an interest in reviewing/inspecting the drilling equipment and  making an offer.   Matt says he is talking to Jerod too.

So just following up here on how we can coordinate to monetize these assets for the benefit of AEP creditors?

Pls advise.  Thanks.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com

*Exhibit 33*



---

**From:** Matthew Serpe <Matthew@pplgroupllc.com>
**Sent:** Thursday, June 26, 2025 2:06 PM
**To:** Tom Howley <tom@howley-law.com>
**Cc:** Alex Mazer <Alex@pplgroupllc.com>
**Subject:** RE: Acquiring Alliance Energy Partners Assets

Thank you Tom! Call me tomorrow at 262-515-7976

Best regards,
Matt



**Matthew Serpe**
Senior Associate - Business Development

P 262-515-7976
matthew@pplgroupllc.com
https://www.pplgroupllc.com/

---

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Thursday, June 26, 2025 2:01 PM
**To:** Matthew Serpe <Matthew@pplgroupllc.com>
**Subject:** RE: Acquiring Alliance Energy Partners Assets

Hi: I am tied up this afternoon in client meetings but will get back to you by tomorrow.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com

*Exhibit 33*



---

**From:** Matthew Serpe <Matthew@pplgroupllc.com>
**Sent:** Thursday, June 26, 2025 1:25 PM
**To:** Tom Howley <tom@howley-law.com>
**Subject:** Acquiring Alliance Energy Partners Assets

Hi Tom,

We've been closely following the Alliance bankruptcy and have been in contact with the owner, Jerod Furr. We're very interested in acquiring the equipment and understand you're managing the real estate sale. What is plan with the assets once real estate is sold off?

Let me know if you're available for a call today or tomorrow—we'd like to schedule an inspection in the coming weeks.

Best regards,
Matt



**Matthew Serpe**
Senior Associate - Business Development

P 262-515-7976
matthew@pplgroupllc.com
https://www.pplgroupllc.com/

Exhibit 33

| From: | Deborah Crain |
|---|---|
| To: | Eric Terry; Leonard Simon |
| Cc: | Tom Howley; Summer Riehle; Jerod Furr |
| Subject: | RE: aep/afr |
| Date: | Wednesday, July 9, 2025 10:37:00 AM |

I will get some additional details from Jerod, too.

I know that this is the third case I have taken over from Thaison Hua where it has been an absolute mess.  Jerod was not told anything about whether the bankruptcy was filed, accepted – nothing.  When we got involved in March, we had to pull the BR records and found out it was about to be dismissed.  Thaison did not tell Jerod it was on the dismissal docket.  I can send you that email if you want.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Wednesday, July 9, 2025 9:25 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Summer Riehle <sriehle@E-merger.law>; Jerod Furr <jpfurr@me.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: aep/afr

Thanks for this email.  Based on Noah's email and the truist bank statements, please provide financial documentation related to J. Parker Construction including the bank account information for the account ending in 3493.

I will follow up regarding the drills.

And Leonard, please let me know a time I can call you back.  I believe you called Tom and I wanted to return that call.  Thanks, et

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002

*Exhibit 34*

Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Tuesday, July 8, 2025 9:58 AM
**To:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Summer Riehle <sriehle@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Subject:** RE: aep/afr

I apologize – last week was super busy, but I will also work on getting you documents as listed below.  Here's what I can/cannot do:

- **All action/information needed for truist account; need a point person to allow the Trustee control of this account**
  - **I will also ask Jerod and see if he knows who we can talk to.  I will have an answer by tomorrow.**
- A date when we can talk to Ms. Lopez, accountant
  - Summer will reach out to Jerod and get the CPA's contact information and we will work on getting a meeting set up for this week.  *Summer – I do not need to be a part of that meeting – we need to just make it happen.*
- 2025 bank records for aep
  - I spoke to Jerod last evening to get his personal bank records, which he is working on.  As soon as I have them, I will have Summer put them in the shared trustee folder in Clio.  I have cc'd him here to get the 2025 AEP bank records, too.  Likewise, I will put them in the shared folder as soon as I have them.
- The sofas that were never filed; and any revisions to the ones that were
  - Leonard question.
- Cooperation on the selling the drills
  - I spoke to Jerod about this yesterday.  He is balancing trying to bring in work to make sure he can take care of these legal bills and his family and has been super busy, but obviously, wants to do whatever is asked.  I know that Leonard and I had spoken about putting the equipment in a place mutually agreeable until we have a formal court approved resolution on these issues. I honestly do not know the first step in moving equipment like this, but I think the information about where it is and details is on the excel sheet I gave you.  I will need to go back and confirm.  I will need you to give me specific directions – Deborah we would like to move this equipment to this location and we are sending so and so to pick it up.  You will need to provide to so and so correspondence stating that you

Exhibit 34

represent Jerod and that you are asking that the equipment be moved in accordance with the trustee's request.  I am happy to get on a call to work on this – and as soon as I have specific instructions, I can work on it.

- Paperwork on g wagon that was promised to us
  - A copy of the title?  I can work on that, too.

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

Exhibit 34

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Leonard Simon |
| **Cc:** | Tom Howley; Summer Riehle; Jerod Furr; Hotze, William |
| **Subject:** | RE: aep/afr |
| **Date:** | Thursday, July 10, 2025 1:13:00 PM |

I am neck deep in hearing prep for two hearings tomorrow.  I did follow up on the bank statements and I am still awaiting them (I will text him right now).  I did speak to Jerod and he has asked me to look at the whole picture – that J Parker would lend money to AEP just like the other entities did.  Like I did before, what I want to do is highlight the bank statements for a complete picture, not just one favorable to one side or the other.  I have also reached out to the CPA and she wants more information before she agrees to put a meeting on her schedule. So, I am working on getting her what she needs.  My hearings are in Harris County at 11:30 tomorrow, and then I can work on this again. I will follow up with you the moment I am able.

However, when the statements come, Summer knows to put them in your shared folder.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Thursday, July 10, 2025 1:06 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Summer Riehle <sriehle@E-merger.law>; Jerod Furr <jpfurr@me.com>; Eric Terry <eric@howley-law.com>; Hotze, William <whotze@dykema.com>
**Subject:** RE: aep/afr

Following up on certain issues:

1. Will Furr agree to a temporary injunction regarding nondebtor affiliates?  This overlaps with the email below regarding J. Parker Construction.  300k from aep during the 90 days before bankruptcy.  Please produce bank statements and financial information of J. Parker Construction.

2. The trustee has been approached by a possible purchaser for the drills.  He will find out more information.

3. Can Mr. Furr agree that the corporate structure chart circulated by Noah is correct?  And also, because AFR is not on the chart, that AFR is a separate entity that is wholly owned by Mr. Furr?

<div align="right">*Exhibit 35*</div>

**From:** Eric Terry
**Sent:** Wednesday, July 9, 2025 9:25 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Summer Riehle <sriehle@E-merger.law>; Jerod Furr <jpfurr@me.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: aep/afr

Thanks for this email.  Based on Noah's email and the truist bank statements, please provide financial documentation related to J. Parker Construction including the bank account information for the account ending in 3493.

I will follow up regarding the drills.

And Leonard, please let me know a time I can call you back.  I believe you called Tom and I wanted to return that call.  Thanks, et


Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com


**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Tuesday, July 8, 2025 9:58 AM
**To:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Summer Riehle <sriehle@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Subject:** RE: aep/afr

I apologize – last week was super busy, but I will also work on getting you documents as listed below.  Here's what I can/cannot do:

- **All action/information needed for truist account; need a point person to allow the Trustee control of this account**
  - **I will also ask Jerod and see if he knows who we can talk to.  I will have an answer by tomorrow.**

*Exhibit 35*

A date when we can talk to Ms. Lopez, accountant
- ○ Summer will reach out to Jerod and get the CPA's contact information and we will work on getting a meeting set up for this week. *Summer – I do not need to be a part of that meeting – we need to just make it happen.*
- 2025 bank records for aep
  - ○ I spoke to Jerod last evening to get his personal bank records, which he is working on. As soon as I have them, I will have Summer put them in the shared trustee folder in Clio. I have cc'd him here to get the 2025 AEP bank records, too. Likewise, I will put them in the shared folder as soon as I have them.
- The sofas that were never filed; and any revisions to the ones that were
  - ○ Leonard question.
- Cooperation on the selling the drills
  - ○ I spoke to Jerod about this yesterday. He is balancing trying to bring in work to make sure he can take care of these legal bills and his family and has been super busy, but obviously, wants to do whatever is asked. I know that Leonard and I had spoken about putting the equipment in a place mutually agreeable until we have a formal court approved resolution on these issues. I honestly do not know the first step in moving equipment like this, but I think the information about where it is and details is on the excel sheet I gave you. I will need to go back and confirm. I will need you to give me specific directions – Deborah we would like to move this equipment to this location and we are sending so and so to pick it up. You will need to provide to so and so correspondence stating that you represent Jerod and that you are asking that the equipment be moved in accordance with the trustee's request. I am happy to get on a call to work on this – and as soon as I have specific instructions, I can work on it.
- Paperwork on g wagon that was promised to us
  - ○ A copy of the title? I can work on that, too.

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

Exhibit 35

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Cc:** | Tom Howley; Roland Rodriguez; Leonard Simon |
| **Subject:** | Update |
| **Date:** | Monday, July 14, 2025 2:52:00 PM |

I sent you the statements through Clio.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

*Exhibit 36*

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Cc:** | Tom Howley; Roland Rodriguez; Leonard Simon |
| **Subject:** | RE: Update |
| **Date:** | Monday, July 14, 2025 3:09:00 PM |

1. Will Furr agree to a temporary injunction regarding nondebtor affiliates?
   - Mr. Furr cannot agree to an injunction that literally would prohibit him from taking care of his family.  I am confused as to why this would be requested and happy to discuss with you and Leonard.  Dustin Etter took all the clients of AEP and is operating a competing company.  That's what bankrupted AEP.

2. Can Mr. Furr agree that the corporate structure chart circulated by Noah is correct?
   - I cannot find that email – I looked for it, but it is buried in a sea of emails.  So, the answer is I do not know at this time.

   And also, because AFR is not on the chart, that AFR is a separate entity that is wholly owned by Mr. Furr?
   - Yes, solely owned by Mr. Furr.

3. Please produce bank statements and financial information of J. Parker Construction.
   - Will do and I am working on it.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, July 14, 2025 2:52 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Tom Howley <tom@howley-law.com>; Roland Rodriguez <roland@howley-law.com>; Leonard

*Exhibit 37*

Simon <lsimon@pendergraftsimon.com>
**Subject:** Update

I sent you the statements through Clio.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 37

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Cc:** | Tom Howley; Roland Rodriguez; Leonard Simon |
| **Subject:** | RE: Update |
| **Date:** | Monday, July 14, 2025 4:38:00 PM |

Yes, this is the correct chart.  And yes, J Parker Construction provided the seed money for AEP (40K).  That entity was not sued by Dustin Etter.

He works and has projects with J Parker and that is how he has paid several legal bills.  He would not be able to survive without working his construction projects.

In terms of the others, they are not operational as I appreciate it.  The drills and equipment we were thinking about selling and putting the funds into an escrow/IOLTA account that you would have visibility access to until we figure that piece out.  We agree with you that the longer they sit in someone else's possession, they are at risk. Jerod said he had interest in one of the drills but wanted to bring that to your attention before we did anything.

Also, I have again asked the CPA for a meeting.  I will work that into the schedule asap when she responds.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Monday, July 14, 2025 4:27 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Tom Howley <tom@howley-law.com>; Roland Rodriguez <roland@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: Update


The chart is attached.

On the request for a temporary injunction, I am trying to keep nondebtor entities that have received transfers from the debtors or hold the investment asset or drills from further dissipating assets.  Are you saying that he can't agree to a temporary injunction of the entities on the chart attached?  I am trying to propose something for the judge that makes sense.  is Mr. Furr is taking care of his family from the nondebtor entity assets on the attached?

Exhibit 38

What is Furr's position going to be at the status hearing on 7/22?

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, July 14, 2025 3:10 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Tom Howley <tom@howley-law.com>; Roland Rodriguez <roland@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Subject:** RE: Update


1. Will Furr agree to a temporary injunction regarding nondebtor affiliates?
   - Mr. Furr cannot agree to an injunction that literally would prohibit him from taking care of his family.  I am confused as to why this would be requested and happy to discuss with you and Leonard.  Dustin Etter took all the clients of AEP and is operating a competing company.  That's what bankrupted AEP.
2. Can Mr. Furr agree that the corporate structure chart circulated by Noah is correct?
   - I cannot find that email – I looked for it, but it is buried in a sea of emails.  So, the answer is I do not know at this time.

   And also, because AFR is not on the chart, that AFR is a separate entity that is wholly owned by Mr. Furr?
   - Yes, solely owned by Mr. Furr.
3. Please produce bank statements and financial information of J. Parker Construction.
   - Will do and I am working on it.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 38

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Monday, July 14, 2025 2:52 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Tom Howley <tom@howley-law.com>; Roland Rodriguez <roland@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Subject:** Update

I sent you the statements through Clio.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 38

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Subject:** | RE: Call |
| **Date:** | Thursday, July 17, 2025 1:20:00 PM |

Can we do 10:00?  I could do that or 1:30 as I have physical therapy at 3:00.

Deborah L. Crain
President, E-Merger.Law
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Thursday, July 17, 2025 1:17 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Subject:** RE: Call

I can't today
Will be available tomorrow

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Thursday, July 17, 2025 1:16 PM
**To:** Eric Terry <eric@howley-law.com>
**Subject:** Call

Do you have time today for a quick Zoom/Teams call?  I was finally able to lock down the CPA.

Deborah L. Crain
President, E-Merger.Law.
Licensed in Texas and Louisiana
Certified Business Coach
Physical Address:
1334 Brittmoore Road, #2314
Houston, Texas 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 39

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Subject:** | New event: Meeting with Trustee & Eric Terry, Fri, Jul 18, 2025, 10:00 AM to 10:30 AM (CDT) |
| **Date:** | Thursday, July 17, 2025 2:16:22 PM |
| **Attachments:** | powered-by.png |
| | event.png |
| | invite.ics |

<!--[if mso gte 12]> <![endif]-->

This is an automated message.
Please do not reply to this email.



**Deborah Crain** from E-Merger Law has invited you to an event.

**Event:** Meeting with Trustee & Eric Terry

**When:** Fri, Jul 18, 2025, 10:00 AM to 10:30 AM (CDT)

**Where:** Remotely via Zoom: Join Zoom Meeting

**Attendees:** Deborah Crain (Organizer), Howley Law PLLC, Eric Terry, Leonard Simon

**Description:**

--------
Deborah Crain is inviting you to a scheduled Zoom meeting.
Topic: Meeting with Trustee & Eric Terry
Time: Jul 18, 2025 10:00 AM Central Time (US and Canada)
Join Zoom Meeting
https://us06web.zoom.us/j/87342235795?
pwd=QsF1gaRUadBFiiEAGYcW9OAHBibiJh.1
Meeting ID: 873 4223 5795
Passcode: 4ona*InoEU

---

*Exhibit 40*

One tap mobile

+19292056099,,87342235795#,,,,*7702308382# US (New York)

+13017158592,,87342235795#,,,,*7702308382# US (Washington DC)

---

Dial by your location

• +1 929 205 6099 US (New York)

• +1 301 715 8592 US (Washington DC)

• +1 305 224 1968 US

• +1 309 205 3325 US

• +1 312 626 6799 US (Chicago)

• +1 646 931 3860 US

• +1 719 359 4580 US

• +1 253 205 0468 US

• +1 253 215 8782 US (Tacoma)

• +1 346 248 7799 US (Houston)

• +1 360 209 5623 US

• +1 386 347 5053 US

• +1 507 473 4847 US

• +1 564 217 2000 US

• +1 669 444 9171 US

• +1 669 900 6833 US (San Jose)

• +1 689 278 1000 US

Meeting ID: 873 4223 5795

Passcode: 7702308382

Find your local number: https://us06web.zoom.us/u/kceIYctZj

--------

**Need help?** You can contact E-Merger Law at deborah@e-merger.law.

Powered by ✓ Clio

300 - 4611 Canada Way, Burnaby, BC, V5G 4X3

© 2025 Themis Solutions Inc.

Exhibit 40

Exhibit 40

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Tom Howley |
| **Cc:** | Roland Rodriguez; Leonard Simon |
| **Subject:** | CPA information |
| **Date:** | Friday, July 18, 2025 9:48:00 AM |
| **Attachments:** | 2025.07.15 Legal request information from CPA.xlsx |
| | image001.png |

Here is what we received from Jerod's CPA.  See you soon.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 41

| From: | Deborah Crain |
|---|---|
| To: | Eric Terry |
| Cc: | Tom Howley; Leonard Simon; Jerod Furr; Jim Crain |
| Subject: | RE: draft email to Deborah |
| Date: | Tuesday, July 22, 2025 9:47:00 AM |
| Attachments: | image001.png |

Yes, we are working on all of those things.  I will get you the addresses and all of the tracing information showing the payments from J Parker Construction.  I asked my accounting person to expedite that for you.  Jerod tried to upload the J Parker bank statements twice now and has had some technical issues.  We are working with him on that and anticipate having them today.  I will continue to keep you posted.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Tuesday, July 22, 2025 9:02 AM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Subject:** FW: draft email to Deborah

Deborah

Following up on our discussion,

1. is the attached list of drills/equipment?  And please let me know the physical address of where the drills/equipment are located.

*Exhibit 42*

2.  Will you be sending me financial information and other documents related to J. Parker
    Construction?  As you know, 300k was transferred from the debtor to J. Parker within 90
    days of bankruptcy.  If the trustee can't get cooperation, we will need to pursue formally
    through 2004 or otherwise.

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

Exhibit 42

**From:** **Deborah Crain**
**To:** **eric@howley-law.com**
**Subject:** Shared file from Deborah Crain.
**Date:** Wednesday, July 23, 2025 10:56:17 AM
**Attachments:** **gem_black.png**



Dear Eric Terry,

Deborah Crain sent you a file named **2025.07.22 drilling equipment.xlsx.**

Jerod tells me that this vendor list has every single contact for the business, including the companies that currently have the drills. The contact also includes mailing addresses so you can pull that and send letters to them with the order that was signed yesterday.  Let me know if you need anything else on this issue.

It will be available for you to download until **Jul 30, 2025 10:56 AM**, unless Deborah revokes access.

**See the file**

Copyright © 2025. Themis Solutions Inc.

*Exhibit 43*

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Leonard Simon |
| **Subject:** | RE: 341 Meeting of Creditors |
| **Date:** | Tuesday, July 29, 2025 10:43:00 AM |
| **Attachments:** | image001.png |
| | 2025.07.28 Draft Defendants" First Amended Counterclaims 3rd-Party Petition dlc jf.docx |

1. If Furr has any opposition to the trustee moving forward with the sale of the physical equipment with reservation of rights to the proceeds.
   Leonard can confirm but as I appreciate it, no objection – and the funds be held in a mutually agreed upon account. If that is the trustee's account, fine, or an IOLTA account, fine.

2. I need information on the investment asset
   I am not sure what you mean here but I did send you a vendor list that had every address of the companies listed on that excel sheet that outlined the drilling equipment.  Let me know if you need me to resend it or what else you need.

3. I need information on the patent that Noah brought up to me.  I was told there is an asset, possibly a patent, that relates to manufacturing drills/equipment?
   As I appreciate it, the patent was purchased with funds after a distribution was made, so personal funds.  I will see if there is documentation regarding that purchase and send it to you.

4. I need more information on your evidence of any usurpation claim
   See attached draft of the claim that was drafted as if it would go to state court.  We still need to change it to the adversary proceeding number, etc., jurisdiction, and otherwise conform it to the federal rules.  I sent it to Leonard to do that yesterday. I know he is in court today.

Deborah, let me know if you want me to call you to discuss.  thanks, et

   I am happy to get on a call with you to expedite anything.  I have calls currently booked at 11 and 1:30, but I should be free by 2:00.

Eric Terry

HOWLEY LAW PLLC

700 Louisiana Street Suite 4545

Houston, Texas 77002

Phone: 713-333-9125

Cell: 210-862-2060

Email:  eric@howley-law.com

**From:** Deborah Crain <dcrain@E-merger.law>

*Exhibit 44*

**Sent:** Tuesday, July 29, 2025 10:26 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: 341 Meeting of Creditors

You are correct about the financial situation that is impeding this process.  Jerod is not made out of money and currently owes me about 50k.  Brittany will not schedule a meeting without retainer replenishment.

Eric – is it possible that we could get a motion submitted to be approved to pay down the legal fees and get Brittany paid so she does what needs to be done?

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Brittany Lopez <brittany@brittanylopezcpa.com>
**Sent:** Tuesday, July 29, 2025 8:53 AM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Jerod Furr <jpfurr@me.com>
**Subject:** Re: 341 Meeting of Creditors

Deborah,

I am just waiting on the retainer from Jerod to revert back to you on these items.
If you have any questions please let me know,

Brittany

Hours: M-TH 8-5
        Fri 8-12

Exhibit 44

**By Appt Only**

**Please give us 24-48 hours to respond.**

Brittany Lopez CPA PC
7 Grogans Park Dr. Ste 10
The Woodlands, TX 77380
281.367.7444
https://brittanylopezcpa.com/



BRITTANY LOPEZ CPA PC

 *please consider the environment before printing this email*

This e-mail and any attachment are confidential and may be privileged or otherwise protected from disclosure. It is solely intended for the person(s) named above. If you are not the intended recipient, any reading, use, disclosure, copying or distribution of all or parts of this e-mail or associated attachments is strictly prohibited. If you are not an intended recipient, please notify the sender immediately by replying to this message or by telephone and delete this e-mail and any attachments permanently from your system.

Exhibit 44

| From: | Deborah Crain |
|---|---|
| To: | Eric Terry; Leonard Simon |
| Subject: | RE: 341 Meeting of Creditors |
| Date: | Tuesday, July 29, 2025 12:07:00 PM |
| Attachments: | image001.png |

I am incorrect – the patent is held by AEP Asset Holdings and it is about to expire – this week.  Jerod is going to send me those details today.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Tuesday, July 29, 2025 10:32 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Eric Terry <eric@howley-law.com>
**Subject:** RE: 341 Meeting of Creditors

I will discuss this issue with the trustee and counsel for the ucc

Separately, I need to know

1. If Furr has any opposition to the trustee moving forward with the sale of the physical equipment with reservation of rights to the proceeds.
2. I need information on the investment asset
3. I need information on the patent that Noah brought up to me.  I was told there is an asset, possibly a patent, that relates to manufacturing drills/equipment?
4. I need more information on your evidence of any usurpation claim

*Exhibit 45*

Deborah, let me know if you want me to call you to discuss.  thanks, et

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

---

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Tuesday, July 29, 2025 10:26 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: 341 Meeting of Creditors

You are correct about the financial situation that is impeding this process.  Jerod is not made out of money and currently owes me about 50k.  Brittany will not schedule a meeting without retainer replenishment.

Eric – is it possible that we could get a motion submitted to be approved to pay down the legal fees and get Brittany paid so she does what needs to be done?

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 45

**From:** Brittany Lopez <brittany@brittanylopezcpa.com>
**Sent:** Tuesday, July 29, 2025 8:53 AM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Jerod Furr <jpfurr@me.com>
**Subject:** Re: 341 Meeting of Creditors

Deborah,

I am just waiting on the retainer from Jerod to revert back to you on these items.
If you have any questions please let me know,

Brittany

Hours: M-TH 8-5
       Fri 8-12
       **By Appt Only**

**Please give us 24-48 hours to respond.**

Brittany Lopez CPA PC
7 Grogans Park Dr. Ste 10
The Woodlands, TX 77380
281.367.7444
https://brittanylopezcpa.com/

BRITTANY LOPEZ CPA PC

*please consider the environment before printing this email*

This e-mail and any attachment are confidential and may be privileged or otherwise protected from disclosure. It is solely intended for the person(s) named above. If you are not the intended recipient, any reading, use, disclosure, copying or distribution of all or parts of this e-mail or associated attachments is strictly prohibited. If you are not an intended recipient, please notify the sender immediately by replying to this message or by telephone and delete this e-mail and any attachments permanently from your system.

Exhibit 45

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Tom Howley |
| **Cc:** | Roland Rodriguez; Leonard Simon |
| **Subject:** | FW: Patent |
| **Date:** | Wednesday, July 30, 2025 10:37:00 AM |
| **Attachments:** | US20140360787A1.pdf |
| | image001.png |

1. Here is the patent information – the link below should give you the information you need.  As I appreciate it, it expires this week and my client does not have the funds to pay the $3,500 renewal fee.

2. As it pertains to the site inspection, he called over to Viper and is going to call me back and see when a good time is to schedule the 30 minute inspection we discussed.  It is only 15 minutes away from him, so it will not be too difficult to get to.  I asked him to let us know asap as to when they will let us come by.

3. For that inspection, I will not be present (nor should Noah or any of the other lawyers – except you if you want to be there).  If Jerod does not have a firm date and time by the time I get out of my business meeting at 2:00, I will follow up and make that happen. I will update you as soon as I have those specifics.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Jerod Furr CTR <jerod.furr@altitude-ep.com>
**Sent:** Tuesday, July 29, 2025 7:33 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Subject:** Patent

https://patentimages.storage.googleapis.com/b6/bf/a0/aa62137b2cedb9/US20140360787A1.pdf

**Exhibit 46**

**Jerod Furr**

**Altitude Energy Partners LLC.**

9950 Woodloch Forest Dr., Suite 2175 | The Woodlands, TX 77380

C: 281-222-8366

E: jerod.furr@altitude-ep.com

---

This message is intended for the addressees only and may contain confidential or privileged information. Any use of this information by persons other than addressees is prohibited. If you have received this message in error, please reply to the sender and delete or destroy all copies.

Exhibit 46

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | William Hotze |
| **Cc:** | Eric Terry; Tom Howley; Jerod Furr; Summer Riehle |
| **Subject:** | Re: Alliance - Patent |
| **Date:** | Wednesday, July 30, 2025 12:49:46 PM |
| **Attachments:** | DYK21006-logo_RGB_FINAL(Custom)_d7656d32-7389-4b1f-8183-04753cc3fce5.png |
| | DYK21006-logo_RGB_FINAL(Custom)_d7656d32-7389-4b1f-8183-04753cc3fce5.png |
| | Patent No. 9869127.pdf |

The fee is a lawyer fee I'm sure. I ccd Jerod on this so we can find out who his IP lawyer was/is. To get the specifics, you need a USPTO login. I had one at the last firm but I have not updated that.

We will also see if we can update that and get you that information asap.

I'm in a meeting and then dealing with a mother crisis but I will endeavor to get you this today due to the time crunch we are under.

Deborah Crain
President, E-Merger.Law
Business Coach
1334 Brittmoore Road #2314
Houston, Texas 77043


On Jul 30, 2025, at 11:30 AM, Hotze, William <whotze@dykema.com> wrote:


Deborah – My understanding is that there is a fee due for the continuation of the attached patent that may be held by the bankruptcy estate. Can you provide the information on how the amount of the fee is calculated and pass along any information your client received that notes the date for paying the fee (whether that's from the USPTO or somewhere else)? Also, can you please find out from your client if the patent is being utilized currently, and if so, by whom?

Thanks!

William

**William J. Hotze**
Member

D 713-904-6959 ▪ F 855-227-4720
WHotze@dykema.com ▪ dykema.com

**BIO   VCARD   LINKEDIN**

5 Houston Center 1401 McKinney Street, Suite 1625
Houston, Texas 77010

*Exhibit 47*

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

Exhibit 47

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Leonard Simon; Eric Terry; Tom Howley |
| **Cc:** | Jerod Furr |
| **Subject:** | RE: Jerod |
| **Date:** | Thursday, July 31, 2025 12:37:51 PM |
| **Attachments:** | image009.png |
| | image001.png |

What we talked about yesterday is that I would like to go ahead and submit an application to get my attorney's fees approved. I would work with Brittany to get a flat fee statement that I could also submit to get approved. Jerod and I agree that she is still going to be needed. For example, if she put something in the chart of accounts as a bill payment but it was really a repayment of a loan, she would have had to have submitted a journal entry to account for that. There are going to be notes that the forensic accountant will need to be able to understand why something went where it went.

I will work on that and send it to you in draft first before we file it.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Thursday, July 31, 2025 10:30 AM
**To:** Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>
**Cc:** Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@E-merger.law>
**Subject:** Jerod

**You cannot continue to expect Jerod to continue to pay for expenses that should be borne by AFR and AEP. Yesterday, I learned from Deborah's email that Jerod was paying to keep some patent alive that the Trustee claims an interest in. This is just the latest item that is "sticking in my craw" as they say.**

1. **The Trustee needs to bear the cost of a limited engagement of the Debtors' accountant to complete the specificity requested by**

Exhibit 48

**the Trustee on Questions 3 and 4 of the SOFAs for AEP and AFR. Tim Wentworth was paid a small fortune to, at a minimum, get these basic bankruptcy filings prepared and filed. If I cannot get the accountant to prepare the needed schedules without being paid, I will file an emergency motion with the Court.**

2. **Deborah and I are expending substantial time and effort file SOFAs that Tim Wentworth should have prepared. In your settlement with this firm, you should have demanded that his firm complete these basic tasks.**

**You need to take these concerns seriously, or you will cause me to strike out and take these matters up with the Court. I am sick of hearing that this is Jerod's obligation to accomplish these tasks. This is true, but he needs the assistance of the Debtors' accountants. And he already hired and paid Tim Wentworth's firm to do so. He should not be required to pay for this twice, especially when you received a refund from Wentworth's firm.**

Very truly yours,

Leonard H. Simon



PENDERGRAFT SIMON LLP

Leonard H. Simon
Partner
Pendergraft & Simon, L.L.P.
2777 Allen Parkway, Suite 800
Houston, TX 77019

Main Phone:(713) 528-8555
Direct Line (713) 737-8207
Cell Phone:  (713) 253-2810
Direct Fax:  (832) 202-2810
E-mail: lsimon@pendergraftsimon.com
Web site: www.pendergraftsimon.com

Exhibit 48





THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.

Exhibit 48

**From:** Deborah Crain
**To:** Tom Howley
**Cc:** Eric Terry; Leonard Simon
**Subject:** RE: M&E Proposal Draft Agreement
**Date:** Thursday, August 7, 2025 4:05:00 PM
**Attachments:** image002.png
image004.png

He is leaving to take his son back to college and will be out of pocket for a week. The equipment is spread out all over the place, so he is going to have to be present. Maybe we should proactively schedule a call when he is back in town so that we can get all of the answers resolved at one time, instead of all of the back and forth.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Thursday, August 7, 2025 4:03 PM
**To:** Deborah Crain <dcrain@E-merger.law>
**Cc:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Subject:** RE: M&E Proposal Draft Agreement

Thanks, Deborah. Hopefully we can touch base tomorrow morning to sync up on a plan to move forward so we can get closer to monetization of these assets.

Best, Tom H

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Thursday, August 7, 2025 2:59 PM
**To:** Tom Howley <tom@howley-law.com>
**Cc:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Subject:** RE: M&E Proposal Draft Agreement

Called and texted and asked him to respond.  I have a big hearing on Monday morning (I will not be in the BR hearings).  I do not think I am needed but I can send Stephen from my office to listen in if needed.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



**Exhibit 49**

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may

be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Thursday, August 7, 2025 2:54 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

Hi:  Does Jerod have any comments or feedback on this proposal?  I just spoke to the point person and he appears to have a lot of relevant experience and he is interested in getting the agreement signed up and being on site on Tuesday of next week to start the process.

I have some comments/edits to the draft agreement but do not want to incur time on it until we are on the same page.

Can you pls confirm the address where the equipment/drilling motors are located?  I looked up Viper Energy but do not want to provide a specific address yet without confirming with your side.  And I can't recall if the address has been provided yet.

Thanks.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, August 6, 2025 1:49 PM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

I do not have all of the answers, but I am working on investigating,

Shannon is working on a document inventory for me/you, but I started running a fever today.  It's probably just that I am exhausted from work, but if you do not hear from me, that will be why.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, August 6, 2025 10:55 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

Yes, we will vet any connections or relationships as part of the hiring process, but we are not aware of any conflicts with this broker and they seem experienced with this type of sale.  I immediately cut off contact with Tranzon/Danny Williams when you said there was a conflict.   I frankly do not understand how Danny Williams and/or his company can be using/renting out equipment they do not own?  How is Viper permitting this to happen?

