IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| **ALLIANCE FARM & RANCH, LLC and** | § | **Bankruptcy No. 25-30155** |
| **ALLIANCE ENERGY PARTNERS, LLC.** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| *Debtors.* | § | |
| | § | |
| | § | |
| | § | |

# JEROD FURR'S RESPONSE TO PLAN PROPONENTS' OBJECTION TO CLAIM NO. 10-3 , CLAIM NO. 11-1 AND CLAIM NO. 12-1

**TO THE HONORABLE ALFREDO R. PEREZ, UNITED STATES BANKRUPTCY JUDGE:**

Jared Furr, a creditor and interest holder, hereby files this Response to Plan Proponents; Objection to Claim 10-3, Claim No. 11-1 and Claim No. 12-1 and would respectfully show:

## BACKGROUND

### A. The Entities and Parties

1.     Alliance Energy Partners, LLC ("AEP"), on of the above Debtors,   was organized on January 31, 2001. Prior to the corporate Reorganization that occurred in the first quarter of 2022, Jerod Furr ("Furr") was the 51% owner of AEP and was its President. Dustin Etter ("Etter") was the 49%owner of AEP, and was its Vice-President. AEP was 100% owned by Furr, until he granted Etter,  an employee of AEP, a minority interest in AEP.

2.     The corporate reorganization of AEP became necessary because AEP was a pass through entity, and the profits of the entity wereflowing through to the owners, Furr and Etter. AEP's taxs advisors advised that it was beneficial to create a "C" Corporation in order to trap the profits of the business in a corporate entity. The corporate reorganization was not intended to defraud creditors as has been suggested by the Trustee with

Page 1

no support for such allegation. At the time of the corporate reorganization, AEP was flush with cash and had no creditor problems. Indeed, Furr is unaware of any creditors of AEP in the first quarter of 2022 who are still creditors of AEP. Such allegations of wrongdoing are meritless.

3.      To accomplish the corporate reorganization, AE Partners Holdings, Inc ("Holdings") was incorporated on January 11, 2022, as a "C" corp. Furr was installed as the President, and Etter was installed as the vice president. Furr was the 51% owner of Holdings. Etter was the 49% owner of Holdings. Holdings became the 100% owner of AEP as part of the corporate reorganization. Theus, the shareholding position of Furr and Etter remained the same as did their roles in the new parent company.

4.      AEP Asset Holdings, LLC ("Asset Holdings") was formed on April 25, 2022. Asset Holdings was a 100% subsidiary of Holdings. Furr was installed as the President, and Etter was installed as the vice president.

5.      Invictus Drilling Motors, LLC ("Invictus")  was formed on April 25, 2022, and became the 100% owned subsidiary of Holdings.  Furr was installed as the President, and Etter was installed as the vice president.

6.      Prior to the corporate reorganization that occurred in the first quarter of 2022, AEP was holding substantial cash from operations as a result of profitable operations. AEP transferred said cash to Holdings which then used the funds for AEP operations, and to acquire equipment, which was held by Invictus and Asset Holdings. Also, Holdings acquired a patent from Danny Williams for $1,500,000, US Patent #9869127, relating to downhole motors  used in the drilling of oil and gas wells. When this cash was up streamed to Holdings in 2022, as part of the corporate reorganization, AEP had few, if any creditors. Furr is unaware of any creditors in existence in 2022  at the time this corporate reorganization took place who are currently creditors of AEP.

**B.  Creation of the Competing Entities by Etter and Daily.**

7.      L&L Ventures LLC ("L&L")  was formed by Travis Daily on August 30, 2024, at a time when Daily was subject to an employment agreement with AEP, a true and correct copy of which is attached hereto as **Exhibit ""** and is incorporated herein by reference for all purposes (the "Daily Employment Agreement").

On August 30, 2024, Daily was the initial Managing Member of L&L. Etter was added as a Managing Member on October 14, 2024.

8.      Specialized Energy Services LLC ("SES") was formed on September 27, 2024. Etter and Daily were installed as the initial members. SES is a wholly owned subsidiary of L&L.

9.      SES is engaged in substantially the same business as AEP. Furr believes and there alleges that Etter, Daily and Danny Williams concocted their plan to steal the business opportunities of AEP months before they were terminated as AEP employees in September 2024.

**C.  Creation of AFR and the Acquisition of the AFR Real Estate.**

10.     Alliance Farm and Ranch,LLC ("AFR"), one of the captioned Debtors,   was formed on March 23, 2022. Furr was the sole member and manager. Jerod Furr is the 100% owner of AFR. Etter never held an interest in AFR.

