IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| **ALLIANCE FARM & RANCH, LLC and** | § | **Bankruptcy No. 25-30155** |
| **ALLIANCE ENERGY PARTNERS, LLC.** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| *Debtors.* | § | |
| | § | |
| | § | |
| | § | |

# JEROD FURR'S OBJECTION
# TO APPROVAL OF DISCLOSURE
# <u>AND TO CONFIRMATION OF THE PLAN</u>

**TO THE HONORABLE ALFREDO R. PEREZ, UNITED STATES BANKRUPTCY JUDGE:**

Jared Furr, a creditor and interest holder, hereby files this Objection to Approval of the Disclosure and to Confirmation of the Plan, , and would respectfully show:

## <u>INTRODUCTION</u>

1.      For the reasons set forth below, the Court should deny approval of the disclosure included in the Combined DS/Plan, and deny confirmation of the Combined DS/Plan. The Plan Proponents have not satisfied their burden under 11 U.S.C. §§ 1125 and 1129. The Disclosure Statement does not contain adequate information to permit creditors to make an informed decision, particularly with respect to the Partial Mediated Settlement Agreement, the release and transfer of valuable patent and intellectual-property assets, the compromise of insider and affiliate claims, the asserted breaches of fiduciary and contractual duties—including the breach of Travis Daily's Employment Agreement—and the existence of additional uninvestigated estate causes of action. In the absence of adequate disclosure and informed creditor solicitation, the Court cannot conclude that the Plan was proposed in good faith, that it complies with the Bankruptcy Code, or that it satisfies the best-interests-of-creditors test. Given the lack of meaningful investigation by the Trustee and the resulting prejudice to non-insider unsecured creditors and equity holders, including Jerod Furr, conversion of these cases

to Chapter 7 is appropriate to permit an experienced panel trustee to investigate, administer, and, if warranted, pursue estate assets and claims.

## BACKGROUND

### A. The Entities and Parties

2.      Alliance Energy Partners, LLC ("AEP"), on of the above Debtors,   was organized on October 26, 2020. From inception, Jerod Furr ("Furr") was the 51% owner of AEP and was its President. Dustin Etter ("Etter") was the 49%owner of AEP, and was its Vice-President.

3.      The corporate reorganization of AEP became necessary because AEP was a pass through entity, and the profits of the entity were flowing through to the owners, Furr and Etter. AEP's taxs advisors advised that it was beneficial to create a "C" Corporation in order to trap the profits of the business in a corporate entity. The corporate reorganization was not intended to defraud creditors as has been suggested by the Trustee with no support for such allegation, nor was it intended to defraud Etter, whose minority position and role in the company remained the same. At the time of the corporate reorganization, AEP was flush with cash and had no creditor problems. Indeed, Furr is unaware of any creditors of AEP in the first quarter of 2022 who are still creditors of AEP. Such allegations of wrongdoing are meritless. The forensic accounting firm engaged by the Trustee, Harney Partners, agreed that 2022 was a profitable year for AEP, and that sales did not start to decline until 2023.[1]

4.      To accomplish the corporate reorganization, AE Partners Holdings, Inc ("Holdings") was incorporated on January 11, 2022, as a "C" corp. Furr was installed as the President, and Etter

---

[1] *See* report on "Debtor Entities" and, in particular, AEP, where the forensic accountant stated:

> **"Deterioration in Customer Receipts:** AEP collected over **$23.2 million in 2022** in customer receipts in 2022, but collections declined to approximately **$9.3 million in 2023** following the loss of Colgate Energy as a major customer. Collections further deteriorated to approximately **$3.8 million in 2024** as the decline in sales to Arrow S Energy Operating, Earthstone Operating, and Patton Exploration were not offset by the addition of new customers. "

was installed as the vice president. Furr was the 51% owner of Holdings. Etter was the 49% owner of Holdings. Holdings became the 100% owner of AEP as part of the corporate reorganization. Thus, the shareholding position of Furr and Etter remained the same as did their roles in the new parent company.

5.      AEP Asset Holdings, LLC ("Asset Holdings") was formed on April 25, 2022. Asset Holdings was a 100% subsidiary of Holdings. Furr was installed as the President, and Etter was installed as the vice president.

6.      Invictus Drilling Motors, LLC ("Invictus")  was formed on April 25, 2022, and became the 100% owned subsidiary of Holdings.  Furr was installed as the President, and Etter was installed as the vice president.

