IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ALLIANCE FARM AND RANCH, LLC | § | CASE NO. 25-30155 |
| AND ALLIANCE ENERGY | § | (CHAPTER 11) |
| PARTNERS, LLC, | § | Jointly Administered |
| *Debtors.* | § | |
| | § | |

> **DEMERGENCY MOTION TO CONFORM CONFIRMATION ORDER TO THE COURT'S BENCH RULING AND TO STRIKE OR MODIFY UNENFORCEABLE PROVISIONS OF THE PARTIAL MEDIATED SETTLEMENT AGREEMENT AND THE MODIFIED PLAN, OR IN THE ALTERNATIVE FOR RECONSIDERATION AND OBJECTION TO ENTRY OF PROPOSED CONFIRMATION ORDER**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. MOVANTS HAVE REQUESTED THAT THIS MOTION BE HEARD ON April 23, 2026 AT 3:00 PM AND WILL BE CONDUCTED REMOTELY.**

NOW COME AE Partners Holdings, Inc. ("AEPH"), AEP Asset Holdings, LLC ("AEP Asset Holdings"), Invictus Drilling Motors, LLC ("Invictus"), J Parker Construction, LLC ("J Parker"), and Jerod Furr ("Furr," and collectively, the "Movants"), file this Emergency Motion to

ensure that any Confirmation Order entered in these jointly administered Chapter 11 Cases conforms to the Court's expressed view from the bench at the April 16 – 17, 2026 confirmation hearing that the Trustee cannot sell what the Debtors' estates do not own, and to strike or modify the unenforceable provisions of the Partial Mediated Settlement Agreement **(Dkt No. 242-1)** (the "PMSA") and the Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation **(Dkt. No. 255)** (the "Modified Plan"), in each case to the extent they purport to transfer, convey, vest, cancel, release, or otherwise affect property of non-debtor entities or non-debtor individuals. In support thereof, Movants respectfully state as follows:

## I.
### INTRODUCTION AND SUMMARY OF RELIEF SOUGHT

1. At the confirmation hearing held on April 16 and 17, 2026, counsel for Furr raised, in the course of argument, the concern that the PMSA purports to convey assets of non-debtor entities and a non-debtor individual that are not, and have never been, property of the Debtors' estates within the meaning of 11 U.S.C. § 541. In response, the Court expressed its view from the bench, in substance, that the Trustee cannot sell what the Debtors' estates do not own — a view that is consistent with the long-settled rule of section 541 and the long-settled limit on a trustee's authority under section 363. The Court did not enter a formal written ruling on this specific issue at that time, and the proposed Confirmation Order that is now circulating for entry at the April 23, 2026 hearing does not faithfully implement the Court's expressed view. Movants file this Motion to ensure that the Confirmation Order, when entered, gives effect to that expressed view and does not approve provisions of the PMSA and the Modified Plan that exceed the Trustee's authority under the Bankruptcy Code.

2. Specifically, the PMSA purports to convey to Dustin Etter ("Etter"), among other things:

a) Furr's personally titled Mercedes G-Wagon and other vehicles titled in the name of Furr individually or in the name of non-debtor entities;

b) one hundred percent (100%) of the equity in six entities, four of which — AEPH, AEP Asset Holdings, Invictus, and J Parker — are not Debtors;

c) Furr's fifty-one percent (51%) majority equity interest in non-debtor AEPH, the cancellation of which would have the practical effect of delivering one hundred percent (100%) control of AEPH to Etter (who already holds the other 49%) and, through AEPH, of non-debtor subsidiaries AEP Asset Holdings (the patent-holder of U.S. Patent No. 9,869,127) and Invictus;

d) drilling motors, equipment, books, records, contracts, accounting files, tax attributes, intellectual property, intra-company receivables, reputational rights, and proceeds of all six entities;

e) all claims to equity in non-debtor IsoDrill, Inc.;

f) sweeping mutual releases and a commitment to seek injunctive relief against AEPH — a non-debtor entity that has never been before this Court; and

g) the entire pending litigation against Etter himself, including Furr's claims and AEP's derivative claims against Etter for breach of fiduciary duty, conversion, tortious interference, and misappropriation of trade secrets, plus the related claims against Etter's confederates Travis Daily, Trinidad Peña, Specialized Energy Services LLC, L&L Ventures LLC, and TD Drilling Motors LLC — to be paid for by Etter himself for $325,000.

3. A bankruptcy trustee may transfer only what 11 U.S.C. § 541 has placed in the bankruptcy estate. He cannot transfer what he does not own. He cannot, by stipulation with one minority equity

holder of a non-debtor entity, deliver to that minority holder the majority interest of another equity holder who never agreed to the transfer, was never served with process in any proceeding to determine ownership, and is not before the Court except as an objector. He cannot, by the confirmation of the Plan (which was done in lieu of a Rule 9019 settlement [which requires notice and an opportunity to be heard)), accomplish what 11 U.S.C. § 363(h) and Federal Rule of Bankruptcy Procedure 7001(3) require be accomplished by adversary proceeding with notice, an opportunity to be heard, and findings of fact. The Court expressed precisely this view from the bench. The Confirmation Order should faithfully implement it.

4.     Movants seek an order: (i) ensuring that the Confirmation Order conforms to the Court's expressed view from the bench by striking, refusing to approve, or declaring without legal effect the specified provisions of the PMSA and the Modified Plan identified in Section VI below; (ii) in the alternative, if the Confirmation Order is entered before the Court rules on this Motion, reconsidering the standing finding in Paragraph 18 of the proposed Confirmation Order pursuant to Bankruptcy Rule 9023; (iii) in the further alternative, expressly clarifying in the Confirmation Order the limits of the standing finding and the limits of the conveyance; (iv) in the further alternative, granting relief from the order under Bankruptcy Rule 9024 (incorporating Federal Rule of Civil Procedure 60(b)(4) and (6)); and (v) granting such other and further relief as is just and proper.

## II.
### THE COURT'S EXPRESSED VIEW AT THE CONFIRMATION HEARING

5.     At the confirmation hearing held on April 16 and 17, 2026, counsel for Furr raised, in the course of argument and as it pertained to non-debtors and the totality of their assets, the issue that the PMSA purports to transfer property and equity of non-debtor entities and of Furr individually that is not property of the Debtors' estates. The Court responded from the bench, in substance, that

the Trustee cannot sell what the Debtors' estates do not own, and that the PMSA cannot operate to convey non-debtor property. While the Court did not enter a formal written ruling on this specific issue and no separate motion was then before the Court for adjudication, the Court's expressed view is on the record of the hearing and is consistent with the long-settled rule of 11 U.S.C. § 541(a) that a bankruptcy estate consists only of the debtor's legal and equitable interests in property.

