**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 25-30155** |
| | § | |
| **ALLIANCE FARM AND RANCH, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR** | § | |
| | § | |
| **IN RE:** | § | **CASE NO. 25-31937** |
| | § | |
| **ALLIANCE ENERGY PARTNERS, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| | § | |
| **DEBTOR** | § | |

**ORDER CONFIRMING MODIFIED COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION OF ALLIANCE FARM AND RANCH, LLC
AND ALLIANCE ENERGY PARTNERS, LLC PROPOSED BY THE CHAPTER 11
TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

On April 16 and April 17, 2026, the Court conducted a hearing (the "Confirmation Hearing") to consider Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Rach, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors, dated October 2, 2025, (the "Initial Plan") [DE 187] and as modified by the Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Rach, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors, dated, March 4, 2026, (the "Modified Plan") [DE 255] and final approval of the disclosure statement (the "Disclosure Statement") therein, jointly filed by Tom A. Howley, in his capacity as the chapter 11 trustee (the "Trustee") of Alliance Farm and Ranch, LLC ("AFR") and Alliance Energy Partners, LLC ("AEP," and together with AFR, the "Debtors"), in the above-captioned

126985.000001  4910-4700-7650.1

chapter 11 cases (the "Chapter 11 Case") and the Official Committee of Unsecured Creditors of the Debtors (the "Committee" and together with the Trustee, the "Plan Proponents"). As referred to herein, the "Plan" shall be the Plan attached to this Confirmation Order as Exhibit 1, as modified by the Modified Plan attached to this Confirmation Order as Exhibit 2, along with all over modifications referred to herein.[1] Based on the Declaration of Tom A. Howley, Chapter 11 Trustee, In Support of the Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors (the "Howley Declaration") [DE 288], the Declaration of Erik White In Support of the Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors (the "White Declaration") [DE 290], and the admitted exhibits, the arguments and representation of counsel, and the entire record in the Chapter 11 Cases, the Court makes the following findings of fact and conclusions of law in support of final approval of the Disclosure Statement and Confirmation of the Plan pursuant to Bankruptcy Rule 7052, as made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   *Introduction*

1.   On January 7, 2025, the AFR Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PlanthePlan attached hereto as Exhibit 1 or the Modified Plan attached hereto as Exhibit 2.

126985.000001 4910-4700-7650.1

District of Texas, Houston Division (the "Court"). Upon motion of the AFR Debtor, the chapter 7 case was converted to a case under chapter 11 of the Bankruptcy Code on March 19, 2025. On April 7, 2025, the AEP Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are now jointly administered.

2. On May 12, 2025, the United States Trustee appointed the Committee in the Debtors Chapter 11 Cases.

3. On May 22, 2025, the Committee filed its Emergency Motion for Appointment of Chapter 11 Trustee (the "Trustee Motion") [DE 98]. On May 23, 2025, the Court entered its order granting the Trustee Motion [DE 112]. On May 27, 2025, the United States Trustee filed its Emergency Motion to Approve Appointment of Tom A. Howley as Chapter 11 Trustee [DE 115]. On May 27, 2025, the Court entered its Order Approving Appointment of Tom A. Howley as Chapter 11 Trustee [DE 117].

**B.** *Jurisdiction and Venue*

4. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Confirmation of this Plan is a core matter under 28 U.S.C. § 157(b), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

**C.** *Eligibility for Relief*

5. The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

126985.000001  4910-4700-7650.1

### D.     D.     Solicitation Materials and Related Matters

6.     6.     On October 2, 2025, the Plan Proponents filed the Plan.

7.     7.     On February 4, 2026, the Trustee filed a Notice of Mediated Settlement Agreement Between Limited Number of Mediating Parties (the "PMSA Settlement Agreement Notice") [DE 242]. Attached to the Settlement Agreement Notice as Exhibit A was the Mediated Settlement Agreement Between Limited Number of Mediating Parties (the "PMSA Settlement Agreement") [DE 242-1]. The PMSA Settlement Agreement is attached hereto as Exhibit 3.

8.     8.     On March 4, 2026, the Plan Proponents filed the Modified Plan. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Modified Plan modifies the Plan to incorporate (i) the settlement between AEP and AFR (the "AEP/AFR Settlement Agreement"); and (ii) the PMSA Settlement Agreement.

9.     9.     Also on March 4, 2026, the Plan Proponents filed objections ("Objections to Furr Claims") to all of Furr's filed proofs of claim. [DE 256, 257, 258].

10.     10.     On March 9, 2026, the Court entered its Order (I) Conditionally Approving the Adequacy of the Modified Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Modified Plan; (II) Approving the Form of Various Ballots and Notices in Connection Therewith; and (IV) Approving the Scheduling of Certain Dates in Connection with Confirmation of the Modified Plan (the "Disclosure Statement Order") [DE 262] The Committee caused the approved forms of Combined Hearing Notice and Solicitation Materials to be served upon the parties as required pursuant to the terms of the Disclosure Statement Order. See DE 304 (Certificate of Service).

