## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | CASE NO. 25-30155 |
| ALLIANCE FIELD RENTALS, LLC, | § | (CHAPTER 11) |
| | § | Jointly Administered |
| Debtors. | | |

**SUPPLEMENT TO EMERGENCY MOTION TO CONFORM CONFIRMATION ORDER TO THE COURT'S BENCH RULING AND FOR CONTEMPT AND SANCTIONS AGAINST THE PLAN PROPONENTS AND ETTER AND THEIR RESPECTIVE COUNSEL FOR VIOLATIONS OF THIS COURT'S PREVIOUSLY ENTERED TEMPORARY INJUNCTION ORDER AND SUPPLEMENTAL <u>TEMPORARY INJUNCTION ORDER</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDETHE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY**

**BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD. FILE AN IMMEDIATE RESPONSE. MOVANTS HAVE REQUESTED THAT THIS MOTION BE HEARD ON April 30, 2026 AT 12:00 NOON AND WILL BE CONDUCTED REMOTELY.**

**TO THE HONORABLE ALFREDO PEREZ, UNITED STATES BANKRUPTCY JUDGE:**

AE Partners Holdings, Inc., AEP Asset Holdings, LLC, Invictus Drilling Motors, LLC, J Parker Construction, LLC, and Jerod Furr (collectively, "Movants") respectfully submit this Supplement to their Emergency Motion to Conform Confirmation Order to the Court's Bench Ruling (the "Motion") to address three discrete points that have emerged as likely areas of dispute at the hearing set for April 30, 2026, and for Contempt and Sanctions against the Plan Proponents and Etter, and their respective counsel, for violations of the Temporary Injunction Order and Supplemental Temporary Injunction Order. In support, Movants state:

**I.  Introduction: (A) Movants Support Confirmation and Do Not Seek to Disturb the Plan Insofar as it Provides for Payment of Class 3 Creditors and Admin Creditors. (B) Movants request Sanctions and Contempt Against Etter, the Trustee and the Committee, and Their Respective Counsel for Violation of the Original and Supplemental Temporary Injunction Orders.**

1.      As a threshold matter, and to eliminate any ambiguity, Movants reaffirm that **they do not oppose confirmation of the Modified Plan as set forth herein, insofar as the payment of Class 3 Creditors, Admin and Priority Creditors. Are concerned, and do not oppose the establishment of the Liquidating Trust so that a Liquidating Trustee (a chapter 7 panel trustee) can investigate and pursue claims. This is the alternative relief Furr requested in his Confirmation Objection. Movants do, however, object to approval of the PMSA for the reasons set forth below.**

2.      Movants also request that the Trustee, the Committee, Etter and their respective counsel be held in contempt and sanctioned for violating two Temporary Injunction Orders they requested that the Court enter. The Original Injunction Order was entered on July 22, 2025, ECF Doc 23 in Adversary Case 25-03382, and provides:

"Jerod Furr and Dustin Etter—and all persons acting in privity or in concert with them as well as their officers, agents, servants, employees, and attorneys—are in all things PROHIBITED and ENJOINED from spending, transferring, or otherwise disposing of any funds, drilling motors, patents, investment interests, or other property held or controlled by AEP, AFR, AEPH, or Invictus at the time of entry of this Order without the written consent of the Trustee or the Court."

The Supplemental Injunction Order was entered on February 6, 2026, ECF Doc 63 in Adversary Case 25-03382, and provides:

"Jerod Furr and Dustin Etter—and all persons acting in privity or in concert with them as well as their officers, agents, servants, employees, and attorneys—are in all things PROHIBITED and ENJOINED from spending, transferring, encumbering, or otherwise disposing of, or entering into or approving any restriction on the transfer or sale of, leasing, expending, or otherwise impairing any funds, drilling motors, patents, investment interests, vehicles (including but not limited to automobiles), or other property of or received from or substantially funded by AEP, AFR, AEPH, Invictus, or any subsidiary of any of those entities at any time on or after October 1, 2023 without the written consent of the Trustee or the Court."