Exhibit 49

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, August 6, 2025 10:48 AM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

I am not aware of any diabolical plot on these.

Jerod is going to need to comment and also talk to the folks at Viper.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, August 6, 2025 9:59 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Deborah Crain <dcrain@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: M&E Proposal Draft Agreement

Hi Jerod and team:  Here is a proposal from the other broker we are considering.  I tend to prefer this one (and Hotze has worked with this entity before and has a positive reference), but welcome your feedback.

It appears that this broker will be in the area on Monday and would like to visit the site.   Glad to confer if needed but let's select a broker and then figure out the logistics.

Thanks.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com

<div align="right"><span style="color:blue">Exhibit 49</span></div>



---

**From:** Jody Bacque <jbacque@m-epartners.com>
**Sent:** Tuesday, August 5, 2025 4:57 PM
**To:** Eric Terry <eric@howley-law.com>
**Subject:** M&E Proposal Draft Agreement

Eric, Please see attached for the Alliance sale. This is the draft template we utilized in the Laquay sale.
The expense estimate and compensation percentages are placeholders at present.

We would expect a 21-30 day window to catalogue and stage the assets. Marketing would launch immediately with featured assets with the remaining pool continuously backfilled during the process. During this initial phase, a private sale/sealed bid option is effective and can be followed by an online auction. As discussed, Bob Hileman (Certified Appraiser) and I are due in Houston this coming Monday, and will have a window to inspect the asset pool depending on the location once confirmed.
I am available to discuss this evening or tomorrow as needed.

Jody E. Bacque'
President  | M&E Partners, LLC
9786 Timber Circle, Suite A | Spanish Fort, AL 36527
Direct: 251-404-2367
jbacque@m-epartners.com
www.m-epartners.com ; www.intelli-val.com

_Exhibit 49_

**From:** Deborah Crain
**To:** Tom Howley; Leonard Simon; Jerod Furr
**Cc:** Hotze, William; Eric Terry
**Subject:** RE: M&E Proposal Draft Agreement
**Date:** Wednesday, August 6, 2025 10:47:00 AM
**Attachments:** image002.png
image003.png

I am not aware of any diabolical plot on these.

Jerod is going to need to comment and also talk to the folks at Viper.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston, TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, August 6, 2025 9:59 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Deborah Crain <dcrain@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: M&E Proposal Draft Agreement

Hi Jerod and team:  Here is a proposal from the other broker we are considering.  I tend to prefer this one (and Hotze has worked with this entity before and has a positive reference), but welcome your feedback.

It appears that this broker will be in the area on Monday and would like to visit the site.   Glad to confer if needed but let's select a broker and then figure out the logistics.

Thanks.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



**From:** Jody Bacque <jbacque@m-epartners.com>
**Sent:** Tuesday, August 5, 2025 4:57 PM
**To:** Eric Terry <eric@howley-law.com>
**Subject:** M&E Proposal Draft Agreement

Eric, Please see attached for the Alliance sale. This is the draft template we utilized in the Laquay sale.
The expense estimate and compensation percentages are placeholders at present.

We would expect a 21-30 day window to catalogue and stage the assets. Marketing would launch immediately with featured assets with the remaining pool continuously backfilled during the process. During this initial phase, a private sale/sealed bid option is effective and can be followed by an online auction.
As discussed, Bob Hileman (Certified Appraiser) and I are due in Houston this coming Monday, and will have a window to inspect the asset pool depending on the location once confirmed.
I am available to discuss this evening or tomorrow as needed.

Jody E. Bacque'

*Exhibit 50*

President  | M&E Partners, LLC
9786 Timber Circle, Suite A | Spanish Fort, AL 36527
Direct: 251-404-2367
jbacque@m-epartners.com
www.m-epartners.com ; www.intelli-val.com

Exhibit 50

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Tom Howley; Leonard Simon; Jerod Furr |
| **Cc:** | Hotze, William; Eric Terry |
| **Subject:** | RE: M&E Proposal Draft Agreement |
| **Date:** | Thursday, August 7, 2025 2:55:00 PM |
| **Attachments:** | image002.png |
| | image004.png |

I am going to call him right now.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston, TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Thursday, August 7, 2025 2:54 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

Hi:  Does Jerod have any comments or feedback on this proposal?  I just spoke to the point person and he appears to have a lot of relevant experience and he is interested in getting the agreement signed up and being on site on Tuesday of next week to start the process.

I have some comments/edits to the draft agreement but do not want to incur time on it until we are on the same page.

Can you pls confirm the address where the equipment/drilling motors are located?  I looked up Viper Energy but do not want to provide a specific address yet without confirming with your side.  And I can't recall if the address has been provided yet.

Thanks.

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, August 6, 2025 1:49 PM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

I do not have all of the answers, but I am working on investigating,

Shannon is working on a document inventory for me/you, but I started running a fever today.  It's probably just that I am exhausted from work, but if you do not hear from me, that will be why.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston, TX 77043

*Exhibit 51*

Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, August 6, 2025 10:55 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

Yes, we will vet any connections or relationships as part of the hiring process, but we are not aware of any conflicts with this broker and they seem experienced with this type of sale. I immediately cut off contact with Tranzon/Danny Williams when you said there was a conflict. I frankly do not understand how Danny Williams and/or his company can be using/renting out equipment they do not own? How is Viper permitting this to happen?

Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email: tom@howley-law.com



**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Wednesday, August 6, 2025 10:48 AM
**To:** Tom Howley <tom@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: M&E Proposal Draft Agreement

I am not aware of any diabolical plot on these.

Jerod is going to need to comment and also talk to the folks at Viper.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Tom Howley <tom@howley-law.com>
**Sent:** Wednesday, August 6, 2025 9:59 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Deborah Crain <dcrain@E-merger.law>; Jerod Furr <jpfurr@me.com>
**Cc:** Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: M&E Proposal Draft Agreement

Exhibit 51

Hi Jerod and team:  Here is a proposal from the other broker we are considering.  I tend to prefer this one (and Hotze has worked with this entity before and has a positive reference), but welcome your feedback.

It appears that this broker will be in the area on Monday and would like to visit the site.   Glad to confer if needed but let's select a broker and then figure out the logistics.

Thanks.


Tom Howley
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9120
Email:  tom@howley-law.com



---

**From:** Jody Bacque <jbacque@m-epartners.com>
**Sent:** Tuesday, August 5, 2025 4:57 PM
**To:** Eric Terry <eric@howley-law.com>
**Subject:** M&E Proposal Draft Agreement

Eric, Please see attached for the Alliance sale. This is the draft template we utilized in the Laquay sale.
The expense estimate and compensation percentages are placeholders at present.

We would expect a 21-30 day window to catalogue and stage the assets. Marketing would launch immediately with featured assets with the remaining pool continuously backfilled during the process. During this initial phase, a private sale/sealed bid option is effective and can be followed by an online auction. As discussed, Bob Hileman (Certified Appraiser) and I are due in Houston this coming Monday, and will have a window to inspect the asset pool depending on the location once confirmed.
I am available to discuss this evening or tomorrow as needed.


Jody E. Bacque'
President  | M&E Partners, LLC
9786 Timber Circle, Suite A | Spanish Fort, AL 36527
Direct: 251-404-2367
jbacque@m-epartners.com
www.m-epartners.com ; www.intelli-val.com



Exhibit 51

| | |
|---|---|
| **From:** | **Deborah Crain** |
| **To:** | **eric@howley-law.com** |
| **Subject:** | Shared file from Deborah Crain. |
| **Date:** | Friday, August 8, 2025 3:50:49 PM |
| **Attachments:** | **gem_black.png** |



Dear Eric Terry,

Deborah Crain sent you a file named **FURR TRUSTEE DOCS 000001 - 001048.pdf.**

Here are the documents compiled and marked that we are ok with sharing with Noah Meek.  They are marked with the appropriate designations.

It will be available for you to download until **Aug 15, 2025 03:50 PM**, unless Deborah revokes access.

**See the file**

Copyright © 2025. Themis Solutions Inc.

*Exhibit 52*

| From: | Deborah Crain |
|---|---|
| To: | Eric Terry; Leonard Simon |
| Cc: | Tom Howley; Hotze, William |
| Subject: | RE: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings |
| Date: | Friday, August 15, 2025 12:27:00 PM |
| Attachments: | image001.png |
| | image002.png |

I finally got a hold of Jerod and he asked that I wait until he and Leonard are back in town to save time and money and have one phone call.

Noah's allegations are once again categorically false.  And we are not going to jump every single time he makes spurious claims with unauthenticated, non-credible, and unverifiable accusations that are solely intended to distract from the truth of what he and his client are doing.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Friday, August 15, 2025 12:22 PM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings

Deborah
I will call you at 2.  Thanks, et

**From:** Deborah Crain <dcrain@E-merger.law>

*Exhibit 53*

**Sent:** Friday, August 15, 2025 10:42 AM
**To:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Hotze, William <whotze@dykema.com>
**Subject:** RE: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings

I can be available then too.  And I have not spoken to Jerod since last week.  I am trying to reach him to get the parameters of a proposed plan.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Friday, August 15, 2025 10:30 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** RE: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings

I can be available at anytime after 1230.  Are you saying that the facts that Noah states are true but the action being taken is not a violation of the injunction?

**From:** Deborah Crain <dcrain@E-merger.law>
**Sent:** Friday, August 15, 2025 10:27 AM
**To:** Eric Terry <eric@howley-law.com>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Hotze, William <whotze@dykema.com>
**Subject:** RE: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings

Exhibit 53

I am happy to get on a call with you this afternoon and I am not aware of any information that would violate that order.  What time are you available.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Eric Terry <eric@howley-law.com>
**Sent:** Friday, August 15, 2025 10:13 AM
**To:** Deborah Crain <dcrain@E-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>
**Cc:** Tom Howley <tom@howley-law.com>; Hotze, William <whotze@dykema.com>; Eric Terry <eric@howley-law.com>
**Subject:** FW: Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings
**Importance:** High

Deborah/Leonard

Please explain what the below email from Noah is about?

Further, the Trustee has been for the last several weeks working to get brokers lined up to sell the drills/equipment.  Your client agreed to this plan (numerous times including at one of the 341 meetings).  We have continually stated that selling the equipment/drills with reservation of all parties' rights is the most reasonable and efficient way to address the situation.  You agreed to this concept.  However, when I attempted to get you and your client's cooperation to sign up the broker and move forward, specifically calling you on Friday, August 8, 2025, you stated that you were going to send the Trustee a proposal.  I understand that you have been busy but it has been a week and this case can't afford further delay.

<span style="color:blue">*Exhibit 53*</span>

I would re-urge you and your client's cooperation to sign up a broker to sell this equipment. And if the below email is true, we must address asap.  Thanks, et

Eric Terry
HOWLEY LAW PLLC
700 Louisiana Street Suite 4545
Houston, Texas 77002
Phone: 713-333-9125
Cell: 210-862-2060
Email:  eric@howley-law.com

---

**From:** Noah Meek <nmeek@irelanlaw.com>
**Sent:** Friday, August 15, 2025 9:38 AM
**To:** jbrooks@viperenergytech.com; jdugan@viperenergytech.com
**Cc:** Leonard Simon <lsimon@pendergraftsimon.com>; Deborah Crain <dcrain@e-merger.law>; Alyssa Cuellar <alyssa@baysfirm.com>; Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; William Hotze <whotze@dykema.com>
**Subject:** Etter v. Furr Lawsuit & Injunction Applying to Drilling Motors of Invictus and AE Partners Holdings
**Importance:** High

Mr. Brooks and Mr. Dugan,

I represent Dustin Etter.

It is my understanding that Jerod Furr recently cut some deal with Viper Energy to allow Viper to use or rent out certain drilling motors belonging to Invictus Drilling Motors, AE Partners Holdings, or one of their affiliates.

Please note that those drilling motors are subject to an injunction which restricts their use and disposition. A copy of the injunction is attached for your convenience in case Mr. Furr has not already provided this to you and made you aware of it.

Viper Energy is requested to refrain from taking any steps which would assist Jerod Furr with violating the attached injunction.

<div align="right">*Exhibit 53*</div>

Thank you,

**Noah Meek**
Senior Counsel
**Irelan Stephens, PLLC**
2520 Caroline, 2nd Floor │ Houston, Texas  77004
Phone: 713.222.7666 │Fax: 713.222.7669
www.irelanlaw.com

**IRELAN │ STEPHENS**

NOTICE: The information contained in this message is proprietary and/or confidential and may
be privileged. If you are not the intended recipient of this communication, you are hereby
notified to: (i) delete the message and all copies; (ii) do not disclose, distribute, or use the
message in any manner; and (iii) notify the sender immediately.

Exhibit 53

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Tom Howley |
| **Cc:** | Leonard Simon; William Hotze |
| **Subject:** | Additional response |
| **Date:** | Friday, August 15, 2025 1:02:00 PM |
| **Attachments:** | image001.png |

These are my additional comments to Noah's emails:

1. Clarification of Allegations
  - Noah Meek has purported the existence of a formal agreement between Jerod Furr and Viper Energy to rent out certain drills.
  - We categorically state that no such agreement exists.
  - Any legitimate plan to rent out equipment, if developed, will be formally presented to the Trustee in accordance with Chapter 11 procedures.
2. Bankruptcy Context
  - Mr. Furr's actions are consistent with the fact that this is a Chapter 11, not 7.
  - Any operational decisions, including equipment utilization, are made with the intent to restore business, and ultimately reach a settlement agreement with the creditors that has optimal value.
3. Misconduct by Noah Meek
  - Mr. Meek has repeatedly made unauthenticated and spurious claims without presenting documentation or credible evidence.
  - He has sent misleading emails to third parties, causing confusion and tortious interference with existing relationships.
  - His actions have disrupted business operations for all of us, creating unnecessary litigation and administrative burden.
4. Pattern of Abuse
  - We have been dragged into court multiple times on meritless motions initiated by Mr. Meek.
  - These filings appear to be strategic distractions aimed at halting legitimate business activity and pressuring the estate.
5. Hidden Motives
  - Mr. Meek and his client appear to be manipulating the bankruptcy process to force an auction of equipment.
  - Their goal is to acquire assets at undervalued patented drills, while hiding the fact that they have started a competing business generating substantial revenue.
  - There are indications of patent infringement and unfair competition and multiple breaches of fiduciary duty.
6. Legal Strategy
  - We recommend issuing discovery preservation letters and initiating formal discovery to authenticate our claims.
  - We believe Mr. Etter has engaged in fraudulent conduct and breached fiduciary duties,

Exhibit 54

warranting a substantial contribution to the bankruptcy estate. Why are we not investigating that?

My counterclaim for the adversary matter is ready to go and we intend to file Monday or Tuesday.  Thank you.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 54

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry; Tom Howley |
| **Cc:** | William Hotze; Leonard Simon; Jerod Furr; Shannon Frizzell |
| **Subject:** | Discussion Today |
| **Date:** | Tuesday, August 19, 2025 3:33:00 PM |
| **Attachments:** | Brief Timeline Re Daily ^0 Pena.pdf |
| | image001.png |
| | 2025-08.19 Counterclaim Third-Party Complaint dlc updated.docx |

Hi Eric,

Thank you for our call today. I truly appreciated the opportunity to discuss some important matters with you. As we talked about, Viper has approached Jerod, given that they are the ones currently storing the drills. Viper is eager to work with Jerod to find a way to monetize the equipment. They believe that if the equipment is sold, it will either go for pennies on the dollar or be snatched up by Etter for his competing business, which is infringing on a patent. Understandably, this is the main reason Jerod is hesitant to sell the equipment, and I completely understand his stance.

You inquired about the proposal, and I informed you that I do not have anything in writing nor have I been part of those conversations. However, I promised to work on a term sheet this week to outline some parameters.

Additionally, we discussed our ongoing frustration with Noah Meek, who continues to overstep his authority and even act in a manner consistent with the Chapter 11 trustee's duties, which have not been conferred upon him. We are requesting that Noah be admonished for reaching out and "ordering" third parties to do actions related to the rights and authority that the Bankruptcy court has conferred upon the Chapter 11 trustee. I have not sent out discovery preservation letters – but if Noah can talk to third parties, it makes Jerod's point – we should be able to do it too.

Attached, you will find our updated petition. We also touched on your concern that filing something now might embolden Noah to file numerous additional pleadings and seek further relief from the automatic stay. I see your point, and we also want our claims on record. I am not sure how to reconcile that, but I welcome any additional conversations towards the ultimate goal of working on getting the creditors paid and a total resolution of this matter.

We look forward to the findings of the forensic examiner and working together with you, the Trustee, and Mr. Hotze towards a beneficial resolution that will resolve all claims.

Best regards,
Deborah

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222

Exhibit 55



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 55

| | |
|---|---|
| **From:** | Deborah Crain |
| **To:** | Eric Terry |
| **Subject:** | Timeline |
| **Date:** | Tuesday, August 19, 2025 3:37:00 PM |
| **Attachments:** | image001.png |

Please take special note that L&L Ventures was created a month **<u>before</u>** any of these guys left AEP.  You will understand when you review that timeline.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 56

**From:** **Deborah Crain**
**To:** **eric@howley-law.com**
**Subject:** Shared file from Deborah Crain.
**Date:** Wednesday, August 20, 2025 10:58:35 AM
**Attachments:** **gem_black.png**



Dear Eric Terry,

Deborah Crain sent you a file named **Employment Agreement- Travis Daily_9-1-22 (2).pdf.**

Here is Travis Daily's employment agreement.  Jerod has a good point - the time limitation on the non-solicit is one year from when he left, which was September last year.  I agree with Jerod that we should timely preserve that claim, and state we are filing it because of the time period about to run out and ask that it be extended due to his breach of this provision,

It will be available for you to download until **Aug 27, 2025 10:58 AM**, unless Deborah revokes access.

See the file

Copyright © 2025. Themis Solutions Inc.

Exhibit 57

**From:** Deborah Crain
**To:** Leonard Simon; Eric Terry
**Cc:** Jerod Furr
**Subject:** RE: Equipment
**Date:** Tuesday, September 9, 2025 4:01:00 PM
**Attachments:** image005.png
image009.png

---

Also, as a reminder, the non-compete provisions of the agreement with Travis Daily expires on September 11th.  We have that suit mostly ready to go, but I am not sure where we are with the go ahead from the Trustee on a Motion for Leave of Court to file it.

Additionally, as we discussed, I am not in a position to personally fund this part of the bankruptcy. I have two single moms that work for me that depend on a paycheck.

I want to be able to file a Motion for Substantial Contribution regarding the Settlement, but I am not sure where you stand on that.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

---

**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Tuesday, September 9, 2025 3:56 PM
**To:** Eric Terry <eric@howley-law.com>
**Cc:** Jerod Furr <jpfurr@me.com>; Deborah Crain <dcrain@E-merger.law>
**Subject:** Equipment

## Eric: please see below and attached. Please review and let me know what you think.

Very truly yours,

Exhibit 58

Leonard H. Simon



 Leonard H. Simon

 Partner

 Pendergraft & Simon, L.L.P.

 2777 Allen Parkway, Suite 800

 Houston, TX 77019


 Main Phone:(713) 528-8555

Direct Line (713) 737-8207

 Cell Phone:  (713) 253-2810

 Direct Fax:  (832) 202-2810

 E-mail: lsimon@pendergraftsimon.com

 Web site: www.pendergraftsimon.com





THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.

**From:** Jerod Furr <jpfurr@me.com>
**Sent:** Monday, September 8, 2025 7:09 PM
**To:** Leonard Simon <LSimon@pendergraftsimon.com>
**Subject:** Re:

Leonard,

Attached is a complete list of what we had as of end of December.  If you click on the Rotors_Stators tab that will show the power section items we can sell at auction.  They have the highest value and can be used universally with any motor manufacturer.

The remaining parts on sheet 1 make up the transmission and bearing assembly that we ...

Exhibit 58

is interested in buying

> On Sep 8, 2025, at 5:47 PM, Leonard Simon
> <LSimon@pendergraftsimon.com> wrote:
>
>
> I did not receive an email from you today.
> Sent from The iPhone of Leonard H Simon
> 2777 Allen Parkway, Suite 800
> Houston, TX 77019
> 713-253-2810 (M)
> 713-528-8555 (O)
> Fax: 832-202-2810

Exhibit 58

| From: | Deborah Crain |
|---|---|
| To: | Hotze, William; Leonard Simon |
| Cc: | Tom Howley; Eric Terry |
| Subject: | RE: Alliance - Basic Information |
| Date: | Monday, September 15, 2025 1:58:00 PM |
| Attachments: | image001.png |
| | image002.png |

I went out of town Friday.

Leonard forwarded the message to Jerod to provide the information that you still need – I know the Mercedes information is in what I sent previously.

In terms of additional work, someone will need to get that information from Jerod.  I cannot continue to financially fund this bankruptcy.  Thank you.

Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

**From:** Hotze, William <WHotze@dykema.com>
**Sent:** Friday, September 12, 2025 9:12 AM
**To:** Leonard Simon <lsimon@pendergraftsimon.com>; Deborah Crain <dcrain@E-merger.law>
**Cc:** Tom Howley <tom@howley-law.com>; Eric Terry <eric@howley-law.com>
**Subject:** Alliance - Basic Information

Leonard/Deborah,

We are several months into this case and while you have certainly been cooperative in some respects there are still some basic things that I am struggling to understand why they have not been produced or answered. Please provide responses to the items below as soon as possible.

<span style="color:blue">Exhibit 59</span>

- Drilling Equipment – I understand the drilling equipment is currently at a yard owned by Viper.
  - What is the physical address where the drilling equipment is located?
  - What is a contact for someone at Viper who can be contacted about gaining access to that location?
  - If funds from any source other than the Debtor AEP were used to purchase that drilling equipment, please provide that information.
  - You client committed at his 341 meeting to going to the yard and identifying the equipment. Please provide three dates between now and the end of September that your client can do that so we can arrange for the Trustee to inspect the equipment.
- Isodrill investment – I understand that AEP made an investment in a company called Isodrill in excess of $1 million.
  - What was the purchase price of the equity purchased?
  - How much of an interest in terms of either percentage or shares was purchased?
  - Where are those physical shares currently being held?
  - Provide a copy of the purchase agreement for those shares.
  - If funds from any source other than the Debtor AEP were used to purchase that equity interest, please provide that information.
- Patent 9,869,127 – I understand that on or around June 27, 2022, AEP purchased an assignment of a drilling patent from Supreme Source Energy Services for a price in excess of $1 million.
  - What was the purchase price?
  - Please provide a copy of the assignment purchase documents.
  - Is the patent currently licensed or being utilized?
  - To the extent there are physical or digital documents related to the patent, who holds them and please provide copies or the originals.
  - If funds from any source other than the Debtor AEP were used to purchase the assignment, please provide that information.
- Server
  - What is the address where the Debtors' server is currently located?
  - Please provide contact information for an individual who can provide the Trustee access to the server at that location.
- Invictus Drilling Motors – Bank statements
  - Please provide bank statements for Invictus Drilling for 2022 to the Petition Date sufficient to identify the recipient of ACH transfers.
- Mercedes G Wagon/Other Vehicles
  - Please provide a copy of the title
  - Where is that vehicle currently located?
  - If funds from any source other than the Debtor AEP were used to purchase the vehicle, please provide that information.
  - There were at least four other vehicles purchased by AEP, where are they currently located and please provide copies of those titles.

This is basic information, almost all of which you or your client have committed to providing previously. Please copy the Trustee (copied on this email as well) when sending responses, and the supporting documents, to the above.

*Exhibit 59*

Best,

William


**William J. Hotze**
Member

D 713-904-6959 • F 855-227-4720
WHotze@dykema.com • dykema.com

**BIO   VCARD   LINKEDIN**

5 Houston Center 1401 McKinney Street, Suite 1625
Houston, Texas 77010



\*\*\* Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

Exhibit 59

**From:** Deborah Crain
**To:** Eric Terry; Tom Howley; William Hotze
**Cc:** Leonard Simon
**Subject:** Meeting with Malpractice Attorney
**Date:** Friday, January 16, 2026 11:15:00 AM
**Attachments:** image001.png

All -

I wanted to follow up with you regarding a potential legal malpractice claim involving prior counsel for Mr. Furr and AFR (Thaison Hua), as outlined in detail at an extensive hearing regarding the wrongful foreclosure of the AFR property.  I met with a malpractice attorney this week to discuss same.

I understand that this claim could be identified as a potential asset of the estate. As you evaluate it, I wanted to briefly share a few considerations that may be helpful from a procedural and practical standpoint, particularly given the posture of this case, i.e., hopefully close to plan confirmation.

As you know, legal malpractice claims—especially those arising from litigation strategy or professional judgment—are uniquely difficult to prosecute. They tend to be heavily fact~dependent, require expert testimony, and often face substantial defenses, including attorney~immunity doctrines, discretionary~judgment protections, causation challenges, and privilege limitations. These issues make damages challenging to quantify and recovery highly uncertain.

Based on my understanding of the circumstances to date—the claim may involve complex questions surrounding injunction practice, bankruptcy strategy, and the scope of counsel's authority. Those issues typically require extensive expert involvement and significant litigation expense, even before the case reaches a point where its viability can be meaningfully evaluated.

I also recognize that the estate must carefully weigh the cost~benefit of administering assets, and I defer entirely to your discretion on that evaluation. My goal is simply to ensure that you have the full context as you consider the procedural posture of this matter, the potential evidentiary burdens, and the reality that prosecution of claims of this type often requires substantial resources with outcomes that can be difficult to predict.

If it would be helpful, I'm happy to provide any additional factual background you may need regarding the underlying sequence of events so that you can make the most

Exhibit 60

informed decision about whether administration of this particular claim aligns with the estate's best interests. Of course, I respect that the decision rests exclusively with your office and will fully support whatever course you determine appropriate. As I appreciate it, the bankruptcy would need to abandon the claim in favor of allowing Mr. Furr to prosecute the claim, if you decide you do not want to pursue it.

Please let me know if you would like additional information or schedule a conference call to discuss my meeting with Mr. Pierce.  Thank you and happy Friday.


Deborah L. Crain
Attorney at Law
Licensed in Texas and Louisiana
Certified Business Coach
1334 Brittmoore Road, #2314
Houston. TX 77043
Office: 346-535-0818
Cell: 832-449-0222



NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

Exhibit 60

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ALLIANCE FARM & RANCH | § | CASE NO. 25-30155 |
| ALLIANCE ENERGY PARTNERS, LLC, | § | CHAPTER 11 |
| Debtors. | § | |
| DUSTIN ETTER | § | |
| v. | § | ADV. NO. 25-03382 |
| JEROD P. FURR, ET AL | § | |

# DOCUMENT INVENTORY
Records Produced by Jerod Furr to the Trustee

**Corporate Documents**..................................................................................................3

   🗁 Alliance Energy Partners ........................................................................3

   🗁 Alliance Farm & Ranch .........................................................................3

   🗁 J Parker Construction ...........................................................................

**Banking & Assets** ....................................................................................................3

   🗁 AMEX....................................................................................................3

      🗀 Acct xxx1006 Alliance Energy Partners/Dustin Etter ..................3

   🗁 Truist ....................................................................................................3

      🗀 Acct xxx3728 Alliance Energy Partners ....................................3

      🗀 Acct xxx3493 J Parker Construction LLC ..................................3

   🗁 Frost Bank ............................................................................................3

      🗀 Acct xxx7412 Alliance Farm & Ranch ......................................3

      🗀 Acct xxx2389 Jerod Furr ...........................................................3

   🗁 Quickbooks ...........................................................................................3

      🗀 Alliance Energy Partners ............................................................3

   🗁 Vehicle Titles........................................................................................3

🗀 Mercedes ....................................................................................................3

🗁 Honea Egypt ...............................................................................................4


**Litigation** ...................................................................................................**5**

🗁 Bankruptcy #25-30155 *Alliance Farm & Ranch/Alliance Energy Partners* ......................5

🗁 ADV #25-03382 *Etter v. Furr, et al* .................................................14


**Work Product** ..........................................................................................**15**

🗁 DLC Notes of additional work to be done .....................................15

🗁 Drilling Equipment Proposal ........................................................15

🗁 Executive Summary .......................................................................15

Exhibit 61

# Corporate Documents

📁 **Alliance Energy Partners**
- 📄 Certificate of Formation
- 📄 Operating Agreement
- 📄 Organizational consent

📁 **Alliance Farm & Ranch**
- 📄 Certificate of Formation.
- 📄 Operating Agreement
- 📄 Tax Receipt
- 📄 Certificate of Filing
- 📄 SS4
- 📄 EIN

📁 **J Parker Construction**
- 📄 LMC Purchase Order
- 📄 #1047 LMC HC ADA Plates

# Banking & Assets

📁 **Banking & Assets**

📄 AMEX
**Acct xxx1006** *Alliance Energy Partners/Dustin Etter*

📄 Truist
**Acct xxx3728** *Alliance Energy Partners*
**Acct xxx3493** *J Parker Construction LLC*

📄 Frost Bank
**Acct xxx7412** *Alliance Farm & Ranch*
**Acct xxx2389** *Jerod Furr*

📁 Quickbooks
Alliance Energy Partners

📁 Vehicle Titles
📄 Mercedes

📁 Honea Egypt
Ex. 03. Deed of Trust

**Exhibit 61**

Ex. 04 Nov Notice with proof not delivered
Ex. 04. Apr 2nd text
Ex. 05. Sep Notice
Ex. 06. Nov Notice with proof not delivered
Ex. 07. Settlement Agreement
Ex. 08. December Notice of Acceleration
Ex. 09. December notice of sale
Ex. 10. Substitute Trustee Deed
Ex. 11. Sales contract with disclosure signed by JF
Ex. 12. Text confirming moved in Aug 31 2022 Messages
Ex. 13. Text Re 170k penalty May 22 2024
Ex. 14 alternative
Ex. 14 Text Re we can figure out settlement amount Aug 26, 2024
Ex. 15 500k and pay off over 6 months Mar 22
Ex. 16 Construction invoices
2022.04.01 Real Estate Lien Note
2024.08.05 Lis Pendens
2024.09.26 NOTICE of default
2024.11.06 Notice of Acceleration and Posting Re Dec 3rd sale
2024.11.28 Settlement Agmt
2024.12.06 Aff of Posting, Filing and Mailing Notice
2024.12.06 Notice of Acceleration and Posting Re Jan 7 sale
2025.01.07 Substitute Trustee Deed
2025.12.06 Notice of Foreclosure Sale
2025-04-28 Motion to Expunge Notice of Lis Pendens (Exhibits)
Ex. 01. Warranty Deed and sales contract Amended
Ex. 02. Real Estate Lien Note
📁   Property Taxes

📄   105-2023
📄   105-2024
📄   105-CURRENT TAX STATEMENT
📄   106-2021
📄   106-2022
📄   106-2023
📄   106-2024
📄   106-CURRENT TAX STATEMENT
📄   107-2022
📄   107-2023
📄   107-2024
📄   107-CURRENT TAX STATEMENT