11.     AFR owned a 72.96 acre ranch located at 5450 Honea Egypt Rd., Montgomery, Texas 77316 (the "**AFR Real Property**"), which it acquired in April 2022. From Erik and Darla Ostrander (the " Ostranders"). AFR borrowed $1,000,000 from AEP to acquire the AFR Real Property.

12.     The AFR Real Property was encumbered by a mortgage held by the Ostranders in the approximate amount of  $4,000,000. On December 6, 2024, the Ostranders posted the Real Property for foreclosure at the January 7, 2025, public foreclosure sale in Montgomery County, Texsas.

**D.  The Filing of the Lawsuit Against the Ostranders and Settlement of the Lawsuit**

13.     On January 3, 2025, and due to the imminent threat of foreclosure of the Real Property by the Ostranders, AFR filed a lawsuit styled *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Cause No. 25-01-00068 in the District Court of Montgomery County, Texas, 284th Judicial District (the "Lawsuit"). The Lawsuit, which sought to enjoin the Ostranders' foreclosure of the Real Property, was later transferred to the 457th Judicial District Court in Montgomery County, Texsas. Unfortunately, the pleadings were insufficient for the Court to stop the foreclosure.

14.     On January 7, 2025, the Ostranders caused a public foreclosure sale to take place, at which they re-purchased the AFR Real Property.  On that same day, but shortly after the foreclosure, AFR commenced

its bankruptcy case under chapter 7 of title 11 of the United States Code. As the foreclosure had already taken place by the time the AFR bankruptcy proceeding was filed, the bankruptcy filing was for naught.

15.     After the loss of the Real Property to the Ostranders,'foreclosure, Fur retained E-Merger and Deborah Crain to attempt to set aside the foreclosure. Ms. Crane substituted in as AFR's counsel in the Lawsuit, which was already pending in Montgomery County.

16.     After E-Merger and Deborah Crain took over the prosecution of the Lawsuit, the suit was amended to bring claims of wrongful foreclosure against the Ostranders in connection with the foreclosure sale of the AFR Real Property. It also included claims related to certain personal property owned by AFR that was located on the AFR Real Property.

17.     Due to the efforts of Furr's attorneys with respect to the Lawsuit, the Ostranders agreed to settle the dispute in early May of 2025. Furr's  attorney, Deborah Crain, negotiated terms with the Ostranders' counsel, whereby the Real Property (and the personal property thereon) would be resold to a 3rd-party buyer, and $1,500,000.00 of the sales proceeds would be remitted back.

**E.   Conversion of AFR Case to a Chapter 11 and the Filing of the AEP Chapter 11 Case.**

18.     On March 17, 2025, the AFR Debtor filed its *Emergency Motion to Convert Case to Chapter 11* (the "**Chapter 11 Conversion Motion**"). [ECF Doc13]. On March 19, 2025, the Court entered its order granting the Chapter 11 Conversion Motion. [ECF Doc24].

19.     On April 7, 2025 (the "**AEP Petition Date**"), the AEP Debtor commenced its bankruptcy case (the "**AEP Case**" and together with the AFR Case, the "**Chapter 11 Cases**").

**F.   Chapter 11 Trustee is Appointed and Completes the Settlement**

20.     On May 12, 2025, the United States Trustee filed its *Notice of Appointment of Committee of Unsecured Creditors* [ECF Doc77] appointing the Committee.

21.     On May 22, 2025, the Committee filed its *Emergency Motion for Appointment of Chapter 11 Trustee* (the "**Trustee Motion**") [ECF Doc98]. On May 23, 2025, the Court entered its order granting the Trustee Motion [ECF Doc112]. On May 27, 2025, the United States Trustee filed its *Emergency Motion to*

*Approve Appointment of Tom A. Howley as Chapter 11 Trustee* [ECF Doc115]. On May 27, 2025, the Court

entered its *Order Approving Appointment of Tom A. Howley as Chapter 11 Trustee* [ECF Doc117].

22.   The Trustee took up the settlement reached with the Ostranders by Furr's counsel, and on May

30, 2025, the Trustee filed his *Emergency Motion for Order Approving (I) Global Settlement Between Debtors*

*and Erik and Darla Ostrander and (II) Granting Related Relief* (the "**Settlement Motion**") [ECF Doc121]. The

Settlement Motion sought to approve the settlement that had been reached between Furr'sw counsel and the

Ostranders, and resulted in $1.5 million being brought into the AFR estate. On June 3, 2025, the court entered

its order approving the Settlement Motion (the "Settlement Order") [ECF Doc128].