7.      Prior to the corporate reorganization that occurred in the first quarter of 2022, AEP was holding substantial cash from operations as a result of profitable operations. AEP transferred cash to Holdings which then used the funds for AEP operations, and to acquire equipment, which was held by Invictus and Asset Holdings. Also, Holdings acquired a patent from Danny Williams for $1,500,000, US Patent #9869127, relating to downhole motors  used in the drilling of oil and gas wells. When this cash was up streamed to Holdings in 2022, as part of the corporate reorganization, AEP had few, if any creditors. Furr is unaware of any creditors in existence in 2022  at the time this corporate reorganization took place who are currently creditors of AEP. The Trustee has repeatedly accused Furr of wrongdoing with respect to the corporate reorganization that took place in the first quarter of  2022, but no lawsuit has been filed by the Trustee to challenge the transaction, and none could, in the estimation of the undersigned counsel, as there was no actual intent fraudulent transfer or constructive fraudulent transfer that occurred.

**B.  Creation of the Competing Entities by Etter and Daily.**

8.      L&L Ventures LLC ("L&L")  was formed by Travis Daily on August 30, 2024, at a time when Daily was subject to an employment agreement with AEP, a true and correct copy of which

is attached hereto as **Exhibit "2"** and is incorporated herein by reference for all purposes (the "Daily Employment Agreement").  On August 30, 2024, Daily was the initial Managing Member of L&L. Etter was added as a Managing Member on October 14, 2024.

9. Specialized Energy Services LLC ("SES") was formed on September 27, 2024. Etter and Daily were installed as the initial members. SES is a wholly owned subsidiary of L&L.

10. SES is engaged in substantially the same business as AEP. Furr believes and therefore alleges that Etter, Daily and Danny Williams concocted their plan to steal the business opportunities of AEP months before they were terminated as AEP employees in September 2024.

11. TD Drilling Motors LLC ("TD"), d/b/a Total Depth Drilling Motors, is an entity Etter and Furr formed on January 27, 2025. TD is the entity that engages in drilling motor sales and rentals using the patented technology that was stolen from AEP Asset Holdings, LLC, a subsidiary of Holdings. On information and belief, Etter and Daily and possibly Danny Williams own, manage  and operate this business.

**C. Creation of AFR and the Acquisition of the AFR Real Estate.**

12. Alliance Farm and Ranch,LLC ("AFR"), one of the captioned Debtors,   was formed on March 23, 2022. Furr was the sole member and manager. Jerod Furr is the 100% owner of AFR. Etter never held an interest in AFR.

13. AFR owned a 72.96 acre ranch located at 5450 Honea Egypt Rd., Montgomery, Texas 77316 (the "**AFR Real Property**"), which it acquired in April 2022. From Erik and Darla Ostrander (the " Ostranders"). AFR borrowed $1,000,000 from AEP to acquire the AFR Real Property.

14. The AFR Real Property was encumbered by a mortgage held by the Ostranders in the approximate amount of  $4,000,000. On December 6, 2024, the Ostranders posted the Real Property for foreclosure at the January 7, 2025, public foreclosure sale in Montgomery County, Texsas.

**D. The Filing of the Lawsuit Against the Ostranders and AFR's Chapter 7 Case**

15.     On January 3, 2025, and due to the imminent threat of foreclosure of the AFR Real Property by the Ostranders, AFR filed a lawsuit styled *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Cause No. 25-01-00068 in the District Court of Montgomery County, Texas, 284th Judicial District (the "Lawsuit"). The Lawsuit, which sought to enjoin the Ostranders' foreclosure of the AFR Real Property, was later transferred to the 457th Judicial District Court in Montgomery County, Texsas. Unfortunately, the pleadings were insufficient for the Court to stop the foreclosure.

16.     On January 7, 2025, the Ostranders caused a public foreclosure sale to take place, at which they re-purchased the AFR  Real Property.  On that same day, but shortly after the foreclosure, AFR commenced its bankruptcy case under chapter 7 of title 11 of the United States Code. As the foreclosure had already taken place by the time the AFR bankruptcy proceeding was filed, the bankruptcy filing was for naught.

17.     After the loss of the Real Property to the Ostranders,'foreclosure, Fur retained E-Merger and Deborah Crain to attempt to set aside the foreclosure. Ms. Crane substituted in as AFR's counsel in the Lawsuit.

18.     After E-Merger and Deborah Crain took over the prosecution of the Lawsuit, the suit was amended to bring claims of wrongful foreclosure against the Ostranders in connection with the foreclosure sale of the AFR Real Property. It also included claims related to certain personal property owned by AFR that was located on the AFR Real Property.