6.   The Court's expressed view should be embodied in the terms of any Confirmation Order entered. Movants file this Motion not to ask the Court to revisit its expressed view, but to ensure that the proposed Confirmation Order — as drafted by the Plan Proponents and now before the Court for entry — conforms to that view. As discussed in Section VI below, the proposed Confirmation Order does not, in its current form, implement the Court's expressed view. The carve-out language in Paragraphs 61 and 69 of the proposed Confirmation Order acknowledges the principle in narrow respects but does not extend to the totality of non-debtor assets the PMSA purports to convey. Without the additional relief requested in this Motion, the Confirmation Order will be in tension with what the Court said at the hearing.

### III.
### JURISDICTION, VENUE, AND PROCEDURAL VEHICLES

7.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) to the extent it concerns confirmation of the Modified Plan. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and procedural predicates for the relief sought are 11 U.S.C. §§ 105(a), 363, 524(e), 541, 1109(b), 1123, and 1129; Federal Rules of Bankruptcy Procedure 3020, 7001, 7065, 9014, 9019, 9023, and 9024; Federal Rule of Civil Procedure 59(e) and 60(b); and the Due Process Clause of the Fifth Amendment to the United States Constitution.

8.    This Motion is brought as: (i) an objection to entry of the proposed Confirmation Order under Federal Rule of Bankruptcy Procedure 3020(b); (ii) an objection to approval of the PMSA under Federal Rule of Bankruptcy Procedure 9019; and (iii) in the alternative, if the Confirmation Order is entered before the Court rules on this Motion, a motion to alter or amend under Federal Rule of Bankruptcy Procedure 9023 (incorporating Federal Rule of Civil Procedure 59(e)), or for relief from order under Federal Rule of Bankruptcy Procedure 9024 (incorporating Federal Rule of Civil Procedure 60(b)(4) and (6)). Courts can retain discretion to consider objections raised after the confirmation hearing but before the order is signed. That changes once the plan is confirmed and the order is signed, which creates a presumption of finality. See *Ruhl v. HSBC Mortg. Servs.*, 399 B.R. 49 (E.D. Wis. 2008). Lack of due process precludes the finality of confirmation orders. A confirmed plan does not have preclusive effect on a party who did not receive sufficient notice to satisfy its due process rights. *Ellett v. Stanislaus*, 506 F.3d 774, 777 (9th Cir. 2007); *In re Richter*, 525 B.R. 735, 750–51.

9.    To the extent any portion of this Motion implicates a constitutionally limited matter, Movants do not consent to entry of final orders or judgments by this Court. See Stern v. Marshall, 564 U.S. 462 (2011); Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665 (2015).

## IV.
## STANDING OF EACH MOVANT

10.    Movants address standing because Paragraph 18 of the proposed Confirmation Order contains a finding that Furr lacks pecuniary standing to object to confirmation of the Plan. That finding, even if accepted on its own terms, does not and cannot reach the standing of the Movants to challenge the conveyance of their own property and equity. The standing finding in Paragraph 18 addresses Furr's status as a creditor and equity holder of the Debtors. It does not address — and could not have addressed — (a) Furr's standing as the record title owner of personally titled

property the PMSA purports to convey; (b) Furr's standing as the 51% majority equity holder of non-debtor AEPH; (c) Furr's preserved equitable-title claims expressly carved out in Paragraph 69 of the proposed Confirmation Order; or (d) the standing of the four non-debtor entity Movants, none of which is a Debtor, none of which has been served with process, and none of which was before the Court at the confirmation hearing in any capacity. Significantly, the Court's own expressed view from the bench — that the Trustee cannot sell what the Debtors' estates do not own — confirms that the substance of the non-debtor-property issue was raised, considered, and addressed favorably to the position taken in this Motion.

### A.  Furr's Standing as Record Title Owner of Personal Property

11. PMSA Exhibit A purports to convey to Etter "[a)ny and all automobiles or vehicles which have in any part ever been directly or indirectly paid for, maintained by, or titled to any of the entities listed above, including but not limited to any Mercedes G-Wagon and any Ford truck(s)." The Mercedes G-Wagon referenced is titled in the name of Jerod Furr individually. Furr's standing to object to the purported conveyance of his personally titled property is rooted in elementary due process: a person whose property is purportedly taken or conveyed by court order has standing, as a matter of constitutional law, to be heard before that taking. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010). This standing exists wholly independent of any creditor or equity-holder status under the Bankruptcy Code, and the Paragraph 18 finding does not reach it.

### B.  Furr's Standing as 51% Majority Equity Holder of Non-Debtor AEPH

12. AEPH is not a Debtor. Furr holds fifty-one percent (51%) of AEPH; Etter holds the other forty-nine percent (49%). See Furr Obj. (Dkt. No.  280) ¶¶ 2, 4. PMSA Exhibit A includes "AE Partners Holdings, Inc. equity" among the assets purportedly conveyed to Etter, and footnote 1 to

PMSA Paragraph 3 provides that "[a]ll existing equity will be canceled under the Plan." If given effect, these provisions would extinguish Furr's majority interest in a non-debtor parent entity and deliver to Etter — a 49% minority holder — effective 100% control of AEPH and, through AEPH, of its non-debtor subsidiaries (AEP Asset Holdings, the patent-holder, and Invictus). Furr has standing to object as the holder of the equity being canceled, and the Court's Paragraph 18 finding does not address this status. The finding addressed only Furr's relationship to the Debtors; it made no finding, and could make no finding, about Furr's ownership of equity in a non-debtor entity that was never before the Court.

C. **Furr's Standing Under the Carve-Out in Paragraph 69 of the Proposed Confirmation Order**

13. Paragraph 69 of the proposed Confirmation Order purports to address Movants' preserved interests, but on careful reading the provision does significantly less work than its language suggests, and what work it does is largely adverse to Movants. Paragraph 69 provides that the "Retained Causes of Action" — defined in the accompanying footnote to specifically include "the alleged estate causes of action in ECF No. 39, Plaintiff's Ninth Amended Complaint at Counts VA, VB, VC, VD, VE, and VI, and the alleged estate causes of action in ECF No. 40, Defendants' Counterclaim and Original Third-Party Petition at Counts A, B, C, D, F, G, H, I, and J" — "will be transferred to Etter pursuant to the PMSA Settlement Agreement." The provision then includes a narrow disclaimer: "to the extent that the Retained Causes of Action may include claims to equitable title to or interests in any drilling motors, patent, or other property owned by AEP Asset Holdings, LLC or in any equity claimed by Jerod Furr in AE Partners Holdings, Inc., nothing in this Confirmation Order shall be construed as an adjudication of any such claim."