4

126985.000001  4910-4700-7650.1

11.    11.    The Solicitation Materials and the Plan Documents contained therein comply with the terms of the Plan and the Disclosure Statement Order, and notice of such documents was good and proper.

12.    12.    On April 13, 2026, the Plan Proponents filed the Voting Report [DE 284]. The procedures by which Ballots were received and tabulated in the Ballot Summary was fair and properly conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Approval Order.

E.    E.    *Disclosure Statement*

13.    13.    The Disclosure Statement contains: (i) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules and regulations, including the Securities Act; and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, the Modified Plan and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

F.    F.    *Objections to Confirmation of the Plan and Disposition Thereof*

14.    14.    Pursuant to Disclosure Statement Order, the Court established April 9, 2026, at 6:00 p.m. (prevailing Central Time) as the deadline to object to the Confirmation of the Plan (the "Confirmation Objection Deadline"). On April 9, 2026, Jerod Furr filed his Objection to Approval of Disclosure and to Confirmation of the Plan (the "Furr Objection") [DE 280]. At the Confirmation Hearing, the Court overruled the Furr Objection. No other formal objections to Confirmation of the Plan were filed prior to the Confirmation Objection Deadline. To the extent any untimely Confirmation Objections, or pleadings depicting to a Confirmation Objection, were

5

filed, and were not withdrawn or otherwise resolved, the record demonstrates by a clear preponderance of the evidence that the Plan should be confirmed, and the Confirmation Objections should be, and hereby are, overruled.

G. *G. Confirmation Hearing*

15. 15. On April 16 and April 17, 2026, the Court held the Confirmation Hearing. At the Confirmation Hearing, the Plan Proponents established the following record in support of Confirmation of the Plan: (a) all documents identified on the Plan Proponents' Witness and Exhibit List filed in the Chapter 11 Cases in support of Confirmation; (b) the Howley Declaration; (c) the White Declaration; (d) the testimony at the Confirmation Hearing; (e) the evidence in respect of transmittal and service of the Solicitation Materials; (f) the Voting Report; (g) the entire record of the Chapter 11 Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered by the Court, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, as to all of which the Court takes judicial notice; (h) the statements and argument of counsel on the record at the Confirmation Hearing; (i) all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with Confirmation of the Plan.

H. *H. Objections to Furr Claims*

16. 16. Before addressing the confirmation issues, the Court held a hearing on the Objections to Furr Claims. For the reasons stated on the record and by separate Orders of this Court, the Objections to the Furr Claims were sustained and the claims of Furr were disallowed.

I. *I. AEP/AFR Settlement is Approved*

17. Pursuant to section 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporated the AEP/AFR Settlement Agreement for approval by this Court. For the reasons stated on the record, the AEP/AFR Settlement Agreement is fair and equitable and in the best interest of the estate and is hereby approved pursuant to section 1123 of the Bankruptcy Code, in each case to the extent (and only to the extent) the AEP/AFR Settlement Agreement transfers, conveys, vests, releases, or otherwise affects property of the Debtors' estates within the meaning of 11 U.S.C. § 541. Approval extends only to property of the Debtors' estates and does not authorize the conveyance, vesting, release, or other adjudication of any property, equity, contract, claim, cause of action, or other interest of any non-debtor entity or of Jerod Furr individually. The objections by Furr are overruled except as preserved by Paragraph 18 below and the limitations stated herein.

### J. Furr Lacks Standing

18. "The Coiurt finds and concludes that Jerod Furr lacks standing (a) to object to the proposed settlement contained in paragraph 2 of the MOdification; (b) to object to the PMSA, and (c) to object to confirmation of the Plan as Modified." Furr lacks standing, i.e., he lacks any pecuniary interest, to object to issues related to confirmation of the Plan based on the following findings by this Court (i) Furr's claims have been disallowed; (ii) the AEP/AFR Settlement has been approved and the money held by AFR shall be turned over to the AEP estate for the benefit of the creditors of AEP; (iii) Furr does not hold a claim against AFR and only holds an equity interest against AFR; and (iv) Furr does not hold a claim or any equity interest against AEP. For the avoidance of doubt, this finding addresses only Furr's status as a creditor and equity holder of the Debtors. This finding does not, and shall not be construed to, address, reach, or foreclose: (a) Furr's standing as the record title owner of personally titled property included in PMSA Exhibit

7

126985.000001  4910-4700-7650.1

A, including the Mercedes G-Wagon; (b) Furr's standing as the 51% majority equity holder of non-debtor AE Partners Holdings, Inc.; (c) Furr's standing under the carve-outs preserved in Paragraphs 61 and 69 of this Confirmation Order; or (d) the standing of any non-debtor entity, including AE Partners Holdings, Inc., AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, and J Parker Construction, LLC, to defend its own property and equity in any appropriate forum.