## II.  Highland Capital Forecloses Any Argument That "Notice and Opportunity to Object" Constitutes Consent From the Non-Debtor Movants

3.     Movants anticipate that the Plan Proponents will argue that the four non-debtor entities and Mr. Furr had "notice" of the Modified Plan and an "opportunity to object," and that their failure to appear earlier should be treated as consent to the PMSA's conveyance of their property, equity, and claims. The Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 132 F.4th 353 (5th Cir. 2025), forecloses that argument.

4.     In *Highland Capital*, the Fifth Circuit addressed plan provisions purporting to bind non-debtors and confirmed the rule established by the Supreme Court in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024): the Bankruptcy Code does not authorize a plan to alter non-

debtor rights absent consent of the affected non-debtor. The Fifth Circuit stated the rule in explicit terms:

> In accordance with this principle, the Supreme Court held recently in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S. Ct. 2071, 219 L. Ed. 2d 721 (2024), that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of the affected claimants."

*Highland Capital*, 132 F.4th at 358–59 (quoting *Purdue Pharma*, 603 U.S. at 227). The Fifth Circuit made clear that the *Purdue Pharma* consent rule is not novel — it is bedrock Fifth Circuit law:

> Even before *Purdue Pharma*, this court had held the same: that any provision that non-consensually releases non-debtors from liability for debts and/or conduct, and any injunction that acts to shield non-debtors from such liability, must be struck from a bankruptcy confirmation plan.

*Id.* at 359. The *Highland Capital* court further emphasized that "the Supreme Court and this court have definitively held that bankruptcy courts may not approve a confirmation plan that non-consensually releases non-debtors from liability related to a bankruptcy proceeding," and that this prohibition extends to injunctions that "similarly act to shield persons and entities from liability." *Id.* at 358.

5.      The principle of *Highland Capital* and *Purdue Pharma* is that bankruptcy authority to reach non-debtor substantive rights cannot be supplied by inference, inaction, or generalized notice of a plan's existence. Consent sufficient to bind a non-debtor to plan provisions affecting its property, equity, or claims must be expressed, informed, and specific to the relief being imposed. The same principle that forbids non-consensual release of non-debtor *claims* forbids non-consensual conveyance of non-debtor *property* and *equity*. If anything, the principle applies *a fortiori* to the conveyance of non-debtor assets, because conveyance is a more absolute deprivation than release.

6.      Applied to this record, any consent theory fails at the threshold. None of AEPH, AEP Asset Holdings, Invictus, or J Parker consent to this PMSA as written. None of these non-debtors were served with process in the adversary matter. None attended the mediation that is in dispute. None signed the PMSA. The PMSA itself expressly states that "the other parties were unable to resolve matters with Mr. Furr" and that "all of his rights are fully preserved." In addition, legal entities cannot appear in a bankruptcy case except through licensed counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–03 (1993). Even if Mr. Furr had purported to represent AEPH, AEP Asset Holdings, Invictus, or J Parker in the mediation or at any prior hearing, he could not have done so lawfully. The non-debtor entities appear through undersigned counsel for the first time in these Chapter 11 Cases. Under *Highland Capital*, that posture forecloses any consent theory the Plan Proponents might advance.

### III.  Section 105 Does Not Supply the Authority the PMSA Requires; Any Bankruptcy Court Action Must Square With Section 524(e) and the Rest of the Code

7.      Movants further anticipate that the Plan Proponents will invoke 11 U.S.C. § 105(a) as a freestanding source of authority for the non-debtor conveyances in PMSA Exhibit A. The Fifth Circuit in *Highland Capital* foreclosed that argument too. The court squarely held that § 105 cannot supply authority inconsistent with the rest of the Bankruptcy Code, and in particular cannot supply authority inconsistent with 11 U.S.C. § 524(e). 132 F.4th at 358. In the Fifth Circuit's own words:

> "Although we interpret [11 U.S.C.] § 105 liberally" to allow bankruptcy courts a range of powers, any action a bankruptcy court takes "must be consistent with the rest of the Bankruptcy Code." Notably, any bankruptcy court action must square with the Bankruptcy Code's edict that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt."