**Exhibit 61**

- 📄 108-2022
- 📄 108-2023
- 📄 108-2024
- 📄 108-CURRENT TAX STATEMENT
- 📄 105-2022

# Litigation

📁 **Bankruptcy #25-30155 Alliance Farm & Ranch/Alliance Energy Partners**

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 01/07/25 | 001. AF&R Chapter 7 Voluntary Petition |
| 01/07/25 | Court Notes. Receipt of Vol. Petition (Chapter 7)( 25-30155) [misc,volp7] ( 338.00) Filing Fee. Receipt number A25829135. Fee amount $ 338.00. (U.S. Treasury) (Entered: 01/07/2025) |
| 01/08/25 | 002. Etter's NOA & Request for Notice |
| 01/09/25 | 003. INITIAL ORDER signed for Prosecution |
| 01/09/25 | 004. No Creditor Mailing List |
| 01/09/25 | Court Notes. Previous case filed in the SDTX Case #21-34065 |
| 01/11/25 | 005. BNC Cert. of Mailing Re #3 |
| 02/21/25 | 006. Etter's NOA & Request for Notice |
| 02/21/25 | 007. Etter's *Withdrawn* Mto Dismiss Case. Ex. 01) State Court Petition; Ex. 02) State Court Discovery |
| 03/14/25 | 008. AF&R's Mto Substitute Attorney |
| 03/14/25 | 009. AF&R's Objection to #7 Mto dismiss |
| 03/14/25 | 010. Etter's REPLY in support of #7 Mto dismiss |
| 03/17/25 | 011. AF&R's Am. Petition |
| 03/17/25 | 012. Etter's NOH Re #7 Mto dismiss |
| 03/17/25 | 013. AF&R's Emerg. Mto Convert Case to Chapter 11 |
| 03/17/25 | 014. AF&R's NOH Re #13 Mto Convert to Chapter 11. |
| 03/17/25 | Court Notes. Hearing Set On (Related document(s):7 Mto Dismiss Case) Movant to notice all interested parties and file a certificate of service with the court. Hearing scheduled for 4/9/2025 at 02:00 PM at Houston, Courtroom 400 (ARP). (tjl4) (Entered: 03/17/2025) |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 03/17/25 | Court Notes. Hearing Set On Re #13 AF&R's Emerg. Mto Convert Case to Chapter 11. Movant to notice all interested parties and file a certificate of service with the court. Hearing scheduled for 3/19/2025 at 11:00 AM at Houston, Courtroom 400 (ARP). (tjl4) (Entered: 03/17/2025) |
| 03/18/25 | 015. AF&R's Disclosure of Compensation of Attorney for Debtor  (Hua, Thaison) |
| 03/18/25 | 016. AF&R's E&W List Re #13 Emerg. Mto Convert Case to Chapter 11  Ex. 01) Alliance State Court Petition; Ex. 02) Substitute Trustee's Deed |
| 03/18/25 | 017. Etter's Notice of Conflicting Setting Re #14 AF&R's Mto convert |
| 03/18/25 | 018. Ostranders' NOA and Request for Notice |
| 03/18/25 | Court Notes. Hearing Con't by Agreement |
| 03/19/25 | 019. Ostranders' Rto #13 AF&R's Emerg. Mto Convertt, Ex. 01 -  05 |
| 03/19/25 | 020. Etter's E&W List Re #13 AF&R's Emerg. Mto Convert. |
| 03/19/25 | 021. Ostranders' E&W List Re #13 AF&R's Emerg. Mto Convert, Ex. 01 - 05 |
| 03/19/25 | 022. Etter's Rto #13 AF&R's Emerg. Mto Convert Case to Chapter 11 |
| 03/19/25 | 023. Courtroom Minutes. Time Hearing Held: 4:00 PM to 5:01 PM. Appearance: Timothy Wentworth for debtor, Noah Meek for creditor Dustin Etter, Reagan "Tres" Gibbs for Erik and Darla Ostrander. Witness sworn and testified: Jerod Furr. Admitted exhibits: ECF Nos. 16-1, 16-2, 20-5, 21-1 through 21-5. Argument heard. Motion 13  is granted on the record. ERO: yes. (Related document(s):13  Emergency Motion) (abm4) (Entered: 03/19/2025) |
| 03/19/25 | 024. Order Granting #13 AF&R's Mto Convert Case to Chapter |
| 03/19/25 | 025. HEARING Audio File Mar 19, Plaud tanscription and summary |
| 03/19/25 | Court Notes: Convert Case to Ch.11 (abm4) (Entered: 03/19/2025) |
| 03/20/25 | 026. AF&R's App to employ Okin as General Counsel/Wentworth Decl./po |
| 03/21/25 | 027. BNC Cert. of Mailing Re #24 ORDER granting Mto convert to Ch. 11 |
| 03/24/25 | 028. Etter's Rto #26 App to employ |
| 03/28/25 | 029. Ostranders' Emerg. Mto Dismiss, Ex. A – F |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 03/28/25 | Hearing Set Re #29  Hearing scheduled for 4/9/2025 at 02:00 PM at Houston, Courtroom 400 (ARP). (tjl4) (Entered: 03/28/2025) |
| 03/31/25 | 030. Ostranders' NOA & Req for Notice |
| 04/01/25 | 031. AF&R's Application to Employ/DLC Decl./po |
| 04/01/25 | 032. Etter's RESPONSE to #31 App. to employ DLC |
| 04/02/25 | 033. Ostranders' NOH Re #29 Mto dismiss |
| 04/04/25 | 034. AF&R's Schedules A - H |
| 04/04/25 | 035. AF&R's List of Equity Security Holders |
| 04/04/25 | 036. AF&R's Statement of Financial Affairs for Non-Individual (Filed By ALLIANCE FARM AND RANCH, LLC ). (Wentworth, Timothy) (Entered: 04/04/2025) |
| 04/07/25 | 037. Ostranders' E&W List Re #29 Etter's Mto dismiss, Ex. 1 – 8 |
| 04/07/25 | 038. AF&R's E&W List Re #7, #29 Etter's Mto dismiss (none) |
| 04/07/25 | 039. Etter's Exhibit List, Ex. 1 - 6 |
| 04/07/25 | 040. AF&R's Emerg. Mfor Joint Admin/po |
| 04/07/25 | 041. AF&R's Objection to #29 Etter's Mto dismiss |
| 04/07/25 | 042. Etter's RESPONSE to #40 AF&R's Emerg. Mfor Joint Admin |
| 04/07/25 | Hearing Set On #40 AF&R's Emerg. Mfor Joint Admin. Hearing scheduled for 4/9/2025 at 02:00 PM at Houston, Courtroom 400 |
| 04/08/25 | 043. ORDER Granting #8 AF&R's Mto sub counsel |
| 04/08/25 | 044. Etter's E&W List, Ex. 1 - 6 |
| 04/09/25 | 045. Ostranders' E&W List Re #37 Ex. 9 |
| 04/09/25 | 046. Courtroom Minutes. Time Hearing Held: 2:00 PM to 3:53 PM. Appearance: Timothy Wentworth for debtor, Noah Meek for creditor Dustin Etter, Reagan "Tres" Gibbs and Samuel Pendergast for Erik and Darla Ostrander. Mr. Meek makes an oral Mto withdraw #7 Mto Dismiss. The court grants the oral motion and #7 Mto Dismiss is withdrawn. Arguments by Mr. Gibbs, Mr. Wentworth and Mr. Meek heard. Witnesses sworn and testified: Eric Ostrander, Jerod Furr, and Deborah Crain. ADMITTED Exhibits: ECF Nos. 37-1 through 37-8 and 44-5 and 44-6; judicial notice is taken of 45-1 (also found at 34). #29 Ostranders' Emerg. Mto Dismiss and #40 AF&R's Emerg. Mfor Joint Admin are taken under advisement. The court will either enter a written opinion or schedule a status conference and give its ruling. |

**Exhibit 61**

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|---|---|
| | ERO: yes. (Related document(s): 7 Mt0 Dismiss, #29 Emergency Mto Dismiss, #40 Emergency Motion for Joint Admin |
| 04/10/25 | 047. BNC Cert. of Mailing Re #43 |
| 04/14/25 | 048. AF&R's NOH Re #26 App to employ |
| 04/14/25 | 049. AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Timothy L. Wentworth. This is to order a transcript of ER Motion & Hearing on Creditor's Mto Dismiss- 04/09/2025 before Judge Alfredo R. Perez. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By ALLIANCE FARM AND RANCH, LLC ). (Wentworth, Timothy) Electronically forwarded to Veritext Legal Solutions on 4/15/2025. Estimated completion date: 4/22/2025. Modified on 4/15/2025 |
| 04/14/25 | Hearing Set Re #26 App to employ. Hearing scheduled for 5/1/2025 at 11:00 AM at Houston, Courtroom 400 (ARP). (tjl4) (Entered: 04/14/2025) |
| 04/15/25 | 050. Ostranders' Brief Re #29 Etter's Mto dismiss |
| 04/16/25 | 051. AF&R's REPLY to Etter's Rto  #26 App to employ, Ex. A. Am. Wentworth Decl. |
| 04/16/25 | 052. AF&R's REPLY to Ostranders' Post-Hearing Brief in Support of #29 Etter's Mto Dismiss |
| 04/18/25 | NOA and Request for Notice filed by Ha Minh Nguyen |
| 04/22/25 | 053. Transcript RE: held on 04/09/25 before Judge ALFREDO R. PEREZ. Transcript is available for viewing in the Clerk's Office. Within 21 days, parties are advised to comply with privacy requirements of Fed. R. Bank. P. 9037, ensuring that certain protected information is redacted from transcripts prior to their availability on PACER. Filed by Transcript access will be restricted through 07/21/2025. |
| 04/22/25 | 054. ORDER signed Denying #29 Etter's Mto dismiss and granting #40 Mfor Joint Admin |
| 04/23/25 | 055. ORDER signed granting #40 Joint Administration |
| 04/24/25 | 056. Etter's Exhibits Re #26 Application to Employ. Ex. 01 - 13 |
| 04/24/25 | 057. Etter's Exhibit List Re #26 |
| 04/25/25 | 058. BNC Cert. of Mailing Re #53 |
| 04/25/25 | 059. BNC Cert. of Mailing Re #55 |
| 04/25/25 | 060. BNC Cert. of Mailing Re #54 |
| 04/28/25 | 061. AF&R's Emerg. Mto con't Hearing/po |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 04/28/25 | 062. Etter's NOA and Request for notice filed by Heather McIntyre |
| 04/28/25 | 063. ORDER Granting AF&R's Emerg. Mto con't Hearing |
| 04/28/25 | HEARING Continued #26 Application to Employ #31 Hearing scheduled for 5/27/2025 at 11:00 AM at Houston, Courtroom 400 |
| 04/28/25 | Hearing Set Re #31 App to employ DLC Hearing scheduled for 5/1/2025 at 11:00 AM at Houston, Courtroom 400 (ARP). |
| 04/30/25 | 064. Etter's Mto Shorten Time Re #26 App to Employ/po |
| 04/30/25 | 065. BNC Cert. of Mailing Re #63 |
| 05/01/25 | 066. ORDER signed granting Etter's Emerg. Mto Reschedule #26 #31 Applications to Employ Hearing scheduled for 5/16/2025 at 10:00 AM at telephone and video conference |
| 05/03/25 | 067. Court's BNC Cert. of Mailing Re #66 |
| 05/05/25 | 068. Etter's Emerg. Mto Convert Case from Chapter 11 to Chapter 7, Exhibits A-H |
| 05/05/25 | DOCKET ENTRY Receipt of Etter's Mto Convert Case from Chapter 11 to Chapter 7( 25-30155 |
| 05/06/25 | 069. AF&R's Objection #68 Mto Convert Case |
| 05/06/25 | 070. Etter's Notice of Issuance of Subpoenas |
| 05/07/25 | 071. AF&R's NOH Re #26 #31 Apps to employ |
| 05/07/25 | 072. Etter's NOH Re #68 Mto Convert |
| 05/07/25 | 073. NOTICE Meeting of Creditors |
| 05/07/25 | Case Note: Trustee's #73 Notice of Meeting of Creditors con't meeting to be held on 6/2/2025 at 02:00 PM, US Trustee Houston Teleconference |
| 05/07/25 | Docket Entry: Hearings Set by Request Re #26 #31 Apps to employ & #68 Etter's Mto convert Hearing scheduled for 5/20/2025 at 10:00 AM at Houston, Courtroom 400 |
| 05/11/25 | 074. BNC Cert. of Mailing Re #73 Meeting of Creditors |
| 05/12/25 | 075. Etter's NOI to Adduce Testimony from a Remote Location  Re #68  Mto Convert Case |
| 05/12/25 | 076. Etter's Ex. H. Real Estate Lien Note Re #68 Emerg. Mto convert |
| 05/12/25 | 077. OCUC's  Notice of Appointment of Creditors' Committee |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|---|---|
| 05/12/25 | 078. OUCC's Notice of Organizational Meeting of the #77 Official Unsecured Creditors' Committee scheduled for May 13, |
| 05/12/25 | 079. Notice of Appearance and Request for Notice Filed by Rachel Kubanda Filed by on behalf of DrilTech, LLC (Kubanda, Rachel) (Entered: 05/12/2025) |
| 05/14/25 | 080. Etter's E&W List Re #26, #31, #68, Ex. 01 - 33 |
| 05/14/25 | 081. OCUC's NOA and Request for Notice |
| 05/16/25 | 082. OCUC's E&W |
| 05/16/25 | 083. AF&R's E&W  Re #26, #31. Ex.01 - 07 |
| 05/16/25 | 084. Etter's E&W List Re #26, #31, #68,.Suppl. Ex. 34-38 |
| 05/20/25 | 085. Courtroom Minutes. Time Hearing Held: 10:01 AM to 10:18 AM. Appearance: Timothy Wentworth and Matthew Okin for debtor; Heather McIntyre, Abdiel Lopez-Castro and Noah Meek for creditor Dustin Etter; William Hotze AEP-Committee. Hearing held. Mr. Okin addresses the court and announces a settlement between Mr. Ferr andthe Ostranders as stated on the record. It is his representation that Okin Adams needs to withdraw from this representation of the debtors. Mr. Okin makes an oral request for a short continuance on motion for the debtor to retain new counsel. Ms. McIntyre objects to the withdrawal and request the Court moves forward with motion . Mr. Hotze addresses the court. Argument heard. The Court will reschedule this hearing for 5/23/2025 at 8:00 AM CST by telephone/video conference. Motion to convert will be the first order of business. Any additional pleadings filed will be addressed at that time. Mr. Wentworth would like to amend the applications and reset the hearings in short order. The Court is agreeable and will continue to an appropriate time. ERO: yes(Related document(s): #26 Application to Employ, #31 Application to Employ, #68 Emergency Motion, Motion to Convert Case from Chapter11 to Chapter 7) Hearing scheduled for 5/23/2025 at 08:00 AM at telephone and video conference. (abh4) (Entered: 05/20/2025) |
| 05/20/25 | 086. Hearing audio rec, Plaud transcript & summary |
| 05/20/25 | 087. AF&R's NOTICE of Appearance & demand for notices (DLC) |
| 05/20/25 | 088.  Etter's NOTICE of removal |
| 05/20/25 | 089. AF&R's Mto con't #26, #31, #68 |
| 05/20/25 | 090. Etter's Rto #89 AF&R's Mto con't #26, #31, #68 |
| 05/20/25 | 091. AF&R's Mto quash #70 Bank subpoenas |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|---|---|
| 05/21/25 | 092. NOA and demand for notice Re K.I.S.D. |
| 05/21/25 | 093. Okin's Mto withdraw as counsel |
| 05/21/25 | 094. AF&R's Mto dismiss case filed by Wentworth |
| 05/22/25 | 095. NOTICE of telephonic hearing May 23rd Re #93 |
| 05/22/25 | 096. Etter's 2nd Suppl. E&W, Ex. 39 - 43 |
| 05/22/25 | 097. OCUC E&W List |
| 05/22/25 | 098. OCUC Emerg. Mto Appoint Ch. 11 Trustee |
| 05/22/25 | 099. OCUC's Notice of hearing May 23rd Re #98 |
| 05/22/25 | 100. OCUC's Emerg. Mto to Seal #98 Ex. C |
| 05/22/25 | 101. OCUC's #98 Exhibit C under seal |
| 05/22/25 | 105. OUR proposed order granting consent |
| 05/22/25 | 106. OUR proposed order granting consent II |
| 05/23/25 | 102. Etter's Rto #100 OCUC's Mto file Ex. C under seal |
| 05/23/25 | 103. OUR Rto #98 OCUC Mto Appoint Ch. 11 Trustee |
| 05/23/25 | 104. OUR E&W List |
| 05/23/25 | 107. Courtroom Minutes. Courtroom Minutes. Time Hearing Held: 8:01 AM to 9:01 AM; 9:21 AM to10:18 AM; 10:30 AM to 10:55 AM. Appearances: Tim Wentworth, Matthew Okin, Deborah Crain, Heather McIntyre, Noah Meek, William Hotze, Ha Nguyen, Tres Gibbs, and C Ross Travis. Sworn and testified witness: Jerod Furr and Deborah Crain. Admitted Exhibits: ECF Nos. 105-1 through 105-4; 80-2 through 80-9, 80-12 through 80-13, 80-15 through 80-21,80-23, 80-30 through 80-32, 96-1, 84-1 through 84-5, 104-1 through 104-6; judicial notice of 80-1, 80-10, 80-11, 80-14, 80-15, 80-22, 80-24 through 80-29, 96-2 through 96-5. Emergency motion hearing held. Motion [93] is granted on the record with no opposition. Argument heard. Motion [98] is granted. Motion to Convert [68] and Motion to Dismiss [94] are denied as moot. The court will issue an order. ERO: yes. (Related document(s):[68] Emergency Motion, Motion to Convert Case from Chapter 11 to Chapter 7, [93] Emergency Motion, [94] Motion to Dismiss Case, [98] Emergency Motion) (abh4) |
| 05/23/25 | 108. Audio file |
| 05/23/25 | 109. Audio file |
| 05/23/25 | 110. Audio file |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 05/23/25 | 111. ORDER signed granting Okin's Emerg. Mto withdraw |
| 05/23/25 | 112. ORDER signed granting Emerg. Mto appt Ch. 11 Trustee |
| 05/23/25 | 113. ORDER signed granting Okin Emerg. Mto withdraw |
| 05/23/25 | 114. ORDER signed granting Emerg. Mto Appt Ch. 11 Trustee |
| 05/23/25 | 116. NOTICE of appt. of Ch. 11 Trustee Tom Howley |
| 05/23/25 | 117. ORDER signed appointing Ch. 11 Trustee |
| 05/27/25 | 118. ORDER signed approving Howley Law Firm |
| 05/30/25 | 119. Bond of Trustee |
| 05/30/25 | 120. NOA and Req for Notice filed by HOWLEY LAW FIRM |
| 05/30/25 | 121. T's Emerg. Mto approve Ostranders' settlement |
| 05/30/25 | 122. T's NOH Re Emerg. Mfor ORDER approving Ostranders' settlement |
| 05/30/25 | 123. T's Am. NOH Re Emerg. Mfor ORDER approving Ostranders' settlement |
| 05/30/25 | Trustee's Notice of Continued Meeting of Creditors. (Related document(s):[73] Meeting of Creditors Chapter 11 for Non-Individual Debtor Set) 341(a) meeting to be held on 6/16/2025 at 01:00 PM, US Trustee Houston Teleconference. (Nguyen, Ha) |
| 06/02/25 | 124. NOA and Req for Notice filed by PATRIOT DRILLING SERVICES |
| 06/02/25 | 125. T's E&W list |
| 06/02/25 | 126. OCUC's  Emerg. Mto approve Ostranders' settlement |
| 06/02/25 | 127. OCUC's E&W List |
| 06/03/25 | 128. ORDER signed granting T's Emerg. Mto approve Ostranders' settlement |
| 06/03/25 | 129. Courtroom Minutes. Time Hearing Held: 9:00 AM to 9:15 AM. Appearances: Eric Terry, William Hotze, Tres Gibbs, Heather Mcintyre, and Noah Meek. Affirmed and testified witness: Tom Howley. Admitted exhibits: ECF Nos. 125-1. Emergency motion hearing held. Oral argument heard. The Court approves Motion [121] on the record. ERO: yes. (Related document(s):[121] Emergency Motion) (abh4) |
| 06/04/25 | 130. Okin's NOTICE of App to Employ |
| 06/04/25 | 131. NOTICE of Appearance (Simon) |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|------|--------------------------------------|
| 06/05/25 | 132. T's NOTICE of withdrawal of Mto quash sub |
| 06/05/25 | 133. ORDER signed approving global settlement |
| 06/05/25 | 134. PDF Audio file Re 06/03/25 |
| 06/06/25 | 135. OCUC's  App to employ Dykema Gossette |
| 06/12/25 | 136. T's  NOTICE Re Bank accounts`` |
| 06/16/25 | 137. ORDER signed granting OCUC's Mto file Ex C under seal |
| 06/16/25 | 138. T's App for entry of order auth retention & employment |
| 06/16/25 | 139. AGREED Order extending deadline to Obj to Okin |
| 06/16/25 | 142. T's Mto Reimburse Trustee Admin Expense |
| 06/18/25 | 140. T's Emerg. Mto set claims bar date |
| 06/18/25 | 141. ORDER signed granting OCUC's Mto file Ex. C  under seal |
| 06/18/25 | 145. Cert. of Notice Re #144 |
| 06/19/25 | 143. T's Mto Reimburse Admin Expense |
| 06/19/25 | 144. ORDER signed granting #140 AGREED Order Re Obj deadline |
| 06/22/25 | 146. Etter's Rto Okins' App for Approval |
| 06/23/25 | 147. T's E&W List |
| 06/25/25 | 149. Courtroom Minutes. Time Hearing Held: 12:00 pm - 12:09 pm. Appearances: Eric Terry for Ch. 11 Trustee. Ch. 11 Trustee Thomas Howley present. Nicholas Zugaro for the Official Committee of Unsecured Creditors. Heather McIntyre and Noah Meek for Dustin Etter. Witnesses: Thomas Howley sworn in and testimony proffered by counsel. Motion granted; order signed. (Related document(s):[141] Emergency Motion) (tjl4) |
| 06/25/25 | 150. ORDER signed setting general claims bar date  JUL. 25, 2025 |
| 06/25/25 | 151. Audio Attachment |
| 06/25/25 | Docket Text: Trustee's Notice of Continued Meeting of Creditors. (Related document(s):[73] Meeting of Creditors Chapter 11 for Non-Individual Debtor Set) 341(a) meeting to be held on 7/15/2025 at 10:00 AM, US Trustee Houston Teleconference. (Nguyen, Ha) |
| 06/27/25 | 152. BNC Cert Re #150 ORDER setting general bar date JUL 25, 2025 |
| 06/30/25 | 153. T's NOTICE of General Bar Date |
| 07/15/25 | 10:00 am Trustee's Notice of Continued Meeting of Creditors. (Related document(s):[73] Meeting of Creditors Chapter 11 for Non-Individual |

| Date | U.S. BANKRUPTCY COURT SDTX #25-30155 |
|---|---|
| | Debtor Set) 341(a) meeting to be held on 7/15/2025 at 10:00 AM, US Trustee Houston Teleconference. (Nguyen, Ha) (SENT VIA EMAIL JUN 25, 2025) |
| 07/25/25 | GENERAL CLAIMS BAR DATE (See #150) |
| 07/07/25 | 154. ORDER granting OCUC's App to employ |

📁 U.S. BANKRUPTCY COURT Etter v. Furr, et al ADV #25-03382

| Date | U.S. BANKRUPTCY COURT ADV #25-03382 *Etter v. Furr* |
|---|---|
| 05/20/25 | 001. NOTICE of Removal |
| 06/02/25 | 002. ORDER setting Jul 23rd conference |
| 06/04/25 | 003. Cert. of service Re #002 |
| 06/05/25 | 004. Furr's Notice of Appearance (Simon) |
| 06/11/25 | 005. Etter's Cert. of service |
| 06/13/25 | 006. Etter's Emerg. Mto Expedite Disc |
| 06/16/25 | 007. Furr's Objection to |
| 06/16/25 | 008. Etter's Rto #007 Objection to #006 Mto expedite disc |
| 06/16/25 | 009. Etter's Notice of Hearing Jul. 07@4 pm |
| 06/18/25 | 010. T's Notice of App and Req for Notice |
| 06/23/25 | 011. T's Emerg. Mto Con't Rule 16 Conference & Abating All Deadlines |
| 06/23/25 | 012. T's Rto Mto to Expedite Disc |
| 07/02/25 | 013. Etter's Rto Trustee's Mto Abate All Deadlines |
| 07/07/25 | 014. Proposed scheduling order |
| 07/07/25 | 015. Courtroom Minutes. Time Hearing Held: 4:00 PM to. Appearances: Noah Meek, Jonathan McKinney, Deborah Crane, William Hotze, Leonard Simon, Eric Terry, and Tom A. Howley. Motion hearing held. Oral arguments heard. Motion [6] is abated for two weeks. Motion [11] is granted. Defendant Furr is ordered to produce the account documents to the trustee within seven days from August 1, 2024, to the present for account ending in 2389. The trustee is to provide an assessment. A follow-up status conference is scheduled for 7/22/2025 at 4:00 PM. The scheduling conference and all other discovery is abated until 8/11/2025 at 9:00 am virtually. ERO: yes. (Related document(s):[6] Emergency Motion (Adversary), [11] |

| Date | U.S. BANKRUPTCY COURT ADV #25-03382 *Etter v. Furr* |
|------|-----------------------------------------------------|
| | Emergency Motion (Adversary)). Status conference to be held on 7/22/2025 at 04:00 PM at telephone and video conference. (abh4) |
| 07/07/25 | 016. Audio file Re Jul 07, 2025 |
| 07/07/25 | **04:00 pm Hearing (#018)** |
| 07/08/25 | 017. Proposed Order granting con't & abating disc |
| 07/08/25 | 018. ORDER signed granting con't & abating disc deadlines |
| 07/14/25 | DUE: Defendant Furr shall produce account statements regarding Furr's bank account ending in 2389 from August 1, 2024 to the present. (#018) |
| 07/22/25 | **04:00 pm Follow up status conference (#018)** |
| ~~07/23/25~~ | ~~**11:00 am** Rule 7016 Conference (#002) @Courtroom 400~~ |
| 08/04/25 | DUE: Rule 26(f)(3) report (#002) |
| 08/11/25 | 09:00 am Scheduling Conference (virtual) (#018) |

# Work Product

| 🗀 DLC Notes of additional work to be done |
|---|

- 📄 *Hand written document showing distributions*
- 📄 *2025.05.30 draft notes for trustee of WIP but paused.docx"*
- 📄 *2025.06.05 draft notes for trustee of WIP updated with details.docx"*
- 📄 *Double Dipping and Other Anomalies*

| 🗀 Drilling Equipment Proposal |
|---|

- Alliance Proposal
- Drilling Proposal Quote

| 🗀 Executive Summary |
|---|

- 📄 06/16/25 Executive Summary



DRAFT – SUBJECT TO ONGOING INVESTIGATION – filed in TXSB on 10/02/25   Page 75 of 97
FOR PURPOSES RELATED TO THE COMBINATION PLAN
AND DISCLOSURE STATEMENT ONLY

HARNEY PARTNERS

Alliance Energy Partners, LLC &
Alliance Farm and Ranch, LLC

Forensic Report to Chapter 11 Trustee

September 30, 2025

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Disclaimer & Limitations of Analysis

- Effective August 1, 2025, Thomas A. Howley, solely in his capacity as Chapter 11 Trustee ("Trustee") for Alliance Farm and Ranch, LLC ("AFR") and Alliance Energy Partners, LLC ("AEP"), retained HMP Advisory Holdings, LLC, dba Harney Partners ("HP") to provide forensic accounting services to the Trustee in the jointly administered chapter 11 cases of AEP (Case No. 25-31937) and AFR (Case No. 25-30155). Trustee retained HP to assist him to perform an examination and investigation of the Debtors and their assets, including a determination of any possible claims held by the Debtors' Estates.

- On August 4, Trustee filed *Chapter 11 Trustee's Application for Order Authorizing Employment of HMP Advisory Holdings, LLC, dba Harney Partners to Provide Forensic Accounting Services* (Docket No. 171). On August 29, the Court entered its *Order Authorizing Employment of HMP Advisory Holdings, LLC dba Harney Partners to Provide Forensic Accounting Services to the Chapter 11 Trustee* (Docket No 183).

- Under the certain engagement letter, HP is to provide the following forensic accounting services:

  - Analyzing historical cash transactions by and between AFR, AEP, two non-debtor affiliate entities, and two individual equity holders, Jerod Furr ("Furr") and Dustin Etter ("Etter") for a to be specified period across the to be identified bank accounts;

  - Producing a forensic report detailing the historical cash transactions; and,

  - Providing testimony as necessary to support the reported findings.

- THIS DRAFT REPORT HAS BEEN PREPARED BASED UPON THE INFORMATION, DOCUMENTATION, AND DATA PROVIDED TO HP BY THE TRUSTEE AND HIS COUNSEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION, NO INDEPENDENT VERIFICATION OR AUDIT HAS BEEN CONDUCTED. HP IS NOT RESPONSIBLE, AND ASSUMES NO RESPONSIBILITY, FOR ANY INACCURACIES, OMISSIONS, OR MISREPRESENTATIONS IN THE INFORMATION, DOCUMENTATION, AND DATA PROVIDED. CERTAIN REQUESTED INFORMATION HAS NOT BEEN PROVIDED TO HP AS OF THE DATE OF THIS DRAFT REPORT.

- THIS DRAFT REPORT NEITHER CONSTITUTES AN AUDIT, REVIEW, OR ASSURANCE UNDER GENERALLY ACCEPTED AUDITING STANDARDS, NOR DOES IT PROVIDE LEGAL OPINIONS OR CONCLUSIONS. THIS DRAFT REPORT DOES NOT CONSTITUTE LEGAL OR FINANCIAL ADVICE. THE FINDINGS, CONCLUSIONS, AND OPINIONS EXPRESSED HEREIN ARE BASED ON THE AVAILABLE EVIDENCE AND PROFESSIONAL JUDGMENT AS OF THE DATE OF THIS DRAFT REPORT AND ARE SUBJECT TO CHANGE. HP RESERVES THE RIGHT TO AMEND, SUPPLEMENT, EDIT, AND CORRECT FOR ANY REASON.

HARNEY PARTNERS

Exhibit 62

# Scope of Analysis

After discussion with the Trustee and his counsel, HP conducted a forensic accounting review of the cash transactions of the two debtor entities (AEP and AFR) and three non-debtor entities: AE Partners Holdings, Inc. ("AE Partners Holdings"), AEP Asset Holdings, LLC ("AEP Asset Holdings"), and Invictus Drilling Motors, LLC ("Invictus") for the period between January 2022 through and including April 2025 (the "Analysis Period").

**Documents Relied Upon**

• Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

• Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

• Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

• AE Partners Holdings paystubs from the June 15, 2023 pay period

**Bank Accounts Analyzed**

HP analyzed the cash transactions from the below seven (7) accounts during the Analysis Period. The below graphic illustrates the bank statements received by HP and included in this Draft Report.



DRAFT

| ALLIANCE ENERGY PARTNERS | |
| Trust | 3726 Operating |
| Trust | 5958 Payroll |
| ALLIANCE FARM AND RANCH | |
| Frost | 7412 |
| AE PARTNERS HOLDING | |
| Frost | 7404 |
| Frost | 7590 |
| AEP ASSET HOLDINGS | |
| Frost | 7459 |
| INVICTUS DRILLING MOTORS | |
| Frost | 7447 |

Diagram Legend
■ Beginning balance $0   ■ Statement received   ■ Ending balance $0



Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Summary of Cash Flows

The below graph shows the aggregate flow of funds between the two debtor entities, related entities, and principals during the Analysis Period. Transfer to Thomas Wayne LLC and J Parker Construction are included in the graph because of the potential insider status of those entities.



**Note:** the chart above and included in parts on subsequent pages presents a summary of the primary cash inflows and outflows. It is not intended to reflect all categories of cash activity or every source and use of funds during the Analysis Period.



Exhibit 62



Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only – Filed in TXSB on 10/02/25

Page 80 of 97

# Alliance Energy Partners, LLC

## Summary of Cash Flows

- **Deterioration in Customer Receipts:** AEP collected over **$23.2 million in 2022** in customer receipts in 2022, but collections declined to approximately **$9.3 million in 2023** following the loss of Colgate Energy as a major customer. Collections further deteriorated to approximately **$3.8 million in 2024** as the decline in sales to Arrow S Energy Operating, Earthstone Operating, and Patton Exploration were not offset by the addition of new customers.

- **Capital Investments:** During the Analysis Period, AEP spent approximately $2.6 million in capital expenditures, including but not limited to:
  - $996K for the acquisition of the real property at 5450 Hanea Egypt Rd in April 2022.
  - $811K to Supreme Source Energy Services for the motor shop buildout.

- **Direct expenses:** As detailed on a subsequent page, direct expenses include charges for directional consulting, MWD services, downhole motor rental and tool rental. Significant vendors include Gordon Technologies, REME LLC, Viper Energy, and Workrise – Rusco Operating.