**G.   The Bar Date Order and Claim No. 10-3, Claim No. 11-1 and Claim No. 12-1**

23.   On June 25, 2025, the Court entered an order ("Bar Date Order") setting the proof of claim

bard date for non-governmental claims on July 25, 2025 ("Claims Bar Date").

24.   Claim No. 10-3, Claim No. 11-1 and Claim No. 12-1 should be allowed for the following

reasons.

(a) **The Furr Improvement Claim, Claim 10-3**. The Furr Improvement Claim was filed as Claim 10-3 (in the jointly administered claims register for case no. 25-30155) (i) by Jerod Furr; (ii) on July 30, 2025 (amending Claim 10-1); (iii) in the amount of $429,474.00; and (iv) asserted as an unsecured claim. The Claim attaches various invoices between various vendors and Furr. The reason this proof of claim was filed was to seek recovery of improvements made by Furr to the AFR Real Property from the time it was acquired by AFR until the time it was sold. The Trustee has no personal knowledge of the improvements made and the money expended therefor by Furr. The Trustee has performed no due diligence on this claim to disprove the fact that such improvements were made to the AFR Real Property and that Furr funded such improvements. Furr believes and will testify that the improvements enhanced the value of the AFR Real Property, and, ultimately, resulted in the $1,500,000 settlement. Furr admits that he is an insider, and that his claim is an insider unsecured creditor of AFR with respect to this proof of claim. Furr denies all other allegations made by the Trustee in his objection.

(b) **The JParker Claim, Claim 11-1**. The Furr JParker Claim was filed as Claim 11-1 (in the jointly administered claims register for case no. 25-30155) (i) by JParker; (ii) on July 24, 2025; (iii) in the amount of $265,276.00; and (iv) asserted as an unsecured claim. The Claim attaches an Exhibit A that states that expenditures made by Furr and JParker were advanced, in part, for the fees and expenses incurred in reaching a settlement with the Ostranders. On its face, the Claim must be requesting reimbursement from AFR. The Claim also attaches invoices for improvements to the ranch made by Furr. Proof of Claim 11-1 is admittedly an insider unsecured claim against AFR. All other allegations by the Trustee in his objection are denied.

(c) **The Furr AFR Claim, Claim 12-1**. The Furr AFR Claim was filed as Claim 12-1 (in the jointly administered claims register for case no. 25-30155) (i) by Jerod Furr, on behalf of

Alliance Farm and Ranch, LLC as AFR's as authorized agent; (ii) on July 25, 2025; (iii) in the amount of $1,500,000.00; and (iv) asserted as a priority unsecured claim. The Claim attaches the Settlement Motion and the Settlement Order. On its Exhibit A, the Claim asserts statement that the $1,500,000.00 "actually belongs to the bankruptcy estate of AFR." The Trustee and the Committee have admitted that the $1,500,000 was paid to the AFR Debtor pursuant to the Settlement Agreement between AFR and the Ostranders The $1,500,000 is property of the AFR bankruptcy estate. Although he would like to do so, the Trustee cannot "waive a magic wand" and make the $1,500,000 in settlement proceeds property of the AEP bankruptcy estate and then file a plan which seeks to use the funds to pay creditors of the AEP bankruptcy estate, to the detriment of the AFR creditors and interest holders. No Motion has been filed, much less an order entered substantively consolidating the bankruptcy estates of AEP and AFR. In fact, by the Modification filed by the Plan Proponents on March 4, 2026,, the Plan Proponents have taken substantive consolidation "off of the table". *See* paragraph 4 of the Modification, at ECF Doc 255. The Trustee has a conflict of interest and has been told so by Furr's counsel. On the one hand, the Trustee represents AFR whose property was sold and who collected the settlement amount of $1,500,000 for the AFR bankruptcy estate. On the other hand, the Trustee represents AEP and is attempting to use the $1,500,000 to pay creditors of AEP to the detriment of the creditors and interest holders of AFR.

WHEREFORE, Jerod Furr prays for an order denying the Trustee's Objections to Claim No. 10-3, Claim No. 11-1 and Claim No. 12-1. Furr prays for an order allowing said claims. Furr prays for such other and further relief to which he may sho himself justly entitled.

Respectfully Submitted this 4the day of April 2026.

PENDERGRAFT & SIMON, LLP
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*/s/ Leonard H. Simon*
By: Leonard H. Simon
Texas Bar No. 18387400
lsimon@pendergraftsimon.com

***ATTORNEY IN CHARGE FOR Jerod Furr***

## <u>CERTIFICATE OF SERVICE</u>

`This is to certify that on April 4, 2026, I caused a copy of the above and foregoing Response to be served through the ECF Filing System in and for the Southern District of Texas.

*/s/ Leonard H. Simon*