**E.  Conversion of AFR Case to a Chapter 11 and the Filing of the AEP Chapter 11 Case.**

19.     On March 17, 2025, the AFR Debtor filed its *Emergency Motion to Convert Case to Chapter 11* (the "**Chapter 11 Conversion Motion**"). [ECF Doc13]. On March 19, 2025, the Court entered its order granting the Chapter 11 Conversion Motion. [ECF Doc24].

On April 7, 2025 (the "**AEP Petition Date**"), the AEP Debtor commenced its bankruptcy case (the "**AEP Case**" and together with the AFR Case, the "**Chapter 11 Cases**").

**F.  Settlement of the Lawsuit**

20.     Due to the efforts of Furr's attorneys with respect to the Lawsuit, the Ostranders agreed to settle the dispute in early May of 2025. Furr's  attorney, Deborah Crain, negotiated terms with the Ostranders' counsel, whereby the Real Property (and the personal property thereon) would be resold to a 3rd-party buyer, and $1,500,000.00 of the sales proceeds would be remitted back to AFR. Deborah Crane was not a bankruptcy lawyer, and AFR's bankruptcy lawyer, Tim Wentworth, was on a month-long vacation in Europe. Crane did not know how to get the settlement approved and what needed to occur with respect to the $1,500,000 in sales proceeds.

**G.  Chapter 11 Trustee is Appointed and Completes the Settlement**

21.     On May 12, 2025, the United States Trustee filed its *Notice of Appointment of Committee of Unsecured Creditors* [ECF Doc77] appointing the Committee.

22.     On May 22, 2025, the Committee filed its *Emergency Motion for Appointment of Chapter 11 Trustee* (the "**Trustee Motion**") [ECF Doc98]. On May 23, 2025, the Court entered its order granting the Trustee Motion [ECF Doc112]. On May 27, 2025, the United States Trustee filed its *Emergency Motion to Approve Appointment of Tom A. Howley as Chapter 11 Trustee* [ECF Doc115].  On May 27, 2025, the Court entered its *Order Approving Appointment of Tom A. Howley as Chapter 11 Trustee* [ECF Doc117].

23.     The Trustee took up the settlement reached with the Ostranders by Furr's counsel, and on May 30, 2025, the Trustee filed his *Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Erik and Darla Ostrander and (II) Granting Related Relief* (the "**Settlement Motion**") [ECF Doc121]. The Settlement Motion sought to approve the settlement that had been reached between Furr'sw counsel and the Ostranders, and resulted in $1.5 million being brought into

the AFR estate. On June 3, 2025, the court entered its order approving the Settlement Motion (the

"Settlement Order") [ECF Doc128].

**H.   The Bar Date Order and Claim No. 10-3, Claim No. 11-1 and Claim No. 12-1**

24.      On June 25, 2025, the Court entered an order ("Bar Date Order") setting the proof of

claim bard date for non-governmental claims on July 25, 2025 ("Claims Bar Date").

25.      Claim No. 10-3, Claim No. 11-1 and Claim No. 12-1 have been filed in this case, as

follows:.

(a) **The Furr Improvement Claim, Claim 10-3**. The Furr Improvement Claim was filed as Claim 10-3 (in the jointly administered claims register for case no. 25-30155) (i) by Jerod Furr; (ii) on July 30, 2025 (amending Claim 10-1); (iii) in the amount of $429,474.00; and (iv) asserted as an unsecured claim. The Claim attaches various invoices between various vendors and Furr. The reason this proof of claim was filed was to seek recovery of improvements made by Furr to the AFR Real Property from the time it was acquired by AFR until the time it was sold. The Trustee has no personal knowledge of the improvements made and the money expended therefor by Furr. The Trustee has performed no due diligence on this claim to disprove the fact that such improvements were made to the AFR Real Property and that Furr funded such improvements. Furr believes and will testify that the improvements enhanced the value of the AFR Real Property, and, ultimately, resulted in the $1,500,000 settlement. Furr admits that he is an insider, and that his claim makes him an insider unsecured creditor of AFR with respect to this proof of claim. Furr denies all other allegations made by the Trustee in his objection.

(b) **The JParker Claim, Claim 11-1**. The Furr JParker Claim was filed as Claim 11-1 (in the jointly administered claims register for case no. 25-30155) (i) by JParker; (ii) on July 24, 2025; (iii) in the amount of $265,276.00; and (iv) asserted as an unsecured claim. The Claim attaches an Exhibit A that states that expenditures made by Furr and JParker were advanced, in part, for the fees and expenses incurred in reaching a settlement with the Ostranders. On its face, the Claim must be requesting reimbursement from AFR. The Claim also attaches invoices for improvements to the ranch made by Furr. Proof of Claim 11-1 is admittedly an insider unsecured claim against AFR. All other allegations by the Trustee in his objection are denied.