14. What Paragraph 69 actually does, when read against the pleadings it incorporates, is extraordinary. The Counts of ECF No. 40 (the Counterclaim and Third-Party Petition) being transferred — Counts A, B, C, and D — are *Furr's own claims*, brought individually and derivatively on behalf of AEP, against Etter himself for breach of fiduciary duty, conversion, tortious interference, and misappropriation of trade secrets. Counts F through J are claims against Etter's confederates Travis Daily, Trinidad Peña, Specialized Energy Services LLC, L&L Ventures LLC, and TD Drilling Motors LLC. The PMSA, as implemented by Paragraph 69, would convey this entire litigation to Etter — the very defendant being sued — for $325,000. Once Etter holds the assignment, he would control both sides of the litigation: he can dismiss the claims against himself and against his confederates, defeating the prosecution of conduct that Furr's pleadings allege caused the destruction of the AEP business and the bankruptcy filings themselves. This is not a sale of estate causes of action; it is a $325,000 buyout of the litigation against Etter and his controlled entities, dressed up as a settlement.

15. The Counts of ECF No. 39 (Etter's Ninth Amended Complaint) being transferred under Paragraph 65-117-  are even more problematic, because they are not estate claims at all. Etter's Counts V.A, V.B, and V.C expressly seek "a constructive trust" on "ownership in AEPH" and "rescission of all or part of the 2022 restructure." Etter's application seeks "the winding up and termination of AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC," and seeks "a receivership over AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC, and/or their assets (specifically including but not limited to any ownership interest in Isodrill, Inc.)." These are Etter's personal claims against Furr seeking to alter, rescind, or terminate the ownership structure of four non-debtor entities. They are not, and never have been, property of the AFR or AEP estates. The Trustee has no authority to convey them

because the Trustee does not own them. The footnote's characterization of these counts as "estate causes of action" is a mischaracterization of what the Ninth Amended Complaint actually pleads.

16. The Paragraph 69 disclaimer does not solve these problems; it confirms them. The disclaimer states only that the Confirmation Order is not "an adjudication" of equitable-title claims to AEP Asset Holdings property or AEPH equity. It does not exclude such claims from the transfer to Etter. It does not prevent Etter from asserting them. It does not preserve Furr's or the non-debtor entities' rights to defend their property and equity in any specific forum or under any specific procedural protections. To the contrary, Paragraph 69 expressly provides that "Etter shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action ... as fully as if the Chapter 11 Cases had not been commenced." Read together with the underlying pleadings, Paragraph 69 transfers to Etter — for the consideration set forth in the PMSA — the litigation against Etter himself, plus Etter's own personal claims to rescind the AEPH corporate structure and to obtain receivership over four non-debtor entities, while reserving to Etter the unfettered right to assert all of it in subsequent litigation.  It is important to note that J Parker is not listed in the Complaint, but the Settlement Agreement purports to give that entity – solely owned by Jerod Furr – to Dustin Etter.

17. This is the precise structural problem this Motion addresses. The Trustee may not, by Rule 9019 settlement and/or plan confirmation, (a) sell to a defendant the lawsuit being prosecuted against him outside the scope of the ownership interests of the actual debtors, or (b) convey to a third party an unadjudicated cause of action against the equitable-title and equity interests of non-debtor entities and a non-debtor individual who were never made parties to these Chapter 11 Cases, never served with process under Bankruptcy Rule 7001(2), and never given notice or an opportunity to be heard on whether those interests are or are not property of the Debtors' estates.

Furr and the non-debtor entity Movants have standing to object to the Plan as proposed, Paragraph 69 itself, both as it operates as the instrument of the impermissible cause of action conveyance and as it must be modified — by either (a) excluding from the transfer to Etter any claim that may touch the equitable-title or equity interests of any non-debtor entity or of Furr individually, any claim brought by Furr against Etter, or any claim that seeks to alter or rescind the ownership of any non-debtor entity, or (b) expressly preserving Movants' rights to defend such claims in a properly commenced litigation matter, including what is most likely to happen here – the remand of these claims to state court.

### D.  Standing of the Non-Debtor Entity Movants

18. AEPH, AEP Asset Holdings, Invictus, and J Parker are not Debtors. The Court has made no finding, and could make no finding, that any of them lacks standing to defend its own property and equity from purported conveyance by an order of this Court. Each entity's standing is grounded in the same due process principles articulated in Mullane and Espinosa: a non-party whose property and equity are purportedly affected by a court order has standing to be heard. The fact that the entities have not previously appeared in these Chapter 11 Cases is precisely the point — they were not Debtors, were not served with process, and had no occasion to appear until the PMSA put their property and equity at issue.

### E.  The Non-Debtor Entity Movants Were Never Made Parties and Were Never Given Notice or an Opportunity to Be Heard

19. Each of the four non-debtor entity Movants — AEPH, AEP Asset Holdings, Invictus, and J Parker — has never been a Debtor in these Chapter 11 Cases. None has been named in any complaint, petition, motion, or contested matter commenced against it **in this proceeding**. None has been served with process. None has received notice that its equity, its property, its books and

records, its tax attributes, its intellectual property, its vehicles, or its causes of action were being conveyed to Etter for consideration of $325,000. None were present at the mediation that produced the PMSA that is sought to be approved, and none signed the PMSA. None was heard at the confirmation hearing in any capacity. The trustee's authority over these entities is, simply, nonexistent.

20. Furr's prior individual objection to confirmation (Dkt. No. 280) cannot be imputed to the four non-debtor entity Movants. Each non-debtor entity is a separate juridical person under Texas law. See Tex. Bus. Orgs. Code §§ 1.002, 101.001 et seq. Furr's appearance in his individual capacity as a creditor and equity holder of the Debtors does not, and cannot, constitute the appearance of any of the non-debtor entities. Indeed it is well settled that a legal entity may not appear in court except through licensed counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–03 (1993).[1] The non-debtor entity Movants now appear, by undersigned counsel, for the first time in these Chapter 11 Cases.

21. The deprivation of property without notice and an opportunity to be heard is a textbook violation of the Due Process Clause. *Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Espinosa,* 559 U.S. at 272.  It is fundamental both in our federal and state Constitutions that notice and opportunity to be heard are constitutional prerequisites to a binding adjudication. The PMSA and the proposed Confirmation

---

[1] The same logic applies to an application for in forma pauperis. "An artificial entity such as an association is not a "person" for purposes of 1915, and thus, only a natural person may qualify for treatment in forma pauperis under 1915." *Rowland v. California Men's Colony*, 506 U.S. 194, 196

Order, taken together, would adjudicate the property and equity of four non-debtor entities that have never received proper and legal bankruptcy notice that any such adjudication was occurring.