K.    K.    *The PMSA Settlement Agreement is Approved*

19.    19.    Pursuant to section 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporated the PMSA Settlement Agreement for approval by this Court. In addition to the reasons stated on the record, the Court finds that that PMSA Settlement Agreement is fair and equitable under the standard articulated in *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). Given the novelty and complexity of the legal issues involved, the probability of success, and the expense of the continued litigation, the Court finds that the PMSA Settlement Agreement is in the best interests of the Estate and its creditors, and that its terms are appropriate under the circumstances. The PMSA Settlement Agreement is the product of arms-length bargaining and extensive negotiations among the parties thereto, and is not the result of fraud or collusion. Notwithstanding the foregoing, approval of the PMSA Settlement Agreement extends only to those provisions that transfer, convey, vest, release, or otherwise affect property of the Debtors' estates within the meaning of 11 U.S.C. § 541. The Court does not approve, and this Confirmation Order does not give effect to: (a) PMSA Paragraph 3(i) through (vii) and Exhibit A thereto, to the extent they purport to convey to Etter the equity, assets, books, records, vehicles (including the Mercedes G-Wagon titled to Jerod Furr personally), drilling motors, equipment, intellectual property (including U.S. Patent No. 9,869,127, owned of record by non-debtor AEP

8

126985.000001  4910-4700-7650.1

Asset Holdings, LLC), tax attributes, contracts, claims, or causes of action of any non-debtor entity (including AE Partners Holdings, Inc., AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, J Parker Construction, LLC, and IsoDrill, Inc.) or any property of Jerod Furr individually; (b) PMSA Paragraph 2 (the mutual-release provision) to the extent it purports to release, waive, discharge, or extinguish any claim or cause of action of any non-debtor entity or of Jerod Furr individually; (c) footnote 1 to PMSA Paragraph 3 to the extent it purports to cancel equity in any non-debtor entity; or (d) PMSA Paragraph 8 to the extent it purports to authorize the Trustee or Etter to seek a temporary restraining order or injunction with respect to AE Partners Holdings, Inc. or any other non-debtor entity. The Court's approval of the PMSA Settlement Agreement is consistent with, and limited by, the Court's view expressed from the bench at the April 16–17, 2026 Confirmation Hearing that the Trustee cannot sell what the Debtors' estates do not own.

20.    20.    For the avoidance of doubt, this Court's approval of the AEP/AFR Settlement Agreement and the PMSA Settlement Agreement results in the following: (i) after payment to Dustin Etter ("Etter") pursuant to the PMSA Settlement Agreement (i.e., the net amount owed to Etter), there are no creditors of the AFR estate; and (ii) all the money being held by the AFR estate shall be turned over to the AEP estate for distribution to the professional fee claims, administrative claims, if any, the money allocated for Liquidating Trust ($75,000), and then to the allowed general unsecured creditors of AEP estate. Further, because 100% of the equity in each of the Debtors shall be transferred to Etter, Etter shall be solely responsible for any tax returns associated with the Debtors. For the further avoidance of doubt, this Confirmation Order does not transfer to Etter any equity in any non-debtor entity, including AE Partners Holdings, Inc. (in which Furr holds 51% and Etter holds 49%), AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, J Parker Construction, LLC, or IsoDrill, Inc., and any equity-cancellation provision

9

126985.000001 4910-4700-7650.1

of the Modified Plan operates only on equity interests in the Debtors (AFR and AEP) that are property of the Debtors' estates.

### L.   L.   *Applicable Confirmation Requirements*

21.   21.   To confirm the Plan, the Plan Proponents are required to demonstrate that the Plan satisfies the provisions of Bankruptcy Code section 1129 by a preponderance of the evidence. See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II), 994 F.2d 1160, 1163-65 (5th Cir. 1993), cert. denied, 510 U.S. 992 (1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down"). Here, the Plan Proponents have satisfied their burden of proof with respect to Confirmation of the Plan.

#### i.   i.   *11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11*

22.   22.   The classification and treatment of Claims and Interests are described in Articles VI and VII of the Plan, and the Plan implementation procedures are described in Article X of the Plan. The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code, and the Plan complies with the applicable provisions of section 1123 of the Bankruptcy Code. The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied. The Plan Proponents have complied with the terms of the Disclosure Statement Order, and the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Bankruptcy Local Rules for the Southern District of Texas. As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

#### ii.   ii.   *11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith*

23.   23.   The Plan Proponents have proposed the Plan with the legitimate and honest purpose of restructuring their financial affairs and making distributions to Holders of Claims. The

10

Plan has not been proposed by any means forbidden by law. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. The Plan is the result of good faith, arm's-length negotiations among the Plan Proponents, Holders of Claims and Interests, and other parties in interest. Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

iii.      iii.      *11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments*

24.      24.      Any payment made, or to be made, by the Debtors' estates for services or for costs and expenses during or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

iv.      iv.      *11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders*

25.      25.      As required by section 1129(a)(5) of the Bankruptcy Code, the Plan Proponents have disclosed the identity of Thomas A. Howley as the Liquidating Trustee, the individual proposed to serve as the sole director and officer of the Liquidating Trust on and after the Effective Date. Further, Plan Proponents have adequately disclosed the identities of the Insiders of the Debtors.