*Highland Capital*, 132 F.4th at 358 (quoting *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995), and 11 U.S.C. § 524(e)). The court went further, framing the limit on § 105 authority in explicit terms:

> Although bankruptcy courts have the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, 11 U.S.C. § 105(a), this power

is "not unlimited" and does not permit bankruptcy courts to "act as roving commission[s] to do equity." As relevant here, we have always recognized and enforced limitations on bankruptcy courts' power to shield non-debtors from liability.

*Id.* (quoting *In re Mirant Corp.*, 378 F.3d 511, 523 (5th Cir. 2004)). The statement distilled into the holding in terms equally apt to the overreach at issue here: *see Highland Capital*, 132 F.4th at 353 (HN4) (LexisNexis headnote) ("While 11 U.S.C.S. § 105 is interpreted liberally to allow bankruptcy courts a range of powers, any action a bankruptcy court takes must be consistent with the rest of the Bankruptcy Code. Notably, any bankruptcy court action must comply with 11 U.S.C.S. § 524(e), which states that discharge of a debt of the debtor does not affect the liability of any other entity on such debt. . . . Fifth Circuit case law seems broadly to foreclose non-consensual non-debtor releases and permanent injunctions. The court must overturn a § 105 injunction).

8.      Applied here, the rule resolves the matter. Whatever equitable appeal the PMSA may hold as a compromise of the Estates' claims, § 105 does not authorize the bankruptcy court to "convey, assign, or otherwise affect" the property, equity, or direct claims of non-debtor entities, or to cancel Mr. Furr's personal equity in AE Partners Holdings, Inc., because the authority for that relief is not supplied anywhere else in the Code. *See also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 469–71 (2017) (rejecting § 105 and § 1123(b)(6) as workaround authorities for results the Code's substantive provisions forbid). The *Highland Capital* court was explicit that a § 105 injunction that "effectively discharges a nondebtor" must be overturned. 132 F.4th at 359. Here, the PMSA goes further — it purports not merely to enjoin or release, but to *convey* non-debtor property and equity outright. If § 105 cannot supply authority for a lesser intrusion, it cannot supply authority for a greater one.

## IV.  The Objection Is Timely as the Movants Object Before Entry of the Confirmation Order, and Such Objections Remain Viable Even Years After Entry

9.      The Plan Proponents may also argue that Movants' objection is untimely. It is not. Movants raise these objections **before** entry of the Confirmation Order. No provision of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure precludes a non-debtor whose property is purportedly conveyed by a proposed order from objecting at or before the hearing at which that order is to be entered.

10.     Moreover, *Highland Capital* itself demonstrates that challenges to plan provisions that improperly reach non-debtor rights remain viable even years after plan confirmation. In *Highland Capital*, the debtor filed for Chapter 11 protection in 2019, the bankruptcy court confirmed the plan containing the challenged exculpation and injunction provisions, and the Fifth Circuit nonetheless struck the offending provisions in 2025, which was years after confirmation and implementation. 132 F.4th at 354–55. If objections to provisions that improperly reach non-debtor rights are viable years after plan confirmation, they are certainly viable before confirmation. The Plan Proponents cannot plausibly argue that Movants' pre-confirmation objection is untimely when *Highland Capital* entertained the same type of challenge *post-confirmation*.

11.     The appropriate vehicle for relief, depending on timing, is: (i) objection to entry of the Confirmation Order, as sought here; (ii) motion to alter or amend under Federal Rule of Bankruptcy Procedure 9023; or (iii) motion for relief from the order under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4) or (6). See *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024); *Highland Capital*, 132 F.4th at 358–62. The present Motion is the cleanest of these vehicles, and the Court may address the discrete non-debtor overreach at the present hearing without disturbing any other aspect of confirmation.