- **Transfers to Related Parties:** Because AEP was the primary revenue generating entity, it helped fund the operations of several related entities by transferring **more than $7.5 million** to related entities and principals during the Analysis Period:
  - AE Partners Holdings   $3.4 million
  - Invictus   $1.8 million
  - AFR   $440K
  - J Parker Construction $968K
  - Thomas Wayne, LLC   $190K
  - Etter   $785K

## Aggregate Cash Flows in Analysis Period

*$ in thousands*



## Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| BEGINNING CASH | $1,587.8 | $756.9 | $184.0 | $5.7 | $1,587.8 |
| OPERATING RECEIPTS | $23,162.1 | $9,349.2 | $3,798.8 | $325.4 | $36,635.5 |
| OPERATING DISBURSEMENTS | | | | | |
| Direct Expenses | (15,938.6) | (4,929.0) | (1,347.1) | (8.6) | (22,023.4) |
| Payroll & Related | (606.1) | (966.4) | (955.7) | (55.5) | (2,009.7) |
| Capital Investments | (2,433.8) | (50.0) | (78.4) | | (2,562.2) |
| Loan Payments | (13.1) | (78.7) | (61.9) | (10.3) | (279.8) |
| Other Operating Expenses | (1,987.4) | (1,019.7) | (737.8) | (20.4) | (3,745.4) |
| Unknown | (37.0) | | | (14.1) | (41.1) |
| TOTAL OPERATING DISBURSEMENTS | ($21,036.04) | ($6,941.0) | ($2,730.7) | ($71.2) | ($30,449.7) |
| RELATED PARTY TRANSACTIONS | | | | | |
| (to) / from AEP | (85.0) | (240.0) | (115.0) | | (440.0) |
| (to) / from AE Partners Holdings | (1,885.0) | (1,031.0) | (762.5) | 39.0 | (3,439.5) |
| (to) / from AEP Asset Holdings | (429.6) | (1,112.7) | (228.9) | | (1,751.2) |
| (to) / from Jared Etter | | | | | |
| (to) / from David Etter | (734.8) | | | | (784.8) |
| (to) / from Thomas Wayne LLC | | (90.0) | (100.0) | | (190.0) |
| (to) / from J Parker Construction | (822.5) | (9.6) | (40.0) | (296.0) | (968.1) |
| TOTAL RELATED-PARTY TRANSACTIONS | ($3,956.9) | ($3,089.3) | ($1,246.4) | ($290.9) | ($7,573.5) |
| NET CASH FLOW | ($830.9) | ($572.9) | ($173.3) | $5.5 | ($1,587.8) |
| ENDING CASH BALANCE | $756.9 | $184.0 | $5.7 | $0.11 | $0.11 |

HARNEY PARTNERS

Exhibit 62

# Alliance Energy Partners, LLC

## Operating Receipts

- As noted on the prior page, annual operating receipts declined sharply from $23.2 million in 2022 to $9.3 million in 2023 then to $3.8 million in 2024.

- Through the first four months of 2025, AEP collected $325K from customers, representing an annualized run rate of less than $1.0 million of collections for the year.

- Colgate Energy accounted for 62% of the total ($22.7 million of $36.6 million) during the Analysis Period. In 2022 alone, Colgate Energy accounted for 97.6% of Operating Receipts.

- AEP generated revenue from many customers in only one year, indicating that receipts were likely tied to specific, one-time projects rather than recurring contracts.

| | Operating Receipts by Customer | | | | |
|---|---|---|---|---|---|
| CUSTOMER | 2022 | 2023 | 2024 | 2025 | Total |
| Colgate Energy | $22,612,356 | $41,406 | $ - | $ - | $22,653,762 |
| Arrow S Energy Operating | 199,554 | 4,385,091 | 303,573 | 6,095 | 4,894,313 |
| Earthstone Operating, LLC | | 2,942,138 | 673,060 | | 3,615,198 |
| Centennial Resource Production, LLC | 40,470 | 419,996 | 664,896 | | 1,125,363 |
| Patton Exploration, Inc | | 1,449,697 | 262,716 | | 1,712,412 |
| Blackbeard Operating LLC | | | 563,025 | 16,500 | 579,525 |
| Ageron Energy, LLC | | | 201,200 | 302,823 | 504,023 |
| Crimson Energy Partners IV, LLC | 309,682 | | | | 309,682 |
| Point Energy Partners Operating, LLC | | | 351,461 | | 351,461 |
| BlackBrush O&G LLC | | | 186,904 | | 186,904 |
| El Toro Resources LLC and Company Group | | | 166,804 | | 166,804 |
| BB-Southtex LLC | | | 113,420 | | 113,420 |
| Tri-State Vacuum and Rental | | 110,530 | | | 110,530 |
| Altitude Energy Partners | | | 96,594 | | 96,594 |
| Iron Orchard Operating, LLC | | | 74,050 | | 74,050 |
| SB Directional | | | 56,584 | | 56,584 |
| Lee Construction | | | 48,180 | | 48,180 |
| Cheyenne Petroleum Company | | | 18,215 | | 18,215 |
| Diamondback Energy | | | 18,137 | | 18,137 |
| **Total** | **$23,162,063** | **$9,348,858** | **$3,796,818** | **$325,418** | **$36,635,157** |




HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 82 of 97

# Alliance Energy Partners, LLC

## Disbursements

- Direct expenses totaled **$22.0 million** over the Analysis Period. The largest vendors were Gordon Technologies ($6.4 million), REME LLC ($2.8 million), Viper Energy ($1.4 million), and Rusco ($1.3 million). Direct expenses decreased after 2022 in connection with the significant decline in operating receipts.

- Capital investments were concentrated in 2022, including $996K for the property at 5450 Hanea Egypt Rd., $832K invested in the motor shop, and $200K paid to Dyna-Drill Technologies. Later investments were smaller, such as $50K to Isodrill in both 2023 and 2024 and $18K to Keystone Manufacturing in 2024.

- Loan payments totaled approximately $280K during the Analysis Period, including approximately $163K to Mercedes Benz Finance, $69K to Eric Ostrander, $33K to Ally Bank, and $15k on a retail loan line.

### Capital Investments

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Property - 5450 Hanea Egypt Rd. | $995,515 | $ - | $ - | $ - | $995,515 |
| Motorshop Investment | 832,036 | - | - | - | 832,036 |
| Applied Machinery Corp | 65,000 | - | - | - | 65,000 |
| DAVM, LLC | - | - | 3,540 | - | 3,540 |
| Dyna-Drill Technologies | 232,752 | - | - | - | 232,752 |
| Freedom Drilling Tools | 67,000 | - | - | - | 67,000 |
| Isodrill | - | 50,000 | 50,000 | - | 100,000 |
| Keystone Manufacturing | - | - | 18,300 | - | 18,300 |
| North South Properties | 100,000 | - | - | - | 100,000 |
| San Joaquin Tractor Co | 25,694 | - | - | - | 25,694 |
| Tellez Machine | - | - | 6,571 | - | 6,571 |
| Tensor Energy Services LTD | 115,824 | - | - | - | 115,824 |
| **Total** | **$2,433,822** | **$50,000** | **$78,411** | **$ -** | **$2,562,233** |

### Direct Expenses

| Vendor | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Gordon Technologies | $4,880,686 | $1,416,658 | $58,150 | $ - | $6,353,495 |
| REME LLC (DXG) | 2,744,189 | 14,554 | 2,000 | - | 2,760,743 |
| Viper Energy | 1,428,167 | - | - | - | 1,428,167 |
| Workrise - Rusco Operating, LLC | - | 919,551 | 421,327 | - | 1,340,878 |
| DXG Energy Inc (Daniel Hudspeth) | 402,969 | 390,598 | 206,154 | - | 999,721 |
| Gabor Technologies | 516,609 | 244,302 | 115,036 | - | 875,947 |
| Rodney Rice | 146,985 | 447,638 | 147,775 | 5,750 | 748,127 |
| IAE International (Sniper) | 599,153 | 127,751 | - | - | 726,905 |
| Cavare Inc | 378,620 | 67,764 | 56,506 | - | 502,889 |
| Shane Davis | 254,575 | 73,710 | - | - | 328,285 |
| JA Oilfield | 303,409 | - | 4,100 | - | 307,509 |
| Harry Pierce | 208,950 | 73,710 | - | - | 282,660 |
| Patriot Downhole (Firethorne) | 10,834 | 136,677 | 126,598 | - | 274,109 |
| Justin Bailey | 219,838 | 48,562 | - | - | 268,400 |
| Discovery Downhole | 265,053 | - | - | - | 265,053 |
| DynaMax Drilling Tools USA, Inc. | - | 250,019 | - | - | 250,019 |
| T Gibson Consulting | 222,858 | 22,580 | - | - | 245,438 |
| Turnazontal | 147,350 | 61,662 | 30,700 | - | 239,712 |
| 90 Right Consulting | 200,281 | 20,412 | - | - | 220,693 |
| Luis Garza | 219,844 | - | - | - | 219,844 |
| Bico Drilling Tools | 215,662 | - | - | - | 215,662 |
| Pegasus Nvg Trucking | 179,700 | 30,199 | - | - | 209,899 |
| JL Henry Corp | 197,559 | 950 | 1,850 | - | 200,359 |
| Other | 2,084,077 | 481,730 | 178,767 | - | 2,744,575 |
| **Total** | **$15,829,409** | **$4,831,050** | **$1,348,987** | **$7,775** | **$22,009,127** |

### Loan Payments

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Mercedes Benz Finance | 51,537 | 51,537 | 51,537 | 8,589 | 163,200 |
| Eric Ostrander | 69,248 | - | - | - | 69,248 |
| Ally Bank | 10,315 | 10,315 | 10,315 | 1,719 | 32,663 |
| Line Payment to Retail Loan | - | 14,830 | - | - | 14,830 |
| **Total** | **$131,099** | **$76,681** | **$61,851** | **$10,309** | **$279,941** |



HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 254-1   Filed in TXSB on 10/02/25   Page 83 of 97

# Alliance Farm and Ranch, LLC

## Summary of Cash Flows

- **No Third-Party Revenue:** AFR relied upon transfers from related entities to fund operating expenses, including receiving approximately **$440K from AEP, $427K from Invictus,** and **$138K from AE Partners Holdings.**

- **Uses of Cash:** AFR utilized funds received from related entities for three primary purposes:

- **$327K** was transferred to **Furr** or for his benefit, including $11K to Nathan Furr in August 2024 and approximately $16K to Mary Ross Custom Homes in March 2023.

- **$480K** was paid to **Eric Ostrander,** beginning in August 2022, pursuant to the certain Real Estate Lien Note used to acquire the property at 5450 Hanea Egypt Rd.

  - AFR also paid $20K to Popular Ag Finance as a deposit for refinancing.

- **$180K** for various operating expenses, including (but not limited to) property taxes, supplies, and repairs and maintenance.

- **Unknown transfers:** HP also identified three transactions where insufficient documentation or detail was available to assess the business purpose and / or counterparts. These transactions are detailed on a later page.

### Loan Payments

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Eric Ostrander | 133,764 | 276,993 | 69,248 | 2,025 | 480,004 |
| Popular Ag Finance | - | - | 20,000 | - | 20,000 |
| **Total** | **$ 135,786** | **$ 279,016** | **$ 91,272** | **$ 2,025** | **$ 500,004** |



## Aggregate Cash Flows in Analysis Period

$ in thousands

### Annual Cash Flows

$ in thousands

| | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | | $32.6 | $5.9 | $74.1 | - |
| **OPERATING RECEIPTS** | - | - | - | $0.3 | $37.7 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | - | - | - | - | - |
| Capital Investments | (133.8) | (277.0) | (89.2) | - | (500.0) |
| Loan Payments | (6.6) | (69.7) | (97.9) | (5.6) | (179.8) |
| Other Operating Expenses | (37.1) | 100.0 | (103.4) | - | (35.5) |
| Unknown | - | - | - | - | - |
| **TOTAL OPERATING DISBURSEMENTS** | **$177.4** | **$246.7** | **$290.6** | **$5.6** | **$715.3** |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (In) / from AEP | 85.0 | 240.0 | 115.0 | - | 440.0 |
| (In) / from AFR | - | (100.0) | 237.5 | - | 137.5 |
| (In) / from AEP Holdings | - | - | - | - | - |
| (In) / from AEP Asset Holdings | 120.0 | 220.0 | 86.8 | - | 426.8 |
| (In) / from Invictus | (0.0) | (139.9) | (117.9) | (68.9) | (326.8) |
| (In) / from Jarod Furr | - | - | - | - | - |
| (In) / from Dustin Etter | - | - | - | - | - |
| (In) / from Thomas Wayne LLC | - | - | - | - | - |
| (In) / from J Pester Construction | - | - | - | - | - |
| **TOTAL RELATED PARTY TRANSACTIONS** | **$205.0** | **$220.1** | **$321.4** | **($68.9)** | **$677.5** |
| **NET CASH FLOW** | **$32.6** | **($26.6)** | **$68.2** | **($74.2)** | **($0.0)** |
| **ENDING CASH BALANCE** | **$32.6** | **$5.9** | **$74.1** | **$0.0** | **($0.0)** |



HARNEY PARTNERS

Exhibit 62



Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 85 of 97

# AE Partners Holdings, Inc.

## Summary of Cash Flows

- **Sources of Cash**: AEP was the primary source of funding of AE Partners Holdings, transferring approximately **$3.4 million** during the Analysis Period to AE Partners Holdings.
  - Only about **$24K** was received from other sources, including refunds from the Texas Comptroller and interest income from Frost Bank.

- **Payroll**: AE Partners Holdings incurred approximately **$750K** in payroll expenses during the Analysis Period. HP did not receive a comprehensive payroll report detailing the payroll expenses by employee. However, HP did receive paystubs from a June 2023 pay period that reflected the Furr and Etter were paid salaries from this entity.

- **Capital Investments**: Approximately **$200K** in capital expenditures were made to Isodrill during the Analysis Period.

- **Transfers to Related Parties**: AE Partners Holdings transferred funds to related entities totaling more than **$2.5 million**, including:
  - Invictus            $1.7 million
  - AEP Asset        $566K
  - AFR                $138K
  - Furr                $67K
  - J Parker Construction    $60K

### Aggregate Cash Flows in Analysis Period

*$ in thousands*



### Annual Cash Flows

*$ in thousands*

| | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| BEGINNING CASH | $0.4 | $75.9 | $3.5 | $43.0 | - |
| OPERATING RECEIPTS | $0.4 | $11.6 | $0.0 | $11.5 | $23.5 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | | | | | |
| Payroll & Related | (26.9) | (599.1) | (119.1) | (5.3) | (750.5) |
| Capital Investments | - | (200.0) | - | - | (200.0) |
| Loan Payments | - | - | - | - | - |
| Other Operating Expenses | (0.1) | (0.9) | (11.2) | (2.0) | (14.2) |
| Unknown | | | | | |
| **TOTAL OPERATING DISBURSEMENTS** | ($27.0) | ($799.9) | ($130.3) | ($7.3) | ($964.6) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to:) from AEP | 1,065.0 | 1,631.0 | 702.5 | (39.0) | 3,439.5 |
| (to:) from AFR | - | 100.0 | (237.5) | - | (137.5) |
| (to:) from AEP Holdings | - | - | (0.5) | - | (0.5) |
| (to:) from AEP Asset Holdings | (330.0) | (240.0) | (324.5) | 4.5 | (566.0) |
| (to:) from Invictus | (567.5) | (775.0) | - | (0.7) | (1,667.7) |
| (to:) from Janod Furr | (25.0) | - | (30.2) | (11.5) | (66.7) |
| (to:) from Dustin Etter | | | | | |
| (to:) from Thomas Wayne LLC | | | | | |
| (to:) from J Parker Construction | (60.0) | - | - | - | (60.0) |
| **TOTAL RELATED PARTY TRANSACTIONS** | $102.5 | ($72.4) | $569.8 | ($46.7) | $841.6 |
| NET CASH FLOW | $75.9 | $3.5 | $43.0 | ($42.0) | $0.5 |
| ENDING CASH BALANCE | $75.9 | $3.5 | $43.0 | $0.5 | $0.5 |



HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Invictus Drilling Motors, LLC

## Aggregate Cash Flows in Analysis Period

*$ in thousands*



## Summary of Cash Flows

- **Sources of Cash**: Invictus was primarily funded through intercompany transfers, including **$1.75 million from AEP and $1.67 million from AE Partners Holdings.**

- **Limitations on Analysis**: HP was unable to review and assess the majority of disbursements made by Invictus because the payments were made via ACH, and the bank statements did not contain any detail identifying the recipients of the ACH payments.

- Due to the lack of ACH payment detail, HP was also **unable to fully reconcile intercompany transfers** between AFR and Invictus, resulting in discrepancies in the transaction records.

  - AFR bank records reflect approximately $427K of transfers from Invictus. Many of these transfers were ACH payments so HP was only able to identify approximately $187K of transfers in the Invictus bank records with the current information available.

  - *HP has requested ACH reports available from Frost Bank to obtain the missing payment detail. This request remains outstanding as of the date of this Draft Report.*

### Annual Cash Flows

*$ in thousands*

| | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | - | $26.5 | $12.2 | $0.0 | - |
| **OPERATING RECEIPTS** | $99.0 | $196.1 | $1.6 | - | $296.6 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | - | - | - | - | - |
| Capital Investments | - | - | - | - | - |
| Loan Payments | (0.6) | (1.1) | (1.4) | (0.5) | (3.6) |
| Other Operating Expenses | - | - | - | - | - |
| Unknown | (968.9) | (1,918.8) | (499.0) | - | (3,486.7) |
| **TOTAL OPERATING DISBURSEMENTS** | (969.5) | (1,919.9) | (500.5) | (0.5) | (3,490.4) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | 409.6 | 1,112.7 | 228.9 | - | 1,751.2 |
| (to) / from AFR | (60.0) | (60.0) | (66.8) | - | (186.8) |
| (to) / from AEP Holdings | 567.5 | 775.0 | 324.5 | 0.7 | 1,667.7 |
| (to) / from AEP Asset Holdings | - | (118.2) | - | - | (118.2) |
| (to) / from Invictus | - | - | - | - | - |
| (to) / from Jared Fair | - | - | - | - | - |
| (to) / from Dustin Ebar | - | - | - | - | - |
| (to) / from Thomas Weave LLC | - | - | - | - | - |
| (to) / from J Parker Construction | - | - | - | - | - |
| **TOTAL RELATED PARTY TRANSACTIONS** | $917.0 | $1,709.5 | $486.6 | $0.7 | $3,113.9 |
| **NET CASH FLOW** | $26.5 | $(14.3) | $(12.3) | $0.2 | $0.1 |
| **ENDING CASH BALANCE** | $26.5 | $12.2 | $0.0 | $0.1 | - |



harneypartners.com | 12

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# AEP Asset Holdings, LLC

## Summary of Cash Flows

- **Transaction Volume:** Activity within this entity was limited, with only a small number of transactions recorded during the Analysis Period.

- **Funding Sources:** Inflows totaled approximately **$684K**, consisting of transfers of **$566K** from AE Partners Holdings and **$118K** from Invictus.

- **Use of Funds:** The funds transferred from related entities were primarily used to pay two counterparties.
  - Danny Williams was paid **$313K**;
  - Supreme Source Energy was paid **$375K**.

## Aggregate Cash Flows in Analysis Period

*$ in thousands*



### Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | | $17.3 | $0.0 | $0.1 | $7.6 |
| **OPERATING RECEIPTS** | - | - | - | - | $7.6 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | | | | | |
| Payroll & Related | | | | | |
| Capital Investments | (312.5) | (375.0) | 240.0 | | (887.5) |
| Loan Payments | | (0.5) | 118.2 | | 118.2 |
| Other Operating Expenses | (0.2) | (0.5) | (0.4) | (2.0) | (3.1) |
| Unknown | | | | | |
| **TOTAL OPERATING DISBURSEMENTS** | ($312.7) | ($375.6) | ($0.4) | ($2.0) | ($690.6) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) from AEP | | | | | |
| (to) from AFR | | | | | |
| (to) from AEP Holdings | 330.0 | 240.0 | 0.5 | (4.5) | 566.0 |
| (to) from AEP Asset Holdings | | 118.2 | | | 118.2 |
| (to) from Invictus | | | | | |
| (to) from Jerod Farr | | | | | |
| (to) from Dustin Eller | | | | | |
| (to) from Thomas Weare LLC | | | | | |
| (to) from J Parker Construction | | | | | |
| **TOTAL RELATED PARTY TRANSACTIONS** | $330.0 | $388.2 | $0.5 | ($4.5) | $884.2 |
| **NET CASH FLOW** | $17.3 | ($17.3) | $0.1 | $1.0 | $1.1 |
| **ENDING CASH BALANCE** | $17.3 | $0.0 | $0.1 | $1.1 | $1.1 |



harneypartners.com | 13

HARNEY PARTNERS

Exhibit 62



Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Payments within 90 Days of Petition Date

The below payments were made by the two debtor entities within 90 days of their respective Petition Dates and does not include transfers to Insiders. Data is presented on an unconsolidated basis by payment and is not on an aggregate basis by recipient as contemplated by question #3 in the Statement of Financial Affairs.

## Alliance Farm and Ranch

**Petition Date: January 7, 2025**

*EXCLUDING PAYMENTS TO INSIDERS*

| Date | Amount | Recipient |
|------|--------|-----------|
| 11/22/24 | ($100,000.00) | Weaver Law Firm |
| 10/07/24 | ($20,000.00) | Popular Ag Finance |
| 12/31/24 | ($8,480.00) | Rejas, Hua & Hoang, PLLC |
| 02/04/25 | ($4,439.29) | Safeco Corporation |
| 10/09/24 | ($4,200.00) | Texans Water Heaters |
| 11/22/24 | ($3,500.00) | Chamberlain Hrdlicka |
| 10/07/24 | ($2,500.00) | Steel Fox Designs |
| 11/01/24 | ($2,430.00) | Jacob Mitchell |
| 12/12/24 | ($1,612.00) | Jacob Mitchell |
| 10/07/24 | ($1,440.00) | Jacob Mitchell |

## Alliance Energy Partners

**Petition Date: April 7, 2025**

*EXCLUDING PAYMENTS TO INSIDERS*

| Date | Amount | Recipient |
|------|--------|-----------|
| 01/17/25 | ($7,074.11) | Quickbooks Payroll |
| 01/09/25 | ($6,500.00) | Unknown ACH Payment |
| 01/10/25 | ($6,401.47) | Blue Cross Blue Shield of Texas |
| 02/18/25 | ($5,750.00) | Rodney Rice |
| 01/21/25 | ($4,857.53) | Brittany Lopez CPA PC |
| 02/05/25 | ($4,500.00) | Unknown ACH Payment |
| 02/18/25 | ($4,500.00) | Unknown ACH Payment |
| 01/13/25 | ($4,294.73) | Mercedes Benz Finance |
| 02/11/25 | ($4,294.73) | Mercedes Benz Finance |
| 01/22/25 | ($3,254.79) | Champion Energy |
| 02/03/25 | ($3,125.00) | Unknown ACH Payment |
| 01/13/25 | ($2,861.88) | Sandstone Ridge Apartments |
| 01/15/25 | ($2,162.58) | Internal Revenue Service |
| 01/21/25 | ($2,052.67) | Ferretville Investments LLC |



HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 90 of 97

# Transfers to Insiders within 1 Year of Petition Date

The below payments were made by the two debtor entities within 90 days of their respective Petition Dates and does not include transfers to Insiders. Data is presented on an unconsolidated basis by payment and is not on an aggregate basis by recipient as contemplated by question #3 in the Statement of Financial Affairs.

## Alliance Farm and Ranch

**Petition Date: January 7, 2025**

| Insider | Amount Transferred | Number of Transfers |
|---|---|---|
| Jerod Furr | $201,900.00 | 25 |
| Nathan Furr | 11,000.00 | 1 |
| AE Partner Holdings | $ 7,500.00 | 2 |
| | **$220,400.00** | |

## Alliance Energy Partners

**Petition Date: April 7, 2025**

| Insider | Amount Transferred | Number of Transfers |
|---|---|---|
| AE Partner Holdings | $417,500.00 | 15 |
| J Parker Construction | 340,000.00 | 2 |
| Alliance Farm and Ranch | 55,000.00 | 3 |
| Invictus | 30,000.00 | 1 |
| Thomas Wayne LLC | 25,000.00 | 1 |
| | **$867,500.00** | |



HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 91 of 97

# Payments to Principals

The charts below depict the transfers from AEP, AFR and AE Partners Holdings to the two principals, Furr and Etter, during the Analysis Period. The below charts do not include any w-2 wages paid to Furr and Etter. HP understands, but has not verified, that AE Partner Holdings employed and paid salaries to both Furr and Etter during at least part of the Analysis Period.



## Transfers to Principals by Year

Furr ■ Etter

## Breakdown of Transfers by Entity

■ AEP ■ AFR ■ AE Partners Holdings



harneypartners.com  | 17

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 92 of 97

# Intercompany Transactions from Debtor Accounts

Below table illustrates the intercompany transfers between the two Debtors and the three non-debtor entities included in this forensic analysis:

| Entity | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| **AEP** | | | | | |
| (to) / from AEP | - | - | - | - | - |
| (to) / from AFR | ($85,000) | ($240,000) | ($115,000) | - | ($440,000) |
| (to) / from AE Partners Holdings | ($1,085,000) | ($1,631,000) | ($762,500) | $39,000 | ($3,439,500) |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | ($409,570) | ($1,112,694) | ($228,924) | - | ($1,751,187) |
| **AFR** | | | | | |
| (to) / from AEP | $85,000 | $240,000 | $115,000 | - | $440,000 |
| (to) / from AFR | - | - | - | - | - |
| (to) / from AE Partners Holdings | - | ($100,000) | $237,500 | - | $137,500 |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | $120,000 | $220,000 | $86,800 | - | $426,800 |



HARNEY PARTNERS

harneypartners.com   |   18

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Transfers to J Parker Construction

HP identified eighteen (18) transfers totaling over $968K to J Parker Construction from AEP, a potential insider of the Debtors, during the Analysis Period.

Many of the transfers were booked in QuickBooks as "Member 1 Draws" and reflected as payments to Jerod P Furr. Bank records (below) reflect these as transferred to Truist account ending 3493, which is owned by J Parker Construction (as reflected in the wire detail below on the right).

$60K was also transfer to J Parker Construction by AE Partners Holdings via wire transfer in September 2022 (see snapshot below on the right).

## TRANSFERS TO J PARKER CONSTRUCTION

| Date | Bank/Amount | Account Name | Account Entity | Description | Accounting Treatment |
|------|------|------|------|------|------|
| 01/04/22 | -$60,000.00 | Truist 3728 | Alliance Energy Partners | M- APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 02/05/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M- APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 03/17/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M- APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 04/08/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M- APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 05/11/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 06/13/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 07/08/22 | -$100,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 08/01/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 08/22/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 09/14/22 | -$45,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 144000358493 | Member 1 Draws |
| 10/17/22 | -$25,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO ****3493 | Member 1 Draws |
| 11/17/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO ****3493 | Rent Expense (AFR) |
| 11/21/22 | -$15,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO ****3493 | Member 1 Draws |
| 12/02/22 | -$500.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 | Member 1 Draws |
| 12/06/22 | -$2,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO ****3493 | Member 1 Draws |
| 11/08/23 | -$6,600.00 | Truist 3728 | Alliance Energy Partners | TRANSFER_ONLINE TRANSFER DEPOSIT XXXXXXX3450-Jerod | Member 1 Draws |
| 1/27/24 | -$40,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 | Member 1 Draws |
| 02/03/25 | -$300,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO ****3493 | Unknown - did not have GL |
| 02/28/25 | -$1,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE FROM **** 3493 | Unknown - did not have GL |
| 09/27/22 | -$60,000.00 | Frost 7404 | AE Partners Holding | WIRE TRANSFER FROST BANK WIRE OUT 02914 | |
| | -$968,100.00 | | | | |



## Snapshot from 2022 General Ledger

| Date | Memo | Payee | Distribution Construction |
|------|------|------|------|
| | | | 100.00 |
| | | | 76,000.00 |
| | Member 1 Draws | | |
| 01/01/2022 | | | |
| 01/01/2022 | | | |
| 01/04/2022 | Draw | Jerod P Furr | 60,000.00 |
| 01/26/2022 | ACH | Internal Revenue Service | 47,500.00 |
| 02/03/2022 | Draw | Jerod P Furr | 30,000.00 |
| 02/15/2022 | | Jerod P Furr | 716.61 |
| 03/17/2022 | Draw | Jerod P Furr | 30,000.00 |
| 04/08/2022 | Draw | Jerod P Furr | 30,000.00 |
| 05/11/2022 | Draw | Jerod P Furr | 30,000.00 |
| 06/13/2022 | Draw | Jerod P Furr | 75,000.00 |
| 07/08/2022 | Draw | Jerod P Furr | 100,000.00 |
| 08/01/2022 | Draw | Jerod P Furr | 75,000.00 |
| 08/22/2022 | Draw | Jerod P Furr | 75,000.00 |
| 09/14/2022 | Draw | Jerod P Furr | 45,000.00 |
| 10/17/2022 | Draw | Jerod P Furr | 25,000.00 |
| 11/17/2022 | Draw | Jerod P Furr | 30,000.00 |
| 12/02/2022 | | J Parker Construction | 500.00 |
| 12/06/2022 | | J Parker Construction | 2,000.00 |
| **Total Member 1 Draws** | | | **856,716.61** |
| | | | 76,100.00 |

## Wire from AE Partners Holdings for $60,000 in September 2022



HARNEY PARTNERS

**Exhibit 62**

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Unverified Transfers

HP was not provided sufficient documentation or detail to assess the business purpose and / or counterparty to the below transactions:

## Alliance Farm and Ranch

| Date | Amount | Recipient | Description |
|---|---|---|---|
| 08/30/23 | $100,000.00 | Stephen Drew Bonner | WIRE TRANSFER FROST BANK WIRE IN 04043 |
| 11/22/24 | ($100,000.00) | Weaver Law Firm | WIRE TRANSFER FROST BANK WIRE OUT 06592 |
| 11/08/22 | ($32,074.68) | Jason Stewart | WIRE TRANSFER FROST BANK WIRE OUT 02575 |

## Alliance Energy Partners

| Date | Amount | Recipient | Description |
|---|---|---|---|
| 05/26/22 | ($26,990.00) | Gulf Coast Exotic Auto LLC | 2022 MOKE Electric |
| 01/09/25 | ($6,500.00) | Unverified | ACH SETTLEMENT |
| 02/04/25 | $4,500.00 | Unverified | ACH REVERSAL SETTLEMENT |
| 02/05/25 | ($4,500.00) | Unverified | ACH RETURN |
| 02/18/25 | ($4,500.00) | Unverified | ACH SETTLEMENT |
| 02/03/25 | ($3,125.00) | Unverified | ACH SETTLEMENT |

## Invictus

| Date | Amount | Recipient | Description |
|---|---|---|---|
| 01/19/24 | ($306,205.20) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 03/16/23 | ($263,703.12) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/23/22 | ($200,596.35) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 06/14/23 | ($139,802.73) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 02/02/23 | ($137,759.60) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/17/22 | ($129,124.35) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/31/23 | ($109,557.25) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 06/01/23 | ($97,501.58) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/30/23 | ($96,567.42) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/01/23 | ($95,438.24) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 07/18/23 | ($93,292.27) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 09/26/22 | ($88,789.55) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/01/22 | ($87,475.00) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 12/30/22 | ($86,705.60) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 04/03/23 | ($85,313.29) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 12/20/23 | ($76,027.46) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 11/22/23 | ($70,325.19) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 01/11/23 | ($66,491.03) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 05/03/23 | ($64,893.50) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 05/17/23 | ($64,004.75) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/25/23 | ($58,706.00) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 02/16/23 | ($56,665.51) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 01/05/24 | ($56,393.23) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 03/01/23 | ($54,251.13) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |

*Note: this is only a partial listing of the largest ACH payments made by Invictus.*



HARNEY PARTNERS

Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

# Payroll

AEP and AP Partners Holdings paid employees through payroll services during the Analysis Period.