(c) **The Furr AFR Claim, Claim 12-1**. The Furr AFR Claim was filed as Claim 12-1 (in the jointly administered claims register for case no. 25-30155) (i) by Jerod Furr, on behalf of Alliance Farm and Ranch, LLC as AFR's authorized agent; (ii) on July 25, 2025; (iii) in the amount of $1,500,000.00; and (iv) asserted as a priority unsecured claim. The Claim attaches the Settlement Motion and the Settlement Order. On its Exhibit A, the Claim asserts statement that the $1,500,000.00 "actually belongs to the bankruptcy estate of AFR." The Trustee and the Committee have admitted that the $1,500,000 was paid to the AFR Debtor pursuant to the Settlement Agreement between AFR and the Ostranders The $1,500,000 is property of the AFR bankruptcy estate. Although he would like to do so, the

Trustee cannot "waive a magic wand" and make the $1,500,000 in settlement proceeds property of the AEP bankruptcy estate and then file a plan which seeks to use the funds to pay creditors of the AEP bankruptcy estate, to the detriment of the AFR creditors and interest holders. No Motion has been filed, much less an order entered substantively consolidating the bankruptcy estates of AEP and AFR. In fact, by the Modification filed by the Plan Proponents on March 4, 2026, the Plan Proponents have taken substantive consolidation "off of the table". *See* paragraph 4 of the Modification, at ECF Doc 255. The Trustee has a conflict of interest and has been told so by Furr's counsel. On the one hand, the Trustee represents AFR whose property was sold and who collected the settlement amount of $1,500,000 for the AFR bankruptcy estate. On the other hand, the Trustee represents AEP and is attempting to use the $1,500,000 to pay creditors of AEP to the detriment of the creditors and interest holders of AFR.

### I.   The Trustee and Committee File a Plan

26.    On October 2, 2025, The Trustee and the Committee filed ae Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors [ECF DOC 255] (the "Combined DS/Pan").

### J.   The First Mediation Fails By No Fault of Jerod Furr

27.    On December 11, 2025, the Trustee and Committee, the Etter Parties and the Furr Parties mediated the captioned Chapter 11 Cases before the Honorable Marvin Isgur, United States Bankruptcy Judge. The parties executed a Mediated Settlement Agreement (the "First MSA"), which was uploaded as ECF Doc237-1.  In paragraph 10 of the First MSA, the disposition of certain stock held by Holdings in Isocrill, Inc. ("Isodrill") was addressed.  Holdings owns a 10% minority interest in Isodrill. Jerod Furr is not on the board of directors of Isodrill, nor is he an officer of the company.

28.    In the First MSA, it was contemplated that Holdings would transfer the Isodrill stock to the Trustee. The Trustee would then transfer 65% of the Isodrill stock to Etter free and clear of liens, claims and encumbrances, and 35% of the Isocrill stock would be transferred to Furr free and clear of liens, claims and encumbrances. If Isodrill objected to the transfer of its stock to the Trustee, then the parties would come back to the mediator and try to further mediate this provision. If a mediation was not possible, then the First MSA terminated without any liability to any of the parties.

Isodrill objected to the transaction, and the parties went back to mediation, but were unable to agree on an alternative provision.

### K. The Partial MSA

29.      On February 4, 2026, the Proponents filed with the Court a Partial Mediated Settlement Agreement Between a Limited Number of Mediating Parties [ECF Docs 242 and 242-1] ("Partial MSA")

30.      The Proponents have not filed a Motion Pursuant to Bankruptcy Rule 9019 seeking approval of the Partial MSA or to approve a compromise of controversy.

### L. The Bogus Motion Requesting a TRO and Temporary Injunction

31.      Two days earlier, on February 2, 2026, Etter, the Trustee and the Committee filed a Joint Emergency Motion for Temporary Restraining Order and Temporary Injunction, at ECF Doc 48 in Adversary 25-03382. In said motion, the Trustee, Committee and Etter falsely alleged to this Court that Jerod Furr executed a document entitled *Third Amended & Restated Stockholders Agreement* dated (the "*3rd Amended Stockholders Agreement* "). The Trustee, Committee and Etter, through their lawyers, **falsely alleged** that Jared Furr executed the *3rd Amended Stockholders Agreemen* in an intentional effort to scuttle the First MSA. The idiocy of this false statement is that an unsigned version of the document they claimed Furr executed was attached as one of their own exhibits (ECF Doc. 47-5 in Adversary 25-03382). The Third Amended Stockholders Agreement the Trustee, Committee and Etter attached to their exhibit list was unsigned. Later, Isodrill's attorney, Steven Rech, wrote at least three letters debunking the allegation that Jerod Furr signed or voted for the *3rd Amended Stockholders Agreemen.*

32.      On February 3, 2026, Furr responded to the false allegations of the Trustee, the Committee and Etter in a response filed on February 3, 2026, at ECF Doc 54 in Adversary 25-03382.