**V.**

**RELEVANT FACTS**

A.  **The Corporate Structure**

22. The corporate structure of the Movants and the Debtors is as follows, see Furr Obj. **(Dkt. No. 280) ¶¶** 2–12:

   a)   AE Partners Holdings, Inc. ("AEPH"), incorporated January 11, 2022, is a non-debtor parent entity. Furr owns fifty-one percent (51%) of AEPH. Etter owns the remaining forty-nine percent (49%).

   b)   AEP Asset Holdings, LLC, formed April 25, 2022, is a 100% subsidiary of AEPH. AEP Asset Holdings is a non-debtor and is the record owner at the United States Patent and Trademark Office of U.S. Patent No. 9,869,127. The patent was acquired by the AEPH/AEP Asset Holdings family of entities for approximately $1.5 million in total consideration, of which approximately $550,000 was specifically allocated to the patent itself. See Furr Obj. **(Dkt. No. 280-1) ¶¶** 4–5 (Crain Memo).

   c)   Invictus Drilling Motors, LLC, also formed April 25, 2022, is a 100% subsidiary of AEPH. Invictus is a non-debtor.

   d)   Alliance Energy Partners, LLC ("AEP"), incorporated October 26, 2020, is a Debtor. AEP is a 100% subsidiary of AEPH following the corporate reorganization completed in 2022.

   e)   Alliance Farm and Ranch, LLC ("AFR"), formed March 23, 2022, is a Debtor. AFR is solely owned by Furr (100%) and is not a subsidiary of AEPH. Etter has never held any interest in AFR.

f) J Parker Construction, LLC ("J Parker") is a non-debtor entity solely owned by Furr (100%). J Parker is not a subsidiary of AEPH.

g) Furr is a non-debtor individual. Furr holds:

    (i) fifty-one percent (51%) of AEPH;

    (ii) one hundred percent (100%) of AFR (a Debtor); and

    (iii) one hundred percent (100%) of J Parker. Furr also holds personal title to certain vehicles, including a Mercedes G-Wagon.

23. Accordingly, the Debtors are AFR and AEP only. Every other entity referenced in PMSA Exhibit A — AEPH, AEP Asset Holdings, Invictus, J Parker, and IsoDrill, Inc. — is a non-debtor.

B. **The PMSA and the Modified Plan**

24. On February 4, 2026, the Trustee filed the Notice of Mediated Settlement Agreement (Dkt. No. 242) attaching the PMSA **(Dkt. No. 242-1)**. The PMSA is between the Trustee, the Committee, and Etter only. It expressly recites that "[a]lthough Jerod Furr participated in the mediation, the other parties were unable to resolve matters with Mr. Furr. All of his rights are fully preserved." None of AEPH, AEP Asset Holdings, Invictus, or J Parker participated in the mediation, negotiated the PMSA, or signed it. None consented to its terms.

25. Paragraph 3 of the PMSA provides that, on the Effective Date, Etter will purchase from "the Estates," for $325,000.00, among other things:

a) all of the Estates' "claims, choses and rights of action";

b) "all non-cash assets of the Estates";

c) "all of the Estates' rights or ownership of each asset and entity listed on Exhibit 'A'";

d) "all of the Estates' claims that the Estates are the rightful owner of each asset or entity listed on Exhibit 'A'";

e) "all veil piercing, constructive trust, alter ego or other equitable claims with respect to the ownership and rights" to those assets and entities;

f) all rights, claims, and causes of action against Furr and his entities, affiliates, relatives, and agents; and

g) "100% of the equity" in each of the Debtors. Footnote 1 to Paragraph 3 adds: "All existing equity will be canceled under the Plan."

26. Exhibit A to the PMSA, however, sweeps far beyond "the Debtors" and lists the equity of, and a wide array of operating and intangible assets of, six entities: AEPH, Alliance Energy Partners, LLC, Invictus, AEP Asset Holdings, AFR, and J Parker. Of those, only AEP and AFR are Debtors. The remaining four — AEPH, Invictus, AEP Asset Holdings, and J Parker — are non-debtors. Exhibit A also sweeps in non-debtor IsoDrill equity, non-debtor vehicles "including but not limited to any Mercedes G-Wagon and any Ford truck(s)," non-debtor drilling motors and equipment, non-debtor books and records, non-debtor tax attributes, non-debtor intellectual property (including U.S. Patent No. 9,869,127), non-debtor reputational rights, and "any and all proceeds" thereof.

C. **The Confirmation Hearing and the Court's Expressed View**

27. On October 2, 2025, the Trustee and Committee filed the Combined Disclosure Statement and Chapter 11 Plan (Dkt. No. 187). On March 4, 2026, they filed the Modified Plan **(Dkt. No. 255)**, which incorporates the PMSA pursuant to section 1123(b)(3)(A). On April 9, 2026, Furr filed his Objection to Approval of Disclosure and to Confirmation of the Plan **(Dkt. No. 280)** (the "Furr Objection"), raising primarily disclosure-adequacy issues under 11 U.S.C. § 1125, the

trustee's failure to investigate estate causes of action, the unfairness of the PMSA compromise to non-insider creditors, and a request to convert the cases to Chapter 7. The Furr Objection did not raise the structural challenge under 11 U.S.C. § 363 to the PMSA's purported conveyance of non-debtor property and equity that is the subject of this Motion.

28. The Court conducted the confirmation hearing on April 16 and 17, 2026. During argument, counsel for Furr raised, as it pertained to non-debtors and the totality of their assets, the issue that the PMSA purports to convey assets of non-debtor entities and a non-debtor individual that are not property of the Debtors' estates. The Court expressed its view from the bench, in substance, that the Trustee cannot sell what the Debtors' estates do not own.

29. A proposed Confirmation Order is currently before the Court for entry, and is set for further consideration at the hearing scheduled for April 23, 2026, at 3:00 p.m. The proposed Confirmation Order, as drafted by the Plan Proponents, includes carve-out language at Paragraphs 61 and 69 that acknowledges, in narrow respects, the principle that the order does not adjudicate or convey title to certain non-debtor property. But the carve-out language does not extend to the totality of non-debtor assets the PMSA purports to convey, and the operative provisions of the proposed Confirmation Order — in particular Paragraphs 17, 19, and 43 — approve the PMSA and the Modified Plan in full, without limitation. As drafted, the proposed Confirmation Order does not faithfully implement the Court's expressed view from the bench. This Motion is filed to ensure that it does.