v.      v.      *11 U.S.C. § 1129(a)(6): Regulatory Rate Approval*

26.      26.      The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

vi.      vi.      *11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test*

11

126985.000001 4910-4700-7650.1

27.     27.     The Plan Proponents prepared a liquidation analysis (the "Liquidation Analysis") with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code, and the Liquidation Analysis was included in the Plan Proponents' Solicitation Materials. The Court accepts the results of the Liquidation Analysis. Based on the Liquidation Analysis, with respect to each Impaired Class of Claims or Interests, (a) each Holder of a Claim or Interest of such Class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The requirements of section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

*vii.     vii.     11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes*

28.     28.     Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each Class of Claims or Interests, such Class has either accepted the Plan or is not Impaired under the Plan. As demonstrated in the Ballot Summary, with respect to all Classes of Claims and Interests who were entitled to vote on the Plan, Holders of Claims and Interests either voted to accept the Plan, did not vote, or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) are satisfied.

*viii.     viii.     11 U.S.C. § 1129(a)(9): Payment of Priority Claims*

29.     29.     Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code. Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim. Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of section

126985.000001  4910-4700-7650.1

507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the plan or, if not, cash equal to the allowed amount of such claim. The Plan Proponents' Plan satisfies these requirements, and, therefore, complies with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

30.    30.    Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than five (5) years after the date of the order for relief under Bankruptcy Code sections 301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. The Plan Proponents' Plan satisfies such requirements and therefore complies with section 1129(a)(9)(C) of the Bankruptcy Code.

ix.    ix.    *11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan*

31.    31.    Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under the plan, at least one class must have accepted the plan, without including any votes of insiders. Here, without including acceptance of the Plan by any Insider, Class 3 has voted to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

x.    x.    *11 U.S.C. § 1129(a)(11): Feasibility*

32.    32.    At the Confirmation Hearing, the Plan Proponents introduced certain exhibits, including the Howley Declaration, in order to demonstrate the feasibility of the Plan. Based on the testimony and the supporting documentary evidence presented, the Court finds that

13

the Plan adequately implements the liquidation of the Debtors' remaining Estate Property and the wind-down of the Debtors' remaining affairs through the Liquidating Trust. The testimony adduced at the Confirmation Hearing, including the Howley Declaration is credible, and the Debtors can be expected to achieve results sufficient to satisfy the obligations required under the Plan. Further, Confirmation of the Plan is not likely to be followed by a chapter 7 liquidation or further need for financial restructuring by the Debtors. Accordingly, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

xi.      xi.      *11 U.S.C. § 1129(a)(12): Payment of Fees*

33.      All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

xii.      xii.      *11 U.S.C. § 1129(a)(13): Retiree Benefits*

34.      The Debtors do not maintain a retirement plan as defined by section 1114 of the Bankruptcy Code, and therefore the Plan does not require the payment of retiree benefits.

xiii.      xiii.      *11 U.S.C. § 1129(a)(14): Domestic Support Obligations*

35.      The Debtors are not required to pay domestic support obligations, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

xiv.      xiv.      *11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim*

36.      The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

14

126985.000001 4910-4700-7650.1

xv.       xv.       *11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities*

37.       37.       The Debtors are moneyed, commercial companies, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

xvi.       xvi.       *11 U.S.C. § 1129(b)*

38.       38.       Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan ...... if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest is impaired under, and has not accepted, the plan." –See 11 U.S.C. § 1129(b). For purposes of section 1129(b), the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest. -The Court finds that the Plan does not discriminate unfairly, is fair and equitable, and otherwise satisfied the elements of 1129(b) of the Bankruptcy Code.

xvii.       xvii.       *11 U.S.C. § 1129(d)*

39.       39.       The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. As a result, the Plan complies with section 1129(d) of the Bankruptcy Code.

**M.       M.       *Conclusion***

40.       40.       The Debtors have demonstrated that the provisions of the Plan comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

15

126985.000001  4910-4700-7650.1

<h2 style="text-align:center">H. II.   ORDER</h2>

Based on the findings of fact and conclusions of law, the Court has determined that the Disclosure Statement and Plan satisfy the applicable provisions of the Bankruptcy Code and should therefore be approved on a final basis and confirmed. It is therefore hereby ORDERED that:

41. 41.   The foregoing findings of fact and the conclusions of law constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. All additional findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to approval of the Disclosure Statement and Confirmation of the Plan, including the Court's rulings with respect to Confirmation, are hereby incorporated into this Confirmation Order. All findings of fact or conclusions of law constitute rulings of the Court and are part of this Confirmation Order and adopted as such.

**A. *A.   Disclosure Statement***

42. 42.   The Disclosure Statement set forth in the Plan is APPROVED on a final basis in all respects.