## V.  The PMSA as Written Would Require This Court to Approve the Very Conduct Its Own Standing Injunctions Prohibit

12.     A separate and independent reason the PMSA cannot be approved as written is that doing so would require this Court to enter an order directly contrary to two of its own outstanding injunctions: the *Stipulation and Agreed Temporary Injunction* entered on July 22, 2025 (Adv. Doc. 22) (the "Original Injunction"), and the *Stipulation and Agreed Supplemental Temporary Injunction* entered on February 6, 2026 (Adv. Doc. 65) (the "Supplemental Injunction," and together with the Original Injunction, the "Standing Injunctions"). The Supplemental Injunction expressly states that it "is in addition to and not in lieu of" the Original Injunction, Adv. Doc. 65 ¶ 4, and both remain in full force and effect "until a final judgment is entered in this Case." *Id.* ¶ 6.

13.     By their own terms, the Standing Injunctions reach the very property the PMSA purports to convey. Paragraph 3 of the Supplemental Injunction PROHIBITS and ENJOINS Mr. Furr, Mr. Etter, and "all persons acting in privity or in concert with them as well as their officers, agents, servants, employees, and attorneys" from:

> spending, transferring, encumbering, or otherwise disposing of, or entering into or approving any restriction on the transfer or sale of, leasing, expending, or otherwise impairing any funds, drilling motors, patents, investment interests, vehicles (including but not limited to automobiles), or other property of or received from or substantially funded by AEP, AFR, AEPH, Invictus, or any subsidiary of any of those entities at any time on or after October 1, 2023 without the written consent of the Trustee or the Court.

Adv. Doc. 65 ¶ 3 (emphasis added). The Standing Injunctions thus identify by name the property of **AEPH**, **Invictus**, and "**any subsidiary of any of those entities**", which are the very non-debtor Movants here, including AEP Asset Holdings, LLC and J Parker Construction, LLC, as property that may not be transferred, impaired, or made subject to any restriction on transfer without the written consent of the Trustee or this Court.

14.     The PMSA, as written, calls for the Court to do exactly what its Standing Injunctions forbid: convey to Mr. Etter the property, equity, and direct claims of the non-debtor Movants. The Trustee's signature on the PMSA cannot supply the "written consent of the Trustee" contemplated in Paragraph 3 of the Supplemental Injunction, because the Trustee has no authority under 11 U.S.C. § 363 over non-debtor property and therefore cannot "consent" to its disposal in any meaningful legal sense and one cannot consent to disposing of what one does not own and does not control. And to the extent the PMSA is read as obtaining the Court's consent through entry of the proposed Confirmation Order, the entry of that very order is the relief in dispute. Reading the injunction's "or the Court" safety valve to encompass the very order Movants ask the Court not to enter would render the Standing Injunctions self-nullifying as applied to non-debtor property.

Finally, the injunctions entered by this Court bind Etter and all parties acting in privity with Etter, which in this case, would include the Trustee, acting in privity with Etter pursuant to the terms of the PMSA. The Trustee cannot breach the injunctions, because he would be acting in

contempt of this Court's orders. He could not then attempt to purge his contempt by consenting to his violations of the Court's Original and Supplemental Injunction Orders. The Trustee and Etter and their respective legal counsel violated the Original and Supplemental Injunction Orders when they executed the PMSA and then did so again when they presented the PMSA to this Court for approval. Allowing the Plan Proponents to purge such contemptuous actions by invoking such consent would constitute bad faith on the part of the Plan Proponents, thus violating 11 U.S.C. § 1129(a)(3).

15.     A court is bound by, and may not act inconsistently with, its own outstanding orders. As Judge Mannes explained in *Startec Global Communications Corp. v. Videsh Sanchar Nigam Ltd. (In re Startec Global Communications Corp.)*, "[j]ust as modification or vacatur of an order is the exclusive province of the court issuing the order, so too is enforcement thereof. . . . To allow a collateral attack on the . . . orders would be to undermine the orderly process of the law." 292 B.R. 246, 254 (Bankr. D. Md. 2003). The federal contempt statute reinforces the binding force of those orders by vesting this Court with the "power to punish . . . [c]ontempt of its authority" for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). The Standing Injunctions are precisely such commands. They are not advisory directives that may be set aside informally by the entry of an inconsistent order in a different docket of the same Chapter 11 Case.