## Employees paid by AEP through QuickBooks Payroll Service

### AEP Employees during Analysis Period

Amy M Fisher
Binh Thai
Candace Cantu
Christopher P Hargrave
Darrin E Batchelor
Jeana Hurley
Jeraime H Yeager
Jose P Velasquez Alfaro
Joseph R Salazar
Julio A Espinoza
Martin E Herrera
Nathan Furr
Richard McNabb
Travis W Daily



**AE Partners Holdings payroll decreased in Q4 2023**

Net Pay Remitted to Intuit Payroll Service

**Snapshots from June 15, 2023 Pay Stubs**



Exhibit 62

Draft – Subject to ongoing investigation –
For purposes related to the combination plan and disclosure statement only

Case 25-30155   Document 187   Filed in TXSB on 10/02/25   Page 96 of 97

# Capital Investments

The below table shows the various capital investments made by AEP and AP Asset Holdings during the Analysis Period.

| Payee | Capital Investments | | | | |
|---|---|---|---|---|---|
| | 2022 | 2023 | 2024 | 2025 | Total |
| Property – 5450 Hanea Egypt Rd | $ 995,515 | $ - | $ - | $ - | $ 995,515 |
| Danny T. Williams | 20,833 | - | - | - | 20,833 |
| Supreme Source Energy Services Inc | 811,203 | - | - | - | 811,203 |
| Motorshop Investment Subtotal | 832,036 | - | - | - | 832,036 |
| Applied Machinery Corp | 65,000 | - | - | - | 65,000 |
| DAVM, LLC | - | - | 3,540 | - | 3,540 |
| Dyna-Drill Technologies | 232,752 | - | - | - | 232,752 |
| Freedom Drilling Tools | 67,000 | - | - | - | 67,000 |
| Isodrill | - | 50,000 | 50,000 | - | 100,000 |
| Keystone Manufacturing | - | - | 18,300 | - | 18,300 |
| North South Properties | 100,000 | - | - | - | 100,000 |
| San Joaquin Tractor Co | 25,694 | - | - | - | 25,694 |
| Tellez Machine | - | - | 6,571 | - | 6,571 |
| Tensor Energy Services LTD | 115,824 | - | - | - | 115,824 |
| **AEP Subtotal** | **$ 2,433,822** | **$ 50,000** | **$ 78,411** | **$ -** | **$ 2,562,233** |
| | | | | | |
| Supreme Source Energy Services Inc | $ 125,000 | $ 250,000 | $ - | $ - | $ 375,000 |
| Danny Williams | 187,500 | 125,000 | - | - | 312,500 |
| **AEP Asset Holdings Subtotal** | **312,500** | **312,500** | **312,500** | **312,500** | **312,500** |



HARNEY PARTNERS

harneypartners.com  | 22

Exhibit 62

# Asset Transfer

In June 2022, entries were made in AEP's accounting system to transfer the fixed assets from AEP to AEP Asset Holdings in exchange for an intercompany receivable.

The accounting entries shown below removed all fixed assets from AEP's balance sheet and, as of December 31, 2022, left only an intercompany receivable from AEP Asset Holdings in the amount of **$2,953,042.02.**

| Asset | Date | Num | Debit | Credit |
|---|---|---|---|---|
| 2021 Mercedes | 06/02/2022 | CPA2022 | | 335,440.25 |
| 2021 TUA 1000EFI UTV | 06/02/2022 | CPA2022 | | 25,694.00 |
| 2022 MOKE Electric | 06/02/2022 | CPA2022 | | 26,960.00 |
| Drilling Motors | 06/02/2022 | CPA2022 | | 227,528.00 |
| Dustin's 2022 F350 | 06/02/2022 | CPA2022 | | 94,802.00 |
| F150 Truck - 6103 | 06/02/2022 | CPA2022 | | 53,070.41 |
| Ford F550 Flatbed Truck | 06/02/2022 | CPA2022 | | 65,000.00 |
| Ford Truck - Dustin - 5943 | 06/02/2022 | CPA2022 | | 74,000.00 |
| Furniture and Equipment | 06/02/2022 | CPA2022 | | 6,116.99 |
| Golf Cart | 06/02/2022 | CPA2022 | | 10,000.00 |
| Rotors and Stators | 06/02/2022 | CPA2022 | | 299,752.20 |
| Server | 06/02/2022 | CPA2022 | | 11,752.33 |
| Torque Master Breakout machine | 06/02/2022 | CPA2022 | | 100,000.00 |
| Investment - Isodrill | 06/02/2022 | CPA2022 | | 1,125,000.00 |
| Investment - Motor Shop | 06/02/2022 | CPA2022 | | 812,500.00 |
| R&D | 06/02/2022 | CPA2022 | | 50,000.00 |
| Due from AEP Asset Holdings, LL | 06/02/2022 | CPA2022 | 2,738,369.93 | |
| Accumulated Depreciation | 06/02/2022 | CPA2022 | 579,246.25 | |
| Due from AEP Asset Holdings, LL | 12/31/2022 | CPA2022 | 214,672.09 | |
| Transportation (Tools) | 12/31/2022 | CPA2022 | | 214,672.09 |

**Assets & Liabilities as recorded in AEP's general ledger**



← Asset Transfer

—Assets —Liabilities

HARNEY PARTNERS

Exhibit 62

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30155 |
| | § | |
| ALLIANCE FARM AND RANCH, LLC, | § | (CHAPTER 11) |
| | § | |
|     DEBTOR | § | |
| | § | |
| IN RE: | § | CASE NO. 25-31937 |
| | § | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | (CHAPTER 11) |
| | § | |
|     DEBTOR | § | |

## NOTICE OF MEDIATED SETTLEMENT AGREEMENT BETWEEN LIMITED NUMBER OF MEDIATING PARTIES

**PLEASE TAKE NOTICE** that on January 26, 2026, (i) Tom A. Howley, in his capacity as the chapter 11 trustee (the "**Trustee**") in the above-numbered and styled bankruptcy proceedings for the estates of the above-referenced Debtors, Alliance Farm and Ranch, LLC, and Alliance Energy Partners, LLC, (ii) the Official Committee of Unsecured Creditors of the Debtors (the "**Committee**"), and (iii) Dustin Etter ("**Etter**"), **(**the Trustee, the Committee, and Etter collectively the "**Parties**") and their respective counsel mediated with Judge Marvin Isgur as the mediator and reached a settlement agreement on all outstanding issues between and among them ("**Partial Mediated Settlement Agreement**").

**PLEASE TAKE FURTHER NOTICE** that a copy of the Partial Mediated Settlement Agreement is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Mediated Settlement Agreement at Docket No. 237 is null and void.

1

Exhibit 63

Dated: February 4, 2026                    Respectfully submitted,

        Houston, Texas

                             */s/ Eric Terry*
                             Eric Terry
                             Texas Bar No.  00794729
                             **HOWLEY LAW PLLC**
                             700 Louisiana St., Suite 4220
                             Houston, Texas 77002
                             Telephone:  713-333-9125
                             Email:  eric@howley-law.com

                             ***Counsel for Tom A. Howley - Trustee***

## CERTIFICATE OF SERVICE

      This is to certify that on February 4, 2026, a true and correct copy of the foregoing Notice was served via the Court's CM/ECF notification system.

                             */s/ Eric Terry*
                             Eric Terry

Exhibit 63

<u>**EXHIBIT A**</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-30155 |
| ALLIANCE FARM AND RANCH, | § | |
| LLC, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

**MEDIATED SETTLEMENT AGREEMENT
BETWEEN LIMITED NUMBER OF MEDIATING PARTIES**

This Mediated Settlement Agreement is between Thomas Howley, Trustee of the Debtors in the Alliance Farm and Ranch, LLC bankruptcy cases (Jointly Administered as Case 25-30155), the Official Committee of Unsecured Creditors in that Jointly Administered Case, and Dustin Etter (collectively, the "Participating Parties").

Although Jerod Furr participated in the mediation, the other parties were unable to resolve matters with Mr. Furr. All of his rights are fully preserved.

The Participating Parties, subject to the approval of the United States Bankruptcy Court for the Southern District of Texas which the parties agree to cooperate to attempt to secure, agree:

1. The Trustee will file a proposed chapter 11 bankruptcy plan that incorporates the terms of this settlement. The Participating Parties agree that they will support a proposed plan that incorporates these terms; provided, the proposed plan may not contain provisions that are inconsistent with the terms set forth in this document.

2. On the Effective Date of the Plan, the Trustee will pay $495,000 in cash to Etter, in full compromise of all of his claims against the Estates and all assertions that he is the rightful owner of all or any part of the approximately $1,495,000 of cash held by the Estates. The Estates and Etter (along with all of his affiliates, relatives, attorneys and agents) will exchange full, complete and comprehensive mutual releases of all claims arising from the beginning of the Universe through the Effective Date. For clarity and avoidance of doubt, the releases do not and are not intended to release Furr, any agent relative, or non-debtor entity of

1 / 5

<span style="color:blue">Exhibit 63</span>

his, the Realtor Defendants in the adversary proceeding, or IsoDrill, Inc.

3. On the Effective Date, Etter will purchase from the Estates (i) all of their claims, choses and rights of action (save and except the Estates' rights to object to claims against the Estates) with other items listed below which may overlap not being intended as a limitation on this; (ii) all non-cash assets of the Estates; (iii) all of the Estates' rights or ownership of each asset and entity listed on Exhibit "A" (iv) all of the Estates' claims that the Estates are the rightful owner of each asset or entity listed on Exhibit "A"; (v) all veil piercing, constructive trust, alter ego or other equitable claims with respect to the ownership and rights to each of the assets and entities on Exhibit "A"; (vi) all of the Estates' rights claims and causes of action against Jerod Furr, and each of his entities (other than Debtors), affiliates, relatives, and agents as well as the Realtor Defendants in the currently-pending adversary proceeding connected to this case; and (vii) 100% of the equity[1] in each of the Debtors. The purchase price is $325,000.00.

4. The Trustee retains the right to object to any claims against the Estate; provided that no objection will be made that will have the effect of diminishing Etter's rights under this agreement.

5. For the avoidance of doubt, except for the amounts explicitly set forth in this agreement, Etter will not participate in any distributions to be made under the Plan.

6. The Plan will not provide any releases or discharges of any person or entity except as explicitly provided in this Agreement.

7. The Trustee and Etter makes no representations to the other regarding any assets being transferred under the Plan. All assets are sold as is, where is.

---

[1] All existing equity will be canceled under the Plan, but for clarity, rights of Etter (or an entity in which Etter is claiming an interest) against any nonsettling persons arising out of an equity interest (i.e. books and records, claims of AEPH against Furr) are not cancelled.

**Exhibit 63**

8. The Trustee and Etter will, promptly upon execution of this agreement, seek a temporary restraining order and injunction to preserve the status quo with respect to the AEPH entity and any related assets, interests, or claims. Etter will draft the documents, subject to the Trustee's approval which shall not be unreasonably withheld, seeking such relief.

9. For clarity and avoidance of doubt, and without limitation, nothing in this Agreement is intended to release Furr, extinguish any claim against Furr, or otherwise run to the benefit of Furr.

SIGNED:

**/s/ Dustin Etter**
Dustin Etter

**/s/ Tom Howley**
Tom Howley, as Trustee

**/s/ William Hotze**
William Hotze, on Behalf of the
Committee of Unsecured Creditors

Exhibit 63

## Exhibit A

AE Partners Holdings, Inc. equity
Alliance Energy Partners, LLC equity
Invictus Drilling Motors, LLC equity
AEP Asset Holdings, LLC equity
Alliance Farm & Ranch, LLC equity
J Parker Construction, LLC equity

Any and all books, records, contracts, QuickBooks/accounting files/records, and other files and/or records, whether physical or digital, of any of the entities listed above, provided that the Trustee and the Committee each retain the right to make copies of any such documents for any reasonable purpose.

Any and all rights to or related to tax refunds, tax credits, tax loses, tax returns, and tax filings of any of the entities listed above, including but not limited to the right to amend tax filings and make tax elections, provided that the Trustee and the Committee each retain the right to make copies of any tax documents of the entities listed above for any reasonable purpose.

Any and all claims to equity in IsoDrill, Inc. which have in any part ever been directly or indirectly paid for, maintained by, or titled to any of the entities listed above, with it being understood for clarity and avoidance of doubt that this Agreement is not intended as a conveyance or other transfer of any equity in IsoDrill, Inc. out of AE Partners Holdings, Inc. absent a separate election to do so by Etter.

Any and all drilling motors, drilling equipment, or other oil & gas-related equipment or inventory which have in any part ever been directly or indirectly paid for, maintained by, or titled to any of the entities listed above.

Any and all automobiles or vehicles which have in any part ever been directly or indirectly paid for, maintained by, or titled to any of the entities listed above, including but not limited to any Mercedes G-Wagon and any Ford truck(s).

Any and all rights with respect to intra-company loans, receivables, debts, or other obligations, whether legal or equitable, between any of the entities listed above.

Any and all patents, copyrights, licenses, or other intellectual property rights which have in any part ever been directly or indirectly paid for or titled to any of the entities listed above.

**Exhibit 63**

Any and all reputational rights which have in any part ever been directly or indirectly paid for or titled to any of the entities listed above.

Any and all proceeds of any of the foregoing to the extent sold, transferred, or encumbered by, at the direction of, through the signature of, or directly or indirectly for the benefit of Jerod Furr.

Any and all claims and rights asserted by any party in any present or former pleading in the matter currently pending as the adversary proceeding with Adversary Case No. 25-03382, including but not limited to any claims asserted in Plaintiff's Ninth Amended Complaint (Doc. 39) and Defendants' Counterclaim and Original Third-Party Petition (Doc. 40) in said matter.

Exhibit 63

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30155 |
| | § | |
| ALLIANCE FARM AND RANCH, LLC, | § | (CHAPTER 11) |
| | § | |
| DEBTOR | § | |
| | § | |
| IN RE: | § | CASE NO. 25-31937 |
| | § | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | (CHAPTER 11) |
| | § | |
| | § | |
| DEBTOR | § | |

**COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN
OF LIQUIDATION OF ALLIANCE FARM AND RANCH, LLC AND ALLIANCE
ENERGY PARTNERS, LLC PROPOSED BY THE CHAPTER 11 TRUSTEE AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: October 2, 2025
Houston, Texas

**HOWLEY LAW, PLLC**
*Attorneys to Tom Howley, as Chapter 11 Trustee*

Eric Terry (State Bar No. 00794729)
Email: eric@howley-law.com
TC Energy Center
700 Louisiana Street, Suite 4220
Houston, Texas 77002
Telephone: (713) 333-9125

**DYKEMA GOSSETT PLLC**
*Attorneys to the Official Committee of Unsecured Creditors*

William Hotze (State Bar No. 24087754)
Email: whotze@dykema.com
Nicholas Zugaro (State Bar No. 24070905)
Email: nzugaro@dykema.com
5 Houston Center
1401 McKinney Street, Suite 1625
Houston, Texas 77010
Telephone: (713) 904-6900

*Exhibit 64*

## TABLE OF CONTENTS

I. EXECUTIVE SUMMARY .................................................................................................... 3

    A.     Introduction............................................................................................................. 3

    B.     Plan Overview......................................................................................................... 3

    C.     Treatment of Claims and Interests Under the Plan. ............................................... 4

II. DEFINITIONS AND CONSTRUCTION OF TERMS ................................................... 7

    A.     Definitions. ............................................................................................................. 7

    B.     Interpretation; Application of Definitions and Rules of Construction............................... 16

III. BACKGROUND ............................................................................................................ 16

    A.     Nature and History of the Debtors' Business. .................................................. 16

    B.     The Debtors' Prepetition Indebtedness............................................................ 17

    C.     Events Leading to the Filing of the Bankruptcy Case. .................................... 17

    D.     The Chapter 11 Cases. ..................................................................................... 18

          1.     Initial Filing and Procedural Background............................................. 18

          2.     Appointment of the Creditors' Committee. ........................................ 18

          3.     Appointment of Chapter 11 Trustee. .................................................. 18

          4.     Employment of Professionals and Advisors. ...................................... 18

          5.     Stay of Pending Litigation. ................................................................. 19

          6.     Claims Process and Bar Date. ............................................................. 19

    7.     Settlement and Transfer of Debtors Assets. ....................................................... 19

    8.     Adversary No. 25-03382. ................................................................................... 19

IV. CONFIRMATION AND VOTING .............................................................................. 20

    A.     Plan Confirmation Hearing. ............................................................................. 20

    B.     Requirements for Plan Confirmation. .............................................................. 20

    C.     Best Interests of the Creditors Test. ................................................................ 21

    D.     Plan Feasibility. ............................................................................................... 21

    E.     Classification of Claims and Interests............................................................. 22

    F.     Impaired Claims or Interests. .......................................................................... 22

    G.     Eligibility to Vote on this Plan. ....................................................................... 22

    H.     Voting Procedure and Deadlines. .................................................................... 23

    I.     Acceptance of this Plan.................................................................................... 24

    J.     Elimination of Vacant Classes. ....................................................................... 24

V. TREATMENT OF UNCLASSIFIED CLAIMS .......................................................... 24

    A.     Administrative Expense Claims........................................................................ 24

Exhibit 64

i

| | B. | Professional Fee Claims | 25 |
| | C. | Priority Tax Claims | 26 |
| VI. | CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES | | 26 |
| VII. | TREATMENT OF CLAIMS AND INTERESTS | | 26 |
| | A. | Classification and Treatment of Claims and Interests. | 26 |
| | | 1. Class 1—Other Priority Claims. | 26 |
| | | 2. Class 2—Other Secured Claims. | 27 |
| | | 3. Class 3—General Unsecured Claims. | 27 |
| | | 4. Class 4—Insider Unsecured Claims | 27 |
| | | 5. Class 5—Equity Interests | 28 |
| VIII. | THE LIQUIDATION OF THE DEBTORS | | 28 |
| IX. | PROVISIONS REGARDING THE LIQUIDATING TRUST | | 28 |
| | A. | Appointment of the Liquidating Trustee | 28 |
| | B. | Creation of the Liquidating Trust. | 29 |
| | C. | Beneficiaries of the Liquidating Trust. | 29 |
| | D. | Vesting and Transfer of Assets to the Liquidating Trust. | 30 |
| | E. | Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee. | 31 |
| | | 1. General Powers of the Liquidating Trustee | 31 |
| | | 2. Books and Records | 32 |
| | | 3. Investments of Cash | 32 |
| | | 4. Costs and Expenses of Administration of the Liquidating Trust | 32 |
| | | 5. Reporting | 32 |
| | F. | Post-Effective Date Notice. | 32 |
| | G. | Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtors. | 33 |
| | H. | Term of Liquidating Trust. | 34 |
| | I. | Limitation of Liability of the Liquidating Trustee. | 34 |
| X. | MEANS FOR IMPLEMENTATION | | 34 |
| | A. | Preservation of Right to Conduct Investigations. | 34 |
| | B. | Prosecution and Resolution of Causes of Action and Avoidance Actions. | 35 |
| | C. | Substantive Consolidation | 35 |
| | D. | Effectuating Documents and Further Transactions | 36 |
| | E. | Funding of Liabilities and Distributions. | 36 |
| | F. | Release of Liens. | 37 |
| | G. | Exemption from Securities Laws. | 37 |

Exhibit 64

| | H. | Exemption from Certain Taxes and Fees. | 37 |
|---|---|---|---|
| | I. | Trustee's Privileges as to Certain Causes of Action. | 37 |
| | J. | Insurance Policies. | 38 |
| | K. | Filing of Monthly and Quarterly Reports and Payment of Statutory Fees. | 38 |
| | L. | Completion of Services of Professionals. | 39 |
| | M. | Operations of the Debtors Between the Confirmation Date and the Effective Date. 39 | |

XI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN .......... 39

| | A. | Distribution Record Date. | 39 |
|---|---|---|---|
| | B. | Method of Payment. | 39 |
| | C. | Claims Objection Deadline. | 39 |
| | D. | No Distribution Pending Allowance. | 40 |
| | E. | Reserve of Cash Distributions. | 40 |
| | F. | Distribution After Allowance. | 40 |
| | G. | Delivery of Distributions. | 40 |
| | H. | Fractional Dollars; *De Minimis* Distributions. | 41 |
| | I. | Excess Funds. | 41 |
| | J. | Unclaimed Distributions. | 41 |
| | K. | Set-Off.41 | |
| | L. | Maximum Recovery and Postpetition Interest. | 41 |
| | M. | Allocation of Distributions Between Principal and Interest. | 42 |
| | N. | Prepayment. | 42 |

XII. EXECUTORY CONTRACTS ................................................................ 42

| | A. | Rejection of Executory Contracts and Unexpired Leases. | 42 |
|---|---|---|---|
| | B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 42 |

XIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................... 43

XIV. RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS .......... 44

| | A. | Releases by the Debtors. | 44 |
|---|---|---|---|
| | B. | Exculpation. | 45 |
| | C. | Injunction | 45 |
| | D. | Preservation of Causes of Action. | 47 |
| | 1. | Vesting of Causes of Action | 47 |
| | 2. | Preservation of All Causes of Action Not Expressly Settled or Released. | 47 |
| | E. | Injunction. | 48 |
| | C. | Termination of All Employee and Workers' Compensation Benefits. | 49 |

Exhibit 64

D.     Exclusions and Limitations on Liability. ............................................................ 49

XV. RETENTION OF JURISDICTION ............................................................................. 50

XVI. MISCELLANEOUS PROVISIONS .......................................................................... 52

    A.     Modification of Plan. ................................................................................. 52

    B.     Revocation of Plan. ................................................................................... 52

    C.     Successors and Assigns. ............................................................................ 52

    D.     Governing Law. ......................................................................................... 52

    E.     Reservation of Rights. ............................................................................... 52

    F.     Effectuating Documents; Further Transactions. ....................................... 53

    G.     Further Assurances. ................................................................................... 53

    H.     Dissolution of the Debtors and Closing of the Chapter 11 Cases. ................... 53

    I.     Dissolution of the Committee. ................................................................... 53

    J.     Discharge of the Trustee. .......................................................................... 53

    K.     Service of Documents. .............................................................................. 54

    L.     Filing of Additional Documents. .............................................................. 54

XVII. RISKS AND OTHER CONSIDERATIONS ............................................................. 54

    A.     Bankruptcy Considerations. ...................................................................... 54

    B.     No Duty to Update Disclosures. ................................................................ 55

    C.     Alternatives to Confirmation and Consummation of the Plan. .................. 55

       1.     Alternate Plan ................................................................................ 55

       2.     Chapter 7 Liquidation or Dismissal .............................................. 55

    D.     Certain Federal Tax Consequences ........................................................... 56

       1.     Federal Income Tax Consequences to the Debtors ....................... 57

       2.     Federal Income Tax Consequences to Holders of Allowed Claims ......... 57

       3.     Federal Income Tax Consequence to Holders of Disputed Claims ......... 60

       4.     Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein ........................................................................ 60

       5.     FATCA ........................................................................................... 63

       6.     Backup Withholding and Information Reporting ........................... 63

XVIII. RECOMMENDATION AND CONCLUSION ........................................................ 65

Exhibit 64

**EXHIBITS**

**Exhibit A:  LIQUIDATION ANALYSIS**

**Exhibit B: FORENSIC REPORT**

Exhibit 64

# DISCLAIMER

This Combined Plan and Disclosure Statement[1] has been prepared in accordance with section 1125 of the Bankruptcy Code, Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure, Rule 3016-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of Texas, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or Entities trading in or otherwise purchasing, selling, or transferring Claims against the Debtors should evaluate this Combined Plan and Disclosure Statement considering the purpose for which it was prepared.

Pursuant to Local Rule 3016-2, this Combined Plan and Disclosure Statement is being submitted for conditional approval only. Contemporaneously with the filing of this Combined Plan and Disclosure Statement, the Debtors are filing a motion to, among other things, schedule a hearing to consider final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

To ensure compliance with IRS circular 230, Holders of Claims and Equity Interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Combined Plan and Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in this Combined Plan and Disclosure Statement except as expressly indicated herein. This Combined Plan and Disclosure Statement was compiled from information obtained from numerous sources believed to be accurate to the best of the Plan Proponents' knowledge, information, and belief. This Combined Plan and Disclosure Statement was not filed with the Securities and Exchange Commission or any state authority and neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy, adequacy, or merits of this Combined Plan and Disclosure Statement. Neither this Combined Plan and Disclosure Statement nor the solicitation of votes to accept or reject the Plan constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

This Combined Plan and Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

---

[1] Referred to herein as the "**Combined Plan and Disclosure Statement**" or the "**Plan**."

**Exhibit 64**

Any projected recoveries to Creditors in this Combined Plan and Disclosure Statement are based upon the analyses performed by the Plan Proponents and their advisors. Although the Plan Proponents and their advisors have made every effort to verify the accuracy of the information presented herein, the Plan Proponents and its advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving the Plan Proponents or any other party. The statements contained herein are made as of the date hereof unless another time is specified. The delivery of this Combined Plan and Disclosure Statement shall not be deemed or construed to create any implication that the information contained herein is correct at any time after the date hereof.

It is the Plan Proponents' opinion that the treatment of Creditors under the Plan contemplates a greater recovery for Creditors than that which is likely to be achieved under other alternatives for the Debtors.  Accordingly, the Plan Proponents believe that confirmation of the Plan is in the best interests of Creditors and recommend that all Holders of Claims whose votes are being solicited to vote to accept the Plan.

Exhibit 64

# I. EXECUTIVE SUMMARY[2]

## A. Introduction.

Tom A. Howley, as chapter 11 Trustee for the Debtors in the above-captioned Chapter 11 Cases, and the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC ("**AFR**") and Alliance Energy Partners, LLC ("**AEP**") hereby propose this Combined Plan and Disclosure Statement, as may be further amended from time to time, for the full and final resolution of outstanding claims against and interests in the Debtors.

The Plan contemplates a liquidation of the Debtors and their Estates. The primary objective of the Plan is to maximize the value of recoveries to all Holders of Allowed Claims and to distribute all property of the Estate that is or becomes available for distribution generally in accordance with the priorities established by the Bankruptcy Code. The Plan Proponents believe that the Plan accomplishes this objective and is in the best interest of the Estate and therefore seek to confirm the Plan.

Pursuant to prior orders of the Bankruptcy Court, the Trustee on behalf of the Debtors settled ongoing litigation with Darla and Erik Ostrander (the "**Ostranders**"). In exchange for a release and to end ongoing litigation, the Ostranders agreed to pay $1,500,000 to the Trustee and received releases.

The Plan contemplates the creation of a liquidating trust to liquidate and administer substantially all remaining property of the Debtors, including certain assets, as well as Claims and Causes of Action, not sold, transferred or otherwise waived or released before the Effective Date.

As set forth in greater detail below, the Plan provides for the liquidation of the Debtors and payment, or other satisfaction, as described below, on or after the Effective Date, with respect to allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, and General Unsecured Claims.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVI.A of this Combined Plan and Disclosure Statement, the Plan Proponents expressly reserve the right to alter, amend, or modify this Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times before substantial consummation thereof.

## B. Plan Overview.

The following is a brief overview of certain material provisions of the Plan. This overview is qualified by reference to the provisions of the Combined Plan and Disclosure Statement, and the exhibits thereto, as may be further amended from time to time. If any inconsistency or conflict

---

[2] Capitalized terms used but not defined in this section shall have the meaning ascribed to them in Section II herein. While this Executive Summary is believed to be accurate, in the event of an inconsistency or conflict between this summary and the more complete terms set forth in other sections of this Combined Plan and Disclosure Statement, those other sections shall control over the Executive Summary.

**Exhibit 64**

exists between this summary and the terms contained herein, the terms contained herein will control.  The Plan is a plan for the liquidation of the Debtors and their Estates.

As discussed herein, the AFR and AEP Debtors will be substantively consolidated under the Plan based on numerous facts including (i) all the non-Insider creditors dealt with the entities as a single economic unit and did not rely on their separate identify in extending credit; (ii) AFR has no non-Insider creditors; and (iii) the affairs of the Debtors are so entangled that consolidation would benefit all creditors.  Additionally, and most importantly, AFR owes all of the money it is holding to AEP based on (i) admissions by Furr that the money held by AFR should go back to AEP and the real creditors; (ii) allegations by Etter that AFR was being used as an instrumentality of fraud; and (iii) the Forensic Report demonstrating the flow of money from AEP to AFR.

The Plan contemplates the creation of a Liquidating Trust on the Effective Date for the purposes of effectuating the liquidation of the Liquidating Trust Assets and distributing the proceeds of the Liquidating Trust to the Beneficiaries of the Liquidating Trust, which Liquidating Trust shall issue Liquidating Trust Units, as described in this Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be managed by a Liquidating Trustee in accordance with the Liquidating Trust Agreement and who shall be selected by the Committee and the Trustee. The primary purpose of the Liquidating Trust and its Liquidating Trustee shall be: (i) administering, monetizing and liquidating the Liquidating Trust Assets, (ii) resolving all Disputed Claims and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Assets shall primarily consist of the Liquidating Trust Funding Amount and the Liquidating Trust Causes of Action, among other things.

Following the Effective Date of the Plan, the Liquidating Trustee will be responsible for all payments and distributions to be made under the Plan to the Holders of Allowed Claims. Each executory contract and unexpired lease to which the Debtors are a party shall be deemed rejected unless (a) otherwise provided herein or in the Plan Supplement or (b) the Debtors expressly assume and assign such agreements before the Effective Date.

## C.     Treatment of Claims and Interests Under the Plan.

Each Holder of a Claim against the Debtors that is entitled to vote to accept or reject the Plan should read this Combined Plan and Disclosure Statement in its entirety before voting. No solicitation of votes to accept or reject this Plan may be made except pursuant to the terms hereof and Bankruptcy Code section 1125. If you are entitled to vote on the Plan, you are receiving a Ballot with your notice of this Combined Plan and Disclosure Statement. The Plan Proponents strongly urge you to vote to accept the Plan.

The following chart provides a summary of the anticipated recovery to Holders of Claims and Equity Interests under the Plan. Any estimates of Claims or Equity Interests in this Plan may vary from the final amounts allowed by the Bankruptcy Court. Your ability to receive Distributions under the Plan depends on the Plan Proponents' ability to obtain Confirmation and meet the conditions necessary to consummate the Plan.

**Exhibit 64**

4

Except to the extent that a Holder of an Allowed Claim or Allowed Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, each Holder of an Allowed Claim or Allowed Equity Interest shall receive under the Plan the treatment described below in full and final satisfaction of such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Equity Interest shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

As explained more fully in Sections VI and VII of this Combined Plan and Disclosure Statement,[3] the Plan provides for the creation of a Liquidating Trust. Liquidating Trust Units shall receive Distributions from the liquidation of certain identified assets. The classification and Distribution scheme proposed under the Plan is as follows:

| Class | Description | Estimated Recovery | Treatment | Entitled to Vote? |
|---|---|---|---|---|
| 1 | Other Priority Claims | 100% | Unimpaired. Each Holder of an Allowed Other Priority Claim shall receive in full and final satisfaction of such Holder's Allowed Claim: (i) Cash in an amount equal to such Allowed Other Priority Claim on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | No. Deemed to accept. |
| 2 | Other Secured Claims | 100% | Unimpaired. On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive or retain, in full and final satisfaction and settlement of such Claim, at the election of the Debtors, except to the extent any Holder of an Allowed Other Secured Claim agrees to different treatment: (i) the Collateral securing such Allowed Other Secured Claim; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Other Secured Claim; or (iii) the | No. Deemed to accept. |

---

[3] To the extent that the terms of this summary conflict with the terms of Sections VI and VII of this Combined Plan and Disclosure Statement, the terms of Sections VI and VII shall control.

Exhibit 64

| | | | treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired. | |
|---|---|---|---|---|
| 3 | General Unsecured Claims | 30%[4] | Impaired. In full and final satisfaction of each Allowed General Unsecured Claim, the Holder of such Claim shall receive its Pro Rata Share of the Liquidating Trust Units. | Yes. |
| 4 | Insider Unsecured Claims | 0% | Impaired. In full and final satisfaction of each Allowed Insider Unsecured Claim, the Holder of such Claim shall receive its Pro Rata Share of any proceeds from the Liquidating Trust Units available after the complete satisfaction of Allowed General Unsecured Claims. | No. Deemed to reject. |
| 5 | Equity Interests | 0% | Impaired. On the Effective Date, all Equity Interests will be deemed cancelled and extinguished. Holders of Equity Interests will receive no property or Distribution under the Plan on account of such Interests. | No. Deemed to reject. |

Holders of Claims in Classes 1 and 2 are unimpaired under the Plan and are thus deemed to accept the Plan. Holders of Allowed Insider Unsecured Claims and Equity Interests in Classes 4 and 5, respectively, will likely receive no Distribution on account of such Allowed Insider Unsecured Claims or Equity Interests under the Plan and are thus deemed to reject the Plan. Holders of Claims in Class 3 are impaired under the Plan and are the only Holders of Claims entitled to vote to accept or reject the Plan.