The Committee, Trustee and Etter immediately withdrew the false allegations in an Amended Motion filed on February 4, 2026. ECF Doc 54 in Adversary 25-03382.

**M. The Modification to the Combined Plan/DS**

33. On March 4, 2026, the Trustee and the Committee filed a document entitled Modified Combined Disclosure Statemen*t and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditor* (the "Modification"). By the Modification, the Proponents sought to modify the Combined DS/Pan, and stated:

> "6. The Plan Proponents shall seek confirmation of the Plan, as modified by the Modifications set forth herein, a determination that pursuant to Section 1127 of the Bankruptcy Code and the Bankruptcy Rule 3019 the Modifications do not require any further disclosure or re-solicitation."

34. At a hearing held on March 4, 2026, the Court ordered the Proponents to re-solicit votes for the Combined DS/Pan as modified by the Modification.

35. The non-insider Unsecured Creditors of the Debtors are classified in Class 3 of the Combined DS/Plan. Jerod Furr and Dustin Etter have been separately classified as insiders in Class 5. The Proponents justified the separate classification as follows:

> 5Separate classification of Insider Unsecured Claims is warranted because the claimants in this class (i) are Insiders; and/or (ii) are asserting estate claims; and/or (iii) are subject to an objection that, as a threshold matter, demonstrates the asserted claims in Class 4 by Etter and Furr must be recharacterized or equitably subordinated; and/or (iv) are asserting double derivative claims on behalf of their equity ownership in a non-debtor.

> *See* ECF  page 12 of the Combined DS/Pan.

36. The Trustee and Committee then state in all caps the following on ECF Page 13 of the Combined DS/Pan:

> TO THE EXTENT NECESSARY, THIS PLAN CONTAINS THIS OBJECTION TO THE CLAIMS BY FURR, ETTER, AND THEIR RELATED ENTITIES, FILED AT CLAIM NOS. 2, 3, 10, 11, 12, AND 13 IN THE ABOVE CAPTIONED JOINTLY ADMINISTERED CLAIM REGISTER AND CLAIM NO. 12 IN THE

CLAIMS REGISTER MAINTAINED IN THE AEP DEBTOR CHAPTER 11 CASE (COLLECTIVELY, THE "**FURR AND ETTER CLAIMS**"). WITH FULL RESERVATION FOR FURTHER OBJECTION, PLAN PROPONENTS REQUEST A FINDING BY THIS COURT THAT THE FURR AND ETTER CLAIMS SHALL BE (I) RECHARACTERIZED AS EQUITY; AND/OR (II) EQUITABLY SUBORDINATED.

37.     Thus, as of the filing of the Combined DS/Pan on October 2, 2025, the Trustee and Committee (the "Proponents") characterized the claims of Etter as insider claims that should be treated as equity and/or equitably subordinated. The Trustee and the Committee treated the Plan as an objection to Etter's Claims and Furr's Claims..

38.     On March 9, 2026, the Court entered Order (I) Conditionally Approving the Adequacy Of The Modified Disclosure Statement; (Ii) Approving The Solicitation and Notice Procedures With Respect To Confirmation of the  Modified Plan; (Iii) Approving the Form of Various Ballots and Notices In Connection Therewith; and (Iv) Approving the Scheduling Of Certain  Dates In Connection With Confirmation of the Modified Plan. ECF DOC 262. In said order, the Court set the following deadlines:

| Event | Date |
|---|---|
| Voting Record Date | March 9, 2026 |
| Solicitation Deadline | March 9, 2026, at 11:59 p.m. CT |
| Modified Plan Supplement Date | April 9, 2026, at 11:59 p.m. CT |
| Voting Deadline | April 9, 2026, at 11:59 pm. CT |
| Modified Plan and DS Objection Deadline | April 9, 2026, at 6:00 p.m. CT |
| Deadline to File Voting Report | April 13, 2026, at 6:00 p.m. CT |
| Combined Hearing on Modified Plan and DS | April 16, 2026, at 1:00 p.m. CT |