## VI.
### THE PROVISIONS THAT MUST BE STRICKEN OR MODIFIED TO IMPLEMENT THE COURT'S EXPRESSED VIEW

30. Movants seek relief targeted to specific, identifiable provisions, not to the PMSA as a whole. The provisions to be stricken or denied effect, in each case to the extent (and only to the

extent) they purport to transfer, convey, vest, cancel, release, or otherwise affect property, contracts, claims, equity, or other interests of any non-debtor entity or of Furr individually, are:

a) PMSA ¶ 3(i)–(vii) (the omnibus purchase clause), to the extent it purports to convey to Etter

(i) any non-debtor entity's claims, choses, or rights of action;

(ii) any non-debtor entity's non-cash assets;

(iii) the Estates' "rights or ownership" in any non-debtor entity or non-debtor asset on Exhibit A;

(iv) the Estates' "claims to be the rightful owner" of any non-debtor entity or non-debtor asset;

(v) veil-piercing, constructive-trust, or alter-ego claims as to non-debtor property;

(vi) any non-debtor entity's causes of action; or

(vii) the equity of any non-debtor entity (including AEPH, AEP Asset Holdings, Invictus, and J Parker).

b) PMSA Exhibit A in its entirety to the extent it lists the equity of, or assets, contracts, books, records, tax attributes, intellectual property (including U.S. Patent No. 9,869,127), vehicles (including the Mercedes G-Wagon titled to Furr personally), drilling equipment, intra-company receivables, reputational rights, IsoDrill equity, or proceeds of, AEPH, AEP Asset Holdings, Invictus, J Parker, or any other non-debtor entity, or any property of Furr individually.

c) Any provision of the Modified Plan (including without limitation the Plan provisions that vest "Estate Property" in the Liquidating Trust, that approve the PMSA,

that cancel equity, or that incorporate Exhibit A) to the extent it purports to vest, cancel, transfer, release, or otherwise affect any property, equity interest, or other interest of any non-debtor entity or of Furr individually.

d) Any purported equity cancellation in any non-debtor entity (including AEPH, AEP Asset Holdings, Invictus, and J Parker), and any related extinguishment of Furr's fifty-one percent (51%) equity interest in AEPH or sole equity interest in J Parker.

e) PMSA ¶ 2 (the mutual-release clause), to the extent it purports to release, waive, discharge, extinguish, or otherwise affect any claim, cause of action, right, or interest of any non-debtor entity (including AEPH, AEP Asset Holdings, Invictus, and J Parker) or of Furr individually against Etter, his affiliates, relatives, attorneys, or agents. The Trustee's release authority extends only to claims of the Estates; the Trustee may not release claims belonging to non-debtors.

f) Footnote 1 to PMSA ¶ 3, which provides that "[a]ll existing equity will be canceled under the Plan," to the extent it purports to cancel any equity in AEPH, AEP Asset Holdings, Invictus, J Parker, or any other non-debtor entity. Equity in non-debtor entities is not property of the Estates and is not subject to cancellation by the Plan or this Court. The footnote may operate only on equity interests in the Debtors themselves (AFR and AEP) that are property of the Debtors' Estates.

g) PMSA ¶ 8, to the extent it commits the Trustee and Etter to seek a temporary restraining order and injunction "with respect to the AEPH entity and any related assets, interests, or claims." AEPH is a non-debtor that is not before this Court, has not been served with any pleading commencing a contested proceeding against it, and has not been afforded notice and an opportunity to be heard as required by Federal Rule of Bankruptcy Procedure

7065 (incorporating Federal Rule of Civil Procedure 65). Approval of the PMSA should not, and cannot, constitute approval of any such injunctive relief against AEPH or any other non-debtor entity. Any application for a TRO or injunction affecting AEPH or its assets must be commenced as an adversary proceeding under Bankruptcy Rule 7001, with proper service, notice, and the procedural protections of Rule 7065.

h) Paragraph 69 of the proposed Confirmation Order and the corresponding transfer provisions in the PMSA, to the extent they purport to transfer to Etter

(i) any claims brought by Furr or AEP (derivatively) against Etter himself, including Counts A through D of ECF No. 40;

(ii) any claims against Etter's confederates Travis Daily, Trinidad Peña, Specialized Energy Services LLC, L&L Ventures LLC, or TD Drilling Motors LLC, including Counts F through J of ECF No. 40; or

(iii) any of Etter's personal claims that seek to alter, rescind, or terminate the ownership of any non-debtor entity (including AEPH, AEP Asset Holdings, Invictus, or J Parker), or that seek receivership or wind-up of any such entity, including Counts V.A through V.E and VI of ECF No. 39 and the related applications for receivership and wind-up at Sections VIII and IX of ECF No. 39.

## VII.
### ARGUMENT AND AUTHORITIES

A. **The Trustee's Authority Is Limited to Property of the Estate — Consistent With the Court's Expressed View.**

31. Section 541(a) of the Bankruptcy Code defines what becomes property of the bankruptcy estate. It includes "all legal or equitable interests of the debtor in property as of the commencement of the case," and the additional categories enumerated in section 541(a)(2) through (a)(7). 11 U.S.C. § 541(a). It is well settled that the estate includes only the debtor's interests in the property — no greater rights, no broader. *Begier v. IRS*, 496 U.S. 53, 59 (1990). The Court's expressed view from the bench at the confirmation hearing — that the Trustee cannot sell what the Debtors' estates do not own — is a direct application of section 541. "One of the central precepts of bankruptcy law is that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest." *Weinman v. Graves (In re Graves)*, 609 F.3d 1153, 1155 (10th Cir. 2010).

32. It necessarily follows that property held by a non-debtor third party — even an affiliate, subsidiary, or parent — is not property of the estate, and the trustee has no authority under section 363 to sell it or under section 1123 to transfer it. "[A) corporation has a separate legal existence from its shareholders, and the corporation, not its shareholders, owns the corporate assets and owes the corporate debts." *Fowler v. Shadel,* 400 F.3d 1016, 1018 (7th Cir. 2005). "[A)ssets owned by a corporation are not included in the bankruptcy estate of an individual shareholder." *Id.*; see also *Swartz v. Billingsley (In re Billingsley)*, 338 B.R. 372, 375–76 (B.A.P. 8th Cir. 2006). "The trustee's argument that the estate has an equitable interest in the funds solely by virtue of 82% stock ownership is also without merit. A corporation has a separate legal existence from its shareholders, and the corporation, not its shareholders, owns the corporate assets and owes the corporate debts." *In re Russell*, 121 B.R. 16, 17. The same principle applies in reverse: the assets of a parent or affiliate of the debtor are not property of the debtor's estate.

33. The Trustee may sell only what AFR and AEP owned as of the petition date (and what later came into the estates under section 541(a)(2)–(a)(7)). He may not, by stipulation or settlement with Etter, sell the equity, assets, books, vehicles, equipment, intellectual property, or causes of action of AEPH, AEP Asset Holdings, Invictus, or J Parker. He may not sell Furr's personally titled Mercedes G-Wagon. He may not cancel Furr's 51% equity in non-debtor AEPH. Each of those entities is a separate legal person whose property is its own, and Furr is a separate person whose property is his own. This is the basic principle the Court expressed at the confirmation hearing, and it should be implemented in the Confirmation Order.