**B. *B.   Confirmation of the Plan and Approval of Plan Documents***

43. 43.   The Plan is CONFIRMED in its entirety under section 1129 of the Bankruptcy Code, and all of the terms and conditions contained in the Plan are APPROVED, in each case as modified by, and subject to, the limitations and carve-outs stated in this Confirmation Order, including without limitation the modifications to Paragraphs 17, 19, 20, 48, 56, 60, 61, and 69 herein. The Plan Proponents and the Liquidating Trustee, as applicable, are authorized to implement the Plan in accordance with the terms and provisions of the Plan, Liquidating Trust Agreement, and this Confirmation Order, except as limited herein. Nothing in the Plan, the

Liquidating Trust Agreement, or this Confirmation Order authorizes the Trustee, the Liquidating Trustee, or any other party to convey, vest, cancel, release, waive, discharge, extinguish, enjoin, or otherwise affect any property, equity, contract, claim, cause of action, or other interest owned or held by any non-debtor entity or by Jerod Furr individually. The Plan Proponents, in consultation with the Liquidating Trustee, are authorized to modify the Plan through and including the Effective Date in accordance with Bankruptcy Code section 1127 without further order of the Court to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan, the terms of this Confirmation Order, the Liquidating Trust Agreement, and the transactions respectively contemplated under each of the foregoing.

44. 44. All Plan Documents in furtherance of Consummation of the Plan, or to be executed in order to consummate the transactions contemplated under the Plan, as applicable, are necessary and appropriate to effectuate the transactions contemplated under the Plan and are APPROVED and deemed part of the Plan as if fully set forth therein. The Plan Proponents, in consultation with the Liquidating Trustee, are authorized to modify any applicable Plan Documents through and including the Effective Date, and to execute such other certificates, documents, and instruments that may be necessary or appropriate to effectuate the transactions contemplated under the Plan. The Plan and any applicable Plan Documents have been negotiated in good faith at arm's-length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. The Plan, including all transactions contemplated by the Plan and Plan Documents, represents the exercise of the sound business judgment of the Trustee, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest.

C. C. *Resolution of Confirmation Objections*

17

45.     The Furr Objection was the only Confirmation Objection filed prior to the Confirmation Objection Deadline. The Court overruled the Furr Objection for the reasons stated by the Court at the Confirmation Hearing. No other Confirmation Objections were filed prior to the Confirmation Objection Deadline. To the extent any untimely Confirmation Objections were filed and were not withdrawn or otherwise resolved at or before the Confirmation Hearing, such Confirmation Objections are expressly overruled, except as set forth in this Confirmation Order. All other informal Confirmation Objections received by the Plan Proponents are resolved as set forth in this Confirmation Order.

**D.     *Establishment of the Liquidating Trust***

46.     The Plan provides for the creation of the Liquidating Trust. Confirmation of the Plan shall effect the formation of the Liquidating Trust and shall be governed by the Liquidating Trust Agreement. The form and content of the Liquidating Trust Agreement filed at DE 211 is approved and incorporated by reference herein.

47.     Thomas A. Howley shall serve as the Liquidating Trustee until death, resignation, discharge, or the appointment of a successor in accordance with the Liquidating Trust Agreement. In the exercise of his authority on behalf of the Liquidating Trust, the Liquidating Trustee will have certain responsibilities and powers and shall administer the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms and conditions of the Plan, Liquidating Trust Agreement, and this Confirmation Order. In addition to the rights and duties provided in the Plan, Liquidating Trust Agreement, and this Confirmation Order, the Liquidating Trustee shall be entitled to all rights, privileges, and immunities provided under applicable non-bankruptcy law, including, but not limited to, all rights, privileges, and immunities provided to a trustee under Texas law.

E.   *E.   Implementation of the Plan*

48.   48.   Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on the Effective Date, or as soon thereafter as is reasonably practicable, the Plan Proponents and Liquidating Trustee, as applicable, may take all actions as may be necessary or appropriate to affect any action described in, approved by, contemplated by, or necessary to effectuate the Plan and the Liquidating Trust. The implementation authority granted herein extends only to actions affecting property of the Debtors' estates within the meaning of 11 U.S.C. § 541, and does not authorize any action affecting any property, equity, contract, claim, cause of action, or other interest owned or held by any non-debtor entity or by Jerod Furr individually.

49.   49.   All such actions taken or caused to be taken consistent with the terms of the Plan, Liquidating Trust Agreement, and Confirmation Order, including any such actions taken prior to the entry of the Confirmation Order, shall be deemed to have been authorized and approved by the Court without further order under any applicable laws or regulations.

50.   50.   On the Effective Date, except as otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors or Liquidating Trust, if any, shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided pursuant to the Plan, Liquidating Trust Agreement, and this Confirmation Order.

F.   *F.   Effects of Confirmation of the Plan*

51.   51.   The provisions of the Plan, Liquidating Trust Agreement, this Confirmation Order, and any other Plan Documents are binding on the Debtors, the Plan Proponents, the

19

126985.000001   4910-4700-7650.1

Liquidating Trustee, each Holder of a Claim or Interest, each non-Debtor counterparty to an Executory Contract or Unexpired Lease with any Debtor, any other interested party in the Chapter 11 Cases, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Entity filed a Proof of Claim or voted to accept the Plan.