16.     The Supreme Court has long held that an injunction, "however erroneous the action of the court may be," must be obeyed by the parties "until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947); *see id.* at 290–94. The Standing Injunctions have not been vacated, modified, stayed, or appealed. They remain presumptively valid and binding on the parties, on persons in privity with them, and, as a matter of basic judicial integrity, on the Court that issued them unless and until a final judgment is entered in the adversary proceeding in which they were entered. Adv. Doc. 65 ¶ 6. Entering a Confirmation Order whose practical effect is to transfer the very property the Standing Injunctions expressly placed beyond reach would, in substance, amount to the issuing court itself disregarding its own decree.

17.     The procedural posture sharpens the conflict. The Standing Injunctions were entered in Adversary No. 25-03382, as Federal Rule of Bankruptcy Procedure 7001(7) required. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762–63 (5th Cir. 1995) (holding that injunctive relief obtained outside an adversary proceeding is procedurally improper and reversing where the bankruptcy court entered a § 105 injunction in the main case without complying with Rule 7001). Any modification or effective dissolution of those injunctions therefore must come, if at all, through the adversary proceeding in which they were entered through a noticed motion (or further stipulation), with findings, on a record. The PMSA seeks to short-circuit that requirement by entering a Confirmation Order in the main case that, in operative effect, would override the adversary injunctions concerning non-debtor property. That is precisely the type of injunctive relief the Third Circuit struck down in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214–17 (3d Cir. 2000), where the bankruptcy court was found to have approved a non-debtor release and permanent injunction without making the specific findings of fairness and necessity required to support such relief. The Confirmation Order proposed here would, without any such findings and without proceeding in the adversary case, supplant the express terms of two outstanding injunctions concerning the very same non-debtor property.

18.     Finally, this Court's exclusive jurisdiction under 28 U.S.C. § 1334(e) extends to "all the property, wherever located, of the debtor as of the commencement of [the] case, and of property of the estate" and not to non-debtor property. That statutory limit makes the conflict here all the sharper. The Standing Injunctions consciously distinguish between Debtor property and property "of or received from or substantially funded by AEP, AFR, AEPH, Invictus, or any subsidiary of any of those entities," and protect both. Adv. Doc. 65 ¶ 3. The PMSA collapses that distinction by treating non-debtor property as if it were property of the estate freely conveyable under § 363. Approving the PMSA without the surgical carve-outs Movants request would put this Court in the untenable position of approving the disposal of non-debtor property that its own Standing Injunctions prohibit, in a posture inconsistent with Rule 7001 and with the controlling Fifth Circuit and Supreme Court authority addressed above. The carve-outs Movants seek would resolve the conflict, conform the Confirmation Order to the Court's existing decrees, and preserve every dollar of the Estates' bargained-for recovery.

19. Etter's own filing confirms the conflict between the PMSA and the Standing Injunctions. In his *Brief in Support of Trustee's Confirmation Order* (Dkt. No. 324), Etter dismisses Movants' objection to PMSA ¶ 8, which is the provision committing the Trustee and Etter to seek a TRO and injunction "with respect to the AEPH entity and any related assets, interests, or claims" on the ground that "that injunction has already been entered as an Agreed Temporary Injunction signed by counsel for Mr. Furr as Adversary Doc. 63." Dkt. No. 324 ¶ 5. Etter cannot have it both ways. If, as Etter contends, the Standing Injunctions in Adversary No. 25-03382 already satisfy the injunctive-relief commitment of PMSA ¶ 8 as to AEPH and its related assets, interests, and claims, then by Etter's own reasoning the Standing Injunctions are presently in force, presently bind the parties, and presently extend to the very AEPH-related "assets, interests, [and] claims" that the PMSA elsewhere purports to convey. Etter has thus tied the operation of the PMSA directly to the Standing Injunctions, and in doing so has acknowledged, by his own filing to this Court, that the AEPH and Invictus property and related interests covered by Paragraph 3 of the Supplemental Injunction are the same property and interests the PMSA seeks to transfer. The conflict between the PMSA and the Standing Injunctions is therefore not hypothetical or speculative; it is established on the face of the Plan Proponents' own representations.