Separate classification of Insider Unsecured Claims is warranted because the claimants in this class (i) are Insiders; and/or (ii) are asserting estate claims; and/or (iii) are subject to an objection that, as a threshold matter, demonstrates the asserted claims in Class 4 by Etter and Furr must be recharacterized or equitably subordinated; and/or (iv) are asserting double derivative claims on behalf of their equity ownership in a non-debtor.

---

[4] This represents the recovery out of the estimated remaining cash in the Estates on the Plan Effective Date. General Unsecured Claims will also be entitled to their Pro Rata Share of the value obtained by the Liquidating Trust from the monetization of the Debtors' remaining assets and causes of action. At this time, the Plan Proponents are unable to accurately estimate the amount of this additional recovery.

Exhibit 64

Insiders are not allowed to vote on the plan because they are deemed to reject and they are subject to section 1129(a)(10). Furr and Etter are Insiders of AEP. AEP and AFR are properly being substantively consolidated pursuant to this Plan.

TO THE EXTENT NECESSARY, THIS PLAN CONTAINS THIS OBJECTION TO THE CLAIMS BY FURR, ETTER, AND THEIR RELATED ENTITIES, FILED AT CLAIM NOS. 2, 3, 10, 11, 12, AND 13 IN THE ABOVE CAPTIONED JOINTLY ADMINISTERED CLAIM REGISTER AND CLAIM NO. 12 IN THE CLAIMS REGISTER MAINTAINED IN THE AEP DEBTOR CHAPTER 11 CASE (COLLECTIVELY, THE "**FURR AND ETTER CLAIMS**"). WITH FULL RESERVATION FOR FURTHER OBJECTION, PLAN PROPONENTS REQUEST A FINDING BY THIS COURT THAT THE FURR AND ETTER CLAIMS SHALL BE (I) RECHARACTERIZED AS EQUITY; AND/OR (II) EQUITABLY SUBORDINATED.

## II. <u>DEFINITIONS AND CONSTRUCTION OF TERMS</u>

### A. <u>Definitions.</u>

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.     "<u>**Administrative Expense Claim**</u>" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims. For the avoidance of doubt, pursuant to Local Rule 3002-1, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

2.     "<u>**Administrative Expense Claim Bar Date**</u>" means [•][5] at 5:00 p.m. (prevailing Central Time), the deadline for filing requests for allowance and payment of Administrative Expense Claims established by order of the Bankruptcy Court.

3.     "<u>**Administrative Expense and Priority Escrow Account**</u>" means an interest-bearing escrow account established and funded by the Debtors as soon as reasonably practicable after the Plan Confirmation Date and no later than the Effective Date solely for the purpose of paying all Allowed Administrative Expense Claims, Other Priority Claims and Priority Tax Claims, to the extent such Claims have not been paid in full on or before the Effective Date.

4.     "<u>**Allowed**</u>" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan,

---

[5] This Administrative Expense Claim Bar Date will be amended to identify the date certain in the Plan Supplement.

Exhibit 64

the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreement; provided that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or through an agreement between the claimant and the Liquidating Trustee. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Combined Plan and Disclosure Statement pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

5.  "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

6.  "**Available Trust Cash**" means proceeds of the Liquidating Trust's Assets that are available for distribution to holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

7.  "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estate under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

8.  "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

9.  "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

10.  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

11.  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

12.  "**Beneficiaries**" or "**Beneficial Interests**" means holders of or beneficial interests of Liquidating Trust Units.

<div align="right">Exhibit 64</div>

13.     "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

14.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

15.     "**Causes of Action**" means all claims, actions (including the Avoidance Actions), causes of action (including commercial tort claims), choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of the Debtors and/or their Estates against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

16.     "**Chapter 11 Cases**" means the Debtors' bankruptcy cases commenced by the filing of voluntary petition for relief for Alliance Farm and Ranch, LLC on January 7, 2025 under chapter 7 the Bankruptcy Code, Case No.  25-30155, which was converted to a case under Chapter 11 of the Bankruptcy Code on March 19, 2025 currently pending in the Bankruptcy Court and the filing of a voluntary petition for relief for Alliance Energy Partners, LLC on April 7, 2025 under chapter 11 of the Bankruptcy Code, Case No. 25-319, each of which are jointly administered under Case No. 25-30155 as of April 23, 2025.

17.     "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

18.     "**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion.

19.     "**Class**" means any group of substantially similar Claims or Equity Interests classified by this Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

20.     "**Clerk**" means the clerk of the Bankruptcy Court.

21.     "**Collateral**" means any property or interest in property of the Estates of the Debtors subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

22.     "**Combined Plan and Disclosure Statement**" or "**Plan**" means this *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Trustee and the Official Committee of Unsecured Creditors*, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof, including the Plan Supplement.

23.     "**Creditors' Committee**" or "**Committee**" means the Official Committee of Unsecured Creditors of the Debtors, appointed in the Chapter 11 Cases by the United States Trustee on May 12, 2025, as such membership may be amended.

Exhibit 64

9

24. "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

25. "**Debtors**" collectively means Alliance Farm and Ranch, LLC ("**AFR**") and Alliance Energy Partners, LLC ("**AEP**") in the Chapter 11 Cases.

26. "**Debtor-in-Possession**" means the Debtors in their capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code through and until the date of appointment of the Trustee on May 23, 2025.

27. "**Disputed Claim**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order or compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreement.

28. "**Disputed Claims Reserve**" means the reserve established by the Liquidating Trustee for the benefit of Holders of Disputed Claims. Any such reserve shall be made from the Liquidating Trust Assets.

29. "**Distribution**" means any distribution to Holders of Allowed Claims, or their designated agents, Liquidating Trust Beneficiaries under or pursuant to this Plan and/or the Liquidating Trust Agreement.

30. "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

31. "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

32. "**Effective Date**" means the date on which the conditions specified in Section XIII of this Plan have been satisfied or waived in accordance with the terms hereof and the transactions contemplated hereunder have been consummated. The Debtors shall file a Notice of Effective Date (as defined below) on the Docket indicating the calendar date which corresponds to the Effective Date.

33. "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

34. "**Equity Interest**" means any equity interest in the Debtors.

35. "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

36. "**Exculpated Parties**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Trustee, and (iii) the Committee and its members in their capacities as members of the Committee. For the avoidance of doubt the Debtors' prepetition officers, directors, affiliates, Insiders, and shareholders are not Exculpated Parties.

Exhibit 64

37.     "**Exculpation Timeframe**" means the period from the Petition Date through and including the Effective Date.

38.     "**Executory Contract**" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, as of the Petition Date between the Debtors and any Entity.

39.     "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

40.     "**General Bar Date**" means July 25, 2025, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of Claim against any Debtor for a Claim that arose prior to the Petition Date.

41.     "**General Unsecured Claim**" means any Claim against any Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Other Secured Claim but includes (a) any Claim arising from the rejection of an executory contract under section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code, or (ii) otherwise determined by the Bankruptcy Court to be a general unsecured Claim.

42.     "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

43.     "**Governmental Unit Bar Date**" means November 3, 2025, the deadline for Governmental Units to file a proof of Claim against any Debtor for a Claim that arose prior to the Petition Date.

44.     "**Holder**" means the legal or beneficial holder of any Claim or Equity Interest.

45.     "**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

46.     "**Insider**" means any director, officer, person in control, or general partner of any of the Debtors, as well as any other individual or entity that is an "insider" as defined in section 101(31) of the Bankruptcy Code. For the avoidance of doubt, Dustin Etter ("**Etter**") and Jerrod Furr ("**Furr**") are Insiders.

**Exhibit 64**

11

47.     "**Insider Unsecured Claim**" means a General Unsecured Claim that is asserted by an Insider.  The Insider Unsecured Claims are subject to the Objection in this Plan demonstrating that they shall either (i) be recharacterized as equity; and/or (ii) be equitably subordinated.

48.     "**Insurance Policies**" means all insurance policies of the Debtors, including any director and officer liability policies.

49.     "**IRS**" means the Internal Revenue Service.

50.     "**Lawsuit**" means the lawsuit styled *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Case No. 25-01-00068 in the 284th Judicial District Court of Montgomery County.

51.     "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

52.     "**Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

53.     "**Liquidating Trust Advisors**" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Liquidating Trustee's duties and responsibilities under this Plan and a Liquidating Trust Agreement.

54.     "**Liquidating Trust Agreement**" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

55.     "**Liquidating Trust Assets**" means (i) the Liquidating Trust Funding Amount, (ii) the Liquidating Trust Causes of Action, and (iii) all other Assets of the Debtors and their Estates as of the Effective Date, excluding Assets previously distributed and not otherwise subject to recovery. For the avoidance of doubt, the Liquidating Trust Assets exclude funds in the Professional Fee Escrow Account and the Administrative Expense and Priority Escrow Account.

56.     "**Liquidating Trust Causes of Action**" means all Causes of Action held or owned by the Debtors' Estate immediately prior to the Effective Date (whether asserted directly or derivatively) against all parties, *provided that* the Liquidating Trust Causes of Action exclude any Claims or Causes of Action released or exculpated as provided in the Plan, including pursuant to Section XIV of the Plan. The Liquidating Trust Causes of Action shall include all Preserved Causes of Action.

57.     "**Liquidating Trust Funding Amount**" means $250,000 of Cash which shall be contributed to the Liquidating Trust by the Debtors on the Effective Date for the administration of the Liquidating Trust.

58.     "**Liquidating Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to: (i) reasonable compensation for

Exhibit 64

the Liquidating Trustee in accordance with the Liquidating Trust Agreement, (ii) costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (iii) Statutory Fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

59.     "**Liquidating Trust Recoveries**" means the recoveries from the Liquidating Trust on account of any proceeds from the liquidation of any Assets of the Debtors and their Estate not sold, transferred or otherwise waived or released prior to the Effective Date.

60.     "**Liquidating Trust Units**" means beneficial interests in the Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions of Liquidating Trust Recoveries.

61.     "**Liquidating Trustee**" means the person or Entity identified in the Liquidating Trust Agreement and selected by the Committee and the Trustee, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement.

62.     "**Local Rules**" means the of Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas, as amended from time to time.

63.     "**Notice of Effective Date**" means a notice to be filed with the Bankruptcy Court by the Debtors upon the occurrence of all the conditions precedent to the Effective Date set forth in Section XIII of this Combined Plan and Disclosure Statement.

64.     "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the Docket.

65.     "**Other Priority Claim**" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

66.     "**Other Secured Claims**" means Claims (or portions thereof) that are secured by a lien on property in which any of the Debtors' Estates has an interest, which liens are valid, perfected and enforceable under applicable law.

67.     "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

68.     "**Petition Date**" means January 7, 2025, the date on which Alliance Farm and Ranch, LLC commenced its Chapter 11 Case and April 9, 2025, the date on which Alliance Energy Partners, LLC commenced its Chapter 11 Case.

69.     "**Plan Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the Docket.

70.     "**Plan Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Combined Plan and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

Exhibit 64

71. "**Plan Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code, which order shall be in form and substance acceptable to the Prepetition Agents.

72. "**Plan Documents**" means this Combined Plan and Disclosure Statement, the Plan Supplement, and all exhibits and schedules attached to any of the foregoing.

73. "**Plan Proponents**" means the Trustee and the Committee, collectively.

74. "**Plan Supplement**" means the appendix of any schedules or exhibits that may be filed at least five (5) days prior to the deadline for submission of Ballots to vote to accept or reject a plan. The Plan Supplement will be filed with the Bankruptcy Court and served on the required notice parties.

75. "**Preserved Claims and Causes of Action**" means the Claims and Causes of Action that shall be preserved and vest in the Liquidating Trust in accordance with the Plan and shall be identified in a schedule attached to the Plan Supplement. The Preserved Claims and Causes of Action include but are not limited to: (i) Claims or Causes of Action to avoid and recover preferential transfers pursuant to Bankruptcy Code section 547 and other avoidance actions under Chapter 5 of the Bankruptcy Code, (ii) Claims or Causes of Action against present and former shareholders, officers, directors, affiliates and other insiders of the Debtors or their affiliates, (iii) Claims or Causes of Action against any contractors, vendors, suppliers or other third parties relating to work performed on the Debtors' Assets or good or services provided to the Debtors, including Claims or Causes of Action relating to breach of contract or arising under any warranty obligations, (iv) Claims or Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which the Debtors are a party or pursuant to which the Debtors have any rights whatsoever, including any failure to provide insurance coverage and bad faith insurance claims; and (v) all remaining Liquidating Trust Causes of Action.

76. "**Priority Amounts**" means as of the Effective Date, the amount of all Allowed Administrative Expense Claims (other than Professional Fee Claims), Priority Tax Claims, and Other Priority Claims, or such other amount as may be determined by Final Order of the Court.

77. "**Priority Tax Claim**" means an unsecured Claim, or a portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

78. "**Privilege**" means the attorney client privilege, work product protections or other immunities (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by the Debtors or their Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

79. "**Professional**" means any professional person employed by the Debtors or the Committee in the Chapter 11 Cases pursuant to sections 327, 363, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

Exhibit 64

80.    "**Professional Fee Claim**" means a Claim under Bankruptcy Code Sections 328, 330(a), 331, or 503 for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

81.    "**Professional Fee Escrow Account**" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Plan Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed and unpaid Professional Fee Claims. Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

82.    "**Professional Fee Escrow Amount**" means the aggregate unpaid Professional Fee Claims through the Effective Date plus such reasonable fees estimated to be incurred by Professionals in connection with seeking approval of final fee applications as estimated in accordance with Section V.B.

83.    "**Property**" means the property located at 5450 Honea Egypt Rd., Montgomery, Texas 77316.

84.    "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim.

85.    "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

86.    "**Released Party**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Trustee, (iii) the Committee, and (iv) the professionals and advisors of the foregoing parties.  For the avoidance of doubt the Debtors' prepetition officers, directors, affiliates, Insiders, and shareholders are not a Released Party.

87.    "**Settlement Order**" means the *Order (I) Approving Global Settlement Between Debtors and Erik and Darla Ostrander and, (II) Granting Related Relief*, entered by the Bankruptcy Court on June 3, 2025, 2021 [Doc No. 128] which settled the Lawsuit.

88.    "**Settlement Proceeds**" means the net proceeds paid to the Estate pursuant to the Settlement Order held by the Trustee.

89.    "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

90.    "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

91.    "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

Exhibit 64

92.     "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

93.     "**Unclaimed Distribution Deadline**" means three (3) months from the date the Liquidating Trustee makes a Distribution.

94.     "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Texas.

95.     "**Voting Deadline**" means [•],[6] 2025, at 5:00 p.m. (prevailing Central Time).

96.     "**Voting Procedures**" means the plan voting procedures approved by the Bankruptcy Court.

### B.      Interpretation; Application of Definitions and Rules of Construction.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in this Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to this Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

### III.  BACKGROUND

### A.      Nature and History of the Debtors' Business.

On or around March 23, 2022, Furr formed the AFR Debtor, an entity wholly owned by Furr.

On or April 15, 2022, Etter and Furr (collectively, the "**Prepetition Insiders**") were both the direct owners of the AEP Debtor. On or around April 15, 2022, allegedly for tax purposes to

---

[6] The Voting Deadline will be identified in the Voting Procedures and will be amended in this Plan to identify the date certain in the Plan Supplement.

16

Exhibit 64

restructure the business, the Prepetition Insiders formed new entities (i) AE Partners Holdings, Inc ("**Parent**"), as a parent company wholly owning AEP; (ii) AEP Asset Holdings, LLC ("**Holdings**"), a wholly owned subsidiary of Parent; and (iii) Invictus Drilling Motors, LLC ("**Invictus**"), a wholly owned subsidiary of Parent. Parent, Holdings, and Invictus are collectively referred to herein as "Non-Debtor Insider Entities"

As demonstrated by the *Forensic Report* attached hereto as Exhibit B (as revised, supplemented, and amended, the "**Forensic Report**")**,** from the period between January 2022 through and including April 2025, AEP transferred significant monies and property to the Non-Debtor Insider Entities, other non-debtor insider entities, and AFR.

The Bar Date has passed. There are non-Insider claims asserted against AEP in the approximate amount of 2.5 million dollars. There are NO non-Insider claims asserted against AFR. To the extent that Etter or Furr argue that they are not Insiders, their proofs of claim have been objected to per this Plan.

The information in the Forensic Report is provided for disclosure purposes only. The Trustee is still performing his investigation of claims. The Plan Supplement will comply with Fifth Circuit law to identify the estate causes of action.

Prior to the Petition Date, the AFR Debtor owned a 73 acre ranch located at 5450 Honea Egypt Rd., Montgomery County, Texas 77316. As of the Petition Date, the AFR Debtor had largely ceased operations. As of the Petition Date, the AFR Debtor's assets largely consisted of ranching equipment and livestock, furniture, fixtures, and equipment, oil and gas production related assets, and farming related assets. As demonstrated by the Forensic Report, all the assets of AFR, including the Property, were obtained through transfers from AEP.

Prior to the Petition Date, the AEP Debtor provided downhole drilling and measurement while drilling services to the oil and gas industry. It operated its businesses as a tenant of the AFR Debtor at the Property. As of the Petition Date, the AEP Debtor had ceased operations.

**B.**     **The Debtors' Prepetition Indebtedness.**

The Debtors purport to have an intercompany loan whereby Alliance Farm and Ranch, LLC borrowed $1,000,000 from Alliance Energy Partners, LLC. Prior to the Petition Date, the Ostranders purported to hold a $4,500,000 claim secured by the Property. The Debtors did not have any other secured indebtedness as of the Petition Date. As of the Petition Date, the Debtors valued the Property at $7,400,000.

**C.**     **Events Leading to the Filing of the Bankruptcy Case.**

Just before the Petition Date, the Ostranders foreclosed on the Property. In addition, debtor Alliance Farm and Ranch, LLC filed the Lawsuit on January 3, 2025. These Bankruptcy Cases were initiated to preserve the Debtors' equity in the Property and to orderly wind down the Debtors' estates.

Exhibit 64

D.     **The Chapter 11 Cases.**

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

1.     **Initial Filing and Procedural Background.**

Debtor Alliance Farm and Ranch, LLC, filed its chapter 7 petition on January 7, 2025.  The case was relatively inactive until March 2025 when Alliance Farm and Ranch, LLC filed a motion to convert its case to a case under chapter 11.  The case was converted to a case under Chapter 11 of the Bankruptcy Code on March 19, 2025.  On April 7, 2025, Alliance Energy Partners, LLC filed a voluntary petition for relief.  The Debtors' cases are now jointly administered.

2.     **Appointment of the Creditors' Committee.**

On May 12, 2025, the Office of the United States Trustee for Region 7 appointed the Official Committee of Unsecured Creditors, consisting of the following members: (i) Gordon Technologies, LLC; and (ii) DrilTech, LLC [Doc No. 77].

3.     **Appointment of Chapter 11 Trustee.**

The Debtors sought to enter into a settlement agreement with the Ostranders that purported to settle all claims and counterclaims in the Lawsuit.  The result of the purported settlement would have allowed the sale of the Property and the transfer of proceeds directly to Jerod Furr.  This transaction would result in at least $1,000,000 of property of the Debtors' Estates to be transferred to a third party without permission from the Bankruptcy Court and without input from any other constituencies in these Bankruptcy Cases.

When the Committee discovered the proposed settlement, it filed a Motion to Appoint a Chapter 11 Trustee [Doc. No. 98].  The Court held a hearing and entered an order appointing a chapter 11 trustee on May 23, 2025.  Tom Howley was appointed as the chapter 11 trustee in these Bankruptcy Cases.

4.     **Employment of Professionals and Advisors.**

Prior to the Trustee's appointment, the Bankruptcy Court approved the Alliance Farm and Ranch, LLC Debtor's retention of Okin, Adams, Bartlett and Curry, LLP as legal counsel.  On May 23, 2025, the Bankruptcy Court entered an order allowing Okin Adams to withdraw as Debtors' counsel.  [Doc. No. 111]. On July 16, 2025, the Bankruptcy Court entered an agreed order approving the retention by the Alliance Energy Partners, LLC Debtor of Okin, Adams, Bartlett and Curry, LLP as legal counsel. [Doc. No. 165].

The Official Committee of Unsecured Creditors sought Bankruptcy Court approval of the employment of Dykema Gossett, PLLC, as counsel for the Committee.  Dykema's employment was approved by the Bankruptcy Court on July 7, 2025 [Doc. No. 154].

**Exhibit 64**

After appointment, the Trustee applied to employ Howley Law PLLC as Trustee's counsel. The Bankruptcy Court approved retention on July 11, 2025. [Doc. No. 158].

**5.      Stay of Pending Litigation.**

As set forth in the Schedules, as of the Petition Date, the Debtors were party to certain investigations, claims, or lawsuits.  The automatic stay under section 362(a) of the Bankruptcy Code had the immediate effect of halting such actions against the Debtors, allowing the Debtors to save money that would otherwise have been used on legal expenses.  The automatic stay does not stay the pursuit of governmental police and regulatory actions based on an exception in Section 362(b)(4) of the Bankruptcy Code.

**6.      Claims Process and Bar Date.**

   **a.      Schedules and Statements.** On April 4, 2025, the Alliance Farm and Ranch, LLC Debtor filed its Statement of Financial Affairs and Schedules with the Bankruptcy Court. On April 7, 2025, the Alliance Energy Partners, LLC Debtor filed its Schedules. On July 14, 2025, the Alliance Energy Partners, LLC Debtor filed its Statement of Financial Affairs. After appointment of the Trustee, The U.S. Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on June 16, 2025, June 25, 2025, and July 18, 2025.

   **b.      Bar Dates.**   The General Bar Date occurred on July 25, 2025; the Governmental Unit Bar Date is October 10, 2023.

   **c.      Administrative Expense Claims Bar Date**. The Administrative Expense Claims Bar Date is [•][7] at 5:00 p.m. (prevailing Central Time).

**7.      Settlement and Transfer of Debtors Assets.**

On June 3, 2025, the Bankruptcy Court entered the Settlement Order.  The Settlement completed the process of transferring the Property.  In exchange for mutual releases, the Alliance Farm and Ranch, LLC Debtor received $1,500,000.  The Trustee now holds such funds in trust and seeks to use this Combined Plan and Disclosure Statement to distribute such funds in an orderly manner.

**8.      Adversary No. 25-03382.**

This adversary ("Adversary") involves claims by the Insiders that are either (i) claims against the Debtors; and/or (ii) claims of the estate; and/or (iii) claims that overlap with (i) and (ii). The claims against the Debtors shall be treated according to the Plan under Class 4 after the claims resolution process contemplated by this Plan.  The estate claims will be reserved properly in the Plan Supplement and prosecuted for the benefit of Class 3 pursuant to this Plan.  The parties to the Adversary and the Trustee entered into an Agreed Injunction, which stays all actions in the Adversary and prevents any sale/transfer of the assets held by the Non-Debtor Insider Entities.

---

[7]The Administrative Expense Claims Bar Date will be amended to identify the date certain in the Plan Supplement.

Exhibit 64

# IV.  CONFIRMATION AND VOTING

## A.  Plan Confirmation Hearing.

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and confirmation of this Combined Plan and Disclosure Statement. On _____ __, 2025, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for _____ ___, **2025 at _:_0 _.m. (prevailing Central Time)**, to consider, among other things, final approval and confirmation of this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code [Doc No. ____]. Notice of the Plan Confirmation Hearing will be provided to all known Creditors, Holders of Equity Interests, and other parties in interest. The Plan Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Plan Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to confirmation of this Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against the Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than _____ __, **2025 at _:_0 p.m. (prevailing Central Time)** through the CM/ECF system, with courtesy copies by email: (i) Counsel to the Trustee at the contact information on the first page of this Plan; (ii) Counsel to the Committee at the contact information on the first page of this Plan; (iii) the Office of the United States Trustee for Region 7; and (iv) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to approval and confirmation of this Combined Plan and Disclosure Statement. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE AND CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

## B.  Requirements for Plan Confirmation.

The Bankruptcy Court will confirm this Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases is that this Plan be (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that this Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible.  The Bankruptcy Court must also find, among other things, that:

      a.      this Plan has classified Claims and Equity Interests in a permissible manner;

      b.      this Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

Exhibit 64

20

          c.       this Plan has been proposed in good faith.

**C.**      **Best Interests of the Creditors Test.**

      The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

      The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating the Debtors' Estates would include the expenses incurred during the Chapter 11 Cases and allowed by the Bankruptcy Court in the chapter 7 case. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims. Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals, but unlike a chapter 7 trustee's professionals, the Bankruptcy Court does not need to approve the retention of such professionals, or their fees. The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with potential additional costs to the Estate and with a delay compared to the timing of Distributions under the Plan. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions. Accordingly, a portion of the Cash that will be available for Distribution to Holders of Allowed Claims would instead be paid to the chapter 7 trustee. Notwithstanding, like the chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

      Accordingly, as demonstrated in the liquidation analysis, the Debtors believe that in a chapter 7 liquidation, Holders of Claims would receive less than such Holders would receive under this Plan. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Plan Proponent's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

**D.**      **Plan Feasibility.**

      Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, the Debtors' remaining assets will be transferred to the Liquidating Trust. These Assets will be liquidated and distributed to Holders of Allowed Claims pursuant to the terms of this Plan. Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of this Plan will not be followed by liquidation or the need for any further reorganization.

**Exhibit 64**

E.    **Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code requires a plan to place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. This Plan creates separate Classes to treat the Other Priority Claims, Other Secured Claims, General Unsecured Claims, and Equity Interests of the Debtors. The Plan Proponents believe that the Plan's classification scheme places substantially similar Claims or Equity Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and Equity Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believes that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Equity Interests. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Equity Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

F.    **Impaired Claims or Interests.**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under this Plan may vote on this Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the Holders of such Claims or Equity Interests treated in such Class. The Holders of Claims or Equity Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The Holders of Claims or Equity Interests in any Class that will not receive any Distribution or retain any property pursuant to this Plan are deemed to reject this Plan and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3.**

G.    **Eligibility to Vote on this Plan.**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Class 3, may vote on this Plan. To vote on this Plan, you must hold an Allowed Claim in Class 3 or be the Holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

Exhibit 64

## H.    Voting Procedure and Deadlines.

For your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot to the Balloting Agent at one of the following addresses: (i) if by First Class mail, Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, c/o Howley Law, PLLC, Attn: Tom A. Howley, TC Energy Center, 700 Louisiana Street, Suite 4545, Houston, Texas 77002; or (ii) if by hand delivery or overnight delivery, Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, c/o Howley Law, PLLC, Attn: Tom A. Howley, TC Energy Center, 700 Louisiana Street, Suite 4545, Houston, Texas 77002.

The Trustee must **RECEIVE** original ballots on or before _____ __, **2025 at _:_0 _.m. (prevailing Central Time)**. Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Trustee.

Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of this Plan will be counted and cast as an acceptance or rejection, as the case may be, of this Plan.

The following Tabulation Rules will be utilized for tabulating the Ballots in determining whether this Plan has been accepted or rejected by the Class in which such Holder holds a Claim or Equity Interest:

a.    any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan. Except as otherwise ordered by the Bankruptcy Court, a claimant may not change its vote once a Ballot is submitted to the Trustee;

b.    any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

c.    any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

d.    any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no 3018(a) Motion has been filed by the 3018(a) Motion Deadline will not be counted;

e.    any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted;

f.    any Ballot received by the Trustee after the Voting Deadline will not be counted;

g.    any Ballot not bearing an original signature will not be counted; and

Exhibit 64

h. any Ballot received by the Trustee by facsimile, e-mail or other electronic communication will not be counted.

## I. Acceptance of this Plan.

As a Creditor, your acceptance of this Plan is important. For this Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept this Plan. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept this Plan. The Plan Proponents strongly urge that you vote to accept this Plan but you are not required to accept it and failure to accept will not preclude you from receiving a Distribution under this Plan to which you are entitled. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT OR SUBMIT A BALLOT VIA THE BMC ELECTRONIC BALLOTING SERVICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR AND, IF SUBMITTING A PHYSICAL BALLOT, INCLUDE AN ORIGINAL SIGNATURE ON THE BALLOT.**

## J. Elimination of Vacant Classes.

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## V. TREATMENT OF UNCLASSIFIED CLAIMS

## A. Administrative Expense Claims.

Unless otherwise agreed by the Holder of an Administrative Expense Claim and the Debtors or the Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash by the Debtors or Liquidating Trust, as applicable: (a) if Allowed, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter, but in no event later than 30 days after such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, no later than the Administrative Expense Claim Bar Date. Any such Claim

Exhibit 64

not filed by such deadline shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

## B.     **Professional Fee Claims.**

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, the Debtors, or the Liquidating Trust, as applicable, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional from the Professional Fee Escrow Account, relating to prior periods and for the period ending on the Effective Date. Each Professional shall estimate its Professional Fee Claims due for periods that have not been billed as of the Effective Date. On or prior to thirty (30) days after service of notice of the Effective Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; provided that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date, without further Bankruptcy Court order. Objections to any Professional Fee Claim must be filed and served on counsel to the Liquidating Trustee and the requesting party no later than twenty-one (21) days after such Professional Fee Claim is filed with the Bankruptcy Court, and served on the parties entitled to service under the Interim Compensation Order. For the avoidance of doubt, to the extent there is any conflict between the terms of the Plan Confirmation Order or this Combined Plan and Disclosure Statement, the Plan Confirmation Order shall govern. Within ten (10) days after entry of a Final Order with respect to its final fee application, each Professional shall remit any overpayment or unused retainer to the Liquidating Trust, and the Liquidating Trust, shall pay any unpaid amounts approved by the Bankruptcy Court to each Professional.

Holders of Professional Fee Claims shall not constitute Beneficiaries of the Liquidating Trust and shall not receive any Distributions from the Liquidating Trust or Liquidating Trust Assets on account of their Professional Fee Claims; _provided, however_, that Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust. For the avoidance of doubt, neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any Professional Fee Claims and shall not be required to satisfy any Professional Fee Claims from any Liquidating Trust Assets.

As soon as is reasonably practicable after the Plan Confirmation Date and no later than the Effective Date, the Trustee shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The sole source of payment of Allowed Professional Fee Claims shall be the amounts held in the Professional Fee Escrow Account. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. The Trustee shall act as escrow agent for the Professional Fee Escrow Account. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. For the avoidance of doubt, any amounts remaining in the Professional Fee Escrow Account after the payment in full of all Allowed Professional Fee Claims shall be transferred to the Liquidating Trust.

Exhibit 64

**C.      Priority Tax Claims.**

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each Holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by the Debtors or, if applicable, the Liquidating Trust, from the Administrative Expense and Priority Escrow Account. For the avoidance of doubt, the sole source of payment of Allowed Priority Tax Claims shall be the amounts held in the Administrative Expense and Priority Escrow Account. Neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any Priority Tax Claims and shall not be required to satisfy any Priority Tax Claims from Liquidating Trust Assets.

## VI.   CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Claims – other than Administrative Expense Claims, Priority Tax Claims, and Statutory Fees – are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Type | Status Under Plan | Voting Status | Recovery Estimate |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | 30%* |
| 4 | Insider Unsecured Claims | Impaired | Deemed to Reject | 0% |
| 5 | Equity Interests | Impaired | Deemed to Reject | 0% |

## VII.   TREATMENT OF CLAIMS AND INTERESTS

**A.      Classification and Treatment of Claims and Interests.**

    **1.      Class 1—Other Priority Claims.**

        a.      *Classification*: Class 1 consists of all Other Priority Claims.

Exhibit 64

b.   *Treatment:* Each Holder of an Allowed Other Priority Claim shall receive in full and final satisfaction of such Holder's Allowed Claim: (i) Cash in an amount equal to such Allowed Claim on the Effective Date or as soon thereafter as is reasonably practicable, or if disputed, as provided elsewhere in the Plan, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

c.   *Voting:* Class 1 is Unimpaired, and Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan.

**2.   Class 2—Other Secured Claims.**

a.   *Classification*: Class 2 consists of Allowed Other Secured Claims.

b.   *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive or retain, in full and final satisfaction and settlement of such Claim, at the election of the Debtors, except to the extent any Holder of an Allowed Other Secured Claim agrees to different treatment: (i) the collateral securing such Allowed Other Secured Claim; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Other Secured Claim; or (iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired.

c.   *Voting*: Class 2 Other Secured Claims is unimpaired; Holders of such Claims are deemed to accept the Plan.