39.     In the Modification, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Proponents incorporated the Partial MSA into the Plan.  **However, the Partial MSA was not attached to the Modification, nor were the terms of the Partial MSA described, not even in a cursory fashion.  The Partial MSA was not included with the Solicitation Package disseminated to Creditors in Class 3 before or after the March 9, 2026 Solicitation Deadline.**

40.     **The non-insider unsecured creditors in Class 3 have never been given the opportunity to review the Partial MSA nor have they received from the Proponents any summary of the terms of the Partial MSA.[2] No 9019 Motion has been filed seeking approval of the compromise of controversy set forth in the Partial MSA.**

## ARGUMENT AND AUTHORITIES

### A.  Introduction

41.     In what can only be characterized as a stunning reversal, In paragraph 2 of the Partial MSA the Committee and the Trustee agreed to pay Etter $495,000 in cash in full compromise of all of his claims against the Estates and all assertions that he is the rightful owner of all or any part of the approximately $1,495,000 of cash held by the Estates. Under the Partial MSA, the Trustee then grants Dustin Etter, Travis Daily, their 100% owned entity,  L&L Investments, LLC ("L&L")  and L&L's operating subsidiaries, Specialized Energy Services, LLC ("SES")  and TD  Drilling Motors, LLC ("TD Motors")[3]  a full and final release.

42.     Thus, the claims the Trustee and Committee stated were worthless, to be subordinated and merely equity interests were now being elevated ahead of the general, non-insider claims in Class 3 under the Plan to the extent of $495,000 paid under paragraph 2 of the Partial MSA.

---

[2] Without a doubt, the Partial MSA is the single most important document to be disseminated in this confirmation process.
[3] L&L, SES and TD Drilling shall hereinafter be referred to as the "Etter and Daily Affiliates".

43.     Then, in paragraph 3 of the Partial MSA, the Trustee sell to Etter for $325,000.00 all non-cash assets owned by the bankruptcy estates, including equipment Furr values at least in the amount of $201,400.00, a valuable patent, and valuable causes of action of the bankruptcy estates against Dustin Etter, Travis Daily, and the Etter and Daily Affiliates which are engaged in the identical business AEP was engaged in and marketing downhole motors identical to the motors as to which AEP holds a patent. Said Patent was sold to AEP by Dany Williams for $1,500,000 in 2022, when the corporate reorganization took place.  Danny Williams is, on information and belief, now an employ of Daily and Etter's company, SES.

44.     This cataclysmic compromise has been entered into under circumstances where the Proponents have performed little or no due diligence to determine the value of the claims and causes of action against Dustin Etter, Travis Daily, and Etter and Daily Affiliates and the businesses they are operating. The Proponents have conducted no due diligence on the use and deployment of patented technology owned by AEP and its affiliates, which is being infringed upon by Dustin Etter, Travis Daily, and Etter and Daily Affiliates. The Proponents have failed to consider the value of the equipment and patent related thereto, as to which Viper has made a written offer of approximately $200,000.

45.     Furr's counsel, Deborah Crain, has conducted substantial due diligence on the claims the AEP bankruptcy estate has against Dustin Etter, Travis Daily and the Etter and Daily Affiliates. Ms. Crain's analysis is set forth in a Memorandum dated April 8, 2026, which is attached hereto and incorporated herein by reference  as **Exhibit "1"**.

46.      Based on Ms. Crain's analysis, a review of Travis Daily's Employment Agreement, a true and correct copy of which is attached hereto as **Exhibit "2"**, and other evidence which will be revealed at the Confirmation Hearing, the undersigned counsel has prepared a liquidation analysis that shows that the Non-Insider Unsecured Creditors in Class 3 are entitled to received a 100% dividend

in this case, Said Liquidation Analysis is attached hereto and incorporated herein by reference as **Exhibit "3"**.

47. Finally, as the Court can confirm from the record, the Proponents have not taken one Rule 2004 Examination of Dustin Etter, Travis Daily, and the Etter and Daily Affiliates, to determine the viability of the claims and causes of action against them.

### B. Burden of Proof Rests With the Plan Proponents

48. The plan Proponents have the burden of proof as to compliance with Section 1129(a) by a preponderance of the evidence. In *re Briscoe Enters., Ltd. II,* 994 F.2d 1160 (5th Cir.1993), *cert. den.,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). Specifically, the Proponents have the burden of proving that under 11 U.S.C. § 1129(a)(7)(A)(i), (ii), that the best interests test has been met. *See In re Future Energy Corp.,* 83 B.R. 470, 489 (Bankr.S.D.Ohio 1988).