B. **Section 363(h) and Rule 7001(3) Provide the Exclusive Mechanism for Reaching Co-Owned Property, and Their Requirements Have Not Been Met.**

34. Section 363(h) is the only Code provision that authorizes a trustee to reach a non-debtor's interest in property, and it does so only in narrow, prescribed circumstances. To sell a co-owner's interest in property the trustee must establish, by adversary proceeding: (1) that partition in kind among the estate and co-owners is impracticable; (2) that sale of the estate's undivided interest would realize significantly less for the estate than sale of the property free of the co-owners' interests; (3) that the benefit to the estate of a section 363(h) sale outweighs the detriment to the co-owners; and (4) that the property is not used in the production, transmission, or distribution of electric energy or natural or synthetic gas for heat, light, or power. 11 U.S.C. § 363(h). And Federal Rule of Bankruptcy Procedure 7001(3) requires that any proceeding to sell co-owned property under section 363(h) be commenced as an adversary proceeding. Fed. R. Bankr. P. 7001(3).

35. The **Trustee** here has commenced no such adversary proceeding. He has made no four-element showing. He has effected no notice to AEPH, AEP Asset Holdings, Invictus, J Parker, or to Furr individually as a co-owner of property he claims. Instead, the PMSA collapses the procedural and substantive protections of section 363(h) and Rule 7001(3) into a Rule 9019

settlement agreement/confirmation plan hearing — and asks the Court to approve, through plan confirmation, what the Code mandates be approved through adversary proceeding with findings.

### C.  A Rule 9019 Compromise/Plan Confirmation Cannot Authorize What Section 363 Would Not Permit.

36. It is a settled corollary of section 363's limits that a Rule 9019 compromise cannot do indirectly what section 363 forbids directly. A settlement that purports to convey property of non-debtors must comply with the Code's authority to sell such property; if no such authority exists, the settlement is beyond the trustee's power and cannot be approved. *See Goodwin v. Mickey Thompson Entm't Grp. (In re Mickey Thompson Entm't Grp.)*, 292 B.R. 415, 421–23 (B.A.P. 9th Cir. 2003); *Reynolds v. Comm'r,* 861 F.2d 469, 473 (6th Cir. 1988). A Rule 9019 compromise is approved only if it is "fair, equitable, and in the best interests of the estate," *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917 (5th Cir. 1995), and within the trustee's authority. A settlement that exceeds the trustee's authority is, by definition, not in the best interests of the estate — because it cannot lawfully be performed.

### D.  PMSA ¶ 3(iv)–(v) Cannot Be Saved by Recasting the Conveyance as a Sale of "Claims of Ownership."

37. The PMSA attempts to navigate around the section 541 limit through clever drafting in Paragraph 3(iv) and (v): rather than purporting to convey the non-debtor property directly, it purports to convey "all of the Estates' claims that the Estates are the rightful owner of each asset or entity listed on Exhibit 'A'" and "all veil piercing, constructive trust, alter ego or other equitable claims with respect to the ownership and rights" to those assets and entities. This is a distinction without a difference. The estates' alleged claims to be the rightful owner of non-debtor property are themselves contested choses in action that have not been adjudicated in any adversary proceeding under Bankruptcy Rule 7001(2) (validity, priority, or extent of an interest in property).

Selling such an unadjudicated chose to a third party who will then assert it against the non-debtor entities does not avoid the section 363 / Rule 7001 problem — it weaponizes the non-debtors' absence from these proceedings, allowing Etter to litigate against AEPH, AEP Asset Holdings, Invictus, and J Parker in some downstream forum on the strength of an assignment from the Trustee. The Court's expressed view at the hearing — that the Trustee cannot sell what the estates do not own — applies with equal force whether the conveyance is direct or is repackaged as a cause of action assignment.

### E.   Binding Fifth Circuit and Supreme Court Authority Confirms That Bankruptcy Authority Does Not Extend to Non-Debtor Property and Rights.

38. In *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 132 F.4th 353 (5th Cir. 2025), the Fifth Circuit st.ruck down portions of a confirmed Chapter 11 plan that improperly shielded non-debtors from liability, holding that such provisions exceeded the bankruptcy court's authority under 11 U.S.C. § 524(e). The Fifth Circuit's holding rests on a principle that applies with equal or greater force here: the Bankruptcy Code does not authorize a plan or order to reach non-debtor rights without express statutory grant. Although Highland Capital addressed releases of claims against non-debtors, the underlying rule — that bankruptcy authority is limited to debtors and their estates absent specific Code authorization — applies a fortiori to the conveyance of non-debtor property and equity itself.

39. The Supreme Court reinforced this principle in *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024), holding that the Bankruptcy Code does not authorize a Chapter 11 plan to discharge claims against non-debtors without claimant consent. The reasoning sweeps broadly: where Congress has not expressly extended bankruptcy authority to a particular non-debtor matter,

that authority does not exist. *Id.* The PMSA's purported conveyance of non-debtor equity, non-debtor property, and non-debtor causes of action runs squarely into this limit.

40. The Supreme Court has further made clear that section 1123(b)(6), the Chapter 11 catch-all, is not a license to circumvent the Code's substantive limitations. *Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, 469–71 (2017). Therefore, arguably, Section 1123(b)(6) cannot be used to do through a plan what the trustee cannot do through section 363. By extension, neither section 1123(b)(6) nor section 1123(a)(5) can authorize the conveyance of property that is not property of the estate.

### F. The Provisions Violate the Due Process Clause of the Fifth Amendment.

41. Even setting aside the Bankruptcy Code's substantive limits, the Due Process Clause prohibits the deprivation of property without notice and a meaningful opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). AEPH, AEP Asset Holdings, Invictus, and J Parker are non-parties to the PMSA; they did not receive notice that their entire equity, all of their assets, and even their multi-million dollar patents and motors were being transferred for $325,000;[2] and they were not heard in the mediation. Furr was carved out of the PMSA on its face ("All of his rights are fully preserved"), yet his fifty-one percent (51%) AEPH equity, his sole interest in J Parker, and his personally titled Mercedes G-Wagon are nevertheless on Exhibit A.

42. A bankruptcy court's adjudication of property and rights of non-debtors implicates Article III as well. *Stern v. Marshall*, 564 U.S. 462, 482–503 (2011), holds that bankruptcy courts lack constitutional authority to enter final judgment on state-law claims and property determinations as

---

[2] The math does not "math".  Dustin Etter will pay substantially less than what the value of the patent and motors are and will argue that they belong to him if this plan is confirmed.  That means that not only is he being treated better than any other creditor in this estate, but also he is getting more tangible and intangible dollar value than the entire value of the full estate.  It's unconscionable.

against non-debtors that are not integral to the restructuring of the debtor-creditor relationship, absent the parties' consent. Wellness Int'l Network, 575 U.S. at 685. None of the Movants has consented to the final adjudication by this Court of any state-law claim or property right; on the contrary, Movants object.