52. 52. Upon entry of this Confirmation Order, the Debtors, the Plan Proponents, Liquidating Trustee, and their respective directors and officers, agents, attorneys, and Professionals, as applicable, are authorized and directed to effect any and all steps and corporate actions contemplated or required by the Plan or Plan Documents, or necessary to implement the terms of the Plan, whether occurring before or after the Effective Date, and regardless of whether such actions are specifically referred to in the Plan or this Confirmation Order. For the avoidance of doubt, such actions expressly include, but are not limited to, executing the Liquidating Trust Agreement.

53. 53. Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against or Interests in the Debtors, their Estates, Estate Property, the Liquidating Trust, and the Liquidating Trust Assets.

54. 54. Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order of the Court, all injunctions or automatic stays provided for in the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

126985.000001 4910-4700-7650.1

55.   55.   Except as otherwise provided in section 1141of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan and Liquidating Trust Agreement shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether such Holder has voted to accept or reject the Plan.

G.   G.   *Vesting of Assets Free and Clear; Release of Liens, Claims and Encumbrances*

56.   56.   Except as otherwise provided in this Confirmation Order, all other remaining Estate Property of the Debtors will vest in the Liquidating Trust under the Plan, free and clear of all Claims, Liens, Interests, charges, and other encumbrances. For the avoidance of doubt, "Estate Property of the Debtors" as used in this paragraph means only property of the Debtors' estates within the meaning of 11 U.S.C. § 541, and does not include any property, equity, contract, claim, cause of action, or other interest owned or held by AE Partners Holdings, Inc., AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, J Parker Construction, LLC, IsoDrill, Inc., any other non-debtor entity, or Jerod Furr individually.

57.   57.   Except as otherwise provided in the Plan, Liquidating Trust Agreement, or Confirmation Order, or in any contract, instrument or other agreement or document entered into in connection with the Consummation of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Estate Property shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Liquidating Trust, as applicable, and their respective successors and assigns.

58.     On and after the Effective Date and, except as otherwise provided in the Plan or this Confirmation Order, the Liquidating Trustee may: (i) operate, manage, and wind up the affairs of the Liquidating Trust, as applicable, in the ordinary course; (ii) use, acquire, or dispose of remaining Estate Property; and (iii) compromise or settle any remaining Claims or Interests without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## H.     *Settlement Agreements*

59.     The Trustee is authorized to implement the settlement agreements contained herein.

60.     The terms of the settlement agreements are incorporated herein for all purposes, subject to and limited by the modifications, limitations, and carve-outs stated in Paragraphs 17, 19, 20, 61, and 69 of this Confirmation Order.

61.     For clarity and avoidance of doubt, the PMSA Settlement Agreement transfers only the Estates' interest in the assets listed in the PMSA Settlement Agreement. Nothing in the PMSA Settlement Agreement or this Confirmation Order shall serve as a determination or adjudication of the claims, choses, or rights of action included in the assets transferred pursuant to the PMSA Settlement Agreement, or an adjudication of title to any of those assets against any non-debtor save and except as between Etter and the Estates. This Confirmation Order does not vest in Etter, the Liquidating Trust, or any other person any asset or interest that was not property of the Debtors' Estates. Without limiting the generality of the foregoing, this Confirmation Order does not vest in Etter, the Liquidating Trust, or any other person, and does not adjudicate title to or interests in: (a) any equity in AE Partners Holdings, Inc. ("AEPH"), AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, J Parker Construction, LLC, or IsoDrill, Inc.; (b) U.S. Patent No.

22

126985.000001 4910-4700-7650.1

9,869,127, owned of record by AEP Asset Holdings, LLC; (c) any drilling motors, equipment, books, records, contracts, accounting files, tax attributes, intellectual property, intra-company receivables, reputational rights, vehicles (including the Mercedes G-Wagon titled to Jerod Furr personally), or any other asset owned or held by any non-debtor entity or by Jerod Furr individually; (d) any claim or cause of action belonging to any non-debtor entity or to Jerod Furr individually; or (e) any of Etter's personal claims against Jerod Furr or any non-debtor entity, including without limitation any claim seeking constructive trust on AEPH equity, rescission of the 2022 corporate restructure, wind-up of any non-debtor entity, or receivership over any non-debtor entity. The rights of all non-debtor parties to assert and defend their property, equity, and ownership claims in any appropriate forum are fully preserved.

## I.     *Rejection of Executory Contracts and Unexpired Leases*

62.    In accordance with Article XII of the Plan, and except as expressly provided in the Plan or this Confirmation Order, all Executory Contracts or Unexpired Leases that currently exist between the Debtors and another Person or Entity, shall be deemed rejected by the Debtors unless they were previously assumed or rejected by the Debtors pursuant to Final Order of the Bankruptcy Court.

63.    Unless otherwise indicated or provided in a separate Final Order of the Court, all other rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

64.    Unless otherwise provided by a separate Final Order of the Court, any Claim resulting from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be filed with the Court within thirty (30) calendar days after the later of: (i) the date of any Final Order of the Court (including this Confirmation Order) approving such rejection, (ii) the effective

date of such rejection, (iii) the Effective Date of the Plan, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trust Assets without the need for any objection by the Liquidating Trustee, or further notice to, action, order or approval of the Court or any other Entity. Any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtors' Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims in Class 3 of the Plan.