20. Etter further frames the questions of ownership and title that the PMSA touches as "questions for another day" to be addressed "post-confirmation in the adversary." Dkt. No. 324 ¶ 4. That framing only deepens the problem this Section identifies. The "adversary" Etter references is Adversary No. 25-03382, which is the same adversary proceeding in which the Standing Injunctions were entered, and which by the express terms of the Supplemental Injunction will continue to govern the disputed non-debtor property "until a final judgment is entered in this Case." Adv. Doc. 65 ¶ 6. If post-confirmation litigation in the adversary proceeding is the appropriate forum to resolve disputed ownership, as Etter says it is, then the Standing Injunctions are necessarily the procedural floor for that litigation: they remain in effect, they prohibit the very dispositions the PMSA contemplates pending final judgment, and any modification of their operation must come through the adversary proceeding under Rule 7001, not by side-door entry of a Confirmation Order in the main case. Confirming the PMSA without the requested carve-outs would effect the disputed conveyance now while purporting to defer the title fight, and would do so in operative tension with the very Standing Injunctions that the adversary proceeding has

already put in place to preserve the status quo of that property pending final judgment. The carve-outs Movants request would align the Confirmation Order with Etter's own stated path forward: leave the title disputes to the adversary proceeding, where the Standing Injunctions already require they be resolved, and conform the Confirmation Order to this Court's existing decrees in the meantime.

## VI.  Conclusion

The Court should not approve the PMSA because it violates the Original and Supplemental Injunction Orders entered by this Court. The Proponents and Etter, acting in privity with each other, are in violation of these injunctions. It is axiomatic that the Trustee cannot now purge his contempt by consenting to such contemptuous activities.

Movants do not oppose confirmation of the Plan so long as such approval does not include approval of the PMSA. Specifically, Movants do not oppose the payment of Class 3 Creditors or the Admin Creditors, including the Trustee and the Committee. Movants do not object to the creation of the Creditors' Trust so than a Chapter 7 Panel Trustee can be appointed to pursue the causes of action owned by the Debtors' Bankruptcy Estates. In Furr's Confirmation Objection, that is exactly the alternative relief Furr requested.

The Court's bench ruling at the confirmation hearing, i.e., that the Trustee cannot sell what the Estates do not own, is faithful to the controlling Supreme Court and Fifth Circuit authority set out above. The surgical carve-outs Movants seek will conform the written Confirmation Order to that ruling, protect non-debtor rights as *Highland Capital* and *Purdue Pharma* require, and preserve every dollar of the Estates' bargained-for recovery. Movants respectfully request that the Court enter a Confirmation Order that reflects these limits.

Respectfully Submitted this 28th day of April 2026.

> PENDERGRAFT & SIMON, LLP
> 2777 Allen Parkway, Suite 800
> Houston, TX 77019
> Tel. (713) 528-8555
> Fax. (713) 868-1267
>
> */s/ Leonard H. Simon*

By: Leonard H. Simon
Texas Bar No. 18387400
lsimon@pendergraftsimon.com

***ATTORNEY IN CHARGE FOR JEROD
FURR  ET AL, MOVANTS***

**E-Merger.Law, PLLC**
*/s/ Deborah L. Crain*
Deborah L. Crain
Bar Card No.: 24067319
1334 Brittmoore Rd Ste 2314
Houston, TX 77043-4037
dcrain@e-merger.law
(346) 535-0822

***COUNSEL FOR MOVANTS AE
PARTNERS HOLDINGS, INC., AEP
ASSET HOLDINGS, LLC, INVICTUS
DRILLING MOTORS, LLC, J. PARKER
CONSTRUCTION, LLC***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above Notice of Hearing was served on all creditors and parties in interest registered to receive notices in the ECF system in and for the Southern District of Texas on this 28th day of April 2026.

*/s/ Leonard H. Simon*