**3.   Class 3—General Unsecured Claims.**

a.   *Classification*: Class 3 consists of all General Unsecured Claims. The Debtors estimate that the amount of General Unsecured Claims is no less than 2.5 million dollars.  .[8]

b.   *Treatment*: In full and final satisfaction of each Allowed General Unsecured Claim, the Holder of such Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Liquidating Trust Units.

c.   *Voting*: Class 3 General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

**4.   Class 4—Insider Unsecured Claims**

a.   *Classification*: Class 4 consists of all Insider Unsecured Claims.

---

[8] The amount of General Unsecured Claims is subject to ongoing review and without prejudice to the rights of the Trustee, the Committee, and the Liquidating Trustee to object to such Claims.

Exhibit 64

b.    *Treatment*: In full and final satisfaction of each Allowed Insider Unsecured Claim, the Holder of such Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Liquidating Trust Units after Allowed General Unsecured Claims are satisfied in full.

c.    *Voting*: Class 4 Insider Unsecured Claims are impaired; Holders of such Insider Unsecured Claims are deemed to have rejected the Plan and are not entitled to vote.

**5.    Class 5—Equity Interests.**

a.    *Classification*: Class 5 consists of all Equity Interests.

b.    *Treatment*: On the Effective Date, all Equity Interests will be deemed cancelled and extinguished. Holders of Equity Interests will receive no property or Distribution under the Plan on account of such Equity Interests.

c.    *Voting*: Class 5 Equity Interests are impaired; Holders of such Equity Interests are deemed to have rejected the Plan and are not entitled to vote.

## VIII.  THE LIQUIDATION OF THE DEBTORS

On and after the Effective Date, the Liquidating Trust and the Liquidating Trustee will, among other things, (i) investigate and, if appropriate, pursue Causes of Action and Avoidance Actions, including the Liquidating Trust Causes of Action, (ii) administer, monetize and liquidate the Liquidating Trust Assets, (iii) resolve all Disputed Claims, if appropriate, and (iv) make all Distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trust and Liquidating Trustee shall be authorized to take such actions without further order of the Bankruptcy Court; *provided, however,* the Liquidating Trustee may seek such Bankruptcy Court authority as the Liquidating Trustee, in its absolute discretion, deems necessary or appropriate. The transfer of the Liquidating Trust Assets attributable to the Beneficiaries of the Liquidating Trust shall be treated as a transfer of such assets directly to such Beneficiaries followed by a contribution of the Liquidating Trust Assets to the Liquidating Trust.

## IX.  PROVISIONS REGARDING THE LIQUIDATING TRUST

### A.  Appointment of the Liquidating Trustee.

The Liquidating Trustee shall be identified in the Plan Supplement and shall be selected by the Committee. All compensation for the Liquidating Trustee, and Liquidating Trust Advisors, shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his/her duties unless otherwise ordered by the Bankruptcy Court. On the Effective Date, all Beneficiaries of the Liquidating Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreement. In the event that the Liquidating Trustee resigns or is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust

*Exhibit 64*

Agreement. Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Plan, the Plan Confirmation Order, and the Liquidating Trust Agreement.

**B.      Creation of the Liquidating Trust.**

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement shall be filed with the Plan Supplement. The Liquidating Trust Agreement is incorporated herein in full and is made a part of this Combined Plan and Disclosure Statement.

Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided, that, prior to the Effective Date, the Trustee, in consultation with the Committee, may take such steps in furtherance of the formation of the Liquidating Trust as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

Except for those Liquidating Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by the Debtors on a Pro Rata share basis to those Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trust, and then contributed by such Holders to the Liquidating Trust in exchange for the Beneficial Interests. All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The Beneficiaries under the Liquidating Trust will be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

**C.      Beneficiaries of the Liquidating Trust.**

On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of Liquidating Trust Units, as provided in Section VII. Holders of Disputed General Unsecured Claims shall be

Exhibit 64

contingent Beneficiaries and funds for their Distribution shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the Debtors, shall have any interest, legal, beneficial, or otherwise, in the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trust Causes of Action. Without limiting the generality of the preceding sentence, and for the avoidance of doubt, Holders of Administrative Priority Claims, Professional Fee Claims, Priority Tax Claims, and Claims in Classes 1, 2, , and 4 of this Plan shall not constitute Beneficiaries of the Liquidating Trust. Neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any such Claims and shall not be required to satisfy any such Claims from the Liquidating Trust Assets.

The Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee. Any and all Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder. Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**D.     Vesting and Transfer of Assets to the Liquidating Trust.**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan, including the making of all payments and distributions to Creditors provided for in the Plan. If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to a Chapter 7 Case, all property vested in the Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the Estate in the Chapter 7 Case. The Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will be unduly burdensome to the Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Liquidating Trust Assets. The Liquidating Trust Assets shall vest in the Liquidating Trust for the benefit of the Beneficiaries and the Debtors and their Estates will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Liquidating Trust Agreement and the Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Liquidating Trust, including but not limited to, prosecuting or settling all Causes of Action in his or her capacity as trustee for the benefit of the Beneficiaries. As the representative of the Debtors' Estates, in its capacity as trustee for the

Exhibit 64

benefit of the Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Debtors and their Estates with respect to all Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Debtors, their estates, and any official committee appointed in this case, in all such Causes of Action, whether or not such claims are pending in filed litigation.

**E.    Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee.**

**1.    General Powers of the Liquidating Trustee**

The rights and powers of the Liquidating Trustee are specified in the Liquidating Trust Agreement, which shall be filed with the Plan Supplement. This Section IX provides a summary of the terms of the Liquidating Trust Agreement. In the event of any conflict between this Section IX and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement control, unless otherwise ordered in the Plan Confirmation Order. The omission of any terms or provisions of the Liquidating Trust Agreement from this summary shall not constitute a conflict between this section and the Liquidating Trust Agreement.

Except as expressly set forth in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidating Trust Agreement, and subject to his/her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets.

The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust Operating Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention and compensation of counsel, accountants, financial advisors, or other professionals for the Liquidating Trust; (iv) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of the Liquidating Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action; and (vii) the prosecution and resolution of objections to such Claims as the Liquidating Trustee deems reasonable and appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, Liquidating Trust Advisors to assist in carrying out the Liquidating Trustee's duties under the Plan, Plan Confirmation Order, and Liquidating Trust Agreement and may compensate and reimburse the reasonable expenses of the Liquidating Trust Advisors from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement without further Order of the Bankruptcy Court.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

Exhibit 64

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan and Liquidating Trust Agreement to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### 2. Books and Records

On or before the Effective Date, the Debtors or the Trustee, as applicable, shall provide the Liquidating Trustee an electronic copy of or access to any and all of their documents, books, records, files, and emails available to the Debtors and their Estates.

### 3. Investments of Cash

To the extent provided in the Liquidating Trust Agreement, the Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### 4. Costs and Expenses of Administration of the Liquidating Trust

All Liquidating Trust Operating Expenses, including the costs associated with retaining Liquidating Trust Advisors, shall be the responsibility of, and paid by, the Liquidating Trust in accordance with the Liquidating Trust Agreement from the Liquidating Trust Assets.

### 5. Reporting

No later than forty-five (45) days after the last day of each calendar quarter in which the Liquidating Trust shall remain in existence, the Liquidating Trustee shall file a report of all Liquidating Trust Assets held and received by the Liquidating Trust, all Available Trust Cash (as defined in the Liquidating Trust Agreement) disbursed to Beneficiaries, and all fees, income, and expenses related to the Liquidating Trust during the preceding calendar quarter.

**F.      Post-Effective Date Notice.**

After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rules 2002 to the Office of the United States Trustee, the United States, and those parties in interest who have filed such renewed requests; provided, however, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in, the particular filing in accordance with Local Rule 2002-1(b). Notice given in accordance with the foregoing procedures shall be deemed

Exhibit 64

adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. This information shall be provided in the Notice of Effective Date.

**G.**    **Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtors.**

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

The Trustee shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtors (including final tax returns).

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations. If the Liquidating Trustee makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreement.

The Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the Holders of Trust Interests) shall report for U.S. federal, state and

Exhibit 64

local income tax purposes consistently with the foregoing. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

**H.      Term of Liquidating Trust.**

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed or temporarily Allowed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement, the Plan and the Plan Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, the Liquidating Trust Agreement and the Plan Confirmation Order have been made, and (v) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years per extension, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. Upon the Filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

**I.      Limitation of Liability of the Liquidating Trustee.**

As shall be provided in the Liquidating Trust Agreement, the Liquidating Trust shall indemnify the Liquidating Trustee and any retained professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee and its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals thereof for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or any retained professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney or other professional and, as required any applicable rules of professional conduct, malpractice.

## X.  MEANS FOR IMPLEMENTATION

**A.      Preservation of Right to Conduct Investigations.**

The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, held by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

Exhibit 64

**B.** **Prosecution and Resolution of Causes of Action and Avoidance Actions.**

From and after the Effective Date, prosecution and settlement of all Causes of Action and Avoidance Actions conveyed to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Plan Confirmation Order. The Liquidating Trustee may pursue such Causes of Action and Avoidance Actions, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries. From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Notwithstanding the occurrence of the Effective Date, all Causes of Action and Avoidance Actions that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.

**C.** **Substantive Consolidation**

The Plan contemplates and is predicated upon entry of an order substantively consolidating the Estates and the Chapter 11 Cases as set forth below.

(a) Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates for all purposes of confirming and consummating the Plan, including, but not limited to, voting, Confirmation, and Distributions.

(b) On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim Filed or to be Filed against any Debtor, as to which two or more Debtors are co-liable as a legal or contractual matter, shall be deemed Filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against any other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (v) all Interests shall be cancelled, (vi) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, (vii) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by any other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (viii) any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively-consolidated Debtors.

(c) The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) Executory Contracts that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) except as otherwise provided in the Plan, the Debtors' or the Liquidating Trustee's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Retained Causes of Action, or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of

Exhibit 64

the Debtors' Estates, and (vi) Distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof. Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed, dismissed or converted.

(d) This Combined Plan and Disclosure Statement shall serve as, and shall be deemed to be, a motion for entry of an order of the Bankruptcy Court approving the substantive consolidation of the Estates and the Chapter 11 Cases. If no objection to the Plan is timely Filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Plan, including the substantive consolidation of the Estates and the Chapter 11 Cases, may be approved by the Bankruptcy Court as part of the Confirmation Order. If any such objections are timely Filed and served, the Plan and the objections thereto shall be considered by the Bankruptcy Court at the Confirmation Hearing.

(e) No property that constitutes collateral or any offset or similar right securing any Claim or otherwise shall be augmented or increased and no secured portion of any Claim under section 506(a) of the Bankruptcy Code shall be augmented or increased because of the substantive consolidation of the Estates and the Chapter 11 Cases.

## D.  **Effectuating Documents and Further Transactions.**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Combined Plan and Disclosure Statement, Plan Supplement, the Plan Confirmation Order and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## E.  **Funding of Liabilities and Distributions.**

On the Effective Date, the Trustee shall transfer to the Liquidating Trust the Liquidating Trust Assets. The Liquidating Trust shall administer the Liquidating Trust Assets and distribute Available Trust Cash to the Beneficiaries of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, Plan, and Plan Confirmation Order. The Liquidating Trust shall be responsible for and shall have standing to evaluate, prosecute and settle all causes of action transferred to the Liquidating Trust.

The Trustee shall transfer to the Liquidating Trust the Liquidating Trust Funding Amount on the Effective Date for the administration of the Liquidating Trust.  In the event of any inconsistency between the terms of the Plan, the Plan Confirmation Order and Liquidating Trust

Exhibit 64

36

Agreement regarding the Liquidating Trust, the terms of the Plan shall govern, unless expressly ordered otherwise in the Plan Confirmation Order.

**F.    Release of Liens.**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to this Combined Plan and Disclosure Statement, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be deemed fully released without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law, provided however that any tax liens that have been asserted against the Debtors shall not be released until the underlying tax claim has been satisfied.

**G.    Exemption from Securities Laws.**

Any and all Beneficial Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

**H.    Exemption from Certain Taxes and Fees.**

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Plan Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Plan Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**I.    Trustee's Privileges as to Certain Causes of Action.**

Effective as of the Effective Date, all Privileges of the Trustee relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by the Trustee to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Trustee's documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with

Exhibit 64

third parties), or protections from disclosure held by the Trustee. The Trustee's Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; provided, however, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent such notice is required by any joint defense or common interest agreements that might have existed at the time Trustee filed the Petitions. Nothing contained herein or in the Plan Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Trustee.

**J.      Insurance Policies.**

Except as otherwise specifically stated herein, nothing in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. On the Effective Date, all of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may have a claim or potential claim for coverage under shall vest with the Liquidating Trust and be fully enforceable by the Liquidating Trust. For the avoidance of doubt, the Trustee is deemed to have assumed all of the Insurance Policies prior to such vesting. Nothing in this provision shall be deemed to be an admission of any fact, liability or other matter whatsoever.

Each applicable insurer under the Insurance Policies is prohibited from, and the Plan Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, this Combined Plan and Disclosure Statement Plan or any provision herein, including the treatment or means of liquidation set out within this Combined Plan and Disclosure Statement for any insured Claims or Causes of Action. For the avoidance of doubt, nothing in Section X.I impairs the rights of the Debtors or the Debtors' directors and officers, or the Liquidating Trust with respect to the Insurance Policies.

**K.      Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.**

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Trustee on the Effective Date. On and after the Effective Date, the Trustee and the Liquidating Trustee shall be jointly and severally liable to pay any and all Statutory Fees when due and payable. The Trustee shall file all monthly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. Provided that the Debtors dissolve on the Effective Date, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. If, after the Effective Date, disbursements, other than those made by the Liquidating Trust, are made in any quarter, the entity making such disbursements shall report same to the Liquidating Trustee for inclusion in the appropriate separate quarterly report. The Debtors and the Liquidating Trustee shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtors' Chapter 11 Cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense

Exhibit 64

Claim in the case and shall not be treated as providing any release under the Plan in connection therewith.

**L.  Completion of Services of Professionals.**

On the Effective Date, the Professionals for the Trustee and the Committee shall be deemed to have completed their services to the Debtors' Estates and such Professionals shall be able to file final and interim applications and be paid for reasonable compensation and reimbursement of expenses related thereto allowed by the Bankruptcy Court in accordance with Section V.B. above. Any of such Professionals may be retained by the Liquidating Trustee to represent the Liquidating Trust.

**M.  Operations of the Debtors Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Trustee shall continue to operate the Debtors.

## XI.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

**A.  Distribution Record Date.**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Equity Interests. The Trustee and the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Equity Interests occurring after the Distribution Record Date.  The Trustee and the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**B.  Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

**C.  Claims Objection Deadline.**

The Debtors or Liquidating Trustee, as applicable, to the extent permitted pursuant to this Plan or section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion of the Trustee or the Liquidating Trustee, as applicable, and notice to the Bankruptcy Rule 2002 service list and all parties holding claims as to which the objection is to be extended for cause.

*Exhibit 64*

39

**D.    No Distribution Pending Allowance.**

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan or the Liquidating Trust Agreement.

**E.    Reserve of Cash Distributions.**

On any date that Distributions are to be made under the terms of the Plan, the Trustee or Liquidating Trustee, or their respective agents, as applicable, shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim, but for the pendency of a dispute with respect thereto. Such Cash or property shall be held in a separate bank account maintained by the Trustee or Liquidating Trust, as applicable, for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto, if any.

**F.    Distribution After Allowance.**

The Trustee shall make Distributions to Holders of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims to the extent such claims are Allowed prior to the Effective Date. After the Effective Date, the Liquidating Trustee shall make such Distributions solely from the Administrative Expense and Priority Escrow Account, as applicable, and shall make Distributions to Holders of Allowed Claims in Classes 1 and 2 as determined in the Liquidating Trustee's discretion in accordance with the Liquidating Trust Agreement.

**G.    Delivery of Distributions.**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such Holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules, or, if not reflected in the Schedules, then in other records of the Debtors, if no proof of Claim is filed and the Liquidating Trustee or the Trustee has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Trustee or Liquidating Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Trustee or Liquidating Trustee, as applicable, are notified in writing of such Holder's then current address. Undeliverable Distributions shall remain in the possession of the Trustee or Liquidating Trustee until the earlier of (i) such time as a Distribution becomes deliverable, or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant to Section XI.I of this Combined Plan and Disclosure Statement. Undeliverable Distributions shall revert to the Liquidating Trust. The Liquidating Trustee shall not have an obligation to update or correct the contact information for recipients of undeliverable Distributions.

Exhibit 64

## H.  Fractional Dollars; *De Minimis* Distributions.

Notwithstanding any other provision of the Plan to the contrary, (a) the Trustee and Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Trustee and Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to such Holder is $50.00 or less. If the Liquidating Trust or Trustee withhold any Distribution under this provision, the withheld funds shall inure to the benefit of the Liquidating Trust.

## I.  Excess Funds.

After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee, may donate such amount to charity; *provided that* the charity shall be unrelated to the Debtors, Trustee, the Committee and its members, the Liquidating Trustee, the Liquidating Trust Advisors, and their respective professionals.

## J.  Unclaimed Distributions.

Any Cash or other property to be distributed under the Plan to a Beneficiary shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust. All Unclaimed Distributions shall revert to the Liquidating Trust.

## K.  Set-Off.

Except as otherwise provided herein, the Trustee or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records. Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

## L.  Maximum Recovery and Postpetition Interest.

Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar

Exhibit 64

charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

**M.    Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

**N.    Prepayment.**

Except as otherwise provided herein or the Plan Confirmation Order, the Trustee and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## XII.  EXECUTORY CONTRACTS

**A.    Rejection of Executory Contracts and Unexpired Leases.**

This Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan Supplement or (ii) expressly assumed by the Trustee under this Plan or previous order of the Bankruptcy Court, and the Trustee shall have no further obligation thereunder.  The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.  The foregoing information shall be included in the notice of entry of the Plan Confirmation Order. Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be executory, (i) the Trustee does not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by the Trustee pursuant to Section X.I. of this Plan.

**B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Trustee no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section XII.A, for which proofs of Claim are not timely filed within that period will be forever barred from assertion against the

Exhibit 64

Debtors, their Estates, Trustee, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims and shall be subject to the provisions of this Plan.

## XIII.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied or waived (as provided below):

a. The estimate of Allowed Administrative Expense Claims, to be conducted in good faith by the Trustee and the Committee, shall not exceed $__;

b. The Plan Confirmation Order, which shall be in a form acceptable to the Trustee and the Committee shall have been entered by the Bankruptcy Court, and shall become a Final Order;

c. The Plan Confirmation Order shall be in full force and effect;

d. The Liquidating Trust Agreement, in a form and substance acceptable to the Trustee and the Committee shall have been fully executed and the Liquidating Trust shall have been formed;

e. The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed in form and substance acceptable to the Trustee in consultation with the Committee;

f. The Trustee has funded the Professional Fee Escrow Account and the Administrative Expense and Priority Escrow Account;

g. All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan are effected or executed and delivered;

h. All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust; and

Notwithstanding the foregoing, the Plan Proponents may, acting jointly, waive the occurrence of the conditions precedent to the Effective Date. Any such written waiver of a condition precedent set forth in this Section may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate this Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Exhibit 64

43

## XIV. RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

### A. Releases by the Debtors.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by the Debtors, their Estates, the Trustee, the Liquidating Trustee, and the Liquidating Trust (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, Trustee, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, the Trustee, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or their estates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their Estate, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section XIV.A do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the restructuring, and (ii) any Preserved Claims and Causes of Action. Nothing in this Section XIV.A shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors and Trustee set

Exhibit 64

forth in this Section XIV.A, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

B.    <u>Exculpation.</u>

The Exculpated Parties shall neither have nor incur any liability to any Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, PII Laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or their Estates and further including those in any way related to the Liquidating Trust Agreement, the Chapter 11 Cases, or this Combined Plan and Disclosure Statement, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Combined Plan and Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with the Debtors; <u>provided</u>, <u>however</u>, the foregoing provisions of this section XIV.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud, or willful misconduct. Notwithstanding anything provided herein, the foregoing provisions of this section XIV.C shall have no effect on the liability of any Entity that results from any act or omission that occurred prior to the Exculpation Timeframe.

C.    <u>Injunction</u>

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims and Causes of Action, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or noncontingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, asserted or assertable on behalf of any of the Debtors, their Estates, the Trustee, the Liquidating Trustee, or the Liquidating Trust (as applicable), as

Exhibit 64

applicable, that have been released, settled, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities, such property, or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to Claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, their Estates, the Trustee, the Liquidating Trustee, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtors, their Estates, the Trustee, the Liquidating Trustee, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Allowed Claim or Allowed Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth herein.

Exhibit 64

## D. Preservation of Causes of Action.

### 1. Vesting of Causes of Action

Except as otherwise provided in this Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date.

Except as otherwise proved in this Plan, Plan Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

### 2. Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order (including the Plan Confirmation Order), the Plan Proponents expressly reserve such Cause of Action, including all Causes of Action to be transferred by the Trustee to the Liquidating Trust pursuant to this Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, this Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order). In addition, the Liquidating Trust reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Trustee or the Committee is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Furthermore, in the pursuit of an Avoidance Action, the Debtors, Liquidating Trust, the Liquidating Trustee and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action to compliance with section 547(b) of the Bankruptcy Code.

The failure of the Debtors or Trustee to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding. IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS OR THE TRUSTEE, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against them.**

Notwithstanding the foregoing, the Trustee has made a good faith effort to identify and disclose all known Causes of Action. A schedule identifying the Trustee's known Causes of Action

Exhibit 64

to be transferred and retained by the Liquidating Trust, which consists of the Preserved Claims and Causes of Action, shall be attached to the Plan Supplement.

**E.     Injunction.**

From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtors, the Trustee, the Committee or its members, the Released Parties, the Liquidating Trust or the Liquidating Trustee, or their respective predecessors, successors, and assigns, current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, consultants, limited partners, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Plan Confirmation Order.

No Person may commence or pursue a claim or cause of action of any kind against any Released Party or Exculpated Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements with the Debtors and any Released Party or Exculpated Party, the restructuring of any Claim or Interest before or during the Cases, the negotiation, formulation, or preparation of the Disclosure Statement, this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, or any other act or omission, and/or any related agreements, instruments, or other documents, the pursuit of confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of this Plan, or other property under this Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing or from the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtors or the administration of the Liquidating Trust or the transactions in furtherance of the foregoing without the Bankruptcy Court: (a) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, actual fraud, gross negligence, or willful misconduct against a Released Party or Exculpated Party and (b) specifically authorizing such Person to bring such claim or cause of action against any such Released Party or Exculpated Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, all Persons who have held, hold, or may hold Claims against or Equity Interests

Exhibit 64

in the Debtors and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan. Except as otherwise expressly provided for in this Combined Plan and Disclosure Statement or with respect to obligations issued pursuant to this Combined Plan and Disclosure Statement, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: commencing or continuing in any manner any action or other proceeding of any kind against any the Liquidating Trust or the Liquidating Trustee, or their successors and assigns, and their assets and properties; enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any the Liquidating Trust or the Liquidating Trustee, their successors and assigns, and their assets and properties; creating, perfecting, or enforcing any encumbrance of any kind against any the Liquidating Trust or the Liquidating Trustee, or the property or estate of the Liquidating Trust; asserting any right of subrogation against any the Liquidating Trust or the Liquidating Trustee, or against the property or estate of any of the Liquidating Trust, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.

Notwithstanding any provision in this Combined Plan and Disclosure Statement or the Plan Confirmation Order to the contrary, nothing contained in this Combined Plan and Disclosure Statement or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any creditor or vendor which is asserted in a timely filed proof of claim or objection to this Combined Plan and Disclosure Statement, or pursuant to section 503(b)(1)(d) of the Bankruptcy Code or (b) that is or may be asserted as an affirmative defense or other defense to a cause of action or claim asserted by a Debtor or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).

## C.     Termination of All Employee and Workers' Compensation Benefits.

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by the Trustee will be deemed terminated on or before the Effective Date.

## D.     Exclusions and Limitations on Liability.

Notwithstanding anything in this Combined Plan and Disclosure Statement to the contrary, no provision of this Combined Plan and Disclosure Statement or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Section XIV.A of this Plan, shall (a) modify, release or otherwise limit the liability of any Entity not specifically released or exculpated hereunder, including, without limitation, any Entity that is otherwise liable under

Exhibit 64

theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtors, or (b) affect the ability of the Internal Revenue Service to pursue non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that owed by the Debtors or their Estates.

## XV.  RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving the Debtors, the Trustee, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Liquidating Trust Causes of Action;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Liquidating Trust or the Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of the Liquidating Trust Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of this Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, Plan Supplement or the Disclosure Statement;

Exhibit 64

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of this Plan, except as otherwise provided in this Plan;

10. enforce all of the provisions of this Plan;

11. enforce all Orders previously entered by the Bankruptcy Court;

12. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

13. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement;

15. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases; and

16. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains jurisdiction to the fullest extent permitted by applicable law to adjudicate Liquidating Trust Causes of Action and to hear and determine disputes concerning Liquidating Trust Causes of Action and any motions to compromise or settle such Liquidating Trust Causes of Action or disputes relating thereto. Despite the foregoing, if the Liquidating Trustee on behalf of the Liquidating Trust chooses to pursue any Liquidating Trust Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action in any other court of competent jurisdiction.

**Exhibit 64**

# XVI. MISCELLANEOUS PROVISIONS

## A. Modification of Plan.

Subject to the limitations contained in this Plan: (1) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 (a), to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Plan Confirmation Order and before substantial consummation of the Plan, the Plan Proponents, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, and Bankruptcy Rule 3019(b).

## B. Revocation of Plan.

The Plan Proponents reserve the right to revoke or withdraw this Plan, prior to the entry of the Plan Confirmation Order and to file subsequent plans of liquidation. If the Plan Proponents revoke or withdraw this Plan, or if entry of the Plan Confirmation Order or the Effective Date does not occur within one-hundred and eighty (180) days after entry of the Confirmation Order, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Plan Proponents or any other Entity.

## C. Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## D. Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

## E. Reservation of Rights.

Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors, the Trustee or any Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other parties-in- interest; or (2) any Holder of a Claim or other party-in-interest prior to the Effective Date.

Exhibit 64

## F. Effectuating Documents; Further Transactions.

The Trustee or the Liquidating Trustee or its valid designee in accordance with the Liquidating Trust Agreement shall be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan and (2) certify or attest to any of the foregoing actions.

## G. Further Assurances.

The Plan Proponents and the Liquidating Trust shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Plan Confirmation Order.

## H. Dissolution of the Debtors and Closing of the Chapter 11 Cases.

Upon the Effective Date, the Debtors' officers and directors shall be deemed to have resigned their respective positions with the Debtors. From and after the Effective Date, the Debtors shall be deemed to be immediately dissolved upon the Effective Date under applicable law and shall have no corporate existence thereafter without the necessity for any other or further actions to be taken by or on behalf of the Debtors or action or formality which might otherwise be required under applicable non-bankruptcy laws. The Debtors shall be treated as having completely liquidated for state, local, and U.S. federal income tax purposes, and the Debtors shall not be required to pay any taxes or fees to cause such dissolution.

The Liquidating Trustee shall file a motion closing the Chapter 11 Cases after the Liquidating Trust Assets are fully administered or as soon as reasonably permissible.

## I. Dissolution of the Committee.

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or Committee members, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, and (iii) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

## J. Discharge of the Trustee.

Upon the occurrence of the Effective Date, the Trustee , its professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, and (iii) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

Exhibit 64

K.     **Service of Documents.**

Any pleading, notice or other document required by this Plan to be served on or delivered to the Trustee, Committee, or Liquidating Trustee shall be sent by first class U.S. mail, postage prepaid to:

| <u>To the Trustee:</u> | Tom A. Howley<br>TC Energy Center<br>700 Louisiana Street, Suite 4545<br>Houston, TX 77002<br><br>With a copy to:<br><br>Howley Law PLLC<br>Attn: Eric Terry<br>TC Energy Center<br>700 Louisiana Street, Suite 4220<br>Houston, TX 77002 |
|---|---|
| <u>To the Committee:</u> | Dykema Gossett, PLLC<br>Attn: William Hotze<br>         Nicholas Zugaro<br>5 Houston Center,<br>1501 McKinney Street, Suite 1625<br>Houston, TX 77010 |
| <u>To the Liquidating Trust:</u> | [•] |

L.     **Filing of Additional Documents.**

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## XVII.  RISKS AND OTHER CONSIDERATIONS

A.     **Bankruptcy Considerations.**

Although the Plan Proponents believe that this Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of this Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent specified herein, and there can be no assurance that such

Exhibit 64

conditions will be satisfied or waived. In the event such conditions precedent have not been satisfied or waived (to the extent possible hereunder) within forty five (45) days after the Plan Confirmation Date, which period may be extended by the Plan Proponents, then the Plan Confirmation Order may be vacated, no Distributions will be made pursuant to the Plan, and the Trustee and all Holders of Claims and Equity Interests will be restored to the status quo ante as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Plan Proponents believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Equity Interests encompass Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

While the Plan Proponents believe that there are sufficient Liquidating Trust Assets to make Distributions to Liquidating Trust Beneficiaries, there can be no assurance that the Liquidating Trust Assets will be sufficient to pay all Liquidating Trust Operational Expenses or make Distributions to the Liquidating Trust Beneficiaries.

## B.     No Duty to Update Disclosures.

The Plan Proponents have no duty to update the information contained in this Combined Plan and Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Plan Proponents are required to do so pursuant to an Order of the Bankruptcy Court. Delivery of this Combined Plan and Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

## C.     Alternatives to Confirmation and Consummation of the Plan.

### 1.     Alternate Plan

If the Plan is not confirmed, the Plan Proponents or any other party in interest (if, pursuant to section 1121 of the Bankruptcy Code, the Trustee has not filed a plan within the time period prescribed under the Bankruptcy Code) could attempt to formulate and propose a different plan. Such a plan likely would result in additional costs, including, among other things, additional professional fees or potential asserted substantial contribution claims, all of which would likely constitute Administrative Expense Claims (subject to allowance). The Plan Proponents believe that the Plan provides for an orderly and efficient liquidation of the Debtors' remaining assets and enables creditors to realize the best return under the circumstances.

### 2.     Chapter 7 Liquidation or Dismissal

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Cases could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the

Exhibit 64

Bankruptcy Code, to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponents believe that liquidation under Chapter 7 of the Bankruptcy Code of the Debtors' remaining assets would result in a substantial reduction in the value to be realized by Holders of Claims as compared to Distributions contemplated under the Plan. This is so because a Chapter 7 liquidation would require the appointment of a trustee, which would require substantial additional expenses (including the costs associated with the Trustee's retention of attorneys and other professionals) and would delay the orderly liquidation of the Estate's Assets, thereby lowering recoveries to such Holders of Claims. Consequently, the Trustee believes that confirmation of the Plan will provide a substantially greater return to Holders of Claims than would liquidation under Chapter 7 of the Bankruptcy Code. A copy of the Plan Proponents' liquidation analysis is attached to this Plan.

**D.**     **Certain Federal Tax Consequences**

**THE FOLLOWING DISCUSSION SUMMARIZES CERTAIN MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO CERTAIN HOLDERS OF ALLOWED CLAIMS. IT IS FOR GENERAL PURPOSES ONLY AND SHOULD NOT BE RELIED UPON FOR PURPOSES OF DETERMINING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO A PARTICULAR HOLDER OF A CLAIM OR EQUITY INTEREST. THIS DISCUSSION DOES NOT PURPORT TO BE A COMPLETE ANALYSIS OR LISTING OF ALL POTENTIAL TAX CONSIDERATIONS. THIS SUMMARY DOES NOT ADDRESS THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR EQUITY INTEREST SUBJECT TO SPECIAL TREATMENT UNDER FEDERAL INCOME TAX LAWS, AND DOES NOT DISCUSS ANY ASPECTS OF STATE, LOCAL, OR FOREIGN TAX LAWS OR ANY FEDERAL ESTATE OR GIFT TAX CONSIDERATIONS. FURTHERMORE, THIS SUMMARY DOES NOT ADDRESS ALL OF THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY RELEVANT TO A HOLDER OF A CLAIM OR EQUITY INTEREST, SUCH AS THE POTENTIAL APPLICATION OF THE ALTERNATIVE MINIMUM TAX.   THIS SUMMARY ALSO DOES NOT ADDRESS ALL OF THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO HOLDERS OF CLAIMS WHO ARE UNIMPAIRED, DEEMED TO HAVE REJECTED THE PLAN IN ACCORDANCE WITH THE PROVISIONS OF SECTION 1126(g) OF THE BANKRUPTCY CODE, OR HOLDERS WHOSE CLAIMS ARE ENTITLED TO PAYMENT IN FULL IN CASH.**

This summary is based on the Tax Code, as amended, existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the federal income tax consequences described below.