49. The Proponents also have the burden of providing adequate information to a class of creditors that satisfies 11 U.S.C. § 1125. Although the disclosure provided in the DS/Combined Plan was conditionally approved, the adequacy of the disclosure is still an open question that will be decided at the Confirmation Hearing on April 16, 2026

50. The Proponents also have the burden of proving that the Combined Plan/DS and the Proponents comply with the applicable provisions of the Bankruptcy Code..11 U.S.C. § 1129(a)(1)&(2). Thus, if the Combined Plan/DS fails to provide adequate disclosure of the Partial MSA, as required by 11 U.S.C. § 1125, this Court must deny approval of the disclosure provided in the Combined DS/Plan as modified, and, therefore, confirmation of the Combined DS/Plan, as modified, must also be denied.

51. Finally, the Proponents have the burden of proving the Combined Plan/DS, as modified, has been proposed in good faith and not by any means forbidden by law.

### C. The Proponents Have Failed to Analyze the Partial MSA under well settled Fifth Circuit Law.

52.     The compromise of controversy between the bankruptcy estates and the Etter Parties is inadequate, if not non-existent. The Modification contains no discussion of the pros and cons of accepting such Partial MSA. The provisions of Bankruptcy Rule 9019 have not been complied with. The Partial MSA has not been disseminated to the creditors in Class 3, and there is no adequate disclosure upon which it can be expected that such creditors might make an informed decision.

53.     The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise ust be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980). In the Partial MSA, the Proponents propose to pay Etter $450,000 for Etter's insider claims that the Trustee has placed into Class 4, which is a subordinate class. These Etter claims have been characterized as equity. Clearly, this money should go to the non-insider creditors in class 3. Senior creditors are entitled to full priority over junior interests, and that is not happening in this case.

54.     In determining whether a proposed compromise is fair and equitable, a court should consider the following factors:

(i)      the probabilities of ultimate success should the claim be litigated;

(ii)     the complexity, expense, and likely duration of litigating the claim;

(iii)    the difficulties of collecting a judgment rendered from such litigation; and,

(iv)     all other factors relevant to a full and fair assessment of the wisdom of the compromise.

*TMT Trailer*, 390 U.S. at 424. The Fifth Circuit has further elaborated on the factors to be considered in evaluating the wisdom of a proposed settlement. One factor to be considered is "the paramount

interest of creditors with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Another factor bearing on the wisdom of the compromise is the extent to which the proposed settlement is the product of arms-length negotiation. *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1996). In deciding whether to accept a compromise, a trustee is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation. *In re Mailman Stream Carpet Cleaning Corp.*, 212 F.3d 632 (1st Cir. 2000). Here, the Trustee has not performed a diligent investigation, and, therefore, it cannot be said that he is making an informed judgment.

55.     The Modification is the only document in the Solicitation Package that even mentions the Partial MSA. Here is the sum and substance of the disclosure made to Creditors:

> "1. Partial Mediated Settlement Agreement with Etter —The Plan Proponents and Dustin Etter ("**Etter**"), (the Trustee, the Committee, and Etter collectively the "**Settlement Parties**") and their respective counsel mediated with Judge Marvin Isgur as the mediator and reached a settlement agreement on all outstanding issues between and among the Parties [Docket No. 242 and 242-1] ("**Partial Mediated Settlement Agreement**"). Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Partial Mediated Settlement Agreement is incorporated in its entirety as included in the Plan. To the extent the Plan conflicts with the Partial Mediated Settlement Agreement, the Partial Mediated Settlement Agreement shall govern except as stated in these Modifications. "

56.     The Court need not even addr4ess the merits of the proposed controversy, because the disclosure deficiency and inadequacy is so stark and severe. No further argument is necessary.

**D. The Proponents have failed to investigate the estates' claims against Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES**

57.     The Proponents cannot pass the threshold issues regarding adequate disclosure, Putting this aside, it is clear from the production of documents by the Trustee and the Committee's attorney, William Hotze, that neither the Trustee nor the Committee has conducted any meaningful investigation of the claims and causes of action against Dustin Etter, Travis Daily, and their companies, L&L and its

subsidiary, SES. The only evidence of an investigation of the facts are  (a) the letter of termination of Etter by AEP, (b) the letter of termination of Travis Daily by AEP, (c)  the email from AEP's attorney to Etter in early August 2024, and (d) an email from Etter's attorney in June 2025, where he  argues, based on misrepresented facts or undisclosed material facts, that the causes of action against his clients are not viable. No further investigation appears in the record.