### G.  **The Provisions Cannot Be Approved Without an Adversary Proceeding.**

43. Even if the provisions were not facially beyond the Trustee's authority, they could not be approved as drafted because the procedural mechanism used — a confirmation hearing in lieu of an adversary proceeding — is not a substitute for the adversary proceeding required by Federal Rule of Bankruptcy Procedure 7001 to determine the validity, priority, or extent of an interest in property, to recover property, to obtain a declaratory judgment, or to obtain injunctive relief. Fed. R. Bankr. P. 7001(1), (2), (3), (7), (9). The Fifth Circuit's decision in *In re Zale Corp.*, 62 F.3d 746, 763–67 (5th Cir. 1995), is directly on point: when a plan or settlement reaches non-debtor rights, the procedural protections of Rule 7001 must be observed.

### H.  **The Trustee Cannot Release Claims That Belong to Non-Debtors.**

44. Paragraph 2 of the PMSA provides for "full, complete and comprehensive mutual releases" between the Estates and Etter (and his affiliates, relatives, attorneys, and agents) of "all claims arising from the beginning of the Universe through the Effective Date." The carve-out language in Paragraph 2 protects "Furr, any agent[,) relative, or non-debtor entity of his, the Realtor Defendants in the adversary proceeding, [and) IsoDrill, Inc." — but it does so only as a limit on what the Trustee is releasing. It does nothing to alter the basic rule of law that the Trustee may release only claims that belong to the Estates. To the extent Paragraph 2 of the PMSA, or any provision of the Modified Plan, or any provision of any proposed Confirmation Order, could be read to release, waive, discharge, or extinguish any claim or cause of action of AEPH, AEP Asset

Holdings, Invictus, J Parker, or Furr against Etter (or his affiliates, relatives, attorneys, or agents), such provision is void and unenforceable.

## I.   Footnote 1 Cannot Cancel Equity in Non-Debtor Entities.

45. Footnote 1 to Paragraph 3 of the PMSA provides that "[a]ll existing equity will be canceled under the Plan." Equity cancellation under a Chapter 11 plan operates only on equity interests in the debtor that are property of the estate. See 11 U.S.C. §§ 541(a), 1123(a)(5)(J), 1123(b). The Plan can cancel equity interests in AFR and AEP — the only Debtors. It cannot cancel equity interests in AEPH (in which Furr holds 51% and Etter holds 49%), AEP Asset Holdings (a non-debtor wholly-owned by AEPH), Invictus (a non-debtor wholly-owned by AEPH), or J Parker (a non-debtor wholly-owned by Furr). The non-debtor entities are not before this Court, their equity interests are not property of any estate, and any plan provision purporting to cancel them is void and unenforceable.

## J.   The PMSA Cannot Authorize Injunctive Relief Against AEPH Without an Adversary Proceeding.

46. Paragraph 8 of the PMSA provides that the Trustee and Etter "will, promptly upon execution of this agreement, seek a temporary restraining order and injunction to preserve the status quo with respect to the AEPH entity and any related assets, interests, or claims." AEPH is a non-debtor. AEPH has not been named as a defendant in any adversary proceeding seeking such relief. AEPH has not been served with process. Federal Rule of Bankruptcy Procedure 7065 makes Federal Rule of Civil Procedure 65 applicable in adversary proceedings, and Bankruptcy Rule 7001(7) requires that proceedings to obtain injunctive relief be commenced by adversary proceeding. None of these requirements has been satisfied as to AEPH. *See In re Zale Corp.*, 62 F.3d at 763 (adversary proceeding required for injunctive relief affecting non-debtors).

K. **If the Confirmation Order Has Been Entered, Rule 9024 / Rule 60(b)(4) and (6) Provide Independent Grounds for Relief.**

47. The hearing is tomorrow at 3:00 p.m.  If the Confirmation Order is entered before the Court rules on this Motion, Movants are entitled to relief from order under Federal Rule of Bankruptcy Procedure 9024 (incorporating Federal Rule of Civil Procedure 60(b)(4) and (6)).

48. Rule 60(b)(4) provides relief from a judgment that is "void." A judgment is void where the court acted in a manner inconsistent with due process. Espinosa, 559 U.S. at 271. As applied to the four non-debtor entity Movants, the Confirmation Order is void to the extent it purports to convey their property and equity, because they were never served with process, never received notice that their property was at issue, and never had an opportunity to be heard. As applied to Furr in his capacity as the personal title holder of the Mercedes G-Wagon, the order is void to the extent it purports to convey personally titled property without the procedural protections required by Rule 7001(2). The lack-of-due-process ground for voidness under Rule 60(b)(4) is an exception to the finality presumption that attaches to confirmed plans. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

49. Rule 60(b)(6) provides relief for "any other reason that justifies relief." Extraordinary circumstances exist here because the order purports to convey property and equity of non-debtors who were never made parties, never appeared, and had no opportunity to be heard — in direct tension with the Court's expressed view from the bench that the Trustee cannot sell what the estates do not own. *See In re Balzano,* 399 B.R. 428 (Bankr. D. Md. 2008); *Johnson v. Stemple (In re Stemple),* 361 B.R. 778 (Bankr. E.D. Va. 2007).

50. The Court has broad authority under 11 U.S.C. § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  This authority extends to the confirmation process and includes the power to enter a Confirmation Order

containing carve-outs, reservations, and clarifying language that ensure the order conforms to the Code's substantive limits and to the Court's prior expressed views. "A bankruptcy court has the discretion to, sua sponte, strike provisions of a Chapter 11 plan that do not comply with the confirmation requirements of 11 U.S.C.S. § 1129. The United States Court of Appeals for the Fifth Circuit and certain district courts have upheld the confirmation of plans that were modified by the bankruptcy court in the confirmation order." *In re Cypresswood Land Partners, I,* 409 B.R. 396, 403.

51. Federal Rule of Bankruptcy Procedure 3020(b) likewise confirms that a Confirmation Order may be entered with such terms as the Court determines are appropriate to render the plan compliant with applicable law. The carve-out provisions requested in this Motion would not partially confirm or partially reject the Plan; they would confirm the Plan as a whole while expressly limiting the scope of the conveyance to what section 541 authorizes — that is, property of the Debtors' estates only. This is not a piecemeal confirmation; it is the entry of a Confirmation Order with the limitations that the Bankruptcy Code itself imposes and that the Court already articulated from the bench. Section 105(a) authorizes precisely this remedy, and Bankruptcy Rule 3020(b) authorizes precisely this procedural vehicle. The carve-outs requested below are necessary and appropriate to ensure that the Confirmation Order, when entered, does not exceed the Trustee's authority under the Code or the limits the Court has already recognized.