### J.      *Claims Resolution Procedures Approved*

65.      The procedures for resolving contingent, unliquidated, or Disputed Claims by the Liquidating Trustee, as outlined in Article XI of the Plan, are hereby approved.

### K.      *Injunction and Exculpation Provisions Approved*

66.      On and after the Effective Date, and except as provided in this Confirmation Order, all injunctions set forth in Article XIV of the Plan, and the exculpation provisions set forth in Article XIV of the Plan, are hereby approved, and shall be effective and binding on all Persons and Entities, to the fullest extent provided therein.

### L.      *Professional Compensation*

24

67.   67.    All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be filed no later than thirty (30) days after service of notice of the Effective Date, consistent with the procedures under Article V(B) of the Plan. Objections to Professional Compensation Claims must be filed and served on the Liquidating Trustee and the Professional to whose application the objections are addressed no later than twenty-one (21) days after such Professional Fee Claim is filed with the Bankruptcy Court. The Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Court. Allowed Professional Compensation Claims shall be paid by the Liquidating Trustee, on behalf of the Debtors, in Cash within ten (10) Business Days of the entry of a Final Order allowing such Claims.

**M.**   ***M.    Post-Effective Date Professional Fees and Expenses***

68.   68.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or Liquidating Trust. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**N.**   ***N.    Retention of Causes of Action***

25

126985.000001  4910-4700-7650.1

69.    69.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Retained Causes of Action[2] included in Exhibit B to the Plan Supplement at DE 200 are not being released, are expressly preserved, and ~~will be transferred to Etter pursuant to the PMSA Settlement  Agreement.Agreement~~will be transferred to Etter pursuant to the PMSA Settlement Agreement, subject to and excluding the claims identified in the immediately following sentence. For the avoidance of doubt, the Retained Causes of Action transferred to Etter under this Paragraph 69 and the PMSA Settlement Agreement do not, and shall not be construed to, include: (a) any claims brought by Jerod Furr or by Alliance Energy Partners, LLC (derivatively) against Dustin Etter himself, including without limitation Counts A, B, C, and D of ECF No. 40 in Adversary No. 25-03382 (breach of fiduciary duty, conversion, tortious interference with existing contracts, and misappropriation of trade secrets); (b) any claims against Travis Daily, Trinidad Peña, Specialized Energy Services LLC, L&L Ventures LLC, or TD Drilling Motors LLC, including without limitation Counts F, G, H, I, and J of ECF No. 40; or (c) any of Etter's personal claims that seek to alter, rescind, terminate, wind up, or place into receivership the ownership structure of any non-debtor entity (including AE Partners Holdings, Inc., AEP Asset Holdings, LLC, Invictus Drilling

---

[2] Including the Estates' rights, claims, counterclaims, causes of action, setoffs, and recoupments, whether asserted or unasserted, arising in any proceedings, including proceedings in courts at law, courts at equity, arbitrations, mediations, or other proceedings, including the following proceedings, whether original proceedings, removed, transferred, referred, or otherwise, and any appeals arising therefrom, including Adversary No. 25-03382 pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. For the avoidance of doubt, this preservation and transfer includes any estate cause of action asserted in the above-referenced Adversary ~~including the alleged estate causes of action in ECF No. 39, Plaintiff's Ninth Amended Complaint at Counts VA, VB, VC, VD, VE, and VI, and the alleged estate causes of action in ECF No. 40, Defendants' Counterclaim and Original Third-Party Petition at Counts A, B, C, D, F, G, H, I, and J.~~ For the further avoidance of doubt, the Retained Causes of Action transferred to Etter exclude (i) Counts A, B, C, and D of ECF No. 40, which are Furr's and AEP's derivative claims against Etter himself; (y Services LLC, L&L Ventures LLC, and TD Drilling Motors LLC; and (iii) Counts V.A, V.B, V.C, V.D, V.E, and VI of ECF No. 39 and the applications for receivership and wind-up at Sections VIII and IX of ECF No. 39, whii) Counts F, G, H, I, and J of ECF No. 40, which are claims against Travis Daily, Trinidad Peña, Specialized Energich are Etter's personal claims seeking constructive trust on non-debtor equity, rescission of the 2022 corporate restructure, and wind-up or receivership over non-debtor entities AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC. None of the foregoing excluded claims is property of the Debtors' estates within the meaning that authorizes the Trustee to convey them.