The Trustee has not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan. This discussion does not address all of the U.S. federal income tax consequences of the Plan to special classes of taxpayers (*e.g.*, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other

Exhibit 64

financial institutions, insurance companies, controlled foreign corporations, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, states or their subdivisions or integral parts, other governmental entities, Holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for federal income tax purposes, Holders' whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction). In addition, this discussion does not address federal taxes other than income taxes.

The following discussion generally assumes that the Plan will be treated as a plan of liquidation of the Debtors for federal income tax purposes, and that all Distributions to Holders of Claims will be taxed accordingly.

**Internal Revenue Service Circular 230 Disclosure: to ensure compliance with requirements imposed by the United States Internal Revenue Service, any tax advice contained in this Disclosure Statement (including any attachments) is not intended or written to be used, and cannot be used, by any taxpayer for purpose of avoiding tax related penalties under the Tax Code. Tax advice contained in this Disclosure Statement (including any attachments) is not written to support the promotion, marketing or promotion of the transactions or matters addressed by the disclosure statement. Each taxpayer should seek advice based on the taxpayer's particular circumstances form an independent tax advisor.**

1.      **Federal Income Tax Consequences to the Debtors**

Generally, a discharge of a debt obligation by a debtor for an amount less than the debt's adjusted issue price (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) gives rise to cancellation of indebtedness ("**COD**") income, which must be included in the debtor's income. However, COD income is not includable in gross income if it occurs in a case of bankruptcy or to the extent of the debtor's insolvency immediately before the COD income is recognized. The Debtors' COD income, if any, resulting from the Plan should satisfy these requirements, and, therefore, should not result in recognition of gross income to the Debtors.

COD income that is excluded from gross income will reduce certain attributes of the taxpayer, including net operating losses, capital loss carryovers, the tax basis of assets, and foreign tax credit carryforwards, in a specified order of priority beginning with net operating losses, unless a taxpayer elects to have the reduction applied first to the tax basis of depreciable assets. In general, any reduction in tax attributes does not occur until the end of the tax year, after such attributes have been applied to determine the tax for the year or, in the case of any asset basis reduction, the first day of the taxable year following the tax year in which COD income occurs.

2.      **Federal Income Tax Consequences to Holders of Allowed Claims**

Pursuant to the Plan, each Holder of a Claim will receive, in full and final satisfaction of its applicable claim, Liquidating Trust Units or Cash, as applicable, as described in Section VII.

Exhibit 64

As discussed below (see D.[4]—"Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein"), each Holder of a Claim that receives a Beneficial Interest will be treated for federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust.

The tax consequences of the transactions contemplated by the Plan to Holders (including the character, timing and amount of income, gain or loss recognized) will depend on, among other things: (1) whether the Claim and the consideration received in respect of it are "securities" for tax purposes; (2) the manner in which a Holder acquired a Claim; (3) the length of time the Claim has been held; (4) whether the Claim was acquired at a discount; (5) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion of it) in the current tax year or any prior tax year; (6) whether the Holder has previously included in its taxable income accrued but unpaid interest with respect to the Claim; (7) the Holder's method of tax accounting; and (8) whether the Claim is an installment obligation for tax purposes. Holders, therefore, should consult their own tax advisors regarding the particular tax consequences to them of the transactions contemplated by the Plan.

a.    Realization and Recognition of Gain or Loss.  In general, a Holder of an Allowed Claim will recognize gain or loss with respect to its Claim in an amount equal to the difference between (i) the sum of the amount of any Cash and the fair market value of its undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust received in respect of its Claim (other than any consideration attributable to a Claim for accrued but unpaid qualified stated interest) and (ii) the adjusted tax basis of the Claim exchanged therefor (excluding any adjusted tax basis attributable to accrued but unpaid interest).  Depending on the manner in which the Claim arose, applicability of the market discount rules and other factors, such loss or gain may be capital or ordinary in nature.  Due to limitations in the Code, a Holder of an Allowed Claim that recognizes a capital loss relating to its Claim may not be able to use such capital loss in the taxable year it arises or ever.

In the event of the subsequent disallowance of any Disputed Claim or the reallocation of undeliverable Distributions, it is possible that a Holder of a previously Allowed Claim may receive additional Distributions in respect of its Claim.  Accordingly, it is possible that the recognition of any loss realized by a Holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or disallowed. Alternatively, it is possible that a Holder will have additional gain in respect of any additional Distributions received. See also Section XVII.D.3. —"Federal Income Tax Consequence to Holders of Disputed Claims," below.

After the Effective Date, a U.S. Holder's share of any collections received on the assets of the Liquidating Trust (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable Distributions) should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such Holder's ownership interest in the underlying assets of the Liquidating Trust.

In general, a Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets will equal the fair market value of such interest at the time of receipt increased by its share of the Debtors' liabilities to which such assets remain subject upon transfer to the Liquidating

Exhibit 64

Trust, and a Holder's holding period generally will begin the day following establishment of the Liquidating Trust.

Although many Holders of Claims will not be required to recognize gain or income as a result of the property distributions (including Cash distributions) made or deemed to be made to them under the terms of the Plan, certain situations may exist that will require a Holder of a Claim to do so. For example, if a Claim relates to a transaction under which the Holder is required to recognize gain on payment (for example, an installment sale), the Holder may be required to recognize gain as a result of the actual or deemed distributions made to it under the Plan. Moreover, if (1) a Holder of a Claim previously took a deduction or loss relating to the partial or entire worthlessness of its Claim, and (2) the fair market value of the property (including Cash) it receives or is deemed to receive for its Claim under the Plan exceeds the remaining adjusted tax basis, if any, it has in its Claim, such Holder will be required to recognize gain or income. Similarly, a Holder of a Claim that purchased its Claim at a discount may be required to recognize gain if the amount received in satisfaction of the Claim exceeds such Holder's adjusted tax basis in the Claim. There are several other reasons why a Holder of a Claim may be required to recognize gain or income as a result of the actual or deemed distributions made to it under the Plan. Therefore, each Holder of a Claim should consult its own tax advisor to determine the tax consequences of the receipt of or deemed receipt of property (including Cash) under the Plan.

      b.      <u>Distributions to Holders in Respect of Accrued But Untaxed Interest.</u>  In general, the gross amount of payments received (whether stock, Cash, or other property) by a Holder of a debt instrument in satisfaction of accrued qualified stated interest will be taxable to the Holder as ordinary interest income (if not previously included in the Holder's gross income for U.S. federal income tax purposes). Conversely, a Holder generally recognizes a deductible loss (or, possibly, a write-off against a reserve for bad debts) to the extent any accrued qualified stated interest was previously included in its gross income and is not paid in full by the Debtors.

The extent to which amounts received by a Holder will be attributable to accrued but untaxed interest is unclear. Under the Plan, except as otherwise required by law (as reasonably determined by the Plan Proponents or Liquidating Trustee, as applicable), Distributions with respect to an Allowed Claim will be treated first as satisfying an amount equal to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, satisfying the remaining portion of such Allowed Claim, if any, such as accrued, but unpaid interest. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a bankruptcy plan is binding for U.S. federal income tax purposes. However, there is no assurance that such allocation would be respected by the IRS, and the IRS could take a position that the consideration received by a Holder should be allocated in some way other than as provided by the Plan. Holders are urged to consult their own tax advisor regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid qualified stated interest and the character of any loss claimed with respect to accrued but unpaid qualified stated interest previously included in gross income for U.S. federal income tax purposes.

**Exhibit 64**

### 3. Federal Income Tax Consequence to Holders of Disputed Claims

Distributions deemed issued to a Holder of a Claim on consummation of the Plan will not include any distribution held in reserve for Holders of Disputed Claims. As a result, in determining the amount of loss or gain recognized by a Holder of a Claim on consummation of the Plan, the Holder will not be treated as receiving any property attributable to the assets that are held by or for the benefit of Holders of Disputed Claims. As discussed below, when a Disputed Claim becomes Disallowed in whole or in part, the Holders of a Claim will be treated as receiving additional consideration in respect of their Claim at that time. It is possible, however, that the IRS or a court may conclude that the amount of consideration deemed received for tax purposes by a Holder of a Claim on consummation of the Plan should be determined by disregarding the Disputed Claims and treating any distribution held in reserve for Holders of Disputed Claims as proportionately distributed to the Holders of Claims. In such case, appropriate downward adjustments would be made on the allowance of a Disputed Claim in whole or in part. Holders of Claims should consult with their tax advisors as to the proper amount of consideration deemed received on consummation of the Plan.

Holders of Disputed Claims will not be treated as receiving any consideration in respect of their Claims on consummation of the Plan. On the allowance of a Disputed Claim, the Holder of the Disputed Claim will be treated as realizing in satisfaction of its Claim the amount of Cash distributed to the Holder at such time plus the fair market value of any property distributed to such Holder. On the disallowance of a Disputed Claim, the distribution attributable to such Disputed Claim will be cancelled and the Cash attributable to the Disallowed Disputed Claim and held in reserve will be released from the reserve. While not entirely clear, at such time, Holders will likely be treated as having received additional consideration in satisfaction of their Claims equal to their proportional shares of (i) the Cash released from the reserve, less (ii) the fair market value of the cancelled distributions. If the Disputed Claim becomes disallowed in the year in which the Plan is consummated, then such additional consideration would either reduce the loss or increase the gain that was recognized with respect to Holders' Claim on consummation of the Plan and would possess the same character (i.e., capital or ordinary) as the gain or loss recognized on consummation of the Plan. If the Disputed Claim becomes disallowed after the year in which the Plan is consummated, then the additional amount deemed received on disallowance of the Disputed Claim will be treated as gain with the same character (i.e., capital or ordinary) as the gain or loss recognized on consummation of the Plan. Holders of a Claim would increase the tax bases in their distribution by the additional amounts deemed received on the disallowance of a Disputed Claim. Similarly, in the event that undeliverable Distributions are redistributed to other claimants entitled to Distribution, such recipients will likely be subject to comparable tax treatment as discussed in this paragraph.

### 4. Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein

a. <u>Classification of the Liquidating Trust</u>. The Liquidating Trust is intended to qualify as a "liquidating trust" for federal income tax purposes (other than in respect of any portion of the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as discussed below). In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS,

Exhibit 64

in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust will be structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and Holders of Beneficial Interests) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Holders of Beneficial Interests (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for the Beneficial Interests. Accordingly, except in the event of contrary definitive guidance, Holders of Beneficial Interests shall be treated for federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling will be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the U.S. Holders of Claims could vary from those discussed herein.

   b. <u>General Tax Reporting by the Liquidating Trust and Holders of Beneficial Interests</u>. For all federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the Holders of Beneficial Interests are the owners and grantors, and treat the Holders of Beneficial Interests, as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust or liquidating trust pursuant to Treasury Regulations Section 1.671-4(a) and/or Treasury Regulation Section 301.7701-4(d) and related regulations. Therefore, for federal income tax purposes, the Liquidation Trust's taxable income (or loss) should be allocated pro rata to its beneficiaries. The Liquidating Trustee also shall annually send to each Holder of a Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for federal income tax purposes.

   Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidated Trust) among the Holders of Beneficial Interests will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and, if applicable, other than assets allocable to Disputed Claims) to the Holders of Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purposes of allocating taxable income and loss shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax

<span style="color:blue">Exhibit 64</span>

Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Holders of Beneficial Interests) must consistently use such valuation for all federal income tax purposes. The valuation will be made available, from time to time, as relevant for tax reporting purposes.

Taxable income or loss allocated to Holders of Beneficial Interests should be treated as income or loss with respect to such holder's undivided interest in the Liquidating Trust Assets, and not as income or loss with respect to its prior Allowed Claim. The character of any income and the character and ability to use any loss may depend on the particular situation of the Holders of the Beneficial Interests.

The federal income tax obligations of a Holder with respect to its Beneficial Interest are not dependent on the Liquidating Trust distributing any Cash or other proceeds. Thus, a Holder may incur federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent Distribution to the Holder. In general, other than in respect of Cash retained on account of Disputed Claims and Distributions resulting from undeliverable Distributions (the subsequent distribution of which still relates to a Holder's Allowed Claim), a distribution of Cash by the Liquidating Trust will not be separately taxable to the Holders of Beneficial Interests since the beneficiary is already regarded for federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust). Holders are urged to consult their tax advisors regarding the appropriate federal income tax treatment of any subsequent distributions of Cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will comply with all applicable governmental withholding requirements.

        c.    <u>Tax Reporting for Assets Allocable to Disputed Claims</u>. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims (i.e., a Disputed Claim Reserve) as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes. Accordingly, if a "disputed ownership fund" election is made with respect to a Disputed Claim Reserve, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets (including any gain recognized upon the disposition of such assets). All Distributions from such reserves (which Distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by Holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Debtors, the Liquidating Trustee and the Holders of

Exhibit 64

Beneficial Interests) will be required to report for tax purposes consistently with the foregoing. A Disputed Claim Reserve will be responsible for payment, out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve may be sold to pay such taxes. Each Holder of a Disputed Claim is urged to consults its tax advisor regarding the potential tax treatment of the Disputed Claim Reserve, distributions therefrom, and any tax consequences to such Holder relating thereto.

### 5.  FATCA

Under the Foreign Account Tax Compliance Act ("**FATCA**"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account Holders and investors or be subject to withholding on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of interest on certain types of obligations. FATCA withholding may apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax. U.S. Holders that hold Claims through foreign financial institutions and Non-U.S. Holders are encouraged to consult their tax advisors regarding the possible implications of these rules on their Claim.

### 6.  Backup Withholding and Information Reporting

Distributions to certain Holders of Allowed Claims under the Plan generally will be subject to information reporting requirements. In addition, certain Holders may be subject to backup withholding with respect to the distributions or payments made pursuant to the Plan unless the Holder: (a) comes within certain exempt categories (which generally includes corporations) and, when required, demonstrates that fact, or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Thus, the amount of any backup withholding from a payment to a Holder may be allowed as a credit against the Holder's federal income tax liability and may entitle the Holder to a refund, provided that the required information is timely furnished to the IRS.

The Trustee will withhold all amounts required by law to be withheld from payments of interest and dividends. The Trustee will comply with all applicable reporting requirements of the IRC.

Treasury Regulations generally require disclosure by a Holder on its federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the Holder's tax returns.

**Exhibit 64**

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

       7.      **Reservation of Rights**

This tax section is subject to change (possibly substantially) based on subsequent changes to other provisions of the Plan.  The Trustee, the Committee, and their advisors reserve the right to further modify, revise, or supplement this Section and the other tax related sections of the Plan prior to the date by which objections to Confirmation of the Plan must be filed and served.

Exhibit 64

## XVIII.  RECOMMENDATION AND CONCLUSION

The Plan Proponents strongly believe that the Plan is in the best interests of the Estate and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

Dated: October 2, 2025
Houston, Texas

TOM A. HOWLEY, CHAPTER 11 TRUSTEE

By: /s/ Tom A. Howley
Name: Tom A. Howley
Title: Chapter 11 Trustee

- and -

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLIANCE FARM AND RANCH, LLC AND ALLIANCE ENERGY PARTNERS, LLC.

By: /s/ David Freer
Name: David Freer
Title: Chief Financial Officer, Gordon Technologies LLC, and co-Chair of the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC

By: /s/ Bradley Vincent
Name: Bradley Vincent
Title: Vice President Operations, DrilTech, LLC, and co-Chair of the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC

Exhibit 64

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30155 |
| | § | |
| ALLIANCE FARM AND RANCH, LLC, | § | (CHAPTER 11) |
| | § | |
| DEBTOR | § | |
| | § | |
| IN RE: | § | CASE NO. 25-31937 |
| | § | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | (CHAPTER 11) |
| | § | |
| DEBTOR | § | |
| | § | |

## NOTICE OF FILING PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on October 2, 2025, the Plan Proponents[1] filed their *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors* (the "**Plan**") [DE 187].

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan, the Plan Proponents hereby file the Plan Supplement on October 21, 2025. The Plan Supplement, as defined in the Plan, means any supplemental appendix to the Plan, containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

*[Remainder of page left intentionally blank]*

**Exhibit 65**

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

Dated: October 21, 2025    Respectfully submitted,

          */s/ Eric Terry*
          Eric Terry **-** Texas Bar No.  00794729
          **HOWLEY LAW PLLC**
          700 Louisiana St., Suite 4220
          Houston, Texas 77002
          Telephone:  713-333-9125
          Email:  eric@howley-law.com

          *Counsel  for Tom A. Howley - Trustee*

            *-And-*

          **DYKEMA GOSSETT PLLC**

          By:  */s/ William Hotze*
          William Hotze
          TX State Bar No. 24087754
          Nicholas Zugaro
          TX State Bar No. 24070905
          5 Houston Center
          1401 McKinney Street, Suite 1625
          Houston, Texas 77010
          Telephone: (713) 904-6900
          Email: whotze@dykema.com
            nzugaro@dykema.com

          *Counsel for Official Committee of Unsecured*
          *Creditors*

Exhibit 65

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | § | CASE NO. 25-30155 | |
| | § | | |
| ALLIANCE FARM AND RANCH, LLC, | § | (CHAPTER 11) | |
| | § | | |
| DEBTOR | § | | |
| | § | | |
| IN RE: | § | CASE NO. 25-31937 | |
| | § | | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | (CHAPTER 11) | |
| | § | | |
| DEBTOR | § | | |
| | § | | |

## PLAN SUPPLEMENT

## TABLE OF CONTENTS

| Exhibit | Document |
|---|---|
| Exhibit A | Liquidation Analysis |
| Exhibit B | Retained Causes of Action |

Exhibit 65

**Exhibit A**
**Liquidation Analysis**
**Alliance Farm and Ranch (25-30155)**

**General Notes:**

Assumes matter converts to Ch. 7 on November 24, 2025, if Plan of Liquidation is not confirmed.

| Sources of Funds | | | | | |
|---|---|---|---|---|---|
| **Assets** | | **Chapter 11** | | **Chapter 7** | **Notes** |
| Cash - Balance at 10/21/25 | $ | 1,508,241 | $ | 1,508,241 | [1] |
| Causes of Action and Other | | Unknown | | Unknown | [2] |
| **Total Proceeds Available for Distribution** | | **$1,508,241** | | **$1,508,241** | |

| Uses of Funds | | | | | |
|---|---|---|---|---|---|
| **Unclassified Claims** | | | | | |
| Administrative | $ | - | $ | - | [3] |
| Chapter 11 Professional Fees | | 420,000.00 | | 420,000.00 | [4] |
| Chapter 7 Trustee Fees | | N/A | | 68,497.23 | [5] |
| Chapter 11 Trustee Fees | | 66,000.00 | | Unknown | [6] |
| Chapter 7 Conversion and Transition Fees | | N/A | | 75,000.00 | [7] |
| Post-Confirmation/Post-Conversion Professional Fees | | 250,000.00 | | 300,000.00 | [8] |
| Priority Tax Claims | | - | | - | |
| US Trustee Fee | | 12,065.93 | | N/A | |
| **Net Proceeds Used for Unclassified Claims** | **$** | **748,065.93** | **$** | **863,497.23** | |
| | | | | | |
| **Net Proceeds Available for Classified Claims** | **$** | **760,175.07** | **$** | **644,743.77** | |

| Classified Claims | | | | |
|---|---|---|---|---|
| Class 1 | Other Priority Claims | | | |
| Class 2 | Other Secured Claims | | - | |
| Class 3 | General Unsecured Claims | 2,500,000.00 | 2,500,000.00 | |
| Class 4 | Insider Unsecured Claims | | | |
| Class 5 | Equity Interests | | | |
| **Total Classified Claims** | | **$ 2,500,000.00** | **$ 2,500,000.00** | |

**Footnotes:**

[1]   Combined balances of jointly administered Debtors' DIP bank accounts.

[2]   Estimated value between 500k-4mm; represents claims against various entities and individuals as more detailed in the Retained Causes of Actions attached to the First Plan Supplement at Ex. B.

[3]   Represents estimated administrative expense claims—assumes no value in the asserted substantial contibution claims by insiders Furr and Etter.

[4]   Represents Estates' estimated professional fees claims on the Confirmation Date; Harney approx. 50k; Trustee's professionals approx 180k; UCC's professionals approx 190k.

[5]   Calculated in accordance with 11 U.S.C. § 326(a) based upon total estimated disbursements of cash on hand. If the chapter 7 Trustee collected and distributed another 4mm, the chapter 7 Trustee would be entitled to a distribution of 120k.

[6]   Chapter 11 Trustee Hourly—All or less than all of the $66,000 may be payable as chapter 11 administrative expense if case is converted.

[7]   Includes costs associated with preparing conversion schedules, a new section 341 meeting, a new claims bar date, retention of replacement professionals, and associated transition costs.

[8]   Includes Plan Trustee hourly fees. Estimated Chapter 7 Trustee process will be more expensive with new counsel and learning curve.

*Exhibit 65*

**Exhibit B**

**Retained Causes of Action**

Under the Plan[1], the Estates preserve, and transfer to the Liquidating Trust the Estates' rights, claims, counterclaims, causes of action, setoffs, and recoupments to be asserted in courts of law, courts of equity, arbitrations, mediations, or other proceedings:

- arising in or under 11 U.S.C. §§ 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 and applicable related state law including the Texas Uniform Fraudulent Transfer Act at Texas Business and Commerce Code Section 24.005 (including but not limited to 24.005(a) TRANSFERS FRAUDULENT AS TO PRESENT AND FUTURE CREDITORS. "….whether the creditor's claim arose before or within a reasonable time after the transfer was made…);
- arising from breaches of contract, negligence, commercial torts, breach of duty, breach of fiduciary duty, fraud, or misrepresentations, and any joint liability arising therefrom;
- to collect accounts receivable;
- seeking declaratory judgment;
- seeking equitable subordination; or
- seeking debt recharacterization

which accrue on or before the Effective Date against the below listed parties:

| | |
|---|---|
| Alliance Energy Partners, LLC | Debtor |
| Alliance Farm and Ranch, LLC | Debtor |
| AE Partners Holdings, Inc. | Insider |
| AEP Asset Holdings, LLC | Insider |
| Invictus Drilling Motors, LLC | Insider |
| Jerod Furr | Insider |
| Dustin Etter | Insider |
| Thomas Wayne LLC | Insider |
| J Parker Construction | Insider |
| Connect Realty.com Inc. | Insider |
| Heaven Lee Properties, LLC dba Lux Group | Insider |
| Jeanna Lea Hurley | Insider |
| Any entity receiving a transfer from any of the Debtors during the four years prior to bankruptcy, including but not limited to insiders, employees, officers, and equity holders of the Debtors | These transfers include transfers of the Debtors property to obtain property held by AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC including interests in Isodrill and interests in equipment. |

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Combined Disclosure Statement and Chapter 11 Plan* (the "**Plan**") [DE 187].

Exhibit 65

The Estates preserve and transfer to the Liquidating Trust the Estates' rights, claims, counterclaims, causes of action, setoffs, and recoupments, whether asserted or unasserted, arising in any proceedings, including proceedings in courts at law, courts at equity, arbitrations, mediations, or other proceedings, including the following proceedings, whether original proceedings, removed, transferred, referred, or otherwise, and any appeals arising therefrom, including the following:

- Adversary No. 25-03382 pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

For the avoidance of doubt, this preservation and transfer includes any estate cause of action asserted in the above-referenced Adversary including the alleged estate causes of action in ECF No. 39, Plaintiff's Ninth Amended Complaint at Counts VA, VB, VC, VD, VE, and VI, and the alleged estate causes of action in ECF No. 40, Defendants' Counterclaim and Original Third-Party Petition at Counts A, B, C, D, F, G, H, I, and J.

Exhibit 65



DRAFT – SUBJECT TO ONGOING INVESTIGATION – Filed in TXSB on 1/23/25   Page 75 of 97
FOR PURPOSES RELATED TO THE COMBINATION PLAN
AND DISCLOSURE STATEMENT ONLY

HARNEY PARTNERS

Alliance Energy Partners, LLC &
Alliance Farm and Ranch, LLC

Forensic Report to Chapter 11 Trustee

September 30, 2025

Draft – Subject to ongoing investigation – Case 25-30155   Document 161   Filed in TXSB on 10/23/25   Page 76 of 97
For purposes related to the combination plan and disclosure statement only

Disclaimer & Limitations of Analysis



## Documents Relied Upon

- Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

- Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

- Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

- AE Partners Holdings paystubs from the June 15, 2023 pay period

### DOCUMENT PRODUCTION INVENTORY

**Documents Pertaining to Entities Connected to Jerod Furr and Dustin Etter** ............... 3
   AE PARTNERS HOLDINGS INC. .................................................. 3
   AEP ASSET HOLDINGS, LLC. .................................................... 3
   ALLIANCE ENERGY PARTNERS, LLC. ......................................... 3
   INVICTUS DOWNHOLE TECHNOLOGIES, INC. ................................ 3
   INVICTUS DRILLING MOTORS, LLC. ............................................ 4
**Documents Pertaining to Entities Solely Connected to Jerod Furr** .......................... 4
   ALLIANCE FARM & RANCH LLC. ................................................. 4
   J. PARKER CONSTRUCTION LLC ................................................ 5
**Financial Statements** .................................................................. 5
   AMEX ................................................................................... 5
     xxx1006 Alliance Energy Partners FURR TRUSTEE DOCS 000204 ............. 5
   FROST BANK ........................................................................... 5
     cxx2389 Jerod Furr FURR TRUSTEE DOCS 000248 ............................ 5
     xxx7404 AE Partners Holdings Inc. FURR TRUSTEE DOCS 000312 .......... 5
     xxx7412 Alliance Farm & Ranch, LLC  FURR TRUSTEE DOCS 000396 ....... 5
     xxx7439 AEP Asset Holdings, LLC FURR TRUSTEE DOCS 000469 ........... 5
   TRUST BANK ........................................................................... 5
     xxx3493 J. Parker Construction LLC FURR TRUSTEE DOCS 000471 ........ 5
     xxx3728 Alliance Energy Partners FURR TRUSTEE DOCS 000500 ........... 5
**Reports Produced by QuickBooks** .................................................... 6
   Re ALLIANCE ENERGY PARTNERS .............................................. 6

Confidential Document Production Index

**FURR TRUSTEE DOCS 000001**

| Name | Date modified | Type | Size |
|---|---|---|---|
| Bookmarked 2024 books FURR TRUSTEE DOCS... | 8/27/2025 12:29 PM | Adobe Acrobat Docu... | 1,258 KB |
| FURR TRUSTEE DOCS 000001 - 001048 | 8/8/2025 3:50 PM | Adobe Acrobat Docu... | 46,848 KB |

FURR TRUSTEE DOCS 000001

Demonstrative Exhibit 1 - Exhibit 66



## Documents Relied Upon

- Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

- Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

- Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

- AE Partners Holdings paystubs from the June 15, 2023 pay period

**J. PARKER CONSTRUCTION LLC**

05/04/20  Certificate of formation
07/03/20  Assumed Name Cert.
10/13/21  PIR 2021
10/17/22  PIR 2022
08/29/24  LMC PO#24-126-3-02_HC_Nov 2024 Re Election Temporary Ramp Install
10/16/24  LMC INV#1047_LMC_HC Re ADA Plates
**FURR TRUSTEE DOCS 000195 – 000203**

**Financial Statements**

**AMEX**
☐ xxx1006 Alliance Energy Partners..................................................FURR TRUSTEE DOCS 000204

**FROST BANK**
☐ xxx2389 Jerod Furr.....................................................................FURR TRUSTEE DOCS 000248
☐ xxx2404 AE Partners Holdings Inc................................................FURR TRUSTEE DOCS 000312
☐ xxx7412 Alliance Farm & Ranch, LLC...........................................FURR TRUSTEE DOCS 000396
☐ xxx7439 AEP Asset Holdings, LLC................................................FURR TRUSTEE DOCS 000469

**TRUST BANK**
☐ xxx3493 J. Parker Construction LLC..............................................FURR TRUSTEE DOCS 000471
☐ xxx3728 Alliance Energy Partners................................................FURR TRUSTEE DOCS 000590

| | |
|---|---|
| Receipts and Disbursements | 080: Etter's E&W List Ex. 31 |
| Ledger | 056: Etter's SURREPLY to #51 Ex. 03 |
| | 080: Etter's E&W List Ex. 18 |
| S3M Loan | 104: Furr's E&W List Ex. 04 |

**Confidential Document Production Index**
**FURR TRUSTEE DOCS 000005**

## Documents Relied Upon

- Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

- Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

- Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

- AE Partners Holdings paystubs from the June 15, 2023 pay period

---

DOCUMENT PRODUCTION INVENTORY

**Documents Pertaining to Entities Connected to Jerod Furr and Dustin Etter** .......... 3

  AE PARTNERS HOLDINGS INC ................................................................ 3

  AEP ASSET HOLDINGS, LLC ................................................................. 3

  ALLIANCE ENERGY PARTNERS, LLC .......................................................... 3

  INVICTUS DOWNHOLE TECHNOLOGIES INC ....................................................... 4

  INVICTUS DRILLING MOTORS, LLC ........................................................... 4

**Documents Pertaining to Entities Solely Connected to Jerod Furr** .......................... 4

  ALLIANCE FARM & RANCH LLC ............................................................... 4

  J. PARKER CONSTRUCTION LLC .............................................................. 5

**Financial Statements** ................................................................... 5

  AMEX ..................................................................................... 5

  xxx1006 Alliance Energy Partners FURR TRUSTEE DOCS 000204 ................................ 5

  FROST BANK .............................................................................. 5

  xxx2389 Jerod Furr FURR TRUSTEE DOCS 000248 ............................................. 5

  xxx7404 AE Partners Holdings Inc. FURR TRUSTEE DOCS 000312 ............................... 5

  xxx7412 Alliance Farm & Ranch, LLC  FURR TRUSTEE DOCS 000396............................. 5

  xxx7439 AEP Asset Holdings, LLC FURR TRUSTEE DOCS 000469 ................................ 5

  TRUST BANK .............................................................................. 5

  xxx3493 J. Parker Construction LLC FURR TRUSTEE DOCS 000471 ............................. 5

  xxx3728 Alliance Energy Partners FURR TRUSTEE DOCS 000590.................................. 5

**Reports Produced by QuickBooks** ......................................................... 6

  Re ALLIANCE ENERGY PARTNERS ............................................................. 6

Confidential Document Production Index

FURR TRUSTEE DOCS 000001



## Documents Relied Upon

• Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

• Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

• Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

• AE Partners Holdings paystubs from the June 15, 2023 pay period

**Reports Produced by QuickBooks**

**Re ALLIANCE ENERGY PARTNERS**

2021 ................................................................................... FURR TRUSTEE DOCS 000534
  📊 Accounts Payable
  📊 Accounts Receivable
  📊 Cash Flow
  📊 General Ledger

2022 ................................................................................... FURR TRUSTEE DOCS 000639
  📊 Accounts Payable
  📊 Accounts Receivable
  📊 Cash Flow
  📊 General Ledger

2023 ................................................................................... FURR TRUSTEE DOCS 000782
  📊 Accounts Payable
  📊 Accounts Receivable
  📊 Cash Flow
  📊 General Ledger

2024 ................................................................................... FURR TRUSTEE DOCS 000924
  📊 Accounts Payable
  📊 Accounts Receivable
  📊 Cash Flow
  📊 General Ledger

**Assets**

**PROPOSALS**
  📊 Proposal to sell Alliance Energy Partners' Assets, 07.22.25
    **FURR TRUSTEE DOCS 0001033 – 001044**

**MERCEDES**
  Car Title ...................................................................
  2021 Statement ...........................................................
    **FURR TRUSTEE DOCS 0001045 – 001048**

**Confidential Document Production Index**                    Page 6 of 10
                    **FURR TRUSTEE DOCS 000006**





Demonstrative Exhibit 1 - Exhibit 66