58.     The Trustee and his lawyers and the Committee's lawyers, by their admission in their Liquidation Analysis have incurred legal fees in the amount of $545,000.00. The Trustee has produced invoices indicating that the Trustee and his attorneys have invoiced for fees in the amount of $_____. The Committee's attorney, William Hotze, has refused to produced his invoices.

59.     Notwithstanding this astounding amount of fees admittedly incurred, the Proponents have failed to take one Rule 2004 Exam of Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES. Nor have they sought to depose Danny Williams, who sold the Patent to Holdings in 2022 for $1,500,000 and now works for Daily and Etter's company, SES.

60.     The Proponents have failed to seek production of financial statements for SES for December 31, 2024, and the year then ended, and have failed to request financial statements for SES for December 31, 2025, and the year then ended.

61.     The Proponents have failed to demand production o of SES' customer lists.

62.     The Proponents have failed to seek production of communications, including emails and text messages between Dustin Etter, Travis Daily, Danny Williams, and their companies, L&L and its subsidiary, SES during  year 2024. These email and text communications would have revealed the extent to which Etter and Daily communicated about stealing the clients and business opportunities of AEP.

63.     The Proponents have failed to seek production of the records of Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES and any affiliated entities regarding their alleged patent pending and explain how it is different from the AEP patent.

64.     The Proponents have failed to seek production of the records regarding the rental revenue from the rental of the downhole motors SES and/or its affiliated entities are deriving.

65.     The Proponents have failed to seek production of the employee lists for SES. These would reveal that Danny Williams, the person that sold the patents to AEP for $1.5M I, on information and belief, an employee of SES.

66.     The Proponents have failed to shop these causes of action to potential contingent fee lawyers to determine whether such causes of action might be pursued with no burden on the bankruptcy estates..

67.     In short, Furr will prove at the Confirmation Hearing that the Proponents have incurred more than $545,000.00, and have failed to conduct any meaningful discovery regarding the most valuable asset of the AEP estates, the potential claims and causes of action against Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES.

68.     The Proponents have no clue as to the viability of the claims and causes of action against Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES. Undoubtedly, the Proponents and Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES will attempt a "back and fill" operation by taking the week before the hearing on confirmation to perform the due diligence they should have performed many months ago. But even if they did so, it is too late. The creditors in Class 3 have voted based on the absence of any disclosure regarding the Partial MSA and the viability of the claims and causes of action against Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES.

69.      The Partial MSA is a farce. Etter is being paid $450,000 for a release of claims the Trustee has characterized in the Combined Plan/DS as being insider claims that should be disallowed, subordinated, and placed in a class, Class 4, that is subordinate to the Class 3 non-insider claims. How is it that a Trustee with a "straight face" can justify the payment of $450,000 for these subordinated insider claims of Etter that the Trustee says in the Combined Plan/DS he will file objections. It is ludicrous. Then, Etter is buying all of the assets other than cash for $325,000, including (a) the equipment being stored at the Viper yard, as to which Viper is willing to pay approximately $200,000, and (b) an assignment to Etter of valuable causes of action of the bankruptcy estates against Dustin Etter, Travis Daily, and their companies, L&L and its subsidiary, SES for breach of the Daily Employment Agreement, usurping corporate opportunities, and patent infringement. All of this "hocus pocus" is being accomplished without any due diligence or investigation.

## RELIEF REQUESTED

70.      Without a doubt, the Court should deny confirmation of the Combined DS/Plan as modified by the Modification for the reasons state above.

71.      The Court could convert the case to Chapter 7 pursuant to Furr's Motion to Convert.

72.      In the alternative, the Court could deny the Modification or strike the Modification for the reasons stated above, and confirm the Combined Plan/DS without the Modification. The only further modification Furr would ask for would be that a panel trustee be installed as the Liquidating Trustee instead of Tom Howley, and that the Advisory Board be eliminated as being unnecessary.

## CONCLUSION

WHEREFORE, Jerod Furr prays for an order denying confirmation of the Combined Plan/DS as modified by the Modification. Furr prays for such other and further relief as to which he may be justly entitled.

Respectfully Submitted this 9the day of April 2026.

PENDERGRAFT & SIMON, LLP
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*/s/ Leonard H. Simon*
By: Leonard H. Simon
Texas Bar No. 18387400
lsimon@pendergraftsimon.com

**ATTORNEY IN CHARGE FOR Jerod Furr**

## CERTIFICATE OF SERVICE

**To Be Separately Filed**