## VIII.
## RESERVATION OF RIGHTS

52. Movants expressly reserve all rights, claims, defenses, counterclaims, cross-claims, third-party claims, and objections of every kind, including without limitation: in connection with Adversary Case No. 25-03382; all claims and causes of action of every kind held by any Movant against Etter and his affiliates, relatives, attorneys, and agents; all rights to seek reconsideration

under Bankruptcy Rule 9023 and relief from order under Bankruptcy Rule 9024 (incorporating Federal Rule of Civil Procedure 60(b)); all appellate rights, including under Bankruptcy Rule 8002; and all rights arising under Article III of the United States Constitution, the Due Process Clause of the Fifth Amendment, 11 U.S.C. §§ 105, 363, 524(e), 541, 1109, 1123, and 1129, Federal Rules of Bankruptcy Procedure 3020, 7001, 7065, 9014, 9019, 9023, and 9024, Federal Rule of Civil Procedure 59(e) and 60(b), and any applicable non-bankruptcy law. Nothing in this Motion shall be construed as a waiver of any such right or as consent to the entry of final orders by this Court on any matter as to which the Court lacks constitutional authority absent the parties' consent.

## IX.
## CONCLUSION AND PRAYER FOR RELIEF

53. For the foregoing reasons, Movants respectfully request that the Court enter an order granting the following relief, in the order requested:

a) <u>Conform the Confirmation Order to the Court's Expressed View</u>. Decline to approve, decline to enter, or strike from any Confirmation Order entered in these Chapter 11 Cases the provisions of Paragraphs 2, 3, and 8 of the PMSA (including footnote 1 to Paragraph 3) and Exhibit A thereto, and Paragraph 69 of the proposed Confirmation Order, and the corresponding provisions of the Modified Plan, identified in Section VI above, in each case to the extent (and only to the extent) they purport to transfer, convey, vest, cancel, release, waive, discharge, extinguish, enjoin, or otherwise affect any property, equity interest, contract, claim, cause of action, book or record, tax attribute, intellectual property, vehicle (including the Mercedes G-Wagon titled to Furr personally), equipment, or other interest owned or held by AEPH, AEP Asset Holdings, Invictus, J Parker, any other non-debtor entity, or Furr individually, consistent with the Court's expressed view from the

bench at the April 16–17, 2026 confirmation hearing that the Trustee cannot sell what the Debtors' estates do not own.

    b)  <u>Reconsideration of the Standing Finding</u>. In the alternative, if the Court enters the Confirmation Order, Movants respectfully request that the Court reconsider, pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e), the standing finding in Paragraph 18 of the proposed Confirmation Order to the extent that finding may be construed to reach: (i) Furr's standing as the record title owner of personally titled property included in PMSA Exhibit A, including the Mercedes G-Wagon; (ii) Furr's standing as the 51% majority equity holder of non-debtor AEPH; (iii) Furr's standing under the carve-out in Paragraph 69 of the proposed Confirmation Order preserving his equitable-title claims; or (iv) the standing of the non-debtor entity Movants — AEPH, AEP Asset Holdings, Invictus, and J Parker — as record owners of property and equity purportedly conveyed by the PMSA. The standing finding in Paragraph 18 was made in the context of confirmation and addressed only Furr's status as a creditor and equity holder of the Debtors. It did not address — and could not have addressed — property-owner standing, non-debtor equity-holder standing, or the standing of non-debtor entities that were never before the Court.

    c)  <u>Clarification of the Confirmation Order</u>. In the further alternative, if the Court declines to reconsider the standing finding, Movants request that the Confirmation Order, when entered, expressly clarify that:

        (i)    the standing finding in Paragraph 18 addresses only Furr's status as a creditor and equity holder of the Debtors and does not reach the property-owner, non-debtor-equity-holder, or non-debtor-entity standing of any Movant;

(ii)   the Confirmation Order does not adjudicate or convey title to any property held in the personal name of any non-debtor or in the name of any non-debtor entity;

(iii)   the carve-outs in Paragraphs 61 and 69 of the proposed Confirmation Order extend to all property, equity, claims, and interests of all non-debtor entities and non-debtor individuals identified in PMSA Exhibit A, not solely to those expressly enumerated in Paragraph 69, consistent with the Court's expressed view from the bench;

(iv)   any equity cancellation provision in the Modified Plan operates only on equity interests in the Debtors that are property of the Debtors' Estates and not on equity interests in any non-debtor entity, including AEPH, AEP Asset Holdings, Invictus, or J Parker;

(v)   approval of the PMSA does not authorize, and shall not be construed to authorize, the entry of any TRO, preliminary injunction, or other injunctive relief against AEPH or any other non-debtor entity absent commencement of an adversary proceeding under Bankruptcy Rule 7001 and compliance with Bankruptcy Rule 7065; and

(vi)   the Movants' rights to pursue their property and ownership claims in any appropriate forum are fully preserved.

d)   <u>Relief from Order Under Rule 9024 / Rule 60(b)</u>. In the further alternative, if the Confirmation Order has been entered before the Court rules on this Motion, Movants request relief from the order pursuant to Federal Rule of Bankruptcy

Procedure 9024 (incorporating Federal Rule of Civil Procedure 60(b)(4) and (6)), to the extent and on the grounds set forth in Section VII.K above.

e) <u>Findings for Appellate Review</u>. In the further alternative, if the Court grants none of the foregoing relief, Movants request that the Court make express findings on the record sufficient to permit appellate review of: (i) the Court's authority to convey non-debtor property and non-debtor equity under 11 U.S.C. §§ 363(b), 363(h), 1123(a)(5), 1123(b)(3), and 1123(b)(6); (ii) the Court's standing analysis as applied to property-owner Movants, non-debtor-equity-holder Movants, and non-debtor entity Movants; (iii) the Court's analysis under Stern v. Marshall and the Due Process Clause as applied to non-debtor property determinations made without an adversary proceeding under Bankruptcy Rule 7001; and (iv) the Court's analysis under In re Highland Capital Management, L.P., Harrington v. Purdue Pharma L.P., and Czyzewski v. Jevic Holding Corp.

f) <u>Further Relief</u>. Granting Movants such other and further relief, at law or in equity, as is just and proper.

Filed April 23, 2026                    Respectfully submitted,

                                        E-Merger.Law, PLLC


                                        /s/ Deborah L. Crain
                                        _____
                                        Deborah L. Crain
                                        Bar Card No.: 24067319
                                        1334 Brittmoore Rd Ste 2314
                                        Houston, TX 77043-4037
                                        dcrain@e-merger.law
                                        (346) 535-0822
                                        COUNSEL FOR  MOVANTS AE PARTNERS
                                        HOLDINGS, INC., AEP ASSET HOLDINGS,

LLC, INVICTUS DRILLING MOTORS, LLC,
J. PARKER CONSTRUCTION, LLC and
JEROD FURR

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF notification system on all parties registered to receive electronic notice in these Chapter 11 Cases.

*/s/ Deborah L. Crain*

Deborah L. Crain