26

Motors, LLC, or J Parker Construction, LLC), including without limitation Counts V.A, V.B, V.C, V.D, V.E, and VI of ECF No. 39 and the applications for receivership and wind-up at Sections VIII and IX of ECF No. 39. The foregoing excluded claims are not estate causes of action and the Trustee has no authority to convey them. As relates to such Retained Causes of Action, nothing in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective date on behalf of the Estates or themselves in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law. Following the transfer of the Retained Actions pursuant to the PMSA Settlement Agreement, Etter shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action (other than those claims, choses, and rights of action transferred pursuant to the Settlement Agreement, and other than the claims excluded by the immediately preceding sentence), rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced. Failure to expressly identify and include any Causes of Action as Retained Causes of Action shall not constitute a waiver or release of such Causes of Action. No Person or Entity may rely on the absence of specific reference to any Retained Cause of Action in the Plan or Plan Documents as any indication that Etter will not pursue any and all available Retained Causes of Action.; provided, however, that this provision does not, and shall not be construed to, expand the scope of the Retained Causes of Action transferred to Etter beyond the Debtors' and the Estates' own claims, or to include any claim excluded by the limitations stated above. For the avoidance of doubt, the Retained Causes of Action consist only of the Debtors' and the Estates' own claims, choses, rights of action, and legal and equitable rights as of the Petition Date (or as thereafter properly became property of the Estates under 11 U.S.C. § 541 or other applicable bankruptcy law).), and do not

27

include any claim of any non-debtor entity, any claim of Jerod Furr individually, or any of Etter's personal claims against Jerod Furr or any non-debtor entity. In particular and without limitation, to the extent that the Retained Causes of Action may include claims to equitable title to or interests in any drilling motors, patent, or other property owned by AEP Asset Holdings, LLC or in any equity claimed by Jerod Furr in AE Partners Holdings, Inc., nothing in this Confirmation Order shall be construed as an adjudication of any such claim, and any such claim transferred to Etter is transferred subject to all defenses, counterclaims, setoffs, and rights of the affected non-debtor entity or of Jerod Furr individually, including the right to defend in any appropriate forum on the threshold question of whether the claim is property of the Debtors' estates.

O.      O.      *Setoffs and Recoupments*

70.     70.     Except as expressly provided in the Plan or this Confirmation Order, the Liquidating Trustee, on behalf of the Liquidating Trust, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either: (i) agreed in amount by the Liquidating Trustee, on behalf of the Liquidating Trust and Holder of such Allowed Claim; or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by either Liquidating Trustee, on behalf of the Liquidating Trust, or its successor of any and all claims, rights, and Causes of Action that such Liquidating Trustee, on behalf of the Liquidating Trust, or its successor may possess against the applicable Holder. Except as otherwise authorized in the Plan or this Confirmation Order, in no event shall any Holder of Claims against, or Interests in,

28

126985.000001 4910-4700-7650.1

the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Liquidating Trust, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**P.**     **P.     *Miscellaneous Confirmation Provisions***

71.     71.     This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other Governmental Unit or agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, any applicable Plan Documents, and this Confirmation Order.

72.     72.     Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan or any applicable Plan Documents, shall not be taxed under any law imposing a stamp tax or similar tax. The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

73.     73.     To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of

126985.000001 4910-4700-7650.1

Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

74.    74.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order, and all other agreements and Plan Documents executed and delivered pursuant to the Plan, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

75.    75.    The Plan Proponents and the Liquidating Trustee, as applicable, shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate Entity to execute and deliver an instrument or perform any other act necessary to implement the Plan, the Plan Documents, or the provisions of this Confirmation Order.

76.    76.    On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases.

77.    77.    If any or all of this Confirmation Order is hereafter reversed, modified, or vacated by subsequent Final Order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Plan Proponents or Liquidating Trustee receive written notice of any such order, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or

30

undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

78. 78. The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety.

79. 79. The provisions of the Plan and this Confirmation Order are nonseverable and mutually dependent.

80. 80. All Statutory Fees charged pursuant to 28 U.S.C. § 1930 shall be timely paid by the Liquidating Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. After the Effective Date, the Liquidating Trustee shall file all quarterly reports.

81. 81. On the Effective Date, and following the payment of all amounts under the Plan required to be paid on the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

82. 82. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

126985.000001 4910-4700-7650.1

83.     In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Plan or Liquidating Trust Agreement, on the other hand, the

83.     83.     In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Plan or Liquidating Trust Agreement, on the other hand, the provisions of this Confirmation Order shall govern and control. In the event of any direct conflict or inconsistency between any provision of the Liquidating Trust Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of the Plan shall govern and control, except with respect to the administration and structure of the Liquidating Trust, for which the Liquidating Trust Agreement shall govern and control. Notwithstanding the foregoing, the Liquidating Trustee may apply or move the Court for resolution of any dispute concerning the foregoing.

84.     84.     On the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Court.

Dated: -_____, 2026.

_____

**THE HONORABLE ALFREDO R. PÉREZ**
**UNITED STATES BANKRUPTCY JUDGE**

32

126985.000001  4910-4700-7650.1

Exhibit 1

— Initial Plan

126985.000001  4910-4700-7650.1

Exhibit 2
—— Modified Plan

126985.000001  4910-4700-7650.1

Exhibit 3

—— PMSA Settlement Agreement

ATREED TO AS TO FORM ONLY:

_____

Deborah L. Crain

[State Bar No.]

[Firm Name and Address]

**COUNSEL FOR MOVANTS AE PARTNERS HOLDINGS, INC.,**

**AEP ASSET HOLDINGS, LLC, INVICTUS DRILLING MOTORS, LLC,**

**J PARKER CONSTRUCTION, LLC, AND JEROD FURR**

126985.000001  4910-4700-7650.1